Gregory M. Saylin, #9648
Zachary T. Burford, #19771
Tyler S. Erickson, #19523
HOLLAND & HART LLP
222 South Main Street, Suite 2200
Salt Lake City, UT 84101-2194
Telephone: 801.799.5800
GMSaylin@hollandhart.com
ZTBurford@hollandhart.com
TSErickson@hollandhart.com

*Attorneys for Plaintiff SkyWest Airlines, Inc.*

---

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| SKYWEST AIRLINES, INC., | **COMPLAINT** |
| Plaintiff, | |
| vs. | Civil No. _____ |
| DANIEL MOUSSARON, and VIKAAS KRITHIVAS, | Judge _____ |
| Defendants. | |

SkyWest Airlines, Inc. ("SkyWest"), by and through its counsel of record, brings this Complaint against Defendants Daniel Moussaron ("Moussaron") and Vikaas Krithivas ("Krithivas") (collectively, "Defendants") and allege as follows:

## PARTIES

1.      SkyWest is a business incorporated under the laws of the state of Utah with its principal place of business in St. George, Utah.

2.      Defendant Daniel Moussaron is a former SkyWest pilot and, on information and belief, a citizen of the state of Minnesota.

3.      Defendant Vikaas Krithivas is a former SkyWest pilot and, on information and belief, a citizen of the state of Illinois.

4.      Upon information and belief, and at all times relevant, Defendants Daniel Moussaron and Vikaas Krithivas acted as agents of one another with respect to the conduct alleged herein. Each authorized, directed, aided, abetted, and/or ratified the other's acts; each acted within the course and scope of such agency; and each is jointly and severally liable for the acts of the other.

## JURISDICTION AND VENUE

5.      This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because SkyWest asserts claims arising under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.

6.      In the alternative, this Court has jurisdiction under 28 U.S.C. § 1332(a) because there is complete diversity between SkyWest and Defendants Moussaron and Krithivas, and the amount in controversy exceeds $75,000 exclusive of interest and costs. SkyWest's damages (including incident response, forensic investigation, system remediation), injunctive relief (including the value of preventing ongoing misuse and dissemination of a compiled list of thousands of employees' personal contact and employment information), and attorneys' fees exceed $75,000.

7.      Personal jurisdiction and venue are proper in the District of Utah. Defendants purposefully directed their conduct toward SkyWest's Utah-based systems and business, causing injury in Utah. In addition, Defendants consented to jurisdiction and venue in Utah via their executed Confidentiality and Nondisclosure Agreements (the "NDAs"), which are governed by Utah law and designate Utah courts, including the applicable United States Federal District Court, for actions pertaining to the agreements. *See* Exhibit A (NDAs).

8.      Venue is likewise proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District and the harm is felt here, and because Defendants have agreed to venue in Utah as the exclusive forum for any legal action pertaining to the NDAs.

## FACTUAL ALLEGATIONS

9.      SkyWest is a regional airline that employs over five thousand pilots and operates throughout the United States.

10.     Moussaron is a former SkyWest pilot who was based out of Minneapolis, MN.

11.     Krithivas is a former SkyWest pilot who was based out of Chicago, IL.

12.     SkyWest maintains a secure, internal, login-protected employee intranet portal known as SkyWest Online ("SWOL"). SWOL allows SkyWest employees to review and make changes to benefits and personal information, view company news and

alerts, and access other employment-related information. SkyWest has invested
substantial financial, technical, and personnel resources to safeguard SWOL and the
confidentiality of employee information and other data contained therein.

13.    SWOL includes a Company Directory that stores each employee's record
(including names, employee numbers, job titles, team, supervisor, base location,
employee type, hire date, and personal cell phone numbers and home addresses). Access
to SWOL requires an employee ID and password, as well as multifactor authentication
("MFA").

14.    SWOL applies tiered, role-based permissions to the Company Directory:
certain executive, HR, and management roles may view all available fields, while
front-line or entry-level users are restricted to basic business-contact fields (such as
name, base/location, and supervisor). Over 99% of pilots are front-line users whose role-
based permissions limit them to basic business-contact fields (e.g., name, base/location,
supervisor). They cannot view other restricted fields, such as personal cell phone
numbers or home addresses. Although these fields reside within the Directory's
underlying record, SWOL's technical controls govern which fields a given user role can
display in the user interface or retrieve from the system.

15.    Access to SWOL is provided for limited, business-related purposes. Front-
line pilots, including Defendants, have limited access to SWOL for legitimate operational
needs, such as scheduling. Defendants were only authorized to view data fields in the

directory limited to their front-line pilot user role. Pursuant to SkyWest policy and their

respective NDAs, Defendants were not authorized to compile, export, scrape, or mass-

download directory data on SWOL, nor were they authorized to access personal cell

phone numbers and home addresses that were not available to their user roles.

16.     As a condition of employment, Defendants executed NDAs. *See* Ex. A. In

their NDAs, Defendants agreed that "during the course of employment with SkyWest,

they may become aware of certain information that, if disclosed, has the potential to harm

other employees or the SkyWest corporate entity." *Id.* Defendants further acknowledged

that "SkyWest values and seeks to protect the privacy of its employees as well as the

confidentiality of its trade secrets and other confidential information." *Id.*

17.     The NDAs provided that "Confidential and Privileged Information includes

SkyWest business records and any terms relating thereto, trade secrets, contracts,

business plans, financial statements, marketing strategies, client lists and contact

information, and methods of conducting or obtaining business. It also includes ***employee***

***data*** in the form of personnel records, background check information, medical records

and other benefits information." *Id.* (emphasis added) (referred to herein as "Confidential

Information.").

18.     Defendants agreed that "[a]ll such information is considered confidential

and privileged no matter how it is communicated—in writing, via electronic

communications, or by conversation[,]" and further agreed that they "will not disclose,

divulge, or otherwise communicate at any time or in any manner, to any party other than those employees of SkyWest as necessary, any Confidential Information, either during or subsequent to employment with SkyWest." *Id.*

19.    Additionally, Defendants agreed that they would "not use Confidential Information for their own purposes, other than in connection with authorized uses as dictated by the employment relationship, or to disclose any Confidential Information to others." *Id.*

20.    The NDAs further provide that "[u]pon the request of SkyWest, Applicant agrees to return or destroy, as directed, all Confidential and Privileged Information in tangible form," and that "Applicant understands that violating the terms of this Agreement will lead to corrective action, up to and including termination of Employment[.]" *Id.*

21.    In or around August 2025, Defendants started a campaign to impermissibly access and download massive amounts of Confidential Information from the pilot directories on SWOL.

22.    On or around August 29, 2025, SkyWest IT logs show that Moussaron initiated a series of unauthorized activities to obtain pilot employee data—including home addresses and personal telephone numbers—from the SWOL directory. He did not have authority to access this data with his SWOL permissions. On information and belief,

Defendants used a web developer tool or other computer program to circumvent SWOL's role-based restrictions and impermissibly access the full directory stored on SWOL.

23.     To access SWOL, Moussaron logged in using his SkyWest employee ID and password and completed MFA. When he logged in, he was physically present in Duluth, Minnesota, on an overnight trip. Likewise, his IP address was located in Duluth, Minnesota, provided by Compudyne, Inc. As described below, SkyWest's IT logs show that his activity included an initial testing period in which certain pilot records were accessed multiple times. After that, SkyWest's IT logs reflect that Defendants traversed the pilot seniority list sequentially by pilot.

24.     On that initial August 29 session, Moussaron accessed and obtained contact information, including home addresses and telephone numbers, for two pilots. He flew four legs on August 29th and arrived in Winnipeg, Manitoba, at 8:32PM CT, where he overnighted at the Holiday Inn Hotel & Suites. Moussaron logged onto SWOL using his user credentials at approximately 11:00PM CT and accessed and downloaded confidential data on another SkyWest pilot multiple times.

25.     The following day, while still at the Holiday Inn, Moussaron logged onto SWOL again and accessed data for 18 different pilots, starting with the first pilot on the seniority list and progressing down the list sequentially.

26.     On September 1, 2025, Moussaron had a two-and-a-half-hour layover at Minneapolis-St. Paul International Airport and again logged onto SWOL to continue

scraping data. As with his prior hacks, the IP address used to enter SWOL matched his physical location. The IP address used on this occasion (97.64.79.189) was registered to the Minneapolis Metropolitan Airports Commission.

27.     Over the next three months, Moussaron returned to SWOL on at least 8 more occasions to access and download data for a total of 365 pilots. This data included names, employee numbers, home addresses, and personal phone numbers. Moussaron would resume at the point in the pilot seniority list where he left off with each new login. His first four data pulls progressed slowly, which is consistent with manual input and retrieval of this data.

28.     On August 31, 2025, Krithivas had received a job offer from a different airline and gave notice of resignation from SkyWest, effective September 12, 2025.

29.     On September 3, 2025, at approximately 14:44:10 MDT, IT logs show that Krithivas began pulling data from the SWOL directory. Krithivas was not scheduled to fly on that day—his schedule reflected that he was on "vacation." Like Moussaron, he used his employee ID, password, and MFA to access SWOL. His IP address was an AT&T IP based in Chicago, Illinois, which is where Krithivas resides and had previously used this IP address to access SWOL.

30.     Krithivas temporarily stopped at 15:16:05 MDT. Thirty-six seconds later, at approximately 15:16:41 MDT, Moussaron logged in and pulled data for approximately 11 minutes. Moussaron started this pull from where Krithivas left off on the seniority list.

Moussaron pulled this data from his local IP address provided by Charter Communications in St. Michael, Minnesota. SkyWest's MFA records and prior login history link this IP and MFA sequence to Moussaron. Shortly thereafter, at approximately 15:27:13 MDT, Krithivas resumed and continued to download data, again where Moussaron stopped on the seniority list. Defendants proceeded strictly in seniority order, handing off between themselves and resuming where the other left off without skipping any pilots, evidencing coordinated activity and communication to download the data from the entire roster of SkyWest pilots.

31.     Over the next seven hours on September 3, 2025, Krithivas accessed and downloaded 4,970 pilots' personnel records, including home addresses and personal phone numbers.

32.     After Krithivas' mass download, Moussaron conducted several additional sessions from October 18, 2025, to December 8, 2025, mostly from his home IP address in Minnesota, to access and download employee data for new hire pilots as they were added to the seniority list.

33.     Throughout these sessions, on information and belief, Defendants used a web developer tool or computer program to access restricted fields—including personal home addresses and cell phone numbers—that were not accessible to their user roles and beyond their authorized permissions. Additionally, the cadence, sequencing, and volumes recorded by SkyWest IT support the inference that Defendants were using other computer

program scripts or automated tools to scrape the SWOL directory at scale. Upon information and belief, the coordinated hand-offs and sequential scraping reflected in SkyWest's IT logs demonstrate that Defendants acted as agents of one another with respect to the conduct alleged herein. Each Defendant authorized and ratified the other's access and use of SWOL data, acted on the other's behalf, and operated within the course and scope of that agency; accordingly, each is liable for the acts of the other.

34.     Defendant Moussaron has substantial technical experience with scripting and developer tools—including Python, JavaScript, HTML, and API testing/automation tools—and has led software integrations in airline systems, with experience in enterprise identity and cloud platforms. Additionally, he has founded multiple airline travel-related technology businesses, including Adamo Systems, Inc. and Dorrus, Inc. This background supports the inference that Moussaron was able to utilize his technical skills and tools to impermissibly access and scrape SWOL's pilot directory at scale, as described herein, and continues to use his expertise to misuse SkyWest's Confidential Information.

35.     The pilot employee information accessed and downloaded by Defendants was Confidential Information as defined by their NDAs. SkyWest did not authorize Defendants to access, compile, export, or disclose this information for any purpose outside of legitimate SkyWest business operations. Defendants' conduct violated SkyWest policies and their contractual obligations under the NDAs.

36.     On information and belief, Defendants have transmitted, shared, sold and/or disseminated SkyWest's Confidential Information to one or more third parties in violation of their NDAs and SkyWest company policies. Shortly after Defendants' last download session on December 8, 2025, SkyWest pilots were sent mass messages on their personal cell phones regarding matters unrelated to legitimate SkyWest business operations. The communications originated from non-SkyWest numbers and platforms and were not authorized by SkyWest. On information and belief, Defendants, or persons acting in concert with them, used the compiled Company Directory data—including personal phone numbers and, upon information and belief, home addresses—to facilitate and distribute those communications.

37.     On information and belief, Defendants are actively using and misappropriating SkyWest's Confidential Information for their own purposes and not in connection with any authorized uses as dictated by their employment relationship with SkyWest. In January 2026, SkyWest received a complaint from a pilot who said he had received an unsolicited call to his personal phone promoting an outside effort unrelated to legitimate SkyWest business. The caller said he was a SkyWest employee and claimed that "we have some really smart people" who had found a backdoor to the company directory to obtain pilot contact numbers. On information and belief, the caller was acting in concert with Defendants and using SkyWest Confidential Information impermissibly obtained from SWOL to contact this pilot.

38.     On information and belief, Defendants plan, if not enjoined by a court, to continue to use, exploit, and/or disseminate SkyWest's Confidential Information for their own benefit or the benefit of other third parties and to the detriment of SkyWest and its employees.

39.     Defendants' actions have caused and continue to cause harm to SkyWest, including loss of control over SkyWest's Confidential Information, harm to employee privacy and trust, security risks with the unauthorized circulation of pilot contact and location information, disruption to business operations, and the diversion of substantial resources to investigate, contain, and remediate the incident. The recovery of money damages from Defendants cannot fully compensate SkyWest for the harm caused to it by Defendants' actions.

40.     SkyWest has incurred, and will continue to incur, "loss" within the meaning of 18 U.S.C. § 1030(e)(11) exceeding $5,000 in a one-year period, including costs associated with forensic investigation, incident response, system analysis and hardening, legal and compliance evaluation, and employee communications.

## **FIRST CAUSE OF ACTION**

### **(Breach of Contract against Defendants)**

41.     SkyWest incorporates by reference all other paragraphs of this Complaint.

42.     Both Moussaron and Krithivas executed NDAs with SkyWest. *See* Ex. A. Moussaron agreed and entered into a Confidentiality & Nondisclosure Agreement on

February 10, 2022, and Krithivas agreed and entered into a Confidentiality & Nondisclosure Agreement on September 16, 2021.

43.    The NDAs are valid, enforceable contracts between SkyWest and each Defendant.

44.    Pursuant to the NDAs, Defendants agreed to not disclose, divulge, or otherwise communicate Confidential Information. Defendants further agreed to not use Confidential Information for their own purposes, other than in connection with an authorized use.

45.    Confidential Information under the NDAs includes SkyWest business records, client lists and contact information, and employee data (including personnel records and other benefits information). The SWOL employee directory data—including SkyWest employee numbers, personal cell phone numbers, and home addresses—and any compiled lists or exports of that data constitute Confidential Information.

46.    At all relevant times, SkyWest performed its obligations under the NDAs.

47.    Defendants materially breached the NDAs by using Confidential Information for their own purposes outside any authorized employment-related use, including by scraping, compiling, exporting, and retaining SWOL directory data at scale and accessing restricted fields (including without limitation personal cell phone numbers and home addresses) beyond their role-based permissions.

48.    On information and belief, Defendants further breached the NDAs by disclosing, transmitting, or otherwise communicating Confidential Information to one or more third parties, and by coordinating with each other to obtain and use that information.

49.    SkyWest did not authorize Defendants' use or disclosures of SkyWest's Confidential Information.

50.    As a result of Defendants' breaches, SkyWest has suffered and continues to suffer damages in an amount to be proven at trial.

### SECOND CAUSE OF ACTION

**(Breach of the Implied Covenant of Good Faith and Fair Dealing against Defendants)**

51.    SkyWest incorporates by reference all other paragraphs of this Complaint.

52.    SkyWest and each Defendant entered into valid and enforceable NDAs. Under Utah law, every contract includes an implied covenant of good faith and fair dealing, which requires the parties to act in good faith and not intentionally do anything to injure the other party's right to receive the benefits of the contract.

53.    The NDAs confer on SkyWest the contractual benefits of maintaining the confidentiality of its employee data and business records, limiting use and disclosure to authorized employment purposes, and requiring return or destruction of Confidential Information upon request.

54.    Defendants breached the implied covenant by acting in bad faith and engaging in conduct that frustrated SkyWest's contractual rights and reasonable expectations, including: circumventing role-based permissions to access restricted fields; scraping, compiling, exporting, and retaining large datasets of employee personal phone numbers and home addresses for unauthorized purposes; and, upon information and belief, sharing or disseminating this information to third parties.

55.    As a direct and proximate result of Defendants' breaches of the implied covenant, SkyWest has incurred, and will continue to incur, damages.

## THIRD CAUSE OF ACTION

### (Computer Fraud and Abuse Act against Defendants)

56.    SkyWest incorporates by reference all other paragraphs of this Complaint.

57.    SkyWest Online ("SWOL") is a "protected computer" within the meaning of 18 U.S.C. § 1030(e)(2)(B). Access to SWOL requires unique credentials, password authentication, and multifactor authentication, and is governed by role-based permissions that restrict pilots, including Defendants, from accessing certain confidential fields, including personal cell phone numbers and home addresses.

58.    Defendants intentionally accessed SWOL and, without authorization or in excess of authorization, circumvented role-based restrictions to access information they did not have authorization to access, including employees' personal cell phone numbers and home addresses. Upon information and belief, Defendants used web developer tools

to circumvent technological barriers preventing access to such restricted information and used automated programs, bots, or scrapers to download massive amounts of protected data from SWOL.

59.    By accessing this information without authorization or in excess of authorization and thereby obtaining information from a protected computer, Defendants violated 18 U.S.C. § 1030(a)(2)(C).

60.    In the alternative and in addition, Defendants knowingly and with intent to defraud accessed a protected computer without authorization or exceeded authorized access, and by means of such conduct furthered the intended fraud and obtained things of value, including downloading and compiling datasets of protected SkyWest employee personnel records, in violation of 18 U.S.C. § 1030(a)(4).

61.    As a direct and proximate result of Defendants' conduct, SkyWest has incurred "loss" within the meaning of 18 U.S.C. § 1030(e)(11), including the costs of responding to the offense; conducting forensic investigation and damage assessment; analyzing, remediating, and hardening systems; legal and compliance evaluation; and employee notifications and communications. SkyWest's losses aggregate to at least $5,000 during a one-year period and substantially exceed that amount.

62.    SkyWest faces ongoing risk of harm from Defendants' possession, use, and potential dissemination of the information obtained from SWOL. Under 18 U.S.C. §

1030(g), SkyWest is entitled to injunctive and other equitable relief to prevent further violations and to remediate the harm.

## FOURTH CAUSE OF ACTION

### (Utah Computer Abuse and Data Recovery Act (UCADRA) against Defendants)

63.    SkyWest incorporates by reference all preceding paragraphs of this Complaint.

64.    SkyWest Online ("SWOL") is a "protected computer" within the meaning of UCADRA. SkyWest owns and controls SWOL. Access to SWOL requires unique credentials, password authentication, and multifactor authentication, and is governed by technological access barriers, including role-based permissions that prevent pilots from viewing restricted fields such as personal cell phone numbers and home addresses.

65.    Defendants are "unauthorized users" under UCADRA because they accessed SWOL to obtain information they were not authorized to access and circumvented technological access barriers (including role-based permissions and other technical controls) to retrieve restricted fields. Moreover, Defendants' permissions to access SWOL were valid only to the extent or for the specific purposes authorized by SkyWest policy and Defendants' respective NDAs; any access outside of those permissions was without and/or in excess of authorization.

66.     Defendants obtained information from a protected computer and, as a result of that conduct, caused harm and loss to SkyWest, in violation of Utah Code § 63D-3-104(1)(a).

67.     In addition and in the alternative, Defendants caused the transmission of a program, code, or command to SWOL—including the use of scripts or automated tools—to extract restricted information, and as a result of that transmission caused harm and loss to SkyWest, in violation of Utah Code § 63D-3-104(1)(b).

68.     As a direct and proximate result of Defendants' conduct, SkyWest has incurred and will continue to incur harm and loss.

69.     Pursuant to UCADRA's fee-shifting provision, SkyWest seeks an award of reasonable attorneys' fees and costs as the prevailing party.

## FIFTH CAUSE OF ACTION

### (Breach of Fiduciary Duties Against Defendants)

70.     SkyWest incorporates by reference all preceding paragraphs of this Complaint.

71.     During their employment with SkyWest, Defendants owed SkyWest fiduciary duties, including a duty of loyalty and a duty to act in good faith in the interests of SkyWest, to safeguard SkyWest's confidential information, and not to use SkyWest's property or confidential information for personal purposes or to act adversely to SkyWest.

72.     At all relevant times, Defendants were entrusted with SWOL access credentials subject to role-based permissions and policies restricting access to and use of confidential employee data, including personal cell phone numbers and home addresses. Krithivas remained a SkyWest employee on September 3, 2025; both Defendants' duties extended to the period of their employment and, with respect to confidential information obtained during employment, thereafter.

73.     Defendants breached their fiduciary duties by, among other things: circumventing SkyWest's role-based permissions and technical controls; scraping, compiling, exporting, and retaining large datasets of employee personal contact information for unauthorized purposes; coordinating sequential extraction and handoffs between sessions; using and/or disclosing confidential information to third parties; and failing to return or destroy SkyWest's confidential information upon request. Defendants' conduct was adverse to SkyWest's interests and undertaken for their own purposes.

74.     Defendants' breaches were willful, malicious, and in conscious disregard of SkyWest's rights and employee privacy.

75.     As a direct and proximate result, SkyWest has suffered and will continue to suffer damages.

## SIXTH CAUSE OF ACTION

### (Conspiracy against Defendants)

76.     SkyWest incorporates by reference all preceding paragraphs of this

Complaint.

77.     Defendants combined, agreed, and acted in concert with one another to accomplish an unlawful objective: to obtain, compile, retain, use, and disseminate SkyWest's confidential employee contact information from SWOL's restricted fields; to evade SkyWest's confidentiality obligations and technical access controls; and to cause or facilitate breaches of duties and contracts owed to SkyWest.

78.     Defendants reached a meeting of the minds on this objective and course of action, as evidenced by their coordinated conduct on September 3, 2025.

79.     In furtherance of the conspiracy, Defendants committed one or more unlawful overt acts, including but not limited to: intentionally exceeding authorized access to SWOL to obtain restricted information; transmitting scripts, code, or commands to extract data; violating SkyWest's policies and confidentiality obligations; breaching fiduciary duties of loyalty; and intentionally interfering with SkyWest's contractual NDAs. Such acts constitute violations of law and torts, including the Computer Fraud and Abuse Act (18 U.S.C. § 1030), the Utah Computer Abuse and Data Recovery Act (Utah Code § 63D-3-104), and breach of fiduciary duty.

80.     As a direct and proximate result of Defendants' civil conspiracy and overt acts, SkyWest has suffered and will continue to suffer damages.

81.     Defendants are jointly and severally liable for the damages caused by the conspiracy and the underlying unlawful acts.

## SEVENTH CAUSE OF ACTION

### (Declaratory Judgment against Defendants)

82.    SkyWest incorporates by reference all preceding paragraphs of this Complaint.

83.    An actual, justiciable controversy exists between SkyWest and Defendants concerning the parties' rights and obligations regarding SkyWest's confidential employee directory data obtained from SWOL, Defendants' possession and use of that data, and Defendants' contractual and legal duties under the NDAs and applicable computer-access laws.

84.    SkyWest contends the NDAs are valid and enforceable; that the employee directory data (including personal cell phone numbers and home addresses) is Confidential Information under the NDAs; that Defendants materially breached the NDAs by possessing, using, or disclosing such information outside authorized employment purposes or to third parties; and that Defendants impermissibly accessed a protected computer to obtain restricted information. Defendants' conduct, refusal to return/confirm deletion, and ongoing risk of dissemination create the need for immediate declaratory relief to guide the parties' conduct and prevent further harm.

85.    Pursuant to 28 U.S.C. § 2201 and Rule 57, SkyWest seeks a speedy hearing and a declaration that:

a.      The NDAs are valid and enforceable contracts between SkyWest and

each Defendant;

b.      SkyWest's employee directory data, including personal cell phone

numbers and home addresses obtained from SWOL, constitutes

Confidential Information under the NDAs;

c.      Defendants breached the NDAs by using and/or disclosing

Confidential Information outside authorized employment purposes

and by failing to return or destroy such information upon request;

d.      Defendants, without authorization or in excess of authorization,

accessed a protected computer and obtained information in violation

of 18 U.S.C. § 1030(a)(2)(C) and/or otherwise violated applicable

computer-access restrictions;

e.      Defendants have no right to possess, use, or disclose SkyWest's

Confidential Information and must return and delete all copies; and

f.      SkyWest is entitled to injunctive and equitable relief to prevent

further use or disclosure and to remediate the harm, including

specific performance of return/deletion and identification of

recipients.

## **REQUEST FOR INJUNCTIVE RELIEF**

86.     SkyWest incorporates by reference all preceding paragraphs of this

Complaint.

87.     Absent immediate injunctive relief, SkyWest is suffering and will continue to suffer ongoing and irreparable harm, including loss of control over thousands of employees' personal information, damage to employee privacy, trust, and goodwill, and the risk of rapid, untraceable dissemination of SWOL-derived data. Money damages alone cannot fully remedy these harms.

88.     SkyWest has demonstrated a substantial likelihood of success on the merits of its claims against Defendants, based on the agreements at issue and the underlying facts.

89.     The irreparable injury that SkyWest faces far outweighs any injury that Defendants would sustain if injunctive relief were granted.

90.     Injunctive relief would not adversely impact the public interest. To the contrary, it would advance the public interest by protecting employee privacy and safeguarding personally identifiable information; deterring unauthorized access to and misuse of protected computer systems; enforcing valid confidentiality agreements; and preventing further dissemination and exploitation of sensitive data.

91.     Pursuant to Fed. R. Civ. P. 65 and 28 U.S.C. § 2202, SkyWest requests a preliminary injunction, and thereafter a permanent injunction, narrowly tailored to stop ongoing harm and restore the status quo, ordering as follows:

a. Enjoin Defendants from using, disclosing, transmitting, selling, or otherwise exploiting any SkyWest Confidential Information, including any compiled list or derivative containing employee directory data.

b. Enjoin Defendants from contacting or soliciting any SkyWest employee using SkyWest Confidential Information or any derivative thereof.

c. Enjoin Defendants from accessing SWOL or any SkyWest system, and from using any automated tools, scripts, scrapers, or other means to circumvent role-based permissions, MFA, or technical controls.

d. Enjoin Defendants from destroying, altering, wiping, or concealing evidence, including devices, accounts, scripts, logs, and compiled datasets related to their access, scraping, storage, or dissemination of SkyWest Confidential Information.

e. Order Defendants, within ten days of the Court's order, to identify and turn over for forensic inspection all computers, mobile phones, external storage media, and any cloud or messaging accounts reasonably likely to contain SkyWest Confidential Information, to a mutually agreed independent forensic examiner. The inspection shall be limited to creating forensic images and locating, preserving, and

reporting on SkyWest Confidential Information and related artifacts (including datasets, logs, scripts, and transmission records), without accessing unrelated personal content. Defendants shall provide necessary credentials to access any accounts reasonably likely to contain SkyWest Confidential Information and disable any encryption, auto-deletion, or remote-wipe features to permit imaging; the examiner shall promptly return physical devices after imaging; and the examiner shall provide a chain-of-custody report, a listing of locations where SkyWest Confidential Information resides, and copies of any SkyWest-derived datasets in native format pending.

## **PRAYER FOR RELIEF**

Wherefore, SkyWest demands a trial by jury and prays for relief against Defendants as follows:

1. General and special damages in an amount to be proven at trial.

2. Preliminary and/or Permanent Injunctive Relief (as set forth above) or other equitable relief (including Specific Performance) as the Court deems just and proper;

3. Punitive damages.

4. Declaratory judgment under 28 U.S.C. §§ 2201–02.

5.      Pre- and post-judgment interest as permitted by law.

6.      Attorneys' fees and costs.

7.      Such other and further legal, equitable, and declaratory relief as the Court deems just and proper to prevent ongoing harm.

Dated this 30th day of January, 2026

HOLLAND & HART LLP

/s/ *Gregory M. Saylin*

Gregory M. Saylin
Zachary T. Burford
Tyler S. Erickson

*Attorneys for Plaintiff SkyWest Airlines, Inc.*

36840490

26