Gregory M. Saylin, #9648
Zachary T. Burford, #19771
Tyler S. Erickson, #19523
HOLLAND & HART LLP
222 South Main Street, Suite 2200
Salt Lake City, UT 84101-2194
Telephone: 801.799.5800
GMSaylin@hollandhart.com
ZTBurford@hollandhart.com
TSErickson@hollandhart.com

*Attorneys for Plaintiff SkyWest Airlines, Inc.*

---

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH - SOUTHERN DIVISION

| | |
|---|---|
| SKYWEST AIRLINES, INC.,<br><br>      Plaintiff,<br><br>vs.<br><br>DANIEL MOUSSARON, and VIKAAS KRITHIVAS,<br><br>       Defendants. | **PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR PRELIMINARY INJUNCTION**<br><br>**[REDACTED VERSION]**<br>**(Exhibit A-2 of the Declaration of Justin Esplin is Filed Under Seal)**<br>**EXPEDITED REVIEW REQUESTED**<br><br>Civil No. 4:26-cv-00015-DN<br><br>Senior District Judge David Nuffer |

As alleged in the Complaint and supported by the Declaration of Justin Esplin (attached as **Exhibit A**) and associated exhibits, Defendants Daniel Moussaron and Vikaas Krithivas coordinated an automated extraction of thousands of pilots' personnel records—including personal cell phone numbers and home addresses—from SkyWest's internal, login-protected portal, SkyWest Online ("SWOL"), and then used that data to send mass communications to

SkyWest pilots for purposes inconsistent with SkyWest's business. What is apparent is that Defendants stole SkyWest's data and are actively using it. Securing and protecting SkyWest's data requires emergency action. Defendants' hacking was in direct violation of their Confidentiality and Non-Disclosure Agreements ("NDAs") with SkyWest and federal and state law. SkyWest does not yet know the full scope of Defendants' possession, use, or dissemination of the dataset; accordingly, SkyWest requests an *ex parte* temporary restraining order and/or preliminary injunction directed at preventing further use and dissemination and preserving evidence.

Pursuant to Rule 65 of the Federal Rules of Civil Procedure, Plaintiff SkyWest Airlines, Inc. ("SkyWest") moves *ex parte* for a narrowly tailored temporary restraining order ("TRO") and preliminary injunction to immediately halt Defendants Daniel Moussaron and Vikaas Krithivas's ("Defendants") ongoing misuse and dissemination of SkyWest's confidential employee directory data and to preserve evidence. Through a concurrently filed motion, SkyWest also seeks expedited discovery prior to the Rule 26(f) conference to determine where its data resides, how it has been used or transmitted, who has received it, and what platforms, devices, or collaborators are involved. SkyWest respectfully requests expedited consideration of these motions because irreparable harm will occur before the Court could hear the matter under the ordinary briefing schedule.

## IMMEDIATE RELIEF REQUESTED

SkyWest respectfully requests that the Court enter a temporary restraining order for the maximum period permitted by law from the date on which the Court grants this Motion and until

the Court holds a hearing on SkyWest's request for a preliminary injunction, and thereafter a

preliminary injunction, ordering as follows:

1.  Defendants, and all persons acting in concert with them, are enjoined from using, disclosing, transmitting, selling, or otherwise exploiting any SkyWest Confidential Information, including without limitation any compiled list or derivative containing employee directory data (e.g., names, employee IDs, job titles, supervisor information, department codes, base locations, hire dates, personal cell phone numbers, and home addresses) obtained from SkyWest Online (SWOL) or other SkyWest systems. Defendants, and all persons acting in concert with them, are specifically enjoined from contacting or soliciting any SkyWest employee using SkyWest Confidential Information or any derivate thereof.

2.  Defendants are enjoined from destroying, altering, wiping, encrypting, or concealing any evidence related to their access, collection, scraping, storage, use, or dissemination of SkyWest Confidential Information, including without limitation devices, accounts, datasets, logs, scripts, source code, messaging platform accounts, campaign records, call/text content and metadata, and payment records. Defendants must suspend any auto-delete or remote-wipe settings on relevant devices and accounts.

3.  Within ten days of the Court's order, Defendants must identify and make available to an independent forensic examiner engaged by SkyWest all computers, laptops, iPads or similar devices, mobile phones, external storage media, and any cloud, email, or messaging accounts reasonably likely to contain SkyWest Confidential Information. Defendants must provide necessary credentials and disable any encryption, auto-deletion, or remote-wipe features to permit imaging. The examiner's inspection shall be limited to creating forensic images and locating, preserving, and reporting on SkyWest Confidential Information and related artifacts (including datasets, logs, scripts, and transmission records), without accessing unrelated personal content. The examiner shall promptly return physical devices after imaging and provide: (a) a chain-of-custody report; (b) a listing of locations (devices/accounts/paths) where SkyWest Confidential Information resides; and (c) copies of any SkyWest-derived datasets in native format.

SkyWest further respectfully requests that the Court schedule an expedited hearing on

SkyWest's request for a preliminary injunction. Following a hearing on SkyWest's Motion for

Preliminary Injunction, SkyWest further requests that the Court order that Defendants are

preliminarily enjoined, starting from the date of the entry of the Court's Order, from engaging in the conduct set forth in Paragraphs 1–3, above, until such time as such preliminary injunction is replaced by a permanent injunction issued by this Court or otherwise dissolved.

## FACTUAL BACKGROUND

### A.    SkyWest and SWOL

SkyWest is a major regional airline headquartered in St. George, Utah, employing over five thousand pilots. Ex. A, Esplin Decl. ¶ 3. SkyWest maintains a secure, internal, login-protected employee intranet portal known as SkyWest Online ("SWOL") that is used by employees to review and make changes to benefits and personal information, view company news and alerts, and access other employment-related information. *Id.* ¶ 5. SWOL includes a Company Directory that stores each employee's record; the employee record includes personal and employment information, such as employee number, job title, hire date, supervisor, base location, and personal cell phone and residence address. *Id.* ¶¶ 7–8; Compl. ¶ 13.

SWOL applies tiered, role-based permissions to the Company Directory such that certain executive, HR, and management roles may view all available fields, while front-line or entry-level users are restricted to basic business-contact fields such as employee name, base/location, and supervisor. Compl. ¶ 14; Ex. A, Esplin Decl. ¶¶ 6–8. Although the Company Directory's underlying record contains additional fields—including employees' personal cell phone numbers and home addresses—SWOL's technical controls govern which fields a given user role can display in the user interface or retrieve from the system. *Id.* Front-line pilots, who comprise the large majority of pilots (over 99%), cannot view personal cell phone numbers or home addresses and are authorized to use SWOL only for legitimate operational needs, such as

4

scheduling. *Id.* SkyWest's policies further prohibit compiling, exporting, scraping, or mass-downloading directory data on SWOL and limit use of directory information to authorized employment purposes. Compl. ¶ 15; Ex. A, Esplin Decl. ¶ 8.

**B.    Defendants' Confidentiality and Nondisclosure Agreements**

As a condition of employment, both Defendant Daniel Moussaron and Defendant Vikaas Krithivas executed Confidentiality and Nondisclosure Agreements ("NDAs") with SkyWest. Compl. ¶ 16; Ex. A, Esplin Decl. ¶¶ 27–29; Ex. A-1, NDAs. In those NDAs, Defendants acknowledged that "during the course of employment with SkyWest, they may become aware of certain information that, if disclosed, has the potential to harm other employees or the SkyWest corporate entity." Ex. A-1, NDAs. The NDAs define "Confidential and Privileged Information" to include "SkyWest business records and any terms relating thereto, trade secrets, contracts, business plans, financial statements, marketing strategies, client lists and contact information, and methods of conducting or obtaining business," as well as "***employee data*** in the form of personnel records, background check information, medical records and other benefits information." *Id.* (emphasis added). The NDAs further provide that "all such information is considered confidential and privileged no matter how it is communicated—in writing, via electronic communications, or by conversation." *Id.*

Under the NDAs, Defendants agreed that they "will not disclose, divulge, or otherwise communicate at any time or in any manner, to any party other than those employees of SkyWest as necessary, any Confidential Information, either during or subsequent to employment." *Id.* They further agreed not to "use Confidential Information for their own purposes, other than in connection with authorized uses as dictated by the employment relationship, or to disclose any

Confidential Information to others." *Id.* The NDAs require Defendants "upon the request of SkyWest," to "return or destroy, as directed, all Confidential and Privileged Information in tangible form[.]" *Id.* The NDAs are governed by Utah law and designate Utah courts, including the applicable United States District Court, as the forum for actions pertaining to the agreement. *Id.*

## C.    Defendants Hack SWOL and Download Massive Amounts of Employee Data

In January 2026, SkyWest's IT security team discovered unusual access patterns in SWOL indicating systematic extraction of pilot contact information by Defendants that was inconsistent with normal operational use. Ex. A, Esplin Decl. ¶¶ 9–10. SkyWest's internal investigation uncovered that Defendants conducted a coordinated scheme to impermissibly access and download employee data for over 5000 SkyWest pilots over the course of a few months. *Id.* ¶¶ 9–12; Ex. A-2, SWOL Logs.

On August 29, 2025, Defendant Moussaron initiated the scheme when he used his SkyWest employee ID, password, and multifactor authentication to log into SWOL while physically present in Duluth, Minnesota, and later that evening in Winnipeg, Manitoba. Ex. A, Esplin Decl. ¶ 14. During that initial session, Defendant Moussaron accessed restricted contact information for two pilots—including personal cell phone numbers and home addresses—that were not accessible to him as a front-line pilot. *Id.* Later, on August 20, 2025, Defendant Moussaron again accessed and downloaded confidential data on another SkyWest pilot multiple times from his Winnipeg hotel. *See* Ex. A-2, SWOL Logs.

The next day, while still at the Winnipeg Holiday Inn, Defendant Moussaron accessed directory data for 18 different pilots starting with SkyWest's pilot seniority list and proceeding in

sequential order down the list. Ex. A, Esplin Decl., ¶ 15. On September 1, 2025, on a two-and-a-half-hour layover at Minneapolis–St. Paul International Airport, Moussaron again logged onto SWOL to continue scraping data. *Id.* ¶ 16. He continued to pull data through September 2, 2025; he stopped at the 56th pilot on SkyWest's seniority list. Ex. A-2, SWOL Logs.

On September 3, 2025, Defendants executed a coordinated seven-hour extraction of data. Ex. A, Esplin Decl. ¶¶ 18–20. While listed as on "vacation" in his SkyWest schedule, Defendant Krithivas began pulling data from SWOL from an AT&T IP address in Chicago, Illinois, which he had previously used to access SWOL. *Id.* ¶ 19. Krithivas started pulling data at the 57th pilot on the seniority list, right where Moussaron had left off from his last session. *Id.*; Ex. A-2, SWOL Logs. Throughout the day, Defendants continued to pull data from SWOL in an alternating fashion, handing off between each other as they progressed down the entirety of the seniority list. Compl. ¶ 30; Ex. A, Esplin Decl. ¶¶ 19–20; Ex. A-2, SWOL Logs.

During this seven-hour session, Defendants extracted confidential data for over 4,970 pilots. Compl. ¶¶ 30–32; Ex. A, Esplin Decl., ¶ 20; Ex. A-2, SWOL Logs. According to SkyWest's logs of the incident, the extractions performed by both Defendants during this session were done at identical six-second intervals, strongly suggesting that Defendants used automated tools or scripts to mass extract the data. Ex. A, Esplin Decl., ¶ 20; Ex. A-2, SWOL Logs. Thereafter, between October 18, 2025 and December 8, 2025, Defendant Moussaron returned for additional sessions, primarily from his home IP address in Minnesota, to access and download employee data for newly hired pilots as they were added to the seniority list. Ex. A, Esplin Decl. ¶ 21.

In total, SkyWest's forensic analysis shows that Defendants accessed and obtained more than 5,300 pilot records containing confidential information, including names, employee identification numbers, job titles, supervisor information, department codes, base locations, hire dates, personal cell phone numbers, and home addresses. Ex. A, Esplin Decl., ¶ 22. Throughout these sessions, Defendants, on information and belief, used developer tools and automated scripts to bypass SWOL's access restrictions and scrape the directory at scale, as evidenced by log patterns showing suspicious cadence, sequencing, and volumes. Compl. ¶ 33.

**D.    Subsequent Use of Data and Ongoing Harm**

Shortly after the last download on December 8, 2025, SkyWest pilots began receiving mass messages and unsolicited calls on their personal phones from non-SkyWest numbers and platforms regarding matters unrelated to legitimate SkyWest business. Compl. ¶ 36; Ex. A, Esplin Decl. ¶¶ 23–25. In January 2026, a pilot reported a call from a person claiming to be a SkyWest employee and stated that "we have some really smart people" who had found a backdoor to the company directory to obtain pilot contact numbers. Ex. A, Esplin Decl., ¶ 24. Based on the timing, content, and origin of these communications, SkyWest believes Defendants sold, used and shared the compiled directory data with third parties to facilitate outreach to SkyWest pilots for purposes adverse to SkyWest's business. Compl. ¶¶ 36–38; Ex. A, Esplin Decl.. ¶¶ 23–25, 31.

The stolen directory data is non-public and highly sensitive. Ex. A, Esplin Decl.. ¶ 28. It includes personal cell phone numbers and home addresses for thousands of pilots. *Id.* This information is valuable to SkyWest because employee privacy, safety, trust, and operational integrity depend on controlling access to it. *Id.* ¶¶ 8, 26. If disseminated outside SkyWest's

systems, the data can be rapidly copied, redistributed, and used for mass messaging, social engineering, phishing, harassment, and other misuse, creating ongoing harm that cannot be fully remedied by money. *Id.* It also disrupts operations and forces SkyWest to divert resources to incident response and remediation. *Id.* ¶ 25. The harm grows each day as this confidential information spreads to unknown recipients and is used for improper purposes. Compl. ¶¶ 36–38. Defendants' demonstrated technical sophistication and use of automation amplifies the risk of continued harm, as they can keep transferring the data to new accounts or devices, or wipe evidence in minutes if not restrained. Ex. A, Esplin Decl., ¶ 32; *see also* Ex. A-4, Moussaron Resume. Immediate, narrowly tailored injunctive relief is necessary to stop further use and spread and to preserve what evidence remains.

**E.      SkyWest Attempts to Resolve Matter Outside of Litigation.**

After SkyWest discovered the scheme in January 2026, it acted immediately. Ex. A, Esplin Decl., ¶ 34. On January 26, 2026, SkyWest served cease-and-desist letters on both Defendants demanding that they stop using and sharing SkyWest data, preserve all copies, and make their devices and accounts available for forensic inspection. *See* Ex. A-3, Cease-and-Desist Letters. Defendant Moussaron denied any involvement or improper conduct. Ex. A, Esplin Decl., ¶ 34. SkyWest gave both Defendants an opportunity to cure by returning and permanently deleting all SkyWest-derived data, preserving evidence, and providing sworn assurances that SkyWest's systems and employee information were secure. *Id.* Defendants failed to provide the requested assurances or to comply, leaving SkyWest with no choice but to file this action. *Id.*

## ARGUMENT

SkyWest seeks a narrowly tailored temporary restraining order preserving the status quo

and preventing Defendants from further using or disseminating SkyWest's Confidential Information.

The standard for a temporary restraining order is the same as a preliminary injunction. *Sierra Club, Inc. v. Bostick*, 539 F. App'x 885, 888 (10th Cir. 2013) (quotation omitted); *Ponce v. Mortensen*, 2025 U.S. Dist. LEXIS 59233, at *7 –8 (D. Utah Mar. 28, 2025). The Plaintiff must show: (1) a substantial likelihood of success on the merits; (2) irreparable harm to the movant if the injunction is denied; (3) the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect public interest. *Gen. Motors Corp. v. Urban Gorilla, LLC,* 500 F.3d 1222, 1226 (10th Cir. 2007).

"[W]here the moving party has established that the three 'harm' factors tip decidedly in its favor, the 'probability of success' requirement is relaxed. In such cases, '[t]he movant need only show questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation.'" *Star Fuel Marts, LLC v. Sam's E., Inc*., 362 F.3d 639, 653 (10th Cir. 2004) (internal citations omitted) (quoting *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1188 (10th Cir. 2003)).

**A.    SkyWest Will Suffer Irreparable Harm Unless the Injunction Issues**.

In the absence of a preliminary injunction, SkyWest will certainly suffer irreparable harm if Defendants are allowed to continue to freely misuse and disseminate SkyWest's data.

In the Tenth Circuit, "a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, [and] the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an

10

injunction will be considered." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004) (internal quotation marks and citations omitted). "Thus, 'the party seeking injunctive relief must show that the injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm.'" *Drummond v. Veritas Funding, Ltd. Liab. Co*, 2021 U.S. Dist. LEXIS 181317, at *10 (D. Utah Sep. 21, 2021) (quoting *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003)). "This typically involves the type of injury that cannot be remedied with money or when a remedy cannot be fashioned following a determination on the merits." *Id.* at *10–11. Tenth Circuit courts have recognized that "loss of reputation, good will, [and] marketing potential," along with the "erosion of [movant's] competitive position" are "the type of factors that district courts should consider" in evaluating the movant's irreparable harm contentions. *DTC Energy Grp. v. Hirschfeld*, 912 F.3d 1263, 1272 (10th Cir. 2018); *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1156 (10th Cir. 2001).

Consistent with those principles, courts repeatedly hold that the misuse of confidential information causes injuries not adequately remediable by money damages, and that it is difficult to precisely quantify the harm caused by misappropriation and use of confidential data. *See Paparazzi, LLC v. Sorenson*, No. 4:22-cv-00028-DN, 2022 U.S. Dist. LEXIS 91431, at *9 (D. Utah May 20, 2022) ("[T]here is a need to act promptly because [Plaintiff's] Confidential Information has been obtained and distributed. Once distributed, confidential information is very hard to protect and recover."); *Bill.com, LLC v. Cox*, 2023 U.S. Dist. LEXIS 11065, at *1–3 (D. Utah Jan. 21, 2023) (finding irreparable harm and granting TRO where defendant, in breach of her confidentiality agreement, mass downloaded thousands of emails and other data); *Cmi*

*Roadbuilding, Inc. v. Specsys, Inc.*, 2024 U.S. Dist. LEXIS 170116, at *11 (W.D. Okla. Sep. 20, 2024) ("A threat of imminent irreparable harm exists where the defendant is in possession of the plaintiff's confidential information and is poised to use or disclosed it."); *Lothamer Tax Resol., Inc. v. Kimmel*, 2025 U.S. Dist. LEXIS 201720, at *8 (W.D. Mich. Sept. 19, 2025) (holding that the defendant's "retention of [plaintiff's] information still increases the likelihood that someone else will be able to access [plaintiff's] proprietary code or sensitive client information" and "creates a risk that [defendant] will be tempted to use it.").

SkyWest's injuries fit squarely within these categories and are already occurring. SkyWest goes to great lengths to protect the confidentiality of its employee directory and related contact information by requiring unique credentials and multifactor authentication, limiting access based on employee role, and protecting this information pursuant to confidentiality agreements. Ex. A, Esplin Decl., ¶¶ 6–8. SkyWest considers that confidentiality invaluable to its operations and to the trust and safety of its workforce. *Id.* ¶¶ 10, 29.

Defendants jeopardized that trust and safety when they mass downloaded and used that information to contact and solicit SkyWest's entire pilot workforce for non-SkyWest matters. Compl. ¶¶ 31–37; Ex. A, Esplin Decl. ¶¶ 23–26. Defendants' continued possession of that information alone warrants injunctive relief. *See, e.g.*, *Lothamer*, 2025 U.S. Dist. LEXIS 201720, at *6–7 (W.D. Mich. Sept. 19, 2025) ("Even if the Court accepts [Defendants'] assertion that he is not using the confidential information he possesses to compete with [Plaintiff] or to gain unauthorized access to its systems, his retention of this information still increases the likelihood that someone else will be able to access [Plaintiff's] proprietary code or sensitive client information."). But Defendants are still misusing this information. SkyWest has received reports

that pilots continue to receive unsolicited calls to their personal phones promoting an outside effort unrelated to legitimate SkyWest business, with the caller claiming to have "found a backdoor to the company directory." Ex. A, Esplin Decl., ¶ 24. Thus, Defendants are not only actively using this information for non-business purposes, but their use of this information is eroding trust between SkyWest and its pilots.

These communications also show a real risk that Defendants are selling, working with and disseminating SkyWest's Confidential Information with third parties. The calls and texts originated from non-SkyWest numbers and platforms, indicating use of outside messaging services and accounts to transmit SWOL-derived contact lists to and through unknown recipients. Ex. A, Esplin Decl. ¶¶ 23, 26. On information and belief, Defendants have disclosed or made available SkyWest's pilot contact data to one or more third parties and continue to recruit others to assist with access and outreach, creating a widening circle of dissemination that SkyWest cannot control or reverse. *Id.*; Compl. ¶ 36. The identities of any such messaging platform or other third parties are presently unknown, which creates a substantial risk that evidence will vanish, and the data will continue to spread unless the Court intervenes now. Ex. A, Esplin Decl., ¶ 33.

These facts establish a clear and present threat that cannot be remedied with money. The loss of control over private information creates real-world privacy and safety risks for pilots and their families and erodes employee trust and goodwill in ways that are not quantifiable.

**B.    SkyWest Has a Strong Likelihood of Success on the Merits**.

**i.    Breach of Contract**

SkyWest has a substantial likelihood of success of prevailing against Defendants for their

breaches of their respective NDAs. "In order to properly state a claim for a breach of contract under Utah law, a plaintiff must allege '(1) [the existence of] a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages.'" *CounselNow, LLC v. Deluxe Small Bus. Sales Inc.*, 430 F. Supp. 3d 1247, 1254 (D. Utah 2019) (quoting *Am. W. Bank Members, L.C. v. State*, 2014 UT 49, ¶ 15, 342 P.3d 224).

The first element of SkyWest's breach of contract claim is satisfied as Defendants, as a condition of their employment with SkyWest, entered into NDAs. Ex. A, Esplin Decl., ¶¶ 27–28; Ex. A-1, NDAs. Moussaron executed his NDA on February 10, 2022, and Krithivas executed his NDA on September 16, 2021. Ex. A-1, NDAs.

The second element is also satisfied because SkyWest performed all its obligations under the NDAs, including providing Defendants with employment and access to confidential information for purposes of performing their duties. Compl. ¶ 46; Ex. A, Esplin Decl. ¶¶ 5–8.

The third element is satisfied because Defendants breached the use and non-disclosure obligations of their respective NDAs. The NDAs specifically define SkyWest "business records" and "employee data in the form of personnel records, background check information, medical records and other benefits information" as "Confidential and Privileged Information." Ex. A-1, NDAs; Esplin Decl., ¶ 29. The NDAs then prohibit both (a) disclosure "at any time or in any manner" except as necessary for SkyWest business and (b) use of Confidential Information "for their own purposes" outside authorized employment uses. Ex. A-1, NDAs. Front-line pilots, which Defendants were, are not permitted to view personal cell phone numbers or home addresses in SWOL and may use directory information only for legitimate operational needs. Ex. A, Esplin Decl. ¶¶ 7–8.

Defendants nevertheless accessed restricted directory fields—personal cell phone numbers and home addresses—outside their role-based permissions, compiled and retained those fields in datasets, and used that information to send or cause the sending of mass texts and unsolicited calls unrelated to legitimate SkyWest business. Ex. A, Esplin Decl., ¶¶ 9–24. They circumvented SkyWest's technical controls using developer tools and automated scripts. *Id.* ¶ 20; Compl. ¶ 37 (noting caller who claimed they were working with "smart people" who had found a backdoor to the company directory). The employee data that Defendants took and have used falls squarely within the NDA's definition of "Confidential and Privileged Information." *Id.* ¶¶ 8, 29. This conduct constitutes a material breach of the NDAs' non-use and non-disclosure provisions.

Finally, the fourth element for breach of contract—damages—is satisfied. SkyWest has suffered and continues to suffer damages and loss, including incident response costs, forensic investigation and remediation, legal and compliance work, and disruption to operations. Compl. ¶¶ 38–39; Ex., A, Esplin Decl. ¶¶ 25–26. These damages flow directly from Defendants' breaches and their misuse of the stolen directory data to send mass messages and calls. *Id.* On these facts, SkyWest is likely to succeed on its breach-of-contract claim.

### ii.    Computer Fraud and Abuse Act (CFAA)

The CFAA provides a civil cause of action and expressly authorizes injunctive and other equitable relief for a person who suffers damage or loss by reason of a violation, including violations of 18 U.S.C. § 1030(a)(2)(C). 18 U.S.C. § 1030(g). To prevail on § 1030(a)(2)(C), SkyWest must show that Defendants intentionally accessed a protected computer without authorization or exceeded authorized access, obtained information, and caused "loss" aggregating at least $5,000 during a one-year period. *See* 18 U.S.C. §§ 1030(a)(2)(C), (e)(11),

(g); *Accretive Specialty Ins. Sols., LLC v. XPT Partners, LLC*, 2024 U.S. Dist. LEXIS 63250, at *35 (C.D. Cal. Mar. 28, 2024) (holding that plaintiff showed a likelihood of success on CFAA claim and granting injunctive relief).

SkyWest is likely to succeed on its CFAA claim. SWOL is a protected computer that requires unique credentials and multifactor authentication and applies role-based permissions that prevent front-line pilots from viewing restricted fields such as personal cell phone numbers and home addresses. Compl. ¶¶ 11–14, 56–57; Ex. A, Esplin Decl. ¶¶ 5–7; *see also Vox Mktg. Grp. v. Prodigy Promos*, 556 F. Supp. 3d 1280, 1284 (D. Utah 2021) ("A 'protected computer' is defined broadly to include any computer 'which is used in or affecting interstate or foreign commerce or communication.'" (quoting 18 U.S.C. § 1030(e)(2)(B))). The forensic record shows Defendants intentionally accessed SWOL, in excess of authorization or without authorization, by circumventing those technical barriers with the use of developer tools and automated scraping programs to retrieve restricted fields at scale that they were not entitled to access, thereby obtaining information from a protected computer. Ex. A, Esplin Decl. ¶¶ 9, 14–20. Defendants then used that information to send or cause to be sent mass texts from non-SkyWest numbers and unsolicited calls to pilots. *Id.* ¶¶ 23–26. SkyWest has incurred "loss" well in excess of $5,000 in a one-year period, including costs of responding to the offense; conducting forensic investigation and damage assessment; and remediating and hardening its systems against further hacks. Compl. ¶¶ 40, 61; Ex. A, Esplin Decl. ¶ 25; *see also Vox Mktg. Grp.*, 556 F. Supp. 3d at 1288–89 (denying summary judgment where plaintiff adequately presented evidence of loss under CFAA in the form of employee time spent investigating and auditing loss). Because § 1030(g) specifically authorizes injunctive relief, the CFAA provides a statutory basis for the Court to

enter the narrow TRO requested to prevent further unauthorized use and dissemination and to preserve evidence.

### iii.    Utah Computer Abuse and Data Recovery Act (UCADRA)

UCADRA provides a civil cause of action when a person accesses a "protected" computer system (i.e., one, like SWOL, that is password and MFA protected) beyond the extent of, or for other than the purpose for which, permission was granted, and it specifically authorizes injunctive and other equitable relief among its remedies. *See* Utah Code Ann. §§ 63D-3-104(1)(a)–(b); 63D-3-105(1)(d) (authorizing injunctive or equitable relief). To establish liability, SkyWest must show that Defendants were unauthorized users who obtained information from a protected computer and/or caused the transmission of software code or commands to extract restricted fields, and that SkyWest incurred harm and loss.

SkyWest is likely to succeed on its UCADRA claim. SWOL is a protected computer owned and controlled by SkyWest, with technological access barriers that restrict front-line pilots from viewing personal cell phone numbers and home addresses. Compl. ¶¶ 11–14, 63; Ex. A, Esplin Decl. ¶¶ 5–7.

Defendants were "unauthorized users" under the statute because their permissions extended only to basic business-contact fields and did not authorize access to restricted fields. *See, e.g.*, Utah Code Ann. § 63D-3-103(2) ("If a protected computer's owner gives an individual permission to access the protected computer, the permission is valid only to the extent or for the specific purpose the protected computer's owner authorizes."); Compl. ¶ 65. Nonetheless, they obtained information from SWOL's underlying records by circumventing role-based controls

and they caused the transmission of scripts or automated commands to extract those restricted fields. Compl. ¶¶ 20–34, 64–66; Esplin Decl. ¶¶ 14–20.

Defendants' conduct resulted in harm and loss to SkyWest, including the costs of investigation, remediation, and incident response identified above. Compl. ¶¶ 37–40, 68; Esplin Decl. ¶ 25. Because UCADRA expressly authorizes injunctive relief, it independently supports entry of a TRO enjoining further use and dissemination of SkyWest's confidential data and ordering preservation measures necessary to prevent spoliation and ongoing harm.

### iv.       Breach of Fiduciary Duty (Duty of Loyalty and Confidentiality)

"To prove a claim for breach of fiduciary duty, a plaintiff must establish the existence of a fiduciary duty and the breach of that duty." *KAM Fin. v. Silverleaf Fin*., No. 2:12-CV-1111, 2015 U.S. Dist. LEXIS 39721, at *13 (D. Utah Mar. 27, 2015) (citing *Prince, Yeates & Geldzahler v. Young*, 2004 UT 26, 94 P.3d 179 (Utah 2004)). Utah courts have held that "[a] former employee may not use confidential information obtained during the course of his or her employment" to the detriment of his or her employer. *Envirotech Corp v. Callahan*, 872 P.2d 487, 496–97 (Utah Ct. App. 1994); *Microbiological Research Corp. v. Muna*, 625 P.2d 690, 695 (Utah 1981) (recognizing employee duties regarding confidential information); *Premier Sleep Sols., LLC v. Sound Sleep Med., LLC*, 2021 U.S. Dist. LEXIS 63002, at *22 (D. Utah Mar. 30, 2021) (holding employee with responsibilities and access to confidential information owed duty of loyalty to employer).

During their employment, Defendants owed SkyWest fiduciary duties, including duties of loyalty and to safeguard SkyWest's confidential information to which they had been entrusted. Compl. ¶¶ 14–19, 67–74; Ex. A, Esplin Decl. ¶¶ 5–7, 27–29. These duties are further reflected in

SkyWest's policies and in Defendants' NDAs. Defendants breached those duties by acting adversely to SkyWest's interests: they circumvented technical controls, scraped and compiled restricted employee contact information at scale, retained SkyWest Confidential Information, and used or disclosed it for non-authorized purposes, including mass communications and unsolicited calls to pilots. Compl. ¶¶ 20–36, 72–73; Esplin Decl. ¶¶ 8–15. Defendants' breaches caused SkyWest to suffer loss of control over sensitive employee data, erosion of trust and goodwill with its workforce, and diversion of resources to incident response and remediation, resulting in damages. Compl. ¶¶ 20–33, 72–74; Ex. A, Esplin Decl. ¶¶ 14–20. On this record, SkyWest is likely to succeed on its breach-of-fiduciary-duty claim.

### v.    Civil Conspiracy

Under Utah law, civil conspiracy requires a combination of two or more persons, an agreement to accomplish an unlawful objective or a lawful objective by unlawful means, one or more unlawful overt acts in furtherance of the conspiracy, and resulting damages. *See Waddoups v. Amalgamated Sugar Co*., 2002 UT 69, ¶ 19, 54 P.3d 1054 (Utah 2002).

Defendants combined and agreed to obtain, compile, retain, use, and disseminate SkyWest's confidential employee contact information by unlawful means, as shown by their coordinated seven-hour extraction with precise handoffs within seconds, identical six-second automation intervals, and strict progression through the pilot seniority list, evidencing real-time coordination and a meeting of the minds. Compl. ¶¶ 28–33, 76–79; Ex. A, Esplin Decl. ¶¶ 17–20. In furtherance of the conspiracy, Defendants committed unlawful overt acts, including exceeding authorized access to obtain restricted fields from a protected computer, transmitting scripts or commands to scrape data, breaching their NDAs and fiduciary duties, and using the

compiled contact lists to send mass texts and unsolicited calls to pilots. Compl. ¶¶ 21, 29–36, 76–78; Ex. A, Esplin Decl. ¶¶ 14–20, 23–24. SkyWest suffered damages from these acts, including the losses identified under the CFAA and contract claims and the ongoing harm to employee privacy, goodwill, and operations. Compl. ¶¶ 37–39, 79–80, 85–89; Ex. A, Esplin Decl. ¶¶ 25–26. Because the conspiracy is anchored to viable underlying torts and statutory violations (including SkyWest's CFAA, UCADRA, and breach of fiduciary duty claims), SkyWest is likely to succeed on its civil conspiracy claim.

## C.   The Threatened Injury to SkyWest Outweighs Any Damage an Injunction May Cause to Defendants.

In ruling on a motion that seeks preliminary injunctive relief, "courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *M.G. through Garcia v. Armijo*, 117 F.4th 1230, 1238 (10th Cir. 2024) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)).

Here, the balance decisively favors SkyWest. SkyWest faces ongoing loss of control over thousands of pilots' personal cell numbers and home addresses. Compl. ¶¶ 36–39; Ex. A, Esplin Decl. ¶¶ 23–26, 31. Pilots continue to receive unauthorized texts and calls from non-SkyWest numbers, which disrupt operations and erode employee trust and goodwill. *Id.* These harms cannot be fully remedied with money. Compl. ¶¶ 36–37, 87; Ex. A, Esplin Decl. ¶ 26.

By contrast, the requested order is narrow and temporary. It requires Defendants to stop using or disseminating SkyWest-derived data obtained in violation of role-based permissions and contractual obligations, to refrain from accessing SWOL outside legitimate employment use, and to preserve evidence and make it available for independent evaluation. Compl. ¶¶ 85–90; Ex. A, Esplin Decl. ¶¶ 5–7, 16–20. Defendants have no legitimate interest in continuing to use

misappropriated confidential information, and courts generally recognize that a party against whom an injunction is sought cannot claim injury from self-inflicted harm. *See, e.g., Telestrata, LLC v. NetTALK.com, Inc.*, 126 F. Supp. 3d 1344, 1355 (S.D. Fla. 2015) ("[I]n considering the potential harm to a non-movant, a court may discount potential harm that would arise due to the actions of the non-movant."); *MNI Mgmt., Inc. v. Wine King, LLC*, 542 F. Supp. 2d 389, 403 (D.N.J. 2008) ("The injury a nonmoving party might suffer if an injunction is granted should be discounted if there are any facts indicating that the injury was self-inflicted."); *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 197 (3d Cir. 1990) (a party "can hardly claim to be harmed [where] it brought any and all difficulties occasioned by the issuance of an injunction upon itself."). Moreover, the requested order expressly does not restrain lawful communications that do not rely on SkyWest-derived data. The incremental burden on Defendants is minimal compared to the irreparable harms to SkyWest and its employees if relief is denied.

**D.    An Injunction Will Benefit the Public Interest.**

Finally, the public interest clearly favors the granting of an injunction here.

First, the enforcement of the confidentiality agreements furthers the public interest in the integrity of contracts and the fulfillment of the parties' legitimate expectations with respect thereto. *Neways Inc. v. Mower*, 543 F. Supp. 2d 1277, 1290 (D. Utah 2008) ("The public has an interest in . . . the enforcement of lawful contractual obligations."). Defendants' NDAs simply require them to refrain from using or disclosing confidential information; enforcing those contractual duties that Moussaron and Krithivas freely consented to supports the public interest. *See Paparazzi, LLC v. Sorenson*, 2022 U.S. Dist. LEXIS 91431, 2022 WL 1606559, at *4 (D. Utah May 20, 2022) ("The public has an interest in upholding contractual rights, including

confidentiality agreements" and "in protecting confidential business information and business reputations.").

Second, the public has a strong interest in safeguarding the privacy and security of personally identifiable information and preventing unauthorized dissemination of sensitive employee data, particularly when that data includes personal cell phone numbers and home addresses for thousands of pilots. Protecting this information from further misuse promotes employee safety and trust and preserves the integrity of employer communications and operations.

Third, Congress and the Utah Legislature have recognized the public interest in deterring unauthorized access to protected computers and preserving the integrity of information systems by expressly authorizing injunctive relief under the Computer Fraud and Abuse Act and the Utah Computer Abuse and Data Recovery Act. *See* 18 U.S.C. § 1030(g); Utah Code Ann. § 63D-3-104. Entry of a narrow injunction that halts further use and dissemination of data obtained by exceeding authorized access, and that requires preservation of evidence, advances those statutory policies.

Fourth, the requested order is carefully tailored to avoid any adverse impact on the public interest. It restrains only the use and dissemination of SkyWest-derived confidential data and requires preservation of evidence; it does not restrain lawful communications that do not rely on SkyWest's confidential information or otherwise chill protected speech. In short, the injunction would protect privacy, enforce valid contracts, deter unlawful computer access, and preserve evidence, all while leaving undisturbed lawful communications and activities—these outcomes squarely align with the public interest.

E.    **No Bond Should Be Required**.

The Court should dispense with Rule 65(c)'s security requirement. It is a well-established principle in the Tenth Circuit that "a trial court has wide discretion; under Rule 65(c) in determining whether to require security." *Winnebago Tribe of Nebraska v. Stovall*, 341 F.3d 1202, 1206 (10th Cir. 2003) (quoting *Continental Oil Co. v. Frontier Refining Co*., 338 F.2d 780, 782 (10th Cir. 1964)). As set forth above, Defendants will not be harmed by enjoining their misuse and dissemination of SkyWest's Confidential Information. Because there is no harm, and the purpose of security under Rule 65(c) is to protect a non-movant from harm stemming from an improper injunction, the Court should waive any security requirement for SkyWest.

## CONCLUSION

For the foregoing reasons, SkyWest respectfully submits that it has demonstrated a substantial likelihood of success on the merits, that it will suffer immediate and irreparable harm absent injunctive relief, that the balance of harms weighs strongly in its favor, and that the requested relief serves the public interest. Defendants knowingly agreed to enforceable confidentiality and non-use obligations as a condition of their employment, accessed SkyWest's protected systems using their credentials and MFA, exceeded their authorized access to scrape restricted employee data at scale, and then used and shared that confidential information to contact pilots outside legitimate business channels. Defendants have refused to provide adequate assurances that they will not continue to violate their obligations, leaving SkyWest no choice but to seek judicial intervention.

The requested temporary restraining order and preliminary injunction are necessary to preserve the status quo, protect SkyWest's confidential information and employee privacy,

safeguard goodwill and operational integrity, and prevent further violations of Defendants'

contractual and statutory duties. The accompanying request for expedited discovery is narrowly

tailored to locate and preserve time-sensitive evidence and to prevent spoliation. Accordingly,

SkyWest respectfully requests that the Court grant its Motion in its entirety.


Dated this 2nd day of February, 2026

HOLLAND & HART LLP


/s/ Gregory M. Saylin
Gregory M. Saylin
Zachary T. Burford
Tyler S. Erickson

*Attorneys for Plaintiff SkyWest Airlines, Inc.*


36861330

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of February, 2026, I caused a true and correct copy of the foregoing **PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR PRELIMINARY INJUNCTION - [REDACTED VERSION]** to be served via email to the following:

Jonathan Thorn
*Jonathan@utahjobjustice.com*
*Attorney for Defendant Daniel Moussaron*

Paul Ryan
*pryan@ctmlegalgroup.com*
*Attorney for Defendant Vikaas Krithivas*


*/s/ Gregory M. Saylin*