# EXHIBIT A

Gregory M. Saylin, #9648
Zachary T. Burford, #19771
Tyler S. Erickson, #19523
HOLLAND & HART LLP
222 South Main Street, Suite 2200
Salt Lake City, UT 84101-2194
Telephone: 801.799.5800
GMSaylin@hollandhart.com
ZTBurford@hollandhart.com
TSErickson@hollandhart.com

*Attorneys for Plaintiff SkyWest Airlines, Inc.*

---

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF UTAH – SOUTHERN DIVISION**

| | |
|---|---|
| SKYWEST AIRLINES, INC.,<br><br>         Plaintiff,<br><br>vs.<br><br>DANIEL MOUSSARON, and VIKAAS KRITHIVAS,<br><br>         Defendants. | **DECLARATION OF JUSTIN ESPLIN IN SUPPORT OF PLAINTIFF'S EX PARTE MOTION TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**<br><br>Civil No. 4:26-cv-00015-DN<br><br>Senior District Judge David Nuffer |

I, Justin Esplin, declare and state as follows:

**Background and Qualifications**

1.      I am employed by SkyWest Airlines, Inc. ("SkyWest") as Vice President of Information Technology. I have personal knowledge of the facts set forth in this declaration based on my direct involvement in discovering and investigating Defendants Daniel Moussaron and Vikaas Krithivas's data-theft scheme.

2.      In my role as Vice President of Information Technology, I am responsible for overseeing technology matters affecting the company, including data security policies, system

access controls, information technology governance, and cybersecurity incident response. I work directly with SkyWest's IT security team to investigate breaches and unauthorized access to company systems.

3.     SkyWest Airlines is a major regional airline operating throughout the United States with headquarters in St. George, Utah. SkyWest operates as a partner carrier for major airlines including American Airlines, Delta Air Lines, United Airlines, and Alaska Airlines.

4.     Through my position overseeing technology and security matters, I possess knowledge of SkyWest's information security infrastructure, employee access controls, data protection protocols, and the technical and business impact of security incidents and data breaches.

**SkyWest Online (SWOL) Security Infrastructure**

5.     SkyWest operates an internal web-based intranet system called "SkyWest Online" or "SWOL" that provides employees secure access to company information, HR and benefits information, scheduling systems, employee directories, and operational resources necessary for their job functions.

6.     SWOL implements multiple layers of security designed to protect confidential business information and employee personal data: (a) multifactor authentication ("MFA") requiring employee ID, password, and time-sensitive authentication codes; and (b) role-based permission controls that restrict access to this data (including limiting access to personally identifiable information) based on job function and business need; and (c) contractual arrangements and policies to protect the confidentiality of this information.

7.     The directory data stored in SWOL is non-public and contains personally identifiable information (PII), including personal cell phone numbers and home addresses.

SkyWest invests substantial financial, technical, and personnel resources to keep this information confidential because it is essential to employee privacy, trust, and operational integrity. Although SWOL stores complete employee records, access to specific fields is restricted by role. Certain executives and managers may have broader access based on legitimate business needs.

8.      Pilots have authorized access to SWOL's employee directory for limited operational needs, such as viewing pilot names for scheduling coordination and crew pairing. Front-line pilots are expressly prohibited from accessing personal contact information, and SWOL's role-based permissions prevent them from viewing fields like personal cell phone numbers and home addresses

**Discovery of Systematic Data Theft**

9.      In January 2026, SkyWest's IT security team discovered unusual access patterns in SWOL indicating a massive, systematic extraction of pilot contact information by Defendants. As explained below, SkyWest's logs from the incident show that Defendants were coordinating and using automated tools to scrape the entire pilot directory.

10.      The compiled database of pilot personal contact information is uniquely valuable to third parties seeking to mass-communicate with SkyWest pilots and is uniquely harmful to SkyWest because it enables targeted outreach that circumvents official corporate communication channels, disrupts operations, and undermines employee relations. The data set is not publicly available and cannot be readily replicated from public sources. In addition to private PII and contact information, the data reflects current rosters, base assignments, and organizational data curated within SWOL.

11.      I have personally reviewed the SWOL login and activity logs, our MFA records, and worked with our IT security team, which compiles those logs and prepares extracts. These

system logs are automatically generated and kept in the ordinary course of business. For each session, they show the employee ID used, the date and time, the IP address, the device/browser, the MFA step, and which directory records were opened. Accessing the API URL directly in this way would have given Defendants access to contact fields, which they were not permitted to access. We matched those timestamps to crew schedules and layovers. From that review, I can say when and from where each Defendant logged in and what data they pulled. A true and correct copy of a spreadsheet reflecting Defendants' SWOL login and download activity is attached as Exhibit A-2.

12.     SkyWest's IT forensic analysis, including the activity logs, reveals that Defendants conducted a coordinated scheme to steal contact information for SkyWest's entire pilot workforce between August 29, 2025 and at least December 8, 2025, using sophisticated technical methods.

**Moussaron's Technical Background and Initial Activities**

13.     Moussaron has substantial technical experience with scripting and developer tools—including Python, JavaScript, HTML, and API testing/automation tools—and has led software integrations in airline systems, with experience in enterprise identity and cloud platforms. Additionally, he has founded multiple airline travel-related technology businesses, including Adamo Systems, Inc. and Dorrus, Inc. This technical background supports the inference that Moussaron was able to utilize his technical skills and tools to impermissibly access and scrape SWOL's pilot directory at scale. A true and correct copy of Mr. Moussaron's resume is attached as Exhibit A-4.

14.     Defendant Moussaron initiated the systematic data theft on August 29, 2025, accessing SWOL from Duluth, Minnesota, where he was physically present on an overnight trip.

His IP address was located in Duluth, Minnesota and was provided by Compudyne, Inc. Using his employee credentials and MFA authentication, Moussaron initially accessed contact information for two pilots in a testing period, accessing home addresses and personal phone numbers beyond his authorized permissions.

15.     On August 30, 2025, while still at the Holiday Inn in Winnipeg, Manitoba, Moussaron continued his data extraction activities, accessing data for 18 different pilots, starting with the first pilot on the seniority list and progressing down the list sequentially.

16.     On September 1, 2025, Moussaron had a two-and-a-half-hour layover in the Minneapolis–Saint Paul International Airport and again logged onto SWOL to continue scraping data. The IP address used on this occasion (97.64.79.189) was registered to the Minneapolis Metropolitan Airport Commission, consistent with his physical location.

**Krithivas's Resignation and Coordinated September 3 Attack**

17.     On August 31, 2025, Krithivas had a job offer from a different airline and gave notice of resignation from SkyWest, effective September 12, 2025. This timing provides crucial context for the urgency of the coordinated attack that occurred on September 3, 2025.

18.     On September 3, 2025, Defendants executed their main operation: a coordinated, seven-hour automated data extraction pull of pilot records that showed advanced planning and real-time coordination between them. Based on the access logs, the earlier August 29–30 and September 1 sessions appear to have been testing and probing runs used to prepare for this larger scrape.

19.     At approximately 14:44:10 MDT, Krithivas began pulling data from the SWOL directory. Krithivas was not scheduled to fly that day—his schedule reflected that he was on "vacation." Krithivas temporarily stopped at 15:16:05 MDT. Exactly thirty-six seconds later, at

approximately 15:16:41 MDT, Moussaron logged in and pulled data for approximately 11 minutes, starting precisely where Krithivas left off on the seniority list.

20.     The operation showed precise coordination with Defendants conducting this specific thirty-six-second handoff, logging in from different IP addresses (Moussaron from his Charter Communications IP in St. Michael, Minnesota, and Krithivas from his AT&T IP in Chicago, Illinois), using different operating systems (macOS and Windows devices), and using consistent intervals of 6-seconds data pulls, which indicate Defendants were using an automated program or tool to access and pull data. In this single day, Krithivas alone extracted 4,970 individual pilot records.

**Continued Theft Through December 2025**

21.     After Krithivas's mass download on September 3, Moussaron conducted several additional sessions from October 18, 2025, to December 8, 2025, mostly from his home IP address in Minnesota, to access and download employee data for new hire pilots as they were added to the seniority list. Through these additional sessions, Moussaron accessed data for a total of 365 pilots.

22.     Through their combined operations, Defendants stole comprehensive employment and personal information for over 5,300 SkyWest pilots, including names, home addresses, personal cell phone numbers, employee identification numbers, supervisor information, job titles, department codes, base locations, hire dates, and complete organizational data.

**Evidence of Ongoing Misuse**

23.     SkyWest has evidence that shortly after Defendants' last download session on December 8, 2025, SkyWest pilots were mass messaged on their personal cell phones regarding matters unrelated to legitimate SkyWest business operations. The communications originated from non-SkyWest numbers and platforms and were not authorized by SkyWest.

6

24.     In January 2026, SkyWest received a complaint from a pilot who reported an unsolicited call to his personal phone promoting an outside effort unrelated to legitimate SkyWest business. The caller said he was a SkyWest employee and claimed that "we have some really smart people" who had found a backdoor to the company directory to obtain pilot contact numbers. Based on our investigation, SkyWest believes the caller was working with the Defendants and using SkyWest Confidential Information impermissibly obtained from SWOL to contact this pilot.

25.     Since Defendants' actions were discovered, SkyWest has already spent well over $5,000—and will continue to spend—to investigate and respond. That includes paying for forensic analysis, incident response, strengthening and testing our systems, legal and compliance review, and communications with employees. It has also consumed a substantial amount of time from our IT, security, legal, HR, and operations teams to investigate, contain, and fix the problem. I have personal knowledge of these losses in my role overseeing IT and our incident response.

26.     Keeping and using this contact list continues to cause harm that cannot be undone. Once this employee data leaves SkyWest's control, it can spread quickly and be used for mass texts and calls, scams (including phishing), and harassment. Exposing home addresses creates real privacy and safety risks. Additionally, the unauthorized circulation of pilot contact and location information creates security risks. Money cannot fully resolve or fix these problems. SkyWest needs them to stop using the data and to return and permanently delete every copy, so we can protect our employees and regain control of our data.

**Confidentiality Agreement Violations**

27.     All SkyWest pilots, including Defendants, signed SkyWest's Confidentiality and Nondisclosure Agreement prohibiting disclosure of "employee data in the form of personnel records, background check information, medical records, and other benefits information." The Agreement explicitly requires employees to "not disclose, divulge, or otherwise communicate at any time or in any manner, to any party other than those employees of SkyWest as necessary, any Confidential Information, either during or subsequent to employment with SkyWest."

28.     Moussaron executed his Confidentiality & Nondisclosure Agreement on February 10, 2022, and Krithivas signed his Confidentiality & Nondisclosure Agreement on September 16, 2021. I have reviewed SkyWest's Confidentiality and Nondisclosure Agreements with Defendants and can authenticate them as true and correct copies of the agreements executed by Defendants Moussaron and Krithivas. Defendants' NDAs are attached here as Exhibit A-1

29.     The employee directory data the pilots took—including personal cell phone numbers, home addresses, employee IDs, and related job and organizational details—is Confidential and Privileged Information as defined in SkyWest's Confidentiality and Nondisclosure Agreement. This information is not public, is protected in SWOL by role-based permissions, and may be used only for legitimate SkyWest business. The NDA specifically covers "employee data" like the personnel records data found on SWOL that Defendants stole.

30.     Defendants' extraction and use of employee data from the SWOL directory for external recruitment constitutes direct breach of these contractual obligations and SkyWest's confidential business information protections.

31.     Moreover, based on what we've seen, we believe Defendants not only used this directory data for their own purposes but also shared it with people outside SkyWest. Shortly after the data pulls, SkyWest pilots began receiving mass texts and calls from non-SkyWest

numbers and accounts, in support of matters unrelated to legitimate SkyWest business. This shows that Defendants likely sold, transmitted or shared SkyWest's data with others (including third-party mass-messaging platforms), which constitutes an independent violation of Defendants' NDAs.

**Urgency for Evidence Preservation**

32.     Given Moussaron's technical expertise in API systems, database management, and automation tools, including his experience with Python, JavaScript, and his leadership of multiple technology companies, he possesses both the capability and opportunity to destroy or conceal digital evidence of the conspiracy, including source code, messaging platform accounts, and communication records.

33.     The technical evidence supporting SkyWest's claims exists in potentially rapidly degrading digital formats that face imminent destruction through automated data retention policies of messaging platforms and Defendants' technical capabilities, making immediate discovery essential to preserve evidence of Defendants' ongoing violations.

34.     After we discovered the conduct in January 2026, SkyWest immediately prepared and served cease-and-desist letters on both Defendants demanding they cease use, preserve all copies, and make their devices and accounts available for forensic inspection; attached as Exhibit A-3 are true and correct copies of the letters sent to Defendants. On January 26, 2026, SkyWest representatives spoke with Defendant Moussaron about the hack and the evidence of his involvement, but he denied that he was involved. We offered both Defendants the opportunity to cure by returning and permanently deleting all SkyWest-derived data, preserving evidence, and providing sworn assurances that SkyWest's systems and employee information were secure.

Neither Defendant provided adequate assurances or complied, which necessitated filing this action and seeking immediate injunctive relief to protect SkyWest's confidential information.

     I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

     Executed this 2nd day of February, 2026

Justin Esplin
Vice President, Information Technology
SkyWest Airlines, Inc.

36865344_v4

# EXHIBIT A-1

## Confidentiality and Nondisclosure Agreement

Applicant is aware that during the course of employment with SkyWest, they may become aware of certain information that, if disclosed, has the potential to harm other employees or the SkyWest corporate entity. The Applicant also agrees that they will become aware of confidential business strategies, pricing methods, market plans, and other trade secrets that would not be known to the Applicant but for their employment with SkyWest. SkyWest values and seeks to protect the privacy of its employees as well as the confidentiality of its trade secrets and other confidential information. With those basic values in mind, Applicant hereby agrees to the following:

- Applicant understands and acknowledges that, if hired, during the course of his or her employment with SkyWest they may become aware of certain Confidential and Privileged Information. Confidential and Privileged Information includes SkyWest business records and any terms relating thereto, trade secrets, contracts, business plans, financial statements, marketing strategies, client lists and contact information, and methods of conducting or obtaining business. It also includes employee data in the form of personnel records, background check information, medical records, and other benefits information. All such data is considered confidential and privileged no matter how it is communicated – in writing, via electronic communications, or by conversation.

- Applicant agrees that they will not disclose, divulge, or otherwise communicate at any time or in any manner, to any party other than those employees of SkyWest as necessary, any Confidential Information, either during or subsequent to employment with SkyWest.

- Applicant agrees not to use Confidential Information for their own purposes, other than in connection with authorized uses as dictated by the employment relationship, or to disclose any Confidential Information to others. Upon the request of SkyWest, Applicant agrees to return or destroy, as directed, all Confidential and Privileged Information in tangible form. The Applicant understands that violating the terms of this Agreement will lead to corrective action, up to and including termination of employment, and that SkyWest reserves the right to seek damages in civil court for breach of this agreement.

- This Agreement is governed under the laws of the State of Utah, and any legal action pertaining hereto shall fall under the jurisdiction of the Fifth Judicial District Court, State of Utah and/or the applicable United States Federal District Court.

- If any portion or part of this Agreement is deemed to be invalid by law, the remaining portions and/or parts of this Agreement shall remain in full force and effect.

I UNDERSTAND THAT THIS AGREEMENT AFFECTS AND RESTRICTS MY RIGHT TO DISCLOSE OR USE PRIVILEGED CONFIDENTIAL INFORMATION DURING OR SUBSEQUENT TO THE COURSE OF MY EMPLOYMENT AT SKYWEST. I HAVE READ THIS AGREEMENT CAREFULLY AND UNDERSTAND ITS TERMS.

*SkyWest*



**TASK**

Confidentiality and Non Disclosure Agreement

**Task completed: 09/16/2021**
**Approved by: Vikaas Krithivas**

Close

## Confidentiality and Nondisclosure Agreement

Applicant is aware that during the course of employment with SkyWest, they may become aware of certain information that, if disclosed, has the potential to harm other employees or the SkyWest corporate entity. The Applicant also agrees that they will become aware of confidential business strategies, pricing methods, market plans, and other trade secrets that would not be known to the Applicant but for their employment with SkyWest. SkyWest values and seeks to protect the privacy of its employees as well as the confidentiality of its trade secrets and other confidential information. With those basic values in mind, Applicant hereby agrees to the following:

- Applicant understands and acknowledges that, if hired, during the course of his or her employment with SkyWest they may become aware of certain Confidential and Privileged Information. Confidential and Privileged Information includes SkyWest business records and any terms relating thereto, trade secrets, contracts, business plans, financial statements, marketing strategies, client lists and contact information, and methods of conducting or obtaining business. It also includes employee data in the form of personnel records, background check information, medical records, and other benefits information. All such data is considered confidential and privileged no matter how it is communicated – in writing, via electronic communications, or by conversation.

- Applicant agrees that they will not disclose, divulge, or otherwise communicate at any time or in any manner, to any party other than those employees of SkyWest as necessary, any Confidential Information, either during or subsequent to employment with SkyWest.

- Applicant agrees not to use Confidential Information for their own purposes, other than in connection with authorized uses as dictated by the employment relationship, or to disclose any Confidential Information to others. Upon the request of SkyWest, Applicant agrees to return or destroy, as directed, all Confidential and Privileged Information in tangible form. The Applicant understands that violating the terms of this Agreement will lead to corrective action, up to and including termination of employment, and that SkyWest reserves the right to seek damages in civil court for breach of this agreement.

- This Agreement is governed under the laws of the State of Utah, and any legal action pertaining hereto shall fall under the jurisdiction of the Fifth Judicial District Court, State of Utah and/or the applicable United States Federal District Court.

- If any portion or part of this Agreement is deemed to be invalid by law, the remaining portions and/or parts of this Agreement shall remain in full force and effect.

I UNDERSTAND THAT THIS AGREEMENT AFFECTS AND RESTRICTS MY RIGHT TO DISCLOSE OR USE PRIVILEGED CONFIDENTIAL INFORMATION DURING OR SUBSEQUENT TO THE COURSE OF MY EMPLOYMENT AT SKYWEST. I HAVE READ THIS AGREEMENT CAREFULLY AND UNDERSTAND ITS TERMS.

*SkyWest.*



# EXHIBIT A-2

# (FILED UNDER SEAL)

# EXHIBIT A-3



Richard D. Spilde, Jr.
Partner
Phone: (303) 473-4808
Fax: (303) 291-9090
RDSpilde@hollandhart.com

January 26, 2026

**VIA EMAIL**
**VIA OVERNIGHT DELIVERY**

Vikaas Krithivas



> Re:    **Demand to Cease and Desist Unlawful Conduct and**
>        **Demand to Preserve Evidence**

Dear Mr. Krithivas:

Holland & Hart LLP represents SkyWest Airlines, Inc. ("SkyWest" or the "Company"). All communication regarding this matter should be sent to our attention. If you are represented by counsel, please immediately forward this letter to their attention.

SkyWest recently discovered that beginning on or around August 29, 2025, while employed by SkyWest and bound by a Non-Disclosure Agreement (the "NDA"), you allegedly accessed and extracted confidential information from SkyWest's internal employee directory without authorization and in breach of the NDA. Based on SkyWest's initial investigation, this information included the names, telephone numbers and home addresses of approximately 5,300 employees.

Based on SkyWest's investigation, this unauthorized access, download, and use of SkyWest data was achieved through means that exceeded your authorized access to the internal SkyWest IT systems and through the use of improper methods, and your subsequent and repeated download, possession, and use or disclosure of this information constitutes a material breach of the NDA, as well as violations of federal and state laws. SkyWest's investigation and forensic examination of this incident is ongoing, and it is not unreasonable at this point to expect that SkyWest will discover additional improper activity. Possible legal claims SkyWest may have against you, include but are not limited to:

1. Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030: Your alleged actions may involve intentionally accessing a protected computer system without authorization or exceeding authorized access, resulting in the obtainment of valuable information. If proven, this would violate the CFAA, which prohibits such conduct and could expose you to civil liability, including actual damages and losses, injunctive relief, and other equitable relief.

**Location**
1800 Broadway, Suite 300
Boulder, CO 80302

**Contact**
p: 303.473.2700 | f: 303.473.2720
www.hollandhart.com

## Holland & Hart

Vikas Krithivas
January 26, 2026
Page 2

2. Utah Computer Abuse and Data Recovery Act, Utah Code Ann. § 63D-3-101 et seq.: Under Utah law, your alleged unauthorized entry into SkyWest's computer system to obtain data may constitute computer trespass and theft of information.

3. Breach of Non-Disclosure Agreement: The NDA prohibits the unauthorized disclosure, use, or retention of SkyWest's confidential information, which expressly includes employee personal data maintained in internal systems and directories. By accessing, extracting, and retaining this information without authorization, you have violated your contractual obligations under the NDA. Under Utah law, such breaches entitle SkyWest to seek injunctive relief, compensatory damages, and other remedies.

These alleged violations—both statutory and contractual—have caused and threaten to cause substantial harm to SkyWest and its employees, including risk of exposure of its employees to privacy breaches, identity theft, harassment, unwanted communications, and compromise of confidential business information. SkyWest has incurred and continues to incur costs related to investigating this matter, implementing additional security measures, and potentially notifying affected employees. To address your unlawful conduct, SkyWest is prepared to take whatever actions necessary to remedy its injuries, including filing suit in federal court seeking injunctive and monetary relief.

We encourage you to cooperate with SkyWest's efforts to mitigate the damage you have caused in hopes of avoiding the need for SkyWest to fully pursue all of the actions outlined above. We demand that you immediately cease and desist from any further unauthorized access, use, dissemination, retention, and disclosure of SkyWest confidential information. Specifically, SkyWest demands your immediate written assurances that you:

1. Immediately cease and desist from any access, use, disclosure, transfer, sale, dissemination, or retention of the confidential data, including but not limited to the telephone numbers, home addresses, and any other SkyWest confidential information in your possession.

2. Preserve all copies of the confidential data in your possession, custody, or control, including any backups, derivatives, analyses, or materials containing SkyWest information. Do not delete, alter, destroy, or further disclose any such data.

3. Make all your computer systems, devices, storage media, and accounts that may contain SkyWest confidential information (including but not limited to personal computers, servers, cloud storage, email accounts, and mobile devices) available for a full forensic inspection by a qualified cyber analyst designated by SkyWest. This inspection must occur within 10 days of receipt of this letter, at a mutually agreeable time and location, and you must provide full access and cooperation.

# Holland & Hart

Vikas Krithivas
January 26, 2026
Page 3

4.  Return all confidential data (including any copies or derivatives) to SkyWest in a secure manner as requested by SkyWest and certify its complete deletion from your systems following the inspection.

5.  Provide a sworn declaration confirming that you have complied with the above demands, detailing all actions taken to secure and cease use of the data, identifying any third parties to whom the data may have been disclosed and affirming your commitment to comply with the NDA going forward.

Failure to comply with these demands will leave SkyWest no choice but to pursue all available legal remedies without further notice, including but not limited to:

- Filing a civil lawsuit seeking injunctive relief, specific performance of the NDA, compensatory damages, and where permitted by law, consequential damages, punitive damages, attorney's fees, and costs under the NDA, the CFAA, Utah Computer Abuse and Data Recovery Act, and other applicable laws.

- Seeking a court order for the immediate seizure and examination of your computer systems and devices.

This letter is not intended to be a complete statement of SkyWest's rights or remedies, all of which are expressly reserved. Moreover, if we do not resolve this dispute, SkyWest fully intends to pursue and protect its legal rights in court, including requests for damages and injunctive relief.  Finally, please note that SkyWest reserves all rights and remedies available to it for past and/or future legal violations resulting from your actions described herein.

Please be aware that relevant law places an obligation on you to preserve all documents and evidence in your possession. *"The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation."* Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 216 (S.D.N.Y. 2003). Receipt of this letter qualifies as such notice, and you therefore must preserve any evidence in your possession. Failure to do so may result in sanctions against you.

Given the serious and ongoing damage to SkyWest we demand that you or your legal counsel contact me no later than **Friday, January 30, 2026** to acknowledge your receipt of these demands, your written assurances that you will comply with items 1-5 above, your compliance with the Litigation Hold, and how you propose to resolve SkyWest's claims with a monetary offer and other concessions.

Sincerely,

*Richard D. Spilde*

Richard D. Spilde, Jr.
of Holland & Hart LLP



cc:  Todd Emerson, Vice President_Legal, Skywest Airlines
Greg Saylin, Holland & Hart, LLP

36888839_v2



Richard D. Spilde, Jr.
Partner
Phone: (303) 473-4808
Fax: (303) 291-9090
RDSpilde@hollandhart.com

January 26, 2026

**VIA EMAIL**
**VIA OVERNIGHT DELIVERY**

Daniel Moussaron

████████████████████

> **Re:   Demand to Cease and Desist Unlawful Conduct and**
> **Demand to Preserve Evidence**

Dear Mr. Moussaron:

Holland & Hart LLP represents SkyWest Airlines, Inc. ("SkyWest" or the "Company"). All communication regarding this matter should be sent to our attention. If you are represented by counsel, please immediately forward this letter to their attention.

SkyWest recently discovered that beginning on or around August 29, 2025, while employed by SkyWest and bound by a Non-Disclosure Agreement (the "NDA"), you allegedly accessed and extracted confidential information from SkyWest's internal employee directory without authorization and in breach of the NDA. Based on SkyWest's initial investigation, this information included the names, telephone numbers and home addresses of approximately 5,300 employees.

Based on SkyWest's investigation, this unauthorized access, download, and use of SkyWest data was achieved through means that exceeded your authorized access to the internal SkyWest IT systems and through the use of improper methods, and your subsequent and repeated download, possession, and use or disclosure of this information constitutes a material breach of the NDA, as well as violations of federal and state laws. SkyWest's investigation and forensic examination of this incident is ongoing, and it is not unreasonable at this point to expect that SkyWest will discover additional improper activity. Possible legal claims SkyWest may have against you, include but are not limited to:

1. Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030: Your alleged actions may involve intentionally accessing a protected computer system without authorization or exceeding authorized access, resulting in the obtainment of valuable information. If proven, this would violate the CFAA, which prohibits such conduct and could expose you to civil liability, including actual damages and losses, injunctive relief, and other equitable relief.

**Location**
1800 Broadway, Suite 300
Boulder, CO 80302

**Contact**
p: 303.473.2700 | f: 303.473.2720
www.hollandhart.com

**Holland & Hart**

Daniel Moussaron
January 26, 2026
Page 2

2. Utah Computer Abuse and Data Recovery Act, Utah Code Ann. § 63D-3-101 et seq.: Under Utah law, your alleged unauthorized entry into SkyWest's computer system to obtain data may constitute computer trespass and theft of information.

3. Breach of Non-Disclosure Agreement: The NDA prohibits the unauthorized disclosure, use, or retention of SkyWest's confidential information, which expressly includes employee personal data maintained in internal systems and directories. By accessing, extracting, and retaining this information without authorization, you have violated your contractual obligations under the NDA. Under Utah law, such breaches entitle SkyWest to seek injunctive relief, compensatory damages, and other remedies.

These alleged violations—both statutory and contractual—have caused and threaten to cause substantial harm to SkyWest and its employees, including risk of exposure of its employees to privacy breaches, identity theft, harassment, unwanted communications, and compromise of confidential business information. SkyWest has incurred and continues to incur costs related to investigating this matter, implementing additional security measures, and potentially notifying affected employees. To address your unlawful conduct, SkyWest is prepared to take whatever actions necessary to remedy its injuries, including filing suit in federal court seeking injunctive and monetary relief.

We encourage you to cooperate with SkyWest's efforts to mitigate the damage you have caused in hopes of avoiding the need for SkyWest to fully pursue all of the actions outlined above. We demand that you immediately cease and desist from any further unauthorized access, use, dissemination, retention, and disclosure of SkyWest confidential information.  Specifically, SkyWest demands your immediate written assurances that you:

1. Immediately cease and desist from any access, use, disclosure, transfer, sale, dissemination, or retention of the confidential data, including but not limited to the telephone numbers, home addresses, and any other SkyWest confidential information in your possession.

2. Preserve all copies of the confidential data in your possession, custody, or control, including any backups, derivatives, analyses, or materials containing SkyWest information. Do not delete, alter, destroy, or further disclose any such data.

3. Make all your computer systems, devices, storage media, and accounts that may contain SkyWest confidential information (including but not limited to personal computers, servers, cloud storage, email accounts, and mobile devices) available for a full forensic inspection by a qualified cyber analyst designated by SkyWest. This inspection must occur within 10 days of receipt of this letter, at a mutually agreeable time and location, and you must provide full access and cooperation.

**Holland & Hart**

Daniel Moussaron
January 26, 2026
Page 3

4. Return all confidential data (including any copies or derivatives) to SkyWest in a secure manner as requested by SkyWest and certify its complete deletion from your systems following the inspection.

5. Provide a sworn declaration confirming that you have complied with the above demands, detailing all actions taken to secure and cease use of the data, identifying any third parties to whom the data may have been disclosed and affirming your commitment to comply with the NDA going forward.

Failure to comply with these demands will leave SkyWest no choice but to pursue all available legal remedies without further notice, including but not limited to:

- Filing a civil lawsuit seeking injunctive relief, specific performance of the NDA, compensatory damages, and where permitted by law, consequential damages, punitive damages, attorney's fees, and costs under the NDA, the CFAA, Utah Computer Abuse and Data Recovery Act, and other applicable laws.

- Seeking a court order for the immediate seizure and examination of your computer systems and devices.

This letter is not intended to be a complete statement of SkyWest's rights or remedies, all of which are expressly reserved. Moreover, if we do not resolve this dispute, SkyWest fully intends to pursue and protect its legal rights in court, including requests for damages and injunctive relief.  Finally, please note that SkyWest reserves all rights and remedies available to it for past and/or future legal violations resulting from your actions described herein.

Please be aware that relevant law places an obligation on you to preserve all documents and evidence in your possession. "*The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation.*" Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 216 (S.D.N.Y. 2003). Receipt of this letter qualifies as such notice, and you therefore must preserve any evidence in your possession. Failure to do so may result in sanctions against you.

Given the serious and ongoing damage to SkyWest we demand that you or your legal counsel contact me no later than **Friday, January 30, 2026** to acknowledge your receipt of these demands, your written assurances that you will comply with items 1-5 above, your compliance with the Litigation Hold, and how you propose to resolve SkyWest's claims with a monetary offer and other concessions.

Sincerely,

*Richard D. Spilde*

Richard D. Spilde, Jr.
of Holland & Hart LLP



Daniel Moussaron
January 26, 2026
Page 4

cc:  Todd Emerson, Vice President_Legal, Skywest Airlines
     Greg Saylin, Holland & Hart, LLP


36800764_v7

# EXHIBIT A-4

# DANIEL MOUSSARON

Saint Michael, MN

██████████ | ██████████████

# Sr. Business Analyst

Strategic and results-oriented Sr. Business Analyst with 8+ years of professional experience. Skilled at enabling business strategies through the design, delivery, and implementation of each project. Experienced in building trusted relationships with clients, leadership, and employees at all levels across the organization. Deep subject matter expertise within all areas of finance, IT, and Airline Industries. Extensive program leadership and management of complex projects utilizing robust data and lean principles with demonstrated ability to prioritize competing priorities. Authentic and adaptive hands-on leader driven by a passion to develop and inspire others.

## Core Competencies

| | | |
|---|---|---|
| Business Strategy | Financial Services | Cross-Team Collaboration |
| Fare Pricing | People Analytics | Business Development |
| Process Improvement | Risk Management | Product Lifecycle |
| Customer Relations | Leadership | Budgeting & Scheduling |
| Program Management | Data Analysis | Mentoring |

## *Professional Experience*

**Navitaire**, *Minneapolis, MN*
**Sr. Business Analyst – Payment & Pricing**                    Dec 2021 – Present
- Managed 12 existing and potential airline customers to identify business requirements, provide sales, development support, and identified business process changes.
- Collaborated with clients, industry organizations, and other internal teams to identify and address complex problems and find creative solutions to exceed customer expectations.
- Implemented and enabled the NDC content, to include Order Change Notification and the IATA Financial Gateway while advocating for best practices within the industry.
- Documented and clarified business requirements with customers and produced detailed use cases for enhancements.
- Participated in cross-divisional product development and business strategy meetings, presenting project progress reports to executive leadership, and influenced decisions and direction.
- Led various reservations API implementation and acceptance testing using a scrum environment to actively drive project roadmaps.

**Adamo Systems**, *Wayzata, MN*
**Project Manager – Airline Solutions**                    Mar 2020 – Dec 2021
- Directed multiple airline integration and implementation projects that focused primarily on REST&SOAP API messaging from functional/technical perspectives that drove solution discussions.
- Coordinated with 6 large internal and external teams to drive technical and procedural discussions to understand the overall system capabilities and limitations.
- Identified key roadblocks and proposed effected solutions for a $8.5M enterprise project that saved the company $500K.
- Established and documented requirements in JIRA, including detailed acceptance criteria, API mapping documents, sample code snippets and API flows.
- Increased efficiency by 20% through driving the enterprise migration to Postman for all API testing and QA efforts.

# DANIEL MOUSSARON

## Professional Experience (cont.)

**Delta Air Lines,** *Minneapolis, MN*
**Product Owner, OmniPro, Reservations Tech & Innovation**          May 2018 – Mar 2020
- Managed the Reservations Technology and Innovation's Refunds product, responsible for ensuring that frontline agents could effectively manage and complete customer transactions.
- Developed 4 products and new features from concept to launch using Agile principles to eliminate waste and reduce cost.
- Leveraged customer and employee insights, stakeholder feedback and market/product analytics to develop the product roadmap.
- Led 15 design workshops with business and technical stakeholders across the entire design process, research, ideation, design, and delivery.
- Defined success criteria and metrics to measure performance resulting in a frontline NPS score of 9.8/10.

**Air France,** *Paris, France*
**Pricing Analyst NA – Revenue Management**          Jan 2017 – Apr 2018
- Identified market trends, formulated solutions, and partnered with Pricing Strategy and Inventory teams to execute market strategies quickly and maintained competitive posture.
- Coordinated a published pricing actions with internal stakeholders, joint venture partners, Delta and Virgin Atlantic, while leveraging multiple data sources and inputs from data analytics.
- Reduced cost by $1.2M annually by participating in the design and conception of a new set of air and surface ancillaries, their pricing, issuance, distribution, and tracking automation.
- Troubleshot the fare filing related messaging with ATPCo and responded to inquiries from other groups surrounding ARC and BSP fare and pricing discrepancies internally.

**Air France,** *Paris, France*
**Global Ticketing Lead – International Reservations**          July 2014 – Jan 2017
- Provided ticketing and fare related support to internal and external customers through various contact channels while maintaining expertise in fares, pricing, and ticketing.
- Advised front-line agents with escalated interline and joint-venture ticketing and fare interpretation in different partner airline Global Distribution Systems (Amadeus, Sabre, Travelport).
- Mentored new team members in both frontline reservations and ticketing, consistently advocating for best practices.

## Education / Certifications

**Université Paris Descartes,** *Paris, France*          2017
Bachelor of Science in Mathematics and Computer Science

**Certified Six Sigma Black Belt – American Society for Quality**

**FAA Airline Transport Pilot (Type: E170; E190)** – Total Time: 1,571.6

## Skills

- **Technical Experience:** C#, PHP, .Net, CSS, HTML, Python, JavaScript, SQL, SalesForce, ServiceNow, IdentityIQ, Amadeus, Sabre, Worldspan, TSYS, FIS, Adyen, Stripe, VBA, Microsoft Suite, Azure, and Unix.

- **Languages:** Fluent in English and French. Conversational in Spanish and Russian.