Gregory M. Saylin, #9648
Zachary T. Burford, #19771
Tyler S. Erickson, #19523
HOLLAND & HART LLP
222 South Main Street, Suite 2200
Salt Lake City, UT 84101-2194
Telephone: 801.799.5800
GMSaylin@hollandhart.com
ZTBurford@hollandhart.com
TSErickson@hollandhart.com

*Attorneys for Plaintiff SkyWest Airlines, Inc.*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF UTAH – SOUTHERN DIVISION**

| | |
|---|---|
| SKYWEST AIRLINES, INC.,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>DANIEL MOUSSARON, and VIKAAS KRITHIVAS,<br><br>　　　　Defendants. | **PLAINTIFF'S MEMORANDUM ON THE INAPPLICABILITY OF THE NORRIS-LAGUARDIA ACT, 29 U.S.C. § 101** *et seq.*<br><br>Civil No. 4:26-cv-00015-DN-PK<br><br>Senior District Judge David Nuffer<br>Magistrate Judge Paul Kohler |

Pursuant to the Court's Memorandum Decision and Order Granting in Part and Denying in Part Motion for Immediate Setting of Hearing and Briefing Schedule (Dkt. No. 21), Plaintiff SkyWest Airlines, Inc. ("SkyWest") submits this memorandum addressing Plaintiff Daniel Moussaron's argument that the Norris–LaGuardia Act ("NLGA"), 29 U.S.C. § 101 et seq., deprives this Court of jurisdiction to issue a temporary restraining order or preliminary injunction because Moussaron sent text messages "gauging interest" in unionization. *See* Dkt. No. 16, Notice of Appearance. That contention is misplaced. This case does not involve a "labor

dispute" as defined by the NLGA. The gravamen of this suit is the unauthorized access to and misuse and dissemination of SkyWest's confidential information. The relief SkyWest seeks is directed at stopping the unlawful use and spread of non-public data and preserving evidence; it does not restrain any of the labor activities enumerated under the NLGA or that the NLGA was designed to protect. Accordingly, the NLGA presents no bar to SkyWest's requested injunctive relief.

## ARGUMENT

A.  **The NLGA Does Not Apply to SkyWest's Request for Injunctive Relief.**

Defendant Moussaron advances a novel application of the Norris–LaGuardia Act that would immunize any misconduct from injunctive relief merely by invoking "organizing," even where the controversy does not concern bargaining, representation, or terms and conditions of employment. The Norris–LaGuardia Act does not reach that far.

The NLGA deprives federal courts of jurisdiction to issue injunctions only in cases "involving or growing out of a labor dispute, except in a strict conformity with the provisions of this chapter." 29 U.S.C. § 101. The NLGA defines "labor dispute" as "any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment." *Id.* § 113(c);[1] The Supreme Court has explained that the NLGA

---

[1] Congress pass the NLGA "in response to federal-court intervention on behalf of employers through the use of injunctive powers against unions and other associations of employees"—a practice that, by turning injunctive powers against unions, had "caused the federal judiciary to fall into disrepute among large segments of this Nation's population." *Jacksonville Bulk Terminals, Inc. v. Int'l Longshoremen's Ass'n*, 457 U.S. 702, 715 (1982) (internal citations omitted).

"expresses a basic policy against the injunction of *activities of labor unions*." *Burlington N. R.R. Co. v. Bhd. of Maint. of Way Employees*, 481 U.S. 429, 437 (1987) (emphasis added) (quoting *Int'l Ass'n of Machinists v. Street*, 367 U.S. 740, 772 (1961)); *see also Jacksonville Bulk Terminals, Inc. v. Int'l Longshoremen's Ass'n*, 457 U.S. 702, 715 (1982) (explaining that the NLGA was "enacted in response to federal court intervention on behalf of employers through the use of injunctive powers against unions and other associations of employees").

Critically, however, the Supreme Court has emphasized that the "critical element" of determining whether a case involves or grows out of a "labor dispute" is whether "the employer–employee relationship [is] the matrix of the controversy." *Jacksonville Bulk Terminals*, 457 U.S. at 712. Applying that controlling principle, courts routinely hold the NLGA inapplicable when the dispute does not concern collective bargaining, representation, or economic pressure affecting the employer–employee relationship. *See Columbia River Packers Ass'n v. Hinton*, 315 U.S. 143, 146–47 (1942) (refusing to extend NLGA to "controversies upon which the employer-employee relationship has no bearing"); *Taylor v. Local No. 7*, 353 F.2d 593, 606 (4th Cir. 1965) (finding Norris-LaGuardia Act did not apply because matrix of controversy was not the employer–employee relationship in the context of a labor dispute); *New Orleans SS Ass'n v. General Longshore Workers*, 626 F.2d 455, 464 (5th Cir. 1980) ("The Norris-LaGuardia Act . . . was adopted in 1932 to curb federal courts in their use of injunctions against strikes and other economic weapons in labor disputes.").

The Third Circuit, for example, held that, "although the phrase 'labor dispute' has been construed broadly," no labor dispute was involved where "this case involves one employee group's claims for money damages against another employee group under a CBA that no longer

3

governs any employer-employee relationship. The 'matrix' of this controversy cannot fairly be considered the 'employer-employee relationship.'" *In re Continental Airlines*, 484 F.3d 173, 184 (3d Cir. 2007).

Courts likewise reject NLGA arguments in statutory and contractual contexts outside the bargaining context. The First Circuit held that "[t]he Norris-LaGuardia Act governs injunctions in cases 'involving or growing out of a labor dispute,' 29 U.S.C. § 107, and not actions for unpaid wages under the FLSA," reasoning that "[b]y contrast, the FLSA protects the statutory—rather than contractual—rights of individual workers to guaranteed compensation for all work performed." *Pineda v. Skinner Servs., Inc.*, 22 F.4th 47, 57 (1st Cir. 2021) (citing *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 741 (1981)). The District of Kansas concluded in *Carpenters Pension Trust Fund of Kansas City v. Industrial Maintenance of Topeka, Inc.* that claims to enforce fringe-benefit contributions and reporting obligations did not present a labor dispute, explaining that the plaintiffs "don't seek to negotiate terms or conditions of employment," and concluding "that defendant hasn't shown this matter concerns a 'labor dispute' under the NLGA." No. 21-2208-DDC-GEB, 2023 U.S. Dist. LEXIS 16297, at *8–9 (D. Kan. Jan. 31, 2023).

The Ninth Circuit has likewise recognized that mere disagreements divorced from bargaining and economic pressure are not the kind of controversies to which the NLGA is directed: "Here we cannot find any 'specific provision' of the Norris–LaGuardia Act defining conduct that would be 'enjoined' by the type of 'injunction' sought in this case. . . . In this case we have a 'labor dispute,' as defined in section 13, only in the most refined and technical [sense]. There is nothing in the complaint to suggest that either party is here using its economic powers in

any way to bring pressure upon the other. Here, there is a mere disagreement as to the meaning and effect of certain terms of the contract. This we think, is not the type of 'labor dispute' to which Norris-LaGuardia is directed." *Retail Clerks Union v. Alfred M. Lewis, Inc.*, 327 F.2d 442, 448 (9th Cir. 1964).

This case falls well outside the NLGA. The matrix of this controversy is the unauthorized access to, and misuse and dissemination, of SkyWest's confidential information. SkyWest is not "using its economic powers" to chill Defendants' legitimate efforts to organize or exercise their rights. *Retail Clerks Union*, 327 F.2d at 448. And the injunctive relief SkyWest requests specifically *does not* restrain "lawful communications that do not rely on SkyWest-derived data." Dkt. 5, TRO Motion, 21. The NLGA does not allow Defendants to shield their unlawful and tortious conduct from injunctive relief and convert this into a labor dispute by merely alleging that Moussaron sent "one text message . . . gauging their interest in forming a labor union." Dkt. No. 16. As the cases above reflect, the NLGA does not transform every workplace-related tort or contract claim into a labor dispute.

To further illustrate that the NLGA was not intended to apply in a case like this, the Act enumerates specific acts that are not subject to restraining orders or injunctions. Section 4 provides that no federal court shall have jurisdiction to restrain the following acts:

    a.    Ceasing or refusing to perform any work or to remain in any relation of employment;

    b.    Becoming or remaining a member of any labor organization or of any employer organization;

    c.    Paying or giving to, or withholding from, any person participating or interested in such labor dispute, any strike or unemployment benefits or insurance, or other moneys or things of value;

    d.    By all lawful means aiding any person participating or interested in any labor dispute who is being proceeded against in, or is prosecuting, any action or suit in any court of the United States or of any State;

    e.    Giving publicity to the existence of, or the facts involved in, any labor dispute, whether by advertising, speaking, patrolling, or by any other method not involving fraud or violence;

    f.    Assembling peaceably to act or to organize to act in promotion of their interests in a labor dispute;

    g.    Advising or notifying any person of an intention to do any of the acts heretofore specified;

    h.    Agreeing with other persons to do or not to do any of the acts heretofore specified; and

    i.    Advising, urging or otherwise causing or inducing without fraud or violence the acts heretofore specified.

29 U.S.C. § 104. SkyWest's requested relief touches on none of these activities—SkyWest seeks only an order protecting the further misuse of its information and targeted discovery to uncover the extent of Defendants' misuse. Courts, including the one cited by Defendant Moussaron in support of his NLGA argument (*see* Dkt. No. 16), have rejected application of the NLGA in similar circumstances. *See Tomkins Indus. v. Sheet Metal Workers' Int'l Ass'n, Local No. 2*, 903 F. Supp. 1438, 1442 (D. Kan. 1995) (concluding the removal of union labels by the union "did not trigger application" of the NLGA because, in part, "the injunction requested by the employer does not seek to enjoin one of the acts enumerated in § 104"); *Retail Clerks Union*, 327 F.2d at 448 ("Here we cannot find any 'specific provision' of the [NLGA] defining conduct that would be 'enjoined' by the type of 'injunction' sought in this case."); *San Diego Police Officers' Ass'n v. Aguirre*, 2005 U.S. Dist. LEXIS 38166, at *30–31 (S.D. Cal. Nov. 1, 2005) (claims for breach

6

of contract, conversion, fraud, and breach of fiduciary duty "do not constitute a 'labor dispute' as intended under § 104").

At bottom, Moussaron's interpretation would convert the NLGA into a categorical bar against injunctions in any employment-adjacent case—a position no court has adopted. He cites no case, and SkyWest has found none, applying the NLGA to bar an injunction in a dispute like this one involving the clear unauthorized access to and misuse of confidential information. Such a reading would leave SkyWest without any meaningful remedy to protect its confidential information and its pilots' privacy from ongoing misuse. The NLGA was designed to address disputes involving union-related collective activity and economic pressure. This case does not involve such activity. The Act is therefore inapplicable.

**B.        Even If Applicable, Injunctive Relief Is Still Appropriate Under the NLGA.**

Even if the NLGA were to apply, "it does not bar injunctive relief outright." *Spring Creek Rehab. v. NLRB*, 160 F.4th 380, 384 (3d Cir. 2025). On the contrary, the statute itself permits injunctive relief issued in "conformity with the provisions of this chapter." 29 U.S.C. § 101. It merely requires a hearing with an opportunity for cross-examination, plus required factual findings. Section 7 sets out the procedural and substantive prerequisites for injunctions in cases involving or growing out of a labor dispute. 29 U.S.C. § 107. Specifically:

>    (a)    A hearing with testimony from witnesses in open court and an opportunity for cross-examination.
>
>    (b)    Findings of fact that: (1) unlawful acts have been threatened and will be committed unless retrained, or have been committed and will be continued unless restrained; (2) substantial and irreparable injury to the complainant's property will follow; (3) greater injury will be inflicted by denial of relief than by granting it; (4) the complainant has no adequate remedy at law; and (5) public officers charged with protecting the

          complainant's property are unable or unwilling to furnish adequate protection.
(c)    An order narrowly tailored to the acts complained of, and compliance with the NLGA's security requirements.

SkyWest is ready and willing to proceed with a hearing with live testimony and the opportunity for cross-examination. The record shows (and a hearing will confirm) Defendants' unauthorized access, misuse, and dissemination of SkyWest's nonpublic, confidential information; absent restraint, that misuse and dissemination will continue, exacerbating harm to pilot privacy and exposing SkyWest's proprietary data. SkyWest and its pilots face ongoing harm if relief is denied, while Defendants suffer no cognizable injury from an order prohibiting only the use, possession, or disclosure of SkyWest-derived, nonpublic information. Legal remedies are inadequate to prevent further misuse or spread of digital data already obtained without authorization, and public officers cannot practically forestall continued dissemination or police future misuse in real time. *See* 29 U.S.C. § 107.

The injunction sought is strictly tailored to prohibit only unlawful acts—the use, disclosure, possession, further acquisition, or exploitation of SkyWest's nonpublic information—and will expressly preserve Defendants' ability to communicate and organize by lawful means, including using information obtained directly from consenting employees or from public sources. SkyWest is prepared to proceed promptly with a hearing and witness testimony so the Court can make the findings required by § 107 and enter a narrow order in strict conformity with the NLGA if necessary.

Additionally, the NLGA does not prohibit SkyWest's Motion for Expedited Discovery. *See* Dkt. No. 8. The Act speaks only to injunctive relief and does not limit the Court's authority under Rule 26 to order targeted, expedited discovery for good cause, especially in advance of a

preliminary-injunction hearing. Accordingly, Moussaron's NLGA defense does not bar the Court from granting SkyWest's Motion for Expedited Discovery.

## CONCLUSION

For the foregoing reasons, the Norris–LaGuardia Act does not deprive this Court of jurisdiction to issue injunctive relief here. This controversy does not concern bargaining, representation, or terms and conditions of employment; it concerns the unauthorized access to, and misuse and dissemination of, SkyWest's nonpublic information. The relief SkyWest seeks does not restrain any activity enumerated in 29 U.S.C. § 104 and is expressly limited to unlawful use and spread of SkyWest-derived data. Alternatively, even if the NLGA were applicable, it permits narrowly tailored injunctions upon the findings set out in 29 U.S.C. § 107—findings that are met on this record or can be promptly made at a brief evidentiary hearing. Accordingly, the Court should reject Moussaron's NLGA argument and grant SkyWest's TRO Motion (Dkt. No. 5) and SkyWest's Motion for Expedited Discovery (Dkt. No. 8).

Dated this 8th day of February, 2026

HOLLAND & HART LLP

*/s/ Zachary T. Burford*
Gregory M. Saylin
Zachary T. Burford
Tyler S. Erickson

*Attorneys for Plaintiff SkyWest Airlines, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of February, 2026, I caused a true and correct copy of the foregoing **PLAINTIFF'S MEMORANDUM ON THE INAPPLICABILITY OF THE NORRIS-LAGUARDIA ACT, 29 U.S.C. § 101 *ET SEQ.*** to be served via email to the following:

    Timothy Ducar
    *tducar@azlawyers.com*
    *Attorney for Defendant Vikaas Krithivas*

    */s/ Zachary T. Burford*

36999448_v1