Jonathan K. Thorne (Utah Bar No. 12694)
Lauren I. Scholnick (Utah Bar No. 7776)
**SCHOLNICK THORNE HOLLAND**
40 South 600 East
Salt Lake City, Utah 84102
Telephone:(801) 359-4169
Facsimile: (801) 359-4313
email:    jonathan@utahjobjustice.com
          lauren@utahjobjustice.com

*Attorneys for Defendant Daniel Moussaron*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF UTAH

# SOUTHERN DIVISION

| | |
|---|---|
| SKYWEST AIRLINES, INC., <br><br> Plaintiff, <br><br> vs. <br><br> DANIEL MOUSSARON, and VIKAAS KRITHIVAS, <br><br> Defendants. | **DEFENDANT MOUSSARON'S OPPOSITION TO PLAINTIFF SKYWEST'S REQUEST TO IMAGE DEFENDANTS' DEVICES** <br><br> Civil No. 4:26-cv-00015-DN <br><br> Judge David O. Nuffer |

Defendant Daniel Moussaron ("Defendant Moussaron" or "Moussaron"), by and through his undersigned counsel, hereby files this Opposition to Plaintiff SkyWest's Expedited Discovery Requests to Defendants, Request for Production No. 6 (Dkt. No. 8-1 at 12) to image Defendants Moussaron and Krithivas electronic devices by a forensic examiner.

## ARGUMENT

SkyWest has sued and sought an emergency TRO against Defendants for allegedly

improperly accessing SkyWest pilot information like phone numbers and addresses from an employee directory. Defendants only actions were in furtherance of their lawful right under the Railway Labor Act to organize a labor union. In addition to taking emergent legal action, SkyWest fired Mr. Moussaron and now seeks to take all of Defendants' information from their personal electronic devices, all of this to punish and make examples of them for daring to bring together pilots in forming a union. The Court should carefully examine whether the discovery is truly necessary to the instant action or whether it is part of a pattern of retaliation and scapegoating that should not be condoned by judicial process.

As part of its retaliation for union organizing, SkyWest seeks to forensically image Defendants Moussaron's and Krithivas's personal electronic devices, including their computers, phones, servers, and external storage media used from August 29, 2025 to present. Specifically, SkyWest has requested that it be allowed the extraordinary discovery of:

> Pursuant to Federal Rule 34(a)(1)–(2), identify and make available for inspection, forensic imaging, and examination any Device reasonably likely to contain SkyWest Confidential Information, including without limitation computers (desktops, laptops, tablets), mobile phones/smartphones, servers, and external storage media (USB drives, external hard drives), used during the Relevant Period. The inspection shall be conducted by an independent forensic examiner hired by SkyWest and is limited to creating forensic images and locating, preserving, and reporting on SkyWest Confidential Information and related artifacts (including datasets, log files, scripts/source code, configuration files, and transmission records) within the Relevant Period.[1]

(the "Examination")

Defendants have multiple objections to this Examination. First, while SkyWest has represented that the purpose of its expert's inspection is to locate and report on its "Confidential Information," it does not assure Defendants that it will not sweep up their own irrelevant but highly private electronic information in the most intrusive way. Second, the Examination is

---

[1] Dkt. No. 8-1, Request for Production No. 6.

unlikely to produce evidence that can be obtained through less costly and burdensome means. Third, and most importantly, it perpetuates and exacerbates the retaliation against Defendants for union organizing, which is an ongoing violation of the Railway Labor Act.

I.     SUCH EXAMINATIONS ARE DISFAVORED BY COURTS AS OVERLY INVASIVE

Fed. R. Civ. P. 26(b) allows discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." A court, in applying this Rule, must limit discovery if it can be obtained from a more convenient, less burdensome, or less expensive source, or if it is invasive and not proportional to the needs of the case.[2] Courts routinely deny digital imaging of devices based on a party's privacy concerns, especially when discoverable information can be found through less invasive means, unless there is demonstrated misconduct by party controlling the device. Indeed, the Tenth Circuit has noted that mere skepticism that an opposing party has not produced all relevant information is "not sufficient to warrant drastic electronic discovery measure[s]" such as computer imaging.[3] The Sixth Circuit Court of Appeals has noted:

> Civil litigation should not be approached as if information systems were crime scenes that justify forensic investigation at every opportunity to identify and preserve every detail . . . . [M]aking forensic image backups of computers is only the first step of an expensive, complex, and difficult process of data analysis that can divert litigation into side issues and satellite disputes involving the interpretation of potentially ambiguous forensic evidence . . . . Thus, even if acceptable as a means to preserve electronic evidence, compelled forensic imaging is not appropriate in all cases, and courts must consider the significant interests implicated by forensic imaging before ordering such procedures. *Cf.* Fed. R. Civ. P. 34(a) Advisory Committee Note (2006) ("Courts should guard against undue

---

[2] Fed. R. Civ. P. 26(b); See also *Santana v. MKA2 Enters.*, No. 18-2094-DDC-TJJ, 2019 U.S. Dist. LEXIS 2904, at *3 (D. Kan. Jan. 8, 2019).

[3] *McCurdy Grp. v. Am. Biomedical Grp., Inc.*, 9 F. App'x 822, 831 (10th Cir. 2001); See also *Sophia & Chloe, Inc. v. Brighton Collectibles, Inc.*, No. 12cv2472-AJB(KSC), 2013 U.S. Dist. LEXIS 131367, at *6-7 (S.D. Cal. Sep. 13, 2013) (absent "specific, concrete evidence of concealment or destruction of evidence," courts are generally cautious about granting a request for a forensic examination of an adversary's computer.")

intrusiveness resulting from inspecting or testing [electronic information] systems."). [4]

Trial courts within the Tenth Circuit have similarly denied imaging requests. For example, the court in *Santana v. MKA2 Enters.*, denied imaging of a cell phone due to the extreme privacy nature of digital devices, finding that cell phones "likely contains a tremendous volume of information, including possibly text messages, email messages, phone longs, and photographs that are not at all relevant to the claims or defenses" in the case.[5] The court also held that the information "could be more easily and less invasively obtained by asking the Plaintiff about the [sought after information] during his deposition" or through "less invasive means."[6] The court further explained that computer inspections were "unusual", except for in cases where the party has a history of "providing incomplete and inconsistent responses" to discovery requests, or has previously failed to search computers.[7]

Further, in *Jacobson v. Starbucks Coffee Co.*, the court ordered the mirror imaging of a hard drive after misconduct by the party controlling the device, stating:

> Although production of a computer for inspection is unusual, the court is persuaded that the circumstances in this case warrant production of Vanatta's computer or a mirror image of the hard drive for plaintiff's inspection. The record before the court reflects a history of incomplete and inconsistent responses to plaintiff's production requests.[8]

Additionally, the court in *Charles Schwab & Co. v. Highwater Wealth Mgmt., LLC*, noted that forensic imaging "garner[s] the most vigorous objection, and presents the most significant issue from the perspective of overbreadth, privacy, and privilege." The court denied a digital

---

[4] *John B. v. Goetz*, 531 F.3d 448, 460 (6th Cir. 2008) (granting mandamus after finding that district court's order requiring mirror imaging of computers for preservation purposes was clearly erroneous.)
[5] *Santana* at *3.
[6] *Id.* at *5, 6.
[7] *Id.*
[8] 2006 U.S. Dist. LEXIS 98174, at *21 (D. Kan. Oct. 31, 2006).

imaging exam despite the requesting party suggesting that an inspection protocol or designation under a protective order to resolve the privacy concerns.[9] The court expressed further concern that a forensic imaging "will capture information that is not relevant at all to this action" and that while the requesting party raised concerns that the opposing party would spoliate or withhold evidence, no proof of either was made to the court. Lastly, in denying the examination, the court determined there were other means to obtain the discovery.

II.   **SKYWEST HAS NOT PROVIDED PROPER SUPPORT FOR THE EXAMINATION**

The issue here is Defendants' use of the SWOL directory to access contact information of their fellow pilots for the sole purpose of union organizing. As explained in the Motion to Dismiss (Dkt. No. 25) Defendants obtained nearly all of contact information through web searches, pilot-to-pilot contact, etc., with only a small fraction of the contact information, that of new hires, used for union organizing from the SWOL system.

By the Examination, SkyWest hopes to obtain the information that Defendants got through the SWOL directory and retrieve it from Defendants. It further hopes to discern whether any other party has access to the information so it can stop the further use of it by Defendants and these third-parties. Here, Defendant Moussaron has, even prior to discovery or any obligation to provide information, explained to SkyWest what information he got, how he got it, what it did with it, that he shared it with an organizer with Air Line Pilots Association ("ALPA"), and that only he and ALPA have any access to the information. Indeed, this case is inapposite to those cases where digital imaging has been ordered, as Mr. Moussaron has not repeatedly hid or refused to produce information. Maybe even more crucially, SkyWest has not

---

[9] *Charles Schwab & Co. v. Highwater Wealth Mgmt., LLC*, Civil Action No. 17-cv-00803-CMA-NYW, 2017 U.S. Dist. LEXIS 158175, at *18 (D. Colo. Sep. 27, 2017).

demonstrated why, in the face of Mr. Moussaron's candor, it has any reason justifying the Examination. Furthermore, SWOL, the online directory where Defendant obtained the information at issue here, is owned and wholly controlled by SkyWest, which has already forensically examined it and produced in this case the logs of Defendants' access. Thus, SkyWest does not need the Examination of Defendants' devices to prove their access or any other critical information about the activities. On the other end of the access, the script that Defendants used to collect the contact information did not write output file(s) to the local computers' drive. Instead, the browser extension took each employee's SWOL directory profile data and forwarded it directly to a server.[10] Thus, the Examination is unlikely to provide SkyWest with relevant or even discoverable information but will, instead, provide it access to Defendants' private information that has nothing to do with this case and is much more valuable and important than phone numbers and addresses. This information includes attorney-client communication, attorney work product, union organizing information, information related to his non-pilot business, photographs, personal email communication, social media, and other private and privileged information.

While Mr. Moussaron can appreciate the Court's suggestion that his computer data be held by the court with a third-party expert, this does not address Defendants' privacy concerns. Again, SkyWest has not explained why its need for a full copy of Defendants' devices, when Defendants have been forthcoming, supersedes their privacy interests and established discovery boundaries for such invasive examinations.

### III.  SKYWEST'S EXAMINATION CHILLS UNION ACTIVITY

Furthermore, and most critically, the Examination will have a chilling, if not freezing,

---

[10] See Declaration of Daniel Mourssan, attached as Exhibit 1.

effect on the ongoing Air Line Pilot Association ("ALPA") labor organizing at SkyWest. Indeed, Mr. Moussaron's termination has already had sweeping, harmful effect on the pilots' organizing efforts that are irreversible. SkyWest's actions have had a "chilling effect" on union organizing, which courts have recognized after a company discharges key union members.[11] When Mr. Moussaron was fired, he was one of five members of the SkyWest-ALPA Organizing Committee Leadership ("ECL"), responsible for initiating and directing the organizing drive. Reporting to ECL was a large group of pilots called the Organizing Committee ("OC"). Immediately following Mr. Moussaron's termination, the remaining four members of the ECL quit, leaving no executive member to direct the organizing campaign – effectively cutting the head off the organizing efforts. Additionally, 25-30 members of the OC also quit the OC because of their completely justified fear of SkyWest reprisal. Indeed, SkyWest has long opposed union organizing and developed a website dedicated to opposing it. On that site, it claims that that "[t]he existence of a union would undoubtedly compromise the positive culture we have worked together to create." http://strongertogetherskywest.com/.

Allowing SkyWest to obtain Defendants' personal devices will further chill SkyWest's pilots efforts to unionize. This will demonstrate to all of its pilots, in stark terms, that SkyWest will retaliate against anyone who dare attempt to form a labor union, by any means necessary, including terminating their employment, suing them, getting an emergency order against them, and even getting the court to commandeer and take a complete copy of everything on your personal devices. All of this for the act of trying to collect the contact information of fellow pilots. Indeed, courts have long scrutinized employer's tactics to chill union organizing and have

---

[11] *NLRB v. Electro-Voice, Inc.*, 83 F.3d 1559, 1572 (7th Cir. 1996); See also *Asseo v. Centro Medico Del Turabo, Inc.*, 900 F.2d 445, 454 (1st Cir. 1990) (The absence of key union organizers can contribute to the erosion of support for a nascent union movement.).

recognized that even making oppressive discovery requests can have a chilling effect on union organizing efforts. For example, in *United Nurses Ass'ns of Cal./Union of Health Care Professionals, NUHHCE, AFSCME v. NLRB*, the court discussed these "chilling impacts" and "harmful effect that an employer's demand for information has on all workers, any one of whom might be dissuaded from union activity if they think an employer may learn of it."[12]

IV. **THE EXAMINATION IS ESPECIALLY ONEROUS WHEN THE DATA IS NOT "CONFIDENTIAL"**

Even if the effect of the Examination would not chill union activity, it is too much when the data that SkyWest claims is "confidential" and must be returned – phone numbers and addresses – is not confidential information under its own non-disclosure agreement ("NDA") (Dkt. No. 1-1). Nowhere in Defendants' NDA does it list employee names and contact information as confidential. Further, SkyWest never put Defendants on notice that it considered it confidential until SkyWest found out Defendants were using the data for organizing and fired Mr. Moussaron. Furthermore, the US Supreme Court, in *Van Buren v. United States*, found that a defendant did not "exceed authorized access," as defined in the Computer Fraud and Abuse Act ("CFAA") when he accessed a database he was granted access to, but then obtained information for an improper purpose.[13]

In addition, contact information of employees is generally recognized to be non-confidential data that may be properly used for protected union activity.[14] For example, in *Gray*

---

[12] *United Nurses Ass'ns of Cal./Union of Health Care Professionals, NUHHCE, AFSCME v. NLRB*, 871 F.3d 767, 785 (9th Cir. 2017).
[13] *Van Buren v. United States*, 141 S.Ct. 1648, 1662 (2021).
[14] While this caselaw has been developed under the National Labor Relations Act – courts can rely on the National Labor Relations Act to interpret the Railway Labor Act, "particularly true where the general principles to be considered are capable of consistent application" – such as retaliation for union organizing. *Kaschak v. Consol. Rail Corp.*, 707 F.2d 902, 910 (6th Cir. 1983) (While the Supreme Court has warned against the wholesale importation of the provisions of the LMRA into the RLA, see *Brotherhood of R.R. Trainmen v. Jacksonville Terminal Co.*, 394

*Flooring*, 212 NLRB 668 (N.L.R.B. 1974), an employee was fired for "pilfering" company records. There the employee went into a warehouse office and began copying names of employees from a schedule roster hanging by his supervisor's desk. Another employee asked him if he needed telephone numbers and handed him some index cards containing employees' names and telephone numbers, which were usually kept in a cubby in his desk, but on this occasion were on the top of the desk. The National Labor Relations Board ("NLRB") determined that the information not confidential because: 1) there was no announced policy concerning the use of the note cards by employees; 2) the cards were not maintained in a place or manner that would indicate management considered them to be confidential; and 3) nothing on the cards that suggested anyone in management considered the cards to be confidential. The NLRB then held that the employee was discharged for engaging in concerted union activity in violation of National Labor Relations Act §8(a)(3) and §8(a)(1). Similarly, here, SkyWest never told employees that contact information was considered confidential, it was accessible to all employees in 2025, and the NDAs are silent on the issue. This is yet another reason to preclude the Examination.

---

U.S. 369, 383-84, 395 (1969); *Railroad Trainmen v. Chicago River & I.R. Co.,* 353 U.S. 30, 31 n.2 (1957), and this Court has similarly refused to draw blanket analogies between the two Acts, see *Brotherhood of Locomotive Firemen and Enginemen v. United Transportation Union*, 471 F.2d 8, 9 (6th Cir. 1972), the Supreme Court has often looked to the LMRA and the National Labor Relations Act (NLRA) in construing or interpreting the RLA. See *Brotherhood of R.R. Trainmen v. Jacksonville Terminal Co.*, supra; *Steele v. Louisville & Nashville R. Co.*, 323 U.S. 192 (1944); *Railroad Trainmen v. Toledo, P. & W. R. Co.*, 321 U.S. 50, 61, n.18 (1944). Cf. *Duggan v. International Association of Machinists*, 510 F.2d 1086, 1087-88 (9th Cir. 1975); *Trans World Airlines, Inc. v. Indep. Fed'n of Flight Attendants*, 489 U.S. 426, 432, 109 S. Ct. 1225, 1230 (1989) ("We have observed in the past that carefully drawn analogies from the federal common labor law developed under the NLRA may be helpful in deciding cases under the RLA.").

## CONCLUSION

Based on the foregoing, this Court should deny SkyWest's request to digitally image Defendants' devices.

DATED THIS 10th day of February, 2026.

**SCHOLNICK THORNE HOLLAND**

*/s/ Jonathan K. Thorne*
Jonathan K. Thorne
Lauren I. Scholnick

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of February, 2026, I caused a true and correct copy of the foregoing **DEFENDANT MOUSSARON'S OPPOSITION TO PLAINTIFF SKYWEST'S REQUEST TO IMAGE DEFENDANTS' DEVICES** to be served via CMECF:

Gregory M. Saylin
Zachary T. Burford
Tyler S. Erickson
*Attorney for SkyWest*

Timothy D. Ducar
*Attorney for Vikaas Krithivas*