Gregory M. Saylin, #9648
Zachary T. Burford, #19771
Tyler S. Erickson, #19523
HOLLAND & HART LLP
222 South Main Street, Suite 2200
Salt Lake City, UT 84101-2194
Telephone: 801.799.5800
gmsaylin@hollandhart.com
ztburford@hollandhart.com
tserickson@hollandhart.com

*Attorneys for Plaintiff SkyWest Airlines, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH – SOUTHERN DIVISION

| | |
|---|---|
| SKYWEST AIRLINES, INC.;<br><br>Plaintiff,<br><br>vs.<br><br>DANIEL MOUSSARON, and VIKAAS KRITHIVAS;<br><br>Defendants. | **PLAINTIFF'S REPLY TO REQUEST TO IMAGE DEFENDANTS' DEVICES**<br><br>Civil No. 4:26-cv-00015-DN-PK<br><br>Senior Judge David Nuffer<br>Magistrate Judge Paul Kohler |

Plaintiff SkyWest Airlines, Inc. ("SkyWest") submits this reply in support of its request for forensic imaging of Defendants' devices. Defendants admit they used their credentials to bypass role-based controls on a protected system, scripted a mass extraction of pilots' personal cell numbers and home addresses, and then used that data for non-SkyWest outreach. That information is confidential "employee data" under the NDAs they signed and under SkyWest's published Code of Conduct and Social Media policies. *See* Exhibit 1. Defendants agreed to these rules, ignored them, and cannot now recast the directory data as non-confidential.

### A. The Employee Data is Confidential Information.

Defendants' claim that directory Employee Data falls outside the NDAs is contrary to the agreements and SkyWest's mandatory policies. In their NDAs, Defendants acknowledged they "may become aware of certain information that, if disclosed, has the potential to harm *other employees*," and that "SkyWest values and seeks to protect *the privacy of its employees*." Dkt. 5-1 (Ex. A-1, NDAs) (emphasis added). The NDAs define "Confidential and Privileged Information" to include "*employee data* in the form of personnel records, background check information, medical records, and other benefits information," and confirm that "[a]ll such information is considered confidential and privileged no matter how it is communicated." *Id.*

Personal cell phone numbers and home addresses are quintessential "employee data," and they reside within "personnel records" in SWOL's directory. *See* Dkt. No. 5-1, Ex. A, Decl. of J. Esplin, ¶¶ 7–9. SWOL also stores other employee data (job titles, employee numbers, team, supervisor, base/location, hire date) that Defendants accessed. Dkt. 1, Compl., ¶ 13.

Defendant Moussaron argues that "SkyWest never put Defendants on notice that it considered [contact information] as confidential until SkyWest found out Defendants were using the data for organizing and fired Mr. Moussaron." This is not true. SkyWest's Code of Conduct and policies expressly designate employee contact information and other personal information as confidential and prohibit disclosure. SP 150.13 states: "Company, employee, and customer information must be protected from unauthorized modification, destruction, and disclosure," and "Employees must not disclose or reveal any confidential information entrusted to them by the

Company." Ex. 1.[1] Examples of confidential information include "***Personal information*** about SkyWest employees and/or customers." *Id.* (emphasis added). The Social Media policy similarly states: "Internal, confidential, and/or restricted SkyWest information should never be copied or shared externally," including "***any details about employees*** . . . ***such as their contact information***, ***address*** or travel schedule," and specifically forbids sharing information "from SkyWest or partner systems and apps such as: SkyWest Online." *Id.* SP 161.2. Violations "could be detrimental to the company, and even illegal," and "could result in . . . corrective action, up to and including termination." *Id.* It further affirms: "We each have a responsibility … to protect customer and employee privacy and sensitive company information." *Id.* And SP 73 warns that serious infractions warranting administrative leave and separation include "Misuse or theft of Company or another employee's property, ***including employee's personal information***." *Id.* SP 73.2 (emphasis added).

The agreements and policies are unambiguous. Defendants agreed to them, then used SkyWest's protected systems to mass-extract and download employee contact and address information and used it for non-SkyWest purposes. These were clear violations of the NDAs and SkyWest policy, and Defendants cannot now feign ignorance or innocence.

**B.    Courts Routinely Allow Forensic Discovery in Cases Like This.**

As this Court has already recognized, this case is a prototypical candidate for an independent forensic examiner. "[M]any courts now consider such requests to be neither routine nor extraordinary," and have found that forensic imaging is appropriate and often necessary in

---

[1] Defendants signed acknowledgments agreeing that they understand and would abide by these policies. *See, e.g.*, Ex. 2 (Moussaron).

3

data-misappropriation cases like this one. *See Ainstein AI, Inc. v. ADAC Plastics, Inc.*, 2023 U.S. Dist. LEXIS 88484, at *7 (D. Kan. May 19, 2023) ("[W]here trade secrets and electronic evidence are both involved, the Courts have granted permission to obtain mirror images of the computer equipment which may contain electronic data related to the alleged violation."); *ExamWorks, LLC v. Rizkallah*, 2025 U.S. Dist. LEXIS 121013, at *2 (M.D. Fla. Feb. 4, 2025) (granting TRO requiring devices for forensic inspection to locate and preserve misappropriated information); *Aggreko, LLC v. Koronis*, 2013 U.S. Dist. LEXIS 178293, at *19 (D. Mass. Dec. 19, 2013) (ordering imaging to identify and secure confidential data and related artifacts).[2] Forensic imaging will "preserve information necessary to determine which files were accessed and when; where they exist on a hard drive; whether the files were modified to generate new files; and potentially whether deletions have occurred, all of which is relevant to Plaintiff's claims and preliminary injunction motion." *Ainstein AI, Inc.*, 2023 U.S. Dist. LEXIS 88484, at *15. The same is true here. Based on Defendants' admissions, their identified devices undoubtedly contain relevant information central to SkyWest's claims and requested relief. These circumstances warrant forensic discovery.

On the other hand, almost all of the cases cited by Defendants do not involve the misappropriation of confidential information. *See McCurdy Grp. v. Am. Biomedical Grp., Inc.*, 9 F. App'x 822, 831 (10th Cir. 2001) (standard breach of contract case); *Sophia & Chloe, Inc. v. Brighton Collectibles, Inc.*, 2013 U.S. Dist. LEXIS 131367, at *6–7 (S.D. Cal. Sept. 13, 2013)

---

[2] *Balboa Threadworks, Inc. v. Stucky*, 2006 U.S. Dist. LEXIS 29265, 2006 WL 763668, at *3 (D. Kan. Mar. 24, 2006) ("[Forensic investigation] is one method of assuring the preservation of evidence since electronic evidence can easily be erased and manipulated, either intentionally or unintentionally (by overwriting through continued use of the computer).").

(copyright infringement/trademark dispute); *John B. v. Goetz*, 531 F.3d 448, 460 (6th Cir. 2008) (class-action litigation related to Tennessee's replacement Medicaid program where forensic discovery implicated "federalism" concerns); *Jacobson v. Starbucks Coffee Co.*, 2006 U.S. Dist. LEXIS 98174, at *21 (D. Kan. Oct. 31, 2006) (employment discrimination case). The one case that does—*Charles Schwab & Co. v. Highwater Wealth Mgmt., LLC*, 2017 U.S. Dist. LEXIS 158175, at *18 (D. Colo. Sept. 27, 2017)—involved a Rule 45 subpoena to a non-party's personal cell phone, and the court quashed imaging because the movant offered no protocol and discovery had already closed. Here, we are at the beginning of litigation; SkyWest seeks discovery from parties; Defendants admit their devices were used to access and/or download SkyWest's confidential information; and the parties can agree on a neutral protocol to preserve and limit access to relevant evidence.

Moreover, while Defendants claim they have been forthcoming, Defendants' shifting accounts and silence underscore the need for a neutral examiner. When he was initially confronted by SkyWest, Moussaron told SkyWest he was not involved and acted alone; his filings now admit he worked with Krithivas to download this data. *See* Esplin Decl. ¶ 34; Moussaron Decl. ¶¶ 15, 19–21, 26–27. He never disclosed any ALPA role to SkyWest, and ALPA provided no notice identifying an organizing committee. The Court should not be asked to operate on the honor system with someone who has flagrantly violated his NDA and SkyWest policies and who now claims he was not aware of these policies or agreements. A neutral forensic exam is the only reliable way to distinguish "his" list from SkyWest's dataset (by SWOL-specific fields, employee IDs, and formatting), and to locate all devices and accounts where SkyWest data resides.

C.  **Defendants Cannot Use "Unionizing" as Shield from Plainly Unlawful Conduct**.

Defendants broadly claim that employee contact information is generally recognized as "non-confidential data," but rely on a single NLRB decision, *Gray Flooring*, 212 NLRB 668 (1974). But that decision only hurts Defendants' position. The Board's decision emphasized that there were no confidentiality policies and that the information was not maintained as confidential in concluding the conduct was protected. Our case is nothing like that. Here, Defendants signed NDAs that expressly cover "employee data" in personnel records; SkyWest's published Code of Conduct and Social Media policies classify employee personal information and any content from SkyWest systems (including SWOL) as confidential; and SWOL itself and the directory were password-protected and enforced role-based controls that were intended to prevent Defendants from accessing this data. Defendants flagrantly ignored these policies and restrictions in mass-downloading directory data.

The "union chilling" argument likewise misses the mark. Labor laws protect organizing; they do not protect hacking or data theft. And the Norris–LaGuardia Act does not deprive this Court of authority to enjoin unlawful computer access and misuse of confidential data or to order evidence preservation; it limits injunctions restraining protected organizing, which SkyWest does not seek. SkyWest's request targets the misuse and return of SkyWest data, not Defendants' speech. SkyWest has no interest in obtaining access to Defendants' unionizing information. To the extent there is union information intermixed with SkyWest's confidential (which it sounds like there is), a protective order with attorneys'-eyes only restrictions or a redaction procedure is more than capable of addressing those concerns. The cases cited by Defendants are inapposite and involve an employer's efforts to subpoena union communications and authorization cards.

*See United Nurses Ass'ns of Cal. v. NLRB*, 871 F.3d 767, 785 (9th Cir. 2017). SkyWest is not seeking and does not want that information here; its only concern is protecting and securing its data.

## CONCLUSION

The Court should grant SkyWest's request for an independent forensic examiner of Defendants' devices.

DATED this 11th day of February, 2026.

HOLLAND & HART LLP

*/s/ Zachary T. Burford*
Gregory M. Saylin
Zachary T. Burford
Tyler S. Erickson
*Attorneys for Plaintiff SkyWest Airlines, Inc.*

37024544_v1