Gregory M. Saylin, #9648
Tyson C. Horrocks, #12557
Zachary T. Burford, #19771
Holland & Hart LLP
222 South Main Street, Suite 2200
Salt Lake City, UT 84101-2194
Telephone: 801.799.5800
GMSaylin@hollandhart.com
TCHorrocks@hollandhart.com
ZTBurford@hollandhart.com

*Attorneys for Plaintiff and Counterclaim Defendant SkyWest Airlines, Inc.*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH – SOUTHERN DIVISION**

| | |
|---|---|
| SKYWEST AIRLINES, INC., <br><br>     Plaintiff and Counterclaim Defendant, <br><br> vs. <br><br> DANIEL MOUSSARON, <br><br>     Defendant and Counterclaim Plaintiff, <br><br> and VIKAAS KRITHIVAS, <br><br>     Defendant. | **PLAINTIFF'S MOTION TO ENTER PROTOCOL FOR FORENSIC SEARCH OF DEFENDANTS' DEVICES PURSUANT TO COURT'S FEBRUARY 18, 2026 PRESERVATION ORDER** <br><br> Civil No. 4:26-cv-00015-DN-PK <br><br> Senior District Judge David Nuffer <br> Magistrate Judge Paul Kohler |

On February 18, 2026, this Court entered the Order Regarding the Preservation of Evidence and Forensic Imaging (the "Preservation Order") (Dkt. No. 43), ordering that Defendants' personal devices be forensically imaged and preserved by a neutral expert. As contemplated, with the data preserved, the parties need to move to the next step of harvesting relevant information. The parties have agreed on much of a proposed protocol for this purpose. However, there are a few issues remaining about which the parties have not been able to agree. Given that 5 months have passed

since entry of the Preservation Order, the parties now need the Court to decide the remaining issues, issue the protocol, and get this case moving again. SkyWest respectfully moves the Court and seeks such an order. SkyWest's Proposed Protocol and Order Governing Search of Forensic Images of Defendants' Devices ("Proposed Protocol") attached hereto as Exhibit A.

## I.      RELIEF SOUGHT AND GROUNDS

With the Preservation Order issued and the data on the devices waiting to be reviewed by a neutral expert to extract relevant information, the parties have agreed on nearly all elements of a protocol for this purpose. However, a handful of issues remain for direction from the Court. Dkt. No. 55 at 5, citing Preservation Order ¶ 14. These primary issues are:

(1)    the treatment of union-organizing communications;

(2)    avoiding an additional process of narrowing the search terms;

(3)    whether SkyWest's in-house counsel may review AEO-designated materials;

(4)    the definition of "SkyWest-Derived Data" and the breadth of the search; and

(5)    cost allocation.

SkyWest respectfully requests that the Court enter the Proposed Protocol attached as Exhibit A, which provides extensive safeguards to protect Defendants' privacy and privilege interests, while enabling SkyWest to obtain the information it needs to prosecute its claims.

## II.     STATEMENT OF RELEVANT FACTS AND PROCEDURAL HISTORY

SkyWest Online ("SWOL") is SkyWest's internal intranet portal, which contains confidential employee information including names, employee numbers, home addresses, and personal cell phone numbers. Dkt. No. 1, Compl., ¶¶ 12–13. While Defendants had access to SWOL, they were restricted from accessing certain fields in SWOL, such as personal cell phone

numbers or home addresses. *Id.* ¶ 14. They were also prohibited from using this or any other SkyWest information for their own purposes and to share it outside of SkyWest. *Id.* ¶¶ 15, 18–19. However, in August 2025, Defendants Daniel Moussaron ("Moussaron") and Vikaas Krithivas ("Krithivas") (collectively, "Defendants") engaged in a coordinated campaign to access and download confidential pilot employee data from SWOL by circumventing role-based permissions that restricted front-line pilots from viewing personal cell phone numbers and addresses. *Id.* ¶¶ 21–33. Collectively, they downloaded over 5,000 pilots' personnel records over the course of five months. *Id.* ¶¶ 27, 31–32. Defendants then transmitted, shared, or disseminated this information to third parties. *Id.* ¶¶ 20, 36; Preservation Order ¶¶ 2(a)–(e). Defendants admit to using their SWOL credentials to automate directory "View" requests to collect pilot contact and identifying information en masse. Preservation Order ¶ 2(a)–(c). Defendants have also identified the specific devices they used to extract and distribute this information—Krithivas's desktop computer, and Moussaron's personal MacBook laptop ("Defendants' Devices"). *Id.* ¶ 3(a)–(b).

At the hearing that led to the Preservation Order, SkyWest explained that it urgently needed to discover with whom its data had been shared and how it had been used so that it could take measures to protect it from further distribution or misuse. Dkt. No. 5. Accordingly, the Court found that the forensic images were necessary "to capture and preserve: which SWOL directory files and fields were accessed and when; browser and system artifacts confirming the methods used; whether downloads were modified to generate derivative data; whether and when deletions occurred; and the scope and distribution of SkyWest-derived datasets." Preservation Order, ¶ 2(e). A neutral expert was selected, Premier Legal Technicians ("Premier"), and it imaged and preserved Defendants' Devices and currently maintains possession, custody, and control of those images. *Id.*

¶¶ 4, 9. However, after five months of meeting and conferring, SkyWest still has not been able to access the data or get answers regarding what happened to its data. The urgency behind the TRO has not abated, and SkyWest should quickly be permitted to discover to whom its data has been transferred and how it is being misused.

## III.   ARGUMENT

Courts routinely enter forensic search protocols following the preservation of devices in cases like this one. Indeed, this Court's own Preservation Order was modeled in part on *Ainstein AI, Inc. v. ADAC Plastics, Inc.*, 2023 U.S. Dist. LEXIS 88484, at *13–14, *19 (D. Kan. May 19, 2023), where the court—after ordering forensic imaging—set a Rule 26 conference to discuss an ESI protocol to govern the search of the imaged devices. *Id.* at *13–14, *19. As the *Ainstein* court recognized, forensic imaging "will preserve information necessary to determine which files were accessed and when; where they exist on a hard drive; whether the files were modified to generate new files; and potentially whether deletions have occurred[.]" *Id.* at *14–15. But preservation without a search protocol is incomplete—the protocol is the mechanism by which the preserved data becomes accessible and usable for litigation purposes. Where, as here, the parties agree that a forensic search protocol is necessary but cannot agree on the parameters, "it is not uncommon for courts to fashion a protocol that serves as a compromise." *TLS Mgmt. & Mktg. Servs. LLC v. Rodriguez-Toledo*, 2017 U.S. Dist. LEXIS 224841, at *4 (D.P.R. Aug. 8, 2017); *see also Safelite Grp., Inc. v. Lockridge*, 2023 U.S. Dist. LEXIS 128789, at *7–9, *12 (S.D. Ohio July 25, 2023) (entering forensic protocol with phased access and AEO protections to balance discovery needs against privacy concerns); *Indus. Packaging Supplies v. Davidson*, 2019 U.S. Dist. LEXIS 28143, at *6, *10–11 (D.S.C. Feb. 22, 2019) (approving forensic protocol with agreed search terms,

temporal limitations, and scheduling accommodations, finding the protocol "proportional to the needs of the case" and "limited so as to reduce the invasion of the [defendant's] privacy").

SkyWest's Proposed Protocol is consistent with these authorities. It provides for a keyword-driven and time-limited search conducted exclusively by Premier, the neutral expert already appointed by the Court. It confines searches to SkyWest-derived data and SWOL-related artifacts. And it permits Defendants' counsel to review for privilege and work product communications, and to designate Confidential and AEO protections before any production. These safeguards are comparable to—and in many respects more protective than—protocols approved in other cases, like *Safelite*, *Industrial Packaging*, and *IHS Global Ltd. v. Trade Data Monitor LLC*, 2019 U.S. Dist. LEXIS 220327, at *11–12 (D.S.C. Dec. 23, 2019) (appointing neutral expert with protocol to protect privilege where forensic image had already been created).

The parties have reached agreement much of the Proposed Protocol's terms and the remaining disputes are limited primarily to five areas: (1) the treatment of union-organizing communications; (2) the elimination of an unnecessary supplemental meet-and-confer phase; (3) whether SkyWest's in-house counsel may review AEO-designated materials; (4) the definition of "SkyWest-Derived Data" and the breadth of the search; and (5) cost allocation. As set forth below, each of these disputes should be resolved by entering SkyWest's Proposed Protocol.

### A. Union-Organizing communications that contain or were derived from SkyWest Data should be produced.

The Proposed Protocol only seeks documents and data that contain, reflect, incorporate or were derived from SkyWest Derived-Data or SWOL directory fields. The inclusion of such data is appropriate because SkyWest's claims center on Defendants' unauthorized extraction and use of its confidential data. If Defendants used SkyWest's data in connection with union-organizing

communications—for example, by incorporating scraped employee contact information into text-message campaigns or sharing it with union representatives—those communications are directly relevant to the scope and extent of Defendants' misuse and should be produced.

Defendants want to withhold evidence of theft and misuse of SkyWest data because, after it was improperly taken, they used it for union organizing. Of course, such a result is absurd. Defendants cannot hack into SkyWest systems and misappropriate data, and then hide their conduct behind organizing. More specifically, Defendants seek to limit the production of union-organizing communications to only those communications that specifically "attach, embed, or quote specific SWOL employee records." This limitation would exclude all of Defendants' communications that reflect, incorporate, or were derived from SkyWest's data merely because they do not literally attach or embed the raw data files. For example, under Defendants' proposed term, an email discussing how the scraped data was used, who it was shared with, or how it was modified—without attaching the underlying spreadsheet—would be categorically excluded from production. There is simply no justification for Defendants' proposed limitation.

Defendants ignore the fact that there is no recognized "union-organizing privilege" that would justify withholding communications containing, derived from, or about another party's misappropriated and confidential data. Additionally, while the Railway Labor Act protects the right to organize, it does not create a right to hack or misappropriate data, or an evidentiary privilege shielding relevant evidence of misconduct from discovery. *See NetJets Aviation, Inc. v. NetJets Ass'n of Shared Aircraft Pilots*, 2017 U.S. Dist. LEXIS 129354, at *14 (S.D. Ohio Aug. 15, 2017) (holding the union "points to no case law to support its assertion that discovery should be precluded under the RLA because of a chilling effect on union members" and finding "this

6

argument to be without merit"); *Hernandez v. Off. of the Comm'r of Baseball*, 331 F.R.D. 474, 478 (S.D.N.Y. 2019) (same). If Defendants used SkyWest's data in connection with union-organizing communications—for example, by incorporating scraped employee contact information into text-message campaigns or sharing it with union representatives—those communications are directly relevant to the scope and extent of Defendants' misuse and should be produced. And, as set forth in SkyWest's Ex Parte Application for a Temporary Restraining Order and Preliminary Injunction (the "TRO Motion"), SkyWest has a right to know to whom its data was transferred and how it has been used. Dkt. No. 5, at 2; Dkt. No. 8, at 5–6.

Importantly, Union-organizing communications that do not contain, reflect, incorporate, or derive from SkyWest-Derived Data are not responsive under the Protocol and will not be produced. Defendants are also able to designate other materials related to union-organizing as AEO or Confidential under the SPO prior to production. Ex. A, Proposed Protocol, § 6(b). These protections sufficiently address any concerns about chilling protected activity, particularly where Defendants themselves no longer work for SkyWest and have no risk of retaliation.

**B.      SkyWest's proposed timing and protections are sufficient, and further delay should be avoided.**

Defendants seek to add additional and unnecessary phases to the Protocol that will unreasonably slow down the process and keep delaying SkyWest from discovering what data Defendants took, what they have done with it and who has it at this point. The Proposed Protocol provides adequate time for the Neutral Expert to run search terms and provide hit reports to the parties, for Defendants' counsel to complete a privileged review, and for the Neutral Expert to then produce unprivileged documents. Dragging this out flies in the face of SkyWest's TRO Motion and repeated requests for expedited discovery.

7

Defendants also want to add a phase for further meeting and conferring about the search terms once they get the hit reports. The parties just wasted five months meeting and conferring, and could not even come up with a stipulated protocol. Such another phase of discussions will only result in more delay and motion practice. The parties have agreed on search terms and the Neutral Expert should run them and produce the documents accordingly, with the safeguards set forth in the Protocol. Further phasing is unnecessary and will only result in more delay. The Proposed Protocol has adequate timing and protection, and should now be entered.

**C.      SkyWest's In-House Counsel should be permitted to review AEO materials.**

SkyWest's Proposed Protocol states that the Court's Standard Protective Order ("SPO") controls who is able to review documents designated as Attorneys' Eyes Only ("AEO"). However, the issue is that SkyWest needs its Vice President, Legal (Todd Emerson), to be within the scope of those permitted to review AEO documents. Without him in the loop, the documents and data obtained would be difficult to use, make sense of or utilize in protecting SkyWest's misappropriated data and preparing SkyWest's case. Mr. Emerson is a Utah-licensed attorney managing this litigation on behalf of SkyWest. He is subject to the same professional and ethical obligations as outside counsel and is bound by the terms of the SPO. He is expressly prohibited from sharing any of the AEO documents or information with anyone within SkyWest. Notably, neither of Defendants works for SkyWest any longer, so there is no risk to them in any event that needs protection. Additionally, the SPO permits counsel for a party "who are acting in a legal capacity and are actively engaged in [the] matter," such as Mr. Emerson, to review documents designated as Attorneys' Eyes Only. SPO, §§ (B)(1)(a), (B)(2). Accordingly, Mr. Emerson should be permitted to review AEO materials produced in accordance with the Proposed Protocol.

Defendants' position is particularly untenable given the nature of this case. The information at issue—forensic artifacts from Defendants' own devices showing what happened to SkyWest's confidential data—*is SkyWest's information*. Mr. Emerson's review of this information is necessary for SkyWest to make informed litigation decisions and to assess what protective measures may need to be taken regarding its employees' data. Without input from Mr. Emerson, SkyWest's outside counsel and expert would be left reviewing forensic data without needed context and direction. Accordingly, Mr. Emerson should be permitted to review Attorneys' Eyes Only-designated materials produced from the forensic images as set forth in the Proposed Protocol.

### D.    The definition of "SkyWest-Derived Data" and the scope of the search should not be inappropriately narrowed.

The Proposed Protocol defines "SkyWest-Derived Data" to include any dataset or file derived from "SWOL or other SkyWest systems" that includes employee identifiers, names, phone numbers, home addresses, or related directory fields, "including without limitation any associated derivatives, exports, or backups." Proposed Protocol § 2(d). Defendants seek to narrow this definition in two ways: first, by limiting it to data derived only from "the SWOL employee directory" (excluding other SkyWest systems); and second, by removing the "without limitation" qualifiers that ensure the definition captures derivative data in all its forms.

Defendants' narrowing is unjustified and would overly limit the production set. Importantly, the full scope of Defendants' conduct is not yet known—which is precisely why the forensic search is necessary. The Preservation Order itself was not limited to SWOL employee directory data. Rather, it was designed to "capture and preserve" information about "which SWOL directory files and fields were accessed and when," "whether downloads were modified to generate derivative data," "where data resides," and "the scope and distribution of SkyWest-derived

datasets." Preservation Order ¶ 2(e). Narrowing the definition at this stage would risk excluding recoverable deleted or partially deleted files relating to SkyWest-Derived Data, as well as derivative datasets that may have been created from SkyWest's data but stored in modified forms.

Similarly, Defendants seek to limit the search scope to only what is physically present on the Forensic Images, excluding any password-protected or encrypted data contained on the images. SkyWest agrees that the search under the protocol should be limited to the Forensic Images in the Neutral Expert's custody—Defendants are not required under the Proposed Protocol to provide credentials for live accounts or third-party platforms that are not captured on the images. *See* Ex. A, Proposed Protocol, § 10 ("This section does not require Defendants to provide credentials, tokens, or access to cloud storage accounts, email accounts, messaging accounts, AI tools or services, or any other third-party platforms or services not contained on the Forensic Images[.]"). However, to the extent the Forensic Image contains password-protected files, encrypted archives, or other data that cannot be accessed without credentials, Defendants should be required to provide the necessary passwords or to enable the Neutral Expert to access that data. The preserved data is fair game for review—that is the entire purpose of the Preservation Order. Defendants should not be permitted to use encryption or password protection as a barrier to searching data that has already been preserved on the very devices the Court ordered imaged. This is consistent with the Preservation Order's mandate to "capture and preserve" information about "the scope and distribution of SkyWest-derived datasets." Preservation Order ¶ 2(e).

Accordingly, the Court should adopt the definition of "SkyWest-Derived Data" provided by SkyWest's Proposed Protocol and require Defendants to provide any credentials necessary to

10

access password-protected data contained on the Forensic Images.[1]

       E.      **Costs should be shared equally.**

The Proposed Protocol provides that the Neutral Expert's reasonable fees and costs shall be split fifty percent by SkyWest and fifty percent by Defendants (or 25% each), collectively, without prejudice to reallocation at a later point. Proposed Protocol § 9. Defendants contend that SkyWest should bear 100% of the costs, relying on Paragraph 10 of the Preservation Order, which provided that "[a]ny imaging, preservation or destruction conducted pursuant to this Order shall be at SkyWest's sole expense." Preservation Order ¶ 10. However, Defendants' reliance on the Preservation Order is misplaced.

The Preservation Order's cost provision addressed the costs of *imaging and preservation— i.e.,* the initial creation of the forensic copies. Importantly, it would be SkyWest's preference that it be permitted to do its own searching on the forensic images. However, Defendants are insisting on this complicated, expensive and drawn-out protocol to protect their privacy. Accordingly, they should be required to bear some of the burden that their requests have created. Searching, staging, and producing documents from those images is a different process altogether, one that the Preservation Order expressly reserved for further court order. The costs associated with this protocol are akin to ordinary discovery costs: the neutral expert is, in effect, searching Defendants' data for responsive documents. In analogous cases, courts have required the parties to share the costs of forensic search protocols. *See, e.g.*, *IHS Global Ltd.*, 2019 U.S. Dist. LEXIS 220327, at *11–12 (approving protocol that split costs evenly between the parties). The 50/50 split is fair and

---

[1] Notably, as additional protection, the Proposed Protocol specifies that Defendants' production of any such credential shall be made directly to the Neutral Expert and the Neutral Expert "shall not disclose" the credentials to any party. *See* Ex. A, Proposed Protocol, § 10.

proportional, and the Proposed Protocol preserves any party's right to seek reallocation at a later stage of the litigation.

## IV.    CONCLUSION

For the foregoing reasons, SkyWest respectfully requests that the Court enter the Proposed Protocol attached hereto as Exhibit A and authorize Premier Legal Technicians to conduct targeted, phased forensic searches of the preserved images of Defendants' Devices in accordance with the Proposed Protocol.

Dated this 6th day of July, 2026

HOLLAND & HART LLP

*/s/ Tyson C. Horrocks*
Gregory M. Saylin
Tyson C. Horrocks
Zachary T. Burford

*Attorneys for Plaintiff and Counterclaim Defendant SkyWest Airlines, Inc.*