# EXHIBIT A

Gregory M. Saylin, #9648
Zachary T. Burford, #19771
Tyler S. Erickson, #19523
HOLLAND & HART LLP
222 South Main Street, Suite 2200
Salt Lake City, UT 84101-2194
Telephone: 801.799.5800
GMSaylin@hollandhart.com
ZTBurford@hollandhart.com
TSErickson@hollandhart.com

*Attorneys for Plaintiff SkyWest Airlines, Inc.*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH – SOUTHERN DIVISION

| | |
|---|---|
| SKYWEST AIRLINES, INC., <br><br> Plaintiff, <br><br> vs. <br><br> DANIEL MOUSSARON, and VIKAAS KRITHIVAS, <br><br> Defendants. | **PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS TO DEFENDANT DANIEL MOUSSARON** <br><br> Civil No. 4:26-cv-00015-DN-PK <br><br> Senior District Judge David Nuffer |

In accordance with Federal Rules of Civil Procedure 26, 33, and 34, Plaintiff hereby propounds this Second Set of Discovery Requests to Defendant Daniel Moussaron.

## **DEFINITIONS**

For purposes of these discovery requests, the following terms have the meanings set forth below, unless otherwise provided:

1.      "Plaintiff," and "SkyWest," shall refer to SkyWest Airlines, Inc., and any entity or person acting or purporting to act on its behalf, including, without limitation, all agents,

representatives, attorneys, subsidiaries, affiliates, or other persons.

2.      "Defendant," "You," and "Your" shall refer to Defendant Daniel Moussaron, and any entity or person acting or purporting to act on their behalf, including, without limitation, Adamo Systems, Inc. and Dorrus, Inc., and all present and former officers, directors, employees, agents, representatives, attorneys, business associates, or other persons acting at his direction or on his behalf.

3.      "Document" shall be interpreted under the broadest possible reading of Rules 33 and 34 of the Federal Rules of Civil Procedure, and shall include all written, recorded, or graphic material, however produced or reproduced. "Document(s)" include, but are not limited to, all originals, copies, facsimiles, or drafts of any and all of the following: correspondence; records; notes; diaries; summaries; abstracts; schedules; contracts or agreements; orders or acknowledgments; reports; forecasts or appraisals; advertising or advertising compilations; memoranda of telephone or in-person conversations or conferences by, or with, any person; any other memoranda; letters, emails, or other forms of electronic communications or transmissions (including texts, instant messages, instant messaging history, audio files, video files, social media posts, and messaging app communications); facsimiles; electronic transmissions of any kind; recordings, whether audio, video, stenographic, or by other means, regardless of medium, and any transcripts thereof; specifications or technical data; drawings, imprints, diagrams, illustrations, sketches, schematics, or technical drawings; photographs, pictures, or film; computer programs or data; source code; scripts; configuration files; log files; metadata; or other graphic, symbolic, recorded, or written material of any nature whatsoever.

a.      A document includes any attachments, exhibits, appendices, or any other additional matter, in whatever form, which were intended to accompany the document when the document was originally prepared.

b.      A document also includes all non-identical copies, such as those bearing marginal comments or other marks, postscripts, changes, amendments, addenda, or other notations not present on the original document as initially written, typed, or otherwise prepared.

4.      "Identify," "identity," and "identification," when used to refer to a Document, File, or Dataset, mean to state with sufficient particularity the following:

a.      the subject of the document, dataset, or file;

b.      the title of the document or the file name;

c.      the type of document (e.g., letter, memorandum, email, text message, script, log file, etc.) or the format of the document, dataset or file;

d.      the date of the document, dataset, or file, or if the specific date thereof is unknown, the month and year or other best approximation of such date;

e.      the identity of the person or persons who wrote, contributed to, prepared, and/or originated such document, dataset, or file;

f.      the identity of the person or persons to whom the document, dataset, or file was directed, or who received the document or copies of the document or any portion thereof;

g.      the present or last known location and custodian of the document, dataset, or file;

3

h.      the means by which You accessed the information contained in the document, dataset, or file; and

i.      the Bates number or other identifying number assigned to the document, dataset, or file.

5.      "Identify," "identity," and "identification," when used with respect to a person, require that you provide the following information with respect to the person: a. The person's full name and any aliases or usernames; b. The person's occupation and employer; c. The person's present or last known residential and business addresses; d. The person's present or last known email addresses and telephone numbers; e. The person's job title or function and position at the time relevant to the identification; and f. The person's relationship to Defendant or to the subject matter of this litigation.

6.      "Communication" and "communications" shall include any documents and any exchange or transfer of information between two or more persons or between one or more persons and a file, computer system, or device, whether written, oral, electronic, or in any other form, including without limitation communications via meeting, email, text message, instant message, social media platform, messaging application, correspondence, conversation, conference, telephone conversation, video conference, or any other means.

7.      "Identify," "identity," and "identification," when used with respect to a communication require you to state the parties to the communication, the date or approximate date of the communication, the substance of the communication, and the manner in which the communication occurred (e.g., in person, by telephone, email, text message, messaging app, etc.), and identify all documents containing or relating to the communication.

4

8.    "Automated Extraction Process" means any script, bot, code, program, software tool, browser extension, plugin, browser developer tool, console command, or other automated or semi-automated process used to systematically or individually retrieve, download, copy, reveal, or extract data from any computer system, including without limitation SkyWest Systems. This definition includes without limitation the use of Tampermonkey or any other browser extension or userscript to reveal, access, or extract data fields not visible to a standard user interface.

9.    "Coordination Platforms" means any communication method, application, system, service, or technology used to coordinate, plan, discuss, or facilitate data extraction activities between Defendants or with any other person, including without limitation messaging apps, voice calls, video calls, email, text messages, real-time communication tools, collaboration platforms, file sharing services, or any other means of communication, whether digital or in-person. This definition includes without limitation telephone and VoIP calls, in-person meetings, Facebook, Facebook Messenger, Microsoft Teams, iMessage, Slack, Signal, Discord, WhatsApp, Google Chat, Zoom, Session, and/or Telegram.

10.    "Messaging Infrastructure" means any platform, service, vendor, system, account, or technology used to send text messages, SMS messages, or other communications to SkyWest pilots or employees, including without limitation A2P providers, messaging APIs, bulk messaging services, short codes, toll-free numbers, long codes, messaging platforms (such as Twilio, Sinch, MessageBird, or similar services), and all related accounts, credentials, and configurations.

11.     "SkyWest Systems" means any computer system, network, database, application, website, or electronic resource owned, operated, controlled, or used by SkyWest, including without limitation SkyWest Online (SWOL), employee directories, pilot databases, communication systems, and any other electronic systems or platforms.

12.     "SkyWest Confidential Information" means any information defined as Confidential and Privileged Information under Defendants' Confidentiality and Non-Disclosure Agreements with SkyWest, including without limitation information relating to SkyWest pilot employee data, such as names, employee identification numbers, seniority numbers, contact information (including phone numbers, email addresses, and physical addresses), employment status, aircraft qualifications, base assignments, and any other personal or professional information. This definition includes any compilation, list, dataset, or collection of information relating to SkyWest pilots or SkyWest Confidential Information obtained from SkyWest Systems, regardless of whether any individual data point was independently available from a public source. This definition includes without limitation SWOL Data. "SWOL Data" means any data, information, or records obtained, extracted, downloaded, or copied from SWOL, including without limitation pilot names, employee identification numbers, seniority numbers, personal cell phone numbers, home addresses, email addresses, aircraft qualifications, and base assignments.

13.     "Relevant Period" means January 1, 2025 through the present date.

14.     "Device" means any electronic device capable of storing, processing, transmitting, or accessing data, including without limitation computers (desktop, laptop, tablet),

mobile phones, smartphones, servers, storage devices, USB drives, external hard drives, cloud storage accounts, and any other electronic storage media.

15.    "Account" means any user account, login credentials, profile, or access mechanism for any system, platform, service, or application, including without limitation email accounts, cloud storage accounts, messaging service accounts, and any credentials used to access SkyWest systems or third-party services.

16.    "Remote Server" means the server identified by Defendant or referenced in this litigation as the 'SkyWest MySQL Server,' or any server to which SWOL Data was transmitted, including its associated databases, tables (including staged_pilot_data and pilot_members), and any successor, mirror, backup, or derivative systems or databases.

17.    "Organizing Committee" means the committee, group, or informal association of individuals—including without limitation Defendants—involved in organizing SkyWest pilots for union representation during the Relevant Period, as referenced in Defendant's Counterclaim.

18.    "Third Party" means any person, entity, company, organization, or service provider other than SkyWest and Defendants, including without limitation messaging service providers, airlines, recruitment companies, and any other individuals or entities.

19.    "Relates to," "related to," "relating to," and "in relation to" are used in their broadest sense and mean to discuss, involve, reflect, deal with, consist of, refer to, represent, constitute, emanate from, be directed at, or in any way pertaining, in whole or in part, to the subject.

20.     "And" and "or," as used herein, shall be construed both conjunctively and disjunctively, and each shall include the other as necessary to call for the broadest possible response.

21.     "Person" includes any natural person, firm, association, organization, partnership, business trust, corporation, limited liability company, or public entity.

22.     "File" means any electronic file, document, database, spreadsheet, text file, CSV file, JSON file, XML file, or other electronic data structure containing information, regardless of format or extension.

23.     "Dataset" means any collection, compilation, database, list, spreadsheet, or organized grouping of data or information, whether stored electronically or in hard copy, including without limitation extracts, exports, or subsets of larger databases.

24.     "Location" means any physical place, electronic storage medium, system, platform, service, or repository where information is or has been stored, maintained, processed, transmitted, or accessed, including without limitation specific file paths, URLs, cloud storage accounts, databases, servers, devices, applications, and messaging platforms.

25.     "Custodian" means any person, entity, or organization that has possession, custody, control, or access to information, documents, or data, including without limitation current and former employees, contractors, service providers, and any other individuals or entities with administrative or user access.

26.     "Communicated" means any sharing, transfer, provision, or granting of access to information through any means, including without limitation: (a) verbal or written communications; (b) electronic transmission via email, text message, messaging applications,

file sharing, or other digital platforms; (c) physical delivery of documents or storage media; (d) granting access to accounts, systems, or databases containing the information; (e) posting or uploading to websites, platforms, or services accessible to others; (f) incorporation into marketing materials, contact lists, or recruitment campaigns; and (g) any other method by which information is shared with or becomes available to another person or entity.

27.    The singular of any term shall include the plural of that term, and the plural shall include the singular.

## INSTRUCTIONS

Interrogatories: Pursuant to Rule 33 of the Federal Rules of Civil Procedure, "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath."

Documents Requested: The requests set out herein call for all documents in Defendant's actual or constructive possession, control or care, including without limitation those documents in the actual or constructive possession, custody, control or care of any attorney, agent or other representative of Defendant. If Defendant subsequently becomes aware of any document called for by the requests herein, Defendant is required under Rule 26(e) to supplement its response by providing a copy of that document to Plaintiff or, if the document is believed to be in Plaintiff's possession, identifying it with sufficient particularity.

This is a continuing request to the fullest extent provided for by Rule 26(e) of the Federal Rules of Civil Procedure. In the event that you acquire information responsive to any request or any portion thereof between the date of your initial response and the trial of this action, you are requested to promptly supplement your response providing all such information.

9

You are required to identify and produce all requested information that is in your possession, custody, or control, including without limitation information in the possession of your present and former attorneys, investigators, employees, representatives, or other persons acting on your behalf, and not merely documents or things known of your personal knowledge.

If you decline to provide responses on the grounds of attorney-client privilege, work product doctrine, or any other privilege, then you should:  (a) state the nature of the privilege relied upon and the facts giving rise to the alleged privilege; (b) describe the extent to which the privilege is being asserted; (c) identify the allegedly protected or privileged document by its type, date, author, recipient(s), and general subject matter; and (d) if the production of a document is withheld on the grounds of the work product doctrine, identify the proceeding for which the document was, or has been, prepared.

## **INTERROGATORIES**

**INTERROGATORY NO. 6:** Identify the Remote Server, including its URL, IP address, domain name, hosting provider or service, date of creation or first activation, and current status (i.e., whether it is active, decommissioned, or otherwise), and identify every person with access to the Remote Server during the Relevant Period, including the nature and scope of each person's access.

**INTERROGATORY NO. 7:** Identify every person or entity who received, accessed, viewed, or possessed any SkyWest Confidential Information at any time during the Relevant Period, including without limitation the date, manner, and form of transmission for each, and the specific categories of SkyWest Confidential Information involved.

**INTERROGATORY NO. 8:** Describe the complete technical method You used to obtain personal cell phone numbers and home addresses of SkyWest pilots from SWOL, identifying the specific Automated Extraction Process used, each step in the process from initial access to final storage of the data, the date or dates each step occurred, and the Device used at each step.

**INTERROGATORY NO. 9:** Identify every Coordination Platform You used during the Relevant Period to communicate with Krithivas or any other person regarding (a) SWOL, (b) SkyWest Confidential Information, (c) contacting SkyWest pilots using non-public contact information, or (d) union organizing at SkyWest, including for each platform the usernames or account identifiers used and the approximate dates of such communications.

**INTERROGATORY NO. 10:** Identify every messaging campaign, text-message blast, or mass communication sent to SkyWest pilots or employees during the Relevant Period using SkyWest Confidential Information, including the Messaging Infrastructure used, the sending phone number or other identifier, the number of recipients, the content or substance of each message, and the date or dates sent.

**INTERROGATORY NO. 11:** Identify every instance in which You have destroyed, deleted, wiped, uninstalled, overwritten, or disposed of any Device, Account, Communication, File, Automated Extraction Process, Dataset, or data relating to SWOL, SkyWest Confidential Information, SkyWest Systems, or this litigation since August 1, 2025, including for each: (a) the nature of the item destroyed or deleted; (b) the date of destruction or deletion; (c) the approximate date(s) the item was created or, for Communications, the approximate date(s) of the Communication(s); (d) the other party or parties to the Communication (if applicable); (e) the

11

general subject matter; (f) the method of destruction or deletion; and (g) the reason for the destruction or deletion.

**INTERROGATORY NO. 12:** Identify every person, other than Krithivas, who had advance knowledge of, participated in planning, or assisted with the plan to access SWOL to obtain SkyWest pilot contact information, and describe each such person's role and the communications You had with them regarding the plan.

**INTERROGATORY NO. 13:** Describe any union or labor organizing effort directed at SkyWest pilots in which You participated during the Relevant Period, identifying the union or labor organization involved, every person participating in the effort, and state whether You received or were promised any compensation, reimbursement, or other benefit in connection with (a) accessing SWOL; (b) obtaining or using SkyWest Confidential Information; or (c) participating in the organizing effort.

**INTERROGATORY NO. 14:** Identify every company, venture, or entity—including Adamo Systems, Inc. and Dorrus, Inc.—in which You hold or have held an ownership or officer interest or management role since January 1, 2024, and for each, state: (a) the nature of Your role and the dates of Your involvement; (b) whether any SkyWest Confidential Information was used in connection with any such entity's operations or activities; and (c) whether any Automated Extraction Process developed, used, or employed by any such entity was used to access, download, or extract SkyWest Confidential Information.

**INTERROGATORY NO. 15:** Identify every Device You owned or used during the Relevant Period that contains or may contain SkyWest Confidential Information, Automated Extraction Processes used to retrieve, access, reveal, copy, and/or download SkyWest

Confidential Information, or Communications relating to SWOL, SkyWest Confidential Information, or union organizing at SkyWest, including the make, model, serial number, operating system, and current location of each Device.

**INTERROGATORY NO. 16**: Identify every person who made unsolicited phone calls to SkyWest pilots during the Relevant Period, including without limitation the person or persons responsible for the phone call described in Paragraph 37 of SkyWest's Complaint, and for each such person state: (a) the person's identity; (b) Your relationship with that person; (c) whether You provided any SkyWest pilot contact information to that person, and if so, the source and scope of the information provided; and (d) whether You directed, encouraged, or coordinated with that person to make such calls.

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 6:** All records relating to the Remote Server, including without limitation: (a) the file SkyProxy.sql.zip and its contents (including the SQL database dump), and any copies, derivatives, or extracts thereof, in native format; (b) all configuration files; (c) all access logs and authentication records; (d) all billing, payment, or subscription records for the server or hosting service; (e) all records showing data stored, processed, uploaded, downloaded, or transmitted through the Remote Server; and (f) all records showing the creation, modification, or deletion of database tables, including without limitation the staged_pilot_data and pilot_members tables.

**REQUEST FOR PRODUCTION NO. 7:** All Communications during the Relevant Period between You and any person (other than Your attorneys of record in this litigation) regarding (a) SWOL; (b) SkyWest Confidential Information; (c) union organizing at SkyWest;

13

(d) contacting SkyWest pilots using personal contact information obtained from SkyWest Systems; or (e) nonprivileged communications relating to this litigation, on every Coordination Platform, including without limitation Microsoft Teams, iMessage, SMS/RCS, Signal, WhatsApp, Telegram, email, and social media.

**REQUEST FOR PRODUCTION NO. 8:** A complete native export of all Microsoft Teams accounts, workspaces, channels, and direct-message conversations used by You during the Relevant Period, including all messages, files, attachments, and metadata, specifically including without limitation the complete content of any Automated Extraction Process, script, code, or instructions transmitted by You to Krithivas or any other person via Teams, and any Communications regarding SWOL, SWOL Data, or union organizing at SkyWest.

**REQUEST FOR PRODUCTION NO. 9:** All Automated Extraction Processes written, used, adapted, or obtained by You in connection with accessing SkyWest Systems or extracting SkyWest Confidential Information, including without limitation any Tampermonkey userscript, any version history, source code, configuration files, and associated documentation or instructions.

**REQUEST FOR PRODUCTION NO. 10:** All Documents and Communications relating to the union or labor organizing effort at SkyWest that involve, reference, or relate to (a) the collection, use, or distribution of SkyWest pilot contact information; (b) SWOL or SkyWest Confidential Information; (c) the Organizing Committee's data collection efforts as described in Your Counterclaim; or (d) Communications with any union representative or organizer regarding pilot contact data, including without limitation formation documents, meeting materials, membership lists, financial records, and strategic plans relating to any of the foregoing.

14

**REQUEST FOR PRODUCTION NO. 11:** All Documents and Communications relating to Adamo Systems, Inc. and Dorrus, Inc. that concern or relate to SkyWest pilots, SkyWest Confidential Information, union organizing at SkyWest, pilot recruitment or solicitation, contacting SkyWest employees, or any communication campaign directed at SkyWest employees, including without limitation business records, formation documents, financial records, client lists, and service agreements.

**REQUEST FOR PRODUCTION NO. 12:** Records from every Messaging Infrastructure (including without limitation EzTexting) used to send any Communication to SkyWest pilots using SWOL Data or SkyWest Confidential Information, including without limitation: (a) sender identifiers (phone numbers, short codes, or other identifiers); (b) recipient lists and contact uploads; (c) message content and templates; (d) delivery status and delivery receipts; (e) complete account export including account settings and API credentials or integrations; (f) campaign history; (g) CSV, Excel, or other upload files; (h) opt-out or unsubscribe records; and (i) billing records and costs.

**REQUEST FOR PRODUCTION NO. 13:** All financial records reflecting payments, transfers, reimbursements, or other compensation received, made, or offered to You in connection with (a) accessing SWOL or SkyWest Confidential Information; (b) extracting or distributing SkyWest pilot contact information; or (c) organizing SkyWest pilots for union representation, including without limitation invoices, receipts, bank statements, payment platform records (e.g., PayPal, Venmo, Zelle), and wire transfer records.

**REQUEST FOR PRODUCTION NO. 14:** All Documents and Communications relating to the deletion, destruction, alteration, concealment, overwriting, uninstallation,

decommissioning, or disposal of any Document, Communication, Device, Account, File, Dataset, Automated Extraction Process, or other data or information related to SkyWest Systems, SkyWest Confidential Information, or the subject matter of this litigation since August 1, 2025.

**REQUEST FOR PRODUCTION NO. 15:** All social media posts, online forum posts, blog entries, comments, or other publicly or privately posted online content authored by or attributable to You that reflect, discuss, or relate to SkyWest, SkyWest pilots, SWOL, union organizing at SkyWest, or any effort to contact SkyWest pilots using non-publicly available contact information, including without limitation posts on Reddit, Facebook, or any pilot-focused forum or community.

**REQUEST FOR PRODUCTION NO. 16:** All Documents and Communications identifying or reflecting the identity of, and Your relationship with, the person or persons who made unsolicited calls to SkyWest pilots in January 2026 as described in Paragraph 37 of the Complaint.

**REQUEST FOR PRODUCTION NO. 17:** All Documents and Communications reflecting Your efforts, or the efforts of anyone acting at Your direction, to preserve, return, delete, sequester, segregate, or otherwise address SWOL Data following receipt of SkyWest's demand letter or the filing of this lawsuit.

**REQUEST FOR PRODUCTION NO. 18:** The complete contents of the "pilot_members" table and the "staged_pilot_data" table from the Remote Server, each in native or delimited-text format (e.g., CSV or SQL dump), including all fields, columns, rows, and associated metadata such as creation timestamps, modification timestamps, and any row-level audit data.

16

**REQUEST FOR PRODUCTION NO. 19:** All Documents and Communications relating to the creation, population, and maintenance of the pilot contact database described in Your Counterclaim, including without limitation: (a) all versions of the database or any predecessor datasets; (b) records showing the source of each pilot's contact information (e.g., Google Form submissions, website registrations, pilot-to-pilot contributions, public records, SWOL, or other source); (c) any documentation, logs, or metadata reflecting when and how each pilot's contact information was added to the database; and (d) any records reconciling or comparing data obtained from different sources.

**REQUEST FOR PRODUCTION NO. 20**: All Documents and Communications relating to the Google Form described in Your Counterclaim as "phase 1" of the Organizing Committee's data collection, including without limitation: (a) the Google Form itself, including all versions and settings; (b) all responses received through the form, including timestamps; (c) any records showing which pilots submitted contact information through the form and when; and (d) any Communications regarding the creation, distribution, or promotion of the form.

**REQUEST FOR PRODUCTION NO. 21**: All Documents and Communications relating to the pilot contact lists provided by ALPA from prior organizing drives at SkyWest (including the 2008 and 2019–2023 drives) described in Your Counterclaim as part of "phase 2," including without limitation: (a) the lists themselves in native format; (b) any transmittal records, cover emails, or communications through which the lists were provided; (c) any records showing how data from these lists was merged, deduplicated, or integrated into the 2025 database; and (d) any records reflecting the number of pilots and data fields included in each list.

17

**REQUEST FOR PRODUCTION NO. 22**: All Documents and Communications relating to the Data Management System ("DMS") described in Your Counterclaim as "phase 3," including without limitation: (a) all source code, configuration files, deployment records, and technical documentation for the DMS; (b) all records of pilot contact information submissions through the DMS, including submission logs and timestamps; (c) user access logs and administrative records; (d) any exports, reports, or queries generated from the DMS; and (e) any records showing who developed, hosted, or maintained the DMS.

**REQUEST FOR PRODUCTION NO. 23**: All Documents and Communications relating to the "phase 4" data collection described in Your Counterclaim, including without limitation: (a) all records of automated tools, scripts, or manual lookups used to obtain pilot contact information from public sources; (b) any scripts, queries, API calls, or search parameters used; (c) any records showing which pilots' contact information was obtained from these public sources versus other sources; and (d) the dates on which such public-source lookups were conducted.

**REQUEST FOR PRODUCTION NO. 24**: All Documents sufficient to show, for each SkyWest pilot whose contact information was included in the Organizing Committee's database or used to send the December 9, 2025 mass text message, the original source from which that pilot's contact information was obtained (e.g., Google Form, DMS submission, pilot-to-pilot contribution, website registration, SWOL, or other source), including any records that tag, code, categorize, or otherwise attribute a source to each pilot's contact information.

**REQUEST FOR PRODUCTION NO. 25**: All Communications between You and Ron Rindfleisch or any other ALPA representative or employee during the Relevant Period regarding

pilot contact information, SkyWest Confidential Information, the Organizing Committee's data collection efforts, SWOL, or this litigation.

**REQUEST FOR PRODUCTION NO. 26**: All Documents and Communications relating to the password-protected spreadsheet, CSV file, or other data file that You sent to Ron Rindfleisch or any other ALPA representative, including without limitation: (a) the spreadsheet or file itself in native format; (b) any transmittal emails, messages, or file-sharing links; (c) any password, encryption key, or access credentials provided; and (d) any Communications regarding the contents, intended use, or further distribution of the spreadsheet or file.

**REQUEST FOR PRODUCTION NO. 27**: All Documents and Communications relating to the skywestalpa.org and skw.alpa.org websites, including without limitation: (a) domain registration and hosting records; (b) website source code and configuration files; (c) pilot self-registration data submitted through the websites, including timestamps; (d) any contact lists or databases generated from website submissions; (e) administrative access logs and user-management records; and (f) any analytics or traffic data.

**REQUEST FOR PRODUCTION NO. 28:** All Documents and Communications reviewed, consulted, referenced, or relied upon in preparing Your responses to any Interrogatory or Request for Admission served on You by SkyWest in this litigation, including without limitation any nonprivileged communications with any person relating to Your discovery responses.

**REQUEST FOR PRODUCTION NO. 29:** All Documents and Communications between You and Krithivas during the period January 1, 2025 through the present, on any

19

Coordination Platform, including without limitation any Communications regarding this litigation, SWOL Data, SkyWest, ALPA, legal representation, or preservation of evidence.

Dated this 21st of April, 2026.

HOLLAND & HART LLP

/s/ Zachary T. Burford
Gregory M. Saylin
Zachary T. Burford
Tyler S. Erickson
*Attorneys for Plaintiff SkyWest Airlines, Inc.*

20

# CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of April, 2026, I caused a true and correct copy of the foregoing **PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS TO DEFENDANT DANIEL MOUSSARON** to be served via email on counsel of record as follows:

Jonathan K. Thorne
Lauren I. Scholnick
SCHOLNICK THORNE HOLLAND
40 South 600 East
Salt Lake City, Utah 84102
jonathan@utahjobjustice.com
lauren@utahjobjustice.com

John E. Holland *(Admitted Pro Hac Vice)*
jack@laborwest.com

*Attorneys for Defendant Daniel Moussaron*


Timothy D. Ducar
Scott C. Uthe *(Admitted Pro Hac Vice)*
LAW OFFICES OF TIMOTHY D. DUCAR, PLC
9280 E. Raintree Drive, Suite 104
Scottsdale, AZ 85260
tducar@azlawyers.com
suthe@azlawyers.com
orders@azlawyers.com

*Attorneys for Defendant Vikaas Krithivas*


*/s/ Zachary T. Burford*


37373188_v2


21