# EXHIBIT C

Timothy D. Ducar (13423)
Scott C. Uthe (PHV)
LAW OFFICES OF TIMOTHY D. DUCAR, PLC
9280 E. Raintree Drive, Suite 104
Scottsdale, AZ  85260
Telephone: (480) 502-2119
Facsimile: (480) 452-0900
orders@azlawyers.com
*Attorneys for Defendant Vikaas Krithivas*

---

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH – SOUTHERN DIVISION

| | |
|---|---|
| SKYWEST AIRLINES, INC., <br><br>     Plaintiff and Counterclaim Defendant, <br><br> and DALE HANSEN <br><br>     Counterclaim Defendant, <br><br> vs. <br><br> DANIEL MOUSSARON, <br><br>     Defendant and Counterclaim Plaintiff, <br><br> and VIKAAS KRITHIVAS, <br><br>     Defendant and Counterclaim Plaintiff. | **DEFENDANT VIKAAS KRITHIVAS' COUNTERCLAIM AGAINST SKYWEST AIRLINES, INC. AND DALE HANSEN** <br><br> Civil No. 4:26-cv-00015-DN-PK <br><br> Senior District Judge David Nuffer <br> Magistrate Judge Paul Kohler |

Defendant and Counterclaim Plaintiff Vikaas Krithivas ("Krithivas"), by and through undersigned counsel, asserts the following Counterclaim against Counterclaim Defendants SkyWest Airlines, Inc. ("SkyWest") and Dale Hansen ("Hansen") as follows:

/ / /

## <u>NATURE OF THE ACTION</u>

1.      This Counterclaim arises from SkyWest's and Hansen's publication and republication of false, unverified, and damaging allegations against Krithivas to his new employer, American Airlines, and from SkyWest's broader campaign of retaliation against pilots associated with union organizing activities.

2.      Krithivas was a former SkyWest pilot who resigned from SkyWest to pursue employment with American Airlines.

3.      Krithivas began employment with American Airlines on or about September 17, 2025.

4.      After SkyWest learned of union organizing activity among SkyWest pilots, and after SkyWest identified Krithivas and Daniel Moussaron as individuals associated with protected union formation efforts, SkyWest filed this lawsuit asserting serious allegations against them, including allegations of computer misconduct, unauthorized access, theft, misuse of confidential information, and related wrongdoing.

5.      SkyWest's Complaint was unverified and contained materially false allegations concerning Krithivas.

6.      On February 2, 2026, Hansen, SkyWest's General Counsel, sent a copy of SkyWest's unverified Complaint to an attorney at American Airlines.

7.      Hansen's February 2, 2026 email specifically identified Krithivas as a former SkyWest pilot who had "transitioned to AA" and stated that SkyWest "wanted to

make [American Airlines] aware of the initiation of litigation against Mr. Krithivas." February 2, 2026 email attached as Exhibit 1.

8.    Hansen had no legitimate litigation purpose for sending the unverified Complaint to American Airlines.

9.    The foreseeable and intended consequence of Hansen's communication was to damage Krithivas' employment relationship with American Airlines.

10.    On April 10, 2026, Krithivas was constructively discharged from American Airlines as a result of SkyWest's Complaint and Hansen's February 2, 2026 communication to American Airlines.

11.    SkyWest's and Hansen's conduct caused Krithivas substantial economic, reputational, emotional, and professional harm.

## PARTIES

12.    Krithivas is an individual and former SkyWest pilot.

13.    SkyWest is a Utah corporation with its principal place of business in St. George, Utah.

14.    Hansen is, upon information and belief, an individual residing in Utah and is or was the General Counsel of SkyWest.

15.    At all relevant times, Hansen acted individually and as an officer, agent, employee, representative, and legal representative of SkyWest.

3

16.     At all relevant times, Hansen acted within the course and scope of his employment and agency relationship with SkyWest, or alternatively acted with SkyWest's authorization, ratification, or approval.

## JURISDICTION AND VENUE

17.     This Court has supplemental subject matter jurisdiction over this Counterclaim pursuant to 28 U.S.C. § 1367 because these claims arise from the same case or controversy as SkyWest's claims.

18.     The claims against Hansen form part of the same case or controversy because they involve SkyWest's allegations in this action, Hansen's transmission of those allegations to American Airlines, and resulting harm to Krithivas.

19.     Venue is proper in this Court because SkyWest filed this action in this District, because SkyWest's principal place of business is in Utah, because Hansen acted from Utah or on behalf of a Utah corporation, and because a substantial part of the conduct giving rise to the claims occurred in or was directed from Utah.

## GENERAL FACTUAL ALLEGATIONS

A. Krithivas' SkyWest Employment and Protected Union-Related Activity

20.     Krithivas was formerly employed by SkyWest as a pilot.

21.     Krithivas resigned from SkyWest effective on or about September 12, 2025.

22.    Krithivas began employment with American Airlines on or about September 17, 2025.

23.    During 2025, certain SkyWest pilots were involved in efforts to communicate with other pilots concerning potential union representation and affiliation with the Air Line Pilots Association, International ("ALPA").

24.    Those efforts concerned pilots' rights to organize, communicate with one another, and evaluate representation regarding terms and conditions of employment.

25.    SkyWest was aware of pilot organizing activities by at least December 2025.

26.    SkyWest was aware that the pilot organizing effort involved communications to SkyWest pilots concerning ALPA representation.

27.    On or about December 9, 2025, a communication was sent to SkyWest pilots concerning interest in ALPA representation.

28.    SkyWest responded to those communications and began investigating the union-related communications and the pilots involved.

29.    SkyWest's investigation focused on Moussaron and Krithivas.

30.    SkyWest thereafter used the alleged access and use of pilot contact information as a basis to retaliate against pilots associated with union organizing activity.

31.    SkyWest's actions were intended to chill, deter, punish, and interfere with pilot union organizing efforts.

5

B.  SkyWest's Allegations Against Krithivas

32.    On Friday, January 30, 2026, SkyWest filed its Complaint in this action.

33.    SkyWest's Complaint asserted allegations against Krithivas and Moussaron concerning alleged access to SkyWest Online ("SWOL"), alleged access to pilot contact information, alleged downloading or scraping of data, alleged use of computer programs or scripts, alleged dissemination of information, alleged computer abuse, alleged breach of contract, alleged breach of fiduciary duty, alleged conspiracy, and related conduct.

34.    The Complaint asserted claims against Krithivas for, among other things, breach of contract, breach of the implied covenant of good faith and fair dealing, alleged violations of the Computer Fraud and Abuse Act, alleged violations of the Utah Computer Abuse and Data Recovery Act, breach of fiduciary duty, conspiracy, declaratory relief, and injunctive relief.

35.    The Complaint accused Krithivas of serious misconduct affecting his honesty, integrity, trustworthiness, and fitness to work as a pilot.

36.    The Complaint accused Krithivas of conduct that could be understood by employers and others in the aviation industry as criminal or quasi-criminal misconduct.

37.    The Complaint accused Krithivas of accessing information without authorization or in excess of authorization.

38.    The Complaint accused Krithivas of participating in coordinated misconduct with Moussaron.

39.     The Complaint accused Krithivas of using or assisting with web developer tools, computer programs, automated tools, scripts, bots, or scrapers to obtain information.

40.     The Complaint accused Krithivas of misuse, dissemination, or improper handling of confidential information.

41.     The Complaint was unverified.

42.     SkyWest did not have a good-faith basis for materially false allegations made against Krithivas.

43.     SkyWest knew or should have known that its allegations against Krithivas were materially false, misleading, overstated, or unsupported.

44.     SkyWest knew that Krithivas had access credentials issued by SkyWest.

45.     SkyWest knew that SWOL provided data in response to requests made by users with SkyWest-issued credentials.

46.     SkyWest knew that issues concerning the availability of phone numbers and addresses resulted from SkyWest's own system design, configuration, server responses, authorization settings, or access controls.

47.     SkyWest nevertheless characterized Krithivas' conduct as unauthorized, unlawful, unethical, improper, and malicious.

48.     SkyWest used these allegations to retaliate against pilots connected to union organizing efforts.

C.  SkyWest Published Additional Defamatory Statements to Its Pilot Workforce

49.    On or about January 26, 2026, four days before filing the Complaint in this action, SkyWest distributed a written communication to its pilot workforce concerning Krithivas and Moussaron.  SkyWest companywide communication attached as Exhibit 2.

50.    The communication was authored, approved, published, distributed, authorized, ratified, or adopted by SkyWest and its senior leadership.

51.    The communication concerned two "now-former pilots" referring to Krithivas and Moussaron.

52.    The communication stated that the two former pilots had "trampled" SkyWest's values and had violated company policies and employee trust.

53.    The communication further stated that the two former pilots had gone "as far as unethically and unlawfully stealing your information . . ."

54.    The communication further stated that the two former pilots had gained "unauthorized access to and downloaded pilot contact information . . ."

55.    The communication further stated that the information accessed was "not accessible to line pilots or any employee through normal processes . . ."

56.    The communication further stated that the information required "extensive effort and manipulation to retrieve . . ."

57.    The communication further stated that SkyWest was "shocked and disgusted by this unethical behavior and violation of trust . . ."

8

58.    The communication concluded by stating that SkyWest would "not tolerate theft of any kind . . ."

59.    The statements described above were published to third parties, including SkyWest pilots and employees.

60.    The statements were understood by at least some recipients as referring to Krithivas and Moussaron.

61.    The statements accused Krithivas of theft, unlawful conduct, unauthorized computer access, unethical conduct, dishonesty, misuse of information, and serious professional misconduct.

62.    The statements were false.

63.    SkyWest knew or should have known the statements were false, materially misleading, unsupported, or substantially exaggerated.

64.    SkyWest intended that recipients understand the statements as factual assertions concerning serious misconduct by Krithivas.

65.    The publication of these statements damaged Krithivas' reputation, professional standing, and employment prospects.

66.    The publication of these statements formed part of SkyWest's broader effort to retaliate against and deter pilots associated with union organizing activities.

D.  SkyWest and Hansen Transmitted the Complaint to American Airlines

67.    Hansen is SkyWest's General Counsel.

68.     By virtue of the employment relationship between SkyWest and Hansen, SkyWest is vicariously liable for the tortious conduct committed by Hansen under the doctrine of *respondeat superior*.

69.     Hansen was aware that Krithivas had transitioned from SkyWest to American Airlines.

70.     On Monday, February 2, 2026, within three calendar days after SkyWest filed its Complaint, Hansen sent an email to an attorney at American Airlines.

71.     Hansen's email included a copy of SkyWest's filed Complaint against Krithivas as an attachment.

72.     Hansen's email stated, in substance, that the attached Complaint had been filed against a former SkyWest pilot, Vikaas Krithivas, "who has since transitioned to AA."

73.     Hansen's email further stated that SkyWest "wanted to make [American Airlines] aware of the initiation of litigation against Mr. Krithivas."

74.     Hansen invited American Airlines to contact him with additional questions.

75.     Hansen's email was not a required service of process.

76.     Hansen's email was not sent to a party to the litigation.

77.     American Airlines was not a party to this action.

78.     Hansen's communication to American Airlines was not necessary to prosecute SkyWest's claims.

79.     Hansen's communication was not made to obtain judicial relief.

80.     Hansen's communication was not made to assist the Court.

81.     Hansen's communication was not made to preserve evidence.

82.     Hansen's communication was not made pursuant to any court order.

83.     Hansen's communication was a separate extra-judicial publication and republication of SkyWest's unverified allegations to Krithivas' new employer.

84.     Hansen's communication was intended to alert American Airlines to the allegations and litigation against Krithivas.

85.     Hansen and SkyWest knew or should have known that transmitting the Complaint to American Airlines would foreseeably damage Krithivas' employment relationship.

86.     Hansen and SkyWest knew or should have known that American Airlines would treat allegations of computer misconduct, dishonesty, misuse of confidential information, theft, unlawful conduct, or similar misconduct as serious matters bearing on Krithivas' continued employment.

87.     Hansen and SkyWest knew or should have known that sending the Complaint to American Airlines would likely cause American Airlines to investigate, discipline, suspend, terminate, or force the resignation of Krithivas.

88.     Hansen's conduct was intentional.

89.     SkyWest authorized, directed, ratified, or approved Hansen's conduct.

11

E.  Krithivas' Constructive Discharge and Damages

90.    As a direct and proximate result of the Complaint and Hansen's February 2, 2026 communication to American Airlines, American Airlines took adverse action against Krithivas.

91.    On April 10, 2026, Krithivas was constructively discharged from American Airlines.

92.    Krithivas' constructive discharge was caused by SkyWest's allegations and Hansen's communication of those allegations to American Airlines.

93.    Krithivas lost employment with American Airlines.

94.    Krithivas lost wages, benefits, career opportunities, seniority, future earnings, and other economic benefits associated with employment at American Airlines.

95.    Krithivas has suffered and continues to suffer reputational harm.

96.    Krithivas has suffered and continues to suffer damage to his professional standing in the airline industry.

97.    Krithivas has suffered and continues to suffer emotional distress, embarrassment, humiliation, anxiety, and other non-economic harm.

98.    SkyWest's and Hansen's conduct was willful, malicious, and in reckless disregard of Krithivas' rights.

99.    SkyWest's and Hansen's conduct warrants an award of punitive damages.

/ / /

F.  Discovery of Hansen's February 2, 2026 Email

100.    The Scheduling Order in this action set May 15, 2026 as the deadline to amend pleadings and join parties.

101.    On June 11, 2026, after that deadline, SkyWest produced Hansen's February 2, 2026 email.

102.    The June 11, 2026 production revealed that Hansen personally transmitted the Complaint to American Airlines.

103.    The June 11, 2026 production provided material factual support for Krithivas' claims against SkyWest and Hansen.

## FIRST CAUSE OF ACTION
## TORTIOUS INTERFERENCE WITH ECONOMIC RELATIONS
(Against SkyWest and Hansen)

104.    Krithivas incorporates by reference all preceding paragraphs as though fully set forth herein.

105.    Krithivas had existing and prospective economic relations with American Airlines.

106.    Krithivas began employment with American Airlines on or about September 17, 2025.

107.    Krithivas had a valid employment relationship with American Airlines.

13

108. Krithivas also had prospective future economic relations with American Airlines, including continued employment, wages, benefits, seniority, promotion opportunities, flight assignments, career advancement, and future earnings.

109. SkyWest and Hansen knew of Krithivas' relationship with American Airlines.

110. Hansen's February 2, 2026 email expressly stated that Krithivas had "transitioned to AA."

111. SkyWest and Hansen intentionally interfered with Krithivas' existing and prospective economic relations with American Airlines.

112. SkyWest and Hansen interfered by transmitting the unverified Complaint and its allegations to American Airlines.

113. SkyWest and Hansen interfered by communicating accusations of alleged misconduct to Krithivas' new employer.

114. SkyWest and Hansen interfered by engaging in conduct intended or reasonably expected to cause American Airlines to take adverse action against Krithivas.

115. SkyWest's and Hansen's interference was accomplished by improper means.

116. The improper means included, without limitation, publication and republication of materially false allegations, misleading statements, unverified

14

accusations, defamatory statements, abuse of judicial process, and retaliatory conduct arising from protected union formation activity.

117. SkyWest's and Hansen's interference was also undertaken for an improper purpose.

118. SkyWest and Hansen intended to harm Krithivas' employment relationship with American Airlines, or acted with knowledge that such harm was substantially certain to occur.

119. SkyWest's and Hansen's actions were part of a broader effort to punish, chill, and deter pilots associated with union organizing activities.

120. SkyWest's and Hansen's interference caused American Airlines to constructively discharge Krithivas on or about April 10, 2026.

121. As a direct and proximate result of SkyWest's and Hansen's interference, Krithivas suffered economic damages, including lost wages, lost benefits, lost seniority, lost career opportunities, loss of future earning capacity, and other consequential damages.

122. Krithivas also suffered reputational and emotional damages.

123. SkyWest's and Hansen's conduct was willful, malicious, intentional, and in reckless disregard of Krithivas' rights.

124. Krithivas is entitled to compensatory damages, consequential damages, general damages, punitive damages, interest, costs, and all other relief permitted by law.

125.    Hansen and SkyWest are jointly and severally liable to Krithivas for the full amount of damages sustained as a result of the aforementioned tortious conduct.

## SECOND CAUSE OF ACTION
## DEFAMATION
(Against SkyWest and Hansen)

126.    Krithivas incorporates by reference all preceding paragraphs as though fully set forth herein.

127.    SkyWest made false statements of fact concerning Krithivas in its Complaint and related communications.

128.    Hansen republished those false statements to American Airlines on February 2, 2026.

129.    Hansen's communication transmitted the Complaint and its allegations to an attorney at American Airlines.

130.    The statements published and republished by SkyWest and Hansen included, without limitation, statements and implications that Krithivas:

    a.  engaged in unauthorized access to computer systems;
    b.  unlawfully obtained information;
    c.  stole employee information;
    d.  downloaded information he was not permitted to access;
    e.  engaged in unethical conduct;
    f.  manipulated systems to obtain information;
    g.  misused confidential information;
    h.  engaged in unlawful conduct;
    i.  engaged in conduct warranting legal action; and
    j.  engaged in misconduct inconsistent with his professional responsibilities as an airline pilot.

131.    These statements were false.

16

132. These statements were not mere opinion.

133. These statements were capable of being proven true or false.

134. SkyWest and Hansen published and republished these statements to third parties, including American Airlines.

135. American Airlines understood the statements to refer to Krithivas.

136. American Airlines understood the statements as asserting serious professional, ethical, and potentially unlawful misconduct by Krithivas.

137. SkyWest and Hansen acted at least negligently in publishing and republishing the statements.

138. SkyWest and Hansen acted with knowledge of falsity or reckless disregard for the truth.

139. SkyWest and Hansen knew or should have known that the Complaint was unverified and that its allegations were materially false, misleading, or unsupported.

140. SkyWest and Hansen knew or should have known that transmitting the Complaint to American Airlines would damage Krithivas' reputation and employment.

141. SkyWest and Hansen did not have a privilege to publish or republish the false statements to American Airlines.

142. To the extent SkyWest or Hansen claims any privilege, such privilege was exceeded, abused, waived, or defeated by malice, improper purpose, lack of legitimate

interest, and publication to a nonparty employer for purposes unrelated to judicial proceedings.

143.    As a direct and proximate result of the defamatory publications, Krithivas suffered economic damages, reputational harm, emotional distress, humiliation, embarrassment, and loss of employment.

144.    SkyWest's and Hansen's conduct was willful, malicious, and in reckless disregard of Krithivas' rights.

145.    Krithivas is entitled to compensatory damages, general damages, special damages, punitive damages, interest, costs, and all other relief permitted by law.

146.    Hansen and SkyWest are jointly and severally liable to Krithivas for the full amount of damages sustained as a result of the aforementioned tortious conduct.

## THIRD CAUSE OF ACTION
### DEFAMATION PER SE
(Against SkyWest and Hansen)

147.    Krithivas incorporates by reference all preceding paragraphs as though fully set forth herein.

148.    SkyWest and Hansen published and republished false statements concerning Krithivas.

149.    The statements accused Krithivas of conduct that constitutes or implies criminal, unlawful, dishonest, unethical, or professionally disqualifying behavior.

18

150. The statements accused or implied that Krithivas committed theft, unlawful computer access, misappropriation of information, misuse of confidential information, dishonest conduct, unethical conduct, unauthorized access to protected systems, and other conduct constituting criminal, unlawful, or professionally disqualifying behavior.

151. The statements were of the type that naturally tend to injure a person in his occupation, profession, trade, or employment.

152. The statements were especially damaging because Krithivas works in the aviation industry, where trust, integrity, compliance, and professional reputation are essential to employment.

153. SkyWest specifically accused Krithivas of "unethically and unlawfully stealing" employee information and further represented that he had obtained information through unauthorized access, manipulation, and theft, all of which constitute accusations of criminal, dishonest, and professionally disqualifying conduct.

154. The statements were published and republished to American Airlines, Krithivas' then-current employer.

155. The statements were false.

156. SkyWest and Hansen acted negligently, recklessly, knowingly, intentionally, and with malice.

157. Because the statements accused Krithivas of criminal, unlawful, dishonest, or professionally injurious conduct, they constitute defamation per se.

158. Damages are presumed.

159. In addition to presumed damages, Krithivas suffered actual damages, including loss of employment, lost wages, lost benefits, loss of seniority, loss of future earning capacity, reputational harm, emotional distress, humiliation, embarrassment, and other damages.

160. SkyWest's and Hansen's conduct was willful, malicious, and in reckless disregard of Krithivas' rights.

161. Krithivas is entitled to presumed damages, compensatory damages, special damages, general damages, punitive damages, interest, costs, and all other relief permitted by law.

162. Hansen and SkyWest are jointly and severally liable to Krithivas for the full amount of damages sustained as a result of the aforementioned tortious conduct.

## FOURTH CAUSE OF ACTION
### FALSE LIGHT
(Against SkyWest and Hansen)

163. Krithivas incorporates by reference all preceding paragraphs as though fully set forth herein.

164. SkyWest and Hansen publicly placed Krithivas in a false light.

165. SkyWest and Hansen publicly portrayed Krithivas as a thief, dishonest individual, unethical actor, unlawful computer intruder, manipulator of computer

systems, violator of employee trust, and person unfit for professional employment in the airline industry.

166. Hansen's February 2, 2026 transmission of the Complaint to American Airlines placed Krithivas before American Airlines in a false and damaging light.

167. The false light would be highly offensive to a reasonable person.

168. The false light was especially offensive because it was communicated to Krithivas' new employer and concerned his honesty, integrity, fitness, and professionalism as a pilot.

169. SkyWest and Hansen knew or acted in reckless disregard as to the falsity of the publicized matter and the false light in which Krithivas would be placed.

170. SkyWest and Hansen knew or should have known that the allegations were materially false, misleading, or unsupported.

171. SkyWest and Hansen knew or should have known that publication to American Airlines would foreseeably cause serious employment and reputational consequences.

172. SkyWest and Hansen acted with malice, ill will, improper motive, and reckless disregard for Krithivas' rights.

173. As a direct and proximate result, Krithivas suffered damages, including reputational injury, loss of employment, lost wages and benefits, loss of future earning capacity, emotional distress, humiliation, embarrassment, and other damages.

174.    Krithivas is entitled to compensatory damages, general damages, punitive damages, interest, costs, and all other relief permitted by law.

175.    Hansen and SkyWest are jointly and severally liable to Krithivas for the full amount of damages sustained as a result of the aforementioned tortious conduct.

### FIFTH CAUSE OF ACTION
### ABUSE OF PROCESS
(Against SkyWest and Hansen)

176.    Krithivas incorporates by reference all preceding paragraphs as though fully set forth herein.

177.    SkyWest filed this action against Krithivas.

178.    SkyWest and Hansen then used the filing of this action and the Complaint for a purpose other than the proper purpose of resolving claims through judicial process.

179.    SkyWest and Hansen used the lawsuit and the Complaint as instruments to retaliate against Krithivas for protected union formation activity, chill and deter other pilots from engaging in union activity, damage Krithivas' reputation, and interfere with his employment at American Airlines.

180.    Hansen's February 2, 2026 email to American Airlines constituted an improper use of the Complaint and the judicial process.

181.    SkyWest and Hansen used the existence of litigation and the unverified allegations in the Complaint to alert Krithivas' new employer to the allegations against him.

22

182.    SkyWest and Hansen did so for a collateral purpose unrelated to adjudicating SkyWest's claims.

183.    SkyWest and Hansen intended to cause employment consequences to Krithivas, or acted with knowledge that employment consequences were substantially certain to occur.

184.    SkyWest and Hansen also intended to send a message to pilots involved in or considering union organizing activity that SkyWest would pursue severe employment, reputational, and legal consequences against pilots associated with union organizing.

185.    The use of the Complaint and judicial process to interfere with Krithivas' employment and retaliate for union-related activity was improper.

186.    As a direct and proximate result of SkyWest's and Hansen's abuse of process, Krithivas suffered damages, including loss of employment, lost earnings, lost benefits, lost seniority, loss of future earning capacity, reputational harm, emotional distress, humiliation, and other damages.

187.    SkyWest's and Hansen's conduct was willful, malicious, intentional, oppressive, and in reckless disregard of Krithivas' rights.

188.    Krithivas is entitled to compensatory damages, general damages, consequential damages, punitive damages, interest, costs, and all other relief permitted by law.

189.    Hansen and SkyWest are jointly and severally liable to Krithivas for the full amount of damages sustained as a result of the aforementioned tortious conduct.

## PUNITIVE DAMAGES ALLEGATIONS

190.    Krithivas incorporates by reference all preceding paragraphs as though fully set forth herein.

191.    SkyWest's and Hansen's conduct was intentional, malicious, willful, reckless, and undertaken in knowing disregard of Krithivas' rights.

192.    SkyWest and Hansen acted with the intent to harm Krithivas' employment relationship, reputation, and career prospects.

193.    SkyWest and Hansen acted with knowledge that transmitting unverified and materially false allegations to American Airlines would foreseeably damage Krithivas' employment and professional reputation.

194.    In addition to transmitting the Complaint to American Airlines, SkyWest separately published accusations of theft, unlawful conduct, unauthorized access, manipulation, and unethical behavior to its pilot workforce before filing suit. Despite lacking a verified factual basis for those accusations, SkyWest chose to publicly characterize Krithivas as a wrongdoer and criminal actor.

195.    SkyWest and Hansen acted for the improper purpose of retaliation and deterrence relating to protected union formation activity.

24

196. SkyWest's and Hansen's conduct warrants punitive damages in an amount sufficient to punish and deter such conduct.

197. Hansen and SkyWest are jointly and severally liable to Krithivas for the full amount of damages sustained as a result of the aforementioned tortious conduct.

## JURY DEMAND

198. Krithivas demands a trial by jury on all claims and issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Krithivas respectfully requests judgment in his favor and against SkyWest and Hansen as follows:

A. For compensatory damages in an amount to be proven at trial;

B. For special damages, including lost wages, lost benefits, lost seniority, lost career opportunities, loss of future earning capacity, and other economic damages;

C. For general damages, including reputational harm, humiliation, embarrassment, emotional distress, and other non-economic damages;

D. For presumed damages on the defamation per se claim;

E. For punitive damages in an amount sufficient to punish and deter SkyWest and Hansen;

F. For pre-judgment and post-judgment interest as permitted by law;

G. For costs and attorneys' fees to the extent permitted by law;

H. For such other and further relief as the Court deems just and proper.

DATED this 10th day of July, 2026.

**LAW OFFICES OF TIMOTHY D. DUCAR, PLC**

By /s/ Scott C. Uthe
Scott C. Uthe
Timothy D. Ducar
9280 E. Raintree Drive, Suite 104
Attorneys for Defendant Vikaas Krithivas

# EXHIBIT 1

Message

---

**From:**      Dale Hansen [dhansen@skywest.com]
**Sent:**      2/2/2026 9:24:09 AM
**To:**        nate.gatten@aa.com
**Subject:**   SkyWest
**Attachments:** [Filed Complaint] 2026-01-30 (1) Complaint.pdf

Nate:  Attached is a complaint filed against a former SkyWest pilot (Vikaas Krithivas) who has since transitioned to AA.  The complaint was filed on Friday in Utah Federal district court.  We just wanted to make you aware of the initiation of litigation against Mr. Krithivas.  If you have any additional questions, please feel free to call.

thanks

Dale Hansen
General Counsel
SkyWest, Inc.
444 South River Road │ St. George, Utah 84790
O: (435) 634-3217
dhansen@skywest.com

CONFIDENTIAL

SkyWest_0000475

# EXHIBIT 2



January 26, 2026 2030 MT

At SkyWest, we pride ourselves on integrity, excellence, and respect. Our people are expected to operate with the highest standards and an unwavering commitment to doing right by each other and our customers, no matter the circumstances or environment.

We recently became aware that two now-former pilots' actions trampled on these values, violating our company policies and, more importantly, your trust. Their actions serve as an appalling reminder of the lengths to which certain organizations and interests will go to gain access to our people. In this case, they went as far as unethically and unlawfully stealing your information in the hopes of reaching and influencing you.

We have no tolerance for the actions of these individuals, which were in direct conflict with our values and violate the critical trust we know our employees put in each other as colleagues and teammates.

Specifically, they gained unauthorized access to and downloaded pilot contact information that was not accessible to line pilots or any employee through normal processes, even after completing multi-factor SkyWest Online login. That information consisted of names, addresses, and phone numbers. I want to be clear that, based on our investigation, no additional personal identifiable information, such as social security numbers, dependents, or otherwise, was accessed.

I also want to personally apologize to you. While this contact information was not easily available and took extensive effort and manipulation to retrieve, they should never have been able to access it. We have responded swiftly and aggressively:

1. Our IT team has implemented additional security measures to prevent this from happening in the future.
2. For those who have been contacted by an unauthorized person or organization as a result of this violation, we have created a portal for you to report that activity.
3. This investigation is ongoing, and we will pursue this matter through every legal means possible.

SkyWest_000003

2

We invest millions of dollars in extensive firewalls to prevent attackers from the outside, and we're shocked and disgusted by this unethical behavior and violation of trust from colleagues prior to their departure.

Our strength as a company comes from our values, the character of our people, and the commitments we make to each other and our customers. We will not tolerate theft of any kind, and we remain committed to protecting our people and your information.

Thank you for your continued commitment to each other and for representing SkyWest with character and integrity.

Chip

2

SkyWest_000004