# EXHIBIT A

Jonathan K. Thorne (Utah Bar No. 12694)
Lauren I. Scholnick (Utah Bar No. 7776)
Jack Holland *(pro hac vice)*
**SCHOLNICK THORNE HOLLAND**
40 South 600 East
Salt Lake City, Utah 84102
Telephone:(801) 359-4169
Facsimile: (801) 359-4313
email:      jonathan@utahjobjustice.com
            lauren@utahjobjustice.com
            jack@laborwest.com

*Attorneys for Defendant Daniel Moussaron*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

## SOUTHERN DIVISION

| | |
|---|---|
| SKYWEST AIRLINES, INC.,<br><br>        Plaintiff,<br><br>vs.<br><br>DANIEL MOUSSARON and VIKAAS KRITHIVAS,<br><br>        Defendants,<br><br>⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯<br><br>DANIEL MOUSSARON,<br><br>        Counterclaim Plaintiff,<br><br>vs.<br><br>SKYWEST AIRLINES, INC.,<br><br>        Counterclaim Defendant. | **MOUSSARON'S RESPONSES TO SKYWEST'S SECOND SET OF DISCOVERY REQUESTS**<br><br>Civil No. 4:26-cv-00015-DN<br><br>Judge David O. Nuffer |

Defendant and Counterclaim Plaintiff Daniel Moussaron ("Defendant" or "Mr. Moussaron") hereby responds to Plaintiff and Counterclaim Defendant SkyWest's ("Plaintiff" or "SkyWest") Second Set of Discovery Requests.

## GENERAL OBJECTIONS

1.      Defendant objects to any interrogatory or request to the extent that it seeks information protected by the attorney-client privilege and/or the attorney work product privilege. To the extent that any interrogatory or request seeks or may be construed as seeking such protected information, Defendant hereby invokes the attorney-client privilege and attorney work product privilege, and on those grounds, objects to such requests. These objections apply to each request propounded by Plaintiff and the fact that Defendant has not expressly referred to the attorney-client privilege and/or work product privilege in response to a specific interrogatory or request is not intended to be a waiver of the attorney-client privilege or the attorney work product privilege and their protection from disclosure.

2.      The responses set forth below are based on Defendant's knowledge to date. Defendant's discovery, his investigation of the facts and law relevant to this action, and his efforts to obtain documents and information requested by Plaintiff, are not yet complete, and as such, he expressly reserves the right: 1) to use any additional evidence and information obtained in the course of formal and informal discovery in this action and 2) to amend, supplement or otherwise change these responses, pursuant to Federal Rule of Civil Procedure 26(e).

3.      Defendant also objects to the Instructions and Definitions outlined in Plaintiff's discovery requests to the extent that they do not comply with the Federal Rules of Civil Procedure.

4.      Defendant objects to any request to the extent that it seeks documents or

information not in his possession or control, in the possession or control of Plaintiff, or equally obtainable by Plaintiff.

5.      Defendant objects to any request seeking confidential union organizing information that is protected under the Railway Labor Act.

6.      Defendant objects to the definition of SkyWest Confidential Information as it is overbroad, vague, and includes information that is not actually confidential information, and encompasses publicly available information independently obtainable from sources other than SkyWest Systems.

7.      Defendant objects to the definition of "Automated Extraction Process", which incorrectly defines Moussaron's access to SWOL as unauthorized "extraction" of data.

## ANSWER TO INTERROGATORIES

**INTERROGATORY NO. 6:** Identify the Remote Server, including its URL, IP address, domain name, hosting provider or service, date of creation or first activation, and current status (i.e., whether it is active, decommissioned, or otherwise), and identify every person with access to the Remote Server during the Relevant Period, including the nature and scope of each person's access.

**ANSWER TO INTERROGATORY NO. 6:** Moussaron objects to Interrogatory No. 6 on the basis that it seeks information that is not relevant, is vague, ambiguous, and overbroad. Moussaron further objects that it requests confidential union organizing information that is protected by the Railway Labor Act.

Subject to and without waiving these objections, Moussaron states that the Remote Server does not currently have a Uniform Resource Identifier that resolves to its Internet Protocol address, however, previous Domain Name Server records for "skywestalpa.org" and

3

"alpaforskywest.com" resolved to the Virtual Hosts within the Remote Server. Hosting for the Remote Server is provided by "GreenHost B.V." ("greenhost.net") and it has the following public Internet Protocol address "185.88.143.130". Services began on May 8th, 2025, and are still active. The only individual to have direct access to the Remote Server throughout its lifecycle is Moussaron.

**INTERROGATORY NO. 7:** Identify every person or entity who received, accessed, viewed, or possessed any SkyWest Confidential Information at any time during the Relevant Period, including without limitation the date, manner, and form of transmission for each, and the specific categories of SkyWest Confidential Information involved.

**ANSWER TO INTERROGATORY NO. 7:** Moussaron objects to Interrogatory No. 7 as overbroad, vague, unduly burdensome, compound, not relevant, requests information not in his control or equally accessible to SkyWest, and requests confidential union organizing information protected by the Railway Labor Act. In addition, the interrogatory asks Moussaron to identify every individual that had access to SkyWest's SWOL system and viewed information it classifies as "confidential", which he does not have access to or control over. Furthermore, the definition of "SkyWest Confidential Information" is overbroad, vague, includes information that is not actually confidential, and encompasses publicly available information independently obtainable from sources other than SkyWest's systems.

Subject to and without waiving these objections, to the extent SkyWest is asking for information about the database that was created for the Air Line Pilots Association ("ALPA") union organizing drive, pilot contact information was stored via a Data Management System ("DMS") with server-directed Role-Based-Access-Control ("RBAC"). Moussaron is the only individual with access to the Remote Server, including the underlying database containing pilot

contact records – most of which were found via public sources. The ALPA organizing committee had access limited to pilot phone numbers, as displayed through the DMS call queue for the purposes of conducting outreach calls in connection with union organizing efforts. Moussaron and two other members of the organizing committee previously had administrative-level access to the DMS, which permitted viewing and updating complete pilot contact records obtained through other methods, like searching of public records. ALPA representative Ron Rindfleisch was provided via email an export of the DMS. The output were encrypted CSV and XLS documents.

**INTERROGATORY NO. 8:** Describe the complete technical method You used to obtain personal cell phone numbers and home addresses of SkyWest pilots from SWOL, identifying the specific Automated Extraction Process used, each step in the process from initial access to final storage of the data, the date or dates each step occurred, and the Device used at each step.

**ANSWER TO INTERROGATORY NO. 8:** Moussaron objects to Interrogatory No. 8 as overbroad, vague, unduly burdensome, not relevant, requesting information not in his control and/or equally accessible to SkyWest, and requesting confidential union organizing information protected by the Railway Labor Act. In addition, the Interrogatory incorporates the defined term "Automated Extraction Process", which incorrectly defines Moussaron's access to SWOL as unauthorized "extraction" of data. The defined term is overbroad in that it encompasses standard browser functionality, includes browser developer tools and console commands, which are built-in features of the majority of commercially available web browsers (which are available to every user of the web browser) and are not "extraction" tools.

Subject to and without waiving these objections, Moussaron states that he accessed

SkyWestOnline ("SWOL") using his valid SkyWest employee credentials. Within SWOL, Moussaron navigated to the Directory application, which is available to SkyWest employees for looking up pilot contact information. The Directory application functions as follows: a user searches by name or employee ID, the application returns a list of results, and upon selecting "View" for a given result, the application makes an API call to SkyWest's servers at the endpoint "/OO/api/directory/empdetail/{employee_ID}". SkyWest's servers responded to each such request by returning a complete data object containing the full pilot record, including name, employee ID, phone number, mailing address, base assignment, and other fields. This data was included in the server's standard application programing interface ("API") response; no additional requests, authentication, or access controls were bypassed to obtain it. Certain fields included in the API response, such as phone number and mailing address, were not displayed in the application's user interface but were transmitted by SkyWest's servers in every response to the standard API call. Moussaron used a Tampermonkey userscript operating within his web browser to automate the process of making these same API calls that the Directory application made in its normal operation. The userscript would retrieve the next employee ID for which the Organizing Committee did not yet have contact details, make the standard Directory API call, parse the data returned by SkyWest's servers, and transmit it to the Organizing Committee's Data Management System for storage in a staging table pending manual validation by Moussaron. The same DMS and staging tables were concurrently used to receive and store pilot contact information voluntarily provided by pilots through other organizing channels. This activity occurred on or about September through December 2025 and was conducted using Moussaron's personal MacBook Air, which is the device Moussaron made available for forensic imaging pursuant to Court Order (Dkt. 43). This activity was in furtherance of union organizing

6

efforts among SkyWest pilots under the Railway Labor Act.

**INTERROGATORY NO. 9:** Identify every Coordination Platform You used during the Relevant Period to communicate with Krithivas or any other person regarding (a) SWOL, (b) SkyWest Confidential Information, (c) contacting SkyWest pilots using non-public contact information, or (d) union organizing at SkyWest, including for each platform the usernames or account identifiers used and the approximate dates of such communications.

**ANSWER TO INTERROGATORY NO. 9:** Moussaron objects to Interrogatory No. 9 as overbroad, vague, unduly burdensome, not relevant, and requesting confidential union organizing information protected by the Railway Labor Act. Moussaron also objects to the definition of SkyWest Confidential Information as it is overbroad, vague, and includes information that is not actually confidential information, and encompasses publicly available information independently obtainable from sources other than SkyWest Systems.

Subject to and without waiving these objections, Moussaron states that:

- SMS messaging: Moussaron contacted Krithivas by text message, on or about August 30, 2025, to discuss whether Krithivas would be willing to assist with the Organizing Committee's data collection efforts. Sporadic text message communications continued thereafter.

- Microsoft Teams: Moussaron and Krithivas communicated by Microsoft Teams audio call on or about September 3, 2025. Krithivas joined the call as a guest through Moussaron's calendar invitation to him. The Teams meeting chat function was used during this call to share the Tampermonkey userscript described in  response to Interrogatory No. 8.

With respect to communication between the Organizing Committee, they used Telegram

as its primary coordination platform for union organizing activities during the Relevant Period. Moussaron's account identifiers for the platforms identified above are as follows: SMS communications were sent using Moussaron's personal mobile phone number; Microsoft Teams communications were sent using Moussaron's personal email account; and Telegram communications were sent using Moussaron's personal Telegram account.

**INTERROGATORY NO. 10:** Identify every messaging campaign, text-message blast, or mass communication sent to SkyWest pilots or employees during the Relevant Period using SkyWest Confidential Information, including the Messaging Infrastructure used, the sending phone number or other identifier, the number of recipients, the content or substance of each message, and the date or dates sent.

**ANSWER TO INTERROGATORY NO. 10:** Moussaron objects to Interrogatory No. 10 as overbroad, vague, unduly burdensome, and requests confidential union organizing information protected by the Railway Labor Act. Moussaron also objects to the definition of SkyWest Confidential Information as it is overbroad, vague, and includes information that is not actually confidential information, and encompasses publicly available information independently obtainable from sources other than SkyWest Systems.

Subject to and without waiving these objections, Moussaron states that on or about December 9, 2025, a mass text message was sent to SkyWest pilots using EZ Texting. The message concerned union organizing efforts among SkyWest pilots. Moussaron refers to the text message sample already produced in this litigation. The text message originated from +1 (737) 283-6602 and was sent to approximately 4,800 pilots. Nearly all of the phone numbers of the pilots that were sent a copy of this text message were obtained through publicly available sources, and only a couple hundred of the phone numbers were obtained through SWOL.

8

**INTERROGATORY NO. 11:** Identify every instance in which You have destroyed, deleted, wiped, uninstalled, overwritten, or disposed of any Device, Account, Communication, File, Automated Extraction Process, Dataset, or data relating to SWOL, SkyWest Confidential Information, SkyWest Systems, or this litigation since August 1, 2025, including for each: (a) the nature of the item destroyed or deleted; (b) the date of destruction or deletion; (c) the approximate date(s) the item was created or, for Communications, the approximate date(s) of the Communication(s); (d) the other party or parties to the Communication (if applicable); (e) the general subject matter; (f) the method of destruction or deletion; and (g) the reason for the destruction or deletion.

**ANSWER TO INTERROGATORY NO. 11:** Moussaron objects to Interrogatory No. 11 as overbroad, vague, compound, unduly burdensome, and requests confidential union organizing information protected by the Railway Labor Act. Moussaron also objects to the definition of SkyWest Confidential Information as it is overbroad, vague, and includes information that is not actually confidential information, and encompasses publicly available information independently obtainable from sources other than SkyWest Systems. Further, Moussaron objects that actions occurring due to routine system operations, software development activities, and/or ordinary data management, unrelated to any intent to destroy evidence.

Subject to and without waiving these objections, Moussaron states:

- Email service provider account: The Organizing Committee used an email service provided by Migadu for email communications to pilots. On or about November 1, 2025, ALPA assumed administration of the organizing website and related communications, and the Organizing Committee's independent email service was

no longer needed. The Migadu account was not renewed and access terminated on or about January 13, 2026, on the account's recurring billing date, prior to this action. The non-renewal was because  the service was no longer needed following ALPA's assumption of organizing communications.

- DMS database migration: When DMS was transitioned from its initial contact-collection function to its assessment function, database migrations were executed to restructure the application for this new use. During these migrations, staging tables that had contained pilot-provided contact information and associated logs were replaced by new tables supporting the assessment functionality that would allow organizing committee members to record the level of interest their fellow line pilots had in having ALPA representation. This was a routine software development activity undertaken to update the application. The approximate date of this migration was December 16, 2025.

- Tampermonkey script: Moussaron did not retain a copy of the script after it was last used on December 9.

- Text messages with Krithivas: Moussaron deleted his text messages with Krithivas prior to January 26, 2026.

- Email to Ron Rindfleisch referenced in Answer to Interrogatory No. 7: Moussaron deleted the email prior to January 26, 2026.

Other than the items identified above which were not deleted, overwritten, or disposed of in response to his termination or this litigation (they were deleted, overwritten or disposed of prior to his termination and this litigation), Moussaron has not destroyed, wiped, uninstalled, overwritten, or disposed of any Device, Account, File, Dataset, or data relating to the subject

10

matter of this litigation.

**INTERROGATORY NO. 12:** Identify every person, other than Krithivas, who had advance knowledge of, participated in planning, or assisted with the plan to access SWOL to obtain SkyWest pilot contact information, and describe each such person's role and the communications You had with them regarding the plan.

**ANSWER TO INTERROGATORY NO. 12:** Moussaron objects to Interrogatory No. 12 as overbroad, vague, compound, unduly burdensome, and requesting confidential union organizing information  protected by the Railway Labor Act.

Subject to and without waiving these objections, Moussaron states that during the Organizing Committee's efforts to compile pilot contact information for union organizing purposes, Moussaron discussed the use of the SWOL Directory as a source of pilot contact data with two individuals. The first individual provided Moussaron with contact information for Krithivas. This communication occurred via Telegram direct message on or about August 29, 2025. Moussaron had a Telegram voice call with the second individual, who was part of the Organizing Committee, on or about August 29, 2025. In that call, they discussed data collection efforts, including the use of the SWOL Directory.

Other than Krithivas and the other two individuals, Moussaron is not aware of any other individual, who had advance knowledge of the decision to use the SWOL Directory as a data source. Krithivas and Moussaron are the only individuals who participated in obtaining contact information through the SWOL Directory.

**INTERROGATORY NO. 13:** Describe any union or labor organizing effort directed at SkyWest pilots in which You participated during the Relevant Period, identifying the union or labor organization involved, every person participating in the effort, and state whether You

11

received or were promised any compensation, reimbursement, or other benefit in connection with (a) accessing SWOL; (b) obtaining or using SkyWest Confidential Information; or (c) participating in the organizing effort.

**ANSWER TO INTERROGATORY NO. 13:** Moussaron objects to Interrogatory No. 13 as overbroad, vague, compound, unduly burdensome, and requesting confidential union organizing information  protected by the Railway Labor Act.

Subject to and without waiving these objections, Moussaron states that during the Relevant Period, Moussaron participated in organizing SkyWest pilots for union representation by the Air Line Pilots Association, International ("ALPA"). Moussaron did not receive any compensation, reimbursement, or other benefit from any person or entity in connection with (a) accessing SWOL, (b) obtaining pilot contact information, or (c) participating in the organizing effort. No compensation was offered or promised in connection with accessing SWOL or obtaining pilot contact information. With respect to the organizing effort generally, ALPA representatives indicated that certain ordinary organizing expenses, such as mailings, printing, and email/website service fees, might be reimbursed from funds allocated to SkyWest pilots by ALPA following certification.

**INTERROGATORY NO. 14:** Identify every company, venture, or entity—including Adamo Systems, Inc. and Dorrus, Inc.—in which You hold or have held an ownership or officer interest or management role since January 1, 2024, and for each, state: (a) the nature of Your role and the dates of Your involvement; (b) whether any SkyWest Confidential Information was used in connection with any such entity's operations or activities; and (c) whether any Automated Extraction Process developed, used, or employed by any such entity was used to access, download, or extract SkyWest Confidential Information.

**ANSWER TO INTERROGATORY NO. 14:** Moussaron objects to Interrogatory No. 14 as irrelevant, overbroad, vague, compound, unduly burdensome, and because it appears an attempt to harass and intimidate Moussaron by involving businesses that are not parties to or have anything to do with the lawsuit. Moussaron also objects to the definition of SkyWest Confidential Information as it is overbroad, vague, and includes information that is not actually confidential information, and encompasses publicly available information independently obtainable from sources other than SkyWest Systems.

Subject to and without waiving these objections, Moussaron states he is the sole owner of Adamo Systems, Inc., Dorrus, Inc., and GroomTower LLC. None of these entities used any "SkyWest Confidential Information" in connection with any of these entities' operations or activities. Further, no Automated Extraction Process developed, used, or employed by any of these entities was used to access, download, or extract "SkyWest Confidential Information."

**INTERROGATORY NO. 15:** Identify every Device You owned or used during the Relevant Period that contains or may contain SkyWest Confidential Information, Automated Extraction Processes used to retrieve, access, reveal, copy, and/or download SkyWest Confidential Information, or Communications relating to SWOL, SkyWest Confidential Information, or union organizing at SkyWest, including the make, model, serial number, operating system, and current location of each Device.

**ANSWER TO INTERROGATORY NO. 15:** Moussaron objects to Interrogatory No. 15 as irrelevant, overbroad, vague, compound, unduly burdensome, and requesting confidential union organizing information protected by the Railway Labor Act. Moussaron also objects to the definition of SkyWest Confidential Information as it is overbroad, vague, and includes information that is not actually confidential information, and encompasses publicly available

13

information independently obtainable from sources other than SkyWest Systems.

Subject to and without waiving these objections, Moussaron states that SWOL is SkyWest's general-purpose employee intranet used by pilots for routine employment functions, including accessing flight schedules, company communications, and other work-related information. Moussaron accessed SWOL from numerous devices in the ordinary course of his employment, including his personal iPhone, company-issued iPad, and company workstations located in crew lounges at various airports. Moussaron cannot reasonably identify every device from which he accessed SWOL for routine employment purposes. Further, none of those devices was used to run the Tampermonkey userscript described in Moussaron's response to Interrogatory No. 8 or to store pilot contact information obtained from the SWOL Directory.

The devices used to develop, execute, or store the Tampermonkey userscript and the pilot contact information obtained through it are as follows:

- Apple MacBook Air, 15-inch, M2 (2023), serial number FQ7R73K77W, running macOS Tahoe 26.3, currently located at Moussaron's personal residence. This device was subject to forensic imaging pursuant to Court Order (Dkt 43).

- The Remote Server identified in response to Interrogatory No. 6, a virtual Ubuntu server hosted by GreenHost B.V. at IP address 185.88.143.130.

**INTERROGATORY NO. 16**: Identify every person who made unsolicited phone calls to SkyWest pilots during the Relevant Period, including without limitation the person or persons responsible for the phone call described in Paragraph 37 of SkyWest's Complaint, and for each such person state: (a) the person's identity; (b) Your relationship with that person; (c) whether You provided any SkyWest pilot contact information to that person, and if so, the source and scope of the information provided; and (d) whether You directed, encouraged, or coordinated

14

with that person to make such calls.

**ANSWER TO INTERROGATORY NO. 16:** Moussaron objects to Interrogatory No. 16 as it seeks irrelevant information or is overbroad, vague, compound, unduly burdensome, and requests confidential union organizing information that is protected by the Railway Labor Act. Outreach calls by organizing committee members to fellow employees regarding union representation are protected activity under the Railway Labor Act. The Interrogatory seeks every individual who participated in protected organizing outreach and the specific pilots they contacted, which would constitute a comprehensive disclosure of the internal operations of a union organizing campaign. Such compelled disclosure has a direct and substantial chilling effect on the exercise of protected rights and is not relevant. Moussaron further objects that the Interrogatory is overbroad in that it seeks identification of "every person" who called any SkyWest pilot during the entire Relevant Period, which would encompass the entirety of the organizing efforts involving dozens of volunteers and thousands of contacts.

Subject to and without waiving these objections, Moussaron states that as part of the union organizing campaign, Organizing Committee members made outreach calls to fellow SkyWest pilots to discuss union representation. These calls were coordinated through the DMS call queue described in Moussaron's response to Interrogatory No. 7.

- The individuals who participated in outreach calling are among the Organizing Committee members.

- Moussaron's relationship with all individuals who made outreach calls was that of fellow Organizing Committee members engaged in a common protected organizing effort.

- Pilot contact information was made available to Organizing Committee members

15

making outreach calls through the DMS call queue application, which displayed pilot phone numbers for the purpose of conducting outreach. The source of the contact information in the DMS included pilot-provided information through voluntary channels as well as pilot contact information obtained from the SWOL Directory, as described in Moussaron's prior responses.

- Outreach calling was a coordinated effort of the Organizing Committee as a whole, conducted for the purpose of building support for union representation and meeting the participation thresholds required by ALPA. Moussaron, as an Organizing Committee leader, coordinated these outreach efforts along with other Committee leadership.

## REQUESTS FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 6:** All records relating to the Remote Server, including without limitation: (a) the file SkyProxy.sql.zip and its contents (including the SQL database dump), and any copies, derivatives, or extracts thereof, in native format; (b) all configuration files; (c) all access logs and authentication records; (d) all billing, payment, or subscription records for the server or hosting service; (e) all records showing data stored, processed, uploaded, downloaded, or transmitted through the Remote Server; and (f) all records showing the creation, modification, or deletion of database tables, including without limitation the staged_pilot_data and pilot_members tables.

**ANSWER TO REQUEST FOR PRODUCTION NO. 6:** Moussaron objects to Request for Production No. 6 on the basis that the request seeks information that is not relevant, overbroad, vague, compound, unduly burdensome, and requests confidential union organizing information that is protected by the Railway Labor Act. Regarding the request seeking "all

16

records relating to the Remote Server," that would encompass the entirety of a server's operational data, including routine system logs, application data, and content unrelated to the claims and defenses in this action. Subsection (e) requests "all records showing data stored, processed, uploaded, downloaded, or transmitted through the Remote Server," which is effectively a demand for a complete forensic image of a server that hosted multiple applications and functions beyond those at issue in this litigation. Moussaron further objects to the extent this Request seeks production of records containing the personal contact information of SkyWest pilots who voluntarily provided that information to the Organizing Committee for union organizing purposes, as production of such information would expose those individuals to retaliation and chill the exercise of rights protected under the Railway Labor Act, and otherwise is protected information under the Railway Labor Act.

Subject to and without waiving these objections, Moussaron is willing to meet and confer on this request to determine how to disclose relevant information that does not contain confidential union organization information. Further, any documents produced after a meet and confer will only be produced under a protective order with attorneys/expert eyes only designation, and with the express agreement that no union organizing information will be reviewed by, provided to, shared with, or communicated to SkyWest or any of its employees.

**REQUEST FOR PRODUCTION NO. 7:** All Communications during the Relevant Period between You and any person (other than Your attorneys of record in this litigation) regarding (a) SWOL; (b) SkyWest Confidential Information; (c) union organizing at SkyWest; (d) contacting SkyWest pilots using personal contact information obtained from SkyWest Systems; or (e) nonprivileged communications relating to this litigation, on every Coordination Platform, including without limitation Microsoft Teams, iMessage, SMS/RCS, Signal,

17

WhatsApp, Telegram, email, and social media.

**ANSWER TO REQUEST FOR PRODUCTION NO. 7:** Moussaron objects to Request for Production No. 7 on the basis that the request seeks information that is not relevant, overbroad, vague, compound, unduly burdensome, requests information already in possession or equally accessible to SkyWest, and requests confidential union organizing information that is protected by the Railway Labor Act. Moussaron further objects as this request seeks to expose those individuals involved in protected union organizing, which will likely result in retaliation and chill the exercise of rights protected under the Railway Labor Act, and otherwise is protected information under the Railway Labor Act. Moussaron also objects to the definition of SkyWest Confidential Information as it is overbroad, vague, and includes information that is not actually confidential information, and encompasses publicly available information independently obtainable from sources other than SkyWest Systems. Subsection (a) is overbroad in that SWOL is SkyWest's general-purpose employee intranet used by all SkyWest employees for routine employment functions including accessing flight schedules, pairings, and company communications. The Request as written would encompass every casual workplace conversation referencing SWOL in any context, which is disproportionate to the needs of this case and not relevant. Moussaron limits his response to subsection (a) to communications regarding the SWOL Directory and the data access at issue in this litigation. Subsection (c) is overbroad and unduly burdensome in that it seeks all communications regarding "union organizing at SkyWest" during the entire Relevant Period across every platform, which would encompass the entirety of a protected organizing campaign involving dozens of participants over more than a year. Moussaron further objects to subsection (c) to the extent it seeks to compel production of protected internal organizing communications under the Railway Labor Act, 45 U.S.C. § 151 et

18

seq.

Subject to and without waiving the foregoing objections, text messages between Moussaron and Krithivas have been previously produced. Moussaron emailed ALPA representative Ron Rindfleisch an export of the DMS via encrypted CSV and XLS documents sent via email, but Moussaron does not have this email. As previously explained, Moussaron created a database that contains information about union organizing and substantive information about the Organizing Committee's communications with SkyWest Pilots that is protected under the Railway Labor Act.

**REQUEST FOR PRODUCTION NO. 8:** A complete native export of all Microsoft Teams accounts, workspaces, channels, and direct-message conversations used by You during the Relevant Period, including all messages, files, attachments, and metadata, specifically including without limitation the complete content of any Automated Extraction Process, script, code, or instructions transmitted by You to Krithivas or any other person via Teams, and any Communications regarding SWOL, SWOL Data, or union organizing at SkyWest.

**ANSWER TO REQUEST FOR PRODUCTION NO. 8:** Moussaron objects to Request for Production No. 8 on the basis that the request seeks information that is not relevant, overbroad, vague, compound, unduly burdensome, and requests confidential union organizing information that is protected by the Railway Labor Act. Mr. Moussaron also objects to the request as seeking "a complete native export of all Microsoft Teams accounts, workspaces, channels, and direct-message conversations used by You during the Relevant Period," which would encompass all Teams communications on any topic, not limited to the subject matter of this litigation.

Subject to and without waiving these objections, Moussaron states that the only

19

communication he has in his possession with Krithivas during the relevant period include the text messages previously produced and a calendar invitation for a Microsoft Teams meeting held on September 3, 2025, which is produced herewith. The meeting chat in which the Tampermonkey userscript described in Moussaron's response to Interrogatory No. 8 was shared is no longer available, as it was not retained beyond Microsoft's default retention period.

**REQUEST FOR PRODUCTION NO. 9:** All Automated Extraction Processes written, used, adapted, or obtained by You in connection with accessing SkyWest Systems or extracting SkyWest Confidential Information, including without limitation any Tampermonkey userscript, any version history, source code, configuration files, and associated documentation or instructions.

**ANSWER TO REQUEST FOR PRODUCTION NO. 9:** Moussaron objects to Request No. 9 on the basis that the request is vague, ambiguous, and seeks information that is not relevant. Moussaron also objects to the definition of SkyWest Confidential Information as it is overbroad, vague, and includes information that is not actually confidential information, and encompasses publicly available information independently obtainable from sources other than SkyWest Systems. Furthermore, Moussaron objects to the term "extracting" as vague and ambiguous as he accessed SWOL using his SkyWest Credentials and was provided contact information provided by SkyWest via the credentials they set for him.

Subject to and without waiving these objections, Moussaron states that he does not have any responsive documents as previously explained in other responses – he did not retain the Tampermonkey userscript.

**REQUEST FOR PRODUCTION NO. 10:** All Documents and Communications relating to the union or labor organizing effort at SkyWest that involve, reference, or relate to (a)

20

the collection, use, or distribution of SkyWest pilot contact information; (b) SWOL or SkyWest Confidential Information; (c) the Organizing Committee's data collection efforts as described in Your Counterclaim; or (d) Communications with any union representative or organizer regarding pilot contact data, including without limitation formation documents, meeting materials, membership lists, financial records, and strategic plans relating to any of the foregoing.

**ANSWER TO REQUEST FOR PRODUCTION NO. 10:** Moussaron objects to Request No. 10 on the basis that the request seeks information that is not relevant, overbroad, vague, compound, unduly burdensome, and requests confidential union organizing information protected by the Railway Labor Act. This request is seeking a comprehensive disclosure of the internal operations and communications of a union organizing campaign, which is untethered to SkyWest's claims and is an extraordinary intrusion on activity protected under the Railway Labor Act. SkyWest's claims concern the method by which pilot contact information was obtained from the SWOL Directory – not the substance or strategy of the organizing campaign itself. Compelling production of internal campaign strategy, meeting materials, and membership information would have a direct and substantial chilling effect on protected organizing rights under the Railway Labor Act and is not relevant. Moussaron also objects to the definition of SkyWest Confidential Information as it is overbroad, vague, and includes information that is not actually confidential information, and encompasses publicly available information independently obtainable from sources other than SkyWest Systems.

Notwithstanding and subject to the foregoing objections, Moussaron is willing to meet and confer on this request to determine how to disclose relevant information that does not contain confidential union organization information. Further, any documents produced after a meet and confer will only be produced under a protective order with attorneys/expert eyes only

designation, and with the express agreement that no union organizing information will be reviewed by, provided to, shared with, or communicated to SkyWest or any of its employees.

**REQUEST FOR PRODUCTION NO. 11:** All Documents and Communications relating to Adamo Systems, Inc. and Dorrus, Inc. that concern or relate to SkyWest pilots, SkyWest Confidential Information, union organizing at SkyWest, pilot recruitment or solicitation, contacting SkyWest employees, or any communication campaign directed at SkyWest employees, including without limitation business records, formation documents, financial records, client lists, and service agreements.

**ANSWER TO REQUEST FOR PRODUCTION NO. 11:** Moussaron objects to Request No. 11 on the basis that the request is not relevant, overbroad, vague, compound, unduly burdensome, and appears to be an attempt to harass and intimidate Moussaron by involving businesses that are not parties to or have anything to do with the lawsuit. Moussaron also objects to the definition of SkyWest Confidential Information as it is overbroad, vague, and includes information that is not actually confidential information, and encompasses publicly available information independently obtainable from sources other than SkyWest Systems. Additionally, Moussaron objects as the request seeks information protected under the Railway Labor Act.

Subject to and without waiving the foregoing objections, Moussaron states that there are no responsive documents.

**REQUEST FOR PRODUCTION NO. 12:** Records from every Messaging Infrastructure (including without limitation EzTexting) used to send any Communication to SkyWest pilots using SWOL Data or SkyWest Confidential Information, including without limitation: (a) sender identifiers (phone numbers, short codes, or other identifiers); (b) recipient lists and contact uploads; (c) message content and templates; (d) delivery status and delivery

receipts; (e) complete account export including account settings and API credentials or integrations; (f) campaign history; (g) CSV, Excel, or other upload files; (h) opt-out or unsubscribe records; and (i) billing records and costs.

**ANSWER TO REQUEST FOR PRODUCTION NO. 12:** Moussaron objects to Request No. 12 on the basis that seeks information that is not relevant, overbroad, vague, compound, unduly burdensome, and requests confidential union organizing information that is protected by the Railway Labor Act. Moussaron further objects to the extent the Request seeks production of records reflecting the identities, contact information, and organizing-related responses of SkyWest pilots contacted through protected union organizing activity under the Railway Labor Act. Production of such records to the pilots' employer would expose individual pilots' union sympathies and have a direct and substantial chilling effect on the exercise of protected rights. Moussaron has already produced a copy of the only mass text sent to SkyWest pilots from the Organizing Committee.

Subject to and without waiving these objections, Moussaron states that he is in possession of a contact report exported from EZ Texting on December 15, 2025, containing approximately 5,019 records including phone numbers, names, group assignments, poll responses, and opt-out dates, as previously disclosed. Moussaron objects to producing this information as it contains the identities and union-related poll responses of SkyWest pilots contacted through protected organizing activity, the disclosure of which to their employer would chill the exercise of protected rights under the Railway Labor Act. Other than the report described above, the EZ Texting account has been locked by the provider and Moussaron is unable to access the platform or export additional records.

**REQUEST FOR PRODUCTION NO. 13:** All financial records reflecting payments,

transfers, reimbursements, or other compensation received, made, or offered to You in connection with (a) accessing SWOL or SkyWest Confidential Information; (b) extracting or distributing SkyWest pilot contact information; or (c) organizing SkyWest pilots for union representation, including without limitation invoices, receipts, bank statements, payment platform records (e.g., PayPal, Venmo, Zelle), and wire transfer records.

**ANSWER TO REQUEST FOR PRODUCTION NO. 13:** Moussaron objects to Request No. 13 on the basis that seeks information that is not relevant, overbroad, vague, compound, unduly burdensome, and requests confidential union organizing information that is protected by the Railway Labor Act. Moussaron further objects as SkyWest's claims concern the method by which pilot contact information was obtained from the SWOL Directory, not the Organizing Committee's finances. Moussaron also objects to the definition of SkyWest Confidential Information as it is overbroad, vague, and includes information that is not actually confidential information, and encompasses publicly available information independently obtainable from sources other than SkyWest Systems.

Subject to and without waiving these objections, Moussaron states that he has no responsive documents reflecting payments, transfers, reimbursements, or other compensation received, made, or offered to him in connection with accessing SWOL or obtaining pilot contact information, as the sole purpose was for union organizing.

**REQUEST FOR PRODUCTION NO. 14:** All Documents and Communications relating to the deletion, destruction, alteration, concealment, overwriting, uninstallation, decommissioning, or disposal of any Document, Communication, Device, Account, File, Dataset, Automated Extraction Process, or other data or information related to SkyWest Systems, SkyWest Confidential Information, or the subject matter of this litigation since August 1, 2025.

24

**ANSWER TO REQUEST FOR PRODUCTION NO. 14:** Moussaron objects to Request No. 14 on the basis that the request is overbroad, vague, compound, and requests confidential union organizing information that is protected by the Railway Labor Act.

Subject to and without waiving these objections, Moussaron states that he has no responsive documents other than the DMS database migration that was detailed in Interrogatory No. 11.

**REQUEST FOR PRODUCTION NO. 15:** All social media posts, online forum posts, blog entries, comments, or other publicly or privately posted online content authored by or attributable to You that reflect, discuss, or relate to SkyWest, SkyWest pilots, SWOL, union organizing at SkyWest, or any effort to contact SkyWest pilots using non-publicly available contact information, including without limitation posts on Reddit, Facebook, or any pilot-focused forum or community.

**ANSWER TO REQUEST FOR PRODUCTION NO. 15:** Moussaron objects to Request No. 15 on the basis that the request seeks information that is not relevant, is overbroad, vague, compound, and requests confidential union organizing information that is protected by the Railway Labor Act.

Subject to and without waiving the foregoing objections, Moussaron states that he does not have any responsive documents to this request that related to SWOL or any effort to contact SkyWest pilots using non-publicly available contact information.

**REQUEST FOR PRODUCTION NO. 16:** All Documents and Communications identifying or reflecting the identity of, and Your relationship with, the person or persons who made unsolicited calls to SkyWest pilots in January 2026 as described in Paragraph 37 of the Complaint.

25

**ANSWER TO REQUEST FOR PRODUCTION NO. 16:** Moussaron objects to Request No. 16 on the basis that the request seeks information that is not relevant, is overbroad, vague, compound, and requests confidential union organizing information that is protected by the Railway Labor Act.

**REQUEST FOR PRODUCTION NO. 17:** All Documents and Communications reflecting Your efforts, or the efforts of anyone acting at Your direction, to preserve, return, delete, sequester, segregate, or otherwise address SWOL Data following receipt of SkyWest's demand letter or the filing of this lawsuit.

**ANSWER TO REQUEST FOR PRODUCTION NO. 17:** Moussaron objects to Request No. 17 on the basis that the request is overbroad, vague, compound, and requests confidential union organizing information that is protected by the Railway Labor Act.

Subject to and without waiving these objections, Moussaron has two responsive documents. An email exchange dated February 7 and 8, 2026, between Moussaron and Migadu Support, in which Moussaron inquired whether emails from the skywestalpa.org account could be recovered in light of this litigation – that email exchange will be produced. The second, a text message from Moussaron to Krithivas dated January 30, 2026, in which Moussaron asked whether Krithivas had retained a copy of the script that was run, stating "I'm trying to show the changes they made." Krithivas did not respond. This communication was previously produced in response to Plaintiff's First Set of Expedited Discovery Requests.

**REQUEST FOR PRODUCTION NO. 18:** The complete contents of the "pilot_members" table and the "staged_pilot_data" table from the Remote Server, each in native or delimited-text format (e.g., CSV or SQL dump), including all fields, columns, rows, and associated metadata such as creation timestamps, modification timestamps, and any row-level

audit data.

**ANSWER TO REQUEST FOR PRODUCTION NO. 18:** Moussaron objects to Request for Production No. 18 on the basis that the request seeks information that is not relevant, overbroad, vague, compound, unduly burdensome, and requests confidential union organizing information that is protected by the Railway Labor Act. This request duplicates Request No. 6 and those objections are incorporated here. Moussaron further objects to the extent this Request seeks production of records containing the personal contact information of SkyWest pilots who voluntarily provided that information to the Organizing Committee for union organizing purposes, as production of such information would expose those individuals to potential retaliation and chill the exercise of rights protected under the Railway Labor Act, and otherwise is protected information under the Railway Labor Act.

Notwithstanding and subject to the foregoing objections, Moussaron is willing to meet and confer on this Request to determine how to disclose relevant information that does not contain confidential union organization information. Further, any documents produced after a meet and confer will only be produced under a protective order with attorneys/expert eyes only designation, and with the express agreement that no union organizing information will be reviewed by, provided to, shared with, or communicated to SkyWest or any of its employees.

**REQUEST FOR PRODUCTION NO. 19:** All Documents and Communications relating to the creation, population, and maintenance of the pilot contact database described in Your Counterclaim, including without limitation: (a) all versions of the database or any predecessor datasets; (b) records showing the source of each pilot's contact information (e.g., Google Form submissions, website registrations, pilot-to-pilot contributions, public records, SWOL, or other source); (c) any documentation, logs, or metadata reflecting when and how each

pilot's contact information was added to the database; and (d) any records reconciling or comparing data obtained from different sources.

**ANSWER TO REQUEST FOR PRODUCTION NO. 19:** Moussaron objects to Request for Production No. 19 on the basis that the request seeks information that is not relevant, overbroad, vague, compound, unduly burdensome, and requests confidential union organizing information that is protected by the Railway Labor Act. Moussaron also objects to the definition of SkyWest Confidential Information as it is overbroad, vague, and includes information that is not actually confidential information, and encompasses publicly available information independently obtainable from sources other than SkyWest Systems. This request duplicates Request No. 6 and those objections are incorporated here. Moussaron further objects to the extent this Request seeks production of records containing the personal contact information of SkyWest pilots who voluntarily provided that information to the Organizing Committee for union organizing purposes, as production of such information would expose those individuals to potential retaliation and chill the exercise of rights protected under the Railway Labor Act, and otherwise is protected information under the Railway Labor Act.

Notwithstanding and subject to the foregoing objections, Moussaron is willing to meet and confer on this request to determine how to disclose relevant information that does not contain confidential union organization information. Further, any documents produced after a meet and confer will only be produced under a protective order with attorneys/expert eyes only designation, and with the express agreement that no union organizing information will be reviewed by, provided to, shared with, or communicated to SkyWest or any of its employees.

**REQUEST FOR PRODUCTION NO. 20**: All Documents and Communications relating to the Google Form described in Your Counterclaim as "phase 1" of the Organizing

28

Committee's data collection, including without limitation: (a) the Google Form itself, including all versions and settings; (b) all responses received through the form, including timestamps; (c) any records showing which pilots submitted contact information through the form and when; and (d) any Communications regarding the creation, distribution, or promotion of the form.

**ANSWER TO REQUEST FOR PRODUCTION NO. 20:**

Moussaron objects to Request No. 20 on the basis that the request seeks information that is not relevant, is overbroad, vague, compound, and requests confidential union organizing information that is protected by the Railway Labor Act.

Notwithstanding and subject to the foregoing objections, Moussaron is willing to meet and confer on this request to determine how to disclose relevant information that does not contain confidential union organization information. Further, any documents produced after a meet and confer will only be produced under a protective order with attorneys/expert eyes only designation, and with the express agreement that no union organizing information will be reviewed by, provided to, shared with, or communicated to SkyWest or any of its employees.

**REQUEST FOR PRODUCTION NO. 21**: All Documents and Communications relating to the pilot contact lists provided by ALPA from prior organizing drives at SkyWest (including the 2008 and 2019–2023 drives) described in Your Counterclaim as part of "phase 2," including without limitation: (a) the lists themselves in native format; (b) any transmittal records, cover emails, or communications through which the lists were provided; (c) any records showing how data from these lists was merged, deduplicated, or integrated into the 2025 database; and (d) any records reflecting the number of pilots and data fields included in each list.

**ANSWER TO REQUEST FOR PRODUCTION NO. 21:** Moussaron objects to Request No. 21 on the basis that the request seeks information that is not relevant, is overbroad,

29

vague, compound, and requests confidential union organizing information that is protected by the Railway Labor Act.

Notwithstanding and subject to the foregoing objections, Moussaron states that ALPA provided a spreadsheet that had contact information from prior drives that included 4,994 pilot records. Moussaron is willing to meet and confer on this request to determine how to disclose relevant information that does not contain confidential union organization information. Further, any documents produced after a meet and confer will only be produced under a protective order with attorneys/expert eyes only designation, and with the express agreement that no union organizing information will be reviewed by, provided to, shared with, or communicated to SkyWest or any of its employees.

**REQUEST FOR PRODUCTION NO. 22**: All Documents and Communications relating to the Data Management System ("DMS") described in Your Counterclaim as "phase 3," including without limitation: (a) all source code, configuration files, deployment records, and technical documentation for the DMS; (b) all records of pilot contact information submissions through the DMS, including submission logs and timestamps; (c) user access logs and administrative records; (d) any exports, reports, or queries generated from the DMS; and (e) any records showing who developed, hosted, or maintained the DMS.

**ANSWER TO REQUEST FOR PRODUCTION NO. 22:** Moussaron objects to Request No. 22 on the basis that the request seeks information that is not relevant, is overbroad, vague, compound, and requests confidential union organizing information that is protected by the Railway Labor Act. Moussaron further objects on the basis that this Request seeks the complete source code of a web application developed by Moussaron in his personal capacity in furtherance of protected union organizing activity under the Railway Labor Act, and is also personal

intellectual property, developed independently and without the use of any SkyWest resources. SkyWest's claims concern the method by which pilot contact information was obtained from the SWOL Directory, not the internal tools used by the Organizing Committee to manage its organizing efforts.

Notwithstanding and subject to the foregoing objections, Moussaron is willing to meet and confer on this request to determine how to disclose relevant information that does not contain confidential union organization information. Further, any documents produced after a meet and confer will only be produced under a protective order with attorneys/expert eyes only designation, and with the express agreement that no union organizing information will be reviewed by, provided to, shared with, or communicated to SkyWest or any of its employees.

**REQUEST FOR PRODUCTION NO. 23**: All Documents and Communications relating to the "phase 4" data collection described in Your Counterclaim, including without limitation: (a) all records of automated tools, scripts, or manual lookups used to obtain pilot contact information from public sources; (b) any scripts, queries, API calls, or search parameters used; (c) any records showing which pilots' contact information was obtained from these public sources versus other sources; and (d) the dates on which such public-source lookups were conducted.

**ANSWER TO REQUEST FOR PRODUCTION NO. 23:** Moussaron objects to Request No. 23 on the basis that the request seeks information that is not relevant, is overbroad, vague, compound, and requests confidential union organizing information that is protected by the Railway Labor Act.

Notwithstanding and subject to the foregoing objections, Moussaron downloaded publicly available documentation from the FAA Airmen Registry to obtain pilot contact

31

information, which contained 583,971 records. Because this information is publicly available and equally accessible to SkyWest, Moussaron will not be producing it.

**REQUEST FOR PRODUCTION NO. 24**: All Documents sufficient to show, for each SkyWest pilot whose contact information was included in the Organizing Committee's database or used to send the December 9, 2025 mass text message, the original source from which that pilot's contact information was obtained (e.g., Google Form, DMS submission, pilot-to-pilot contribution, website registration, SWOL, or other source), including any records that tag, code, categorize, or otherwise attribute a source to each pilot's contact information.

**ANSWER TO REQUEST FOR PRODUCTION NO. 24:** Moussaron objects to Request No. 24 on the basis that the request seeks information that is not relevant, is overbroad, vague, compound, and requests confidential union organizing information that is protected by the Railway Labor Act.

Subject to and without waiving these objections, Moussaron states that the DMS database does not tag or categorize the upload source location.

**REQUEST FOR PRODUCTION NO. 25**: All Communications between You and Ron Rindfleisch or any other ALPA representative or employee during the Relevant Period regarding pilot contact information, SkyWest Confidential Information, the Organizing Committee's data collection efforts, SWOL, or this litigation.

**ANSWER TO REQUEST FOR PRODUCTION NO. 25:**

Moussaron objects to Request No. 25 on the basis that it requests information that is not relevant and seeks confidential union organizing information that is protected by the Railway Labor Act. Furthermore, the definition of SkyWest Confidential Information is overbroad, vague, and includes information that is not actually confidential information, and encompasses

32

publicly available information independently obtainable from sources other than SkyWest Systems.

Subject to and without waiving these objections, Moussaron states that he did not retain the email in which he sent Mr. Rindfleisch a copy of pilot contact information – which was deleted prior to January 26, 2026. Moussaron did communicate with Mr. Rindfleisch via text message but those messages are protected under the Railway Labor Act.

**REQUEST FOR PRODUCTION NO. 26**: All Documents and Communications relating to the password-protected spreadsheet, CSV file, or other data file that You sent to Ron Rindfleisch or any other ALPA representative, including without limitation: (a) the spreadsheet or file itself in native format; (b) any transmittal emails, messages, or file-sharing links; (c) any password, encryption key, or access credentials provided; and (d) any Communications regarding the contents, intended use, or further distribution of the spreadsheet or file.

**ANSWER TO REQUEST FOR PRODUCTION NO. 26:** Moussaron objects to Request No. 26 on the basis that it requests information that is not relevant and seeks confidential union organizing information that is protected by the Railway Labor Act. Furthermore, the definition of SkyWest Confidential Information is overbroad, vague, and includes information that is not actually confidential information, and encompasses publicly available information independently obtainable from sources other than SkyWest Systems.

Subject to and without waiving these objections, Moussaron states that he did not retain the email in which he sent Mr. Rindfleisch a copy of pilot contact information – which was deleted prior to January 26, 2026.

**REQUEST FOR PRODUCTION NO. 27**: All Documents and Communications relating to the skywestalpa.org and skw.alpa.org websites, including without limitation: (a)

33

domain registration and hosting records; (b) website source code and configuration files; (c) pilot self-registration data submitted through the websites, including timestamps; (d) any contact lists or databases generated from website submissions; (e) administrative access logs and user-management records; and (f) any analytics or traffic data.

**ANSWER TO REQUEST FOR PRODUCTION NO. 27:**

Moussaron objects to Request No. 27 on the basis that it requests information that is not relevant, unduly burdensome, vague, seeks information not under his control, and seeks confidential union organizing information that is protected by the Railway Labor Act.

**REQUEST FOR PRODUCTION NO. 28:** All Documents and Communications reviewed, consulted, referenced, or relied upon in preparing Your responses to any Interrogatory or Request for Admission served on You by SkyWest in this litigation, including without limitation any nonprivileged communications with any person relating to Your discovery responses.

**ANSWER TO REQUEST FOR PRODUCTION NO. 28:** Moussaron objects to Request No. 28 on the basis that it requests information that is not relevant, unduly burdensome, vague, seeks information not under his control, and seeks confidential union organizing information that is protected by the Railway Labor Act.

Subject to and without waiving these objections, as detailed above, Moussaron is willing to Meet and Confer with regard to production of documents that need to be protected.

**REQUEST FOR PRODUCTION NO. 29:** All Documents and Communications between You and Krithivas during the period January 1, 2025 through the present, on any Coordination Platform, including without limitation any Communications regarding this litigation, SWOL Data, SkyWest, ALPA, legal representation, or preservation of evidence.

34

**ANSWER TO REQUEST FOR PRODUCTION NO. 29:** Moussaron objects to Request No. 29 on the basis that it requests information that is not relevant, unduly burdensome, vague, seeks information not under his control, and seeks confidential union organizing information that is protected by the Railway Labor Act.

Subject to and without waiving these objections, Moussaron states that text messages between him and Krithivas were previously produced (Krithivas 000001-000033). Moussaron has no other responsive documents.

DATED this 5th day of June, 2026.

**SCHOLNICK THORNE HOLLAND**

/s/ Jonathan K. Thorne
Jonathan K. Thorne
Lauren I. Scholnick
Jack Holland

*Attorneys for Defendant Moussaron*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 5th day of June, 2026, I caused a true and correct copy of the foregoing **MOUSSARON'S RESPONSES TO SKYWEST'S SECOND SET OF DISCOVERY REQUESTS** to be served via electronic mail to:

Gregory M. Saylin  (GMSaylin@hollandhart.com)
Zachary T. Burford  (ZTBurford@hollandhart.com)
Tyler S. Erickson (TSErickson@hollandhart.com)
*Attorneys for SkyWest*

Timothy D. Ducar (tducar@azlawyers.com)
Scott Uthe (suthe@azlawyers.com)
*Attorney for Vikaas Krithivas*

/s/ Jonathan K. Thorne

**VERIFICATION**

1, Daniel Moussaron, affirm under oath pursuant to the laws of the United States of America and the State of Utah, and under penalty of perjury, that having read the Answers to the foregoing MOUSSARON'S RESPONSES TO SKYWEST'S SECOND SET OF DISCOVERY REQUESTS, the Answers are true, accurate, and correct to the best of my knowledge and belief.

By:_____/s/ Daniel Moussaron_____     Date:___05-JUN-2026___

Daniel Moussaron