Jonathan K. Thorne (Utah Bar No. 12694)
Lauren I. Scholnick (Utah Bar No. 7776)
SCHOLNICK THORNE HOLLAND
40 South 600 East
Salt Lake City, Utah 84102
Telephone: (801) 359-4169
jonathan@utahjobjustice.com | lauren@utahjobjustice.com
*Attorneys for Defendant and Counterclaim Plaintiff Daniel Moussaron*

Timothy D. Ducar (13423)
Scott C. Uthe (PHV)
LAW OFFICES OF TIMOTHY D. DUCAR, PLC
9280 E. Raintree Drive, Suite 104
Scottsdale, AZ  85260
Telephone: (480) 502-2119
Facsimile: (480) 452-0900
orders@azlawyers.com
*Attorneys for Defendant Vikaas Krithivas*

---

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF UTAH
### SOUTHERN DIVISION

| | |
|---|---|
| SKYWEST AIRLINES, INC., <br><br> Plaintiff and Counterclaim Defendant <br><br> vs. <br><br> DANIEL MOUSSARON, <br><br> Defendant and Counterclaim Plaintiff, <br><br> and VIKAAS KRITHIVAS, <br><br> Defendant. | **DEFENDANTS' JOINT OPPOSITION TO PLAINTIFF'S MOTION TO ENTER PROTOCOL FOR FORENSIC SEARCH OF DEFENDANTS' DEVICES** <br><br> **ORAL ARGUMENT REQUESTED** <br><br> Civil No. 4:26-cv-00015-DN-PK <br><br> Senior District Judge David Nuffer <br> Magistrate Judge Paul Kohler |

Defendants Moussaron ("Moussaron") and Krithivas ("Krithivas") (jointly "Defendants")

jointly oppose Plaintiff's Motion to Enter Protocol for Forensic Search of Defendants' Devices

("Motion" Dkt. 63.) Defendants were SkyWest pilots seeking to organize their fellow pilots

under a labor union, the Air Line Pilots Association ("ALPA"). They used SkyWest-issued

credentials to access SkyWest's internal employee directory to obtain pilot contact information to poll their interest in organizing a union with ALPA. SkyWest sued after learning that Defendants had contacted pilots about unionizing, alleging the downloaded contact information was confidential.

SkyWest wants to search the forensic images of the Defendants' personal computers made under the Court's Preservation Order ("Order" Dkt. 43), which denied a search at that time. Since that Order, Defendants have answered interrogatories and submitted declarations identifying where the data was stored, how it was used, and to whom it was sent. Contrary to SkyWest's assertion, the Parties did not agree to the protocol or "search terms SkyWest filed." (Dkt. 63 at 8.) As discussed below, Defendants attempted to meet and confer with SkyWest on the proposed protocol, but SkyWest filed this motion rather than conceding any point, and actually submitted a materially different protocol than what it had ever provided to Defendants. The Court should deny Plaintiff's Motion or, at minimum, adopt Defendants' narrower phased protocol.

Throughout this case, Defendants have disputed SkyWest's assertions that Defendants "circumvent[ed] role-based permissions" and "hack[ed] into SkyWest systems, . . . ." (Motion pp. 3, 6; Order ¶ 2(d).) This is because even SkyWest admits SWOL returned the contact fields to Defendants' browser, denying only that did not "confer[] authorization to access, retrieve, compile, or use" those fields. (Ex. A, SkyWest Resp. to RFA No. 6.) Whether an authenticated employee's inspection of data his employer's server sent him "bypassed" anything is hotly disputed. See *Van Buren v. United States*, 593 U.S. 374, 387-390 (2021); *Moxie Pest Control (Utah), LLC v. Nielsen*, 164 F.4th 1195 (10th Cir. 2026) (recognizing that misuse of a system one is authorized to access does not violate the CFAA). And regardless of that dispute – federal

2

labor law protects Defendants actions. *Gray Flooring, 212 NLRB 668 (N.L.R.B. 1974)* ("[P]ilfering" company records for employee contact information for union organizing was protected concerted union activity.)[1]

## ARGUMENT

### I.    THE MOTION IS PROCEDURALLY IMPROPER AND PREMATURE

Because SkyWest seeks an order compelling discovery, DUCivR 37-1 restricts a motion "not [to] exceed 500 words," after certifying conferral efforts. SkyWest has not complied and filed this motion while claiming it was reviewing Defendants' edits to the protocol.

Additionally, the Parties did not spend "five months of meeting and conferring" about this protocol. (Dkt. 63 pp. 4, 8.) After the February 18th Order was entered, SkyWest first provided Defendants with its draft on June 9th, demanding a response "by the end of the week." (Ex. B - Uthe Declaration (timeline of the meet and confer, and attachments)). In a meeting on June 18th, Defendants questioned the protocol's breadth, discussed less costly alternatives, and declined to share the cost. Importantly, because SkyWest had not yet discussed the feasibility of its proposal with the neutral expert, on June 23rd, the parties met the neutral, who agreed to review it, and Defendants provided an edited protocol to SkyWest. On June 30th, SkyWest conditioned progress on Defendants placing $8,000 in escrow, Krithivas's counsel asked for "a few days" for a family funeral, and the neutral was still commenting on the Scope and Targets provisions. On July 6th, without further discussion, SkyWest filed this Motion, without finishing conciliation, a basis to deny the Motion. See *Ennis v. Alder Prot. Holdings, LLC*, No. 2:19-cv-512, ECF No. 197, at 4–5 (D. Utah May 11, 2022) (denying motion "given this lack of cooperation and how quickly the motion was filed following the meet and confer").

---

[1] *See Dkt. 34*, pgs. 8-9 for additional briefing.

Notwithstanding SkyWest's failures to comply with 37-1, the motion should be denied on the merits as detailed in Section II.

## II.    FORENSIC SEARCH IS NOT NECESSARY NOR PROPORTIONAL

A forensic computer search is a last-resort measure. Rule 34 ordinarily requires the responding party to search for and produce responsive ESI; it does not give the requesting party an automatic right to search the producing party's devices. The Tenth Circuit affirmed denial of forensic access where the requester offered only "skepticism," which is "not sufficient to warrant such a drastic discovery measure." *McCurdy Group, LLC v. Am. Biomedical Group, Inc.*, 9 F. App'x 822, 831 (10th Cir. 2001). Imaging personal computers "raises privacy and confidentiality concerns" that "cannot be fully protected ex post." *John B. v. Goetz*, 531 F.3d 448, 459–60 (6th Cir. 2008)("Civil litigation should not be approached as if information systems were crime scenes that justify forensic investigation at every opportunity to identify and preserve every detail. . . . [M]aking forensic image backups of computers is only the first step of an expensive, complex, and difficult process of data analysis that can divert litigation into side issues and satellite disputes involving the interpretation of potentially ambiguous forensic evidence.") This Court's Order embraced that caution (Order, ¶ 1(a) & n.4). Inspecting two entirely personal computers[2], including unallocated space, to recover unprotected SkyWest contact information (that has already been produced) is disproportionate and consistent with a retaliatory rather than investigative purpose. Fed. R. Civ. P. 26(b)(1). Furthermore, the alleged confidential information

---

[2] These computers contain private conversations, personal email, family and personal photographs, financial records, and similar personal files. They also contain business records including confidential and trade-secret material, and attorney client communications and attorney work product. (Ex. C – Moussaron Declaration; Ex. G – Krithivas Declaration).

4

– name, phone, and address – is not even within the definition of Personal Information under Utah State law.  UT Code § 13-44-102(4).

The proposed protocol's breadth confirms the problem.  It reaches deleted and unallocated space, email and messaging databases, cloud-sync artifacts, and litigation files, while applying generic terms such as "XHR," [3] "fetch,"[4] "View," and "userscript" that will likely return vast amounts of irrelevant information that the Parties will then have to dig through wasting time, resources, and causing undue expenses.  Indeed, searching "XHR", "fetch" and "View" will return a result for each and every website click the user has made, and any data a website loads while browsing. For example, if you load Facebook, just loading that page could trigger a 100 entries for those terms. Thus, it will result in thousands if not millions of hits. SkyWest has provided no explanation for why these generic terms are reasonably related to the information it seeks.  It then creates the content review set at the same time as the hit report and allows only five business days for privilege and privacy review.

SkyWest's cited authorities confirm the standard rather than escape it. *Ainstein AI, Inc. v. ADAC Plastics, Inc.*, U.S. Dist. LEXIS 88484 (D. Kan. 2023) – the case SkyWest says the Preservation Order was "modeled" on – imaged employer computers for preservation only, entered no search protocol, and denied imaging of personal devices as "overly broad, unduly burdensome, and unduly intrusive." Indeed, none of the decisions SkyWest cites imposed a movant-drafted search protocol over objection. Instead, each rested on party consent, involved an employer-issued device, a proven forensic predicate, or privacy protections. See *Safelite Grp.,*

---

[3] XHR stands for XMLHttpRequest which is a built-in browser Application Programming Interface (API) in JavaScript which enables a web page to update portions of a page without requiring a full page refresh.  (Source Mozilla Developer Network, https://developer.mozilla.org/en-US/docs/Web/API/XMLHttpRequest).

[4] Fetch API provides an interface for fetching resources and is a more powerful and flexible replacement for XHR. (Source Mozilla Developer Network, https://developer.mozilla.org/en-US/docs/Web/API/Fetch_API).

*Inc. v. Lockridge*, 2023 U.S. Dist. LEXIS 128789 at *6-7 (S.D. Ohio 2023)("limiting the scope of discovery is appropriate when compliance 'would prove *unduly* burdensome" and based on party resources).

Defendants have already disclosed the information SkyWest says it needs. Moussaron detailed his access to SWOL using his SkyWest credentials and organized the information obtained into a database on a server he alone controlled. (Ex. D, Moussaron Resp. to Interrog. Nos. 7–8.) He produced the mass text sent to pilots and a spreadsheet of the names and phone numbers used in that campaign. The data (contact info and pilots' responses to union organizing queries) was sent only to one ALPA representative, in an encrypted, password-protected file (Ex. E, Moussaron Resp. to RFP No. 26). Moussaron is also producing the DMS intake source code – the mechanics SkyWest claims it needs, though it contains no code that touched SWOL. Moussaron only withholds the union supporters' identities and sympathies, as he plausibly fears that would expose those employees to retaliation. This is a valid reason for refusing to provide it under both the Railway Labor Act ("RLA") and Associational Privilege, discussed below.

III.    **ANY COURT-ORDERED PROTOCOL SHOULD DENY SKYWEST'S REQUESTS AS TO THE FIVE DISPUTED TERMS**

Though Defendants oppose any forensic examination, to avoid costly briefing, they returned a redline accepting SkyWest's framework fourteen days after receiving it. (Ex. F – Defendants Protocol Redline.) But in a switcheroo, SkyWest ignored that input and filed a different protocol instead. Both SkyWest's original proposal and Defendants' revision contained a dedicated section protecting "Union-Organizing Communications", which has been omitted from the filed version. It also guts the parties' "Phased, Minimization-Focused Methodology" and its refinement step, includes SkyWest's in-house counsel Emerson within "Attorneys' Eyes Only" definition, and shifts half the neutral's cost onto Defendants.  If a protocol is entered – this

Court must weigh and protect each party's interest. For SkyWest – contact  information; For Defendants – private/personal/business information on privately owned computers and union organizing.

As detailed below, if the Court determines a protocol should be entered, differences between the Parties proposed protocols contain technical jargon that would benefit from a conference with the Court, the Parties, and the neutral expert to discern/explain the differences.

**A. Union-organizing communications**. While SkyWest asserts there is "no recognized 'union-organizing privilege,'" (Motion p. 6), the RLA prohibits a carrier from interfering "in any way" with employees organizing a union. While SkyWest may have a need to know how contact information was obtained from SWOL, using discovery to identify organizers, callers, learn employee responses, and lift organizing communications during a live campaign is itself interference. Indeed, the NLRB in adjudicating its parallel protection held that an employer's discovery for the names of union members violated NLRA § 8(a)(1). *Dilling Mech. Contractors, Inc.*, 357 NLRB No. 56 (2011). The Tenth Circuit also denied discovery that burdened First Amendment associational rights, and Rule 26(c)(1)(G)(requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way) independently authorizes protecting this organizing information. *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 462 (1958); *Grandbouche v. Clancy*, 825 F.2d 1463, 1465–67 (10th Cir. 1987)(privilege "may be applicable in the context of discovery orders, even if all of the litigants are private entities"). On a prima facie showing of infringement, the requester must show the information is "highly relevant," "carefully tailored to avoid unnecessary interference with protected activities," and otherwise unavailable. *Perry v.*

*Schwarzenegger*, 591 F.3d 1147, 1160–61 (9th Cir. 2010). That is not the case here, and SkyWest has not made such a showing.

For example, SkyWest's proposed protocol (Dkt. 63-1, Exhibit A) directs the neutral to search two pilots' computers for an ALPA representative's name and email, the union's domain, and communication among pilots and union organizers about their sympathies towards unionizing. (Dkt. 63, Ex. A, §§ G–H). As Defendants have asserted, SkyWest's termination of Moussaron, and Krithivas's constructive discharge from American Airlines (based on SkyWest reaching out to AA about the lawsuit) was in retaliation for union organizing, and they have grave concerns about SkyWest being permitted to discover who communicated with organizers in support of the union. (Ex. G - Krithivas Declaration). This is the very core of what *NAACP* protects, preventing anything that might dissuade current pilots from exercising their will under the RLA. SkyWest has already been enjoined for unlawfully interfering with ALPA organizing, *SkyWest Pilots ALPA Org. Comm. v. SkyWest Airlines, Inc.*, No. C-07-2688 CRB (N.D. Cal. 2007), and is currently litigating claims that it terminated two flight-attendant organizers. See, *Ass'n of Flight Attendants v. SkyWest, Inc.*, No. 2:23-cv-00723-DBP (D. Utah)). Here, SkyWest has inflicted irreparable and incalculable damage to Defendants' reputations and careers, which strongly supports protecting union organizing information.

Next, SkyWest seeks every communication that "contains, reflects, incorporates, or [is] derived from" SkyWest data. Because the alleged misuse was a communication campaign, every message "derives from" the data and, thus, would fall within SkyWest's definition. Defendants' revisions limits production to the datasets, exports, and transmission records – what was taken, modified, and sent – while excluding the identities of organizers, and the substance of their union organizing conversations with pilots and poll responses. SkyWest's own authority supports

8

Defendants' limitations. *NetJets Aviation, Inc. v. NetJets Ass'n of Shared Aircraft Pilots*, 2017 WL 3484101 (S.D. Ohio 2017) (ordered production with union-member information redacted). The campaign supporters' identities have nothing to do with SkyWest's claim of Defendants alleged extraction of data – and using employer contact information for union organizing is protected under labor law. *Gray Flooring, 212 NLRB 668 (N.L.R.B. 1974)*. In this District Court, *Ass'n of Flight Attendants-CWA* protected non-public union supporters' identities and authorization-card data. (Ex. H - No. 2:23-cv-00723, ECF No. 157 (D. Utah Dec. 18, 2025)).

**B. Refinement phase needed.** SkyWest's proposed protocol § 6(a) requires hit reports "sufficient to allow refinement of search parameters," yet its brief insists no refinement occur because it requires the neutral to simultaneously create the full content review set. (Dkt. 63, pgs. 7–8.) The hit report therefore refines nothing. In other words, SkyWest is attempting to eliminate a time-consuming step in an effort to deny Defendants an opportunity to review the hit list and confer on what is likely to turn up complaint-related artifacts. This was supposed to happen BEFORE the review set is generated.  If the Court orders a protocol, it should require a Phase One report limited to hit counts, file paths, file types, custodians, and timestamps; a short meet-and-confer period to eliminate false positives and narrow generic terms; and staging only after agreement or a short form ruling – this is the scope of the original proposed protocol that SkyWest sent Defendants.

**C. In-house counsel should not be privy to union organizing information.** SkyWest identifies its General Counsel Hansen and VP Legal Emerson as driving SkyWest's pre-litigation strategy including the investigation into the SWOL access, the company wide "hacking" notice, and the decision to sue. SkyWest Privilege Log (served July 8, 2026). Krithivas also asserts that Hansen retaliated against Krithivas by contacting his new employer to identify him by name,

9

which led to his constructive discharge. (Ex. G). Their prior involvement justifies exclusion of these officers from knowing the identities of union organizers and supporters, which is why they should not be in the AEO category should the Court order any disclosure of union organizing information. Defendants proposed that while Emerson and Hansen may review AEO material generally, they cannot see organizing materials. Specifically, they cannot examine the identities of participating and supporting pilots, the membership and interest-poll data, and organizing communications, which should be restricted only to outside counsel and experts. Determining access should relate to counsel's "activities, association, and relationship with a party."[5] *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 (Fed. Cir. 1984); accord *Modern Font Applications LLC v. Alaska Airlines*, 2021 WL 364189, at *5 (D. Utah Feb 3, 2021)(denying in-house counsel access).

**D. The definition, review period, and credentials provision must be narrowed.**

SkyWest's "SkyWest-Derived Data" is defined "without limitation … including without limitation any … derivatives, exports, or backups," from "SWOL or other SkyWest systems." Proposed Protocol § 2(d). A definition without limitation is none, and the Complaint alleges only SWOL scraping, not "other systems." Worse, the images were taken in February 2026 – after suit began – and SkyWest's proposed protocol (Dkt. 63-1, Exhibit A) § E targets a path inside Moussaron's litigation files ("Documents/SkyWest/Litigation/…"). Any protocol must exclude litigation folders.  Next, allowing five business days to privilege-screen an unbounded review set before exporting everything two days later, § 6(b)–(c), is structurally inadequate. At minimum twenty-one days, or a volume-based period should be used for privilege, privacy, responsiveness and associational review.  And § 10's demand that Defendants surrender passwords and

---

[5] Emerson was involved in the 2008 ALPA case.

10

FileVault keys is beyond the Preservation Order – providing credentials to the imaged data is all that is necessary. (¶¶ 11, 14).

**E. SkyWest should bear the costs.** SkyWest should pay because it seeks extraordinary discovery from personal devices and opposes the refinement that would reduce expense. *See Ainstein* U.S. Dist. LEXIS 88484 (D. Kan. 2023) (requesting plaintiff required to pay); *John B.*, 531 F.3d at 460; *Wynmoor*, 280 F.R.D. at 688 (party seeking a forensic examination ordinarily bears the neutral's costs). Costs may be reallocated later upon a showing that a party caused unnecessary expense. The Court should also reject SkyWest's demand for $8,000 in escrow. (Ex. B).

## CONCLUSION

The Motion should be denied. Alternatively, the Court should adopt Defendants' June 23 protocol and require: (1) a non-content Phase One hit report and meaningful refinement; (2) outside-counsel-only treatment of supporter identities and organizing content; (3) a definition limited to SWOL employee-directory data and identifiable derivatives; (4) a reasonable review period; (5) file-specific procedures for encrypted material; and (6) SkyWest's payment of the neutral's costs.

DATED this 17th day of July, 2026.

**SCHOLNICK THORNE HOLLAND**
By /s/ Jonathan K. Thorne
Jonathan K. Thorne
Lauren I. Scholnick
John Holland
Attorneys for Defendant and Counterclaim Plaintiff
Daniel Moussaron

**LAW OFFICES OF TIMOTHY D. DUCAR, PLC**
By /s/ Scott C. Uthe (signed with permission)
Scott C. Uthe
Timothy D. Ducar
Attorneys for Defendant Vikaas Krithivas

## CERTIFICATE OF COMPLIANCE

Pursuant to DUCivR 7-1(a)(4), I certify that the foregoing memorandum complies with the word limit of DUCivR 7-1 because it contains approximately 2,909 words, excluding the caption, face sheet, table of contents, table of authorities, table of exhibits, signature block, and this certificate, as counted by the word-count function of the word-processing program used to prepare it.

## CERTIFICATE OF SERVICE

I certify that on the 17th day of July, 2026, I electronically transmitted the attached **DEFENDANTS' JOINT OPPOSITION TO PLAINTIFF'S MOTION TO ENTER PROTOCOL FOR FORENSIC SEARCH OF DEFENDANTS' DEVICES** to the Clerk's Office using the CM/ECF system for filing, and for transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Gregory M. Saylin, GMSaylin@hollandhart.com
Zachary T. Burford, ZTBurford@hollandhart.com
Tyler S. Erikson, TSErickson@hollandhart.com
Tyson C. Horrocks, TCHorrocks@hollandhart.com
Attorneys for Plaintiff and Counterclaim Defendant SkyWest Airlines, Inc.


Scott Uthe, suthe@azlawyers.com
Tim Ducar, tducar@azlawyers.com
Attorneys for Defendant Vikaas Krithivas


By: /s/J. Thorne

13