Gregory M. Saylin, #9648
Tyson C. Horrocks, #12557
Zachary T. Burford, #19771
HOLLAND & HART LLP
222 South Main Street, Suite 2200
Salt Lake City, UT 84101-2194
Telephone: 801.799.5800
GMSaylin@hollandhart.com
TCHorrocks@hollandhart.com
ZTBurford@hollandhart.com

*Attorneys for Plaintiff and Counterclaim Defendant SkyWest Airlines, Inc.*

---

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH – SOUTHERN DIVISION**

| | |
|---|---|
| SKYWEST AIRLINES, INC., <br><br>     Plaintiff and Counterclaim Defendant, <br><br> vs. <br><br> DANIEL MOUSSARON, <br><br>     Defendant and Counterclaim Plaintiff, <br><br> and VIKAAS KRITHIVAS, <br><br>     Defendant. | **PLAINTIFF'S OPPOSITION TO DEFENDANT VIKAAS KRITHIVAS'S MOTION TO AMEND SCHEDULING ORDER AND FOR LEAVE TO FILE COUNTERCLAIM AND JOIN DALE HANSEN** <br><br> Civil No. 4:26-cv-00015-DN-PK <br><br> Senior District Judge David Nuffer <br> Magistrate Judge Paul Kohler |

Plaintiff SkyWest Airlines, Inc. ("SkyWest"), by and through counsel, submits this opposition to Defendant Vikaas Krithivas's Motion to Amend Scheduling Order and for Leave to File Counterclaim and Join Dale Hansen ("Motion").

## INTRODUCTION

This case is about data theft. Between August and December 2025, Krithivas and his co-defendant used their SkyWest credentials, browser developer tools, and automated scripts to reach into SkyWest's secure, login-protected employee directory and extract the names, home addresses, and personal cell phone numbers of more than 5,000 SkyWest pilots. Krithivas admits he did it; he disputes only whether the law should label his admitted access as "unauthorized." He now seeks leave—nearly two months after the deadline—to recast this data-theft case as a defamation and retaliation case built on SkyWest's truthful description of his conduct.

The Proposed Counterclaim rests on just two communications: (1) SkyWest's January 26, 2026 companywide message to its own pilot workforce describing that conduct ("January 26 Communication"); and (2) SkyWest's General Counsel Dale Hansen's February 2, 2026 email forwarding the publicly filed Complaint to a single individual at American Airlines with the notation that SkyWest "just wanted to make [American Airlines] aware of the initiation of litigation against Mr. Krithivas" ("Hansen Email"). The Proposed Counterclaim identifies no other communication, act, or statement by either SkyWest or Hansen.

The Motion should be denied as untimely. The Scheduling Order set May 15, 2026, as the deadline to amend pleadings and join parties. Dkt. No. 55, Scheduling Order. Krithivas received the January 26 Communication on January 28, 2026, and knew of the Complaint and his constructive discharge well before the deadline expired. Yet he waited until July 10, 2026, to seek

2

leave, and offers no explanation for the delay. That failure defeats good cause under Rule 16(b)(4) and independently justifies denial under Rule 15(a)(2).

SkyWest also summarizes below, in abbreviated form, why the Proposed Counterclaim would be futile. SkyWest is mindful of the Court's July 27, 2026 Order stating that SkyWest's futility arguments are better addressed in a Rule 12(b) motion. Dkt. No. 88. SkyWest therefore does not brief those arguments in full but summarizes them because it respectfully submits that addressing these defects at the outset is more practicable than litigating a counterclaim and adding a new party when the basis for those amendments could not survive dismissal. Additionally, SkyWest summarizes these arguments for preservation purposes, and it expressly reserves them for a motion under Rule 12(b)(6) or Rule 12(c) should leave be granted.

## STATEMENT OF FACTS

1. SkyWest's Complaint arises from Defendants' access to and extraction of confidential pilot contact information from SkyWest Online ("SWOL"), SkyWest's secure, login-protected employee intranet portal. Dkt. No. 1, Complaint ("Compl.").

2. Krithivas signed a non-disclosure agreement with SkyWest and admits that, on September 3, 2025, he logged into SWOL using his employee ID, password, and multi-factor authentication and accessed directory data—including employee numbers, names, addresses, and phone numbers—for approximately 5,000 pilots; that the data was transmitted to a remote server at Moussaron's direction for the purpose of contacting pilots about union representation; and that he installed the "Tampermonkey" browser extension, which automatically advanced through the SWOL directory and transmitted each pilot's record to that server. Dkt. No. 48, Krithivas's Ans.

¶¶ 15–17 ("Krithivas' Ans."); Dkt. No. 33-2, Decl. of Krithivas ¶¶ 1–4, 8; Ex. A, Krithivas's Resps. to Pl.'s Expedited Disc. Reqs., Interrog. Nos. 2–3, 5.

3.    Krithivas disputes only the legal characterization of that access as "unauthorized" or "in excess of authorization" under the CFAA and UCADRA; he does not dispute that he accessed SWOL and obtained the pilot contact information. Krithivas' Ans., ¶¶ 15–17, 37–39. Moussaron likewise admits that "the Defendants used [Tampermonkey] to access and save pilot contact information." Dkt. No. 47, Moussaron's Ans. ¶¶ 23–30, 33.

4.    On or about January 26, 2026—four days before it filed the Complaint and in response to complaints from pilots regarding their data having been stolen—SkyWest sent a companywide message to its pilot workforce, titled "A Message to Pilots from Chip," stating that "two now-former pilots" had "gained unauthorized access to and downloaded pilot contact information that was not accessible to line pilots or any employee through normal processes, even after completing multi-factor SkyWest Online login," that retrieving the information "took extensive effort and manipulation," and that the information "consisted of names, addresses, and phone numbers." Dkt. No. 68-3, Proposed Countercl., Ex. 2, SkyWest_000003–004 ("January 26 Communication").[1] **It did not mention Moussaron or Krithivas by name**. *Id.*

5.    The January 26 Communication was a first-person message from SkyWest's Chief Executive Officer, signed "Chip," in which he stated his view that the two pilots had "trampled on" SkyWest's values, that their conduct was an "appalling reminder" of the lengths certain

---

[1] On a motion brought pursuant to Rule 12(b)(6), the Court may consider documents attached to a complaint without converting the motion to one for summary judgment under Rule 56. *See Pace v. Swerdlow*, 519 F.3d 1067, 1072 (10th Cir. 2008).

organizations will go to reach SkyWest's people, and that he was "shocked and disgusted by this unethical behavior and violation of trust." *Id.*

6.　　Moussaron forwarded a copy of the January 26 Communication to Krithivas on January 28, 2026. Krithivas's own contemporaneous text messages confirm that he received and discussed it that same day. Ex. B, Krithivas_000028–33.

7.　　SkyWest publicly filed its Complaint on January 30, 2026, and Moussaron's Answer and Counterclaim, filed February 27, 2026, addressed the same January 26 Communication and the conduct it described. Compl.; Dkt. No. 47, Moussaron's Ans.

8.　　On February 2, 2026, Dale Hansen, SkyWest's General Counsel, sent an email to an attorney at American Airlines—an established SkyWest commercial partner under whose agreements SkyWest operates flights—attaching the Complaint and stating that it had been "filed against a former SkyWest pilot (Vikaas Krithivas) who has since transitioned to AA," and that SkyWest "just wanted to make [American Airlines] aware of the initiation of litigation against Mr. Krithivas." Dkt. No. 68-2, Ex. B, SkyWest_000475 ("Hansen Email"); Ex. A-1 to Dkt. No. 33, at 3.

9.　　Krithivas admits that, after leaving SkyWest, he "began employment with American Airlines" and had "transitioned to AA" by the time of the Hansen Email, and he alleges he was constructively discharged from American Airlines on April 10, 2026. Dkt. No. 68-3, Ex. C to Mot., Proposed Countercl. ("Proposed Countercl."), ¶¶ 3, 6–7, 90–92.

10.　　On April 6, 2026, the Court entered the operative Scheduling Order, which set May 15, 2026, as the deadline both to amend the pleadings and to join additional parties. Dkt. No. 55,

Scheduling Order. SkyWest produced the Hansen Email on June 11, 2026, and Krithivas filed this Motion on July 10, 2026. Motion, ¶ 7; Dkt. No. 68-1, Uthe Decl., ¶¶ 2–3.

## LEGAL STANDARD

A party seeking to amend a pleading after the deadline set in a scheduling order must satisfy both Rule 16(b)(4)'s "good cause" standard and Rule 15(a)'s standard for leave to amend. *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014). "Rule 16(b)(4) is arguably more stringent than Rule 15," *Husky Ventures, Inc. v. B55 Invs., Ltd.*, 911 F.3d 1000, 1019–20 (10th Cir. 2018), and "requires the movant to show the scheduling deadlines cannot be met despite the movant's diligent efforts." *Tesone v. Empire Mktg. Strategies*, 942 F.3d 979, 988 (10th Cir. 2019). Only once the "good cause" standard is shown does the Court turn to Rule 15. *See Gallacher v. Falenla.com*, 2020 U.S. Dist. LEXIS 151703, at *4 (D. Utah Aug. 20, 2020).

Under Rule 15, "'untimeliness alone' is sufficient to deny leave to amend where the moving party has 'no adequate explanation for the delay.'" *Valley Elec. Consol., Inc. v. TFG-Ohio, LP*, 2017 U.S. Dist. LEXIS 80402, at *5 (D. Utah May 24, 2017) (quoting *Frank v. U.S. West, Inc.,* 3 F.3d 1357, 1365–66 (10th Cir. 1993)). The Tenth Circuit "focuses primarily on the reasons for the delay," and "unexplained delay alone justifies" denial—particularly "where the moving party was aware of the facts on which the amendment was based for some time prior to the filing of the motion." *Minter v. Prime Equip. Co*., 451 F.3d 1196, 1206 (10th Cir. 2006) (citations omitted).

It is also well settled that leave to amend is not warranted when the filing of an amended complaint would be futile, *Frank*, 3 F.3d at 1365, and a proposed amendment is futile if, as

6

amended, it would be subject to dismissal. *Bradley v. Val-Mejias*, 379 F.3d 892, 901 (10th Cir. 2004). Although the Court accepts well-pleaded factual allegations as true, it is not required to accept legal conclusions, conclusory allegations, or formulaic recitations of the elements of a cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim is plausible only when the facts alleged permit the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

## ARGUMENT

To justify an amendment, Krithivas must show (1) that he had "good cause" for failing to diligently adhere to the deadlines set by this Court, *see* Fed. R. Civ. P. 16(b)(4), and (2) that he can satisfy the Rule 15 standard. *See* Fed. R. Civ. P. 15(a). Krithivas cannot.

### I.      Good Cause Does Not Exist to Amend the Scheduling Order.

Rule 16 provides that a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). That standard is "more stringent" than the standard for amending pleadings under Rule 15. *Baker v. Progressive Direct Ins. Co.*, 2023 U.S. Dist. LEXIS 198141, at *4 n.10 (D. Utah Nov. 3, 2023) (quoting *Bylin v. Billings*, 568 F.3d 1224, 1231 (10th Cir. 2009)).[2] A party "cannot establish good cause if [it] knew of the underlying conduct but simply failed to raise [its] claims." *Husky Ventures*, 911 F.3d at 1020 (alterations in original). Krithivas must show that the May 15 deadline could not "be met despite [his] diligent efforts." *Tesone*, 942 F.3d at 988 (citation omitted).

---

[2]"[G]ood cause and excusable neglect are interrelated" though "[g]ood cause requires a greater showing than excusable neglect." *Gallacher*, 2020 U.S. Dist. LEXIS 151703, at *3.

Here, Krithivas received the January 26 Communication on January 28, 2026 (Ex. B, Krithivas_000028–33), and Moussaron's February 27, 2026 Counterclaim put the same message directly at issue in this action. Dkt. No. 47. Krithivas also knew of his own alleged constructive discharge by April 10, 2026. Proposed Countercl. ¶ 91. Because Krithivas knew of this conduct well before the May 15 deadline and offers no explanation for his delay, leave must be denied. *Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1248 (10th Cir. 2015) (quoting *Gorsuch*, 771 F.3d at 1240); *Minter*, 451 F.3d at 1205 n.4.

## II.     The Proposed Counterclaim Is Improper Under Rule 15(a)(2).

While leave to amend is freely given when "justice so requires," leave is properly denied where the amendment is untimely or futile. *Bylin*, 568 F.3d at 1229.

### A.     The Motion Is Untimely.

For the same reasons discussed in Section I, *supra*, the Motion is untimely under Rule 15, which likewise permits denial of leave to amend where the moving party has "no adequate explanation for the delay." *Valley Elec.*, 2017 U.S. Dist. LEXIS 80402, at *5 (quoting *Frank*, 3 F.3d at 1365–66). Krithivas knew the underlying conduct well before the May 15 deadline, yet waited until July 10 to seek leave, offering no explanation. Untimeliness alone therefore warrants denial. *Id*.

### B.     The Amendment Would Also Be Futile.

First, neither publication is capable of a defamatory meaning, which is a threshold question of law for the Court. *Pipkin v. Acumen*, 2020 UT App 111, ¶ 16; *Jacob v. Bezzant*, 2009 UT 37, ¶ 18, 212 P.3d 535. The Hansen Email did nothing more than attach SkyWest's publicly filed Complaint and report that litigation had been initiated. A bare statement that a lawsuit has been

8

filed or will be filed is not actionable. *Spencer v. Glover*, 2017 UT App 69, ¶¶ 28–29; *Rainfocus, Inc. v. Cvent, Inc.*, 2023 UT App 32, ¶ 18 n.8. Additionally, much of the language in the January 26 Communication—that the two pilots "trampled on" SkyWest's values and that SkyWest was "shocked and disgusted"—is nonverifiable opinion delivered in a first-person message from SkyWest's CEO to his own workforce. *West v. Thomson Newspapers*, 872 P.2d 999, 1008, 1018, 1020 (Utah 1994); *Rainfocus*, 2023 UT App 32, ¶ 23. Moreover, the January 26 Communication does not even identify Krithivas by name.

Second, both publications are substantially true, which is an absolute defense that may be resolved on the pleadings where the underlying facts as to the "gist or sting" of the statements are undisputed. *Rainfocus*, 2023 UT App 32, ¶ 10; *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1137 (10th Cir. 2014); *Vowell v. Gannett Satellite Info. Network, LLC*, 2017 U.S. Dist. LEXIS 17846, at *3–6 (D. Utah Feb. 6, 2017). Every assertion in the Hansen Email is true: SkyWest filed the Complaint, Krithivas is a former SkyWest pilot, he transitioned to American Airlines, and litigation was initiated against him. The January 26 Communication describes precisely what Krithivas admits doing. Krithivas' Ans. ¶¶ 15–17; Ex. A, Interrog. No. 5. He cannot establish falsity where he concedes the substance is accurate. *West*, 872 P.2d at 1007.

Third, the Hansen Email is protected by Utah's absolute-judicial-proceeding privilege, which immunizes statements made in the course of a judicial proceeding that reference its subject matter and are made by a litigant or counsel. *Rainfocus*, 2023 UT App 32, ¶ 14 (quoting *Pratt v. Nelson*, 2007 UT 41, ¶¶ 27–28). Hansen was SkyWest's General Counsel, he wrote three days after the Complaint was filed, and he forwarded that pleading to a single recipient without embellishment. Dkt. No. 68-2, Hansen Email. The communication is thus absolutely privileged.

And the same privilege independently bars any claim premised on the allegations of the Complaint itself. *Pratt*, 2007 UT 41, ¶ 28.

Fourth, both publications are independently protected by Utah's conditional common-interest privilege, which protects an employer's communications to employees and other interested parties concerning an employee's conduct and discharge. *Brehany v. Nordstrom, Inc.*, 812 P.2d 49, 58–59 (Utah 1991); *Nelson v. Target Corp.*, 2014 UT App 205, ¶ 23; *Ferguson v. Williams & Hunt, Inc.*, 2009 UT 49, ¶ 27, 221 P.3d 205. American Airlines, as Krithivas's employer and SkyWest's commercial partner, had a legitimate interest in learning that a pilot on its payroll was the defendant in computer-misuse litigation, and the January 26 Communication was distributed only to SkyWest's own workforce, whose data was taken. Proposed Countercl. ¶ 49.

Fifth, the remaining counts fail with the defamation counts. Defamation per se is not a separate cause of action with a relaxed pleading standard but an evidentiary shortcut on damages available only for narrow historical categories, and no challenged statement accuses Krithivas of a crime, a loathsome disease, unchaste behavior, or conduct incongruous with a lawful business, trade, profession, or office. *Jacob*, 2009 UT 37, ¶ 26. False light requires the same falsity showing as defamation. *SIRQ, Inc. v. Layton Cos.*, 2016 UT 30, ¶ 50. Tortious interference rests solely on the alleged defamation and collapses with it. *TLS Grp., S.A. v. NuCloud Global, Inc.*, 2016 U.S. Dist. LEXIS 51751, at *22 (D. Utah Apr. 18, 2016). And abuse of process requires a willful act in the use of process, not merely an ulterior motive; truthfully advising a business partner that litigation exists is not such an act. *Anderson Dev. Co. v. Tobias*, 2005 UT 36, ¶¶ 59, 65; *Woos LLC v. Mustafa*, 2026 U.S. Dist. LEXIS 19251, at *12–13 (D. Utah Jan. 30, 2026).

Sixth, the Proposed Counterclaim is conclusory on its own terms. It pleads no facts connecting either publication to Krithivas's claimed constructive discharge: no meeting at which the Hansen Email was discussed, no warning or reprimand tied to it, no change in his duties, pay, or assignments tied to it, and no statement by anyone at American Airlines referencing it or this litigation. In short, the Proposed Counterclaim contains no facts about: (a) what acts American Airlines took to make his working conditions so intolerable that he was compelled to resign; or (b) how the Hansen Email, sent two months before his resignation, created those circumstances.[3] Without those allegations, his Proposed Counterclaim fails. *See Woodend v. Lenape Reg'l High Sch. Dist.*, 535 F. App'x 164, 167–68 (3d Cir. 2013) (holding tortious interference with contract claim failed where "the loss was caused by Woodend's voluntary resignation."); *Geller v. Von Hagens*, 2010 U.S. Dist. LEXIS 129561, at *4 (M.D. Fla. Nov. 23, 2010) ("Defendants' point is well-taken that, having presented that his resignation was voluntary, Geller cannot now be allowed to maintain a cause of action for tortious interference with his contract."). Additionally, its damages and punitive-damages allegations are labels rather than facts. Proposed Countercl. ¶¶ 11, 60–65, 90–97, 191, 196. Such "threadbare recitals of the elements" and "mere conclusory statements" cannot survive dismissal. *Audubon of Kan., Inc. v. United States DOI*, 67 F.4th 1093, 1108 (10th Cir. 2023).

---

[3] Constructive discharge occurs when "the working conditions, when viewed objectively, [are] so difficult that a reasonable person would feel compelled to resign." *Potts v. Davis Cnty.*, 551 F.3d 1188, 1194 (10th Cir. 2009).

**III.    The Requested Joinder of Hansen Is Similarly Improper.**

Krithivas's effort to join Hansen rests entirely on the single email Hansen sent to one attorney at American Airlines. Dkt. No. 68-2, Hansen Email. Joinder is untimely for the same reasons the proposed amendment is. Section II.A, *supra*. Moreover, every count asserted against Hansen personally—defamation, defamation per se, false light, tortious interference, and abuse of process—is built exclusively on that email. *See* Proposed Countercl. ¶¶ 70–89, 104–197. But Hansen merely attached the publicly filed Complaint and stated that litigation had been initiated against Krithivas. He did not characterize Krithivas's conduct as criminal, unethical, or improper, and he added no fact beyond what the pleading already said. Adding Hansen would needlessly expose an individual to discovery and trial on claims that cannot succeed. Leave to join Hansen should therefore be denied.

**<u>CONCLUSION</u>**

For the foregoing reasons, SkyWest respectfully requests that the Court deny the Motion in its entirety.

DATED this 27th day of July, 2026.

HOLLAND & HART LLP


*/s/ Tyson C. Horrocks*
Gregory M. Saylin
Tyson C. Horrocks
Zachary T. Burford
*Attorneys for Plaintiff and Counterclaim Defendant*
*SkyWest Airlines, Inc.*

## CERTIFICATE OF COMPLIANCE WITH WORD LIMIT

I, Zach Burford, certify that this Plaintiff's Opposition to Defendant Vikaas Krithivas's Motion to Amend Scheduling Order and for Leave to File Counterclaim and Join Dale Hansen contains 3,073 words and complies with DUCivR 7-1(a)(4).

/s/ Zachary Burford
Zachary Burford

38521656