Timothy D. Ducar (13423)
Scott C. Uthe (PHV)
LAW OFFICES OF TIMOTHY D. DUCAR, PLC
9280 E. Raintree Drive, Suite 104
Scottsdale, AZ  85260
Telephone: (480) 502-2119
Facsimile: (480) 452-0900
orders@azlawyers.com
*Attorneys for Defendant Vikaas Krithivas*

---

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF UTAH – SOUTHERN DIVISION

| | |
|---|---|
| SKYWEST AIRLINES, INC., <br><br>     Plaintiff and Counterclaim Defendant, <br><br> vs. <br><br> DANIEL MOUSSARON, <br><br>     Defendant and Counterclaim Plaintiff, <br><br> and VIKAAS KRITHIVAS, <br><br>     Defendant. | **DEFENDANT VIKAAS KRITHIVAS'S REPLY IN SUPPORT OF MOTION TO AMEND SCHEDULING ORDER AND FOR LEAVE TO FILE COUNTERCLAIM AND JOIN DALE HANSEN** <br><br> Civil No. 4:26-cv-00015-DN-PK <br><br> Senior District Judge David Nuffer <br> Magistrate Judge Paul Kohler |

Defendant Vikaas Krithivas ("Krithivas") submits this Reply in support of his Motion to Amend Scheduling Order and for Leave to File Counterclaim and Join Dale Hansen ("Motion"). Dkt. 68.

**INTRODUCTION**

SkyWest's Opposition collapses three distinct events into one: Krithivas's receipt of SkyWest's January 26, 2026 companywide publication; his later discovery that SkyWest's accusations had caused concrete harm to his employment and professional reputation; and his

still-later discovery that SkyWest General Counsel Dale Hansen personally transmitted the Complaint to Krithivas's current employer.

The chronology establishes diligence. On April 3, 2026, Krithivas stipulated to the proposed case schedule. Dkt. 54. At that time, he remained employed by American Airlines and had suffered no adverse employment action attributable to SkyWest's January 26 publication or Complaint. The Court entered the Scheduling Order on April 6. Dkt. 55. That same day—three days after Krithivas agreed to the proposed schedule—American placed him on administrative leave and scheduled an April 10 hearing concerning his continued employment. Dkt. 77-7 ¶ 7.

On April 9, Krithivas was informed that American was very likely to terminate him at the April 10 hearing, that SkyWest's Complaint was the only reason given, and that American did not intend to ask him any questions. *Id.* ¶ 11. To protect his professional pilot career and avoid an FAA Pilot Record entry reflecting termination by American, Krithivas resigned before the hearing. *Id.* ¶¶ 12–14.

Even then, Krithivas did not know that Hansen had affirmatively sent the Complaint to an attorney at American. *Id.* ¶ 11. SkyWest withheld that fact until June 11, when it produced Hansen's February 2 email. Dkt. 68-2. Six days later, Krithivas sought SkyWest's agreement to amend. When SkyWest ultimately refused consent following the parties' meet-and-confer process, Krithivas filed the Motion that same day.

SkyWest's assertion that Krithivas "offers no explanation" for the timing of the Motion is therefore contradicted by the Motion itself. Dkt. 68 ¶¶ 14–19; Dkt. 68-1 ¶¶ 2–10. SkyWest may disagree that the explanation establishes good cause, but it cannot accurately characterize the record as containing no explanation.

SkyWest's remaining arguments ask the Court to decide disputed issues of truth, privilege, purpose, identification, malice, and causation through an abbreviated futility presentation, even though the Court has already stated that those issues are better addressed through a Rule 12 motion. Dkt. 88. The Motion should be granted.

**ARGUMENT**

**I. KRITHIVAS ESTABLISHED GOOD CAUSE UNDER RULE 16(b)(4).**

Rule 16 focuses on diligence. Good cause exists when the scheduling deadline could not reasonably be met despite diligent efforts, including where a party learns material information through discovery after the deadline. *Gorsuch, Ltd., B.C. v. Wells Fargo National Bank Ass'n*, 771 F.3d 1230, 1240–41 (10th Cir. 2014).

**A. Krithivas agreed to the schedule before suffering any known employment injury.**

SkyWest emphasizes that Krithivas knew of the January 26 Communication before the May 15 amendment deadline. But knowledge that a statement was published is not equivalent to knowledge that it caused a concrete employment injury or that SkyWest later targeted Krithivas's current employer.

Krithivas stipulated to the proposed schedule on April 3. Dkt. 54. No employment action had then occurred. American placed him on administrative leave on April 6, informed him that the matter related to his prior work history rather than any disciplinary or performance concern at American, and scheduled an April 10 hearing concerning his employment. Dkt. 77-7 ¶ 7.

The injury therefore developed after Krithivas agreed to the schedule. On April 9, his APA representatives informed him that American was very likely to terminate him, that SkyWest's Complaint was the only reason given, and that American did not intend to ask him

questions at the hearing. *Id.* ¶¶ 8–11. He did not want to resign and intended to have a long career at American, but concluded that he had no viable alternative if he wished to avoid a termination entry and protect his future prospects as a pilot. *Id.* ¶¶ 12–14.

This is not a case in which a party agreed to a scheduling deadline while knowingly sitting on a completed claim. The adverse employment action began after the April 3 stipulation, and the alleged constructive discharge occurred only four days after entry of the Scheduling Order.

The chronology is also consistent with Rules 13(e) and 15(d), which contemplate supplemental pleadings based on counterclaims that mature and events that occur after an earlier pleading. Krithivas filed his Answer on March 2, before the administrative leave, threatened termination, resignation, and resulting damages. Those provisions do not displace Rule 16, but they confirm that Krithivas did not omit a completed employment-related claim when he answered.

**B. Knowledge of the injury did not disclose Hansen's conduct.**

SkyWest argues that Krithivas knew of his alleged constructive discharge by April 10 and therefore had more than a month to amend before May 15. That argument improperly equates knowledge of an injury with knowledge of the responsible person and conduct.

On April 9, Krithivas knew that American identified SkyWest's Complaint as the issue affecting his employment. He did not know whether American had independently discovered the public filing or whether SkyWest had affirmatively contacted American. Most importantly, he "had no idea" that SkyWest's General Counsel had sent the Complaint to an attorney at American. Dkt. 77-7 ¶ 11.

He also did not know:

- who at SkyWest made the communication;
- who at American received it;
- what the cover communication stated;
- whether the sender knew American employed Krithivas;
- whether the Complaint was intentionally selected and transmitted; or
- whether the sender invited further communications concerning Krithivas.

Those facts remained uniquely within SkyWest's possession.

The June 11 production disclosed that Hansen personally sent the Complaint to an American attorney, expressly identified Krithivas as a former SkyWest pilot "who has since transitioned to AA," stated that SkyWest wanted to make American aware of the litigation, and invited American to contact him with questions. Dkt. 68-2.

Rule 16 does not require a party to sue an individual at the earliest theoretical moment a claim might accrue, before possessing facts supporting that individual's participation. Nor did Rule 11 permit Krithivas to speculate that Hansen had contacted American and name him without evidentiary support. The June 11 production supplied the factual basis necessary to identify Hansen, plead his personal participation, and explain the mechanism by which SkyWest's allegations reached Krithivas's employer.

### C. Krithivas acted promptly after receiving the Hansen email.

The Motion provides a specific chronology:

June 11: SkyWest produced the Hansen email;
June 17: Krithivas sent SkyWest a proposed stipulated motion;
July 2: the parties met and conferred;
July 8: the parties exchanged proposed revisions;
July 10: SkyWest refused consent; and
July 10: Krithivas filed the Motion.

Dkt. 68 ¶ 17; Dkt. 68-1 ¶¶ 2–10.

Krithivas began seeking amendment only six days after production. The period between June 17 and July 10 was spent attempting to secure SkyWest's consent, not ignoring the claim. Krithivas filed immediately when the consensual amendment process failed.

The circumstances bear no resemblance to the extended and unexplained delays addressed in *Gorsuch*, *Husky Ventures, Inc. v. B55 Investments, Ltd.*, 911 F.3d 1000 (10th Cir. 2018), or *Birch v. Polaris Industries, Inc.*, 812 F.3d 1238 (10th Cir. 2015). Krithivas acted within days of receiving the material information.

**D. At minimum, good cause exists for the claims arising from Hansen's email.**

Even if the Court concludes that Krithivas could have asserted a separate claim based solely on the January 26 Communication before May 15, that conclusion would not justify denying leave as to Hansen's later-discovered publication.

The amendment is not indivisible. The Court may permit claims arising from the February 2 transmission and Hansen's joinder while treating the January 26 Communication as factual background relevant to SkyWest's knowledge, motive, malice, and course of conduct. A possible timing issue concerning one publication does not defeat claims arising from a distinct communication SkyWest did not produce until after the amendment deadline.

**II. RULE 15 FAVORS AMENDMENT, AND SKYWEST IDENTIFIES NO UNDUE PREJUDICE.**

Rule 15 directs courts to "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). SkyWest identifies no actual litigation prejudice caused by the timing of amendment.

6

Fact discovery remains open through November 30, 2026. Expert discovery has not commenced, dispositive motions are not due until June 2, 2027, and no trial date has been set. Dkt. 68 ¶ 19. SkyWest does not contend that evidence has been lost, witnesses have become unavailable, completed discovery must be repeated, an existing deadline must be extended, or trial must be continued.[1]

SkyWest argues only that joinder would "expose" Hansen to discovery and trial. Opp. at 12. That is not prejudice resulting from delay; it is the ordinary consequence of being named in a plausibly alleged claim based on one's personal conduct.

Nor does the amendment introduce an unrelated factual controversy. Hansen is SkyWest's General Counsel. SkyWest possessed and produced the operative email. The claims concern SkyWest's allegations in this action, its publication of those allegations, Hansen's transmission of the Complaint, and the resulting employment consequences. Those matters overlap with existing discovery concerning SkyWest's investigation, its communications with third parties, and the purposes for which it used the Complaint.

Resolving the claims in this action will avoid duplicative litigation and inconsistent findings. The absence of prejudice strongly favors amendment.

**III. SKYWEST'S FUTILITY ARGUMENTS SHOULD BE ADDRESSED UNDER RULE 12.**

SkyWest acknowledges that the Court has already stated its futility arguments are better addressed through a Rule 12 motion. Opp. at 3; Dkt. 88. Nevertheless, SkyWest asks the Court to

---

[1] In fact, SkyWest has already served written discovery regarding the proposed counterclaim to Krithivas on July 21, 2026.

decide contested questions of defamatory meaning, truth, privilege, excessive publication, common interest, malice, identification, causation, and constructive discharge.

Those are not undisputed facial defects. Granting leave preserves every defense SkyWest wishes to raise while ensuring that any challenge proceeds under the procedure already identified by the Court.

**A. Hansen did more than report that litigation existed.**

SkyWest isolates Hansen's cover sentence from the Complaint attached to it. But the alleged publication is the entire communication. Hansen deliberately selected SkyWest's pleading and transmitted its accusations to Krithivas's current employer.  Opp at 8.

*RainFocus, Inc. v. Cvent, Inc.* rejects the proposition that filing allegations immunizes their later targeted republication. 2023 UT App 32, ¶¶ 14–20.  There, corporate officers and counsel communicated pending-litigation accusations to customers and prospective customers. The court held that a litigant cannot use a filed complaint as a predicate for disseminating its allegations to persons unconnected with the proceeding. *Id.*

SkyWest relies on *RainFocus*'s observation that a bare statement that litigation has been filed may not itself be defamatory. But Hansen did not merely state that a case existed. He attached the Complaint containing accusations of unauthorized computer access, theft, misuse of purportedly confidential information, dishonesty, and other serious misconduct.

Hansen also did not distribute the Complaint to SkyWest's commercial partners generally. He selected the particular partner employing Krithivas, expressly identified Krithivas's transition to that employer, and invited follow-up. Those facts support a reasonable

inference that American was selected because it exercised authority over Krithivas's employment—not because it had any role in adjudicating SkyWest's claims.

American was not identified as a party, witness, insurer, indemnitor, process recipient, or other participant in this litigation. SkyWest identifies no litigation purpose served by transmitting the Complaint to Krithivas's current employer.

**B. Privilege presents disputed factual issues.**

Utah's judicial-proceeding privilege does not authorize excessive publication to persons unnecessary to the proceeding. *Pratt v. Nelson*, 2007 UT 41, ¶¶ 33–34, 46–47; *RainFocus*, 2023 UT App 32, ¶¶ 14–20.

The proposed Counterclaim alleges that American had no role in prosecuting or resolving this case, that the transmission was not service of process, that it was not required by court order, and that it did not preserve evidence or advance a legitimate litigation objective. Proposed Countercl. Doc. 68-3, ¶¶ 75–89.

Calling American a "commercial partner" does not establish that sending accusations to Krithivas's employer furthered this judicial proceeding. The nature of the relationship, the communication's purpose, and whether publication was excessive present factual questions.

The asserted common-interest privilege is likewise conditional. It may be defeated by knowing or reckless falsity, common-law malice, improper purpose, or excessive publication. *Ferguson v. Williams & Hunt, Inc.*, 2009 UT 49, ¶¶ 27–29. The existence and scope of any purported common interest between SkyWest and American cannot be resolved from SkyWest's characterization alone.

Privilege is also an affirmative defense that Krithivas was not required to conclusively negate in the proposed pleading. *Mathews v. McCown*, 2025 UT 34, ¶¶ 123–34. It does not establish futility at this stage.

### C. Krithivas did not admit the "gist or sting" of SkyWest's accusations.

SkyWest asserts that Krithivas disputes only the legal label attached to admitted conduct. His pleadings and discovery responses say otherwise.

Krithivas admitted using his SkyWest-issued credentials and accessing directory information he contends he was authorized to view. He did not admit that he stole information, acted unlawfully, circumvented access restrictions, committed computer intrusion, or engaged in criminal or professionally disqualifying conduct. He also stated that he personally made no use of the pilot contact information. Dkt. 90-1, Resp. to Interrog. Nos. 1, 4–5.

SkyWest's January 26 Communication accused the former pilots of "unethically and unlawfully stealing" information, obtaining "unauthorized access," using "extensive effort and manipulation," and committing "theft." Proposed Countercl. Doc. 68-3, ¶¶ 49–65.

Those statements carry a materially different gist and sting than accessing information through issued credentials for union-organizing purposes. Whether access was authorized, whether the information was confidential, and whether the conduct constituted theft or unlawful activity are central disputed issues in this case. Substantial truth cannot be resolved as a matter of law by accepting SkyWest's disputed characterization of the conduct.

Nor are the actionable assertions converted into opinion by SkyWest's accompanying statements that it was "shocked and disgusted." Assertions of unlawful stealing, unauthorized access, manipulation, and theft are capable of objective verification.

10

The January 26 Communication's failure to name Krithivas does not establish futility. It referred to only "two now-former pilots," and the proposed Counterclaim alleges that recipients understood the statements as referring to Krithivas and Moussaron. Proposed Countercl. Doc. 68-3, ¶¶ 51, 60. Identification may be established through context and extrinsic facts. *Mathews*, 2025 UT 34, ¶¶ 146–60.

**D. The record supplies the causation facts SkyWest claims are absent.**

SkyWest argues that the proposed Counterclaim contains no facts showing what American did or why Krithivas felt compelled to resign. Opp. at 11. But the existing record includes Krithivas's sworn declaration, filed as Dkt. 77-7.

That declaration states:

American placed Krithivas on administrative leave on April 6 and scheduled an April 10 employment hearing. Dkt. 77-7 ¶ 7.
American identified no disciplinary or performance issue and stated that the matter concerned his prior work history. *Id.*
Krithivas's APA representatives investigated the reason for the leave and the anticipated hearing. *Id.* ¶¶ 8–10.
On April 9, the representatives informed him that American was very likely to terminate him, that SkyWest's Complaint was the only reason given, and that American did not intend to ask him any questions. *Id.* ¶ 11.
Krithivas was advised that resignation was necessary to avoid a termination entry in his FAA Pilot Record and protect his future pilot career. *Id.* ¶ 12.
He did not want to resign, intended to have a long career at American, and concluded he had no viable alternative. *Id.* ¶¶ 13–14.

Those facts distinguish *Woodend v. Lenape Regional High School District*, 535 F. App'x 164 (3d Cir. 2013), and *Geller v. Von Hagens*, 2010 U.S. Dist. LEXIS 129561 (M.D. Fla. Nov. 23, 2010), where the claimed losses resulted from resignations treated as voluntary and insufficiently connected to the alleged interference.

Here, the pleaded theory is that American was preparing to terminate Krithivas solely because of SkyWest's Complaint and that he resigned only to avoid the career consequences of an impending termination. Whether those circumstances establish constructive discharge and causation presents a factual issue.

To the extent the Court concludes the proposed Counterclaim should expressly incorporate the additional details already established in Dkt. 77-7, the appropriate remedy is to permit Krithivas to file a conforming Counterclaim containing those allegations—not to deny leave entirely.

**E. A potential challenge to one count does not render the entire amendment futile.**

At minimum, the proposed defamation, false-light, and tortious-interference claims present plausible issues of falsity, improper publication, privilege, intent, causation, and damages.

SkyWest may have a more focused Rule 12 argument regarding whether the alleged conduct constitutes abuse of judicial process. But a potential defect in one count does not render every claim or Hansen's joinder futile. Any count-specific challenge should be addressed after filing under the Rule 12 procedure contemplated by the Court.

**IV. JOINDER OF HANSEN IS PROPER.**

The claims against Hansen arise from the same series of transactions and occurrences as the claims against SkyWest and present common questions concerning:

- the purpose and authorization of the February 2 communication;
- Hansen's and SkyWest's knowledge concerning the allegations;
- why American was selected as the recipient;
- whether the transmission furthered any legitimate litigation objective;
- whether any privilege existed or was abused;

- the communications between SkyWest and American; and
- the resulting harm to Krithivas.

Fed. R. Civ. P. 13(h), 20(a)(2), 21.

Hansen's personal participation is not speculative. SkyWest produced the email and concedes that Hansen sent it. Opp. at 5, 12. Joinder will permit complete relief, avoid duplicative discovery and litigation, and prevent inconsistent determinations concerning the same conduct.

**CONCLUSION**

Krithivas stipulated to the proposed schedule before suffering any known adverse employment action. The employment injury developed after that stipulation, and the critical evidence showing that Hansen personally and knowingly transmitted the Complaint to American was not produced until after the amendment deadline. Krithivas began seeking amendment six days after production and filed immediately when SkyWest refused consent. SkyWest identifies no undue prejudice.

Krithivas respectfully requests that the Court grant the Motion, modify the Scheduling Order for the limited purpose requested, grant leave to file the proposed Counterclaim, and join Dale Hansen as a Counterclaim Defendant.

Alternatively, Krithivas requests leave to file a conforming Counterclaim limited to claims arising from Hansen's February 2 communication and incorporating the April 6–10 facts established in Dkt. 77-7.

/ / /

/ / /

/ / /

13

DATED this 28th day of July, 2026.

**LAW OFFICES OF TIMOTHY D. DUCAR, PLC**

By /s/ Scott C. Uthe
Scott C. Uthe
Timothy D. Ducar
9280 E. Raintree Drive, Suite 104
Attorneys for Defendant Vikaas Krithivas

**CERTIFICATE OF COMPLIANCE WITH WORD LIMIT**

Pursuant to DUCivR 7-1(a)(4), I certify that the foregoing memorandum complies with the word limit of DUCivR 7-1 because it contains approximately 3,048 words, excluding the caption, face sheet, table of contents, table of authorities, table of exhibits, signature block, and this certificate, as counted by the word-count function of the word-processing program used to prepare it.

By /s/ Scott C. Uthe
Scott C. Uthe

14

## CERTIFICATE OF SERVICE

I certify that on July 28, 2026, I caused a true and correct copy of the foregoing **Defendant Vikaas Krithivas's Reply in Support of Motion to Amend Scheduling Order and for Leave to File Counterclaim and Join Dale Hansen** to the Clerk's Office using the CM/ECF system for filing, and for transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Gregory M. Saylin, GMSaylin@hollandhart.com
Zachar T. Burford, ZTBurford@hollandhart.com
Tyler S. Erickson, TSErickson@hollandhart.com
Tyson C. Horrocks, TCHorrocks@hollandhart.com
Attorneys for Plaintiff SkyWest Airlines, Inc.


Jonathan K. Thorne, Jonathan@utahjobjustice.com
Lauren I. Scholnick, Lauren@utahjobjustice.com
John E. Holland, jack@laborwest.com
Attorneys for Defendant Daniel Moussaron


By: /s/S. Uthe