Gregory M. Saylin, #9648
Tyson C. Horrocks, #12557
Zachary T. Burford, #19771
Holland & Hart LLP
222 South Main Street, Suite 2200
Salt Lake City, UT 84101-2194
Telephone: 801.799.5800
GMSaylin@hollandhart.com
TCHorrocks@hollandhart.com
ZTBurford@hollandhart.com

*Attorneys for Plaintiff and Counterclaim Defendant SkyWest Airlines, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH – SOUTHERN DIVISION

| | |
|---|---|
| SKYWEST AIRLINES, INC., <br><br> Plaintiff and Counterclaim Defendant, <br><br> vs. <br><br> DANIEL MOUSSARON, <br><br> Defendant and Counterclaim Plaintiff, <br><br> and VIKAAS KRITHIVAS, <br><br> Defendant. | **PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO ENTER PROTOCOL FOR FORENSIC SEARCH OF DEFENDANTS' DEVICES PURSUANT TO COURT'S FEBRUARY 18, 2026 PRESERVATION ORDER** <br><br> Civil No. 4:26-cv-00015-DN-PK <br><br> Senior District Judge David Nuffer <br> Magistrate Judge Paul Kohler |

**TABLE OF CONTENTS**

**PAGE**

INTRODUCTION ................................................................................................................1

ARGUMENT.......................................................................................................................2

I.     THE MOTION IS PROCEDURALLY PROPER ........................................................2

II.    A NEUTRAL FORENSIC SEARCH IS BOTH NECESSARY AND PROPORTIONAL ............................................................................................................3

      A.    The Proposed Protocol is necessary because Defendants have refused to produce information showing what happened to SkyWest's data, where it went, and to whom it was provided. ..........................................................3

      B.    The Proposed Protocol is proportional and narrowly tailored to the needs of the case.......................................................................................................5

III.   EACH OF THE FIVE DISPUTED TERMS SHOULD BE RESOLVED IN SKYWEST'S FAVOR........................................................................................................7

      A.    Communications containing or derived from SkyWest Data are discoverable. ........................................................................................................7

      B.    A refinement phase is not necessary or appropriate. ...........................................10

      C.    SkyWest's in-house counsel should be permitted to review AEO materials.........11

      D.    The definition of "SkyWest-Derived Data," the review period, and the credentials provision should be entered as proposed. ............................................11

           1.    Definition and scope ...................................................................................11

           2.    Litigation folder .........................................................................................12

           3.    Review period .............................................................................................12

           4.    Credentials ..................................................................................................12

      E.    The neutral expert's costs should be shared equally.............................................13

CONCLUSION.................................................................................................................13

## TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Ainstein AI, Inc. v. ADAC Plastics, Inc.*,
  2023 U.S. Dist. LEXIS 88484 (D. Kan. May 19, 2023) ...................................................... 6

*Dilling Mechanical Contractors, Inc.*,
  357 NLRB 544 (2011) ........................................................................................................ 9

*Ennis v. Alder Protection Holdings, LLC*,
  2022 U.S. Dist. LEXIS 87061 (D. Utah May 11, 2022) ...................................................... 3

*Grandbouche v. Clancy*,
  825 F.2d 1463 (10th Cir. 1987) ....................................................................................... 8, 9

*Icon Health & Fitness, Inc. v. Nautilus, Inc.*,
  2019 U.S. Dist. LEXIS 30490 (D. Utah Feb. 25, 2019) .................................................... 12

*In re Motor Fuel Temp. Sales Practices Litig.*,
  707 F. Supp. 2d 1145 (D. Kan. 2010) ................................................................................ 9

*John B. v. Goetz*,
  531 F.3d 448 (6th Cir. 2008) ........................................................................................ 3, 13

*McCurdy Grp., LLC v. Am. Biomedical Grp., Inc.*,
  9 F. App'x 822 (10th Cir. 2001) ......................................................................................... 3

*Modern Font Applications LLC v. Alaska Airlines*,
  2021 WL 364189 (D. Utah Feb. 3, 2021) ......................................................................... 11

*NAACP v. Alabama*,
  357 U.S. 449 (1958) ........................................................................................................... 9

*NetJets Aviation, Inc. v. NetJets Ass'n of Shared Aircraft Pilots*,
  2017 U.S. Dist. LEXIS 129354 (S.D. Ohio Aug. 15, 2017) ............................................... 8

*Perry v. Schwarzenegger*,
  591 F.3d 1126 (9th Cir. 2010) ............................................................................................ 8

*S. & W. Lumber Co. (Gray Flooring)*,
  212 NLRB 668 (1974) ........................................................................................................ 9

*TLS Mgmt. & Mktg. Servs. LLC v. Rodriguez-Toledo*,
  2017 U.S. Dist. LEXIS 224841 (D.P.R. Aug. 8, 2017) ...................................................... 6

*U.S. Steel Corp. v. United States*,
    730 F.2d 1465 (Fed. Cir. 1984)...................................................................................... 11

*Wynmoor Cmty. Council, Inc. v. QBE Ins. Corp.*,
    280 F.R.D. 681 (S.D. Fla. 2012).................................................................................... 13

## RULES AND STATUTES

Fed. R. Civ. P. 16........................................................................................................... 5

Fed. R. Civ. P. 26............................................................................................... 5, 6, 9, 10

Fed. R. Civ. P. 37............................................................................................................. 2

Fed. R. Civ. P. 502..................................................................................................... 6, 12

UT Code § 13-44-102 ..................................................................................................... 6

Plaintiff SkyWest Airlines, Inc. ("SkyWest") hereby submits its reply in support of its Motion to Enter Protocol for Forensic Search of Defendants' Devices Pursuant to Court's February 18, 2026 Preservation Order.

## INTRODUCTION

Over six months ago, SkyWest asked this Court for urgent help identifying who took its data, what was taken, how it was used, and who else has it. Now, six months later, SkyWest still does not know where its data is, and it is no closer to securing that data back, which is SkyWest's central goal in this litigation. The Court ordered neutral imaging precisely to "capture and preserve" which SWOL files and fields were accessed and when, the methods used, whether downloads were modified to generate derivative data, whether and when deletions occurred, and "the scope and distribution of SkyWest-derived datasets." Dkt. No. 43, Preservation Order, ¶ 2(e). However, accessing the forensic images requires a further order, so the parties started discussing a protocol. In spite of meetings and discussions, traded drafts, and written communications, the parties could not agree on terms. More than half a year has gone by.

The urgency remains for SkyWest to get answers to its questions so that it can act to protect and retrieve its data. To be clear, Defendants admit to extracting SkyWest's data with a program called Tampermonkey, Opp. at 6, admit to transmitting it to others, *id.*, and admit they deleted critical information. Dkt. 77-5, Ex. E. Defendants claim they have already told SkyWest everything it needs to know. That is false. In responding to discovery, Defendants have refused to reveal what data they took, how they used it, or who has it now. *See* Dkt. 67, 69–72. Unidentified individuals out there have had access to SkyWest's data. SkyWest does not know who they are.

1

Intentional or not, Defendants' refusal to provide the data through regular written discovery (resulting in several pending discovery motions) or to agree to a workable protocol so it could come from the forensic images has completely undermined SkyWest's original requests for urgent relief from this Court. The time for meeting and conferring has been exhausted. Throwing up roadblocks and objections to further draw out the process should not be permitted. Only implementation of a court-ordered protocol can establish which files were accessed, modified, and deleted, and where its data went. In light of Defendants' admittedly unclean hands, SkyWest urgently requests entry of the Proposed Protocol.

## ARGUMENT

### I.    THE MOTION IS PROCEDURALLY PROPER

SkyWest's Motion is not a Rule 37 motion—it is the next step the Preservation Order itself contemplated. Dkt. No. 43, ¶ 14. It does not seek to compel a search protocol—*the parties agreed to proceed with one.* Defendants' present opposition cannot be squared with their admission that they "accept[ed] SkyWest's framework," yet they now "oppose any forensic examination altogether." Dkt. 77, Opp., 3, 5–6.

Defendants quibble over whether conferral spanned five months or one. Either way, the parties conferred repeatedly in April and May before any draft was exchanged, including in written correspondence, in a June 18 videoconference, and in a June 23 session with the neutral expert— but Defendants' redlines contained a few substantive disagreements. *See* Dkt. 77-6, Ex. F. Indeed, the parties' final exchanges confirmed that further conferral would be fruitless. Defendants' position that entire categories of responsive documents must be categorically withheld under the RLA or a new First Amendment objection presented a gulf no additional meetings would bridge.

2

*Ennis v. Alder Protection Holdings, LLC* is inapposite. There the court faulted a movant for racing to file immediately after a single exchange. 2022 U.S. Dist. LEXIS 87061, at *6 (D. Utah May 11, 2022). Here, months of meet and confer efforts produced only delay. Besides, no rule requires conferral before seeking a protocol. And even if it did, SkyWest has met that obligation. In light of the urgency here (SkyWest still has not been able to trace its misappropriated data), the Court should implement a protocol to finish what the Preservation Order started.

## II.    A NEUTRAL FORENSIC SEARCH IS BOTH NECESSARY AND PROPORTIONAL

### A.    The Proposed Protocol is necessary because Defendants have refused to produce information showing what happened to SkyWest's data, where it went, and to whom it was provided.

Defendants improperly recast the Motion as a demand to rummage through "two entirely personal computers," as if the Court had not already resolved the threshold question. It has. Defendants' cases address whether to *order imaging in the first instance* on a thin evidentiary predicate. *McCurdy Grp., LLC v. Am. Biomedical Grp., Inc.*, 9 F. App'x 822, 831 (10th Cir. 2001), refused imaging where the requester offered only "skeptic[ism]" that the other party produced all relevant documents. And *John B. v. Goetz*—which acknowledged that "forensic imaging is not uncommon in the course of civil discovery"—overturned an order directing the plaintiff's expert, accompanied by U.S. Marshals, to image devices in state agencies and officials' homes, which "implicate[d] federalism and comity considerations not present in typical civil litigation," including this case. 531 F.3d 448, 461 (6th Cir. 2008).

This case is neither. SkyWest's request is not "extremely broad in nature," and the connection between the Defendants' devices and SkyWest's information is not "unduly vague or unsubstantiated in nature." *Id.* at 460. Those concerns were litigated and resolved when the Court

3

ordered imaging in February 2026 on a concrete factual record. Dkt. No. 43, Preservation Order, ¶ 2(a)–(e). Nor does SkyWest proceed on "skeptic[ism]"; it proceeds on Defendants' admissions that they scraped data with Tampermonkey, mass-collected over 5,000 pilots' records, transmitted it to third parties, and deleted key evidence. Dkt. No. 77-4, Ex. D, Moussaron Resp. to Interrog. Nos. 7–8; Dkt. No. 77-5, Ex. E, Moussaron Resp. to RFP No. 26; Dkt. No. 1, Compl.[1]

Defendants' contention that they have "already disclosed the information SkyWest says it needs" is false. Dkt. No. 77, Opp., at 6. In truth, they have produced almost nothing. SkyWest has received only an untested narrative of Moussaron's access, a single copy of the mass text he sent using SkyWest's information, and a spreadsheet purporting to show where the data resides. Dkt. No. 77-4, Ex. D, Resp. to Interrog. Nos. 7–8. Each is Defendants' own say-so as to what happened to SkyWest's data, without any supporting documents or underlying information. None of it can be tested or verified. Defendants are thus asking SkyWest and the Court to simply take their word for what they did, while withholding the actual information needed to determine what happened to SkyWest's information.

In fact, Defendants admit that they have not provided SkyWest with the identities of everyone who received SkyWest's data. Moussaron refused to answer SkyWest's interrogatory seeking the identity of "every person or entity who received, accessed, viewed, or possessed" that information, refused to identify who used it to make outreach calls to pilots, and refused to produce

---

[1] Each Defendant signed a Confidentiality and Nondisclosure Agreement expressly prohibiting the disclosure or personal use of SkyWest's confidential employee data, and agreeing that such data is confidential "no matter how it is communicated." Dkt. No. 1, Compl. ¶¶ 16–20, 42–47, Ex. A (NDAs). By fixating on whether their conduct was a "hack," Defendants treat the scraped data as unowned public-domain information. It was not, and their NDAs confirm that.

his communications with—or the encrypted file he transmitted to—the ALPA representative. Dkt. 77-4, Ex. D, Resp. to Interrog. Nos. 7, 16; Dkt. 77-5, Ex. E, Resp. to RFP Nos. 25–26; Dkt. No. 71, Short-Form Mot. Defendants also concede they are withholding the identity of anyone they deem a "union supporter" and "sympathi[zer]." Opp. at 6.[2] And Moussaron admits deleting the email transmitting SkyWest's data to that representative, and is withholding the full "scope and distribution" of the datasets. Dkt. 77-5, Ex. E, Resp. to RFP No. 26; Dkt. 70, Short-Form Mot.

SkyWest has pursued this information through every available avenue—its ex parte TRO application, written discovery, its Rule 16 submission, short-form motions to compel, this Motion, and months of conferral. Dkt. Nos. 5, 63, 69–72. At every turn, SkyWest has been rebuffed. A party cannot misappropriate data and then wield the discovery process as a shield against disclosing the details of that misappropriation. The forensic search is necessary to confirm what was taken, modified, and deleted, and where it went.

## B.      The Proposed Protocol is proportional and narrowly tailored to the needs of the case.

Proportionality is measured against the needs of the case. Fed. R. Civ. P. 26(b)(1). The misappropriation and distribution of confidential employee data is the core of SkyWest's claims, and the Proposed Protocol is narrowly tailored to recover that information. It includes a keyword-driven search, time-limited to the alleged conduct, run exclusively by Court-appointed neutral, confined to SkyWest-derived data, and a privilege screening by Defendants' counsel, Confidential

---

[2] Critically, Moussaron's interrogatory responses confirm that these individuals, members of the ALPA organizing committee, had access to the database, including contact information that derives from SkyWest's data, yet he refuses to identify them. Dkt. 77-4, Ex. D, Moussaron's Resp. to Interrog. No. 7, 4–5.

and AEO designations, and Rule 502(d) non-waiver protection before anything is produced. These safeguards meet or exceed those protocols approved in other courts.[3] SkyWest's Proposed Protocol does not seek Defendants' photographs, private correspondence, financial records, or documents relating to organizing activities unrelated to its data or claims.[4]

Defendants cherry-pick three of the thirty-three search terms—XHR, fetch, and View[5]—to attack proportionality. Those terms are directly relevant. Moussaron admits he used Tampermonkey to automate the Directory application's "View" function to execute API calls to the "empdetail" endpoint—calls carried out through browser methods such as XMLHttpRequest ("XHR") and "fetch"—that scraped the non-public pilot data. Dkt. 77-4, Ex. D, Moussaron Resp. to Interrog. Nos. 8–9. Moreover, that Defendants quarrel with only three terms confirms the search is, on the whole, narrowly tailored.

Defendants' reliance on *Ainstein* cuts against them. This Court modeled its Preservation Order in part on *Ainstein AI, Inc. v. ADAC Plastics, Inc.*, 2023 U.S. Dist. LEXIS 88484, at *13–14, *19 (D. Kan. May 19, 2023), where the court—after ordering imaging—set a conference to establish an ESI protocol governing the search of the imaged devices.[6] That is exactly the posture

---

[3] *See, e.g.*, *TLS Mgmt. & Mktg. Servs. LLC v. Rodriguez-Toledo*, 2017 U.S. Dist. LEXIS 224841, at *6 (D.P.R. Aug. 8, 2017).

[4] Defendants' invocation of Utah's data-breach statute, UT Code § 13-44-102(4), is a non-sequitur. Whether the pilot data meets a statutory definition of "Personal Information" for breach-notification purposes has nothing to do with whether it is relevant and discoverable under Rule 26.

[5] Defendants neglect to explain that SkyWest's proposed protocol applied the term "View" only in connection with other SWOL-related artifacts and not in isolation. Moreover, they fail to mention that the redline they returned to SkyWest agreed to this term. Dkt. 77-6, Ex. F, p. 18.

[6] The docket for that matter reflects that right before this scheduling conference, the case was transferred to another court based on the parties' agreement to arbitrate. *See Ainstein*, 2:23-cv-02166-DDC-TJJ, Dkt. No. 45 (May 30, 2023).

here. That the court declined to image *additional personal* devices for want of a predicate says nothing about the searching images *already* ordered created on a developed record, particularly where SkyWest seeks no additional imaging.

Defendants' assertion that no court has entered a "movant-drafted protocol over objection" is a strawman. The Proposed Protocol contains precisely the same safeguards Defendants' cited decisions required, including a direct connection between Defendants' devices and SkyWest's data, exclusive access by a neutral expert, and privacy protections.

Lastly, the most significant and expensive step—the imaging itself—is already complete, at SkyWest's sole expense. Dkt. 43, Preservation Order ¶ 10. Having paid to create the very images that hold the answers to what happened to its data, it would be the opposite of proportional to shelve those images unsearched.

## III.    EACH OF THE FIVE DISPUTED TERMS SHOULD BE RESOLVED IN SKYWEST'S FAVOR

### A.    Communications containing or derived from SkyWest Data are discoverable.

SkyWest seeks only to trace its own stolen data and the communications surrounding it. Defendants would shield any communication that "reflects, incorporates, or was derived from" SkyWest data unless it literally "attach[es], embed[s], or quote[s]" a specific SWOL record. Dkt. 77-6, Ex. F, Defs' Protocol Redline §§ 2(g), 7(c). That would exclude the most probative evidence of misuse—*e.g.*, communications describing how the data was used, with whom it was shared, or how it was modified—merely because the raw spreadsheet is not attached. Defendants cannot intermingle their organizing plans with SkyWest's misappropriated data and then invoke that intermingling to screen documents unilaterally from SkyWest.

Nor may such communications be withheld under a non-existent union-organizing privilege. The Railway Labor Act protects the right to organize but creates no evidentiary privilege shielding evidence of data misappropriation, and courts have rejected the argument that the RLA or a "chilling effect" precludes discovery. *See NetJets Aviation, Inc. v. NetJets Ass'n of Shared Aircraft Pilots*, 2017 U.S. Dist. LEXIS 129354, at *14 (S.D. Ohio Aug. 15, 2017). Defendants cannot immunize evidence of their misappropriation by folding it into organizing activity.

The "associational privilege" Defendants rely on is inapplicable in a situation where a defendant is seeking to use the privilege to shield direct evidence of misappropriation and even the plaintiff's own data. Even so, the privilege reaches only "private, internal campaign communications concerning the formulation of campaign strategy and messages" among core organizers; it "certainly does not apply to documents or messages conveyed to . . . individual voters for purposes such as persuasion, recruitment or motivation," whose "contents . . . are not privileged." *Perry v. Schwarzenegger*, 591 F.3d 1126, 1145 n.12 (9th Cir. 2010). Defendants put the organizing campaign squarely at issue when they initiated a mass-text campaign that deployed scraped data to solicit individual pilots.

Moreover, in this Circuit, a First Amendment objection to discovery is resolved by balancing the requesting party's need against the asserted associational burden, not by categorical exclusion, and disclosure may be compelled where "associational activities are directly relevant to the plaintiff's claim." *Grandbouche v. Clancy*, 825 F.2d 1463, 1466–67 (10th Cir. 1987). Defendants have affirmatively alleged that SkyWest retaliated against them for organizing, Dkt. 47, Moussaron's Countercl.; Dkt. 68, Mot. to Amend, and their defenses rest on the premise that they took this information only to "poll [pilots'] interest in organizing a union with ALPA." Opp.

8

at 1–2. Having built their case on that narrative, they cannot wield a privilege to shield its evidentiary core.

Even if Defendants could make a prima facie showing that production would chill protected activity (they cannot), that would not be the end of the analysis. Rather, the burden would shift to SkyWest to show only that the information is relevant, SkyWest needs the information, its unavailability from other sources, the nature of it, and whether Defendants placed it at issue— SkyWest easily meets each. *Grandbouche*, 825 F.2d at 1466–67; *see also In re Motor Fuel Temp. Sales Practices Litig.*, 707 F. Supp. 2d 1145, 1161 (D. Kan. 2010).[7] These artifacts are the heart of SkyWest's claims; the Proposed Protocol reaches only materials that contain, reflect, incorporate, or derive from SkyWest-Derived Data; and sensitive organizing content may be designated under the SPO before production. The information is otherwise unavailable because Defendants have admitted deleting or are withholding it. Dkt. 70–71.[8]

Critically, *Ass'n of Flight Attendants-CWA v. SkyWest, Inc.*, No. 2:23-cv-00723-DBB-DBP, ECF No. 157 (D. Utah Dec. 18, 2025), did not bar organizing discovery. It only protected

---

[7] *NAACP v. Alabama* is not to the contrary. 357 U.S. 449, 462–65 (1958). There, the State compelled a bare membership list whose disclosure had "no substantial bearing" on the only litigated issue, on an uncontroverted record of "economic reprisal, loss of employment, threat of physical coercion," and with no protective order; even then, the Court protected only member names. *Id.*

[8] Defendants' NLRB decisions apply the Board's unfair-labor-practice standard, not Rule 26, and cut against Defendants. *Dilling Mechanical Contractors, Inc.*, 357 NLRB 544 (2011), condemned a serial violator that filed a retaliatory lawsuit and used discovery to demand a roster of "each and every union member" already held irrelevant. SkyWest does not seek a roster, but forensic evidence of its own stolen data. And *S. & W. Lumber Co. (Gray Flooring)*, 212 NLRB 668, 674 (1974) is a wrongful-discharge case, protecting copying only because the records were "not, in any meaningful sense, private records," while reaffirming that employees are "not entitled to their Employer's private or confidential records."

non-public supporter identities and authorization-card data through redaction and AEO designation, ordered production of the identities of individuals listed on any party's Rule 26 disclosures, and preserved each party's right to seek document-by-document disclosure. It (along with Defendants' other authorities) also confirms that associational protection runs to those whose own activity would be chilled—not former employees invoking others' interests to withhold evidence of their own misconduct.

Finally, SkyWest's Proposed Protocol already protects genuinely sensitive organizing materials. Specifically, non-responsive organizing communications may be withheld, privileged material screened out, and sensitive content designated AEO. What it does not do—and should not do—is permit Defendants to redact the identities of those who received, accessed, used, or discussed SkyWest's misappropriated data. Those identities are the very relief SkyWest seeks; such redactions would render the search useless. These are not anonymous union members swept up in a generalized roster demand, but the people who accessed SkyWest's data and participated in its extraction, receipt, and use.

### B.    A refinement phase is not necessary or appropriate.

The Proposed Protocol is not internally inconsistent merely because it provides hit reports "sufficient to allow refinement" and stages the review set concurrently. The hit reports give both sides—by device, term, and logical location—hit counts, file paths, filenames, and timestamps, sufficient to raise any genuine over-inclusion, while the neutral holds the staged set in confidence pending privilege review. Defendants' mandatory "Phase Two" gate, backed by court intervention before staging, would add cost and delay without adding protection.

C.    **SkyWest's in-house counsel should be permitted to review AEO materials.**

The forensic artifacts reflect what happened to *SkyWest's own* confidential data, and SkyWest cannot make informed litigation decisions—or protect its employees' data going forward—without input from Todd Emerson, its Vice President, Legal. Mr. Emerson is a Utah-licensed attorney managing this litigation, subject to the same ethical obligations as outside counsel, bound by the SPO, and prohibited from sharing AEO materials with anyone else at SkyWest.[9] The SPO already permits counsel "who are acting in a legal capacity and are actively engaged in [the] matter" to review AEO materials. SPO §§ (B)(1)(a), (B)(2).

Defendants' authorities do not support blanket exclusion. *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 (Fed. Cir. 1984), and *Modern Font Applications LLC v. Alaska Airlines*, 2021 WL 364189, at *5 (D. Utah Feb. 3, 2021), turn on whether in-house counsel is a *competitive decision-maker* who might misuse a competitor's trade secrets in business decisions. The AEO materials here are SkyWest's own misappropriated data, and Mr. Emerson is a legal officer, not a competitive decision-maker.

D.    **The definition of "SkyWest-Derived Data," the review period, and the credentials provision should be entered as proposed.**

1.    *Definition and scope*

Defendants would limit "SkyWest-Derived Data" to the "SWOL employee directory" alone and strip the "without limitation" qualifiers. Proposed Protocol § 2(d); Ex. F, Defs.' Protocol Redline § 2(d). The full scope of Defendants' conduct is not yet known—which is why a search is necessary—and the Preservation Order was not confined to directory data; it reached "whether

---

[9] Of their own volition, Defendants argue that Hansen should not be included in the definition of AEO. But SkyWest never asserted that he should be.

downloads were modified to generate derivative data," "where data resides," and "the scope and distribution of SkyWest-derived datasets." Preservation Order ¶ 2(e). The qualifier ensures the definition captures derivatives, exports, and backups, including recoverable deleted files.

### 2.    *Litigation folder*

Defendants' concern about the "Documents/SkyWest/Litigation/" path is overridden by the fact that it is where the stolen database archive (SkyProxy.sql.zip) resides. Motion, Ex. A § E; Opp., Ex. C, Moussaron Decl. ¶ 4. Genuine attorney-client and work-product materials are fully protected under the Proposed Protocol's privilege screen and Rule 502(d). Proposed Protocol §§ 6(b), 7(a). But privileged files in a folder do not exempt the responsive, non-privileged stolen data stored alongside them. *See Icon Health & Fitness, Inc. v. Nautilus, Inc.*, 2019 U.S. Dist. LEXIS 30490, at *3 (D. Utah Feb. 25, 2019).

### 3.    *Review period*

Defendants' demand for at least 21 to 28 days to privilege-screen is just another vehicle for delay. Ex. F, Defs.' Protocol Redline § 6(c). The Proposed Protocol provides adequate time to review a set already narrowed by keyword and artifact targeting.

### 4.    *Credentials*

The credentials provision does not reach beyond the Preservation Order. The search is confined to the Forensic Images in the neutral's custody and requires no credentials for live cloud, email, messaging, or third-party accounts not on the images. Proposed Protocol § 10. Where the *images themselves* contain password-protected files or encrypted archives, Defendants should supply the keys so the neutral can search data that has already been preserved.

12

**E.     The neutral expert's costs should be shared equally.**

Defendants insist SkyWest bear 100% of the neutral's costs under Paragraph 10 of the Preservation Order. But that provision addressed the *initial imaging and preservation*. Searching, staging, and producing documents is a distinct process the Preservation Order reserved for further order, and those are ordinary discovery costs courts require parties to share. *See IHS Global*, 2019 U.S. Dist. LEXIS 220327, at *11–12. Defendants' authorities—*John B.*, 531 F.3d at 460, and *Wynmoor Cmty. Council, Inc. v. QBE Ins. Corp.*, 280 F.R.D. 681, 688 (S.D. Fla. 2012)—address the cost of *imaging*, not a negotiated search protocol. A 50/50 split (25% per Defendant) is fair, and the Protocol preserves each party's right to seek reallocation. Proposed Protocol § 9.

**CONCLUSION**

Six months into this litigation, SkyWest still does not know where its data is. Defendants have admitted what they did but refused to give SkyWest the information it needs to secure that data. Accordingly, SkyWest respectfully requests that the Court enter the Proposed Protocol and authorize Premier Legal Technicians to conduct forensic searches of the preserved images.

Dated this 31st day of July, 2026.

HOLLAND & HART LLP

*/s/ Tyson C. Horrocks*
Gregory M. Saylin
Tyson C. Horrocks
Zachary T. Burford
*Attorneys for Plaintiff and Counterclaim Defendant*
*SkyWest Airlines, Inc.*

## CERTIFICATION OF WORD COUNT

Pursuant to DUCivR 7-1(a)(6), I, Zachary T. Burford, certify that this Reply contains 3,740 words and complies with DUCivR 7-1(a)(4), and the Court's Order granting SkyWest's Motion for Leave to File an Overlength Reply of 3,750 words or fewer.

/s/ Zachary T. Burford

38654849

14