# EXHIBIT A

Gregory M. Saylin, #9648
Tyson C. Horrocks, #12557
Zachary T. Burford, #19771
Holland & Hart LLP
222 South Main Street, Suite 2200
Salt Lake City, UT 84101-2194
Telephone: 801.799.5800
GMSaylin@hollandhart.com
TCHorrocks@hollandhart.com
ZTBurford@hollandhart.com

*Attorneys for Plaintiff and Counterclaim Defendant SkyWest Airlines, Inc.*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH – SOUTHERN DIVISION

| | |
|---|---|
| SKYWEST AIRLINES, INC., <br><br> Plaintiff and Counterclaim Defendant, <br><br> vs. <br><br> DANIEL MOUSSARON, <br><br> Defendant and Counterclaim Plaintiff, <br><br> and VIKAAS KRITHIVAS, <br><br> Defendant. | **PLAINTIFF SKYWEST'S RESPONSE TO DEFENDANT KRITHIVAS' SECOND SET OF DISCOVERY REQUESTS** <br><br> Civil No. 4:26-cv-00015-DN-PK <br><br> Senior District Judge David Nuffer <br> Magistrate Judge Paul Kohler |

Plaintiff SkyWest Airlines, Inc. ("Plaintiff" or "SkyWest") by and through undersigned counsel, hereby responds to Defendant Vikaas Krithivas' ("Defendant") Second Set of Discovery Requests ("Requests") as follows:

## PRELIMINARY STATEMENT

As of the date of these responses, SkyWest has not yet completed its investigation and discovery in this action. Accordingly, all answers contained herein are based upon the

information and the documents that are presently available and specifically known to SkyWest. SkyWest anticipates that further discovery, independent investigation, and legal and factual research and analysis may supply additional facts and/or establish entirely new facts, conclusions, and legal assertions, all of which may lead to substantial additions to, changes in, and variations from the answers set forth herein.

Each response herein is made subject to all appropriate objections (including without limitation objections concerning scope, privilege, competency, relevance, materiality, propriety, and admissibility) that would require the exclusion of any information, document, or thing at the time of trial or in any process or proceeding in this action. All such objections, and the grounds for such objections, are reserved and may be interposed at trial or any other process or proceeding in this action.

The answers and objections contained herein are made in a good faith effort to supply as much factual information as is presently known but should in no way prejudice SkyWest in relation to further discovery, research, or analysis. SkyWest responds to the Requests as it interprets and understands them. SkyWest reserves the right to supplement its response if Defendants subsequently assert an interpretation of any requests contained in the Requests that differs from SkyWest's current understanding. The following responses and objections are given without prejudice to SkyWest's right to produce evidence and subsequently discovered facts that SkyWest may obtain. Accordingly, SkyWest reserves the right to change any and all answers herein as additional facts or documents are ascertained, analyses are made, legal research is completed, and assertions are formulated.

Except for the facts explicitly admitted herein, no admission of any nature whatsoever is to be implied or inferred from these responses. The fact that SkyWest responds to a request is without prejudice or precedent and should not be taken as an admission, or concession of the evidence of, any fact or document set forth, assumed, or implied by such request. Further, pursuant to Federal Rule of Civil Procedure 26(b), if SkyWest discloses privileged information in response to the requests, the disclosure is inadvertent and does not constitute a waiver of any applicable privilege.

SkyWest objects to the definition of "Identify" as applied to "SkyWest Systems," "person," "definition," and "communication" as compound, overbroad, and unduly burdensome to the extent the definitions embed multiple discrete subparts and require the production of granular technical, regulatory, and architecture-level information for every responsive item.

SkyWest objects to the definition of "SkyWest Systems" as overbroad and not proportional, including because, among other things, it sweeps in "any computer system, network, database, application, website, or electronic resource owned, operated, controlled, or used by SkyWest" without any limitation tied to the claims and defenses at issue.

SkyWest objects to the definition of "Plaintiff," "Counterclaim Defendant," "You," "Your," and "SkyWest" (Definition 1) as overbroad and not proportional to the extent it sweeps in "all agents, representatives, attorneys, subsidiaries, affiliates, or parent organization such as SkyWest Inc." The inclusion of "attorneys" improperly seeks to invade the attorney-client privilege and work-product doctrine. The inclusion of the parent corporation "SkyWest Inc." and unspecified "affiliates" or "subsidiaries" expands the scope of discovery beyond the named party without any showing of relevance to the claims and defenses at issue.

SkyWest objects to the definition of "Relates to," "related to," "relating to," and "in relation to" (Definition 19) as overbroad and not proportional because it defines these terms "in their broadest sense" to mean "discuss, involve, reflect, deal with, consist of, refer to, represent, constitute, emanate from, be directed at, or in any way pertaining, in whole or in part, to the subject," which would effectively eliminate any proportionality limitation and sweep in vast categories of tangentially related materials.

SkyWest objects to the definition of "Manager" (Definition 38) as overbroad because it encompasses "any employee with supervisory authority over one or more SkyWest employees, including but not limited to chief pilots, assistant chief pilots, base managers, department managers, directors, vice presidents, and executive officers," which sweeps in a large and undefined custodian population without reasonable limitation tied to the claims at issue.

SkyWest objects to the definition of "Human Resources Personnel" (Definition 39) as overbroad because it encompasses "all employees assigned to Human Resources, People Operations, Employee Relations, Recruiting, Talent Acquisition, Crew Support, or any substantially similar function," which sweeps in multiple distinct departments and an indeterminate number of employees without any limitation tied to the claims and defenses at issue or to specific custodians with relevant knowledge.

SkyWest objects to the definition of "American Airlines" (Definition 33) as overbroad to the extent it encompasses "its officers, directors, employees, agents, representatives, attorneys, investigators, human resources personnel, recruiting personnel, and any person acting on its behalf," which improperly expands the scope of discovery to an unlimited universe of third-party

individuals without any showing that such persons have relevant knowledge or that discovery concerning them is proportional.

SkyWest objects to the definitions of "Device" (Definition 16), "Account" (Definition 17), "File" (Definition 22), "Dataset" (Definition 23), "Location" (Definition 24), and "Custodian" (Definition 25) as collectively overbroad, unduly burdensome, and not proportional to the needs of the case. Each definition is drafted in the broadest possible terms—encompassing, inter alia, "any electronic device capable of storing, processing, transmitting, or accessing data," "any user account, login credentials, profile, or access mechanism," "any electronic file . . . regardless of format or extension," "any collection, compilation, database, list, spreadsheet, or organized grouping of data," "any physical place, electronic storage medium, system, platform, service, or repository," and "any person, entity, or organization that has possession, custody, control, or access to information"—without any limitation tied to the claims and defenses at issue. Collectively, these definitions are designed to circumvent the proportionality requirements of Rule 26(b)(1) and to impose obligations far exceeding what is necessary to resolve the narrow claims in this action.

SkyWest objects to the definition of "Credential" (Definition 28) as overbroad to the extent it encompasses "any username, password, multifactor authentication token or other SkyWest method to control access to any information or system" without limitation to the specific systems or credentials at issue in this action.

SkyWest objects to the definition of "Communicated" (Definition 26) as overbroad and unduly burdensome to the extent it encompasses seven separate sub-categories of sharing— including "granting access to accounts, systems, or databases containing the information,"

5

"posting or uploading to websites, platforms, or services accessible to others," and "incorporation into marketing materials, contact lists, or recruitment campaigns"—each of which independently broadens the scope of discovery beyond what is proportional to the needs of the case.

SkyWest objects to the definition of "Third Party" (Definition 18) as overbroad because it encompasses "any person, entity, company, organization, or service provider other than SkyWest and Defendants" without any limitation tied to relevance, the claims at issue, or proportionality, thereby imposing an unlimited universe of potential custodians and recipients.

SkyWest objects to the definition of "Union-Related Communication" (Definition 35) as overbroad, not proportional, and seeking information not relevant to any party's claim or defense in this action. The definition encompasses "any Communication that contains, references, discusses, concerns, or relates to ALPA, SAPA, labor organizing, union activity, union representation, organizing committees, representation elections, authorization cards, pilot organizing efforts, labor relations, collective bargaining, or any activity protected by the Railway Labor Act," which is untethered to the unauthorized-access and data-misuse claims at issue and improperly seeks to inject labor-relations subject matter into a computer fraud and breach-of-contract case.

SkyWest objects to the definition of "Investigation Costs" (Definition 36) as overbroad, argumentative, and designed to mischaracterize the nature of SkyWest's claimed damages. The definition encompasses "any labor, salary, payroll, consulting, legal, accounting, forensic, security, technology, remediation, response, mitigation, administrative, vendor, contractor, or other expense allegedly incurred by SkyWest arising from the allegations contained in the

Complaint," which improperly embeds characterizations and assumptions about SkyWest's damages claims and sweeps in categories of costs—including legal fees—that are protected by the attorney-client privilege and attorney work-product doctrine.

SkyWest objects to the definition of "SAPA Representative" (Definition 34) as overbroad to the extent it encompasses "any officer, director, board member, committee chair, representative, employee, volunteer, agent, or person acting on behalf of SAPA," which sweeps in an indeterminate and potentially large number of individuals without any limitation tied to the claims and defenses at issue or to the relevant time period.

SkyWest objects to the definition of "Document" (Definition 6) as overbroad and unduly burdensome to the extent it purports to expand the scope of Rule 34 of the Federal Rules of Civil Procedure by sweeping in every conceivable form of recorded material—including "source code," "scripts," "configuration files," "log files," "metadata," and "computer programs or data"—without any limitation tied to the claims and defenses at issue. The definition is further overbroad in requiring production of "all non-identical copies" bearing "marginal comments or other marks, postscripts, changes, amendments, addenda, or other notations," which would impose an extraordinary and disproportionate burden.

SkyWest objects to the definition of "Communication" and "Communications" (Definition 10) as overbroad and unduly burdensome to the extent it encompasses "any exchange or transfer of information between two or more persons or between one or more persons and a file, computer system, or device, whether written, oral, electronic, or in any other form," which could be read to include automated system logs, machine-to-machine communications, and routine electronic processes entirely unrelated to the claims at issue.

SkyWest objects to the definition of "Employee Communications" (Definition 11) as vague and ambiguous to the extent it applies an arbitrary numerical threshold of "Communications sent to more than 100 SkyWest employees" without specifying whether the threshold refers to direct recipients, distribution-list members, or persons with incidental access, and without any limitation tied to the claims and defenses at issue.

SkyWest objects to the definition of "Pilot Contact Information" (Definition 14) as overbroad to the extent it sweeps in "names, employee identification numbers, contact information (including phone numbers, email address and physical addresses), and hire date," which extends beyond the personal cell phone numbers and home addresses at issue in this action to include information that is routinely available within the organization for legitimate business purposes.

SkyWest objects to the definition of "Relevant Period" (Definition 15) as overbroad and not proportional to the extent it extends from "August 29, 2025 through the present date" without a defined endpoint, thereby imposing a continuing and indefinite discovery obligation that is not proportional to the needs of the case and is inconsistent with the temporal scope of the claims alleged in the Complaint.

The foregoing definition-specific objections are incorporated by reference into each response below to the extent any such defined term is used or implicated in a particular request. SkyWest's responses to individual requests are subject to all definition-specific objections set forth above, whether or not specifically restated in each response.

## RESPONSES TO REQUESTS FOR ADMISSION

10.    Admit that Sky West voluntarily provided pilot telephone numbers to designated

SAPA representatives.

**Response**: SkyWest objects to this Request on the grounds that: (1) it incorporates the defined term "SAPA Representative" (Definition 34), to which SkyWest objects as overbroad, as set forth in SkyWest's definition-specific objections above; (2) it is vague and ambiguous as to the terms "voluntarily provided" and "designated SAPA representatives," which are undefined and susceptible to multiple interpretations; (3) it calls for a legal conclusion to the extent it seeks to characterize SkyWest's arrangements with SAPA regarding access to pilot telephone numbers; and (4) it seeks information not relevant to the claims and defenses at issue, which concern Defendants' unauthorized access to and misuse of SkyWest's computer systems and confidential data, not SkyWest's separate, authorized arrangements with SAPA.

Without waiving the foregoing objections, SkyWest admits that it has granted certain designated SAPA leaders access to pilot telephone numbers through Sked+, SkyWest's electronic scheduling system, subject to the execution of nondisclosure agreements. SkyWest denies any characterization that such access was "voluntarily provided" to the extent it implies the absence of restrictions governing such access. SkyWest reserves the right to supplement this response at any time, including at trial.

11.     Admit that at least one SAPA Representative was authorized by SkyWest to access pilot telephone numbers during 2025.

**Response**: SkyWest objects to this Request on the grounds that: (1) it incorporates the defined term "SAPA Representative" (Definition 34), to which SkyWest objects as overbroad, as set forth in SkyWest's definition-specific objections above; (2) it is vague and ambiguous as to the term "authorized," which is undefined and susceptible to multiple interpretations; (3) it calls

9

for a legal conclusion to the extent "authorized" is intended to invoke or track UCADRA's or the CFAA's authorization concepts; and (4) it seeks information not relevant to the claims and defenses at issue, which concern Defendants' unauthorized access to and misuse of SkyWest's computer systems and confidential data, not SkyWest's separate, authorized arrangements with SAPA.

Without waiving the foregoing objections, SkyWest admits that it granted certain designated SAPA leaders access to pilot telephone numbers through Sked+, subject to their execution of nondisclosure agreements. SkyWest denies any characterization that such access was "authorized" to the extent it implies the absence of restrictions governing such access. SkyWest reserves the right to supplement this response at any time, including at trial.

12.    Admit that one or more Human Resources Personnel were authorized to access Pilot Contact Information, including phone number and address, during 2025.

**Response**: SkyWest objects to this Request on the grounds that (1) it incorporates the overbroad defined terms "Human Resources Personnel" (Definition 39) and "Pilot Contact Information" (Definition 14), to which SkyWest objects as set forth in its definition-specific objections above; (2) it is vague and ambiguous as to the term "authorized to access Pilot Contact Information, including phone number and address," which is undefined and susceptible to multiple interpretations; (3) it calls for a legal conclusion to the extent "authorized to access" is intended to invoke or track UCADRA's or the CFAA's authorization concepts; and (4) it seeks information not relevant to the claims and defenses at issue, which concern Defendants' unauthorized access to and misuse of SkyWest's computer systems and confidential data, not SkyWest's separate, authorized arrangements with its human resources personnel.

Without waiving the foregoing objections, SkyWest admits that role-based permissions on SWOL were granted to certain Human Resources Personnel to access personal contact fields, including phone numbers and home addresses, for legitimate business purposes, subject to their execution of nondisclosure agreements. SkyWest denies any characterization that such access was "authorized" to the extent it implies the absence of restrictions governing such access. SkyWest reserves the right to supplement this response at any time, including at trial.

13.    Admit that one or more Managers were authorized to access Pilot Contact Information, including phone number and address, during 2025.

**Response**: SkyWest objects to this Request on the grounds that (1) it incorporates the overbroad defined terms "Manager" (Definition 38) and "Pilot Contact Information" (Definition 14), to which SkyWest objects as set forth in its definition-specific objections above; (2) it is vague and ambiguous as to the term "authorized to access Pilot Contact Information, including phone number and address," which is susceptible to multiple interpretations given the overbroad definitions; (3) it calls for a legal conclusion to the extent "authorized to access" is intended to invoke or track UCADRA's or the CFAA's authorization concepts; and (4) it seeks information not relevant to the claims and defenses at issue, which concern Defendants' unauthorized access to and misuse of SkyWest's computer systems and confidential data, not SkyWest's separate, authorized arrangements with its management level personnel.

Without waiving the foregoing objections, SkyWest admits that role-based permissions on SWOL were granted to certain management level personnel to access personal contact fields, including phone numbers and home addresses, for legitimate business purposes, subject to their execution of nondisclosure agreements. SkyWest denies any characterization that such access

11

was "authorized" to the extent it implies the absence of restrictions governing such access. SkyWest reserves the right to supplement this response at any time, including at trial.

14.    Admit that SkyWest communicated with American Airlines concerning Vikaas Krithivas.

**Response**: SkyWest objects to this Request on the grounds that it is vague and ambiguous, as it fails to define the term "concerning," which could be construed to encompass any communication between SkyWest and American Airlines touching on Mr. Krithivas in any capacity, including communications having no bearing on the claims or defenses at issue in this litigation. SkyWest further objects to this Request as overly broad and not proportional to the needs of the case because it is not limited to any time period, is not limited to communications relating to Mr. Krithivas's alleged unauthorized access to and use of SkyWest's confidential information, this litigation, or the allegations in the Complaint, and is not limited to any particular subject matter or manner of communication.

Without waiving the foregoing objections, admitted. SkyWest reserves the right to supplement this response at any time, including at trial.

15.    Admit that Justin Esplin participated in estimating costs, damages, remediation expenses, investigation expenses, or response costs allegedly incurred by SkyWest arising from the allegations in the Complaint.

**Response**: SkyWest objects to this Request on the grounds that (1) it is vague and ambiguous as to the terms "participated in," "remediation expenses," "investigation expenses," and "response costs" which are susceptible to multiple interpretations; (2) it calls for a legal conclusion to the extent it asks SkyWest to characterize the nature and scope of Mr. Esplin's

involvement in damages assessment; (3) it is premature to the extent SkyWest's damages analysis is ongoing and is properly the subject of expert disclosure under Rule 26(a)(2); and (4) it seeks information protected by the attorney-client privilege and the attorney work-product doctrine to the extent it seeks to identify the scope and nature of consulting-expert analysis performed at the direction of counsel.

Without waiving the foregoing objections, admitted. SkyWest reserves the right to supplement this response at any time, including at trial.

16.　　Admit that SkyWest claims Investigation Costs, incurred from December 2025 through June 2026, are in excess of $50,000 arising from the allegations in the Complaint.

**Response**: SkyWest objects to this Request on the grounds that (1) it incorporates the defined term "Investigation Costs" (Definition 36), which is overbroad, argumentative, and designed to mischaracterize the nature of SkyWest's claimed damages, as set forth in SkyWest's definition-specific objections above; (2) it is vague and ambiguous as to the terms "Investigation Costs" and "arising from," which are susceptible to multiple interpretations; (3) it calls for a legal conclusion as to the interpretation of "Investigation Costs" with respect to "loss" under the CFAA; (4) it is premature to the extent SkyWest's damages analysis is ongoing and is properly the subject of expert disclosure under Rule 26(a)(2); and (5) it seeks information protected by the attorney-client privilege and the attorney work-product doctrine, including consulting-expert analyses.

Without waiving the foregoing objections, admitted. SkyWest reserves the right to supplement this response at any time, including at trial.

17.     Admit that SkyWest provided designated SAPA representatives access to pilot telephone numbers through Sked+.

**Response**: SkyWest objects to this Request on the grounds that (1) it is vague and ambiguous as to the terms "designated SAPA Representative" and "access," which are undefined and susceptible to multiple interpretations; (2) it calls for a legal conclusion to the extent "access" is intended to invoke or track UCADRA's or the CFAA's authorization concept; (3) it seeks information not relevant to the claims and defenses at issue, which concern Defendants' unauthorized access to and misuse of SkyWest's computer systems and confidential data, not SkyWest's separate, authorized arrangements with SAPA representatives; and (4) it is duplicative of prior requests.

Without waiving the foregoing objections, SkyWest admits that it granted certain designated SAPA leaders access to pilot telephone numbers through Sked+, subject to a nondisclosure agreement. SkyWest denies any characterization that such access implies the absence of restrictions governing such access. SkyWest reserves the right to supplement this response at any time, including at trial.

18.     Admit that SkyWest did not provide SAPA access to pilot home addresses.

**Response**: SkyWest objects to this Request on the grounds that it is vague and ambiguous as to the term "access," which is undefined and susceptible to multiple interpretations.

Without waiving the foregoing objections, admitted. SkyWest reserves the right to supplement this response at any time, including at trial.

19.    Admit that SkyWest knows the identity of the pilot referenced in Paragraph 37 of the Complaint.

**Response**: SkyWest objects to this Request on the grounds that (1) it is vague and ambiguous as to the term "knows," which is undefined and susceptible to multiple interpretations; (2) it seeks information protected by the attorney-client privilege and the attorney work-product doctrine to the extent it implicates the scope and findings of SkyWest's investigation; (3) it seeks information implicating third-party privacy interests; and (4) it is premature to the extent SkyWest's investigation is ongoing.

Without waiving the foregoing objections, admitted. SkyWest reserves the right to supplement this response at any time, including at trial.

20.    Admit that the copy of the identification badge produced by Moussaron and labeled as Moussaron000017-18 is a genuine copy of the identification badges issued by SkyWest.

**Response**: SkyWest objects to this Request on the grounds that (1) it is vague and ambiguous as to the terms "genuine copy" and "identification badges issued by SkyWest," which are undefined and susceptible to multiple interpretations; (2) SkyWest cannot verify the authenticity of a document produced by another party without independent examination of the original document; and (3) it seeks information not relevant to the claims and defenses at issue, which concern unauthorized access to and misuse of SkyWest's computer systems and confidential data.

Without waiving the foregoing objections and after making a reasonable inquiry into the genuineness of the images produced as Moussaron000017-18, SkyWest does not have sufficient

information to admit or deny this request and, on that basis, denies the request. SkyWest reserves the right to supplement this response at any time, including at trial.

21.    Admit that, during the Relevant Time for Access, SWOL server response payload (data object) to a request directed programmatically (by an automated script) to GET/OO/api/directory/empdetail/{EMPLOYEE_NUMBER} provided the same server response payload (data object) as a user who clicked on the "View" link in the SkyWest directory after searching for a particular pilot. (*See* Moussaron's Response to SkyWest's Interrogatory #8 to resolve any confusion, vagueness or ambiguity).

**Response**: SkyWest objects to this Request on the grounds that (1) it is vague and ambiguous as to the terms "server response payload (data object)," "request directed programmatically (by an automated script)," and "the same server response payload (data object)," which are undefined and susceptible to multiple interpretations; (2) it is argumentative and seeks to mischaracterize the conduct alleged in the Complaint, including by implying that the data returned by unauthorized scripted access is equivalent in legal significance to data returned by authorized manual use; (3) it calls for a legal conclusion to the extent it seeks to establish that automated scraping and authorized manual browsing are legally equivalent forms of access; (4) it is compound; (5) it is premature to the extent fact discovery and expert analysis are ongoing and the subject of forthcoming expert disclosure; (6) it seeks information protected by the attorney-client privilege and/or the attorney work-product doctrine; (7) it seeks information equally available to, and within the personal knowledge of, Defendants regarding their own conduct; and (8) it seeks information duplicative and cumulative of prior requests.

Without waiving the foregoing objections, SkyWest admits that the employee-detail endpoint (GET /OO/api/directory/empdetail/{EMPLOYEE_NUMBER}) returned the same data fields regardless of whether the request originated from a click within the Directory UI or from an automated script. SkyWest denies that this technical data conferred authorization to access, view, retrieve, compile, or use restricted fields through automated scripting, and denies any remaining characterizations or implications of this Request. SkyWest further denies that the existence of fields in a server response payload authorized Defendants to access, retrieve, compile, or use those fields. SkyWest reserves the right to supplement this response at any time, including at trial.

## ANSWERS TO INTERROGATORIES

13.     Identify every Communication between SkyWest and American Airlines concerning Daniel Moussaron, Vikaas Krithivas, or the allegations contained in the Complaint.

**Response:** SkyWest objects to this Interrogatory on the grounds that (1) it incorporates the overbroad defined terms "Communication" (Definition 10), "Identify" as applied to communications (Definition 12), and "American Airlines" (Definition 33), to which SkyWest objects as set forth in its definition-specific objections above; (2) it is overly broad, unduly burdensome, and not proportional to the needs of the case because, among other things, the phrase "every Communication" combined with the expansive definitions of "Communication" and "American Airlines" could sweep in any incidental reference to the named individuals by any SkyWest employee or agent to any of the countless individuals encompassed by the "American Airlines" definition at any time; (3) it is vague and ambiguous as to the terms "concerning Daniel Moussaron, Vikaas Krithivas, or the allegations contained in the Complaint,"

17

which are susceptible to multiple interpretations; (4) it is overly broad as it is not limited as to time; (5) it is compound; (6) it seeks information protected by the attorney-client privilege, the attorney work-product doctrine, the common-interest privilege, and/or any joint-defense or joint-litigation privilege; (7) it seeks information protected by third-party privacy interests or confidentiality obligations; and (8) it is premature to the extent SkyWest's investigation, fact discovery, and expert analysis are ongoing.

Without waiving the foregoing objections, and limited to non-privileged communications by SkyWest personnel with meaningful input into or authority over SkyWest's external communications regarding the conduct alleged in the Complaint, SkyWest responds that on February 2, 2026, Dale Hansen (General Counsel) sent an email to Nate Gatten at American Airlines attaching a copy of the filed Complaint and notifying American Airlines of the initiation of litigation against Krithivas. On or about February 4, 2026, Dale Hansen had a telephone conversation with Nate Gatten at American to answer questions about the Complaint. Russell Childs recalls speaking with an American Airlines representative about the lawsuit via telephone during the week of February 2, 2026. Mr. Childs does not recall the exact date or time of the conversation, as he speaks with American Airlines representatives on a daily basis, sometimes multiple times a day, regarding a range of business matters. To the extent responsive conversations of this nature occurred, they were short in duration and limited to the facts alleged in the Complaint. SkyWest further refers Defendant, pursuant to Rule 33(d), to documents previously produced or to be produced in this action, including SkyWest_0000475-504. SkyWest reserves the right to supplement this response at any time, including at trial.

14.     Identify the pilot referenced in Paragraph 37 of the Complaint and describe all Communications between SkyWest and that pilot concerning the allegations described therein.

**Response:** SkyWest objects to this Interrogatory on the grounds that (1) it is vague and ambiguous as to the phrase "describe all Communications between SkyWest and that pilot concerning the allegations described therein"; (2) it seeks private employee personal information not proportional to the needs of the case; (3) it seeks information protected by the attorney-client privilege and the attorney work-product doctrine to the extent it inquires into internal communications with counsel or investigation strategy; (4) it seeks information implicating third-party privacy interests; (5) it incorporates the compound and overbroad definition of "Identify" and "Communication," which are objectionable for the reasons provided in SkyWest's definitional objections above and because they are susceptible to multiple interpretations; and (6) it is compound and contains multiple discrete subparts.

Without waiving the foregoing objections, SkyWest responds that the pilot referenced in Paragraph 37 of the Complaint is a current SkyWest pilot who posted on a private pilots' Facebook group on or about January 11, 2026, reporting that he had received an unsolicited call on his personal phone from a person claiming to be a fellow SkyWest employee promoting union representation. The pilot reported that the caller claimed "we have some really smart people who know how to access private info through the back door of the company." SkyWest did not have any direct communications with this pilot concerning the allegations described in Paragraph 37. SkyWest reserves the right to supplement this response at any time, including at trial.

15.     State in detail the factual basis for SkyWest's contention that it incurred Investigation Costs, remediation costs, response costs, or damages arising from the allegations

contained in the Complaint. Include a breakdown of expenses by month and year for each category.

**Response:** SkyWest objects to this Interrogatory on the grounds that (1) it incorporates the defined term "Investigation Costs" (Definition 36), which is overbroad, argumentative, and designed to mischaracterize the nature of SkyWest's claimed damages, as set forth in SkyWest's definition-specific objections above; (2) it calls for a legal conclusion regarding the application of UCADRA's and the CFAA's defined terms; (3) it is a premature contention interrogatory to the extent it prematurely seeks a final damages quantification and breakdown before the close of fact and expert discovery—SkyWest's investigation and damages analysis are ongoing, and quantification is properly the subject of expert disclosure under Rule 26(a)(2); (4) it is compound and improperly calls for an open-ended narrative answer; (5) it is overly broad, unduly burdensome, and not proportional to the needs of the case because, among other things, it demands a granular monthly breakdown of costs when SkyWest's damages analysis has not been completed; (6) it seeks information protected by the attorney-client privilege and the attorney work-product doctrine, including investigative materials and consulting-expert analyses prepared at the direction of counsel; and (7) it is duplicative and cumulative of prior requests.

Without waiving the foregoing objections, SkyWest responds that, since the discovery of Defendants' conduct, SkyWest has incurred and continues to incur "loss" well in excess of $5,000 in a one-year period, currently estimated to total over $55,000 in investigation and response costs as of the date of these responses, including, without limitation, costs associated with: (a) forensic analysis and incident response; (b) investigation of the scope and origin of the unauthorized access; (c) strengthening, testing, and hardening SWOL and related systems against

further unauthorized access, including $15,840 in penetration testing; (d) legal and compliance review; and (e) communications with employees concerning unsolicited mass texts and calls from non-SkyWest numbers. SkyWest further incorporates its prior response to Interrogatory No. 9 of Defendant's First Set of Discovery Requests. SkyWest reserves the right to supplement this response at any time, including at trial.

16.    Identify every agreement, confidentiality agreement, nondisclosure agreement, memorandum of understanding, policy, procedure, or arrangement between SkyWest and SAPA concerning access to Pilot Contact Information, scheduling information, employee information, or other SkyWest data.

**Response**: SkyWest objects to this Interrogatory on the grounds that (1) it is overly broad, unduly burdensome, and not proportional to the needs of the case because, among other things, the phrase "every agreement" combined with the expansive list of document types sweeps far beyond what is relevant to the claims and defenses at issue; (2) it is vague and ambiguous as to the terms "arrangement" and "concerning access to Pilot Contact Information, scheduling information, employee information, or other SkyWest data," which are undefined and susceptible to multiple interpretations; (3) it is compound; (4) it seeks information not relevant to any party's claim or defense in this action, which concerns unauthorized access to and misuse of SkyWest's computer systems and confidential data, not SkyWest's authorized arrangements with SAPA, pilot scheduling, or "other SkyWest data"; (5) it seeks information protected by the attorney-client privilege and the attorney work-product doctrine; and (6) it incorporates the compound and overbroad definition of "Identify," which is susceptible to multiple interpretations.

Without waiving the foregoing objections, SkyWest responds that SAPA's access to pilot telephone numbers is governed by a nondisclosure agreement executed by the designated SAPA leaders who are granted access to Sked+. This nondisclosure agreement is in addition to, and separate from, the general confidentiality agreement that all SkyWest employees, including SAPA board members, sign upon hire. SAPA board members also execute a SAPA-specific nondisclosure agreement. SkyWest reserves the right to supplement this response at any time, including at trial.

17.     Identify every individual who held any of the following SAPA positions from January 1, 2025 through the present:

(a) President;

(b) Vice President;

(c) Secretary;

(d) Safety Chair;

(e) Reserve Chair; and

(f) PIC Chair.

**Response:** SkyWest objects to this Interrogatory on the grounds that (1) it is overly broad, unduly burdensome, and not proportional to the needs of the case because, among other things, it seeks the identity of every individual holding each of six SAPA positions over a period of more than eighteen months; (2) it seeks information not relevant to any party's claim or defense in this action; (3) it seeks information outside of SkyWest's possession, custody, or control, as SAPA is a distinct legal entity separate from SkyWest Airlines, Inc.; (4) it seeks information protected by third-party privacy interests; and (5) it is compound.

Without waiving the foregoing objections, SkyWest responds that, to the extent information is within its possession, custody, or control, SAPA's leadership since January 1, 2025, includes: President: Aric Arnold, Gerry Hamontree, John Peeps; Vice President: Osama Gataani; Secretary: John Peeps, Mike Leaver; Safety Chair: Mike Leaver, Nathan Babcock; Reserve Chair: Ryan Ellingson; and PIC Chair: Mike Leaver, Sam Greenfield. SkyWest reserves the right to supplement this response at any time, including at trial.

18.     For the period January 1, 2025 through January 31, 2026, identify the number of SkyWest employees authorized to access Pilot Contact Information, including phone number and address.

**Response:** SkyWest objects to this Interrogatory on the grounds that (1) it is vague and ambiguous as to the phrase "authorized to access Pilot Contact Information, including phone number and address," which is susceptible to multiple interpretations; (2) it calls for a legal conclusion to the extent "authorized to access" is intended to invoke or track UCADRA's or the CFAA's authorization concepts; (3) it is overly broad, unduly burdensome, and not proportional to the needs of the case because, among other things, it seeks a precise numerical count of all authorized employees across multiple systems without reasonable limitation; (4) it is compound; (5) it uses the defined term "Pilot Contact Information," which is overbroad and susceptible to multiple interpretations; (6) it is premature to the extent SkyWest's investigation and expert analysis are ongoing; and (7) it is not relevant or proportional to the needs of this case.

Without waiving the foregoing objections, SkyWest responds that SWOL applies role-based restrictions such that only certain executive, HR, and management roles may view personal cell phone numbers and home addresses in the Directory UI. Access to personal contact

23

information at SkyWest is generally compartmentalized on a need-to-know basis according to job responsibilities, and is controlled through passwords and role-based permissions within the relevant databases and systems, including SWOL and Sked+. SkyWest further responds that approximately 250 users had access to pilot telephone numbers and addresses through CrewTrac's Crew Information Report and Crew Detail Screen; approximately 80 users had access to the Employee Address Listing Report in UltiPro; approximately 100 Payroll, Human Resources, and Benefits employees had access to the Employee Detail Screen in UltiPro; and approximately 90 Human Resources, Benefits, and similarly situated employees had access to view all employees' contact information through i-Manage for SkyWest Online. Over 99% of pilots are front-line users with role-based permissions that do not permit them to view personal cell phone numbers or home addresses of other employees. Additionally, six designated SAPA leaders have access to pilot telephone numbers through Sked+. SkyWest does not maintain a standing list of employees that have access to pilot contact information. SkyWest reserves the right to supplement this response at any time, including at trial.

19.     Identify every job title, position, or employee classification authorized to access pilot telephone numbers, pilot home addresses, or both, through SWOL, the Directory application, Sked+, or any other SkyWest System during 2025.

**Response**: SkyWest objects to this Interrogatory on the grounds that (1) it is overly broad, unduly burdensome, and not proportional to the needs of the case because, among other things, it seeks the identity of "every" job title, position, or classification with access across multiple systems without reasonable limitation; (2) it is vague and ambiguous as to the phrases and terms "job title," "position," "employee classification," and "authorized to access pilot

telephone numbers, pilot home addresses, or both," which are undefined and susceptible to multiple interpretations; (3) it calls for a legal conclusion to the extent "authorized to access" is intended to invoke or track UCADRA's or the CFAA's authorization concepts; (4) it is compound; (5) it uses the defined term "SkyWest System," which is overbroad and susceptible to multiple interpretations; (6) it seeks security-sensitive and personally identifiable information; and (7) it incorporates the compound and overbroad definition of "Identify."

Without waiving the foregoing objections, and limited to the systems at issue in this action, SkyWest responds as follows: SkyWest does not maintain a list of job titles that have access to pilot phone numbers or home addresses. Access to information at SkyWest, including within SWOL and Sked+, is generally compartmentalized on a need-to-know basis according to job responsibilities, and is enforced through passwords and role-based permissions within those systems. With respect to SWOL, roles with management/HR/executive entitlements (those with "isManager" or equivalent privileges) were authorized to view personal cell phone numbers and home addresses in the Directory UI during 2025. With respect to Sked+, six designated SAPA leaders were authorized to view pilot telephone numbers, subject to their execution of nondisclosure agreements. With respect to CrewTrac, employees with access to the Crew Information Report and Crew Detail Screen were authorized to view pilot telephone numbers and addresses. With respect to UltiPro, employees with access to the Employee Address Listing Report and Payroll, Human Resources, and Benefits employees with access to the Employee Detail Screen were authorized to view pilot telephone numbers and addresses. With respect to SkyWest Online, only managers and above were authorized to view pilot contact information and addresses through the Company Directory, except that managers and their assigned

administrators could view contact information for their downline employees through i-Manage. Human Resources, Benefits, and similarly situated employees with i-Manage "View All" access could view all employees' contact information. SkyWest reserves the right to supplement this response at any time, including at trial.

20.     Identify all SkyWest employees or agents who communicated with SAPA concerning ALPA, union organizing, Daniel Moussaron, Vikaas Krithivas, pilot contact information, SWOL, or this litigation.

**Response:** SkyWest objects to this Interrogatory on the grounds that (1) it incorporates the overbroad defined terms "Communication" (Definition 10), "Communicated" (Definition 26), "SAPA Representative" (Definition 34), and "Union-Related Communication" (Definition 35), to which SkyWest objects as set forth in its definition-specific objections above; (2) it is overly broad, unduly burdensome, and not proportional to the needs of the case because, among other things, the phrase "all SkyWest employees or agents who communicated with SAPA" concerning a broad range of topics is vague and could sweep in any incidental reference by any SkyWest employee or agent at any time; (3) it seeks information not relevant to any party's claim or defense in this action, which concerns unauthorized access to and misuse of SkyWest's computer systems and confidential data, not SkyWest's internal communications regarding ALPA or union organizing or general information concerning pilot contact information or SWOL; (4) SkyWest's prior position regarding requests directed to internal management communications about ALPA or union organizing is incorporated here; (5) it seeks information protected by the attorney-client privilege, the attorney work-product doctrine, and confidential employee-relations strategy; (6) it is vague and ambiguous as to the terms "communicated with

SAPA concerning" the listed topics; (7) it is overly broad as it is not limited as to time; (8) it is compound; and (9) it seeks information protected by third-party privacy interests.

Without waiving the foregoing objections, SkyWest responds as follows: SkyWest stands by its objections for the reasons stated above and, at this time, will not produce any information in response to this request. However, SkyWest remains willing to meet and confer to discuss narrowing the scope of the request and clarifying any vague or ambiguous terms to ensure compliance with the applicable rules. SkyWest reserves the right to supplement this response at any time, including at trial.

21.    Identify all SkyWest employees or agents who communicated with any Third Party concerning Daniel Moussaron, Vikaas Krithivas, or the allegations contained in the Complaint.

**Response:** SkyWest objects to this Interrogatory on the grounds that (1) it incorporates the overbroad defined terms "Third Party" (Definition 18), "Communication" (Definition 10), "Identify" as applied to communications (Definition 12), and "Communicated" (Definition 26), to which SkyWest objects as set forth in its definition-specific objections above; (2) it is overly broad, unduly burdensome, and not proportional to the needs of the case because, among other things, the phrases "all SkyWest employees or agents" combined with "any Third Party" (defined to include any person or entity in the world other than SkyWest and Defendants) are vague and could sweep in any incidental reference by any SkyWest employee or agent to any third party at any time; (3) it is vague and ambiguous as to the terms "communicated with any Third Party concerning" the listed individuals and topics; (4) it is overly broad as it is not limited as to time; (5) it is compound; (6) it seeks information protected by the attorney-client privilege,

27

the attorney work-product doctrine, the common-interest privilege, and/or any joint-defense or joint-litigation privilege; (7) it seeks information protected by third-party privacy interests or confidentiality obligations; (8) it is duplicative of Interrogatory No. 11 from Defendant's First Set of Discovery Requests; and (9) it is premature to the extent SkyWest's investigation is ongoing.

Without waiving the foregoing objections, SkyWest responds as follows: SkyWest stands by its objections for the reasons stated above and, at this time, will not produce any information in response to this request. However, SkyWest remains willing to meet and confer to discuss narrowing the scope of the request and clarifying any vague or ambiguous terms to ensure compliance with the applicable rules. SkyWest reserves the right to supplement this response at any time, including at trial.

## RESPONSES TO REQUESTS FOR PRODUCTION

13.     All Communications between SkyWest and American Airlines concerning Daniel Moussaron, Vikaas Krithivas, this litigation, pilot hiring, pilot employment, pilot discipline, or the allegations contained in the Complaint.

**Response:** SkyWest objects to this Request on the grounds that (1) it incorporates the overbroad defined terms "Communication" (Definition 10), "American Airlines" (Definition 33), and "Document" (Definition 6), to which SkyWest objects as set forth in its definition-specific objections above; (2) it is overly broad, unduly burdensome, and not proportional to the needs of the case because, among other things, the phrase "All Communications" combined with the expansive definitions of "Communication" and "American Airlines" sweeps far beyond what is relevant to the claims and defenses at issue, and has no temporal limitation; (3) it is vague and

28

ambiguous as to the terms "pilot hiring, pilot employment, pilot discipline," which are susceptible to multiple interpretations and could encompass routine business communications unrelated to this litigation; (4) it is overly broad as it is not limited as to time; (5) it is compound; (6) it seeks documents protected by the attorney-client privilege, the attorney work-product doctrine, the common-interest privilege, and/or any joint-defense or joint-litigation privilege; (7) it seeks documents subject to confidentiality obligations to third parties; (8) it seeks documents that may implicate third-party privacy interests; and (9) it seeks duplicative and cumulative information from prior requests.

Without waiving the foregoing objections, SkyWest has produced all responsive non-privileged communications between SkyWest and American Airlines relating to Moussaron, Krithivas, and the conduct alleged in the Complaint from the time period of January 1, 2026, to the present, if any, that it can locate through a diligent search and reasonable inquiry. SkyWest refers Defendant to SkyWest_0000475-504. SkyWest reserves the right to supplement this response at any time, including at trial.

14.    All Communications between SkyWest and any airline, aviation employer, recruiter, staffing company, labor organization, pilot association, or prospective employer concerning Daniel Moussaron or Vikaas Krithivas.

**Response**: SkyWest objects to this Request on the grounds that (1) it incorporates the overbroad defined terms "Communication" (Definition 10) and "Third Party" (Definition 18), and further implicitly invokes the expansive "Relates to" definition (Definition 19), to which SkyWest objects as set forth in its definition-specific objections above; (2) it is overly broad, unduly burdensome, and not proportional to the needs of the case because, among other things,

29

the phrase "any airline, aviation employer, recruiter, staffing company, labor organization, pilot association, or prospective employer" is extraordinarily expansive and untethered to the specific claims at issue, and has no temporal limitation; (3) it is vague and ambiguous; (4) it is overly broad as it is not limited as to time; (5) it is compound; (6) it seeks documents protected by the attorney-client privilege, the attorney work-product doctrine, and the common-interest privilege; (7) it seeks documents subject to confidentiality obligations to third parties; and (8) it seeks documents that may implicate third-party privacy interests.

Without waiving the foregoing objections, SkyWest will produce responsive non-privileged communications between SkyWest and other airlines or staffing company relating to Daniel Moussaron or Vikaas Krithivas and the conduct alleged in the Complaint from January 1, 2026 to the present, if any, that it can locate through a diligent search and reasonable inquiry. SkyWest reserves the right to supplement this response at any time, including at trial.

15.    All telephone records, call logs, Teams records, Zoom records, Google Meet records, calendar invitations, or other Documents sufficient to identify Communications between SkyWest personnel and American Airlines personnel, SAPA Representatives, or ALPA representatives concerning the subject matter of this litigation.

**Response:** SkyWest objects to this Request on the grounds that (1) it is overly broad, unduly burdensome, and not proportional to the needs of the case because, among other things, it seeks "All telephone records, call logs, Teams records, Zoom records, Google Meet records, calendar invitations" without reasonable limitation as to custodian, time period, or specific subject matter; (2) it is vague and ambiguous as to the terms and phrases "telephone records," "call logs," "Team records," "Zoom records," "Google Meet records," "calendar invitations,"

30

"other Documents," "personnel," and "concerning the subject matter of this litigation," which are undefined and susceptible to multiple interpretations; (3) it is compound; (4) it seeks documents protected by the attorney-client privilege, the attorney work-product doctrine, and the common-interest privilege; (5) it seeks documents implicating third-party privacy interests; (6) it is overly broad as it is not limited as to time; and (7) it seeks information that is duplicative and cumulative of information sought in prior requests.

Without waiving the foregoing objections, SkyWest refers Defendant to its prior produced communications with American Airlines and ALPA representatives concerning the subject matter of the litigation. *See* SkyWest_0000463-504. SkyWest further stands by its objections for the reasons stated above and, at this time, will not produce any information in response to this request. However, SkyWest remains willing to meet and confer to discuss narrowing the scope of the request and clarifying any vague or ambiguous terms to ensure compliance with the applicable rules. SkyWest reserves the right to supplement this response at any time, including at trial.

16.     All Communications involving Dale Hansen, Chip Childs, Todd Emerson, Justin Esplin, Tracy Gallo, Kari Tate, Marissa Snow, Robert Simmons, Anita Spencer, Seilose Fa'Ulao, or Jessica Mulligan containing the terms ALPA, union, organizing, SAPA, Moussaron, Krithivas, SWOL, Directory, pilot contact information, or solicitation.

**Response:** SkyWest objects to this Request on the grounds that (1) it incorporates the overbroad defined terms "Communication" (Definition 10) and "Document" (Definition 6), and to the extent the search terms implicate the defined terms "Union-Related Communication" (Definition 35) and "SAPA Representative" (Definition 34), SkyWest objects to those definitions

31

as set forth above; (2) it is overly broad, unduly burdensome, and not proportional to the needs of the case because, among other things, it targets eleven named custodians and ten broad search terms without any meaningful limitation as to time period, context, or relevance to the claims at issue, which would require SkyWest to process, search, and review tens of thousands of documents many of which are completely irrelevant to the claims or defenses in this litigation; (3) it is vague and ambiguous as to the terms "containing the terms" and the listed search terms, which could sweep in vast quantities of irrelevant communications; (4) it seeks information not relevant to any party's claim or defense to the extent it seeks communications about ALPA, union organizing, or SAPA that are unrelated to the unauthorized-access and data-misuse claims at issue; (5) it is compound; (6) it seeks documents protected by the attorney-client privilege, the attorney work-product doctrine, and confidential employee-relations strategy; (7) it seeks information protected by third-party privacy interests; and (8) it is overly broad as it is not limited as to time.

Without waiving the foregoing objections, SkyWest stands by its objections for the reasons stated above and, at this time, will not produce any information in response to this request. However, SkyWest remains willing to meet and confer to discuss narrowing the scope of the request and clarifying any vague or ambiguous terms to ensure compliance with the applicable rules. SkyWest reserves the right to supplement this response at any time, including at trial.

17.     All complaints, reports, emails, text messages, Teams messages, hotline reports, social media posts, screenshots, Facebook posts, investigative notes, or other Documents relating to the allegations described in Paragraph 37 of the Complaint.

32

**Response:** SkyWest objects to this Request on the grounds that (1) it is overly broad, unduly burdensome, and not proportional to the needs of the case because, among other things, it seeks "All complaints, reports, emails, text messages, Teams messages, hotline reports, social media posts, screenshots, Facebook posts, investigative notes, or other Documents" without reasonable limitation as to custodian, time period, or document type; (2) it is vague and ambiguous as to the terms and phrases "complaints," "reports," "emails," "text messages," "Teams messages," "hotline reports," "social media posts," "screenshots," "Facebook posts," "investigative notes," "other Documents," and "relating to the allegations described in Paragraph 37 of the Complaint," which are undefined sand susceptible to multiple interpretations; (3) it is compound; (4) it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine, including investigative materials prepared by or at the direction of counsel; (5) it seeks documents implicating third-party privacy interests, including confidential personal information of employees who reported concerns; and (6) it is premature to the extent SkyWest's investigation is ongoing.

Without waiving the foregoing objections, SkyWest has previously produced a non-privileged document relating to the complaint described in Paragraph 37 of the Complaint, including the Facebook post referenced therein (SkyWest_000015) and a log of related complaints and non-privileged communications concerning those complaints (SkyWest_000505-20). SkyWest will produce additional responsive, non-privileged documents evidencing Defendants' improper access to and use of SkyWest Confidential Information, if any, that it can locate through a diligent search and reasonable inquiry. SkyWest reserves the right to supplement this response at any time, including at trial.

18.    All Documents relied upon by Justin Esplin in calculating, estimating, supporting, or communicating any alleged Investigation Costs, remediation costs, response costs, losses, damages, or harm arising from the allegations in the Complaint.

**Response:** SkyWest objects to this Request on the grounds that (1) it is overly broad, unduly burdensome, and not proportional to the needs of the case because, among other things, the phrase "All Documents relied upon by Justin Esplin" is vague and sweeps in potentially voluminous categories of documents; (2) it is vague and ambiguous as to the terms "relied upon," "calculating, estimating, supporting, or communicating" and "remediations costs, response costs, losses, damages, or harm arising from the allegations in the Complaint," which contain undefined terms and are susceptible to multiple interpretations; (3) it is compound; (4) it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine, including investigative materials, consulting-expert analyses, and materials prepared at the direction of counsel; (5) it is premature in light of the timing of expert disclosures and the ongoing nature of SkyWest's damages analysis; (6) it seeks confidential, proprietary, and/or security-sensitive information; and (7) it is duplicative and cumulative of prior requests.

Without waiving the foregoing objections, SkyWest will produce responsive, non-privileged invoices, expense reports, work orders, and purchase orders in its possession, custody, or control that were relied upon by Justin Esplin in calculating, estimating, supporting, or communicating any alleged Investigation Costs, remediation costs, response costs, losses, damages, or harm arising from the allegations in the Complaint, if any, that it can locate through a diligent search and reasonable inquiry. SkyWest reserves the right to supplement this response at any time, including at trial.

34

19.    All invoices, timesheets, billing records, accounting records, expense reports, consultant invoices, forensic reports, work orders, purchase orders, or cost summaries supporting any claim for Investigation Costs.

**Response:** SkyWest objects to this Request on the grounds that (1) it is overly broad, unduly burdensome, and not proportional to the needs of the case because, among other things, the extensive list of document types ("All invoices, timesheets, billing records, accounting records, expense reports, consultant invoices, forensic reports, work orders, purchase orders, or cost summaries") sweeps in voluminous categories of documents; (2) it is vague and ambiguous as to the scope of "supporting any claim for Investigation Costs" and the terms "invoices, timesheets, billing records, accounting records, expense reports, consultant invoices, forensic reports, work orders, purchase orders, or cost summaries," which contain undefined terms and are susceptible to multiple interpretations; (3) it is compound; (4) it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine; (5) it is premature in light of the timing of expert disclosures and the ongoing nature of SkyWest's damages analysis; (6) it seeks confidential, proprietary, and/or security-sensitive information; and (7) it is duplicative and cumulative of prior requests.

Without waiving the foregoing objections, SkyWest will produce responsive, non-privileged invoices, expense reports, work orders, and purchase orders evidencing its investigation costs, if any, that it can locate through a diligent search and reasonable inquiry. SkyWest reserves the right to supplement this response at any time, including at trial.

20.    All Documents reflecting time spent by Justin Esplin, any member of SkyWest's Information Technology Department, Security Department, Legal Department, Human

35

Resources Department, or any outside consultant investigating or responding to the allegations contained in the Complaint.

**Response:** SkyWest objects to this Request on the grounds that (1) it is overly broad, unduly burdensome, and not proportional to the needs of the case because, among other things, it seeks "All Documents reflecting time spent" by numerous individuals and entire departments without reasonable limitation; (2) it is vague and ambiguous as to the terms "Information Technology Department," "Security Department," "Legal Department," "Human Resources Department," which are undefined and susceptible to multiple interpretations; (3) it is compound; (4) it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine, including investigative materials, consulting-expert analyses, and materials prepared at the direction of counsel; (5) it is premature in light of the timing of expert disclosures and the ongoing nature of SkyWest's damages analysis; (6) it seeks confidential, proprietary, and/or security-sensitive information; and (7) it sweeps in entire departments ("Information Technology Department, Security Department, Legal Department, Human Resources Department") without limitation to specific custodians or timeframes, which, when paired with the request for "All Documents," will be unduly burdensome and overbroad.

Without waiving the foregoing objections, SkyWest will produce responsive non-privileged timesheets, invoices, expense reports, work orders, and purchase orders evidencing time spent by time spent by Justin Esplin investigating or responding to the allegations contained in the Complaint, if any, that it can locate through a diligent search and reasonable inquiry. SkyWest reserves the right to supplement this response at any time, including at trial.

36

21.     All Communications in which Justin Esplin discussed, estimated, calculated, reported, or summarized Investigation Costs, remediation costs, damages, losses, or expenses arising from the allegations contained in the Complaint.

**Response:** SkyWest objects to this Request on the grounds that (1) it is overly broad, unduly burdensome, and not proportional to the needs of the case because, among other things, it seeks "All Communications" by Justin Esplin regarding costs without reasonable limitation as to time, context, or recipient; (2) it is vague and ambiguous as to the terms "discussed, estimated, calculated, reported, or summarized"; (3) it is compound; (4) it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine, including communications with or at the direction of counsel regarding damages assessment and litigation strategy; (5) it is premature in light of the timing of expert disclosures; and (6) it seeks confidential and proprietary information.

Without waiving the foregoing objections, after a diligent search and reasonable inquiry, SkyWest has no responsive communications by Justin Esplin regarding investigation and response costs that are not protected by the attorney-client privilege or attorney work-product doctrine. SkyWest reserves the right to supplement this response at any time, including at trial.

22.     All agreements, confidentiality agreements, nondisclosure agreements, memoranda of understanding, policies, procedures, access agreements, or data-sharing agreements governing SAPA's access to Pilot Contact Information, scheduling information, employee information, or other SkyWest data.

**Response:** SkyWest objects to this Request on the grounds that (1) it is overly broad, unduly burdensome, and not proportional to the needs of the case because, among other things, it

37

seeks "All agreements" and related documents governing SAPA's access across multiple categories of information without reasonable limitation as to time; (2) it is vague and ambiguous; (3) it is compound; (4) it seeks information not relevant to any party's claim or defense in this action, which concerns unauthorized access to and misuse of SkyWest's computer systems and confidential data; and (5) it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine.

Without waiving the foregoing objections, SkyWest stands by its objections for the reasons stated above and, at this time, will not produce any information in response to this request. However, SkyWest remains willing to meet and confer to discuss narrowing the scope of the request and clarifying any vague or ambiguous terms to ensure compliance with the applicable rules. SkyWest reserves the right to supplement this response at any time, including at trial.

23.     All amendments, revisions, renewals, replacements, addenda, supplements, or Communications relating to any agreement identified in Request for Production No. 22.

**Response:** SkyWest objects to this Request on the grounds that (1) it is overly broad, unduly burdensome, and not proportional to the needs of the case because, among other things, it seeks all such amendments or revisions to any agreement without reasonable limitations as to time or subject matter; (2) it is vague and ambiguous as to the terms "amendments, revisions, renewals, replacements, addenda, supplements" and the phrase "Communications relating to any agreement," which are undefined and susceptible to multiple interpretations; (3) it is compound; (4) it seeks information not relevant to any party's claim or defense in this action; and (5) it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine.

38

Without waiving the foregoing objections, SkyWest responds as follows: SkyWest stands by its objections for the reasons stated above and, at this time, will not produce any information in response to this request. However, SkyWest remains willing to meet and confer to discuss narrowing the scope of the request and clarifying any vague or ambiguous terms to ensure compliance with the applicable rules. SkyWest reserves the right to supplement this response at any time, including at trial.

24.     All requests made to Anita Spencer, Crew Support, or any other SkyWest employee seeking SAPA access to pilot telephone numbers, scheduling information, Sked+, or other pilot information from January 1, 2025 through the present.

**Response**: SkyWest objects to this Request on the grounds that (1) it is overly broad, unduly burdensome, and not proportional to the needs of the case because, among other things, it seeks "All requests" made to named individuals or "any other SkyWest employee" over a period exceeding eighteen months; (2) it is vague and ambiguous as to the terms "seeking SAPA access to pilot telephone numbers, scheduling information, Sked+, or other pilot information," which are undefined and susceptible to multiple interpretations; (3) it is compound; (4) it seeks information not relevant to any party's claim or defense in this action; (5) it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine; and (6) it is overly broad as it extends "through the present" with no defined endpoint.

Without waiving its foregoing objections, SkyWest responds as follows: SkyWest stands by its objections for the reasons stated above and, at this time, will not produce any information in response to this request. However, SkyWest remains willing to meet and confer to discuss narrowing the scope of the request and clarifying any vague or ambiguous terms to ensure

39

compliance with the applicable rules. SkyWest reserves the right to supplement this response at any time, including at trial.

25.     All Documents sufficient to show which categories of SkyWest personnel were authorized to access pilot telephone numbers, pilot home addresses, or both, through SWOL, the Directory application, Sked+, or any other SkyWest System during the period January 1, 2025 through January 31, 2026.

**Response:** SkyWest objects to this Request on the grounds that (1) it is overly broad, unduly burdensome, and not proportional to the needs of the case because, among other things, it seeks "All Documents sufficient to show" access authorization across multiple systems over a thirteen-month period without reasonable limitation as to custodian or document type; (2) it is vague and ambiguous as to "which categories of SkyWest personnel were authorized to access" and "any other SkyWest System," which are undefined and susceptible to multiple interpretations; (3) it calls for a legal conclusion to the extent "authorized to access" is intended to invoke or track statutory authorization concepts; (4) it is compound; (5) it uses the defined term "SkyWest System," which is overbroad; (6) it seeks security-sensitive information; (7) it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine; and (8) it seeks documents that do not exist or are not in SkyWest's possession, custody, or control.

Without waiving the foregoing objections, after a reasonably diligent search and reasonable inquiry, SkyWest responds that it does not have any responsive, non-privileged documents. SkyWest reserves the right to supplement this response at any time, including at trial.

26.     All Documents representing "reports" that a large number of SkyWest pilots received unsolicited text messages referenced in SkyWest's Response to Moussaron's Expedited Interrogatory #4.

**Response:** SkyWest objects to this Request on the grounds that (1) it is vague and ambiguous as to the term "reports" and "All Documents representing" such reports; (2) it is overly broad, unduly burdensome, and not proportional to the needs of the case because, among other things, the phrase the term "reports" and the phrase "a large number of SkyWest pilots received unsolicited text messages" could encompass numerous informal reports, complaints, and communications by or about individual pilots; (3) it is compound; (4) it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine, including documents compiled in the course of SkyWest's investigation; (5) it seeks documents implicating third-party privacy interests, including personal information of SkyWest pilots who reported concerns; and (6) it is premature to the extent SkyWest's investigation is ongoing.

Without waiving the foregoing objections, SkyWest refers Defendant to previously produced documents at SkyWest_0000505-520. SkyWest will produce responsive, non-privileged reports made by SkyWest pilots regarding unsolicited text messages, if any, that it can locate through a diligent search and reasonable inquiry. SkyWest reserves the right to supplement this response at any time, including at trial.

27.     All Documents representing "reports" of misuse of pilot contact information referenced in SkyWest's Response to Moussaron's Expedited Interrogatory #5.

**Response:** SkyWest objects to this Request on the grounds that (1) it is vague and ambiguous as to the term "reports" and phrase "All Documents representing" such reports, which

are undefined and susceptible to multiple interpretations; (2) it is overly broad, unduly burdensome, and not proportional to the needs of the case; (3) it is compound; (4) it seeks documents protected by the attorney-client privilege and the attorney work-product doctrine, including documents compiled in the course of SkyWest's investigation; (5) it seeks documents implicating third-party privacy interests; and (6) it is premature to the extent SkyWest's investigation is ongoing.

Without waiving the foregoing objections, SkyWest will produce responsive, non-privileged reports made by SkyWest pilots regarding the misuse of pilot contact information, if any, that it can locate through a diligent search and reasonable inquiry. SkyWest also refers Defendant to previously produced documents at SkyWest_0000505-520. SkyWest reserves the right to supplement this response at any time, including at trial.

Dated this 20th day of July, 2026.

HOLLAND & HART LLP

*/s/ Zachary T. Burford*
Gregory M. Saylin
Tyson C. Horrocks
Zachary T. Burford

*Attorneys for Plaintiff and Counterclaim Defendant SkyWest Airlines, Inc.*

42

**CERTIFICATE OF SERVICE**

I hereby certify that on the 20th day of July, 2026, I caused a true and correct copy of the foregoing **PLAINTIFF SKYWEST'S RESPONSE TO DEFENDANT KRITHIVAS' SECOND SET OF DISCOVERY REQUESTS** to be served via email on counsel of record as follows:

Jonathan K. Thorne
Lauren I. Scholnick
SCHOLNICK THORNE HOLLAND
40 South 600 East
Salt Lake City, Utah 84102
jonathan@utahjobjustice.com
lauren@utahjobjustice.com

John E. Holland *(Admitted Pro Hac Vice)*
jack@laborwest.com

*Attorneys for Defendant Daniel Moussaron*

Timothy D. Ducar
Scott C. Uthe *(Admitted Pro Hac Vice)*
LAW OFFICES OF TIMOTHY D. DUCAR, PLC
9280 E. Raintree Drive, Suite 104
Scottsdale, AZ 85260
tducar@azlawyers.com
suthe@azlawyers.com
orders@azlawyers.com

*Attorneys for Defendant Vikaas Krithivas*

*/s/ Zachary T. Burford*

43

38213119

44