Timothy D. Ducar (13423)
Scott C. Uthe (PHV)
LAW OFFICES OF TIMOTHY D. DUCAR, PLC
9280 E. Raintree Drive, Suite 104
Scottsdale, AZ  85260
Telephone: (480) 502-2119
Facsimile: (480) 452-0900
orders@azlawyers.com
*Attorneys for Defendant Vikaas Krithivas*

Jonathan K. Thorne (Utah Bar No. 12694)
Lauren I. Scholnick (Utah Bar No. 7776)
John E. Holland (Admitted Pro Hac Vice)
SCHOLNICK THORNE HOLLAND
40 South 600 East
Salt Lake City, Utah 84102
Telephone: (801) 359-4169
jonathan@utahjobjustice.com
lauren@utahjobjustice.com
jack@laborwest.com
*Attorneys for Defendant and Counterclaim Plaintiff Daniel Moussaron*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH – SOUTHERN DIVISION

| | |
|---|---|
| SKYWEST AIRLINES, INC., <br><br>     Plaintiff and Counterclaim Defendant, <br><br> vs. <br><br> DANIEL MOUSSARON, <br><br>     Defendant and Counterclaim Plaintiff, <br><br> and VIKAAS KRITHIVAS, <br><br>     Defendant. | **DEFENDANTS' JOINT MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS UNDER RULE 12(c)** <br><br> Civil No. 4:26-cv-00015-DN-PK <br><br> Senior District Judge David Nuffer <br> Magistrate Judge Paul Kohler |

Defendants Daniel Moussaron and Vikaas Krithivas jointly move under Federal Rule of

Civil Procedure 12(c) for partial judgment on the pleadings on SkyWest Airlines, Inc.'s Third

Cause of Action under the Computer Fraud and Abuse Act ("CFAA") and Fourth Cause of Action under the Utah Computer Abuse and Data Recovery Act of 2016 ("UCADRA").[1]

CFAA Section 1030(a)(2)(C) prohibits a person from intentionally accessing a computer without authorization or exceeding authorized access and thereby obtaining information from a protected computer.[2] The CFAA defines "exceeds authorized access" to mean using authorized computer access "to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter."[3] The Supreme Court in *Van Buren* performed a detailed textual analysis of that definition and held that a police officer who had authorized access to a law-enforcement database did not "exceed authorized access" merely because he retrieved information for an improper purpose. The Court described the statute as adopting a "gates-up-or-down" inquiry.[4]

UCADRA governs specified conduct by an "unauthorized user" of a protected computer.[5] Under UCADRA, a person is an "unauthorized user" only if the person (1) is not an "authorized user" and (2) accesses a protected computer by either obtaining an authorized user's technological access barrier without that user's permission or circumventing, without the protected computer owner's permission, a technological access barrier on the protected computer.[6] UCADRA defines a "technological access barrier" as "a password, security code, token, key fob, access device, or other digital security measure."[7] A company policy or contractual use restriction is not itself a technological access barrier. Defendants have identified no published Utah appellate decision or reported federal decision interpreting UCADRA.

---

[1]   Fed. R. Civ. P. 12(c); 18 U.S.C. § 1030; Utah Code Ann. § 63D-3-101 et seq.
[2]   18 U.S.C. § 1030(a)(2)(C).
[3]   18 U.S.C. § 1030(e)(6).
[4]   *Van Buren v. United States*, 593 U.S. 374, 389–96 (2021).
[5]   Utah Code Ann. § 63D-3-101 et seq.
[6]   Utah Code Ann. § 63D-3-102(9).
[7]   Utah Code Ann. § 63D-3-102(7).

SkyWest alleges in its Complaint (Dkt. 1) that Defendants violated both statutes, relying on several theories to advance its claims. However, as detailed below, most of SkyWest's theories under the CFAA and UCADRA, as alleged in the Complaint, should be dismissed under Rule 12(c).

**RELIEF REQUESTED AND GROUNDS**

The motion presents legal questions that do not require the Court to decide whether Defendants actually circumvented a computer-access control. Defendants do not contend that the Railway Labor Act ("RLA") authorizes hacking. They contend that SkyWest cannot use a protected union organizing purpose, a company policy, or an alleged nondisclosure agreement to supply the statutory access element of either computer statute.

The Complaint alleges that Moussaron entered SkyWest Online ("SWOL") using his own SkyWest employee ID and password and completed multifactor authentication ("MFA"). It alleges the same as to Krithivas.[8] Those allegations foreclose any SkyWest theory that the challenged sessions were unauthorized because Defendants entered as outsiders, stole credentials, impersonated another user, defeated MFA, or accessed SWOL after complete revocation. SkyWest separately alleges that Defendants used developer tools or a program to circumvent role-based controls governing particular fields.[9] That separate allegation may be tested on its own terms, but an alleged company-policy prohibition or company-disapproved use of accessed data is insufficient, by itself, to establish unauthorized access under either statute.

Defendants request an order:

---

[8]    Compl., Dkt. 1, ¶¶ 23, 29.
[9]    *Id.* ¶¶ 22, 33, 58, 65.

Dismissing or limiting CFAA and UCADRA claims to those where SkyWest can demonstrate that a Defendant bypassed SWOL security for access or used a third party's credentials to access SWOL.

## INTRODUCTION

The Complaint identifies two questions SkyWest repeatedly combines: why the pilot contact information was allegedly used and how it was obtained. As to the purpose for which the contact information was used, Moussaron admits that he provided pilot contact information to an Air Line Pilots Association ("ALPA") representative for union organizing and helped send one text message to gauge pilots' interest in ALPA representation.[10] The Complaint describes only "mass messages" about matters supposedly unrelated to legitimate SkyWest business and does not disclose that the text was a poll asking whether pilots were interested in forming an ALPA-affiliated union.[11] As to the method of access, SkyWest alleges both that each Defendant used the credentials SkyWest issued to him and that Defendants used developer tools or a program to circumvent field-level restrictions.[12]

The law treats those questions differently. The RLA protects employees' right to organize and assist in organizing and prohibits a carrier from interfering with employee organization.[13] That protection does not immunize independently unlawful acquisition of information. But the organizing purpose cannot itself become the hacking element merely because SkyWest calls it nonbusiness, unauthorized, disloyal, or contrary to company policy.[14]

---

[10]   Moussaron Answer, Dkt. 47 ¶ 36.
[11]   Dkt. 1, ¶ 36.
[12]   *Id.* ¶¶ 22–23, 29, 33.
[13]   45 U.S.C. §§ 152 Third, Fourth, 181.
[14]   *See SkyWest Pilots ALPA Org. Comm. v. SkyWest Airlines, Inc.*, No. C 07-2688 CRB, 2007 WL 1848678, at *12–15 (N.D. Cal. June 27, 2007)(unpublished).

The CFAA likewise regulates prohibited access, not disfavored use. Under *Van Buren*, a person who has authorized computer access "exceeds authorized access" only by obtaining information from a computer area to which that access does not extend.[15] An improper motive, workplace-policy violation, or later misuse does not lower an otherwise open gate. UCADRA is more method-specific: an "unauthorized user" must access by obtaining another authorized user's technological access barrier without permission or by circumventing the owner's technological access barrier.[16]

The Court therefore need not decide the disputed technical facts to narrow the case. It may allow a properly pleaded technical-circumvention theory to proceed while entering judgment against the legally invalid alternatives based on organizing purpose, SkyWest policy, the alleged NDAs, automated retrieval, bulk retrieval, and post-access use of the contact information.

## THE RELEVANT PLEADINGS AND INCORPORATED AGREEMENTS

### A. SkyWest alleges authentication with company-issued credentials.

SkyWest alleges that SWOL is a login-protected employee portal requiring an employee ID, password, and MFA. It alleges that front-line pilots, including Defendants, had permission to enter SWOL for operational needs, while role-based controls limited the fields they could view or retrieve.[17] Thus, the Complaint pleads authorized entry into SWOL and a separate dispute about access to particular information.

> "To access SWOL, Moussaron logged in using his SkyWest employee ID and password and completed MFA."[18]

---

[15] *Van Buren v. United States*, 593 U.S. 374, 389–96 (2021); *Moxie Pest Control (Utah), LLC v. Nielsen*, 164 F.4th 1195, 1202–03 (10th Cir. 2026).

[16] Utah Code Ann. § 63D-3-102(9).

[17] Dkt. 1, ¶¶ 12–15.

[18] *Id.* ¶ 23.

"Like Moussaron, [Krithivas] used his employee ID, password, and MFA to access SWOL."[19]

The Complaint does not allege that either Defendant used another person's credentials, impersonated a manager, defeated MFA, entered through a disabled account, or accessed SWOL after SkyWest revoked his credentials. Krithivas admits SkyWest granted him SWOL access and that he logged in with his employee ID, password, and MFA.[20] Moussaron admits that SkyWest provided his credentials and authorized him to use SWOL.[21] In SkyWest's Answer to Moussaron's Counterclaim, it admits Moussaron "had an active SWOL user account and credentials issued to him for the time he was an active employee with SkyWest."[22]

## B. SkyWest pleads both technical and nontechnical theories.

SkyWest alleges that role-based controls prevented pilots from viewing or retrieving personal telephone numbers and home addresses. It separately alleges that access was limited to business-related purposes and that company policy and the NDAs prohibited compilation, export, scraping, mass downloading, and use outside the employment relationship. The Complaint later treats communications outside "legitimate SkyWest business operations" as unauthorized.[23] Paragraph 36 refers only to "mass messages" and omits the admitted organizing context that the text asked pilots whether they supported ALPA representation.[24]

Those theories are legally distinct. A technical restriction asks whether the computer denied access to particular information and whether the user defeated that denial. A policy or purpose restriction assumes access occurred and regulates why, how much, or how the

---

[19]    *Id.* ¶ 29.
[20]    Krithivas Answer, Dkt. 48, ¶¶ 9, 15.
[21]    Moussaron Answer, Dkt. 47, ¶¶ 12–13, 22–27.
[22]    Plaintiff's Answer to Defendant Moussaron's Counterclaim, Dkt. 53 ¶ 25.
[23]    Dkt. 1, ¶¶ 14–20, 35–37.
[24]    Dkt. 1, ¶ 36; Moussaron Answer, Dkt. 47, ¶ 36.

information was later used. The CFAA and UCADRA do not permit SkyWest to collapse those categories.

**C. The attached NDAs regulate information use and disclosure, not computer access.**

The NDAs attached to the Complaint identify categories of "Confidential and Privileged Information," prohibit certain use and disclosure, require return or destruction upon request, and provide contractual consequences for violation.[25] They do not identify SWOL, field-level permissions, passwords, MFA, browser tools, scripts, scraping, automation, bulk retrieval, technological barriers, unions, ALPA, organizing, representation elections, or employee solicitation. Nor do they state that a contractual violation withdraws computer authorization or establishes a CFAA or UCADRA element.

*Van Buren* reserved the question whether a contractual provision barring any access at all to information might place that information off limits.[26] The NDAs do not present that question. Their operative provisions are that the Applicant "will not disclose, divulge, or otherwise communicate" Confidential Information, and agrees "not to use Confidential Information for their own purposes." The agreement's own closing acknowledgment states that it "AFFECTS AND RESTRICTS MY RIGHT TO DISCLOSE OR USE PRIVILEGED CONFIDENTIAL INFORMATION." The word "access" appears nowhere in the agreement. SkyWest pleads, and admits, that Defendants had access to SWOL through credentials SkyWest issued to them. What SkyWest disputes is whether their authorization extended to the specific disputed fields and what legal consequences follow from their retrieval and use.

This motion does not require the Court to decide whether the NDAs were formed, whether directory contact information falls within their definition, or whether a contractual

---

[25]   Dkt. 1-1, Ex. A.
[26]   *Van Buren,* 593 U.S. at 390 n.8; *see also Vox Mktg. Grp., LLC v. Prodigy Promos L.C.*, 556 F. Supp. 3d 1280, 1285 n.2 (D. Utah 2021).

remedy may exist. Even assuming enforceable agreements covering the information, a use restriction is not a computer-access gate. When the Complaint attributes access limitations to the NDAs that the attached text does not contain, the plain text of the NDA controls.[27]

## LEGAL STANDARD

A Rule 12(c) motion is evaluated under the Rule 12(b)(6) standard.[28] The Court accepts SkyWest's well-pleaded factual allegations as true and draws reasonable inferences in its favor, but it need not accept legal conclusions or labels couched as facts.[29] The Complaint, the Answers, and exhibits attached to the pleadings are properly considered without conversion to summary judgment.[30]

Accordingly, the words "unauthorized," "fraudulent," and "circumvented" do not control unless the pleaded facts satisfy the governing statutory definitions. The Court may grant the motion to eliminate legally unavailable theories, and leave genuinely disputed technical allegations for later resolution.

## ARGUMENT

### I. THE PROTECTED ORGANIZING PURPOSE CANNOT ITSELF ESTABLISH UNAUTHORIZED ACCESS OR FRAUD.

The RLA applies to air carriers. Its representation provisions require representatives to be selected without interference, influence, or coercion by the other party, protect employees' right to organize through representatives of their choosing, prohibit a carrier from denying or questioning employees' right to join, organize, or assist in organizing, and make it unlawful for a

---

[27]    *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384–85 (10th Cir. 1997).
[28]    *Corder v. Lewis Palmer Sch. Dist. No. 38*, 566 F.3d 1219, 1223–24 (10th Cir. 2009).
[29]    *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).
[30]    Fed. R. Civ. P. 10(c), 12(c); *Park Univ. Enters., Inc. v. Am. Cas. Co. of Reading, Pa.*, 442 F.3d 1239, 1244 (10th Cir. 2006).

carrier to interfere with employee organization.[31] These provisions impose judicially enforceable obligations protecting employee self-organization, particularly before certification when no bargaining representative can invoke the RLA's adjustment machinery.[32]

The prior SkyWest organizing case illustrates both the protection and its limit. The court enjoined discrimination against ALPA communications and insignia in nonwork areas and on nonwork time, while recognizing that the RLA does not compel unlimited access to every company-controlled channel and does not invalidate neutral rules against independently improper means.[33] Defendants seek the same distinction here. They do not ask the Court to hold that organizing authorizes credential theft or circumvention. They ask the Court to hold that contacting pilots to gauge support for representation is not itself the unlawful access, fraudulent scheme, or prohibited method.

That narrow ruling matters because the Complaint repeatedly relies on the absence of SkyWest approval. It alleges SWOL use was authorized only for legitimate operational needs, characterizes the text as unrelated to legitimate SkyWest business, and alleges that communications were not authorized by SkyWest.[34] Organizing is employee activity, not management business, and ordinarily will not be undertaken with management approval. Corporate disapproval cannot replace the statutory elements of the CFAA or UCADRA.

## II. COUNT THREE MUST BE DISMISSED OR LIMITED UNDER VAN BUREN.

### A. The Complaint does not plead initial entry into SWOL without authorization.

The CFAA's information-access provision applies when a person intentionally accesses a protected computer "without authorization or exceeds authorized access" and obtains

---

[31] 45 U.S.C. §§ 152 Third, Fourth, 181.
[32] *Tex. & N.O.R. Co. v. Bhd. of Ry. & S.S. Clerks*, 281 U.S. 548, 565–70 (1930); *Trans World Airlines, Inc. v. Indep. Fed'n of Flight Attendants*, 489 U.S. 426, 440–41 (1989).
[33] *SkyWest Pilots*, 2007 WL 1848678, at *12–15.
[34] Dkt. 1, ¶¶ 15, 35–37.

information. The CFAA's fraud provision contains the same access alternatives.[35] The Complaint pleads that each Defendant used the active employee ID, password, and MFA SkyWest issued to him.[36] It pleads no pre-access revocation, terminated account, stolen credential, or impersonation. Those allegations defeat a "without authorization" theory based merely on purpose, policy, or an NDA.

*ACI Payments* shows the distinction. There, repeated cease-and-desist notices plausibly withdrew permission before continued access.[37] Here, SkyWest alleges no comparable withdrawal before the challenged sessions. This does not mean active credentials necessarily authorize every computer area. It means SkyWest cannot characterize the initial authenticated entry as outsider or revoked access.

**B. Purpose, policy, and later misuse do not establish exceeding authorized access.**

The CFAA defines "exceeds authorized access" as using authorized computer access "to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter."[38] *Van Buren* holds that the inquiry is gates-up-or-down: whether authorized access extended to the particular information or computer area, not whether the user had a proper purpose.[39] The Court rejected a purpose-based interpretation because it would turn ordinary violations of workplace computer policies and website terms of use into federal crimes.

District of Utah precedent is consistent. *Giles Construction* held that the CFAA speaks to access, not later misuse or disclosure of information the employee was entitled to access.[40] Other

---

[35] 18 U.S.C. § 1030(a)(2)(C), (a)(4).

[36] Dkt. 1, ¶¶ 23, 29.

[37] *ACI Payments, Inc. v. Conservice, LLC*, No. 1:21-cv-00084-RJS-CMR, 2022 WL 622214, at *9 (D. Utah Mar. 3, 2022)(unpublished).

[38] 18 U.S.C. § 1030(e)(6).

[39] *Van Buren*, 593 U.S. at 389–96; *Moxie Pest Control (Utah), LLC v. Nielsen*, 164 F.4th 1195, 1202–03 (10th Cir. 2026).

[40] *Giles Constr., LLC v. Tooele Inventory Sol., Inc.*, No. 2:12-cv-37, 2015 WL 3755863, at *3–4 (D. Utah June 16, 2015)(unpublished).

circuits similarly reject efforts to convert employment-policy or confidentiality violations into CFAA access violations.[41]

In *Vox Marketing*, the court noted that the Supreme Court "reject[ed] the proposition that an individual who is authorized to access information for certain purposes 'exceeds authorized access' when he violates contractual terms barring the use of information for other purposes."[42] That is the proposition on which SkyWest's policy and NDA theories depend.

The alleged NDAs do not alter that rule. They regulate use or disclosure of qualifying information; they do not define a computer area, identify a field-level entitlement, or provide that an unapproved purpose withdraws access. Even an enforceable contract may create contractual consequences without redefining federal criminal access.[43]

## C. Automation, volume, retention, and disclosure are not substitute access elements.

The Complaint emphasizes sequential searches, scripts, developer tools, coordination, and thousands of records.[44] Those allegations may bear on what occurred, but they do not independently answer whether Defendants obtained information from an area to which their computer access did not extend. *Van Buren* turns on entitlement to obtain the information, not whether retrieval was manual, automated, fast, or voluminous. *Fidlar* likewise rejected an effort to infer computer fraud from a custom harvester, bulk retrieval, and avoidance of an ordinary interface without proof of the required fraudulent intent.[45]

Retention, disclosure, and later use are temporally distinct. They may implicate a valid contract or another law, but they cannot retroactively lower a computer gate that was open when

---

[41] *United States v. Nosal*, 676 F.3d 854, 860–64 (9th Cir. 2012) (en banc); *WEC Carolina Energy Sols. LLC v. Miller*, 687 F.3d 199, 204–07 (4th Cir. 2012); *Royal Truck & Trailer Sales & Serv., Inc. v. Kraft*, 974 F.3d 756, 760–61 (6th Cir. 2020).

[42] *Vox Mktg. Grp., LLC v. Prodigy Promos L.C.*, 556 F. Supp. 3d 1280, 1285 n.2 (D. Utah 2021).

[43] *Van Buren*, 593 U.S. at 393–96; *Fidlar Techs. v. LPS Real Estate Data Sols., Inc.*, 810 F.3d 1075, 1082-83 (7th Cir. 2016).

[44] Dkt. 1, ¶¶ 23–34.

[45] *Van Buren*, 593 U.S. at 389–96; *Fidlar Techs.*, 810 F.3d at 1079-83.

the information was obtained.[46] Count Three should therefore be dismissed to the extent it relies on automation, quantity, the ALPA purpose, retention, later disclosure, policy, or the NDAs.

**D. At most, Count Three may proceed on the separately alleged off-limits-area theory.**

SkyWest separately alleges that role-based technical controls prevented line pilots from viewing or retrieving personal telephone numbers and addresses and that Defendants used developer tools or another program to circumvent those controls.[47] Accepted as true, that allegation may describe the inside-user circumstance *Van Buren* leaves within the CFAA: an authorized user obtaining information from a computer area to which the user's authorized access did not extend.[48]

Rule 12(c) is not the vehicle to resolve that technical dispute. It is the vehicle to eliminate the invalid alternatives and define the remaining issue: whether Defendants obtained the specific fields from a computer area or information resource to which their authorized computer access did not extend.

*Vox Marketing* does not support a broader rule. There, competitors allegedly manipulated document URLs to reach thousands of pages intended to be password protected, and the court concluded that a jury could find knowing exploitation of the defective protection unauthorized.[49] *Vox* may inform the disputed technical theory here. It does not permit SkyWest to treat an NDA, company policy, retrieval volume, or union organizing purpose as the access gate.

**E. Section 1030(a)(4) requires a separately pleaded fraudulent scheme.**

The CFAA's fraud provision requires knowing access without authorization or in excess of authorization, an intent to defraud, use of the prohibited access to further the intended fraud,

---

[46]  *Giles Construction*, 2015 WL 3755863, at *3–4.
[47]  Dkt. 1, ¶¶ 14, 22, 33, 58.
[48]  *Van Buren*, 593 U.S. at 389–90.
[49]  *Vox Mktg. Grp.*, 556 F. Supp. 3d at 1286–87.

and obtaining something of value.[50] The Complaint recites those elements but does not identify a representation, an omission made under an independent duty to disclose the organizing purpose, an intended victim of deception, or a scheme distinct from the alleged access.[51]

An employee does not act with fraudulent intent merely by failing to announce a protected organizing purpose before using credentials the employer issued. Nor may SkyWest define the intended fraud as the same access alleged to further it. *Fidlar* explains that the intent element distinguishes computer theft from computer trespass and requires specific intent to deceive or cheat; a bulk harvester and nonstandard interface did not supply that intent.[52] Paragraph 60 recites the statutory elements and supplies no supporting facts. Under *Iqbal*, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[53] Because Paragraph 60 pleads a distinct statutory violation "[i]n the alternative and in addition" to the Section 1030(a)(2)(C) theory in Paragraph 59, it is a separate claim and may be dismissed as one. The Section 1030(a)(4) claim should be dismissed.

## III. COUNT FOUR MUST BE DISMISSED OR LIMITED TO ACTUAL CIRCUMVENTION OF AN IDENTIFIED TECHNOLOGICAL ACCESS BARRIER.

### A. The Complaint does not plead the intent UCADRA requires.

UCADRA's prohibition applies only where "[a]n unauthorized user of a protected computer" acts "knowingly and with intent to cause harm or damage."[54] Count Four does not allege that either Defendant did. Paragraph 66 alleges that Defendants "obtained information from a protected computer and, as a result of that conduct, caused harm and loss." Paragraph 67 alleges that a transmission "caused harm and loss." Both plead causation. Neither pleads intent.

---

[50]   18 U.S.C. § 1030(a)(4).
[51]   Dkt. 1, ¶ 60.
[52]   *Fidlar Techs.*, 810 F.3d at 1079-80, 1082-83.
[53]   *Iqbal*, 556 U.S. at 678–79.
[54]   Utah Code Ann. § 63D-3-104(1).

Nor do the incorporated paragraphs supply it. Paragraph 39 alleges that "Defendants' actions have caused and continue to cause harm to SkyWest." Paragraph 16 quotes the NDA's recital that certain information, "if disclosed, has the potential to harm other employees or the SkyWest corporate entity." Paragraph 37 characterizes Defendants as "using and misappropriating SkyWest's Confidential Information for their own purposes," which alleges self-interest rather than an intent to injure SkyWest. The words "willful" and "malicious" appear only at Paragraph 74, in the Fifth Cause of Action, which Paragraph 63 does not reach because it incorporates only preceding paragraphs.

Intent to cause harm is a distinct element, not an inference available from the fact that harm followed. Count Four should be dismissed.

Defendants have identified no published Utah appellate decision or reported federal decision construing this intent requirement. The statutory text distinguishes harm caused from harm intended.

**B. UCADRA imposes conjunctive authorization and access-method requirements.**

UCADRA applies only to an "unauthorized user" of a protected computer. Its definition contains two requirements. First, the person must not be an "authorized user." Second, the person must access the computer by either obtaining an authorized user's technological access barrier without that user's permission or circumventing, without the owner's permission, a technological access barrier on the computer. A "technological access barrier" is "a password, security code, token, key fob, access device, or other digital security measure."[55]

The conjunctive structure is dispositive. It is not enough for SkyWest to allege that permission was limited or that a use was disapproved. It must also plead and prove one of the two methods the Legislature specified. UCADRA's scope provision, which provides that

---

[55]   Utah Code Ann. §§ 63D-3-102(7), 63D-3-102(9), 63D-3-104(1).

permission is valid only to the extent or for the specific purpose authorized, does not erase the statute's separate access-method requirement.[56] Reading a purpose violation as sufficient by itself would render the credential-acquisition and circumvention language superfluous. Utah courts presume that statutory terms are used advisedly and that omissions in the statutory text are purposeful.[57]

## C. The Complaint forecloses the credential-acquisition alternative.

The credential-acquisition alternative addresses a person who obtains an authorized user's technological access barrier without that user's permission. The Complaint alleges the opposite: Moussaron and Krithivas each used his own employee ID, password, and MFA.[58] It does not allege that either Defendant obtained another authorized user's password, token, code, or access device. The first statutory method is unavailable on the pleadings.

## D. Company policies and NDAs are not technological access barriers.

Paragraph 65 alleges both actual technical circumvention and that Defendants' permission was valid only for purposes allowed by SkyWest policy and the NDAs. The second theory does not state a UCADRA claim. A policy and a nondisclosure agreement are not passwords, security codes, tokens, key fobs, access devices, or other digital security measures.[59] They communicate rules; they do not technologically control access.

The residual phrase "other digital security measure" must be read in context with the listed security devices.[60] A role-based software control that actually prevents an authenticated account from retrieving particular information may present a factual question under that residual

---

[56]   *Id.* §§ 63D-3-102(9)(b), 63D-3-103(2).
[57]   *Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 14, 267 P.3d 863.
[58]   Utah Code Ann. § 63D-3-102(9)(b)(i); Compl. ¶¶ 23, 29.
[59]   Compl. ¶ 65; Utah Code Ann. § 63D-3-102(7).
[60]   *Yates v. United States*, 574 U.S. 528, 543–46 (2015) (plurality opinion); Utah Code Ann. § 63D-3-102(7).

language. But a paper or electronic policy, a purpose restriction, and a contractual promise are not comparable digital controls and cannot satisfy UCADRA's circumvention requirement.

**E. Count Four may proceed, if at all, only on the separately alleged technical circumvention.**

SkyWest alleges that Defendants circumvented role-based permissions or other technical controls to retrieve restricted fields. Defendants dispute that allegation, and the pleadings do not permit the Court to decide how SWOL technically responded to an authenticated request. The appropriate Rule 12(c) ruling is therefore to dismiss the nontechnical alternatives and limit Count Four to proof that Defendants actually circumvented an identified password, code, token, access device, or comparable digital security measure.[61]

Defendants preserve the additional argument that a computer is not a "protected computer" to the extent its purported technological access barrier does not, to a reasonable degree of security, effectively control access to the information.[62] Whether any field-level control effectively prevented retrieval may depend on the technical record and need not be resolved on this motion.

**F. The program-transmission theory remains dependent on unauthorized-user status and statutory harm.**

SkyWest alternatively invokes UCADRA's program-transmission provision, alleging that Defendants transmitted scripts, code, or commands.[63] But that provision begins with the same limiting subject: "An unauthorized user of a protected computer." Sending an automated request does not itself make the sender an unauthorized user. SkyWest must still satisfy UCADRA's unauthorized-user definition, including a qualifying method of access, and must establish harm or loss resulting from the transmission.[64] Count Four should be limited accordingly.

---

[61]  Dkt. 1, ¶ 65; Utah Code Ann. §§ 63D-3-102(7), 63D-3-102(9)(b)(ii).
[62]  Utah Code Ann. § 63D-3-102(6)(b).
[63]  Utah Code Ann. § 63D-3-104(1)(b); Compl. ¶ 67.
[64]  Utah Code Ann. §§ 63D-3-102(9), 63D-3-104(1)(b).

## IV. PARTIAL JUDGMENT WILL NARROW THE CASE WITHOUT REQUIRING RESOLVING THE DISPUTED TECHNICAL FACTS.

SkyWest will likely rely on the Complaint's words "circumvented," "technical controls," "developer tools," and "scripts." Defendants acknowledge that the well-pleaded technical allegation must be assessed in SkyWest's favor at this stage. But that allegation does not preserve every alternative theory SkyWest pleads. The Complaint expressly relies on purpose, policy, the NDAs, automation, quantity, and later dissemination as bases for statutory liability.[65]

A partial ruling will define the issue for discovery and summary judgment: whether Defendants actually crossed a computer boundary to which their authorized access did not extend and, for UCADRA, whether they actually circumvented an identified technological access barrier. That issue is legally distinct from whether SkyWest disapproved of the use, whether an NDA regulated later disclosure, whether a script increased efficiency, or whether the information was used to poll pilots about ALPA representation.

This focused motion does not seek judgment on SkyWest's contract, implied-covenant, fiduciary-duty, conspiracy, declaratory-relief, or injunction counts. Defendants preserve all defenses to those claims. The requested ruling addresses only the statutory access and fraud theories in Counts Three and Four and prevents the computer statutes from being used to make a protected organizing purpose unlawful.

### CONCLUSION

For these reasons, Defendants respectfully request that the Court grant partial judgment on the pleadings and enter an order:

---

[65]   Dkt. 1, ¶¶ 15, 35–37, 58, 60, 65, 67.

1.  declaring that the union organizing purpose alleged in pleadings cannot, by itself, establish access without authorization, exceeding authorized access, fraudulent intent, or unauthorized-user status under the CFAA or UCADRA.

2.  dismissing Count Three to the extent it relies on a union organizing purpose, company policy, the alleged NDAs, automated retrieval, bulk retrieval, retention, or post-access use or disclosure to establish access "without authorization or exceeding authorized access";

3.  limiting any surviving CFAA theory to proof that Defendants obtained information from SWOL to which their authorized computer access did not extend;

4.  dismissing the Section 1030(a)(4) theory or limiting it to a separately pleaded and provable fraudulent scheme independent of the union organizing purpose, SkyWest policy or NDA violation, and alleged access itself;

5.  dismissing Count Four (UCADRA) to the extent it relies on purpose, policy, the alleged NDAs, automated retrieval, bulk retrieval, or later use, and limiting any surviving UCADRA theory to proof that Defendants either obtained another authorized user's technological access barrier without that user's permission or actually circumvented an identified technological access barrier on SWOL without SkyWest's permission;[66] and

6.  preserving Defendants' right to seek reasonable attorney fees as prevailing parties under UCADRA at the procedurally appropriate time.[67]

---

[66]  Utah Code Ann. §§ 63D-3-102(7), 63D-3-102(9), 63D-3-104.
[67]  *Id.* § 63D-3-105(2).

DATED this 14th day of August, 2026.

| | |
|---|---|
| **SCHOLNICK THORNE HOLLAND** | **LAW OFFICES OF TIMOTHY D. DUCAR, PLC** |
| | |
| **/s/ Jonathan K. Thorne (with permission)** | **/s/ Scott C. Uthe** |
| Jonathan K. Thorne (Utah Bar No. 12694) | Timothy D. Ducar (Utah Bar No. 13423) |
| Lauren I. Scholnick (Utah Bar No. 7776) | Scott C. Uthe (pro hac vice) |
| John E. "Jack" Holland (pro hac vice) | 9280 E. Raintree Drive, Suite 104 |
| 40 South 600 East | Scottsdale, Arizona 85260 |
| Salt Lake City, Utah 84102 | tducar@azlawyers.com |
| jonathan@utahjobjustice.com | suthe@azlawyers.com |
| lauren@utahjobjustice.com | orders@azlawyers.com |
| jack@laborwest.com | |
| | Attorneys for Defendant Vikaas Krithivas |
| Attorneys for Defendant/Counterclaimant Daniel Moussaron | |

## CERTIFICATE OF COMPLIANCE

This memorandum contains 4,754 words, including footnotes and excluding the caption, signature blocks, and certificates. It complies with DUCivR 7-1(a)(4).

**/s/ Scott C. Uthe**
Scott C. Uthe

## CERTIFICATE OF SERVICE

I certify that on the 14th day of August, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which sent notice of electronic filing to all counsel of record.

**/s/ Scott C. Uthe**
Scott C. Uthe