Timothy D. Ducar (13423)
Scott C. Uthe (PHV)
LAW OFFICES OF TIMOTHY D. DUCAR, PLC
9280 E. Raintree Drive, Suite 104
Scottsdale, AZ 85260
Telephone: (480) 502-2119
Facsimile: (480) 452-0900
orders@azlawyers.com
*Attorneys for Defendant Vikaas Krithivas*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF UTAH – SOUTHERN DIVISION**

| | |
|---|---|
| SKYWEST AIRLINES, INC.,<br><br>Plaintiff and Counterclaim Defendant,<br><br>and DALE HANSEN,<br><br>Additional Counterclaim Defendant,<br><br>vs.<br><br>DANIEL MOUSSARON,<br><br>Defendant and Counterclaim Plaintiff,<br><br>and VIKAAS KRITHIVAS,<br><br>Defendant and Counterclaim Plaintiff. | **DEFENDANT VIKAAS KRITHIVAS'S COUNTERCLAIM AGAINST SKYWEST AIRLINES, INC. AND ADDITIONAL COUNTERCLAIM DEFENDANT DALE HANSEN**<br><br>Civil No. 4:26-cv-00015-DN-PK<br><br>Senior District Judge David Nuffer<br>Magistrate Judge Paul Kohler<br><br>**JURY TRIAL DEMANDED** |

Defendant and Counterclaim Plaintiff Vikaas Krithivas ("Krithivas"), by and through undersigned counsel, asserts this Counterclaim against Plaintiff and Counterclaim Defendant SkyWest Airlines, Inc. ("SkyWest") and Additional Counterclaim Defendant Dale Hansen ("Hansen") pursuant to Federal Rules of Civil Procedure 13(h) and 20(a)(2), as follows:

## NATURE OF THE ACTION

1. This Counterclaim arises solely from Hansen's February 2, 2026 email to Nate Gatten at American Airlines, Krithivas's then-employer, and Hansen's transmission with that email of SkyWest's Complaint against Krithivas.

2. Hansen's email identified Krithivas as a former SkyWest pilot who had "transitioned to AA" and stated that SkyWest "wanted to make [American Airlines] aware of the initiation of litigation against Mr. Krithivas." Hansen attached the Complaint and invited American Airlines to contact him with questions.

3. The email was an intentional, extrajudicial communication to Krithivas's employer. It was not service of process, a filing with the Court, a communication to a party, a request for judicial relief, or a communication required by any court order.

4. The email republished to American Airlines specific allegations in the Complaint that Krithivas circumvented technical restrictions, accessed information without or in excess of authorization, acted with intent to defraud, misappropriated and disseminated confidential information, breached fiduciary duties willfully and maliciously, and joined a civil conspiracy. Krithivas alleges those factual accusations and implications were materially false.

5. Within approximately two months, American Airlines placed Krithivas on administrative leave because of the Complaint and prepared to terminate his employment. To avoid a termination entry that would impair his professional pilot career, Krithivas resigned before the scheduled termination meeting.

6. SkyWest did not disclose Hansen's email to Krithivas until June 11, 2026. On August 11, 2026, the Court granted Krithivas leave to file a counterclaim based solely on Hansen's email and permitted Hansen's joinder as an additional counterclaim defendant.

## PARTIES

7. Krithivas is an individual and former SkyWest pilot who, at the time of the email, was employed by American Airlines.

8. SkyWest is a Utah corporation with its principal place of business in St. George, Utah.

9. Hansen is, upon information and belief, a Utah resident and was SkyWest's General Counsel at all relevant times.

10. Hansen sent the February 2 email as SkyWest's officer, employee, agent, and legal representative, within the course and scope of his employment and with SkyWest's authorization. SkyWest authorized, directed, approved, or ratified the communication. SkyWest has identified Hansen as one of its personnel with meaningful input into or authority over SkyWest's external communications concerning the conduct alleged in the Complaint. (SkyWest's Responses to Krithivas's First Set of Discovery Requests, Interrogatory No. 11, pp. 18-19.)

## JURISDICTION, VENUE, AND JOINDER

11. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 because the counterclaims form part of the same case or controversy as SkyWest's claims and concern the extrajudicial transmission of SkyWest's Complaint in this action.

12. Venue is proper because SkyWest filed this action in this District, SkyWest maintains its principal place of business in this District, Hansen acted for SkyWest from Utah, and a substantial part of the events giving rise to these claims occurred in or was directed from Utah.

13. Hansen is properly joined under Rules 13(h) and 20(a)(2) because the claims against SkyWest and Hansen arise from the same email transaction and present common questions of law and fact, including who authorized the email, why it was sent, whether the republished accusations were false, and what harm the communication caused.

## FACTUAL ALLEGATIONS

### A. Hansen's February 2, 2026 Email

14. SkyWest filed its Complaint against Krithivas on January 30, 2026.

15. The Complaint alleged, among other things, that Krithivas: used a developer tool or program to circumvent SWOL's role-based restrictions (Complaint ¶¶ 22, 33, 58, 65); accessed information without or in excess of authorization (id. ¶¶ 15, 35, 58-60, 65); acted with intent to defraud (id. ¶ 60); transmitted, shared, sold, disseminated, or misappropriated confidential information (id. ¶¶ 36-38, 48); willfully and maliciously breached fiduciary duties (id. ¶¶ 73-74); and participated in a civil conspiracy (id. ¶¶ 77-81).

16. Krithivas denies that he circumvented a technological access barrier, acted with intent to defraud, sold or unlawfully disseminated employee information, willfully or maliciously breached a fiduciary duty, or joined an unlawful conspiracy. He alleges that those accusations, and the implication that he defeated SkyWest's security to steal or fraudulently obtain information, were materially false.

17. SkyWest admits that it issued the SWOL user-account credentials used by Krithivas; that Krithivas maintained an active SWOL account permitting authenticated access to portions of SWOL, including limited portions of the SWOL Directory; and that the employee-detail endpoint returned the disputed personal-contact fields in its response payload. (SkyWest's Responses to Krithivas's First Set of Discovery Requests, Requests for Admission Nos. 1-3 and 6, pp. 3-8.) Krithivas therefore did not obtain access through stolen credentials or by defeating SkyWest's authentication system. The parties dispute whether viewing, retrieving, compiling, or using fields returned to an authenticated user exceeded the scope of authorization.

18. Before filing the Complaint, SkyWest possessed or controlled the SWOL system configuration, access records, authentication records, endpoint behavior, and other information necessary to determine whether Krithivas defeated a technological barrier or instead received the disputed fields in a response returned to an authenticated account. Upon information and belief, SkyWest and Hansen knew, or would have learned through the reasonable prefiling inquiry required by Federal Rule of Civil Procedure 11(b), that material factual accusations concerning circumvention, fraudulent access, and related wrongdoing lacked evidentiary support.

19. On February 2, 2026, Hansen sent an email to Nate Gatten at American Airlines and attached SkyWest's Complaint.

20. Hansen knew that Krithivas had left SkyWest and was then employed by American Airlines. His email expressly stated that Krithivas had "transitioned to AA."

21. Hansen stated that SkyWest "wanted to make [American Airlines] aware of the initiation of litigation against Mr. Krithivas" and invited Gatten to contact him with questions. The invitation contemplated further discussion of the accusations against Krithivas.

22. The email did more than identify a public docket or report the true fact that litigation had commenced. By selecting and transmitting the Complaint directly to Krithivas's employer, identifying Krithivas's employment transition, and inviting follow-up, Hansen republished and called the employer's attention to the Complaint's disputed factual accusations about Krithivas.

23. American Airlines was not a party to this action and, upon information and belief, was not acting as a witness, custodian of relevant evidence, insurer, litigation consultant, or person assisting SkyWest or the Court. Hansen did not ask American Airlines to preserve or produce evidence, provide testimony, assist with service, participate in the action, or perform any litigation-related task prior to February 2, 2026.

24. The email was not required to serve process, prosecute a claim, comply with a court order, preserve evidence, obtain judicial relief, or assist the Court. Upon information and belief, neither American Airlines nor Gatten shared a legal interest with SkyWest in this action that required transmission of the Complaint.

25. The communication's destination, its express reference to Krithivas's transition to American Airlines, and its invitation for follow-up support the inference that its function was employment-related rather than a legitimate step in adjudicating SkyWest's claims.

26. Hansen's authority as SkyWest's General Counsel and corporate officer does not establish that this employment-directed communication was made within the legitimate scope of representing SkyWest in the judicial proceeding. Alternatively, if SkyWest contends that Hansen acted outside the legitimate scope of that representation, the communication remains attributable

to SkyWest because Hansen used his corporate authority and SkyWest authorized, directed, approved, or ratified it.

27. Hansen and SkyWest knew that an airline would view accusations of theft, dishonesty, unauthorized computer access, and misuse of confidential information as bearing directly on a pilot's trustworthiness and continued employment.

28. Hansen intended that American Airlines receive and consider the accusations against Krithivas, or knew that employment consequences were substantially certain or reasonably foreseeable.

**B. Union-Related Activity and Retaliatory Context**

29. During 2025, SkyWest pilots were engaged in efforts concerning potential union representation by the Air Line Pilots Association, International ("ALPA").

30. Daniel Moussaron participated in an organizing committee formed to assist efforts to organize SkyWest pilots for ALPA representation.

31. On or about August 30, 2025, Moussaron contacted Krithivas and asked whether Krithivas would assist with the Organizing Committee's efforts to gather pilot contact information.

32. Krithivas agreed to assist Moussaron in gathering contact information. Krithivas did not serve as a member of the Organizing Committee and does not allege that he otherwise participated in union organizing activities. His assistance was limited to helping Moussaron gather contact information.

33. Moussaron informed Krithivas that the purpose of gathering the information was to contact SkyWest pilots concerning their interest in forming a union. Krithivas understood that the information was being gathered for that purpose.

34. On or about September 3, 2025, Moussaron provided Krithivas with a Tampermonkey userscript to automate requests made through the authenticated SkyWest Online ("SWOL") Directory.

35. Krithivas used credentials issued to him by SkyWest. As alleged above, the employee-detail endpoint returned the disputed contact fields in response to requests made through an authenticated account, and the parties dispute whether retrieving or using those returned fields exceeded the scope of authorization.

36. The contact-information gathering was associated with the Organizing Committee's efforts to communicate with SkyWest pilots concerning potential union representation. By approximately November 1, 2025, ALPA had assumed administration of the organizing website and related communications.

37. Upon information and belief, SkyWest subsequently learned that the alleged collection of pilot contact information involving Moussaron and Krithivas was connected to efforts to communicate with SkyWest pilots concerning potential union representation.

38. SkyWest thereafter investigated the collection and use of pilot contact information and attributed the challenged activity to Moussaron and Krithivas.

39. On or about January 26, 2026, before commencing this action, SkyWest distributed a communication to its pilot workforce concerning two "now-former pilots," referring to Moussaron and Krithivas.

40. In that communication, SkyWest accused the former pilots of conduct including "unethically and unlawfully stealing" pilot information, obtaining "unauthorized access" to pilot contact information, and using "extensive effort and manipulation" to retrieve it. SkyWest stated that it was "shocked and disgusted" by the conduct and that it would "not tolerate theft of any kind."

41. Four days later, on January 30, 2026, SkyWest filed its Complaint against Moussaron and Krithivas asserting claims based on substantially the same alleged collection and use of pilot information.

42. Three days after filing the Complaint, Hansen selected that pleading and transmitted it directly to Krithivas's new employer, expressly identifying Krithivas as a former SkyWest pilot who had "transitioned to AA" and stating that SkyWest wanted American Airlines to be aware of the litigation.

43. Hansen's February 2 communication thus occurred against the backdrop of SkyWest's knowledge that the challenged conduct attributed to Krithivas arose from his assistance with the collection of contact information for an effort to communicate with pilots concerning potential union representation.

44. The timing and sequence of SkyWest's actions—including its investigation of the union-related collection of pilot contact information, its January 26 denunciation of Moussaron and Krithivas to SkyWest's pilot workforce, its January 30 filing of the Complaint, and Hansen's February 2 transmission of that Complaint directly to Krithivas's new employer—support a reasonable inference that Hansen's communication served a retaliatory or deterrent purpose and was intended or reasonably expected to cause employment consequences to Krithivas.

45. Upon information and belief, SkyWest and Hansen intended the February 2 communication, at least in part, to punish Krithivas for his assistance with activity undertaken to facilitate communications concerning potential union representation, to deter similar activity by others, and to cause collateral employment consequences. Alternatively, the timing, sequence, destination, and circumstances of the communication support a reasonable inference that retaliation and deterrence were substantial collateral purposes of transmitting the Complaint directly to Krithivas's employer.

46. Krithivas does not assert an independent counterclaim based on SkyWest's January 26 communication, its investigation of union-related activity, or its filing of the Complaint. Those matters are alleged solely as factual context relevant to the purpose, intent, motive, and circumstances of Hansen's February 2 transmission of the Complaint to American Airlines.

**C. American Airlines' Adverse Action**

47. Krithivas began employment with American Airlines on or about September 17, 2025 and intended to build a long-term career there.

48. On April 6, 2026, American Airlines' Chief Pilot placed Krithivas on administrative leave and told him that a hearing concerning his employment would occur on April 10, 2026.

49. Krithivas was told that the action concerned his prior work history, not any disciplinary or performance issue arising from his employment at American Airlines.

50. Krithivas sought assistance from representatives of the Allied Pilots Association ("APA"), who investigated the reason for the leave and the anticipated hearing.

51. On April 9, 2026, APA representatives informed Krithivas that American Airlines was very likely to terminate him at the April 10 hearing; that the only reason given was SkyWest's Complaint; and that American Airlines did not intend to ask him questions at the hearing.

52. The APA representatives advised Krithivas that, to protect his pilot career and avoid an adverse termination entry in his FAA Pilot Records Database, he should consider resigning before American Airlines terminated him.

53. Krithivas did not want to resign, but he reasonably believed he had no viable alternative to protect his professional pilot career. He resigned before the April 10 hearing.

54. At the time he resigned, Krithivas did not know that Hansen had directly sent the Complaint to an American Airlines attorney.

55. SkyWest produced Hansen's February 2 email on June 11, 2026. The production disclosed for the first time to Krithivas that Hansen had transmitted the Complaint directly to American Airlines.

56. The temporal sequence, American Airlines' stated reliance on the Complaint, and the absence of a performance or disciplinary issue at American Airlines support a reasonable inference that Hansen's email was a substantial factor in the administrative leave, anticipated termination, and compelled resignation.

57. As a direct and proximate result, Krithivas lost wages, benefits, seniority, career opportunities, future earning capacity, and other economic losses, and suffered reputational injury, humiliation, embarrassment, anxiety, and emotional distress.

/ / /

**FIRST CAUSE OF ACTION**
**TORTIOUS INTERFERENCE WITH ECONOMIC RELATIONS**
(Against SkyWest and Hansen)

58. Krithivas incorporates paragraphs 1 through 57 as though fully set forth here.

59. Krithivas had an existing employment relationship and prospective economic relations with American Airlines, including continued employment, wages, benefits, seniority, advancement, flight assignments, and future earnings.

60. SkyWest and Hansen knew of those relations. Hansen's email expressly acknowledged that Krithivas had "transitioned to AA."

61. By intentionally directing the Complaint and its factual accusations to Krithivas's employer, SkyWest and Hansen intentionally interfered with those existing and prospective economic relations.

62. The interference was accomplished by improper means, including the alleged defamation and extrajudicial republication pleaded below. Krithivas does not rely on improper motive alone.

63. The email caused or was a substantial factor in American Airlines' adverse employment action and Krithivas's compelled resignation.

64. Krithivas suffered the damages described above and is entitled to all relief allowed by law.

**SECOND CAUSE OF ACTION**
**DEFAMATION AND DEFAMATION PER SE**
(Against SkyWest and Hansen)

65. Krithivas incorporates paragraphs 1 through 64 as though fully set forth here.

66. Hansen published to Nate Gatten at American Airlines an email that identified Krithivas and transmitted the attached Complaint for the stated purpose of making American Airlines aware of the litigation against him.

67. In context, Hansen did not merely report the true fact that litigation had commenced. By selecting, attaching, and directing the Complaint to Krithivas's current employer, identifying Krithivas's employment transition, and inviting additional questions, Hansen republished and called American Airlines' attention to the Complaint's disputed factual accusations that Krithivas circumvented technical restrictions (Complaint ¶¶ 22, 33, 58, 65), accessed information without or in excess of authorization (id. ¶¶ 15, 35, 58-60, 65), acted with intent to defraud (id. ¶ 60), transmitted or misappropriated confidential information (id. ¶¶ 36-38, 48), willfully and maliciously breached fiduciary duties (id. ¶¶ 73-74), and participated in a civil conspiracy (id. ¶¶ 77-81).

68. The accusations were about Krithivas, were capable of being proven true or false, and were materially false.

69. The recipient understood that the accusations concerned Krithivas and bore on his honesty, trustworthiness, professional fitness, and continued employment as an airline pilot.

70. Hansen and SkyWest acted at least negligently as to the truth or falsity of the accusations and, upon information and belief, acted knowingly or with reckless disregard for the truth.

71. The direct transmission to Krithivas's employer served no legitimate function in the adjudication of SkyWest's claims. It was not made in court, to a party, to obtain evidence or testimony, to preserve evidence, to accomplish service, to comply with a court order, or to seek

judicial relief. Its employment-focused destination and content support the inference that it was directed toward collateral employment consequences rather than prosecution of the action.

72. Accordingly, the publication was outside the legitimate scope and purpose of the judicial proceeding. Krithivas pleads this allegation without assuming the burden on SkyWest's affirmative defense of judicial-proceedings privilege.

73. To the extent any qualified privilege is asserted, it was exceeded or abused because the communication went beyond any legitimate common interest, involved excessive publication to Krithivas's employer, and was made with knowledge or reckless disregard of falsity and for an improper purpose. Krithivas pleads these matters without assuming the burden on an affirmative defense.

74. The accusations imputed criminal, dishonest, unethical, and professionally disqualifying conduct and were of a kind that naturally tended to injure Krithivas in his occupation. They therefore constituted defamation per se.

75. The publication caused actual and special damages, including loss of employment, lost wages and benefits, reputational harm, humiliation, embarrassment, and emotional distress. To the extent permitted by law, general damages are also recoverable without proof of special harm.

**THIRD CAUSE OF ACTION**
**ABUSE OF PROCESS**
(Against SkyWest and Hansen)

76. Krithivas incorporates paragraphs 1 through 75 as though fully set forth here.

77. SkyWest invoked judicial process by filing and prosecuting this action and its Complaint against Krithivas.

78. Federal Rule of Civil Procedure 11(b)(3) required SkyWest and its counsel, after an inquiry reasonable under the circumstances, to ensure that the Complaint's factual contentions had evidentiary support or, if specifically identified as likely to have support after investigation or discovery, would likely obtain such support. Krithivas does not assert a separate cause of action under Rule 11, but alleges SkyWest's knowing use of unsupported factual accusations as evidence of misuse of the judicial process.

79. When SkyWest filed and continued to prosecute the Complaint, it possessed or controlled the system records, configuration information, authentication records, and endpoint behavior bearing on whether Krithivas circumvented a technological restriction. SkyWest's discovery admissions that it issued Krithivas's credentials, maintained his authenticated account, and returned the disputed fields in the endpoint response support the inference that SkyWest and Hansen knew, or would have learned through reasonable inquiry, that material accusations of circumvention, fraudulent access, and related wrongdoing lacked evidentiary support.

80. SkyWest and Hansen used the Complaint for a collateral employment-related purpose beyond adjudicating the claims asserted in this action. The February 2 transmission occurred against the backdrop of SkyWest's knowledge that the challenged collection of pilot contact information was connected to efforts to communicate with pilots concerning potential union representation; SkyWest's public denunciation of Moussaron and Krithivas to its pilot workforce on January 26; and SkyWest's filing of the Complaint four days later. Those circumstances support a reasonable inference that Hansen's subsequent transmission of the Complaint directly to Krithivas's new employer was intended, at least in part, to punish Krithivas

for his assistance with the collection of information for union-related activity, deter similar activity, and cause collateral employment consequences.

81. Hansen's February 2 email was a willful act independent of filing or ordinarily prosecuting the action. Hansen selected the Complaint, directed it to Krithivas's nonparty employer, expressly identified Krithivas's transition to American Airlines, and invited follow-up even though American Airlines had no identified role in adjudicating SkyWest's claims. That act corroborated the collateral employment purpose.

82. SkyWest is liable for Hansen's conduct because he acted through his authority as SkyWest's General Counsel and corporate officer and because SkyWest authorized, directed, approved, or ratified the communication.

83. The misuse of process caused the adverse employment and other damages described above.

**PUNITIVE DAMAGES ALLEGATIONS**

84. Krithivas incorporates paragraphs 1 through 83 as though fully set forth here.

85. Upon information and belief, SkyWest and Hansen intentionally directed serious accusations to Krithivas's employer while knowing that the communication was likely to jeopardize his livelihood, and did so knowingly, maliciously, or in reckless indifference to his rights. The retaliatory inference is further supported by the sequence of events. SkyWest knew that the conduct attributed to Krithivas involved assistance in gathering contact information for the purpose of communicating with pilots concerning potential union representation; publicly characterized Krithivas and Moussaron as thieves and wrongdoers; commenced this action four days later; and, through its General Counsel, transmitted the Complaint directly to Krithivas's

new employer three days after filing it. Krithivas alleges that this sequence reflects a deliberate effort to use accusations of serious misconduct to impose employment and reputational consequences for Krithivas's assistance with conduct undertaken to facilitate union-related activities and to deter similar conduct by others.

86. Krithivas therefore seeks punitive damages to the extent allowed by Utah law and supported by clear and convincing evidence.

**JURY DEMAND**

87. Krithivas demands a trial by jury on all claims and issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Krithivas respectfully requests judgment in his favor and against SkyWest and Hansen as follows:

A. Compensatory and consequential damages in an amount to be proven at trial;

B. Special damages, including lost wages, lost benefits, lost seniority, lost career opportunities, loss of future earning capacity, and other economic loss;

C. General damages, including reputational harm, humiliation, embarrassment, emotional distress, and other noneconomic loss;

D. Presumed damages to the extent permitted on the defamation-per-se theory;

E. Punitive damages to the extent permitted by law;

F. Prejudgment and postjudgment interest as permitted by law;

G. Costs and attorney fees to the extent permitted by law; and

H. Such other and further relief as the Court deems just and proper.

/ / /

DATED this 20th day of August, 2026.

**LAW OFFICES OF TIMOTHY D. DUCAR, PLC**

By /s/ Scott C. Uthe
Scott C. Uthe
Timothy D. Ducar
9280 E. Raintree Drive, Suite 104
Attorneys for Defendant Vikaas Krithivas