SCHOLNICK · THORNE · HOLLAND
Employment & Labor Law

July 31, 2026

***Sent Via Electronic Mail***

Gregory M. Saylin
Zachary T. Burford
Tyler S. Erickson
Tyson C. Horrocks
Holland & Hart LLP
222 South Main Street, Suite 2200
Salt Lake City, Utah 84101-2194

**Re: SkyWest Airlines, Inc. v. Moussaron & Krithivas**
**Meet and Confer Regarding Discovery Deficiencies**

Dear Zach:

We write pursuant to DUCivR 37-1 and Federal Rule of Civil Procedure 37(a)(1) to identify deficiencies in SkyWest's responses to Moussaron's discovery (SkyWest's February 26, 2026 Responses to Moussaron's Expedited Discovery Requests and its April 22, 2026 Responses to Moussaron's Second Set of Expedited Discovery Requests) and to ask that SkyWest cure them. We raise these now so the parties can resolve them together and avoid piecemeal motion practice.

**1. The authorization and technical discovery: Interrogatory No. 1 and Requests for Production Nos. 1–5.**

This discovery goes to the heart of SkyWest's Computer Fraud and Abuse Act and UCADRA claims, which allege that Moussaron accessed Directory data "without authorization." SkyWest bears the burden of proving what its authorization architecture was and how the Defendants are alleged to have exceeded it. The configuration that governed what the SWOL Directory returned, and to whom, is therefore squarely relevant.

**UTAH**
40 South 600 East
Salt Lake City, Utah 84102
P: 801-359-4169
**utahjobjustice.com**

**WASHINGTON**
705 Second Avenue, Suite 1100
Seattle, Washington 98104
P: 801-359-4169
**laborwest.com**

**Interrogatory No. 1.** Interrogatory No. 1 asked SkyWest to identify each event it contends demonstrates unauthorized access and, for each, to identify (a) the identity used and (e) the log source(s) supporting the contention, among other data points. SkyWest provided a general narrative and referred to SkyWest_000001, but it did not identify (a) the specific identity (identity key – for example within Microsoft's environment that called the UserPrincipalName - UPN) used for each alleged event, and did not identify the log source(s) supporting SkyWest's contention (system name and log type). While SkyWest produced SkyWest_000001, it is not a raw system log; it is a summary table SkyWest compiled, and its source and method of derivation are undisclosed and does not identify the log sources. Furthermore, SkyWest_000001 contains columns that could not have been derived from SkyWest_000038 alone — the underlying data simply does not exist in that log. For example, SkyWest_000038's c-ip field records only the internal load balancer address (172.16.10.4), yet SkyWest_000001's ViewerIP column contains the external IP address (199.21.240.83) — a value that must have come from a separate log source. This confirms that SkyWest drew on additional logs beyond SkyWest_000038 to produce SkyWest_000001, and those additional sources have not been identified or produced.

To the extent that SkyWest is refusing to respond to Interrogatory No. 1 in part on its objection that it seeks "security-sensitive" material, such concern is addressed by the Standard Protective Order under DUCivR 26-2. Next, SkyWest's objection that the phrase "without authorization" is "vague and ambiguous" likewise fails: SkyWest uses that precise phrase throughout its own Complaint, and it is the term on which its statutory claims depend. Please supplement Interrogatory No. 1 to identify the specific identity used for each alleged event and identify the log source(s) supporting SkyWest's contention (system name and log type)

**Requests for Production Nos. 1–5.** For each of these Requests, SkyWest's only substantive response is to refer Moussaron to SkyWest_000001 and to its narrative interrogatory answers to Krithivas. That does not answer the Requests. First, SkyWest_000001 is a summary table SkyWest compiled and it does not provide the requested documentation or information responsive to these requests. Request No. 1 sought the API-endpoint documentation and authorization requirements — the technical specifications that would show whether the employee directory was restricted or open to

all logged-in users; Request No. 2 sought the role-based access-control (RBAC) rules, permission matrices, and role/entitlement definitions — the records that define what each type of employee is allowed to see, which go directly to whether Defendants accessed anything beyond their authorized scope; Request No. 3 sought the server response schemas, sample payloads, and UI-rendering/field-omission logic — the technical proof of what data the server actually sent back to any user who made a request, regardless of what appeared on screen; Request No. 4 sought the identity/access-management (IAM/IdP) records reflecting each Defendant's roles, groups, and entitlements — SkyWest's own records showing what roles, permissions, and entitlements Defendants held at the time, which would confirm or refute SkyWest's claim that access was unauthorized; and Request No. 5 sought the underlying log records supporting SkyWest's unauthorized-access contention — the raw source data, not a summary SkyWest compiled from it. SkyWest_000001 is a summary table SkyWest created by selectively extracting and relabeling fields from those raw logs; is not responsive to Requests Nos. 1 through 4, and cross-referencing a narrative interrogatory answer served on Krithivas does not produce the documents these Requests call for.

Next, SkyWest's objections to Requests Nos. 1–5 do not withstand scrutiny. First, the "security-sensitive" and proportionality objections fail for the reason stated above: this material is the root of SkyWest's own claims, and the Standard Protective Order resolves any confidentiality concern. If any responsive document is confidential, SkyWest was required to produce it under the Standard Protective Order, which it has not done in the months since. Second, the objection that terms such as "API endpoint, service call, method, or function," "endpoint path/URL and HTTP method," and "the layer(s) where authorization is enforced" are "ambiguous and unclear" is not credible; these are standard terms of art in information technology, and Request No. 2 defines "Pilot Contact Information" inline as "phone number, address, email address." Third, the objection that the Requests seek documents "not readily available or that do not exist in a format reasonably capable of production" cannot be reconciled with the Court's Preservation Order, which requires SkyWest to "preserve the current and historic state of the SWOL directory … including Defendants' access privileges, changes to Defendants' access privileges, [and] change logs for SWOL." Dkt. No. 43 ¶ 12. To be clear, what these Requests seek is not voluminous: Request No. 2 seeks the access-control configuration

— the system rules defining what each user role is permitted to access — which is a discrete set of records, not transactional data. Request No. 4 seeks Defendants' specific role and group assignments, which is a simple lookup in SkyWest's identity management system. To the extent SkyWest contends that change-log production would be burdensome, Defendants are willing to narrow the request to changes made between August 1, 2025 and January 31, 2026. Modern source-control, IAM, and logging systems export such material routinely; if any responsive material genuinely does not exist, SkyWest must say so expressly rather than shield non-production behind a boilerplate object.

The asymmetry is difficult to ignore. SkyWest invokes that same Preservation Order to justify a forensic search of Moussaron's personal devices, while withholding the preserved SWOL authorization records that bear on the "authorized access" element of its own claims. And SkyWest has already described this very authorization configuration in this case – as such SkyWest has viewed the data. For example, in response to Krithivas's discovery, SkyWest explained that visibility of the restricted contact fields was controlled by "server-side, role-based field-level restrictions … through 'isManager' and 'Model.IsEmployee' logic." SkyWest's June 11, 2026, Responses to Krithivas's First Set, Response to Interrogatory Nos. 8 and 10. SkyWest also admitted that the employee-detail endpoint "returned the same data fields regardless of whether the request originated from a click within the Directory UI or from an automated script." SkyWest's July 20, 2026 Responses to Krithivas's Second Set, Response to Request for Admission No. 21. SkyWest cannot narrate that configuration to the co-defendant while withholding from Moussaron the underlying documentation these Requests seek.

Please produce, under the Standard Protective Order, or confirm in writing that none exists: (a) the endpoint and authorization documentation responsive to Request No. 1; (b) the RBAC rules, permission matrices, and role/entitlement definitions responsive to Request No. 2; (c) the response schemas, sample payloads, and UI-rendering/field-omission logic responsive to Request No. 3; (d) each Defendant's IAM/IdP roles, groups, and entitlements responsive to Request No. 4, including any authorization-decision or field-filtering records maintained by SkyWest's identity and access-management systems, SkyWest's environment includes Microsoft Entra ID/Azure Active Directory,

which retains such records; and (e) the underlying log records responsive to Request No. 5, distinct from the SkyWest_000001 summary.

**2. Management communications regarding ALPA and organizing (Request for Production Nos. 6 and 7).**

SkyWest objected that Request No. 7 is overbroad and "not relevant," and stated that it "will not produce documents responsive to Request No. 7 as written," while offering to meet and confer regarding reasonable limitations These communications are directly relevant to Moussaron's Railway Labor Act counterclaim: SkyWest's claim concerns authorization, but Moussaron's counterclaim concerns retaliation for protected organizing activity, and SkyWest's internal management communications about ALPA and the organizing campaign bear on motive and pretext. Moussaron is willing to narrow the request and proposes limiting it to: (a) custodians limited to Management-level employees and above with responsibility for Flight Operations and the response to organizing, including the Chief Pilots and Assistant Chief Pilots and the individuals SkyWest has itself identified in its responses and July 8, 2026 privilege log (including Dale Hansen, Todd Emerson, Marissa Snow, Kari Tate, Tracy Gallo, Greg Wooley, and Jessica Mulligan); (b) subject matter limited to ALPA and the pilot-organizing campaign, the December 2025 pilot outreach, and SkyWest's response to it; and (c) the period January 1, 2025 to the present. While some responsive material may be privileged and can be placed on a privilege log, not all of it is, and a blanket refusal is improper. Please also confirm whether SkyWest has produced the communications it agreed to produce in response to Request No. 6 (items (a) through (e)), and produce them if it has not. Please confirm SkyWest will produce on this narrowed scope, or propose alternative limitations.

**3. The Paragraph 37 pilot and SkyWest's investigation (Interrogatory No. 2).**

Interrogatory No. 2 asked SkyWest to identify the pilot referenced in Paragraph 37 of the Complaint, what was reported to SkyWest about the complaint, who at SkyWest received the report and how, and whether the phone call wherein the complaint was made to SkyWest (if one occurred) was recorded. SkyWest's complaint Paragraph 37 states "SkyWest received a complaint from a pilot who **said** he had received an unsolicited call…" This paragraph indicates that the pilot contacted SkyWest and verbally conveyed to SkyWest the complaint. However, SkyWest has not provided any information about

who at SkyWest received the complaint and talked with the pilot. Instead, SkyWest refers to a Facebook post. To the extent that SkyWest "received a complaint from a pilot" by monitoring and seeing the Facebook post, as opposed to receiving a verbal phone call, please clarify – as it appears contrary to the description in Paragraph 37 of the Complaint. Also identify who at SkyWest "received" the complaint, how the complaint was conveyed to SkyWest, and who at SkyWest the complaint was conveyed to.

Next, SkyWest declined to identify the pilot and objected on the basis of the attorney-client privilege, the work-product doctrine, and its "internal investigation." Those objections do not fit the Interrogatory. Interrogatory No. 2 seeks facts – the identity of the complaining witness, what he reported, and who at SkyWest received it – not "internal communications with counsel or investigation strategy." The attorney-client privilege "only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney." Upjohn Co. v. United States, 449 U.S. 383, 395 (1981). Moussaron is entitled to identify and confront the witness whose report SkyWest placed at the center of its Complaint. SkyWest's "internal investigation" objection is likewise untenable: the factual basis that caused the investigation is not protected. (¶¶ 21–40),

In addition, the post SkyWest produced (SkyWest_000015) was made under the name "Michael Bonaparte." SkyWest characterizes the poster as a "pilot" – please clarify if Michael is the pilot that made the complaint pursuant to Paragraph 37 of the Complaint. Finally, if there was a call wherein the complaint was conveyed by a pilot to SkyWest, identify if there is a recording of the call or not.

**4. SkyWest's review of SWOL (Interrogatory No. 5).**

In response to Interrogatory No. 5, SkyWest stated that its "review of SWOL/Directory activity was initiated in response to reports of misuse of pilot contact information," and that it "will supplement with additional non-privileged identification of personnel and roles after completing reasonable inquiry." Please supplement Interrogatory No. 5 to identify the personnel and roles involved in the SWOL review as SkyWest agreed to do, and to identify the "reports of misuse" that SkyWest contends initiated the review.

**5. SAPA's access to pilot contact information (Request for Admission No. 1 and Interrogatory No. 6).**

SkyWest admitted, in response to Request for Admission No. 1, that it "granted certain designated SAPA leaders access to pilot telephone numbers." Interrogatory No. 6 asked SkyWest to identify which SAPA representatives were given access, the dates and manner of access, the categories of information accessible, and the number of pilots affected. SkyWest identified the SAPA positions with access but did not provide the individuals' names, the dates, and the number of pilots, objecting that the number of pilots is "overbroad" and implicates "non-party privacy," and that names are outside its "possession, custody, or control." Those objections are not proper. The number of pilots is a routine roster or seniority-list query, and SkyWest quantified analogous access populations in its answers to Krithivas. See SkyWest's July 20, 2026 Responses to Krithivas's Second Set, Response to Interrogatory No. 18. And SkyWest cannot claim the representatives' identities are outside its control or private, because it identified those very individuals, by name, in response to Krithivas's parallel interrogatory. Id., Response to Interrogatory No. 17 (identifying by name the individuals who have held each SAPA position since January 1, 2025). Moussaron is entitled to the individuals' names who had access to pilot contact information. Please supplement Interrogatory No. 6 to identify the SAPA representatives by name, the dates access was granted, and the number of pilots whose contact information was accessible. This information bears on SkyWest's characterization of the same category of pilot contact information claiming it was confidential and misappropriated.

**6. SkyWest's July 8, 2026 privilege log.**

The log withholds communications responsive to Request for Production Nos. 6 and 7. Several entries appear to assert privilege over business, public-relations, and labor-relations communications rather than legal advice. The numerous entries described only as "regarding investigation," including communications among SkyWest's communications, human-resources, and operations personnel, raise a concern. The proponent of the privilege bears the burden of establishing it, the privilege is narrowly construed, and it protects only communications made for the purpose of legal advice, not business communications, even where in-house counsel is involved. Motley v. Marathon

Oil Co., 71 F.3d 1547, 1550-51 (10th Cir. 1995) ("the mere fact that an attorney was involved in a communication does not automatically render the communication subject to the attorney-client privilege.") The log must also "describe the nature of the documents … in a manner that … will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii). The current descriptions do not permit that assessment. Please serve an amended log that, for each entry, identifies the specific subject matter and the legal (as opposed to business) purpose of the communication, and produce any document withheld on an erroneous designation.

**7. Individuals involved in Moussaron's termination (Interrogatory No. 3).**

Interrogatory No. 3 asked SkyWest to identify the individuals involved in the decision to terminate Moussaron, the role each individual played in that decision, and who made the final decision. SkyWest identified seven individuals by name and title and stated that Tracy Gallo was the final decision-maker, but it declined to describe the specific role or input each individual had in the decision, objecting that doing so would require a "comprehensive mapping of internal deliberations" and citing the attorney-client privilege and the work-product doctrine. The specific role each identified individual played in the termination decision is a fact, not a privileged communication, and the attorney-client privilege "does not protect disclosure of the underlying facts by those who communicated with the attorney." Upjohn, 449 U.S. at 395. SkyWest separately objected that the circumstances of Moussaron's termination are "not relevant" to this action; that objection is no longer tenable, as Moussaron's counterclaim places the reasons for his termination squarely at issue under the Railway Labor Act. Furthermore, SkyWest has pushed back on more than 10 depositions – here SkyWest identified seven individuals who were involved. Moussaron needs to know the involvement of each individual to determine who at SkyWest to depose. Please supplement Interrogatory No. 3 to state the role each identified individual played in the decision to terminate Moussaron.

**8. Verification of SkyWest's interrogatory answers (Rule 33(b)(5)).**

SkyWest's April 22, 2026 Responses to Moussaron's Second Set of Expedited Discovery Requests, did not include a verification by a SkyWest officer or agent. Please provide a verification.

Please let me know your earliest availability to discuss. Scott Uthe and I are available to discuss Tuesday August 4 from 1 pm – 4 pm; Wednesday August 5 from 11:30 am – 2:00 pm; Thursday 11:30 am – 3:30 pm. Let me know if any of those times work for you. We would prefer to resolve these issues by agreement and appreciate your prompt attention.

Sincerely,

**SCHOLNICK THORNE HOLLAND**

*/s/ Jonathan K. Thorne*
Jonathan K. Thorne

Cc: Scott Uthe
Tim Ducar