Timothy D. Ducar (13423)
Scott C. Uthe (PHV)
LAW OFFICES OF TIMOTHY D. DUCAR, PLC
9280 E. Raintree Drive, Suite 104
Scottsdale, AZ 85260
Telephone: (480) 502-2119
Facsimile: (480) 452-0900
orders@azlawyers.com
*Attorneys for Defendant Vikaas Krithivas*

---

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF UTAH – SOUTHERN DIVISION**

| | |
|---|---|
| SKYWEST AIRLINES, INC.,<br><br>Plaintiff and Counterclaim Defendant,<br><br>vs.<br><br>DANIEL MOUSSARON,<br><br>Defendant and Counterclaim Plaintiff,<br><br>and VIKAAS KRITHIVAS,<br><br>Defendant. | **DECLARATION OF VIKAAS KRITHIVAS IN SUPPORT OF DEFENDANTS' JOINT MOTION FOR PROTECTIVE ORDER**<br><br>Civil No. 4:26-cv-00015-DN-PK<br><br>Senior District Judge David Nuffer<br>Magistrate Judge Paul Kohler |

I, Vikaas Krithivas, am a named Defendant and Counterclaim Plaintiff in this case.

I am competent to testify as to the facts within this Declaration. If called as a witness to testify I could and would testify consistently to the statements herein. I am of lawful age and upon first-hand knowledge, state to the Court as follows:

1. I submit this Declaration in support of Defendants' Joint Motion for Protective Order.

2. I am a former pilot for SkyWest Airlines, Inc. ("SkyWest"). After leaving SkyWest, I began employment as a pilot with American Airlines in approximately September 2025.

3. During 2025, I became aware that SkyWest pilots were engaged in efforts concerning potential union representation by the Air Line Pilots Association, International ("ALPA").

4. On or about August 30, 2025, Daniel Moussaron contacted me and asked whether I would assist with gathering pilot contact information. He told me that the information was being gathered for purposes of communicating with SkyWest pilots concerning potential union representation.

5. I agreed to assist Moussaron with gathering pilot contact information. I was not a member or leader of the Organizing Committee, did not administer the organizing campaign, and did not participate in its broader management. My involvement was limited to the assistance I have previously described in my discovery responses.

6. Before the time Moussaron contacted me, a SkyWest pilot privately communicated with me about unionization, asked about my views concerning union representation, and connected me with Moussaron. That pilot did not make that communication publicly. Identifying that pilot in this litigation would disclose that the pilot privately discussed or associated with an effort concerning union representation.

7. Based on the communications in which I personally participated, discussions among pilots concerning possible union representation were treated as sensitive. These were not subjects that I understood pilots generally to discuss openly with SkyWest management.

8. I understood that whether an individual pilot supported, opposed, or was interested in union representation was personal to that pilot. I did not understand my participation in private communications concerning union representation as permission to disclose another pilot's identity or individual views to SkyWest.

9. On or about January 28, 2026, I received and reviewed a copy of SkyWest’s January 26, 2026 communication to its pilot workforce concerning two “now-former pilots.” I understood the communication to refer to Moussaron and me.

10. In that communication, SkyWest characterized the conduct attributed to us as including unethical and unlawful theft of pilot information, unauthorized access, and extensive effort and manipulation. The communication stated that SkyWest was shocked and disgusted by the conduct and would not tolerate theft.

11. I disagreed with those accusations. I had used credentials issued to me by SkyWest to access SWOL, and I did not believe that I had stolen credentials, defeated SkyWest’s authentication system, or engaged in the type of conduct described in the January 26 communication.

12. On January 30, 2026, SkyWest filed this lawsuit against Moussaron and me, asserting claims based upon the same conduct.

13. I later learned that on February 2, 2026, SkyWest General Counsel Dale Hansen sent a copy of SkyWest’s Complaint directly to an attorney at American Airlines, my then-current employer, and identified me as a former SkyWest pilot who had transitioned to American Airlines.

14. I did not know about Hansen's February 2, 2026 email when it was sent. SkyWest produced that email in discovery on June 11, 2026.

15. On April 6, 2026, an American Airlines Chief Pilot placed me on administrative leave. I was informed that the action did not concern a performance, attendance, training, disciplinary, or operational problem arising from my employment at American Airlines. I was informed that a meeting concerning my employment would occur on April 10, 2026.

16. After being placed on administrative leave, I sought assistance from representatives of the Allied Pilots Association ("APA").

17. On April 9, 2026, I participated in a call with APA representatives concerning the anticipated April 10 meeting. I was informed that American Airlines had identified SkyWest's Complaint as the issue giving rise to the anticipated employment action and that American Airlines was very likely to terminate my employment.

18. I was also informed that termination could have serious consequences for my professional pilot record and future employment opportunities. I was advised to consider resigning before the meeting in order to reduce those consequences.

19. I did not want to resign from American Airlines. I intended to continue my career there. Based upon what I had been told concerning the anticipated termination and its possible effect on my pilot record and future employment, however, I concluded that I had no reasonable alternative that would adequately protect my career.

20. I resigned from American Airlines on April 10, 2026, before the scheduled meeting. The meeting did not occur.

21. I subsequently learned through SkyWest's June 11, 2026 production that its General Counsel had personally transmitted the Complaint to American Airlines shortly after this lawsuit was filed.

22. My experience has affected how I view requests that would require me to disclose the identities of current or former SkyWest pilots who privately discussed, supported, participated in, or expressed interest concerning union representation.

23. I am reluctant to identify a nonparty pilot merely because that person privately discussed union representation, supported an organizing effort, communicated with persons involved in organizing, or expressed an individual view concerning union representation.

24. I have declined in discovery to identify persons merely because they supported, discussed, or communicated about union representation. My reluctance is not based upon a desire to conceal evidence concerning my own conduct. It is based upon my concern that identifying those individuals to SkyWest could expose their private association or views and subject them to investigation, unwanted attention, reputational harm, or employment consequences.

25. That concern is informed by my own experience. After SkyWest attributed union-related contact-information activity to me, SkyWest publicly accused the two former pilots involved of serious misconduct, filed this lawsuit, and its General Counsel transmitted the Complaint directly to my subsequent airline employer. I thereafter lost the employment I intended to continue at American Airlines.

26. I therefore consider the identity of a pilot who privately communicated about or participated in organizing activity materially different from factual or technical information concerning what I personally did.

27. I have provided discovery concerning my own conduct. Among other things, I have disclosed that I used credentials issued to me by SkyWest, that Moussaron provided me a Tampermonkey userscript on September 3, 2025, and that I used the script in connection with requests made through SWOL. I have also identified Moussaron and myself as the persons known to me to have participated in obtaining contact information through the SWOL Directory on September 3, 2025.

28. I am not asking that technical evidence concerning my conduct be withheld merely because the conduct was associated with efforts to communicate with pilots concerning potential union representation.

29. My concern is instead with disclosure of information that identifies a nonparty pilot as a private supporter, participant, or person interested in union representation; reveals that pilot's individual response or sentiment concerning union representation; or reveals private organizing communications that are not necessary to establish the technical facts concerning my conduct.

30. In my experience, disclosure of those identities or individual views to SkyWest would make me substantially less willing to involve another SkyWest pilot in a private discussion concerning union representation or to preserve that pilot's confidence. Based upon the consequences I personally experienced after SkyWest attributed the challenged activity to me,

my concern about exposing another pilot's private association to SkyWest is concrete rather than hypothetical.

31. I make this Declaration to explain the basis for my reluctance to disclose non-public associational information and not for the purpose of preventing SkyWest from obtaining relevant, nonprivileged evidence concerning my own conduct.

I declare under penalty of perjury under the laws of the United States and the States of Utah and Illinois that the foregoing is true and correct.

Executed this 11th day of September, 2026, at Chicago, IL.

Vikaas Krithivas