Gregory M. Saylin, #9648
Tyson C. Horrocks, #12557
Zachary T. Burford, #19771
Holland & Hart LLP
222 South Main Street, Suite 2200
Salt Lake City, UT 84101-2194
Telephone: 801.799.5800
GMSaylin@hollandhart.com
TCHorrocks@hollandhart.com
ZTBurford@hollandhart.com

*Attorneys for Plaintiff and Counterclaim Defendant SkyWest Airlines, Inc. and Counterclaim Defendant Dale Hansen*

---

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF UTAH – SOUTHERN DIVISION**

| | |
|---|---|
| SKYWEST AIRLINES, INC.,<br><br>Plaintiff and Counterclaim Defendant,<br><br>and DALE HANSEN,<br><br>Additional Counterclaim Defendant,<br><br>vs.<br><br>DANIEL MOUSSARON,<br><br>Defendant and Counterclaim Plaintiff,<br><br>and VIKAAS KRITHIVAS,<br><br>Defendant and Counterclaim Plaintiff. | **SKYWEST AIRLINES, INC.'S AND DALE HANSEN'S MOTION TO DISMISS DEFENDANT VIKAAS KRITHIVAS'S COUNTERCLAIM**<br><br>Civil No. 4:26-cv-00015-DN-PK<br><br>Senior District Judge David Nuffer<br>Magistrate Judge Paul Kohler |

Plaintiff and Counterclaim Defendant SkyWest Airlines, Inc. ("SkyWest") and Additional Counterclaim Defendant Dale Hansen ("Hansen"), by and through counsel, respectfully move this Court, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss with prejudice the

Counterclaim filed by Defendant and Counterclaim Plaintiff Vikaas Krithivas ("Krithivas") on or about August 20, 2026 (Dkt. No. 114) ("Counterclaim"). In support of this Motion, SkyWest and Hansen state as follows:

**RELIEF SOUGHT AND INTRODUCTION**

Between August and December 2025, Krithivas and his co-defendant used their SkyWest credentials, browser developer tools, and automated scripts to pull more than 5,000 SkyWest employees' private phone numbers and home addresses from SkyWest's secure, login-protected employee directory. Krithivas does not deny doing it. He disputes only whether the law calls his admitted access "unauthorized." He now tries to recast a data-theft case as a defamation and retaliation case built on SkyWest's truthful account of his conduct.

Krithivas's Counterclaim rests on a singular email. On February 2, 2026, SkyWest's General Counsel, Dale Hansen, forwarded the publicly filed Complaint to a single attorney at American Airlines, noting that SkyWest "just wanted to make [American Airlines] aware of the initiation of litigation against Mr. Krithivas" ("Hansen Email"). From that one email, Krithivas builds three claims against SkyWest and Hansen: tortious interference with economic relations, defamation and defamation per se, and abuse of process. Each fails as a matter of law.

Dismissal is warranted on each of the following independent grounds: (1) the Hansen Email, which merely attached a public court filing and truthfully reported that SkyWest had sued a former pilot who had since transitioned to American Airlines, is not capable of defamatory meaning; (2) the Hansen Email's contents are true; (3) the Hansen Email is protected by Utah's absolute judicial-proceeding privilege; (4) the tortious-interference claim identifies "the alleged defamation and extrajudicial republication" as its sole improper means and collapses with the

defamation claims; (5) the abuse-of-process claim mistakes motive for misuse and pleads no willful act in the use of process, as Utah law requires; and (6) the Counterclaim's allegations are conclusory and fail the plausibility standard of *Twombly* and *Iqbal*.

For the reasons set forth herein, all three causes of action should be dismissed with prejudice.

## STATEMENT OF RELEVANT FACTS

1. SkyWest's Complaint arises from Defendants' access to and extraction of confidential pilot contact information from SkyWest Online ("SWOL"), SkyWest's secure, login-protected employee intranet portal. Dkt. No. 1, Complaint ("Compl.").

2. Krithivas signed a non-disclosure agreement with SkyWest. Compl. ¶ 42.[1]

3. Krithivas admits that, on September 3, 2025, he logged into SWOL using his employee ID, password, and multi-factor authentication and accessed directory data – including employee numbers, names, addresses, and phone numbers – for approximately 5,000 pilots. Dkt. No. 48, Krithivas's Answer to SkyWest's Complaint ("Krithivas's Ans.") ¶¶ 15–17.

4. Krithivas disputes only the legal characterization of that access as "unauthorized" or "in excess of authorization" under the CFAA and UCADRA; he does not dispute that he

[1] The Court may consider Krithivas's Answer in resolving this Motion. While consideration of material attached to an answer or a motion to dismiss ordinarily requires conversion to summary judgment, "facts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment," which "allows the court to 'take judicial notice of its own files and records, as well as facts which are a matter of public record.'" *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) (quoting *Van Woudenberg ex rel. Foor v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000)); *see also Grynberg v. Koch Gateway Pipeline Co*., 390 F.3d 1276, 1278 n.1 (10th Cir. 2004). Krithivas's Answer is a pleading filed in this action, and the admissions in it are his own judicial admissions binding on him for purposes of this Motion. *Tal*, 453 F.3d at 1264 n.24.

accessed SWOL and obtained the pilot contact information. Krithivas's Ans. ¶¶ 15–17, 37–39, 41–43.

5. SkyWest publicly filed its Complaint on January 30, 2026. *See* Docket.

6. On February 2, 2026, Hansen, SkyWest's General Counsel, sent an email to an attorney at American Airlines—an established SkyWest commercial partner under whose agreements SkyWest operates flights—attaching the Complaint and stating that it had been "filed against a former SkyWest pilot (Vikaas Krithivas) who has since transitioned to AA," and that SkyWest "just wanted to make [American Airlines] aware of the initiation of litigation against Mr. Krithivas." Counterclaim ¶¶ 19–21; Dkt. No. 68-2, Ex. B to Krithivas's Mot. for Leave to Amend (Dkt. No. 68).

7. Krithivas admits that, after leaving SkyWest, he "began employment with American Airlines" and had "transitioned to AA" by the time of the Hansen Email. Counterclaim ¶¶ 7, 20, 47.

8. Krithivas alleges he was constructively discharged from American Airlines when he resigned on April 10, 2026—approximately two months after the Hansen Email was sent. Counterclaim ¶¶ 5, 48, 51–53.

9. Critically, Krithivas admits that at the time he resigned, he "did not know that Hansen had directly sent the Complaint to an American Airlines attorney." Counterclaim ¶ 54.

## <u>LEGAL STANDARD</u>

"A defendant is entitled to dismissal under Rule 12(b)(6) when the complaint, standing alone, is legally insufficient to state a claim for which relief may be granted." *Solid Q Holding, LLC v. Arenal Energy Corp.*, No. 2:15-cv-00419-DN-PMW, 2017 U.S. Dist. LEXIS 28239, at *2

(D. Utah Feb. 27, 2017). While well-pled factual allegations are accepted as true, the Court "is not bound to accept the complaint's legal conclusions and opinions, whether or not they are couched as facts," and instead "will disregard conclusory statements and look only to whether the remaining factual allegations plausibly suggest the defendant is liable." *Id*. at *2–3 (citations omitted).

"A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Where "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–that the pleader is entitled to relief." *Id*. at 679 (internal quotation marks omitted).

## ARGUMENT

## I. THE DEFAMATION AND DEFAMATION PER SE CLAIMS FAIL AS A MATTER OF LAW[2]

### A. The Hansen Email Is Not Capable of Defamatory Meaning.

Whether a statement is capable of defamatory meaning is a threshold question of law for the Court. *Jacob v. Bezzant*, 2009 UT 37, ¶ 18, 212 P.3d 535; *see also Pipkin v. Acumen*, 2020 UT

[2] Krithivas's defamation claims will be addressed first because his remaining causes of action depend on them. The Counterclaim's tortious-interference claim expressly identifies "the alleged defamation and extrajudicial republication" as its sole improper means (Counterclaim ¶ 62), and the abuse-of-process claim is likewise built on the theory that the Hansen Email disseminated false statements. Because the defamation and defamation per se claims fail on multiple independent grounds, the dependent claims necessarily fail as well. *Miller v. Safe Home Sec., Inc*., No. 2:25-cv-00172-JNP-JCB, 2026 U.S. Dist. LEXIS 201079, at *16 (D. Utah Aug. 14, 2026) (the plaintiff's defamation claims failed which resulted in his tortious interference claims failing because their sole improper means were based on his defamation claims).

App 111, ¶ 16 ("[B]efore the matter may proceed to the trier of fact, the court must initially determine whether, as a matter of law, the challenged statement 'is capable of conveying a defamatory message.'") (citation omitted). "[A] statement is defamatory if it impeaches an individual's honesty, integrity, virtue, or reputation and thereby exposes the individual to public hatred, contempt, or ridicule." *Jacob*, 2009 UT 37, ¶ 26 (citation omitted). "A publication is not defamatory simply because it is nettlesome or embarrassing to a plaintiff. . . ." *Sunwest Bank v. Gannett Co.*, No. 2:24-cv-00876-DBB-JCB, 2026 U.S. Dist. LEXIS 101532, at *8 (D. Utah May 5, 2026) (citation and internal quotation marks omitted). To be "defamatory," the statement must be "more than sharp criticism." *West v. Thomson Newspapers*, 872 P.2d 999, 1009 (Utah 1994). Rather, the party "must establish that it damaged his reputation . . . in the eyes of at least a substantial and respectable minority of its audience." *Id*. "[T]he guiding principle is the statement's tendency to injure a reputation in the eyes of its audience." *Id*. at 1008.

"A court simply cannot determine whether a statement is capable of sustaining a defamatory meaning by viewing individual words in isolation; rather, it must carefully examine the context in which the statement was made, giving the words their most common and accepted meaning." *Id*. at 1009. If a statement is not capable of bearing a defamatory meaning, the claim fails as a matter of law. *See Jacob*, 2009 UT 37, ¶ 31 (statements did not convey a defamatory meaning and therefore failed as a matter of law). Critically, in Utah, to "accommodate the respect [courts] accord [constitutional] protections of speech," courts do not "indulge [a plaintiff] by interpreting inferences that may be reasonably drawn from the statements in favor of a defamatory meaning." *Jacob*, 2009 UT 37, ¶ 18 (cleaned up).

Here, the Hansen Email is not capable of conveying a defamatory message as it did nothing more than attach SkyWest's publicly filed Complaint and state that SkyWest "just wanted to make [American Airlines] aware of the initiation of litigation against Mr. Krithivas."[3] Counterclaim ¶ 21; Dkt. No. 68-2.[4] A bare statement that a lawsuit has been filed, or a mere complaint, is not actionable. *Spencer v. Glover*, 2017 UT App 69, ¶¶ 28–29, 397 P.3d 780 (statement that a person is "strongly considering suing" another is not defamatory). Drawing no inferences in Krithivas's favor, a reasonable recipient of the Hansen Email would understand only that SkyWest had filed a Complaint and made certain allegations against him—not that SkyWest was vouching for the truth of those allegations.

Simply put, the Hansen Email is not capable of bearing a defamatory meaning and thus Krithivas's defamation claim fails as a matter of law. Therefore, Krithivas's defamation claims must be dismissed with prejudice.

**B. The Hansen Email Is Substantively True.**

Utah law recognizes that "truth is an absolute defense to an action for defamation," and

---

[3] As discussed in greater detail below, the Complaint itself is protected by Utah's absolute judicial-proceeding privilege, and simply transmitting that privileged pleading—without embellishment or any independent characterization of Krithivas—to a business partner with an interest in the litigation cannot itself give rise to a defamation claim. *See Rainfocus*, 2023 UT App 32, ¶ 18 n.8 (assuming a party may provide a minimal statement that it filed a lawsuit without rendering the statement defamatory).

[4] The Hansen Email is properly before the Court on this Motion. The Counterclaim quotes and relies on the email in each of its causes of action, *see* Counterclaim ¶¶ 1–2, 19–22, 61–63, 66–71, 80–81, and its authenticity is not in dispute—SkyWest produced it in discovery and Krithivas filed it of record. A document referred to in the pleading and central to the claimant's claims may be considered on a Rule 12(b)(6) motion without converting it into one for summary judgment. *See Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002). The Court may independently take judicial notice of the email as part of its own files and records. *See supra* note 1; *Tal*, 453 F.3d at 1264 n.24.

that defense is "sufficiently established if the defamatory charge is true in substance," such that "[i]nsignificant inaccuracies of expression do not defeat the defense of truth." *RainFocus, Inc. v. Cvent, Inc.*, 2023 UT App 32, ¶ 10, 528 P.3d 1221 (quoting *Brehany v. Nordstrom, Inc.*, 812 P.2d 49, 58 (Utah 1991)). "It is not necessary to establish the literal truth of the precise statement made. Slight inaccuracies of expression are immaterial provided that the defamatory charge is true in substance." Restatement (Second) of Torts § 581A cmt. f (Am. L. Inst. 1977). Whether an alleged defamatory statement is substantially true may be decided as a matter of law on a motion to dismiss "[w]hen underlying facts as to the gist or sting are undisputed." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1137 (10th Cir. 2014) (internal quotation marks omitted); *see also Vowell v. Gannett Satellite Info. Network, LLC*, 2017 U.S. Dist. LEXIS 17846, at *3-6 (D. Utah Feb. 6, 2017) (dismissing a defamation claim based on a finding that the statement was substantially true). Accordingly, the relevant inquiry is not whether every word of the challenged publication is literally accurate, but whether the publication's overall substance is true.

The Hansen Email is plainly true on its face. It forwarded SkyWest's publicly filed Complaint and stated only that the Complaint had been "filed against a former SkyWest pilot (Vikaas Krithivas) who has since transitioned to AA," and that SkyWest "just wanted to make [American Airlines] aware of the initiation of litigation against Mr. Krithivas." Counterclaim ¶¶ 19–21; Dkt. No. 68-2. Every factual assertion in it is true: (1) SkyWest filed the Complaint on January 30, 2026; (2) Krithivas is a former SkyWest pilot; (3) he transitioned to American Airlines; and (4) litigation was initiated against him. Counterclaim ¶¶ 7, 14, 19–21. These are matters of public record.

Hansen's minimal statement that a lawsuit had been initiated is not actionable.

The *RainFocus* court assumed, without deciding, that a party may rely on the truth defense for "a minimal statement that it filed a lawsuit or is responding to one and a nominal statement of the general nature of the suit." *RainFocus*, 2023 UT App 32, ¶ 18 n.8. That describes the Hansen Email exactly. Hansen did not embellish the Complaint or add independent characterizations of Krithivas. He forwarded the public filing and noted the "initiation of litigation." Unlike in *RainFocus*, Hansen did not go "far beyond" the pleadings and tell American Airlines that it had "evidence" the plaintiff "actually" stole the information. *Id.* ¶¶ 18 n.8, 25.

Moreover, the Complaint itself, which the Hansen Email merely attached, describes conduct that Krithivas admits he engaged in: logging into SWOL on September 3, 2025 using his employee credentials and multi-factor authentication, accessing directory data for approximately 5,000 pilots, installing the Tampermonkey browser extension, and transmitting data to a remote server at Moussaron's direction. Krithivas's Ans. ¶¶ 15–17; Counterclaim ¶ 34. Krithivas disputes only the legal characterization of his conduct as "unauthorized"—not the substance of the conduct itself. Counterclaim ¶¶ 16–17. Thus, he cannot establish the falsity required for a defamation claim where he concedes that the substance of the statements is accurate. *See Hagler v. WSAZ NewsChannel 3*, No. 3:19-cv-00545, 2020 U.S. Dist. LEXIS 58210, at *13-14 (S.D. W. Va. Jan. 15, 2020) (when the substance of the claim is accurate, the statement does not rise to a level of falsity).

Thus, Krithivas's defamation claims fail because the statements contained in the Hansen Email are true.

### C. The Hansen Email Is Protected by Utah's Absolute Judicial-Proceeding Privilege.

Utah's judicial-proceeding privilege "immunizes certain statements that are made during a

judicial proceeding from defamation claims," provided the statements were "(1) made during or in the course of a judicial proceeding; (2) have some reference to the subject matter of the proceeding; and (3) [were] made by someone acting in the capacity of judge, juror, witness, litigant, or counsel." *RainFocus*, 2023 UT App 32, ¶ 14 (quoting *Pratt v. Nelson*, 2007 UT 41, ¶¶ 27–28, 164 P.3d 366). It is an absolute privilege and may be resolved on the pleadings when its applicability is apparent from the face of the complaint. *See Mathews v. McCown*, 2025 UT 34, ¶¶ 138–41.

All three elements are established on the face of the Counterclaim: Hansen is SkyWest's General Counsel. Counterclaim ¶ 9. He sent the challenged email three days after SkyWest filed the Complaint. *Id.* ¶¶ 14, 19. And he did nothing more than forward the publicly filed Complaint to SkyWest's key business partner and state that SkyWest wanted American Airlines to be aware of "the initiation of litigation against Mr. Krithivas." *Id.* ¶¶ 19, 21; Dkt. No. 68-2. Additionally, the email plainly "reference[s] . . . the subject matter of the proceeding." *RainFocus*, 2023 UT App 32, ¶ 14. Importantly, Hansen did not excessively disseminate or discuss the underlying allegations. Rather, he sent his email to a single individual at American Airlines, with a plainly legitimate interest in being informed that a former SkyWest pilot who "ha[d] since transitioned to AA" was the subject of computer-misuse litigation. Counterclaim ¶¶ 19–21. He did not "go far beyond" the pleadings or embellish the allegations—he made "a minimal statement that [SkyWest] filed a lawsuit," and attached the publicly filed Complaint without any additional commentary. *RainFocus*, 2023 UT App 32, ¶¶ 18, 21 ("[T]here is a difference between stating, 'Our complaint alleges X generally' and specifically stating the individual allegations").

Krithivas attempts to characterize the Hansen Email as "extrajudicial" and therefore outside the scope of the privilege. *See* Counterclaim ¶¶ 3, 22–26, 71–72. But these allegations are legal conclusions, not facts, and the Court need not accept them as true. *See Iqbal*, 556 U.S. at 678 ("the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). The undisputed facts demonstrate that the Hansen Email did nothing more than forward a filed judicial pleading with a brief, accurate cover statement, to only one person. Counterclaim ¶¶ 19–21; Dkt. No. 68-2. The fact that the email was sent to a nonparty does not strip the privilege. Parties routinely communicate about pending litigation to interested third parties, and the privilege extends to statements that bear some relation to the judicial proceeding. *See RainFocus*, 2023 UT App 32, ¶ 15 (privilege remains attached to allegations from a judicial proceeding unless "published to more persons than necessary to resolve the dispute or further the objectives of the proposed litigation") (citation omitted).[5] The narrow, litigation-referencing content of the Hansen Email falls squarely within the scope of the privilege; therefore, Krithivas's claim must be dismissed with prejudice.

---

[5] Courts in other jurisdictions have likewise held that transmitting a publicly filed complaint to a third party, without more, is not actionable. *See Held v. Scott Silver & Silver & Assocs., LLC*, No. 3:10-cv-00992, 2013 U.S. Dist. LEXIS 148514, at *21–22 (D. Conn. Oct. 16, 2013) (holding that a litigant's "forwarding of [a] complaint" to a third party—"even if done with the explicit intention of impacting [the recipient's] view on [the plaintiff's] character or reputation—is not actionable as defamation, because such an act is a truthful sharing of a privileged and public document," and dismissing with prejudice all claims "solely preoccupied with . . . forwarding th[e] complaint"; only the sender's own editorial commentary, which went "significantly beyond a mere summary" of the filing, survived); *Wang v. Frank*l, No. CV 960391493, 1999 Conn. Super. LEXIS 2866, at *12–13 (Conn. Super. Ct. Oct. 18, 1999) (publication that is "a fair and accurate representation of the substance of the complaint . . . and the proceedings" is privileged and cannot support claims for defamation or tortious interference).

To the extent the Counterclaim predicates its defamation and derivative claims on the allegations contained in SkyWest's Complaint itself, *see* Counterclaim ¶¶ 66–67, those claims are barred for the independent and more fundamental reason that statements in a filed pleading are the paradigmatic communications protected by the absolute judicial-proceeding privilege. *See Pratt*, 2007 UT 41, ¶ 29 ("The privilege applies to every step in the proceeding until final disposition," including the allegations in pleadings); *Held*, 2013 U.S. Dist. LEXIS 148514, at *21 ("There seems to be little question . . . that [a party's] complaint itself is privileged and [the opposing party] cannot succeed on a defamation claim . . . on the basis of its language or contents.").

For these reasons, Krithivas's defamation claims fail as a matter of law and must be dismissed with prejudice.

### D. The Defamation *Per Se* Theory Independently Fails.

Krithivas cannot manufacture a claim for defamation per se from an accusation of criminal conduct that SkyWest never made—SkyWest has brought only a civil cause of action to recover its stolen data and has not made any criminal accusations against Krithivas. Defamation per se is not a separate cause of action with a lower pleading standard for falsity, privilege, or fault; it is simply an evidentiary shortcut on damages that applies only where the challenged statement falls within a narrow set of historically recognized categories.

Traditionally, a statement qualifies as defamation per se only if it falsely "allege[s] criminal conduct on the part of the plaintiff or impute[s] the contracting of some loathsome disease, unchaste behavior (on the part of a woman) or conduct which is incongruous with the exercise of a lawful business, trade, profession, or office." *Jacob*, 2009 UT 37, ¶ 26 (quoting *Larson v. Sysco Corp.*, 767 P.2d 557, 560 (Utah 1989)). The practical significance of pleading a statement as

defamation per se, rather than ordinary defamation, is that a plaintiff "need not allege damages to sustain their claim." *Mathews*, 2025 UT 34, ¶ 89 n.15 (citing *Seegmiller v. KSL, Inc.*, 626 P.2d 968, 977 n.7 (Utah 1981)). Outside that narrow damages-pleading benefit, a defamation per se claim is subject to the same elements, privileges, and defenses as an ordinary defamation claim. *See Jacob*, 2009 UT 37, ¶¶ 26–30.

The Hansen Email does not accuse Krithivas of a crime. It merely forwarded the publicly filed Complaint (a civil action) and stated that litigation had been initiated. Forwarding a civil complaint is not an accusation of criminal conduct. *Held*, 2013 U.S. Dist. LEXIS 148514, at *22 (forwarding a filed complaint to a third party is "a truthful sharing of a privileged and public document" and not actionable). The Counterclaim's assertion that the statements "imputed criminal, dishonest, unethical, and professionally disqualifying conduct" (Counterclaim ¶ 74) is a conclusory legal characterization that the Court need not accept.

Because the predicate defamation claim fails for the reasons stated above, the *per se* theory necessarily fails as well.

## II. THE TORTIOUS INTERFERENCE CLAIM FAILS AS A MATTER OF LAW

### A. The Tortious Interference Claim Rests on and Collapses with the Defamation Claims.

Where a tortious-interference claim rests solely on alleged defamation as the "improper means," it fails if the underlying defamation claim fails. *See Miller,* 2026 U.S. Dist. LEXIS 201079, at *16 (the plaintiff's defamation claims failed which resulted in his tortious interference claims failing because their sole improper means were based on his defamation claims). Here, the Counterclaim identifies the "improper means" for the tortious-interference claim as "the alleged defamation and extrajudicial republication pleaded below." Counterclaim ¶ 62. Because that

predicate defamation theory fails on substantial-truth and privilege grounds, the interference claim collapses with it. *See TLS Grp., S.A. v. NuCloud Global, Inc.*, 2016 U.S. Dist. LEXIS 51751, at *22 (D. Utah Apr. 18, 2016) (dismissing tortious interference claim where "the only valid basis for the improper-means element would be defamation").

**B. The Counterclaim Fails to Plead Causation**

Even if the defamation claims could survive (they cannot), the tortious-interference claim independently fails because the Counterclaim does not plead facts establishing a causal connection between the Hansen Email and Krithivas's departure from American Airlines. Tortious interference requires that the defendant's conduct actually caused the interference with the plaintiff's economic relations. *See Mt. W. Surgical Ctr., L.L.C. v. Hosp. Corp.*, 2007 UT 92, ¶¶ 11–15, 173 P.3d 1276 (affirming summary judgment on tortious-interference claim where plaintiff failed to raise a genuine issue of fact as to causation). Here, Krithivas's Counterclaim contains only conclusions, deductions, and opinions couched as fact. The Court need not treat these allegations as true. *Twombly*, 550 U.S. at 555. Krithivas "must go beyond threadbare recitals of the elements of a cause of action supported by mere conclusory statements and plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Audubon of Kan., Inc. v. United States DOI*, 67 F.4th 1093, 1108 (10th Cir. 2023) (citation omitted). He fails to do so.

The Counterclaim is devoid of any factual allegations linking the Hansen Email to Krithivas's resignation. There are no facts alleging: any meeting or discussion at American Airlines at which the Hansen Email was referenced; any warning, reprimand, or disciplinary action tied to the Hansen Email; any change in Krithivas's duties, pay, flight assignments, or working

conditions attributable to the email; or any statement by anyone at American Airlines referencing or relying on the Hansen Email as a basis for adverse action. Most critically, Krithivas himself admits that he *did not even know about the Hansen Email* when he resigned from American Airlines. Counterclaim ¶ 54 ("At the time he resigned, Krithivas did not know that Hansen had directly sent the Complaint to an American Airlines attorney."). Krithivas's ignorance of the Hansen Email at the time of his resignation makes it impossible to plead that the email caused him to resign. He resigned *voluntarily*—a point he effectively concedes by alleging that he chose to resign before a scheduled termination hearing to "protect his professional pilot career" and "avoid an adverse termination entry in his FAA Pilot Records Database." Counterclaim ¶¶ 52–53.[6]

The Counterclaim contains nothing but conclusory assertions of causation. Krithivas alleges that "[t]he email caused or was a substantial factor in American Airlines' adverse employment action and Krithivas's compelled resignation," Counterclaim ¶ 63, and that "[a]s a direct and proximate result" he lost "wages, benefits, seniority, career opportunities, [and] future earning capacity," *id.* ¶ 57. He alleges, without explanation or detail, that the "temporal sequence," American Airlines' "stated reliance on the Complaint," and "the absence of a performance or disciplinary issue" "support a reasonable inference that Hansen's email was a substantial factor in the administrative leave, anticipated termination, and compelled resignation." *Id.* ¶ 56. But those are prototypical conclusory allegations that fail to connect Krithivas's self-admitted resignation to

---

[6] A voluntary resignation defeats a tortious-interference claim. *See Woodend v. Lenape Reg'l High Sch. Dist.*, 535 F. App'x 164, 167–68 (3d Cir. 2013) (holding that tortious interference with contract claim failed where "the loss was caused by Woodend's voluntary resignation"); *Geller v. Von Hagen*s, 2010 U.S. Dist. LEXIS 129561, at *11 (M.D. Fla. Nov. 23, 2010) ("Defendants' point is well-taken, that, having presented that his resignation was voluntary, Geller cannot now be allowed to maintain a cause of action for tortious interference with his contract.").

an email sent more than two months earlier and of which he concededly had no knowledge. Indeed, the only reliance the Counterclaim actually alleges is on the Complaint—not the Hansen Email. *Id.* ¶¶ 51, 56. Such "threadbare recitals of the elements" and "mere conclusory statements" cannot survive a motion to dismiss. *Audubon*, 67 F.4th at 1108.

Krithivas offers nothing more than the "formulaic recitation of the elements of a cause of action" that *Iqbal* forecloses. 556 U.S. at 678 (a complaint does not suffice if it tenders only "naked assertion[s]" devoid of "further factual enhancement"). Because every count grounded in the Hansen Email depends on this same unsupported inferential leap, each fails independently for want of a plausibly pleaded causal connection.

## III. THE ABUSE OF PROCESS CLAIM FAILS AS A MATTER OF LAW

Utah's abuse-of-process tort has two independent elements: "an ulterior purpose" and "a willful act in the use of the process not proper in the regular conduct of the proceeding." *Anderson Dev. Co. v. Tobias*, 2005 UT 36, ¶ 65, 116 P.3d 323 (internal quotations and citations omitted); *accord Woos LLC v. Mustafa*, 2026 U.S. Dist. LEXIS 19251, at *12–13 (D. Utah Jan. 30, 2026). Allegations of ulterior motive alone are insufficient: they do "not state any facts that could plausibly be interpreted as showing a willful act in the use of the legal process that is not proper." *Id.* at *13. And because the tort has a "potential chilling effect on the right of access to the courts," it "must be narrowly construed." *Anderson Dev. Co.*, 2005 UT 36, ¶ 59 (quoting *Schmit v. Klumpyan,* 264 Wis. 2d 414, 663 N.W.2d 331, 336, 2003 WI App 107 (Wis. Ct. App. 2003)).

The Counterclaim fails to plead any willful act in the use of process. The mere filing and prosecution of a lawsuit—even with an alleged ulterior motive—does not constitute abuse of process. Simply informing a business partner that litigation has been filed is a communication

about the existence of process, not an act "in the use of the process" itself. *See, e.g.*, *Ancier v. Egan*, 2014 U.S. Dist. LEXIS 167319, at *19–21 (D. Haw. Dec. 3, 2014) (collecting cases for the proposition that "publicity [of a lawsuit], standing alone and without an element of coercion, is not a willful act given that civil actions are themselves public."). And filing and pursuing a lawsuit for an allegedly retaliatory motive does not satisfy the willful-act element. *Woos LLC*, 2026 U.S. Dist. LEXIS 19251, at *13. The Hansen Email forwarded a publicly filed Complaint and stated that litigation had been initiated. That is the normal and expected consequence of filing a public lawsuit, not a misuse of the judicial process.

The Counterclaim's reliance on Federal Rule of Civil Procedure 11(b) allegations (Counterclaim ¶¶ 78–79) does not salvage the abuse-of-process claim. Krithivas expressly acknowledges that he "does not assert a separate cause of action under Rule 11." Counterclaim ¶ 78. Rule 11 is a procedural mechanism for sanctioning frivolous pleadings; it is not an independent cause of action and does not transform a properly filed complaint into an abuse of process. *See Woos*, 2026 U.S. Dist. LEXIS 19251, at *12–13 (dismissing abuse-of-process claim where plaintiff failed to allege any willful act beyond the filing of a lawsuit).

Based on the above, Krithivas's claim for abuse of process should be dismissed with prejudice.

## IV. THE COUNTERCLAIM IS FATALLY CONCLUSORY UNDER *TWOMBLY* AND *IQBAL*

Independent of the substantive defects addressed above, the Counterclaim fails because it pleads only conclusions, deductions, and opinions couched as fact. The Court is "not bound to accept the complaint's legal conclusions and opinions, whether or not they are couched as facts," and instead "will disregard conclusory statements and look only to whether the remaining factual

allegations plausibly suggest the defendant is liable." *Solid Q Holding*, 2017 U.S. Dist. LEXIS 28239, at *2–3 (citation omitted). Krithivas "must go beyond threadbare recitals of the elements of a cause of action supported by mere conclusory statements and plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Audubon*, 67 F.4th at 1108; *see also Zagaruyka & Assocs. v. HealthSmart Ben. Sols. Inc.*, 2019 U.S. Dist. LEXIS 184930, at *11 (W.D. Okla. Oct. 25, 2019) (dismissing claims because the allegations were mere conclusory statements). He fails to do so.

**A. The Allegations Concerning the Hansen Email Are Conclusory.**

Each of Krithivas's causes of action is grounded in the Hansen Email. *See* Counterclaim ¶¶ 61–63 (tortious interference); *id.* ¶¶ 66–71, 74 (defamation and defamation *per se*); *id.* ¶¶ 80–81 (abuse of process). For the reasons set forth in Section II.B above, the allegations tying that email to any adverse consequence are labels rather than facts. The Counterclaim identifies no meeting at which the Hansen Email was discussed, no warning or reprimand tied to it, no change in Krithivas's duties, pay, or flight assignments tied to it, and no statement by anyone at American Airlines referencing it. Krithivas alleges the opposite—that the "only reason given" for the anticipated termination was "SkyWest's Complaint," *id.* ¶ 51, and that he did not know the Hansen Email existed when he resigned, *id.* ¶ 54. Because every count rests on that same unsupported inferential leap, each fails independently.

**B. The Falsity and Fault Allegations Are Conclusory.**

Krithivas alleges that the accusations republished by the Hansen Email were "materially false," Counterclaim ¶ 68, that SkyWest and Hansen "acted at least negligently as to the truth or falsity of the accusations" and "knowingly or with reckless disregard for the truth," *id.* ¶ 70, and

that they "knew, or would have learned through reasonable inquiry, that material accusations of circumvention, fraudulent access, and related wrongdoing lacked evidentiary support," *id.* ¶ 79. Those are legal conclusions the Court need not accept. *Solid Q Holding*, 2017 U.S. Dist. LEXIS 28239, at *2–3.

Krithivas's only supporting factual allegation is that SkyWest issued his SWOL credentials and maintained his authenticated account. Counterclaim ¶¶ 17, 79. However, the mere assertion that Krithivas held valid credentials does not make SkyWest's accusations false. Krithivas admits that he accessed directory data—including employee numbers, names, addresses, and phone numbers—for approximately 5,000 pilots on a single day and that the data was forwarded to a remote server at Moussaron's direction. Krithivas's Ans. ¶ 17. What he disputes is whether that admitted conduct should be labeled "unauthorized," *see* Counterclaim ¶¶ 16–17, and a dispute over legal characterization is not a pleaded fact showing that SkyWest knew its accusations were false.

The Counterclaim's damages and punitive-damages allegations fare no better as they merely recite categories of harm and states of mind without supporting facts. Counterclaim ¶¶ 57, 75, 83, 85. Where "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," dismissal is required. *Iqbal*, 556 U.S. at 679 (internal quotation marks omitted).

For all of the foregoing reasons, every count in the Counterclaim rests on conclusory assertions rather than well-pled facts and fails to state a plausible claim for relief under *Twombly* and should therefore be dismissed with prejudice. 550 U.S. at 555, and *Iqbal*, 556 U.S. at 678.

## V. ALL CLAIMS AGAINST HANSEN PERSONALLY SHOULD BE DISMISSED

Every count asserted against Hansen individually is built exclusively on the single

February 2, 2026 email in which he, as SkyWest's General Counsel, forwarded the publicly filed Complaint to a single recipient at a business partner without embellishment. The Counterclaim does not identify any other act, statement, or communication by Hansen, nor does it attribute any specific conduct to Hansen as distinguished from SkyWest. *See Woos*, 2026 U.S. Dist. LEXIS 19251, at *17 (dismissing counterclaims where the pleading "does not attribute any specific actions to either individual Counterclaim Defendants or to the Defendants as a group").

Because every substantive defense that defeats the claims against SkyWest applies with equal force to Hansen—including the absence of defamatory meaning, the substantial-truth doctrine, the absolute judicial-proceeding privileges, the lack of causation, the absence of any willful act in the use of process, and the failure to plead facts satisfying *Twombly*/*Iqbal*—all claims against Hansen should be dismissed with prejudice.

**CONCLUSION**

For the foregoing reasons, SkyWest Airlines, Inc. and Dale Hansen respectfully request that the Court dismiss with prejudice all three causes of action asserted in Krithivas's Counterclaim (Dkt. No. 114) and grant such other and further relief as the Court deems just and proper.

Dated this 15th day of September, 2026.

HOLLAND & HART LLP

*/s/ Tyson C. Horrocks*
Gregory M. Saylin
Tyson C. Horrocks
Zachary T. Burford

*Attorneys for Plaintiff and Counterclaim Defendant SkyWest Airlines, Inc. and Counterclaim Defendant Dale Hansen*

**CERTIFICATE OF COMPLIANCE WITH WORD LIMIT**

I, Tyson C. Horrocks, certify that this Motion to Dismiss Krithivas's Counterclaim contains 5,152 words and complies with DUCivR 7-1(a)(4).

*/s/ Tyson C. Horrocks*
Tyson C. Horrocks

39414258