Timothy D. Ducar (13423)
Scott C. Uthe (PHV)
**LAW OFFICES OF TIMOTHY D. DUCAR, PLC**
9280 E. Raintree Drive, Suite 104
Scottsdale, Arizona 85260
Telephone: (480) 502-2119
Facsimile: (480) 452-0900
orders@azlawyers.com
*Attorneys for Defendant and Counterclaim Plaintiff*
*Vikaas Krithivas*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH – SOUTHERN DIVISION**

| | |
|---|---|
| SKYWEST AIRLINES, INC.,<br><br>Plaintiff and Counterclaim Defendant,<br><br>and DALE HANSEN,<br><br>Additional Counterclaim Defendant,<br><br>v.<br><br>DANIEL MOUSSARON,<br><br>and VIKAAS KRITHIVAS,<br><br>Defendants and Counterclaim Plaintiffs. | **DEFENDANT VIKAAS KRITHIVAS'S RESPONSE IN OPPOSITION TO SKYWEST AIRLINES, INC.'S AND DALE HANSEN'S MOTION TO DISMISS COUNTERCLAIM (DKT. 140)**<br><br>Case No. 4:26-cv-00015-DN-PK<br><br>Senior District Judge David Nuffer<br>Magistrate Judge Paul Kohler |

**TABLE OF CONTENTS**

INTRODUCTION ........ 5

BACKGROUND ........ 8

LEGAL STANDARD ........ 12

A. The Court May Consider the Complaint and Properly Use Judicially Noticeable Docket Materials Without Accepting Disputed Allegations as True. ........ 13

ARGUMENT ........ 14

I. The Motion Misidentifies the Publication Actually Alleged. ........ 14

II. *RainFocus* Strongly Supports the Sufficiency of the Defamation Claim. ........ 15

A. Repeating Allegations from Pending Litigation Does Not Automatically Render Them Nonactionable. ........ 15

B. *RainFocus* Specifically Involved Communications by Corporate General Counsel. ........ 17

C. The Private, Targeted Setting Is Also Analogous to *RainFocus*. ........ 18

III. The Accusations Republished to American Are Capable of Defamatory Meaning. ........ 18

IV. SkyWest Cannot Establish Substantial Truth by Proving Only That Litigation Existed or That Krithivas Accessed Directory Information. ........ 20

V. The Judicial-Proceeding Privilege Does Not Warrant Dismissal. ........ 21

A. Krithivas Was Not Required to Plead Himself Out of SkyWest's Privilege Defense. ........ 21

B. *Pratt* Demonstrates That Counsel's Republication of a Filed Complaint Can Lose Judicial Privilege. ........ 22

C. SkyWest's Alleged "Business Relationship" with American Cannot Establish Privilege on the Pleadings. 23

VI. The Defamation-Per-Se Theory Independently Survives. 24

VII. Krithivas Plausibly States Tortious Interference with Economic Relations. 24

A. SkyWest's "Improper Means" Argument Rises and Falls with Its Defamation Theory. 25

B. The Counterclaim Pleads Causation Without Requiring Krithivas to Know Hansen Was the Sender. 25

C. SkyWest Cannot Rewrite the Pleaded Resignation as Voluntary. 26

VIII. The Abuse-of-Process Claim Alleges Both a Concrete Collateral Purpose and the Independent Act Required by Utah Law. 27

A. The Pleaded Collateral Objective Is Employment Retaliation and Deterrence—Not Merely Spite. 27

B. Hansen's Employer-Directed Transmission Is the Independent Act Absent from *Hatch* and *Mackey*. 28

C. The Union-Related Context Plausibly Corroborates the Collateral Employment Purpose. 30

D. The Pleaded Theory Does Not Depend on Proving That Hansen Later Used Specific Words Such as "Hack" or "Theft" in Oral Conversations. 31

IX. SkyWest's Own Litigation Characterizations Undermine Its Attempt to Recast Hansen's Publication as Neutral Notice. .......... 31

X. The Counterclaim Satisfies *Twombly* and *Iqbal*. .......... 33

XI. Hansen Is Sued for His Own Alleged Conduct, Not Merely Because He Was SkyWest's General Counsel. .......... 34

XII. Dismissal With Prejudice Is Unwarranted Even If the Court Identifies a Pleading Deficiency. .......... 35

CONCLUSION .......... 36

## INTRODUCTION

SkyWest's Motion depends on materially narrowing both what Hansen communicated to American Airlines and what Krithivas actually pleaded.

The Counterclaim is not based on the innocuous fact that Hansen accurately stated a lawsuit had been filed. Nor does Krithivas claim he was defamed because Hansen truthfully stated that Krithivas formerly worked for SkyWest or had transitioned to American Airlines. The pleaded publication is materially different.

Three days after SkyWest filed a Complaint accusing Krithivas of circumventing technological restrictions, accessing information without authorization, acting with intent to defraud, misappropriating confidential information, willfully and maliciously breaching duties, and participating in a conspiracy, SkyWest's General Counsel affirmatively selected that pleading and transmitted it directly to Krithivas's new employer.[1] Hansen expressly identified Krithivas as having "transitioned to AA," stated that SkyWest wanted American Airlines to be "aware" of the litigation against him, attached the pleading containing those accusations, and invited American's attorney to contact him with additional questions.[2]

Under Utah law, that context matters. In *RainFocus, Inc. v. Cvent, Inc.*, the Utah Court of Appeals reversed dismissal of materially analogous claims arising from private communications by a corporation's CEO and General Counsel to third parties concerning allegations in pending litigation.[3] The court rejected the proposition that attaching litigation labels to disputed accusations renders their extrajudicial repetition nondefamatory as a matter of

[1] Dkt. 114 ¶¶ 14–28, 66–75.
[2] *Id.* ¶¶ 19–25.
[3] 2023 UT App 32, ¶¶ 2–5.

law.[4] Specifically, the court recognized that recipients of private communications from a corporation's General Counsel may reasonably understand counsel to possess significant inside information concerning the litigation and the truth of the accusations being conveyed.[5]

The analogy is direct. Hansen was not a disinterested person forwarding a PACER notice. He was SkyWest's General Counsel. He affirmatively contacted counsel for Krithivas's new employer, identified Krithivas's employment transition, attached SkyWest's accusations of intentional wrongdoing, and invited additional questions.

The broader pleaded context reinforces the reasonable meaning of that communication. Only days before Hansen contacted American, SkyWest had characterized the same underlying conduct to its pilot workforce as "unethically and unlawfully stealing" information, "unauthorized access," "extensive effort and manipulation," and "theft."[6] Krithivas does not seek liability based independently on that January 26 communication.[7] It is pleaded as context relevant to the meaning, purpose, motive, and circumstances of Hansen's targeted transmission.

The Motion also asks the Court to resolve disputed facts against Krithivas. SkyWest labels the underlying accusations "true" because Krithivas admits accessing pilot directory information. But Krithivas expressly denies the accusations supplying the defamatory sting: that he circumvented a technological access barrier, acted with intent to defraud, unlawfully misappropriated information, willfully or maliciously breached a duty, or participated in an unlawful conspiracy.[8] His Answer similarly admits use of SkyWest-issued credentials while

---

[4] *Id.* ¶¶ 11–21.
[5] *Id.* ¶¶ 31–40.
[6] Dkt. 114 ¶¶ 39–46.
[7] *Id.* ¶ 46.
[8] Dkt. 114 ¶¶ 15–18.

expressly denying that his access was unauthorized or exceeded his authorization.[9]

SkyWest's causation argument fares no better. According to SkyWest, Hansen's transmission could not have caused Krithivas's employment loss because Krithivas did not know, when he resigned, that Hansen personally sent the Complaint to American. But Krithivas's knowledge of the source of American's information is not part of the alleged causal chain. The Counterclaim alleges that Hansen sent the Complaint to American; American thereafter placed Krithivas on administrative leave; American identified the Complaint as the reason for its anticipated termination; no performance or disciplinary issue at American explained that action; and Krithivas resigned only after his pilot representatives advised that termination was imminent and resignation was necessary to protect his professional pilot record.[10]

Finally, the abuse-of-process claim alleges considerably more than bad motive. The Counterclaim identifies a concrete collateral objective—employment retaliation and deterrence associated with conduct SkyWest knew related to communications concerning potential union representation—and an independent post-filing act corroborating that purpose: SkyWest's General Counsel took the Complaint outside the judicial proceeding and affirmatively deployed it against Krithivas through an unrelated employment relationship.[11] That is materially different from merely filing or prosecuting a lawsuit while harboring hostility. The alleged misuse therefore lies not in filing the Complaint, but in subsequently taking that judicial instrument to the particular third party capable of inflicting the collateral employment consequences allegedly

[9] Dkt. 48 ¶¶ 15–21.
[10] Dkt. 114 ¶¶ 47–57.
[11] *Id.* ¶¶ 76–83.

sought.

Accepting the pleaded facts as true, Krithivas has stated plausible claims for defamation, tortious interference, and abuse of process. Therefore, the Motion should be denied. At minimum, dismissal with prejudice would be unwarranted.

## BACKGROUND

SkyWest commenced this action on January 30, 2026. Its Complaint alleged, among other matters, that Krithivas used a developer tool or program to circumvent SWOL's role-based restrictions; accessed information without or in excess of authorization; acted knowingly and with intent to defraud; transmitted, shared, disseminated, or misappropriated confidential information; willfully and maliciously breached fiduciary duties; and participated in a civil conspiracy.[12]

The Complaint specifically alleged that Defendants used developer tools to "circumvent technological barriers," used automated programs, bots, or scrapers, violated the Computer Fraud and Abuse Act, and "knowingly and with intent to defraud" accessed a protected computer without authorization or exceeded authorized access.[13] It further alleged that Krithivas was an "unauthorized user" under UCADRA because he circumvented technological access barriers.[14]

Krithivas disputes those characterizations. He alleges that SkyWest issued the credentials he used to access SWOL; maintained his authenticated account; permitted his account to access portions of the SWOL Directory; and returned the disputed contact fields to his authenticated account through the employee-detail endpoint.[15] He denies defeating SkyWest's authentication

[12] *Id.* ¶ 15; *see also* Dkt. 1 ¶¶ 58–60, 65, 73–81.
[13] Dkt. 1 ¶¶ 58–60.
[14] *Id.* ¶¶ 64–65.
[15] Dkt. 114 ¶¶ 16–18.

system or circumventing a technological access barrier and denies the Complaint's allegations of fraudulent, unlawful, or malicious conduct.[16]

During 2025, SkyWest pilots were engaged in activities concerning potential representation by the Air Line Pilots Association, International ("ALPA").[17] Krithivas assisted Moussaron in gathering pilot contact information with knowledge that it would be used to communicate with pilots concerning potential union representation.[18] The Counterclaim alleges that SkyWest subsequently learned of that relationship.[19]

On January 26, 2026, SkyWest distributed a communication to its pilot workforce concerning two "now-former pilots," referring to Moussaron and Krithivas.[20] SkyWest characterized the conduct as "unethically and unlawfully stealing" pilot information, obtaining "unauthorized access," and requiring "extensive effort and manipulation," stated that it was "shocked and disgusted," and announced that it would "not tolerate theft of any kind."[21]

Four days later, SkyWest filed this action asserting claims based on substantially the same collection and use of pilot information.[22]

Then, on February 2, 2026—only three days after filing—Hansen, SkyWest's General Counsel, sent an email directly to Nate Gatten at American Airlines.[23] Hansen expressly identified Krithivas as a former SkyWest pilot "who has since transitioned to AA," attached SkyWest's Complaint, and stated that SkyWest "wanted to make [American Airlines] aware of

---

[16] *Id.*
[17] *Id.* ¶¶ 29–38.
[18] *Id.* ¶¶ 31–36.
[19] *Id.* ¶¶ 37–38.
[20] *Id.* ¶ 39.
[21] *Id.* ¶ 40.
[22] *Id.* ¶ 41.
[23] *Id.* ¶ 19.

the initiation of litigation against Mr. Krithivas."[24] Hansen invited Gatten to contact him with "additional questions."[25]

The Counterclaim expressly alleges that the communication did more than identify a public docket or report the neutral fact that litigation existed. By selecting and transmitting the Complaint directly to Krithivas's employer, expressly identifying his employment transition, and inviting further discussion, Hansen republished and affirmatively called American's attention to SkyWest's accusations of circumvention, fraudulent access, misuse of confidential information, malicious breach of duty, and conspiracy.[26]

American was not a party to this lawsuit.[27] The Counterclaim further alleges American was not acting as a witness, evidence custodian, insurer, litigation consultant, or person assisting SkyWest or the Court.[28] Hansen did not request that American preserve or produce evidence, provide testimony, assist with service, participate in the lawsuit, or perform another litigation-related task.[29]

The sequence permits the pleaded inference that the transmission served an employment-related and retaliatory function.[30] Krithivas expressly does not assert an independent counterclaim based on the January 26 communication, SkyWest's union-related investigation, or the filing of the Complaint.[31] Those matters are alleged as context bearing on the purpose,

---

[24] *Id.* ¶¶ 19–21.
[25] *Id.* ¶ 21.
[26] *Id.* ¶¶ 22, 27–28.
[27] *Id.* ¶ 23.
[28] *Id.*
[29] *Id.* ¶¶ 23–25.
[30] *Id.* ¶¶ 42–45.
[31] *Id.* ¶ 46.

intent, meaning, motive, and circumstances of Hansen's February 2 communication.[32]

Approximately two months later, on April 6, 2026, American placed Krithivas on administrative leave and advised him of an April 10 hearing concerning his employment.[33] Krithivas was told the issue concerned his prior employment history, not a disciplinary or performance issue arising from his employment with American.[34]

Representatives of the Allied Pilots Association investigated.[35] On April 9, they informed Krithivas that American was very likely to terminate him at the April 10 hearing, that the only reason identified was American's awareness of SkyWest's Complaint, and that American did not intend to question him at the hearing.[36] They advised Krithivas that, to protect his professional pilot career and avoid an adverse termination entry in his FAA Pilot Records Database, he should resign before American terminated him.[37]

Krithivas did not want to resign.[38] He alleges he reasonably believed he had no viable alternative to protect his professional pilot record and therefore resigned before the hearing.[39] At the time, Krithivas did not know Hansen had personally sent the Complaint to American.[40] SkyWest produced Hansen's February 2 email on June 11, 2026, revealing that fact for the first time.[41]

On August 11, 2026, the Court determined that SkyWest's June 11 production of

---

[32] *Id.*
[33] *Id.* ¶¶ 47–49.
[34] *Id.* ¶ 49.
[35] *Id.* ¶ 50.
[36] *Id.* ¶ 51.
[37] *Id.* ¶ 52.
[38] *Id.* ¶ 53.
[39] *Id.*
[40] *Id.* ¶ 54.
[41] *Id.* ¶ 55.

Hansen's previously undisclosed communication established good cause for amendment and permitted Krithivas to file a Counterclaim based on Hansen's email and join Hansen as an additional counterclaim defendant.[42] The Court expressly declined to resolve SkyWest's futility arguments at that stage and instead permitted those arguments to be addressed through a Rule 12 motion directed to the revised pleading.[43]

Krithivas thereafter filed the operative Counterclaim.[44]

## LEGAL STANDARD

A Rule 12(b)(6) motion tests the legal sufficiency of the pleading; it does not determine whose version of disputed facts is true. The Court accepts well-pleaded factual allegations as true and draws reasonable factual inferences in favor of the nonmovant.[45]

A pleading survives when its factual allegations permit a reasonable inference that the defendant is liable for the misconduct alleged.[46] Plausibility does not require proof at the pleading stage.

Affirmative defenses ordinarily cannot support Rule 12(b)(6) dismissal unless the pleading itself admits every fact necessary to establish the defense.[47] A claimant need not anticipate in the complaint an affirmative defense that may be raised by the defendant.[48]

The Utah Supreme Court recently applied a comparable pleading rule in the defamation context.[49] Although a plaintiff may ultimately be required to overcome an applicable privilege,

---

[42] Dkt. 103 at 5–7.
[43] *Id.*
[44] Dkt. 114.
[45] *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).
[46] *Iqbal*, 556 U.S. at 678.
[47] *Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018).
[48] *Id.*
[49] *Mathews v. McCown*, 2025 UT 34, ¶¶ 123–44.

the inapplicability of a privilege is generally not part of the plaintiff's initial pleading burden.[50]

**A. The Court May Consider the Complaint and Properly Use Judicially Noticeable Docket Materials Without Accepting Disputed Allegations as True.**

The Motion itself relies upon pleadings and materials already filed in this action. The Court may likewise consider documents referred to in the Counterclaim, central to the claims, and indisputably authentic without converting the Motion to one for summary judgment.[51]

SkyWest's Complaint falls squarely within that rule. It is repeatedly quoted and referenced in the Counterclaim and is the very document Hansen transmitted to American.

The Court may also take judicial notice of its own docket and the existence and contents of filings made in this case. But judicial notice does not permit the Court to accept disputed factual assertions in those filings as true.[52]

Krithivas therefore refers to SkyWest's other filings for a narrow and appropriate purpose: not to prove that their allegations of theft, fraud, circumvention, or "stolen data" are true, and not to prove the precise content of subsequent oral communications with American, but to identify how SkyWest itself has characterized the underlying conduct in this litigation.

That limited use bears directly on SkyWest's contention that Hansen's delivery of the Complaint conveyed nothing more than the neutral fact that "litigation exists."

---

[50] *Id.* ¶¶ 128–43.
[51] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384–85 (10th Cir. 1997).
[52] *See Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006).

## ARGUMENT

### I. The Motion Misidentifies the Publication Actually Alleged.

SkyWest repeatedly reduces the alleged publication to Hansen's cover email and argues that each sentence in that email was technically true: litigation had been filed; Krithivas formerly worked for SkyWest; and Krithivas had transitioned to American. That argument attacks a claim Krithivas did not plead.

The Counterclaim alleges Hansen published the attached Complaint itself to American.[53] Paragraph 67 identifies the specific accusations thereby republished: circumvention of technical restrictions, access without or in excess of authorization, intent to defraud, misuse or misappropriation of confidential information, willful and malicious breach of duty, and participation in a civil conspiracy.[54] The attachment was not incidental to the communication. It was its subject.

Hansen specifically told American that SkyWest wanted it to be "aware" of the litigation against Krithivas and supplied the pleading containing SkyWest's factual accusations. He expressly identified Krithivas's employment transition and invited additional questions.[55]

A reasonable recipient does not read an email attaching an accusatory pleading from the former employer's General Counsel as though the attachment were invisible.

SkyWest's own filings likewise characterize the underlying conduct as serious intentional wrongdoing, further undermining its attempt to equate Hansen's targeted delivery of the Complaint with neutral notice that litigation existed.[56]

---

[53] Dkt. 114 ¶¶ 1–4, 19–28, 66–75.
[54] *Id.* ¶ 67.
[55] *Id.* ¶¶ 19–25.
[56] *See* Section IX, *infra*.

The Counterclaim plausibly alleges that an attorney for American Airlines receiving the Complaint directly from SkyWest's General Counsel would understand SkyWest to be calling attention to serious allegations of intentional and dishonest conduct by American's newly hired pilot. That inference is sufficient at the pleading stage.

## II. *RainFocus* Strongly Supports the Sufficiency of the Defamation Claim.

SkyWest's treatment of *RainFocus* overlooks its central holding and its unusually close factual parallels.

In *RainFocus*, Cvent had filed federal litigation accusing RainFocus of trade-secret and related wrongdoing.[57] While that action remained pending, Cvent's CEO and General Counsel engaged in private communications with RainFocus customers or prospective customers concerning the accusations in the federal case.[58]

The district court dismissed, reasoning in part that the communications were truthful descriptions of allegations in pending litigation.[59] The Utah Court of Appeals reversed.

### A. Repeating Allegations from Pending Litigation Does Not Automatically Render Them Nonactionable.

In *RainFocus*, Cvent argued that its communications merely described what had been alleged in a pending lawsuit and therefore were considered truthful statements.[60] The Utah Court of Appeals rejected that logic. Drawing directly from *Pratt v. Nelson*, it explained that a litigant cannot transform disputed allegations into unrestricted extrajudicial speech simply by

[57] 2023 UT App 32, ¶¶ 2–3.
[58] *Id.* ¶¶ 3–4.
[59] *Id.* ¶ 5.
[60] *Id.* ¶¶ 11–13.

first placing those accusations into a pleading.[61]

That reasoning applies directly here. SkyWest may ultimately prove the substantive accusations in its Complaint. If it does, truth may defeat the defamation claim. But the fact that SkyWest first wrote the accusations in a complaint does not establish their truth and does not render their targeted republication to Krithivas's employer nonactionable as a matter of law.

SkyWest relies heavily on *RainFocus* footnote 8, but that footnote merely assumed that a litigant might make a minimal statement that litigation had been filed and nominally describe its nature.[62] However, Hansen did materially more than that. He selected the full accusatory pleading, directed it specifically to Krithivas's current employer, identified Krithivas's employment transition, stated that SkyWest wanted American to be aware of the action against him, and invited additional questions.[63] That targeted republication falls within the conduct *RainFocus* actually analyzed, not the hypothetical minimal notice that SkyWest referenced in footnote 8.

SkyWest cites *Spencer v. Glover* to demonstrate that bare statements of a lawsuit are not actionable. But here, it is likewise distinguishable. There, the challenged statement merely reported that a person was 'strongly considering suing' another.[64] Hansen did not merely report that litigation was contemplated or pending; he affirmatively furnished Krithivas's employer a pleading accusing its employee of fraudulent access, circumvention of technological restrictions, misappropriation, malicious breach of duty, and conspiracy.

---

[61] *Id.* ¶¶ 14–21 (internal citation omitted).
[62] *Id.* ¶ 18 n.8.
[63] Dkt. 114 ¶¶ 19–28.
[64] 2017 UT App 69, ¶¶ 28–29.

### B. *RainFocus* Specifically Involved Communications by Corporate General Counsel.

*RainFocus* is particularly analogous to the instant case because it involves the same corporate role Hansen occupied. Three of the four challenged communications involved Cvent's CEO or General Counsel communicating privately with representatives of companies that were customers or potential customers of *RainFocus*.[65]

The court considered that fact important when evaluating how recipients could reasonably understand the accusations. Private recipients could reasonably expect a corporation's CEO and General Counsel to possess inside information concerning the litigation and the truth of the accusations being conveyed.[66] The court ultimately emphasized that the communications came from Cvent's CEO or General Counsel, "both of whom would be expected to have significant information related to the Federal Action and the truth of its allegations."[67]

The parallel here is direct. Hansen was SkyWest's General Counsel.[68] He was not passively responding to process or communicating with opposing counsel in the litigation. He affirmatively contacted counsel for Krithivas's new employer, identified the employment relationship, attached SkyWest's accusatory pleading, stated that SkyWest wanted American to know about it, and invited further questions.[69]

An American Airlines attorney receiving such a communication could reasonably understand the Complaint not merely as an abstract public filing, but as serious factual accusations SkyWest's chief legal officer was deliberately presenting for American's

[65] *Id.* ¶ 3.
[66] *Id.* ¶¶ 31–40.
[67] *Id.* ¶ 40.
[68] Dkt. 114 ¶ 9.
[69] *Id.* ¶¶ 19–28.

consideration.

### C. The Private, Targeted Setting Is Also Analogous to *RainFocus*.

The *RainFocus* court found the fact of a broader setting important.[70] The communications there were private and targeted toward third parties whose business relationships with *RainFocus* could be affected by the accusations. That setting weighed against treating the statements as merely rhetorical descriptions of litigation.[71]

The setting here is comparably targeted and arguably more consequential. Hansen did not publish a generic statement to the public. He selected the entity then employing Krithivas as a professional pilot.[72] American controlled Krithivas's wages, seniority, benefits, professional record, and continuing airline career.[73]

The Counterclaim further alleges that American had no identified adjudicative function in SkyWest's lawsuit.[74] Thus, as in *RainFocus*, the communication was private, intentional, and directed toward a third-party economic relationship capable of being harmed by SkyWest's accusations.

## III. The Accusations Republished to American Are Capable of Defamatory Meaning.

Under Utah law, a statement is capable of defamatory meaning when it may reasonably be understood to impeach a person's honesty, integrity, virtue, or reputation.[75] Context is critical. A court cannot isolate individual words from the setting in which they were communicated.[76]

---

[70] 2023 UT App 32, ¶¶ 33–40.
[71] *Id.*
[72] Dkt. 114 ¶¶ 19–28.
[73] *Id.* ¶¶ 47–57, 59.
[74] *Id.* ¶¶ 23–25.
[75] *West v. Thomson Newspapers*, 872 P.2d 999, 1008–09 (Utah 1994); *Mathews*, 2025 UT 34, ¶¶ 44–47.
[76] *Mathews*, 2025 UT 34, ¶ 47.

SkyWest correctly notes that Utah does not resolve ambiguous speech in favor of a defamatory interpretation. But no such favorable construction is necessary here. Considered as a whole and in context, Hansen deliberately transmitted to Krithivas's employer a pleading expressly accusing him of intentional circumvention, fraudulent access, misappropriation, malicious misconduct, and conspiracy.

The accusations Hansen transmitted comfortably clear that pleading threshold. The Complaint alleges intentional circumvention of technical restrictions, unauthorized computer access, fraudulent access, misuse or misappropriation of confidential information, willful and malicious breach of duties, and conspiracy.[77] Those allegations concern honesty, trustworthiness, compliance, and intentional misconduct. More importantly, their destination matters. They were affirmatively transmitted to another airline then employing Krithivas as a professional pilot.[78]

The pleaded surrounding context reinforces that reasonable meaning. Only days earlier SkyWest had characterized to its pilot workforce substantially the same conduct as unlawful "stealing," "unauthorized access," "manipulation," "unethical behavior," and "theft."[79]

Again, paragraph 46 expressly limits the role of that earlier communication. It is not pleaded as a separate basis of Krithivas's present claims. It supplies context relevant to the purpose, meaning, and circumstances of Hansen's February 2 employer-directed publication.

The reasonable inference is not that Hansen necessarily repeated any particular "magic words" orally to American. It is that, in context, his targeted delivery of SkyWest's Complaint communicated SkyWest's accusation that Krithivas engaged in serious intentional, dishonest,

---

[77] Dkt. 114 ¶¶ 15–18, 67.
[78] *Id.* ¶¶ 19–28.
[79] *Id.* ¶¶ 39–46.

fraudulent, and technologically evasive misconduct. Under *RainFocus* and *Mathews*, such a communication is plainly capable of defamatory meaning.

## IV. SkyWest Cannot Establish Substantial Truth by Proving Only That Litigation Existed or That Krithivas Accessed Directory Information.

SkyWest argues that Hansen's communication was "plainly true" because the lawsuit existed, Krithivas was a former SkyWest employee, and he had transitioned to American.[80]

None of those propositions is disputed. They are also not the alleged defamatory sting. The Counterclaim challenges the factual accusations transmitted through the attached pleading.[81] The *RainFocus* court rejected the proposition that a defendant establishes truth merely by accurately reporting that its own lawsuit contains allegations of wrongdoing.[82]

SkyWest next argues that Krithivas's Answer admits the substance of the wrongdoing anyway. It does not. Krithivas admits logging into SWOL using his own employee ID, password, and multifactor authentication.[83] He admits accessing directory information and coordinating with Moussaron.[84]

But he expressly denies that he accessed information beyond what he was authorized to access.[85] He further denies circumvention of a technological access barrier, fraudulent access, unlawful dissemination, malicious breach of fiduciary duty, and participation in unlawful conspiracy.[86]

Those disputes matter because substantial truth turns on the "gist" or "sting" of the

[80] Dkt. 140 at 8.
[81] Dkt. 114 ¶¶ 15–18, 67–74.
[82] 2023 UT App 32, ¶¶ 11–21.
[83] Dkt. 48 ¶ 15.
[84] *Id.* ¶¶ 16–19.
[85] *Id.* ¶¶ 15–21.
[86] Dkt. 114 ¶ 16.

allegedly defamatory communication. Indeed, SkyWest's own authority permits substantial truth to be resolved at the pleading stage only when the underlying facts concerning the "gist or sting" are undisputed.[87] Here they are expressly disputed.

> The difference between "Krithivas used SkyWest-issued credentials to access information returned by SkyWest's own server" and "Krithivas circumvented technological barriers, fraudulently accessed protected information, misappropriated data, and engaged in willful malicious wrongdoing" is not merely semantic.

Whether SkyWest can ultimately prove its characterization is a merits question. A Rule 12(b)(6) motion cannot convert contested accusations into adjudicated facts.

## V. The Judicial-Proceeding Privilege Does Not Warrant Dismissal.

SkyWest's principal affirmative defense is Utah's judicial-proceeding privilege. That defense cannot be established from the face of the Counterclaim.

### A. Krithivas Was Not Required to Plead Himself Out of SkyWest's Privilege Defense.

In *Mathews*, the Utah Supreme Court clarified that privilege is not ordinarily part of a defamation plaintiff's initial pleading burden.[88] A plaintiff need not anticipate and negate affirmative privilege defenses before the defendant raises and establishes them.[89]

Federal pleading procedure leads to the same result.[90] Rule 12(b)(6) dismissal based on an affirmative defense is proper only where the pleading itself admits all facts necessary to establish that defense.[91]

---

[87] *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1137 (10th Cir. 2014).
[88] 2025 UT 34, ¶¶ 128–43.
[89] *Id.*
[90] *Fernandez*, 883 F.3d at 1299.
[91] *Id.*

The Counterclaim does the opposite. It alleges American was not a party, witness, evidence custodian, insurer, litigation consultant, or person assisting SkyWest or the Court.[92] It alleges Hansen did not request evidence, testimony, preservation, service, participation in the action, or judicial relief.[93] It alleges that the destination and circumstances instead support an employment-related purpose.[94]

Those allegations preclude resolving privilege in SkyWest's favor as a matter of pleading.

### B. *Pratt* Demonstrates That Counsel's Republication of a Filed Complaint Can Lose Judicial Privilege.

*Pratt v. Nelson* is particularly instructive in the instant matter.[95] There, the defamation defendants included a litigant and her attorneys.[96] The attorneys participated in distributing the filed complaint and discussing its accusations outside the judicial proceeding.[97]

The Utah Supreme Court recognized that the complaint was privileged when filed in court.[98] But that did not end the inquiry. A communication may lose judicial-proceeding immunity through excessive publication when it is distributed beyond persons necessary to resolve the dispute or further legitimate litigation objectives.[99] The inquiry turns on whether the recipient has a legitimate role in resolving the dispute or an adequate legal interest in the litigation.[100]

---

[92] Dkt. 114 ¶¶ 23–25.
[93] *Id.*
[94] *Id.* ¶¶ 25–28.
[95] 2007 UT 41.
[96] *Id.* ¶ 1.
[97] *Id.* ¶¶ 25–36.
[98] *Id.* ¶ 32.
[99] *Id.* ¶¶ 33–35.
[100] *Id.*

Thus, Hansen's status as General Counsel does not itself immunize the publication. *Pratt* involved attorneys themselves. And the Utah Supreme Court still examined to whom counsel distributed the allegations and whether that publication furthered the judicial process. Here the Counterclaim alleges American had no litigation function.[101] Hansen nevertheless selected Krithivas's new employer as the recipient, expressly referenced Krithivas's transition there, attached the pleading, and invited further discussion.[102] Those facts plausibly place the communication outside the privilege or within *Pratt*'s excessive-publication limitation.

### C. SkyWest's Alleged "Business Relationship" with American Cannot Establish Privilege on the Pleadings.

SkyWest argues that American had a legitimate interest in knowing of the lawsuit because the airlines maintain a business relationship.

That assertion does not appear in the Counterclaim as an admitted fact establishing privilege.

More importantly, the relevant inquiry is not whether SkyWest and American conduct business generally. It is whether publication to American furthered the objectives of this judicial proceeding—because American had a legitimate role in resolving the dispute, an adequate legal interest in its outcome, or some comparable litigation connection.[103] The Counterclaim alleges none of those circumstances.[104] At minimum, whether American possessed the type of litigation-related interest recognized in Pratt cannot be resolved against Krithivas on Rule 12(b)(6).

---

[101] Dkt. 114 ¶¶ 23–25.
[102] *Id.* ¶¶ 19–28.
[103] *Pratt*, 2007 UT 41, ¶¶ 33–46.
[104] Dkt. 114 ¶¶ 23–25.

## VI. The Defamation-Per-Se Theory Independently Survives.

SkyWest argues the per-se theory fails because it filed a civil action rather than accusing Krithivas of a criminal offense. That addresses only one recognized category. Utah also recognizes defamation per se where the challenged statement imputes conduct "incongruous with the exercise of a lawful business, trade, profession, or office."[105]

The Counterclaim expressly pleads that independent category. It alleges that SkyWest's accusations imputed dishonest, unethical, and professionally disqualifying conduct and naturally tended to injure Krithivas in his occupation as an airline pilot.[106] Accusations that a professional airline pilot intentionally defeated his employer's technological restrictions, fraudulently accessed information, misappropriated confidential data, maliciously breached duties, and joined a conspiracy plausibly concern his trustworthiness and professional fitness. Thus, even if the Court concluded SkyWest did not literally accuse Krithivas of committing a criminal offense, the professional-injury theory remains.

## VII. Krithivas Plausibly States Tortious Interference with Economic Relations.

Under Utah law, tortious interference requires intentional interference with existing or prospective economic relations, accomplished through improper means, causing injury.[107]

The Counterclaim pleads each element. Krithivas had an existing employment relationship and prospective economic relations with American.[108] Hansen knew of that relationship because his email expressly acknowledged that Krithivas had "transitioned to

[105] *Jacob v. Bezzant*, 2009 UT 37, ¶ 26.
[106] Dkt. 114 ¶ 74.
[107] *Eldridge v. Johndrow*, 2015 UT 21, ¶ 70.
[108] Dkt. 114 ¶¶ 47–60.

AA."[109] Hansen intentionally transmitted the Complaint and its accusations to that employer.[110] The alleged improper means is the defamatory extrajudicial republication described above.[111] And Krithivas alleges resulting loss of employment, wages, benefits, seniority, career opportunities, future earning capacity, and other damages.[112]

### A. SkyWest's "Improper Means" Argument Rises and Falls with Its Defamation Theory.

SkyWest argues that because defamation fails, the alleged improper means necessarily fails. But *RainFocus* itself demonstrates why dismissal on that basis is premature.

There, the trial court dismissed intentional interference after dismissing defamation because defamation supplied the alleged improper means.[113] The Utah Court of Appeals reversed the defamation dismissal and accordingly reinstated the interference claim.[114]

The same logic applies here. Because Krithivas plausibly alleges defamation, he plausibly alleges improper means.

### B. The Counterclaim Pleads Causation Without Requiring Krithivas to Know Hansen Was the Sender.

SkyWest's principal causation argument conflates two different questions: what caused American to take adverse action, and what Krithivas personally knew when he resigned.

Krithivas alleges the following sequence:

1. Hansen transmitted the Complaint to American;

---

[109] *Id.* ¶¶ 19–21, 60.
[110] *Id.* ¶¶ 61–62.
[111] *Id.* ¶ 62.
[112] *Id.* ¶¶ 57, 63–64.
[113] 2023 UT App 32, ¶ 5.
[114] *Id.* ¶ 42.

2. American subsequently placed Krithivas on administrative leave;
3. American advised that the issue involved his prior work history rather than performance or discipline at American;
4. APA representatives investigated;
5. those representatives advised Krithivas that SkyWest's Complaint was the only identified reason for American's anticipated termination;
6. American was very likely to terminate him and did not intend to question him at the hearing; and
7. to avoid an adverse termination record affecting his pilot career, Krithivas resigned.[115]

SkyWest's principal Utah causation authority, *Mountain West Surgical*, arose at summary judgment after development of an evidentiary record, not on a Rule 12 motion testing the sufficiency of pleaded facts.[116] Krithivas's ignorance of Hansen's role does not sever that chain. A person may cause a third party to act against another without contemporaneously informing the victim that he supplied the information.

Indeed, SkyWest's own characterization—that American acted because of the "Complaint," rather than because of the "email"—confirms the point. Hansen's email was the alleged mechanism by which he deliberately placed the Complaint before American. At the pleading stage, the sequence is more than sufficient to support a plausible causal inference.

### C. SkyWest Cannot Rewrite the Pleaded Resignation as Voluntary.

SkyWest repeatedly characterizes Krithivas's resignation as "voluntary." The

[115] Dkt. 114 ¶¶ 47–57.
[116] *Mountain West Surgical Center, L.L.C. v. Hospital Corp. of Utah*, 2007 UT 92, ¶¶ 10–15.

Counterclaim alleges otherwise.

American had placed him on administrative leave; termination was allegedly imminent; American allegedly intended to terminate without questioning him; and his pilot representatives advised that resignation was necessary to avoid a termination entry harmful to his aviation career.[117]

Krithivas expressly alleges that he did not want to resign but reasonably believed he had no viable alternative.[118] Whether those circumstances ultimately prove constructive or compelled resignation is not properly resolved by simply labeling the resignation "voluntary" on a motion to dismiss.

## VIII. The Abuse-of-Process Claim Alleges Both a Concrete Collateral Purpose and the Independent Act Required by Utah Law.

SkyWest correctly states one principle: bad motive alone does not establish abuse of process. But that is not the claim Krithivas pleaded.

Utah requires an ulterior purpose and a willful act in the use of process not proper in the regular conduct of the proceeding.[119] The independent-act requirement prevents a claimant from simply defining the litigation itself as the willful act undertaken with a hostile motive.[120] Krithivas alleges something different.

### A. The Pleaded Collateral Objective Is Employment Retaliation and Deterrence—Not Merely Spite.

The "essence" of abuse of process is a perversion of process to accomplish a purpose for

---

[117] Dkt. 114 ¶¶ 48–53.
[118] *Id.* ¶ 53.
[119] *Hatch v. Davis*, 2006 UT 44, ¶ 36; *Mackey v. Krause*, 2025 UT 37, ¶¶ 95–101.
[120] *Mackey*, 2025 UT 37, ¶¶ 95–101.

which it was not designed.[121] The ulterior purpose typically involves obtaining a collateral advantage by using process to compel another to take or refrain from action outside the proper object of the proceeding.[122]

Krithivas alleges a specific collateral objective. The alleged collateral advantage was not merely reputational injury to Krithivas. SkyWest allegedly sought to deter other pilots from providing similar assistance with union-related communications and thereby obtain an objective outside the adjudication of its computer-access claims.

SkyWest's civil claims could properly seek judicial findings, damages, injunctive relief, or other remedies available in this Court. They were not designed to cause a separate airline to terminate or discipline Krithivas or to deter pilots from assisting communications relating to potential union representation.

The Counterclaim alleges that SkyWest and Hansen sought those collateral employment and deterrent consequences.[123] That alleged objective is concrete and external to the relief available through the litigation.

### B. Hansen's Employer-Directed Transmission Is the Independent Act Absent from *Hatch* and *Mackey*.

Paragraph 81 expressly alleges:

> "Hansen's February 2 email was a willful act independent of filing or ordinarily prosecuting the action."[124]

[121] *Crease v. Pleasant Grove City*, 519 P.2d 888, 890 (Utah 1974).
[122] *Puttuck v. Gendron*, 2008 UT App 362, ¶¶ 14–15.
[123] Dkt. 114 ¶¶ 43–46, 76–85.
[124] *Id.* ¶ 81.

The pleading then identifies the act: Hansen selected the Complaint, directed it to Krithivas's nonparty employer, expressly identified Krithivas's employment transition, and invited further communication even though American had no identified role in adjudicating SkyWest's claims.[125]

That is materially different from the facts in *Mackey*. There, evidence arguably established a desire to "exact retribution," but the Utah Supreme Court held the claimant still needed "conduct independent of legal process itself that corroborates the alleged improper purpose."[126]

Krithivas pleads exactly such conduct. The claim is not that SkyWest merely filed suit with a retaliatory motive; it is that Hansen subsequently deployed the Complaint through Krithivas's separate employment relationship to obtain collateral employment consequences and deter similar conduct.

Under *Crease*, even properly initiated process may subsequently be used for an ulterior purpose for which it was not intended.[127] That is the theory here. Neither *Woos* nor *Ancier* requires a different result. *Woos* involved allegations of improper motive without a separately pleaded post-filing act constituting misuse of process.[128] Here, paragraph 81 identifies such an act. The Court in *Ancier* addressed publicity concerning a lawsuit, standing alone and without coercive or collateral use.[129] Hansen's alleged conduct was not generalized publicity; he

[125] *Id.* ¶ 81.
[126] 2025 UT 37, ¶¶ 95–101.
[127] 519 P.2d at 890.
[128] *Woos LLC v. Mustafa*, No. 2:25-cv-00212-DBB, 2026 U.S. Dist. LEXIS 19251, at *12–13 (D. Utah Jan. 30, 2026).
[129] *Ancier v. Egan*, Civ. No. 14-00294 JMS-RLP, 2014 U.S. Dist. LEXIS 167319, at *19–21 (D. Haw. Dec. 4, 2014).

specifically directed the Complaint to the particular third party capable of imposing the collateral employment consequence allegedly sought.

### C. The Union-Related Context Plausibly Corroborates the Collateral Employment Purpose.

The retaliation allegations are not offered as a substitute for the independent-act requirement. They give meaning to the independent act.

The Counterclaim alleges SkyWest knew the information collection was associated with efforts to communicate with pilots concerning potential union representation.[130] SkyWest then characterized the two pilots' conduct to its workforce in unusually severe terms—unlawful stealing, unauthorized access, manipulation, unethical behavior, and theft.[131] Four days later it filed suit.[132] Three days after filing, its General Counsel deliberately selected Krithivas's new employer as a recipient of the Complaint.[133] That sequence plausibly supports an inference that the employer-directed use of the Complaint served a retaliatory and deterrent purpose apart from merely prosecuting SkyWest's civil claims.

At the pleading stage, these facts plausibly support the inference that a primary purpose of Hansen's employer-directed use of the filed Complaint was to obtain collateral employment consequences and deter similar union-related assistance, objectives distinct from adjudicating SkyWest's claims. Krithivas need not establish that retaliation was Hansen's only motive; he has alleged facts supporting the inference that it was a primary purpose of the particular employer-directed use challenged here.

---

[130] Dkt. 114 ¶¶ 29–38.
[131] *Id.* ¶¶ 39–40.
[132] *Id.* ¶ 41.
[133] *Id.* ¶¶ 42–45.

### D. The Pleaded Theory Does Not Depend on Proving That Hansen Later Used Specific Words Such as "Hack" or "Theft" in Oral Conversations.

SkyWest's Motion repeatedly attempts to reduce the case to the literal language in Hansen's short cover email. But the abuse-of-process theory does not require Krithivas to prove at this stage that Hansen later repeated a specific epithet orally.

The independent act was the deliberate employer-directed use of the Complaint itself. The relevant contextual inference is that when SkyWest's General Counsel selected Krithivas's new employer, attached a Complaint alleging circumvention, fraudulent access, misappropriation, malicious wrongdoing, and conspiracy, specifically identified Krithivas's transition to American, and invited further questions, the communication plausibly served to place SkyWest's accusations before the entity capable of imposing the alleged collateral employment consequence. That inference arises from the pleaded act itself.

## IX. SkyWest's Own Litigation Characterizations Undermine Its Attempt to Recast Hansen's Publication as Neutral Notice.

SkyWest asks the Court to view Hansen's publication as though he merely notified American that a civil docket existed. The record of this litigation shows why that description is incomplete.

The Complaint Hansen selected and sent to American alleged that Krithivas circumvented technological barriers, accessed information without or in excess of authorization, acted with intent to defraud, misappropriated confidential information, willfully and maliciously breached duties, and participated in a civil conspiracy.[134] The Counterclaim expressly alleges

[134] Dkt. 114 ¶¶ 15, 67; Dkt. 1 ¶¶ 58–60, 65, 73–81.

that Hansen's transmission republished those disputed accusations to Krithivas's employer.[135]

SkyWest's other filings confirm that it does not itself characterize the underlying controversy as a neutral disagreement over the technical scope of authorized access. In proposed preliminary-injunction findings, SkyWest referred to the information as "stolen directory data" and described Defendants' alleged conduct as a "scheme."[136] In later briefing, SkyWest argued that Defendants had "misappropriate[d] data," described "misappropriation and distribution of confidential employee data" as the core of its claims, and stated that it sought to trace its own "stolen data."[137] And the present Motion itself opens by characterizing this action as a "data-theft case."[138]

Krithivas does not cite those filings to establish that SkyWest's accusations are true. Nor does he contend that those filings establish the precise words Hansen or any other SkyWest representative later used in an oral communication with American. Their relevance is narrower. They demonstrate that SkyWest itself understands and presents the allegations contained in the Complaint as accusations of serious intentional misconduct—not merely as a neutral legal disagreement over the technical scope of access.

That context matters because Hansen did not simply advise American that "litigation exists." He was SkyWest's General Counsel; he selected the Complaint containing those accusations; directed it specifically to Krithivas's current employer; expressly identified Krithivas as having "transitioned to AA"; stated that SkyWest wanted American to be aware of

[135] Dkt. 114 ¶¶ 66–71.
[136] Dkt. 40-1 ¶¶ 26, 28.
[137] Dkt. 95 at 9, 11.
[138] Dkt. 140 at 2.

the litigation against him; and invited American to contact him with additional questions.[139] The Counterclaim therefore permits the reasonable contextual inference that an attorney at American receiving that communication directly from SkyWest's General Counsel would understand SkyWest to be calling American's attention to accusations of serious intentional and dishonest misconduct by its newly hired pilot.

That inference does not depend on assuming that Hansen later repeated particular words such as "hacking," "stealing," or "theft." The allegedly defamatory publication was the targeted transmission of the Complaint itself. And the point of SkyWest's other filings is not to supply unpleaded oral statements, but to rebut SkyWest's attempt to characterize its own employer-directed transmission of that accusatory pleading as indistinguishable from a neutral notice that a public lawsuit had been filed.

## X. The Counterclaim Satisfies *Twombly* and *Iqbal*.

SkyWest's generalized contention that the Counterclaim is conclusory cannot be reconciled with the factual detail pleaded.

The Counterclaim identifies the specific sender; the specific recipient; the precise date of communication; the relevant language in Hansen's email; the document Hansen transmitted; the specific allegations within that document claimed to be false; why Krithivas alleges those accusations are materially false; SkyWest's authentication and endpoint conduct relevant to falsity; Hansen's knowledge that Krithivas worked for American; American's alleged lack of any role in the litigation; the preceding union-related and January 26 context; the date American placed Krithivas on leave; the reason allegedly identified for the anticipated termination; the

[139] Dkt. 114 ¶¶ 19–28.

absence of any disciplinary or performance problem at American; the employment advice Krithivas received; the circumstances of his resignation; and the resulting economic and reputational damages.[140]

Those are factual allegations, not labels. Rule 9(b) also expressly provides that intent, knowledge, malice, and other conditions of mind may be alleged generally.[141] The Tenth Circuit recognizes that principle at the Rule 12 stage.[142]

Here Krithivas goes further and alleges objective circumstances supporting the inference of purpose: the identity of the recipient, Hansen's knowledge of Krithivas's employment, the timing of the communication, the Complaint selected for transmission, the invitation for follow-up, and the surrounding sequence of events. That exceeds the plausibility threshold.

## XI. Hansen Is Sued for His Own Alleged Conduct, Not Merely Because He Was SkyWest's General Counsel.

SkyWest argues that Hansen cannot be individually liable because the Counterclaim identifies only one act attributable specifically to him—the February 2 communication. But no second tortious act is required. The Counterclaim identifies Hansen by name as the person who personally selected the Complaint, transmitted it directly to Krithivas's employer, identified Krithivas's employment transition, and invited further questions.[143] Whether that specifically pleaded act is actionable is the substantive question addressed above; its singularity is not an independent ground for dismissal.

Nor does Hansen's status as SkyWest's General Counsel independently immunize that

[140] *Id.* ¶¶ 14–85.
[141] Fed. R. Civ. P. 9(b).
[142] *Fernandez*, 883 F.3d at 1299–1300.
[143] Dkt. 114 ¶¶ 19–28.

conduct. *Pratt* itself involved lawyers as alleged defamation defendants, and *RainFocus* involved challenged extrajudicial communications by corporate General Counsel.[144] Neither case recognizes attorney status as an independent defense to otherwise actionable extrajudicial conduct.

Rather, *RainFocus* recognizes that General Counsel's position can affect how the recipient reasonably understands a private factual communication because counsel may be expected to possess significant knowledge concerning the litigation and the truth of the allegations.[145] That reasoning makes Hansen's identity relevant to the claim rather than a basis for dismissal. The Counterclaim separately alleges SkyWest's responsibility because Hansen acted as SkyWest's officer, employee, agent, and legal representative and because SkyWest authorized, directed, approved, or ratified the communication.[146]

## XII. Dismissal With Prejudice Is Unwarranted Even If the Court Identifies a Pleading Deficiency.

Even if the Court concludes additional factual allegations are required, dismissal with prejudice is unwarranted. This is the first Rule 12 motion directed to the operative Counterclaim. The August 11 Order deliberately deferred SkyWest's futility arguments until after Krithivas filed the revised pleading.[147] Where a pleading defect may be cured, Tenth Circuit precedent favors allowing amendment rather than dismissal with prejudice.[148] Dismissal with prejudice is therefore unwarranted unless amendment would be futile.

---

[144] 2007 UT 41, ¶¶ 1, 25–36; 2023 UT App 32, ¶¶ 3–4, 31–40.
[145] 2023 UT App 32, ¶¶ 31–40.
[146] Dkt. 114 ¶¶ 9–10, 26, 82.
[147] Dkt. 103 at 5–7.
[148] *See Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (Rule 15 is intended to provide the "maximum opportunity for each claim to be decided on its merits rather than on procedural niceties"); *Brever v.*

Moreover, SkyWest's filed discovery responses acknowledge that Hansen spoke with Gatten shortly after the February 2 email "to answer questions about the Complaint" and that SkyWest CEO Russell Childs separately spoke with an American representative about the lawsuit during the same week.[149] Krithivas does not rely on those responses to supply an element of the operative pleading. But they independently demonstrate that, if the Court finds additional allegations concerning the scope or context of the American communications necessary, amendment would not be futile. Accordingly, any dismissal should be without prejudice.

**CONCLUSION**

SkyWest's Motion attempts to transform a targeted employer-directed communication into a neutral docket notice. That is not what the Counterclaim alleges. Three days after filing a Complaint accusing Krithivas of intentional circumvention, fraudulent access, misuse of confidential information, malicious wrongdoing, and conspiracy, SkyWest's General Counsel affirmatively selected Krithivas's new employer as a recipient of that pleading, expressly identified Krithivas's transition to that employer, stated that SkyWest wanted the employer to know of the litigation, and invited further questions.

Under *RainFocus*, the fact that those accusations originated in pending litigation does not automatically render their targeted extrajudicial repetition nondefamatory. The analogy is particularly strong because *RainFocus* itself concerned private communications by corporate General Counsel to third parties whose economic relationships with the defamation plaintiff

---

*Rockwell Int'l Corp.*, 40 F.3d 1119, 1131 (10th Cir. 1994) (where a pleading defect may be corrected, dismissal ordinarily should permit amendment).

[149] *See* Dkt. 138-1 at 10–11, Resp. to Interrog. No. 13.

could be damaged by the accusations.

Under *Pratt*, Hansen's status as counsel likewise does not automatically cloak extrajudicial distribution of a pleading with judicial-proceeding immunity. The relevant inquiry remains whether the recipient had a sufficient connection to the litigation and whether publication furthered the purposes of the judicial process. The Counterclaim expressly alleges American did not.

SkyWest also cannot establish substantial truth by collapsing the distinction between admitted access using SkyWest-issued credentials and disputed accusations of circumvention, fraud, theft-like misconduct, malicious breach, and unlawful conspiracy.

The tortious-interference claim plausibly alleges that Hansen's publication caused American to act against Krithivas, regardless of whether Krithivas knew at the time who had delivered the Complaint.

And the abuse-of-process claim alleges more than retaliatory motive. It identifies a concrete collateral objective—employment consequences and deterrence associated with union-related activity—and a separate post-filing act corroborating that purpose: SkyWest's General Counsel affirmatively deploying the Complaint against Krithivas through his unrelated employment relationship with American. The Counterclaim therefore states plausible claims for relief.

Krithivas respectfully requests that the Court DENY SkyWest Airlines, Inc.'s and Dale Hansen's Motion to Dismiss. At minimum, SkyWest has not established that any identified deficiency would be incurable or that amendment would necessarily be futile. Accordingly, if the Court determines that any claim is insufficiently pleaded, dismissal should be without prejudice.

DATED this 21st day of September, 2026.

**LAW OFFICES OF TIMOTHY D. DUCAR, PLC**

By /s/ Scott C. Uthe
Scott C. Uthe
Timothy D. Ducar
9280 E. Raintree Drive, Suite 104
*Attorneys for Defendant and Counterclaim Plaintiff Vikaas Krithivas*

## CERTIFICATE OF COMPLIANCE

Pursuant to DUCivR 7-1(a)(6)(C), I, Scott C. Uthe, certify that this Response contains 7,705 words and complies with DUCivR 7-1(a)(4).

/s/ Scott C. Uthe
Scott C. Uthe

## CERTIFICATE OF SERVICE

I certify that on the 21st day of September, 2026, I electronically filed the foregoing DEFENDANT VIKAAS KRITHIVAS'S RESPONSE IN OPPOSITION TO SKYWEST AIRLINES, INC.'S AND DALE HANSEN'S MOTION TO DISMISS COUNTERCLAIM (DKT. 140) using the Court's CM/ECF system, which will serve all counsel of record.

/s/ Scott C. Uthe