Jonathan K. Thorne (Utah Bar No. 12694)
Lauren I. Scholnick (Utah Bar No. 7776)
Jack Holland (pro hac vice)
**SCHOLNICK THORNE HOLLAND**
40 South 600 East
Salt Lake City, Utah 84102
Telephone: (801) 359-4169
Facsimile: (801) 359-4313
email: jonathan@utahjobjustice.com
lauren@utahjobjustice.com
jack@laborwest.com
*Attorneys for Defendant and Counterclaim Plaintiff Daniel Moussaron*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF UTAH – SOUTHERN DIVISION**

| | |
|---|---|
| SKYWEST AIRLINES, INC.,<br><br>Plaintiff and Counterclaim Defendant,<br><br>and DALE HANSEN,<br><br>Additional Counterclaim Defendant,<br><br>vs.<br><br>DANIEL MOUSSARON and VIKAAS KRITHIVAS,<br><br>Defendants and Counterclaim Plaintiffs. | **DEFENDANT MOUSSARON'S MOTION FOR PROTECTIVE ORDER REGARDING PLAINTIFF'S PROPOSED SUBPOENAS TO EZ TEXTING AND GOFUNDME AND, IF SERVED, TO QUASH OR MODIFY**<br><br>Civil No. 4:26-cv-00015-DN-PK<br><br>Senior District Judge David Nuffer<br>Magistrate Judge Paul Kohler |

## RELIEF REQUESTED

Pursuant to Federal Rules of Civil Procedure 26(c) and 45(d)(3), the qualified First Amendment associational privilege, and the Court's August 18, 2026, Memorandum Decision and Order (Dkt. 108), Defendant and Counterclaim Plaintiff Daniel Moussaron ("Moussaron")

moves for a protective order under Rule 26(c) forbidding or limiting the proposed subpoenas SkyWest Airlines, Inc. ("SkyWest") has noticed to CallFire, Inc. d/b/a EZ Texting ("EZ Texting") and GoFundMe, Inc. ("GoFundMe") and, if either subpoena is served before the Court rules, to quash or modify it under Rule 45(d)(3). Moussaron further requests that service of, or compliance with, both subpoenas be stayed pending the Court's ruling on Defendants' Joint Motion for Protective Order (Dkt. 132), and that any protective order entered on Dkt. 132 govern these subpoenas. A copy of the Notice and both subpoenas is attached as Exhibit A. Because both subpoenas command production on October 12, 2026, before briefing related to Defendants Joint Motion for Protective Order (Dkt. 132) would close, Moussaron requests expedited consideration and a stay of compliance pending the Court's ruling, as set out in the accompanying Motion to Expedite.

## INTRODUCTION

On August 18 the Court denied SkyWest's motions to compel (Dkts. 61, 63, 67, 69–72) without prejudice, holding that "claims of privilege are ill-suited for the short form discovery process," and directed Defendants Moussaron and Vikaas Krithivas ("Krithivas") to present the First Amendment associational privilege through a single motion for protective order, with SkyWest to respond on the balancing factors (Dkt. 108, pgs. 2–3). Nine days later SkyWest stipulated that the same ruling "will resolve all, or most of" its pending subpoena dispute with ALPA and that sequencing "will conserve the Parties' and the Court's resources and avoid duplicative briefing of the same threshold privilege issue" (Dkt. 120, pg. 3), and the Court so ordered (Dkt. 121). Defendants filed their Joint Motion for Protective Order on September 14 (Dkt. 132). Six business days later SkyWest noticed two new nonparty subpoenas that demand the very categories of information Dkt. 132 asks the Court to protect.

Asked to withdraw or hold the subpoenas until the Court rules, SkyWest refused, stating that the August 18 Order "does not freeze discovery" and that it "intends to serve the subpoenas once the notice period has expired" (Ex. B, Horrocks email of Sept. 24, 2026). The Order did not freeze discovery of Defendants' conduct, and the Defendants have never requested that. It channeled one question, whether SkyWest may compel disclosure of private association with the organizing campaign, into one proceeding. These subpoenas ask nonparty vendors to produce the information that the Court ordered the parties to brief, which has not yet been decided.

## BACKGROUND

SkyWest's claims concern the alleged acquisition and use of pilot contact information from SkyWestOnline. Defendants have disclosed the technical and transactional facts of that conduct, and Moussaron has produced the December 9, 2025 text message and the contact list uploaded to EZ Texting; Moussaron has withheld only the EZ Texting report fields showing "group assignments, poll responses, and opt-out dates" (Moussaron Supp. Resp. to SkyWest Second Set, July 17, 2026, Request for Production No. 12, pgs. 24–25). Dkt. 132 seeks a protective order for three categories: (1) the identities of nonparty pilots whose private association with the campaign has not been publicly disclosed; (2) "individualized pilot responses reflecting whether a pilot supported, opposed, was undecided about, or otherwise privately responded to organizing outreach"; and (3) confidential internal organizing communications revealing strategy and assessments of individual support (Dkt. 132, pg. 2). It is supported by declarations of Krithivas, ALPA organizer Ronald Rindfleisch, Moussaron and others, describing pilots' fear of being identified to SkyWest (Dkt. 132, pgs. 7–9; Exs. A, B, D). Dkt. 132 also asks that any order reach SkyWest's Rule 45 subpoena to ALPA (Dkt. 132, pg. 3).

On September 22, SkyWest served its Notice of Intent to Serve Subpoena Duces Tecums on EZ Texting and GoFundMe (Ex. A). Both subpoenas command production at Holland & Hart's Salt Lake City office on October 12, 2026 (Ex. A, AO 88B forms). The EZ Texting subpoena demands, among other things, "[a]ll text messages and/or campaigns sent from the Moussaron Account," including "message content, message templates ... recipient phone numbers, timestamps, delivery status, opt-out or unsubscribe records, and any inbound replies or poll responses" (Command 3); "[a]ll contact lists and/or data files uploaded to the Moussaron Account" (Command 4); and "[a]ll Documents ... relating to and/or referencing SkyWest, this Lawsuit, Moussaron, Krithivas, and/or ALPA" (Command 7). The GoFundMe subpoena is directed to the fundraising page at gofundme.com/f/skywest-organizing-legal-defense and demands "[c]omplete donor records for the Campaign, including without limitation ... donor names, email addresses, donation amounts, dates of each donation, and any comments and/or messages left by donors" (Command 2), organizer registration records (Command 1), and all communications through or with GoFundMe relating to the campaign, the Lawsuit or SkyWest (Commands 3–4).

Moussaron objected in writing on September 23 and offered to confer on September 24 (Ex. B). SkyWest responded on September 24 that nothing prohibits the subpoenas; proposed that the vendors designate material Attorneys' Eyes Only ("AEO") while also producing a redacted set; and SkyWest confirmed it would still serve the subpoenas prior to meeting and conferring and despite Moussaron's objections. (Ex. B).

**LEGAL STANDARD**

The Court "must quash or modify a subpoena that ... requires disclosure of privileged or other protected matter" or "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii)–

(iv). A subpoena is also subject to the relevance and proportionality limits of Rule 26(b)(1), and the Court may, for good cause, enter a protective order forbidding or limiting discovery to protect a party from "annoyance, embarrassment, oppression, or undue burden." Fed. R. Civ. P. 26(c)(1). The First Amendment privilege "applies to discovery orders issued in litigation involving only private parties," *In re Motor Fuel Temperature Sales Practices Litig.*, 641 F.3d 470, 481 (10th Cir. 2011) (citing *Grandbouche v. Clancy*, 825 F.2d 1463, 1466 (10th Cir. 1987)). *Id.* at 488 (burden shifts after prima facie showing); *Grandbouche*, 825 F.2d at 1466 (balancing factors).

## ARGUMENT

### I. Moussaron has standing.

A party may challenge a nonparty subpoena where it has "a personal right or privilege with respect to the subject matter sought by the subpoena," and in any event may seek a protective order under Rule 26(c) in the court supervising the action. *Richards v. Convergys Corp.*, No. 2:05-CV-00790-DAK, 2007 U.S. Dist. LEXIS 9131, at *3–6 (D. Utah Feb. 6, 2007) (unpublished); *Transcor, Inc. v. Furney Charters, Inc.*, 212 F.R.D. 588, 590–91 (D. Kan. 2003) (party had standing to quash subpoenas for its own account records held by third-party banks). Both subpoenas seek records of accounts Moussaron registered and administers, and both seek information in which Moussaron and the nonparty pilots and donors he associated with hold the First Amendment interest presented in Dkt. 132. Regardless of the court in which any Rule 45 enforcement proceeding would ultimately be required, this Court has authority under Rule 26(c) to protect Moussaron from discovery that invades his own First Amendment and privacy interests.

**II. The subpoenas circumvent the process the Court ordered in Dkt. 108 and SkyWest accepted in Dkt. 120.**

SkyWest's position is that the August 18 Order "only addressed the discovery pending at that time" (Ex. B). That reads the Order as a ruling on particular motions rather than what it was: a determination that the associational-privilege question would be decided once, on a full record, through Dkt. 132 (Dkt. 108, pgs. 2–3). SkyWest understood that when it told the Court, in a stipulated motion its counsel signed, that the Dkt. 132 ruling would resolve the ALPA subpoena dispute and that sequencing would "avoid duplicative briefing of the same threshold privilege issue" (Dkt. 120, pg. 3). The Court stayed SkyWest's response to the ALPA motion to quash until fourteen days after the Dkt. 132 ruling (Dkt. 121). A subpoena to EZ Texting for the same type of information – poll  responses and contact lists – stands in no different position, except that it was noticed after the Court set the sequence rather than before.

Dkt. 132 seeks a protective order for the same information sought through these subpoenas. SkyWest moved to compel Moussaron's answers to: Requests for Production Nos. 6, 10 and 18–22, which sought individual pilots' poll responses (including from the EZ TEXT Dec 9 mass text message) (Dkt. 70; Dkt. 132, pg. 15); Interrogatories Nos. 7, 12 and 16 and Request for Production No. 16, which sought the identities of persons involved in contacting pilots (Dkt. 71); and the identity of a nonparty (Dkt. 72). The Court denied each and directed the parties to brief the privilege issue, which Defendants filed their Joint Motion for Protective order in Dkt. 132 (Dkt. 108, pg. 3).

SkyWest's Request for Production No. 12 to Moussaron asked for the EZ Texting records themselves: "recipient lists and contact uploads," "message content and templates," "opt-out or unsubscribe records," and "billing records." Moussaron produced the message and the contact list

and objected to the rest (Moussaron Supp. Resp. to SkyWest Second Set, July 17, 2026, Request for Production No. 12, pgs. 24–25). SkyWest never moved on that objection. It went to the vendor instead.

Nor does it matter that the subpoenas are directed to vendors. The Tenth Circuit has held that the associational right "will be chilled equally whether the associational information is compelled from the organization itself or from third parties." *In re First Nat'l Bank, Englewood, Colo.*, 701 F.2d 115, 118 (10th Cir. 1983). At a minimum, compliance should be stayed until the Court rules.

**III. EZ Texting Commands 3 and 4 seek the categories Dkt. 132 seeks to protect, and a vendor cannot apply the protections SkyWest suggests, nor are those protections appropriate.**

Command 3 demands the content of every message sent from the account, the number of every recipient, every opt-out, and "any inbound replies or poll responses." Command 4 demands every uploaded contact list and data files. This information will provide SkyWest with the pilot identities of who were supportive or non-supportive of the Union organizing, along with any specific comment a pilot made about the union drive. These commands seek the same information subject to Defendants Joint Motion for Protective Order (Dkt. 132). A recipient number paired with a reply, a poll response, or an opt-out is an individualized expression of that pilot's view on representation. Dkt. 132, pg. 2, category (2). The uploaded lists and reply data identify pilots who privately engaged with the campaign. *Id.*, category (1). Message templates and campaign structure reveal how the campaign was planned and to whom particular messages were targeted. *Id.*, category (3).

SkyWest's September 24 email proposed that the vendors produce responsive documents as AEO, with a second production providing the same responsive documents redacted, but no AEO. First, EZ Texting cannot do that and provide proper redactions. It does not know which pilots have publicly disclosed their support, which replies reflect private sentiment, or which campaign structures reveal internal strategy. Second, Dkt. 132 opposes any AEO production – as an AEO designation answers who may *see* information once disclosure is warranted; it does not answer whether disclosure is warranted in the first place, and "disclosure to litigation counsel remains disclosure" where the protected fact is the identity itself (Dkt. 132, pg. 20; *see Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 616 (2021) (disclosure requirements can chill association "[e]ven if there [is] no disclosure to the general public")).

**IV. The GoFundMe subpoena seeks irrelevant and protected donor information.**

No claim or defense in this case turns on who contributed to the legal-defense fund Moussaron organized (months after he was sued), how much was contributed, or what donors messaged when they contributed. SkyWest's causes of action concern alleged access to and use of pilot contact information (Dkt. 1); Defendants' counterclaims concern SkyWest's interference with organizing, its statements about Defendants, and Hansen's February 2 email to American Airlines (Dkt. 47, Countercl., First–Third Causes of Action; Dkt. 114 ¶ 1). Defendants raised the same objection to the ALPA subpoena Requests 8 and 10, which sought "financial support" and "funding of legal fees," and explained that how Defendants fund their defense "is of no relevance whatsoever to SkyWest" (Dkt. 106, pgs. 10–11). This same objection is raised in Dkt. 132. SkyWest has not identified any relevance in its email (Ex. B), and none exists.

The information is also protected. The Supreme Court has recognized "the vital relationship between freedom to associate and privacy in one's associations," *NAACP v. Alabama*

*ex rel. Patterson*, 357 U.S. 449, 462 (1958), and in *Bonta* that principle was applied to compelled disclosure of donor identities, holding that a disclosure demand must be "narrowly tailored to the government's asserted interest," 594 U.S. at 608, because "[t]he risk of a chilling effect on association is enough," *id.* at 618–19. A demand for every donor's name, email address, donation amount and comments, in a case in which the Court already has sworn evidence that SkyWest pilots fear being identified to SkyWest for supporting the campaign (Dkt. 132, Ex. B ¶¶ 16–19; Ex. D ¶¶ 7–10), is not tailored to anything. In the SkyWest flight-attendant lawsuit, the court protected the union's financial information from discovery, subject to enumerated exceptions. *Ass'n of Flight Attendants-CWA v. SkyWest Airlines, Inc.*, No. 2:23-cv-00723-DBB-DBP, Dkt. 157 ¶ 1(c) (D. Utah Dec. 18, 2025). The subpoena should be quashed in full.

**V. The remainder of the EZ Texting subpoena seeks nothing relevant to any claim or defense, measured by SkyWest's own standard.**

The only EZ Texting material that arguably bears on SkyWest's claims is the message that was sent and the list of pilots it was sent to. Moussaron has produced both (Interrogatory No. 10, pgs. 8–9; Request for Production No. 12, pgs. 24–25). Nothing else in the subpoena connects to a pleaded claim or defense. Commands 1 and 2 seek the account's registration data, plan, payment method, invoices and billing address. Commands 5, 6 and 8 seek records of the account's "suspension, locking, and/or termination," its "non-renewal," "any inquiry into whether emails from the Moussaron Account could be recovered," and login and IP logs showing "whether account data was retained, archived, or deleted after non-renewal." Who paid for a texting platform, from what address, and when the vendor locked the account do not tend to prove whether Defendants exceeded authorized access to SkyWestOnline or what loss SkyWest suffered. Moussaron has already answered under oath that the account "has been locked by the

provider" and that he cannot export further records (Request for Production No. 12, pg. 25). Commands 6 and 8 are, in any event, aimed at the wrong provider: the "non-renewal" and the inquiry about recovering "emails" that SkyWest describes are the events Moussaron disclosed concerning the Organizing Committee's Migadu email account, which "was not renewed and access terminated on or about January 13, 2026" (*id.*, Interrogatory No. 11, pgs. 9–10; Request for Production No. 17, pgs. 28–29). EZ Texting is an SMS platform and holds no such records.

Command 7 demands "[a]ll Documents ... relating to and/or referencing SkyWest, this Lawsuit, Moussaron, Krithivas, and/or ALPA," untethered to any account, subject or claim. Requests for "all documents ... that refer to, mention or relate in any way to" a person or a lawsuit fail the reasonable-particularity requirement and are "overly broad." *Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 649–50 (10th Cir. 2008); *Richards*, 2007 U.S. Dist. LEXIS 9131, at *14–16 (subpoena for all documents "regarding" a person is overly broad on its face).

SkyWest's own discovery responses supply the measure. Three days before it noticed these subpoenas, SkyWest objected to Krithivas's definition of "Union-Related Communication" as "overbroad, not proportional, and seeking information not relevant to any party's claim or defense" because it reaches "labor-relations subject matter" that is "untethered to the unauthorized-access and data-misuse claims at issue" (SkyWest Second Supp. Resp. to Krithivas Second Set, Sept. 22, 2026, pg. 6). In the same document it refused to identify its own employees who communicated with any third party about Defendants, objecting that the request "could sweep in any incidental reference" and implicates "third-party privacy interests," and stated it "will not produce any information in response" (*id.*, Krithivas's Interrogatory No. 21, pgs. 34–35). SkyWest cannot have it both ways.

## CONCLUSION

Moussaron respectfully requests that the Court (1) enter a protective order under Rule 26(c)(1)(A) prohibiting service of the proposed subpoenas in their current form; (2) if either subpoena is served before the Court rules, quash or modify it under Rule 45(d)(3), including at a minimum Commands 3, 4, 6, 7 and 8 of the EZ Texting subpoena and the GoFundMe subpoena in its entirety; (3) stay service of, or compliance with, both subpoenas pending the ruling on Dkt. 132 and order that any protective order entered on Dkt. 132 apply to them; and (4) award Moussaron his reasonable expenses, including attorney's fees, under Rules 26(c)(3) and 37(a)(5)(A). SkyWest noticed these subpoenas with full knowledge of Dkt. 108, its own stipulation in Dkt. 120, and the Court's order in Dkt. 121, and refused a written request to withdraw or hold them (Ex. B) until the court ruled on Dkt. 132. That position was not substantially justified.

## CERTIFICATION OF CONFERRAL

Counsel for Moussaron objected to the subpoenas in writing on September 23, 2026, and proposed to confer on September 24 at 11:30 a.m. or 1:30 p.m. Counsel for SkyWest asked to confer the following week due to valid need to be out of the office; counsel for Moussaron agreed, offered times on September 28 and 30, and asked that SkyWest not serve until then. Counsel for SkyWest declined to withdraw or hold the subpoenas. (Ex. B). Notwithstanding, the parties did confer via email and relayed their individual positions on the matter. *Id*. The parties were unable to resolve the dispute.

DATED this 25th day of September, 2026.

**SCHOLNICK THORNE HOLLAND**
/s/ Jonathan K. Thorne
Jonathan K. Thorne
Lauren I. Scholnick
Jack Holland
*Attorneys for Defendant and Counterclaim Plaintiff Daniel Moussaron*

**CERTIFICATE OF COMPLIANCE**

This motion contains 2,888 words and complies with the 3,100 word limit of DUCivR 7-1(a)(4)(D).