Gregory M. Saylin, #9648
Tyson C. Horrocks, #12557
Zachary T. Burford, #19771
Holland & Hart LLP
222 South Main Street, Suite 2200
Salt Lake City, UT 84101-2194
Telephone: 801.799.5800
GMSaylin@hollandhart.com
TCHorrocks@hollandhart.com
ZTBurford@hollandhart.com

*Attorneys for Plaintiff and Counterclaim Defendant SkyWest Airlines, Inc. and Counterclaim Defendant Dale Hansen*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF UTAH – SOUTHERN DIVISION**

| | |
|---|---|
| SKYWEST AIRLINES, INC.,<br><br>Plaintiff and Counterclaim Defendant,<br><br>and DALE HANSEN,<br><br>Additional Counterclaim Defendant,<br><br>vs.<br><br>DANIEL MOUSSARON,<br><br>Defendant and Counterclaim Plaintiff,<br><br>and VIKAAS KRITHIVAS,<br><br>Defendant and Counterclaim Plaintiff. | **PLAINTIFF'S RESPONSE TO DEFENDANTS' JOINT MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS UNDER RULE 12(c)**<br><br>Civil No. 4:26-cv-00015-DN-PK<br><br>Senior District Judge David Nuffer<br>Magistrate Judge Paul Kohler |

Plaintiff SkyWest Airlines, Inc. ("SkyWest"), by and through undersigned counsel, hereby responds in opposition to Defendants' Joint Motion for Partial Judgment on the Pleadings under Rule 12(c) ("Motion") (Dkt. No. 105) as follows.

# INTRODUCTION

This case arises from Defendants' conspiracy to use third-party browser developer tools and automated TamperMonkey scripts to circumvent SkyWest's technical barriers in order to obtain the restricted personal contact information of more than 5,000 SkyWest pilots and disseminate that information to outside parties. Defendants admit they did it. Moussaron admits he accessed SWOL, "saved names, employee number, phone numbers, and addresses of various pilots sequentially based on seniority." Dkt. No. 47, Moussaron Ans. ¶ 27. He admits that "the Defendants used a script to access and save pilot contact information." *Id.* ¶ 33. He admits he provided pilot contact information to someone outside SkyWest and used the data to send a mass text message to a majority of SkyWest pilots. *Id.* ¶ 36; Countercl. ¶¶ 46–47. Krithivas admits he logged into SWOL, accessed directory data for approximately 5,000 pilots on September 3, 2025, and forwarded the data to a remote server as directed by Moussaron. Dkt. No. 48, Krithivas Ans. ¶¶ 15, 17.

Recognizing that they could not prevail on a motion to dismiss any one of SkyWest's claims in its entirety, Defendants ask this Court to grant piecemeal relief by parsing individual legal theories, issuing advisory rulings, and declaring as a matter of law that certain categories of conduct cannot constitute unauthorized access under the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, or the Utah Computer Abuse and Data Recovery Act ("UCADRA"), Utah Code § 63D-3-101 *et seq.* However, Rule 12(c) does not permit piecemeal relief on a part of a claim. *See Sexton v. Merchs. & Med. Credit Corp.*, 2020 U.S. Dist. LEXIS 221585, at *3 (D. Utah Nov. 24, 2020); *M.S. v. Premera Blue Cross*, 2020 U.S. Dist. LEXIS 61789, at *15–16 (D. Utah Apr. 7, 2020). Therefore, the Motion should be denied.

On the merits, Defendants' arguments fare no better. SkyWest does not merely allege that Defendants misused information they were authorized to obtain. Defendants' conduct is much more nefarious and violated the CFAA, which imposes liability on anyone who "intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains . . . information from any protected computer." 18 U.S.C. § 1030(a)(2). SkyWest's Complaint alleges in detail how Defendants used third-party browser developer tools, automated scripts, and sequential URL manipulation to circumvent the role-based access controls that SkyWest Online ("SWOL") utilized through its user interface in order to access private pilot information. Dkt. No. 1, Compl. ¶¶ 22–33. As alleged in the Complaint, Defendants bypassed SkyWest's technological barriers to obtain data hidden from their user-interface view—data they would not have been able to access with their issued credentials.

Under the Supreme Court's interpretation of the CFAA in *Van Buren v. United States*, the Court adopted a "gates-up-or-down" framework; the question is whether a person "can or cannot access" particular areas of a computer system. 593 U.S. 374, 391–92 (2021). Here, the gates were clearly down—while Defendants had basic access to SWOL, SWOL's interface did not display or allow Defendants to access the pilot contact information. Compl. ¶¶ 14–15. In order to access this information, Defendants had to deploy technical tools to circumvent those restrictions and extract the underlying data. That is precisely the kind of conduct that the CFAA prohibits.

Additionally, SkyWest's UCADRA claim stands on its own statutory footing. UCADRA is a distinct Utah statute with its own elements, and Defendants' effort to collapse the UCADRA into the CFAA ignores the statute's text. The Complaint adequately pleads that Defendants accessed SWOL without authorization using impermissible access methods and with the intent to

cause harm to SkyWest's computer systems and data. SkyWest's Complaint sufficiently pleads each of the statutory elements required to defeat a Rule 12(c) motion.

## BACKGROUND

### SkyWest Online

SkyWest maintains a secure intranet portal, SkyWest Online ("SWOL"), through which it manages employment-related information for its workforce. *Id.* ¶¶ 12–15. SWOL requires login credentials and multi-factor authentication to access and stores sensitive employee data, including names, home addresses, personal cell phone numbers, and other employment-related information. *Id.* ¶¶ 12–13.

Critically, SWOL employs role-based access controls that limit what information each employee can view based on the employee's position and job duties. *Id.* ¶ 14. SWOL's user interface is designed so that certain data fields—including the personal contact information of other employees—are not displayed to line pilots like Defendants. *Id.* ¶¶ 14–15. Although SWOL's back-end server may return data in response to queries, the system's front-end interface enforces code-based access restrictions by not rendering certain data fields for users who lack the requisite permissions. *Id.* ¶¶ 15, 22. In other words, SWOL's architecture implements a layered security model under which authentication controls who can log in, while role-based access controls within the application determine what information each authenticated user can view and interact with through the standard user interface. *Id.* ¶¶ 13–15.

In addition to these technological-based restrictions, SkyWest's policies specifically prohibited front-line, non-manager pilots from accessing confidential employee personal information. *Id.* ¶¶ 15, 35–36, 72. SkyWest's Code of Conduct, SP 150, defines the scope of

authorized access to employee data and company systems. *See* Ex. A, Code of Conduct, SP 150, SkyWest_000023–31. Section 10.A of the Code states that: "Records containing any personal information must be kept confidential," and "***[a]ccess* to such records is limited to managers** and ***others with a specific need to use the information in the performance of their duties.***" *Id.* at SkyWest_000028 (emphasis added). Section 13.F of the Code provides that "[a]ccess to any Company systems must be properly requested and authorized using a formalized request process before it is granted" and that "[u]ser access will be limited to the minimum level required by the employee or third-party representative to perform their job duties." *Id.* at SkyWest_000029. Section 13.E prohibits employees from installing or using unapproved software, providing that employees "must not purchase, download, install, or use any software that has not been reviewed and approved by the IT department" and warning that "[a]ny unvetted software installation or device configuration increases risk and exposure of Company networks and sensitive systems." *Id.* Section 13.A requires that information stored on company systems be "protected from unauthorized modification, destruction, and disclosure." *Id.*

**Defendants' Conduct**

Defendants were SkyWest pilots. *Id.* ¶¶ 5–6. As conditions of their employment, both Defendants signed Non-Disclosure Agreements ("NDAs") in which they acknowledged that SkyWest's business records, including employee records in the form of personnel records, constitute "Confidential and Privileged Information" and agreed not to "disclose, divulge, or otherwise communicate" such information "to any party other than those employees of SkyWest as necessary." *Id.* ¶¶ 16–18; Dkt. No. 1-1, Ex. A.

In or around April 2025, Moussaron began working with the Air Line Pilots Association ("ALPA") as a member of an Organizing Committee to form a labor union among SkyWest pilots. Dkt. No. 47, Countercl. ¶¶ 6–10. Beginning in approximately August 2025 and continuing through December 2025, Defendants devised and executed a scheme to extract the personal, private contact information of more than 5,000 SkyWest pilots from SWOL for the purpose of facilitating union-organizing communications. Dkt. No. 1, Compl. ¶¶ 22–33.

Defendants did not simply view information that SWOL displayed to them in the ordinary course. Instead, Defendants used browser developer tools to remove or bypass the blocks that SkyWest had implemented in SWOL's user interface, thereby exposing data fields—including personal phone numbers, home addresses, and other contact information—that were not rendered in their standard user view. *Id.* ¶¶ 22–23. Defendants also deployed an automated script known as "TamperMonkey" to systematically extract and save this information in bulk. *Id.* ¶¶ 33–34. TamperMonkey is a browser extension that allows users to run custom scripts to modify the behavior or content of web pages—in this case, to override SWOL's access controls and automate the extraction of hidden data.[1] Defendants further manipulated sequential identification numbers to navigate to the profile pages of other employees whose information was not otherwise accessible to them. *Id.* ¶¶ 25–28. Over a period of months, Defendants engaged in a

---

[1] *See* Tampermonkey, Chrome Web Store, https://chromewebstore.google.com/detail/tampermonkey/dhdgffkkebhmkfjojejmpbldmpobfkfo (describing TamperMonkey as a browser extension that allows users to "[c]hange the web at will with "userscripts," which are "small programs that modify page layouts, add or remove features, and automate actions to personalize your web experience.") (Last visited Sept. 25, 2026).

deliberate and sustained campaign to defeat SWOL's access controls and extract detailed personal information for every SkyWest pilot.

Defendants admit the key facts about their conduct. Moussaron admits he accessed SWOL, saved pilot contact information sequentially, and used a script to automate the extraction, and provided the data to persons outside SkyWest for non-SkyWest business purposes. Dkt. 47, Ans. ¶¶ 27, 33–34, 36; Countercl., ¶¶ 46–47.

Krithivas likewise admits he logged into SWOL, accessed directory data for 5,000 pilots, and forwarded the data to a remote server at Moussaron's direction. Dkt. 48, Ans. ¶¶ 15, 17, 19.

**Investigation and Termination**

SkyWest investigated the breach and terminated Moussaron on January 26, 2026. Countercl. ¶¶ 53–55. SkyWest filed its Complaint on January 30, 2026, asserting seven causes of action, including violations of the CFAA (Count 3) and UCADRA (Count 4). Compl. ¶¶ 56–69. Discovery is in its early stages, and no depositions have been taken.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." A motion under Rule 12(c) is evaluated under the same standard that governs a motion to dismiss under Rule 12(b)(6). *Park Univ. Enters., Inc. v. Am. Cas. Co. of Reading, Pa.*, 442 F.3d 1239, 1244 (10th Cir. 2006).

To survive a Rule 12(c) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible "when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The court "accept[s] all well-pleaded facts [in the complaint] as true and view[s] them in the light most favorable to the plaintiff." *Christoffersen v. Nucor Corp.*, 2026 U.S. Dist. LEXIS 50390, at *2 (D. Utah Feb. 19, 2026) (Kohler, M.J.), *report and recommendation adopted*, No. 4:25-cv-00118-DN-PK, Dkt. No. 38 (D. Utah Mar. 9, 2026). The court's function "is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Id.* (quotation omitted).

Importantly, unlike a motion under Rule 12(b)(6), a Rule 12(c) motion invites consideration of all pleadings in determining whether dismissal is appropriate. *Prismview, LLC v. Old Dominion Freight Line, Inc.*, 2022 U.S. Dist. LEXIS 5735, at *3–4 (D. Utah Jan. 11, 2022). This includes the pleadings, documents attached as exhibits, and documents incorporated by reference into the pleadings. *Id.* Accordingly, the Court may consider not only SkyWest's Complaint, but also Defendants' admissions in their Answer and Counterclaim.

## ARGUMENT

### I. DEFENDANTS' MOTION IS PROCEDURALLY IMPROPER.

As a threshold issue, the Court should recognize that the relief Defendants seek is fundamentally not permissible under Rule 12(c). Defendants do not ask the Court to dismiss Counts 3 or 4 in their entirety. Instead, they ask the Court to declare that certain *theories* of liability cannot support those causes of action, while conceding that other theories may survive. Dkt. No. 105 at 4–5 (acknowledging that the "technical circumvention" theory "may survive"). But Rule 12(c) does not authorize the piecemeal adjudication of claims.

The well-settled rule is that Rule 12(c), like Rule 12(b)(6), does not "permit[] piecemeal judgment on part of a claim." *Sexton*, 2020 U.S. Dist. LEXIS 221585, at *3; *Christoffersen*, 2026 U.S. Dist. LEXIS 50390, at *9 n.37 ("While portions of Plaintiff's negligence claim are subject to dismissal, partial dismissal is not proper."). "[W]hen it was passed, Rule 12(c) was designed to prevent 'the piecemeal process of judicial determination.'" *Id.* (quotation omitted); *see also BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015) (holding that a Rule 12(c) motion "doesn't permit piecemeal dismissal of *parts* of claims.") (emphasis in original). The reasoning behind this is sound. Rule 12(c), which is evaluated under the same standards as Rule 12(b)(6), asks only "whether the complaint includes factual allegations that state a plausible claim for relief." *Christoffersen*, 2026 U.S. Dist. LEXIS 50390, at *9 n.37 (quoting *BBL, Inc.*, 809 F.3d at 325). "In other words, courts may not dismiss only some of the claim's allegations if the claim otherwise survives." *FTC v. Nudge, LLC*, 430 F. Supp. 3d 1230, 1246 (D. Utah Dec. 31, 2019) (citation omitted).

Simply stated, courts do not prune factual or legal theories from an otherwise viable cause of action at the pleading stage. *Noel v. Experian Info. Sols., Inc.*, 2022 U.S. Dist. LEXIS 31944, at *8 n.24 (D. Utah Feb. 22, 2022) (holding it "is improper at this stage to parse out the different ways Plaintiff has alleged Discovery violated the FRCA," when the court determined that the plaintiff had adequately alleged at least one of the ways).[2] Under Rule 12(c) or 12(b)(6),

[2] *See also Christoffersen*, 2026 U.S. Dist. LEXIS 50390, at *9 (recommending denial of preemption argument as to negligence claim where "at least some portion" of the claim was not preempted); *Sexton*, 2020 U.S. Dist. LEXIS 221585, at *2–3; *M.S.*, 2020 U.S. Dist. LEXIS 61789, at *15–16 (D. Utah Apr. 7, 2020); *Nudge, LLC*, 430 F. Supp. 3d at 1246 (denying partial motion to dismiss that failed to "challenge[] the Division's claims in their entirety"); *Butler v. Salt Lake City Sch. Dist.*, 2020 U.S. Dist. LEXIS 103302, at *3–5 (D. Utah June 11, 2020)

a claim either states a plausible basis for relief, or it does not.[3] Permitting defendants to use Rule 12(c) to excise particular factual theories from a well-pleaded claim would transform the motion into a partial summary judgment without the procedural protections of Rule 56, including a complete factual record and the opportunity for discovery.

Here, SkyWest's Third Cause of Action alleges that Defendants violated the CFAA by intentionally accessing SWOL without authorization or exceeding authorized access and thereby obtaining information from a protected computer. Compl. ¶¶ 56–61. SkyWest's Fourth Cause of Action alleges that Defendants violated UCADRA by circumventing technological access barriers on SWOL to obtain restricted information. *Id.* ¶¶ 63–69. Defendants **do not** seek dismissal of either claim in its entirety. Instead, they ask the Court to eliminate specific theories and categories of evidence under each of those claims—including theories based on company policy, NDAs, organizing purpose, automation, volume, retention, and post-access use—while

---

(denying Rule 12(b)(6) motion that sought dismissal of "only certain portions of [Plaintiff's] claims").

For authorities outside the state of Utah, *see also United States v. Rocket Mortg., LLC*, 2025 U.S. Dist. LEXIS 279337, at *11–12 (D. Colo. Sept. 12, 2025) ("Nor would it be proper for the Court to parcel out and address the Plaintiff's individual theories at [the motion-to-dismiss] stage."); *FTC v. Facebook, Inc.*, 581 F. Supp. 3d 34, 60 (D.D.C. 2022) ("In sum, at the motion-to-dismiss stage, once a court determines that a claim states a viable basis for relief, it cannot further parse out whether other portions of the claim would suffice on their own.").*See also* 5B Wright & Miller's Federal Practice & Procedure § 1358 (4th ed. 2026) ("A Rule 12(b)(6) motion . . . may not be used to dismiss only part of a claim.")

[3] The partial dismissal of claims or defenses is reserved for summary judgment, which explicitly provides for "*Partial* Summary Judgment" and requires parties to "identif[y] each claim or defense—or the part of each claim or defense—on which summary judgment is sought." *Christoffersen*, 2026 U.S. Dist. LEXIS 50390, at *9 n.37 (quoting *BBL, Inc.*, 809 F.3d at 325); *Nudge, LLC*, 430 F. Supp. 3d at 1246 ("[I]f Defendants wish to challenge only parts of Plaintiffs' claims, such a challenge would be appropriate at summary judgment."). Defendants do not seek this relief here.

conceding the technical circumvention theory may survive. Dkt. No. 105 at 4–5, 18. Defendants also acknowledge that "Rule 12(c) is not the vehicle to resolve that technical dispute." *Id.* at 12. These concessions are dispositive. Because at least one factual theory supporting each count states a plausible claim for relief and because Defendants do not raise any challenge to SkyWest's technical circumvention theory in their Motion, both Count 3 and 4 must survive. *See Christoffersen*, 2026 U.S. Dist. LEXIS 50390, at *9.

Defendants' unsupported assertion that Rule 12(c) is a "vehicle to eliminate the invalid alternatives and define the remaining issue" is entirely contradicted by the above-cited authority. The Court need not, and should not, parse out alternative or supporting theories of liability at this stage. That is precisely the kind of "piecemeal judgment" that the above-cited cases and Rule 12 prohibit. Therefore, the Motion should be denied.

## II. SKYWEST HAS ADEQUATELY PLEADED ITS CFAA CLAIM (COUNT 3).

Even if the Court reaches the merits, Defendants' arguments fail. The CFAA imposes liability on anyone who "intentionally accesses a computer without authorization ***<u>or</u>*** exceeds authorized access, and thereby obtains . . . information from any protected computer." 18 U.S.C. § 1030(a)(2). These are each independent bases for liability, and the Complaint invokes both. Compl. ¶¶ 58–59. Because either prong supports a plausible claim, the Court need not determine at the pleading stage which prong ultimately applies or prevails.

### A. <u>Defendants Concede Count 3's Technical Circumvention Theory Survives</u>.

Again, Defendants' Motion concedes that SkyWest's technical circumvention theory—based on Defendants' use of developer tools and automated scripts to bypass SWOL's role-based access controls—"may survive." Dkt. No. 105 at 4–5. They further acknowledge that "the well-

pleaded technical allegation must be assessed in SkyWest's favor at this stage." *Id.* at 17. As Defendants offer no other serious challenge to SkyWest's CFAA claim on this basis, their concession should end the Court's inquiry as to Count 3.

As demonstrated in Section I, *supra*, Rule 12(c) does not authorize the Court to prune alternative factual theories from a claim that the movant concedes states a plausible basis for relief. Defendants' Motion as to Count 3 should therefore be denied on this basis alone.

**B. <u>The Complaint States a Plausible Claim Under Both CFAA Prongs</u>.**

Even setting the concession aside, SkyWest's CFAA claim is well-supported. Multiple courts in this District have held that circumventing technological access controls to obtain restricted data amounts to a viable claim under the CFAA. *See Vox Mktg. Grp. v. Prodigy Promos*, 556 F. Supp. 3d 1280, 1285–87 (D. Utah 2021); *Speed of Light Ops, LLC v. Elliot*, 2023 U.S. Dist. LEXIS 61876, at *9–10 (D. Utah Mar. 20, 2023), *report and recommendation adopted*, 2023 U.S. Dist. LEXIS 61880 (Apr. 6, 2023). SkyWest's allegations fall squarely within this authority.

*1. Defendants Accessed SkyWest's Information "Without Authorization."*

With respect to access "without authorization," the Complaint alleges that SWOL employs role- based access controls that limit the data available to each user based on the user's role and permissions. Compl. ¶¶ 14–15. Certain data fields—including the personal contact information at issue—were not displayed in Defendants' user-interface view because Defendants lacked the role-based permissions to access that data. *Id.* ¶¶ 15, 22. When Defendants used browser developer tools to remove the interface blocks, deployed TamperMonkey scripts to automate data extraction, and manipulated sequential URLs to navigate to restricted profile

pages, they accessed areas of the SWOL system to which they had **no** authorization whatsoever. *Id.* ¶¶ 22–28, 33–34.

As *Vox* held, circumventing technological access controls to obtain data that is not accessible through the user's authorized interface constitutes access "without authorization" under the CFAA. 556 F. Supp. 3d at 1282. There, the plaintiff maintained a website that stored confidential customer proposals and packing lists. *Id.* The website's homepage required a username and password to gain entry (which the defendant had), but a defect in the site's coding allowed users to bypass the login portal entirely by directly entering or manipulating the URLs for individual documents. *Id.* at 1282–83. The defendant's employees discovered this defect and exploited it extensively and used the pricing information it obtained to undercut Vox's bids to the same customers. *Id.*

The court denied summary judgment, holding that "a reasonable jury could find intentional circumvention of password protection and access without authorization." *Id.* at 1287. Critically, the court rejected the categorical proposition that "hacking a password is the only way that one can obtain access to a computer 'without authorization'" and found that there can be "other possible limitations on access." *Id.* at 1285. Drawing on trespass principles, the court analogized the case to someone who "learns that the locking mechanism of a physical door does not securely engage" and "knowingly goes through a door because of a defect in the lock"—such a person, the court reasoned, "is no more authorized to enter than someone who picks the lock." *Id.* at 1287. "Circumventing an electronic protective measure violates federal law." *Id.* at 1286.

This District reaffirmed *Vox Marketing* two years later in *Speed of Light Ops, LLC*. There, the plaintiff was a software company that licensed access to a platform containing

confidential customer proposals and pricing data. 2023 U.S. Dist. LEXIS 61876, at *2–3. The defendant had a valid license to access certain items on the platform but "exceeded that license by manipulating numbers to access other proposals and customer information" belonging to other licensees. *Id.* at *10–11. The court denied the motion to dismiss, holding that "although password protection is one example of a technological limitation on access, . . . there are other possible limitations on access" and that "[t]here is no requirement under the CFAA that hacking a password is the only way to obtain access without authorization." *Id.* at *10.

These cases are strikingly analogous to this case. In *Vox Marketing*, defendants exploited a defect in password protection to access confidential proposals by manipulating URLs. 556 F. Supp. 3d at 1282. In *Speed of Light*, the defendant had valid credentials to access a computer system but manipulated the system parameters to access other customers' confidential data. 2023 U.S. Dist. LEXIS 61876, at *2–3. Here, Defendants logged into SWOL with valid credentials—but SWOL's role-based interface controls did not render the restricted contact fields in Defendants' user view. Compl. ¶¶ 14–15, 22. Defendants then used browser developer tools to strip away the interface restrictions and deployed automated TamperMonkey scripts to systematically extract the hidden data at scale. *Id.* ¶¶ 22–28, 33–34. In all three cases, the defendants used technical means to obtain information that the system's access controls were designed to withhold from them—and in all three cases, the courts held (or should hold) that such conduct states a plausible CFAA claim.

*2. At a Minimum, Defendants Exceeded Their Authorized Access When They Accessed SkyWest's Information.*

SkyWest's allegations are equally sufficient under the "exceeds authorized access" prong. Under *Van Buren*, a person "exceeds authorized access" by "obtain[ing] information

located in particular areas of the computer—such as files, folders, or databases—that are off limits to him." 593 U.S. at 378. Here, Defendants had credentials to log into SWOL and view basic business-contact fields visible to their front-line pilot role. Compl. ¶¶ 14–15. But the restricted contact data—personal cell phone numbers and home addresses—was in a different "area" of SWOL's database to which their role-based permissions did not extend. *Id.* ¶¶ 14–15, 22, 58. By using developer tools and automated scripts to extract data from those off-limits fields, Defendants obtained "information in the computer that [they were] not entitled so to obtain." 18 U.S.C. § 1030(e)(6). That is the textbook "inside hacker" scenario that *Van Buren* identified. *See* 593 U.S. at 384, 391. Defendants themselves concede as much by acknowledging that "the well- pleaded technical allegation must be assessed in SkyWest's favor at this stage." Dkt. No. 105 at 17.

Whether analyzed as access "without authorization" or as conduct that "exceed[ed] authorized access," these allegations against Defendants state a plausible CFAA claim. *Vox Mktg. Grp.*, 556 F. Supp. 3d at 1285–87; *Speed of Light*, 2023 U.S. Dist. LEXIS 61876, at *9–10. Therefore, the Motion should be denied.

### C. ***Van Buren* Does Not Foreclose SkyWest's CFAA Claim.**

Defendants rely heavily on *Van Buren v. United States*, 593 U.S. 374 (2021), but that decision supports SkyWest, not Defendants. There, the defendant accessed a system he was authorized to use and obtained information that was freely available to him. *Id.* at 394–96. Here, Defendants bypassed the very access controls that *Van Buren* treats as the hallmark of unauthorized access.

In *Van Buren*, the Court adopted a "gates-up-or-down" inquiry: "one either can or cannot access a computer system, and one either can or cannot access certain areas within the system." *Id.* at 391–92. Here, the gates were *down*. SWOL's user interface did not display the data fields containing pilot contact information to Defendants. Compl. ¶¶ 14–15, 22. Defendants' standard user view displayed basic business-contact fields—like names, bases or locations, supervisors, and similar operational data. *Id.* ¶ 14. Personal cell phone numbers and home addresses were not rendered in Defendants' user interface. *Id.* ¶¶ 15, 22. The system affirmatively withheld this information from them, consistent with company policy restricting this information to managers and those with a business need to have it. *Id.* ¶¶ 15, 22, 72. Therefore, in order to obtain the data, Defendants deployed developer tools to remove the interface blocks, used automated scripts to extract the hidden data, and manipulated URLs to reach profile pages that were not linked from their authorized view. *Id.* ¶¶ 22–28, 33–34.

Defendants argue that because they had valid login credentials to SWOL, their access was necessarily "authorized." Dkt. No. 105 at 8–10. But *Van Buren* itself draws a distinction between having a valid credential to access a computer *system* and having authorization to access particular *areas within* that system. 593 U.S. at 391–92. As the Supreme Court explained, the CFAA's "exceeds authorized access" clause targets those who access a computer with authorization but then "obtain[] information located in particular areas of the computer—such as files, folders, or databases—that are off limits" to them. 593 U.S. at 396. There, no areas of the protected computer were off limits to the officer—he did not need to bypass any technical controls to access the license plate data. *Id.* Here, Defendants had authorization to access certain features and information in the SWOL directory. Compl. ¶ 14. But they did **not** have

authorization—in any sense—to access the hidden data fields that SWOL's interface was designed to withhold from them, and they used technical means to obtain that information. *Id.* ¶¶ 22–28.

Each of the cases relied upon by Defendants is materially distinguishable from the facts alleged here. For instance, Defendants rely on *Giles Construction, LLC v. Tooele Inventory Solutions, Inc.*, 2015 WL 3755863 (D. Utah 2015), for the proposition that the CFAA "addresses access, not later misuse." Dkt. No. 105, at 10. However, *Giles Construction* involved an employee who was entitled to access the information at issue and then misused it after the fact. *Id.* at *5–6. On summary judgment, "it was undisputed that [the employees] had authorization to access the information at issue." *Id.* That's not the case here. SkyWest does not allege merely post-access misuse of information. Rather, SkyWest alleges that Defendants were not authorized to access the specific restricted fields that they did and used technical means to defeat the controls preventing access. Compl. ¶¶ 14–16. *Giles* is inapposite.

Defendants similarly rely on *ACI Payments, Inc. v. Conservice, LLC*, 2022 WL 622214 (D. Utah 2022), but that case is likewise distinguishable. In *ACI Payments*, repeated cease-and-desist notices plausibly withdrew permission before the defendant's continued access, establishing a "without authorization" theory based on revocation. *Id.* at *9. But SkyWest's theory does not depend on revocation. It's based upon Defendants' circumvention of technical controls. Defendants were never given access to the information they obtained through improper means; therefore, there was no authorization to revoke.

### D. <u>Defendants' NDAs Are Relevant to the Court's Analysis</u>.

While Defendants' NDAs do not themselves create a technological access barrier, they

further demonstrate that Defendants' authorized access to SkyWest's Confidential Information was limited and they were aware of these limitations. Crucially, *Van Buren* did not foreclose the relevancy of such policies and agreements to liability under either prong of the CFAA. In footnote 8, the Court stated: "For present purposes, we need not address whether [the gates-up-or-down] inquiry turns only on technological (or 'code-based') limitations on access, or instead also looks to limits contained in contracts or policies." *Id.* at 394 n.8. By reserving this question, the Supreme Court recognized that technological limitations on access—such as the role-based interface controls at issue here—may well be supplemented by contractual or policy-based restrictions.

While this Motion does not require the Court to resolve that open question because SkyWest's claims rest on the circumvention of *technological* access controls, the premise of Defendants' Motion that policy or contractual policies are totally irrelevant to the inquiry is simply wrong. Indeed, post-*Van Buren* decisions, like *Vox*, have considered similar evidence of the defendant's knowledge that the information they accessed was intended to be confidential and inaccessible. *See Vox*, 556 F. Supp. 3d at 1286–87 ("The record also strongly supports an inference that Defendants knew these documents contained sensitive information that Vox did not intend to make generally available to the public."). Here, Defendants' NDAs confirm that SkyWest did not intend to make its private pilot information available to the public.

**E. <u>The Section 1030(a)(4) Fraud Claim Is Adequately Pleaded</u>.**

Defendants entirely mischaracterize the Complaint when they argue that SkyWest's CFAA fraud claim under 18 U.S.C. § 1030(a)(4) fails because "[t]he Complaint's sole allegation regarding the 'fraud' element is a single conclusory paragraph." Dkt. No. 105 at 14. Section

1030(a)(4) imposes liability on anyone who "(1) knowingly and with intent to defraud, (2) access[es] a protected computer (3) without authorization, or exceed[s] authorized access, and (4) by means of such conduct further[s] the intended fraud and obtain[s] anything of value." *United States v. Nosal*, 676 F.3d 854, 856 (9th Cir. 2012) (en banc) (quoting 18 U.S.C. § 1030(a)(4)). Defendants challenge only the "intent to defraud" and "obtaining anything of value" element; the remaining elements are not genuinely in dispute. Dkt. No. 105 at 14.[4] The Complaint satisfies both.

As a threshold matter, the majority of courts have held that the heightened pleading requirements of Rule 9(b) do not apply to § 1030(a)(4) claims because "defraud" in the CFAA context "simply means wrongdoing and does not require proof of common law fraud." *Hanger Prosthetics & Orthotics, Inc. v. Capstone Orthopedic, Inc.*, 556 F. Supp. 2d 1122, 1131 (E.D. Cal. 2008); *see also Dac v. Booking Holdings Inc.*, 636 F. Supp. 3d 490, 505–06 (D. Del. 2022) (collecting cases and observing that "[m]ost of the courts that have addressed the issue have held that the special pleading requirements of Rule 9(b) do not apply"); *Nat'l Elec. Attachment, Inc. v. Henry Schein One, LLC*, 2026 U.S. Dist. LEXIS 171558, at *75–76 (D. Md. July 31, 2026) (declining to apply Rule 9(b) because the statute "is more logically read as prohibiting 'wrongdoing' to obtain something of value and not . . . only acts that sound in common law fraud").

---

[4] Defendants' position is completely inconsistent. They ask this Court to "narrow" the Complaint's detailed factual allegations about the purpose and circumstances of their scheme, while simultaneously arguing that the Complaint fails to allege their intent and scheme with sufficient particularity. They cannot have it both ways.

Even if particularity were required, the Complaint satisfies that standard. Rule 9(b) requires a plaintiff to allege "the who, what, when, where, and how of the events at issue." *Dac*, 636 F. Supp. 3d at 505. In *Dac*, the court found this standard met where the complaint identified the defendants, described their misrepresentations, and explained how they circumvented access controls. *Id.* at 507. SkyWest's allegations are at least as specific—and in many respects more so—than those found acceptable in *Dac*. The Complaint identifies the *who* (Defendants Moussaron and Krithivas, Compl. ¶¶ 5–6), the *what* (circumventing SWOL's role-based access controls to extract the personal contact information of more than 5,000 pilots, *id.* ¶¶ 22–34), the *when* (from approximately August through December 2025, *id.* ¶¶ 22–33), the *where* (SkyWest's secure intranet portal, SWOL, *id.* ¶¶ 12–15), and the *how* (using browser developer tools to remove interface blocks, deploying TamperMonkey scripts to automate bulk data extraction, and manipulating sequential URLs to access restricted pilot profiles, *id.* ¶¶ 22–28, 33–34).

The Complaint also adequately alleges the "obtaining anything of value" element. The Tenth Circuit has held that "value is relative to one's needs and objectives." *Triad Consultants, Inc. v. Wiggins*, 249 F. App'x 38, 41 (10th Cir. 2007). Courts have recognized that this element "is rarely in dispute" in typical CFAA cases, and particularly those related to employment. *Volpe v. Abacus Software Sys. Corp.*, 2021 U.S. Dist. LEXIS 112641, at *13 (D.N.J. June 15, 2021). Notwithstanding, the Complaint alleges that Defendants obtained the personal contact information of more than 5,000 SkyWest pilots—including names, home addresses, and personal cell phone numbers—that was not otherwise accessible through the standard user interface. Compl. ¶¶ 22–34. Defendants then used this data to contact pilots about outside organizing efforts, transmitted it to third parties outside SkyWest, and sent mass text messages to a majority

of SkyWest pilots on their personal devices. *Id.* ¶¶ 29–32, 36; Dkt. No. 47, Countercl. ¶¶ 46–47. The value of this information is self-evident—Defendants engaged in a months-long undercover campaign to extract it precisely because it was critical to their objectives. The Complaint further alleges that SkyWest suffered concrete harm from the loss of control over its confidential data and disruption to its operations. Compl. ¶¶ 39–44, 60.

These allegations are more than sufficient to state a claim under § 1030(a)(4) at the pleading stage. The Motion should be denied.

## III. SKYWEST HAS ADEQUATELY PLEADED ITS UCADRA CLAIM (COUNT 4).

Defendants' challenge to SkyWest's UCADRA claim (Count 4) fares no better. Defendants devote barely two pages of their motion to SkyWest's UCADRA claim, merely dismissing it as suffering from "the same fatal defect" as SkyWest's CFAA claim. Dkt. 105 at 13. But the UCADRA is a distinct Utah statute with its own textual requirements, and Defendants' effort to import CFAA limitations into UCADRA's framework is unsupported by the statute's text.

### A. UCADRA Is a Distinct Statute with Independent Requirements.

UCADRA, codified at Utah Code Ann. § 63D-3-101 *et seq.*, governs specified conduct by an "unauthorized user" of a "protected computer." Utah Code Ann. § 63D-3-104(1). A person is an "unauthorized user" only if the person (1) is not an "authorized user" and (2) accesses a protected computer by either obtaining an authorized user's technological access barrier without that user's permission or circumventing, without the protected computer owner's permission, a technological access barrier on the protected computer. *Id.* § 63D-3-102(9). UCADRA defines a "technological access barrier" as "a password, security code, token, key fob, access device, or

other digital security measure." *Id.* § 63D-3-102(7). Importantly, UCADRA contains an express scope-of-permission provision that the CFAA lacks: "If a protected computer's owner gives an individual permission to access the protected computer, the permission is valid only to the extent or for the specific purpose the protected computer's owner authorizes." *Id.* § 63D-3-103(2).

These statutory definitions differ materially from the CFAA. Where *Van Buren* interpreted the CFAA's "exceeds authorized access" clause as a gates-up-or-down inquiry focused on whether information was "off limits" in a particular computer area, 593 U.S. at 389–96, UCADRA instead asks a two-part question: whether the person circumvented a technological access barrier, and whether the scope of the owner's permission extended to the access at issue. Utah Code Ann. §§ 63D-3-102(9), 63D-3-103(2). This textual framework—particularly the scope-of-permission provision in § 63D-3-103(2)—is the very theory that *Van Buren* rejected under the CFAA but that the Utah Legislature expressly codified. Defendants' effort to import federal CFAA limitations wholesale into UCADRA ignores this deliberate legislative choice.

Defendants' argument that UCADRA should be construed in lockstep with the CFAA is unsupported by the statute's text or any published Utah authority. Defendants themselves acknowledge that they have "identified no published Utah appellate decision or reported federal decision interpreting UCADRA." Dkt. No. 105 at 2. Because UCADRA's text differs materially from the CFAA's, there is no basis for importing federal limitations into the state statute.

**B. <u>The Complaint Satisfies UCADRA's Elements</u>.**

The Complaint adequately alleges that Defendants are "unauthorized users" who accessed SWOL through impermissible means. First, SWOL is a "protected computer" under UCADRA because it "requires a technological access barrier . . . "for an individual to access the

computer." Utah Code Ann. § 63D-3-102(6)(a). Namely, SWOL requires a unique employee ID, password, and multi-factor authentication before any user may access the system. Compl. ¶¶ 12–13. Each of these constitutes a "password, security code, token, key fob, access device, or other digital security measure" within the meaning of § 63D-3-102(7). SWOL also implements role-based permissions that determine what data each authenticated user can view, adding an additional layer of digital security beyond initial authentication. Compl. ¶¶ 14, 64.

Second, the Complaint alleges that Defendants circumvented SWOL's role-based technological access controls by deploying developer tools and automated scripts to extract restricted fields that the system's interface was designed to withhold from their user role. Compl. ¶¶ 14–15, 22–28, 33–34, 65. Those role-based controls—which determine what data fields a given user role can display or retrieve—qualify as "other digital security measure[s]" within the meaning of § 63D-3-102(7). They are code-based controls implemented in SWOL's software architecture that programmatically govern which data fields render for which user roles. Compl. ¶¶ 14–16. They are not merely company policies or contractual restrictions—they are digital security measures built into the system itself. *Id.* Defendants' circumvention of those controls satisfies the access-method requirement of § 63D-3-102(9)(b)(ii).

Third, UCADRA's scope-of-permission provision independently supports SkyWest's claim. More specifically, Section 63D-3-103(2) provides that "[i]f a protected computer's owner gives an individual permission to access the protected computer, the permission is valid only to the extent or for the specific purpose the protected computer's owner authorizes." SkyWest authorized its line pilots to use SWOL's standard user interface for ordinary employment-related purposes, such as viewing basic directory information including names, base or location,

supervisor, and similar operational data. Compl. ¶ 14. But SkyWest did not authorize line pilots to view restricted fields (personal cell phone numbers, home addresses, and other personal contact data) that SWOL's role-based permission withheld from their user interface. *Id.* ¶¶ 14–15. Nor did it authorize them to deploy scripting tools, developer utilities, or automated extraction programs. *Id.* ¶¶ 14–15, 22–34, 65; *see also* Ex. A, SkyWest_000029 (prohibiting unapproved software). Defendants' use of those tools to view information they were not authorized to view and to harvest those fields in bulk was therefore outside the scope of permission SkyWest granted them. *Id.* ¶¶ 14–15, 22–34. That conduct falls squarely within UCADRA's language. *See* Utah Code Ann. § 63D-3-103(2).

### C. <u>SkyWest's Policies Support Its Position that the Information Accessed by Defendants Is Not Publicly Available</u>.

While not determinative, SkyWest's NDAs and Code of Conduct are relevant to the analysis. UCADRA's scope-of-permission provision, § 63D-3-103(2), asks whether the owner's permission extended to the access at issue. Utah Code Ann. § 63D-3-103(2). SkyWest's NDAs and Code of Conduct are evidence of the scope of permission SkyWest, as the protected computer's owner, granted to Defendants. More specifically, the NDAs and Code of Conduct confirm that SkyWest never consented to Defendants' viewing of employee personal data, let alone the bulk extraction of that data.

The NDAs define "Confidential and Privileged Information" to include "employee data in the form of personnel records," and prohibit Defendants from disclosing that information. Dkt. No. 1-1, Ex. A. The Code of Conduct similarly limits access to personal information to "managers and others with a specific need," requires formal authorization for system access, and prohibits unapproved software. *See* Ex. A, SkyWest_000028–29.

Together, these provisions make clear that SkyWest never consented to Defendants' use of developer tools and automated scripts to extract data from SWOL.

**D. <u>The Intent-to-Cause-Harm Element Is Adequately Pleaded</u>.**

UCADRA's prohibition applies where an "unauthorized user of a protected computer" acts "knowingly and with intent to cause harm or damage." Utah Code Ann. § 63D-3-104(1). Defendants' argument conflates "intent to cause harm" with a subjective desire to destroy the computer system. *Id.* UCADRA prohibits obtaining "information from a protected computer" and causing "the transmission of a program, information, code, or command" to a protected computer when done "knowingly and with intent to cause harm or damage." *Id.* §§ 63D-3-104(1)(a), (b). These provisions are naturally read to encompass the knowing extraction of restricted information that foreseeably causes harm to the computer owner. The statute does not require proof of a specific subjective desire to damage the computer system. It requires that the unauthorized user act knowingly and with intent to cause harm—a standard satisfied where the user deliberately circumvents access controls to obtain restricted information and then disseminates it to third parties. *Id.* That is precisely what SkyWest alleges.

The Complaint more than adequately alleges the requisite intent. SkyWest alleges that Defendants intentionally and knowingly accessed SWOL without authorization for the purpose of obtaining the personal contact information of SkyWest pilots—information that constitutes valuable and confidential data. Compl. ¶¶ 63–69. The Complaint further alleges that Defendants used this information to send mass text messages to SkyWest pilots and provided it to persons outside SkyWest. *Id.* ¶¶ 29–32. The Complaint also alleges that SkyWest suffered damage and

loss as a result, including the costs of investigating the breach, conducting a damage assessment, and implementing additional security measures. *Id.* ¶¶ 40–44.

At the motion-to-dismiss stage, these allegations are sufficient. *See Iqbal*, 556 U.S. at 678. The Complaint need not prove that Defendants harbored a specific subjective desire to damage SkyWest's computer systems. Utah Code Ann. § 63D-3-104(1). It need only allege facts from which the Court can reasonably infer that Defendants intentionally engaged in unauthorized access for one of the prohibited purposes enumerated in UCADRA. As the Complaint plainly satisfies this standard, the Motion should be denied.

## IV. SKYWEST IS NOT TARGETING ORGANIZING ACTIVITY.

Defendants devote a section of their motion to the Railway Labor Act ("RLA"), arguing that SkyWest cannot use the CFAA or UCADRA to make a "protected organizing purpose" into the statutory access element. Dkt. 105 at 8–9. This argument is a straw man. SkyWest's Complaint does not target organizing activity—it does not even mention organizing activity.[5] As clearly demonstrated in the Complaint, SkyWest targets the method by which Defendants obtained data, including their circumvention of SWOL's technical access controls, and Defendants' ultimate misuse of the data they had improperly obtained. Importantly, Defendants concede that the RLA does not authorize hacking or circumvention. Dkt. 105 at 9. At bottom, the CFAA and UCADRA claims are based on Defendants' circumvention of technical controls and violations of company policy and their NDAs, which was motivated and done in contravention of SkyWest's legitimate business interests. The RLA is therefore irrelevant.

---

[5] Even if it did, "narrowing" the claims in the Complaint because they simply reference Defendants' organizing activity is not permissible. *See* Section I *supra*.

## V. IN THE ALTERNATIVE, SKYWEST SHOULD BE GRANTED LEAVE TO AMEND.

Should the Court find any deficiency in the Complaint's allegations—and SkyWest submits there is none—SkyWest respectfully requests leave to amend under Federal Rule of Civil Procedure 15(a)(2). Under Rule 15, "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave to amend should be granted unless the amendment would be futile, unduly prejudicial, or sought in bad faith. *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993).

None of the factors warranting denial of leave to amend is present here. This case is in its early stages—the Complaint was filed in January 2026 and the parties are still engaging in document discovery. Krithivas only recently amended his pleading to add a counterclaim. *See* Dkt. No. 114, Countercl., filed August 20, 2026. No depositions have been taken, and no trial date has been set. There has been no prior opportunity to amend the Complaint in response to Defendants' arguments about the scope of the CFAA or UCADRA. Defendants would not be prejudiced by an amendment, as the fundamental factual allegations and legal theories would remain the same.

An amendment would not be futile. SkyWest can amend to allege with greater specificity the technical architecture and access controls, Defendants' knowledge that the data t was restricted, and, the harm and loss SkyWest has incurred due to Defendants' actions.

This would be SkyWest's first amendment. Given the case's emerging computer-access issues and developing discovery record, denial would be particularly inappropriate. Defendants would suffer no prejudice, and the fundamental allegations and theories would remain the same. Under the liberal amendment standard, leave should be granted. *See* Fed. R. Civ. P. 15(a)(2);

*Minter v. Prime Equip. Grp., Inc.*, 451 F.3d 1196, 1204 (10th Cir. 2006) ("[T]he purpose of [Rule 15] is to provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties."). SkyWest nevertheless maintains that its pleading is sufficient and that these factual issues are better resolved after discovery.

## **CONCLUSION**

For the foregoing reasons, SkyWest respectfully requests that the Court deny Defendants' Motion (Dkt. 105).

Dated this 25th day of September, 2026.

HOLLAND & HART LLP

*/s/ Tyson C. Horrocks*
Gregory M. Saylin
Tyson C. Horrocks
Zachary T. Burford

*Attorneys for Plaintiff and Counterclaim Defendant SkyWest Airlines, Inc. and Counterclaim Defendant Dale Hansen*

## **CERTIFICATION OF WORD COUNT**

Pursuant to DUCivR 7-1(a)(6)(C), I, Zachary T. Burford, certify that this Response to Defendants' Joint Motion for Partial Judgment on the Pleadings under Rule 12(c) contains 7,738 words and complies with DUCivR 7-1(a)(4).

*/s/ Zachary T. Burford*

39596247