Jonathan K. Thorne (Utah Bar No. 12694)
Lauren I. Scholnick (Utah Bar No. 7776)
Jack Holland (*pro hac vice*)
**SCHOLNICK THORNE HOLLAND**
40 South 600 East
Salt Lake City, Utah 84102
Telephone: (801) 359-4169
Facsimile: (801) 359-4313
Email: jonathan@utahjobjustice.com
lauren@utahjobjustice.com
jack@laborwest.com

*Attorneys for Defendant and Counterclaim Plaintiff Daniel Moussaron*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF UTAH SOUTHERN DIVISION**

| | |
|---|---|
| SKYWEST AIRLINES, INC.,<br><br>Plaintiff and Counterclaim Defendant<br><br>and DALE HANSEN,<br><br>Additional Counterclaim Defendant,<br><br>vs.<br><br>DANIEL MOUSSARON, and VIKAAS KRITHIVAS,<br><br>Defendants and Counterclaim Plaintiffs | **DEFENDANT AND COUNTERCLAIM PLAINTIFF MOUSSARON'S OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS AS TO COUNTS II AND III OF MOUSSARON'S COUNTERCLAIM**<br><br>Civil No. 4:26-cv-00015-DN-PK<br><br>Senior District Judge David Nuffer<br>Magistrate Judge Paul Kohler |

Defendant and Counterclaim Plaintiff Daniel Moussaron ("Moussaron"), by and through his undersigned counsel, provides this brief in Opposition to Plaintiff and Counterclaim Defendant SkyWest Airlines, Inc.'s ("SkyWest") Motion for Judgment on the Pleadings under Federal Rules of Civil Procedure 12(c), Dkt. 122 ("Motion").

## INTRODUCTION

SkyWest opens its Motion by declaring that "[t]his case is about data theft." (Motion at 1.) But that framing is the whole problem. Whether Moussaron's admitted, credentialed access to a company directory he was authorized to use amounts to "theft," or instead to the lawful use of access levels SkyWest itself set, is the central factual dispute in this litigation. In its Motion, SkyWest asks the Court to resolve that dispute against Moussaron on the pleadings, before discovery has uncovered a single fact. However, Rule 12(c) does not permit this.

First, Moussaron sues for defamation based upon a specific, verifiable factual accusation that SkyWest's Chief Executive Officer ("CEO") told SkyWest's pilot workforce that "two now-former" pilots "gained unauthorized access to and downloaded pilot contact information that was not accessible to line pilots or any employee through normal processes, even after completing multi-factor SkyWest Online login," and that they were "unethically and unlawfully stealing" that information. (Motion Ex. A.) However, Moussaron alleges that SkyWest knew, at the time, that his access was authorized by its own servers and only changed pilot access belatedly, but published the accusation anyway, knowing it was false. (Moussaron Answer and Counterclaim, Dkt. 47, ("Answer" or "Counterclaim"); Counterclaim ¶¶ 85–88, 92.) Those allegations state a defamation claim. The questions of whether: 1) the accusation of "theft" is true; 2) it is a factual assertion or protected opinion; and 3) SkyWest abused its conditional privilege by publishing a statement it knew to be false cannot be resolved as a matter of law at this point in the litigation.

SkyWest's attack on Moussaron's claim for interference with economic relations also survives based on the pleadings. The Counterclaim alleges that SkyWest retaliated against a union organizer by terminating him, reporting his separation to the federal Pilot Records Database ("PRD") and publicly calling him a thief, conduct that has impaired his ability to work

again as a commercial pilot. SkyWest's own controlling authority establishes that defamation supplies the "improper means." Even if it does not, SkyWest's termination in violation of the Railway Labor Act ("RLA") does. And SkyWest's preemption defense fails based on the plain meaning of the operative statute.

## RELEVANT ALLEGATIONS

Beginning in April 2025, Moussaron was on the organizing committee working with the Air Line Pilots Association ("ALPA") to form a pilots' union at SkyWest. (Counterclaim ¶¶ 7–10.) SkyWest maintained an employee directory, SkyWest Online ("SWOL"), that stored each employee's name, phone number, and home address, and provided to all employees, including Moussaron, an active account on, and credentials to, SWOL. (Id. ¶¶ 24–26.) In 2025, SWOL "did not limit the data that pilots could view," that "[a]ll this data (including phone numbers and addresses) was available to every employee," and that when Moussaron "requested the employee details from SkyWest's server, the server returned employee details such as cell phone numbers and addresses" "using the access levels set by SkyWest." (Id. ¶¶ 27–32, 41–43.) Only on January 12, 2026, after the access at issue here, did SkyWest change its servers to stop returning that data to pilots. (Id. ¶¶ 33, 52, 85). Moussaron admits that although he accessed SWOL and viewed and saved pilot contact information (Answer ¶¶ 22–27), his access was "based on SkyWest's authorization" (Id. ¶¶ 12, 22, 23, 25).

On January 26, 2026, SkyWest terminated Moussaron, and that same evening its CEO, Russell "Chip" Childs, published a message to all SkyWest's pilots (the "January 26 Communication"). (Counterclaim ¶¶ 55–56, 82.) The January 26 Communication stated that "two now-former" pilots had "gained unauthorized access to and downloaded pilot contact information that was not accessible to line pilots or any employee through normal processes,

even after completing multi-factor SkyWest Online login," that the information "took extensive effort and manipulation to retrieve," and that the pilots had gone "as far as unethically and unlawfully stealing your information." (Motion Ex. A.) Closing, "We will not tolerate theft of any kind." (Id.) Four days later, SkyWest filed this public lawsuit, which news outlets reported, unequivocally identifying Moussaron as one of the former pilots the January 26 Communication described. (Counterclaim ¶ 84.)

When SkyWest published the January 26 Communication, it knew that Moussaron's "access was authorized by its own servers" and that Moussaron had not stolen or otherwise gained unauthorized access to SWOL. Thus, SkyWest's January 26 Communication "was false," yet it published it with "malice or reckless disregard for the truth," damaging Moussaron's reputation and leaving him "unlikely to obtain another pilot position." (Id. ¶¶ 86–93). SkyWest also reported Moussaron's separation to the FAA's Pilot Records Database as part of a pattern of retaliation for his union organizing that "interfered with his economic relations," by intending to "stop him from being hired by another airline." (*Id.* ¶¶ 65–67, 97–101).

**LEGAL STANDARD**

A Rule 12(c) motion is evaluated under the same standard as a Rule 12(b)(6) motion. *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000). The Court accepts the non-movant's well-pleaded factual allegations as true and draws all reasonable inferences in his favor; the claim survives if it contains "enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility "is not akin to a 'probability requirement'" but asks only for enough to draw a reasonable inference of liability. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

A Rule 12(c) motion tests the sufficiency of the pleadings but does not consider evidence beyond those pleadings, attempt to resolve disputed facts, weigh competing inferences, or decide the merits. Where a claim turns on contested factual questions of falsity, malice, abuse of privilege, causation, those questions are for the factfinder, not for resolution on the pleadings. In its Motion, SkyWest asks the Court to decide precisely such questions in its favor.

## ARGUMENT

### I. BASED ON MOUSSARON'S COUNTERCLAIM ALLEGATIONS, HIS DEFAMATION CLAIM IS SUFFICIENT TO MOVE TO DISCOVERY.

SkyWest asserts Moussaron's defamation claim fails, because the January 26 Communication is not defamatory, because it is: 1) opinion, not fact; 2) substantially true; and 3) protected because it was a communication to its employees. (Motion at 8.) Additionally, SkyWest asserts that Moussaron's Counterclaim fails because its allegations of fault, causation, and damage are conclusory. (Id.) However, an examination of the January 26 Communication in light of the well-pled allegations is adequate to allow the claim to proceed. Additionally, SkyWest's assertion of privilege would greatly expand beyond current Utah precedent. Finally, Moussaron filed his Counterclaim right after his termination and, thus, is entitled to support his allegations of damages through the discovery process.

#### A. Because the January 26 Communication is Verifiable, It is Actionable as a Factual Accusation.

To SkyWest's first argument that the January 26 Communication is a statement of opinion, Utah precedent helpfully explains that a fact is a statement that is "objectively verifiable as either true or false." *Shanley v. Hutchings*, 716 F. Supp. 3d 1179, 1193 (D. Utah 2024). SkyWest characterizes Childs' statements in the January 26 Communication as "quintessential opinions." (Motion at 9.) But this is too broad. While the January 26 Communication may

contain some opinions, it does not only opine that Moussaron behaved badly, it asserts specific, objectively verifiable facts that: 1) the two pilots "gained unauthorized access to" pilot contact information that the pilots "should never have been able to access"; 2) SkyWest "invest[s] millions of dollars in extensive firewalls to prevent attackers from the outside;" and 3) the pilots went "as far as unethically and unlawfully stealing your information." (Motion Ex. A.) Whether Moussaron's access was "authorized" or "unauthorized" is a question answered by SkyWest's own access settings, which the Counterclaim alleges permitted it. (Counterclaim ¶¶ 27–32, 86–87.) Whether he defeated a security control, like the firewall, which "should never have been able" to get through, is also a fact that he disputes. He alleges the tools he used "do not create any additional access, defeat authentication, or retrieve any additional, unauthorized data." (Id. ¶¶ 37–39.) And whether he committed "theft" is a question of law and fact that a jury can answer. None of these is a matter of the "speaker's own values and reaction." (Motion at 10.) They are facts, "capable of being objectively verified as either true or false." *Shanley*, 716 F. Supp. 3d at 1193. SkyWest's own Introduction concedes the point by describing the January 26 Communication as "a truthful description of Defendants' actions." (Motion at 1). Because that can be verified as either true or false it is fact, not opinion. As SkyWest published the January 26 Communication through its internal messaging system, SWOL, its intended audience was not the public at-large but rather SkyWest's workforce, who was predisposed to believe their chief executive's account and "[would] reasonably expect [him] to have inside information they could rely on as truth." *RainFocus Inc. v. Cvent Inc.*, 2023 UT App 32, ¶ 29, 528 P.3d 1121.

That threshold determination, whether a statement is "capable of sustaining a defamatory meaning," is a question of law that may be posed to the trier of fact "[o]nly if a court first determines that a publication might be considered defamatory by a reasonable person." *Hogan v.*

*Winder*, 762 F.3d 1096, 1106 (10th Cir. 2014) (cleaned up). A statement that impeaches a person's "honesty, integrity, virtue, or reputation and thereby exposes the individual to public hatred, contempt, or ridicule" is defamatory. *Id.* at 1105–06 (quoting *West v. Thomson Newspapers*, 872 P.2d 999, 1008 (Utah 1994)). "In the common law, defamatory categories included statements imputing to the plaintiff (1) 'a serious crime involving moral turpitude or a felony'; (2) a character trait showing unfitness for one's 'business, trade, or profession'; (3) acts or views contrary to a 'deeply held moral standard of the community'; and (4) physical or other traits that would cause others to shun the plaintiff." *Id.* at 1106 (citation omitted). Here, SkyWest accused Moussaron of committing a serious crime of moral turpitude when it accused him of stealing SkyWest employee contact information. Thus, SkyWest's statement clears the threshold.

SkyWest's cited authorities prove the point by contrast. In *Hogan*, the statement that a contractor was non-renewed for "performance issues" was not actionable, because of both the context and that the statement was too vague. *Id.* at 1107. Specifically, the court wrote, "no reasonable reader would take the statement that Hogan was fired for 'performance issues' at face value because the context makes clear that the reason for Hogan's termination is the subject of an ongoing, obviously nasty, employment dispute. And the characterization, moreover, is simply too nonspecific to sustain a defamatory meaning." *Id.*

The context and specificity of January 26 Communication distinguish this case from the statement in *Hogan.* SkyWest's words are actionable, because it wrote an internal memo to pilots where it provided its side only. The pilots were not provided the statement in the context of an ongoing "employment dispute" between SkyWest and Moussaron; there was not one at the time. Thus, the pilots had only SkyWest's specific statement about the Defendant pilots gaining "unauthorized access," "not accessible … even after completing multi-factor … login," and only

through "extensive effort and manipulation to retrieve" the confidential information. (Motion Ex. A.) The way Moussaron accessed SWOL is verifiable and Moussaron, through discovery, can show that the January 26 Communication about his action being illegal is false. (*See* Counterclaim ¶¶ 86–88.) *Hogan* also involved third-party news articles reporting on a public dispute. Here the accuser was the employer itself, speaking to its own workforce through its own intranet, the setting in which readers "might reasonably expect [the CEO] to have inside information they could rely on as truth." *RainFocus*, 2023 UT App 32, ¶ 29.

Additionally, Utah's appellate court rejected the argument SkyWest asserts of non-actionable opinion in *RainFocus,* 2023 UT App 32, ¶¶ 24–40. There, the appeals court reversed a Rule 12(b)(6) dismissal, holding that a company's statements accusing a competitor of "[stealing] its source code" and "misappropriat[ing] its trade secrets" were "actionable statements of fact rather than nonactionable opinion." *Id.* ¶¶ 24–40. The defamatory statements "state[d] the factual basis for [an] opinion," so that the speaker "states facts … and asks [the reader] to read into them an opinion . . . not the other way around." *Id.* ¶¶ 25–26. Importantly, they were made by the company's CEO and "[did] not employ hyperbole or exaggeration but rather came across as serious allegations of fact," which "cuts against a finding of opinion." *Id*. ¶¶ 31, 40.

Here, the January 26 Communication is akin to the defamatory statements in *RainFocus.* It recited a factual basis for the communication ("unauthorized access," "not accessible … even after completing multi-factor … login"); was issued by SkyWest's CEO; and was delivered in serious, not exaggerated, terms, closing "[w]e will not tolerate theft of any kind." (Motion Ex. A.) Therefore, under *RainFocus*, it is not opinion. *Id.*; *accord SME Steel Contractors, Inc. v. Seismic Bracing Co.*, 681 F. Supp. 3d 1181, 1224–26 (D. Utah 2023) (applying *RainFocus* to

hold that statements that a competitor lacked "expertise" and "quality control measures" were factual, not opinion, despite being hedged "upon information and belief").

**B. Moussaron's Response to SkyWest's Complaint Disputes the Truth of the January 26 Communication.**

SkyWest next argues the January 26 Communication is "true" because Moussaron "admits to the conduct." (Motion at 12–13.) That argument misreads his Answer and asks the Court to decide falsity, an essential, contested element of the claim, as a matter of law.

Notably, Utah courts presume falsity, "and truth is an affirmative defense that the defendant bears the burden of proving." *Shanley*, 716 F. Supp. 3d at 1193 (quoting *Pipkin v. Acumen*, 2020 UT App 111, ¶ 16 n. 10, 472 P.3d 315). "[S]ubstantial truth may be determined as a matter of law" only "[w]hen the underlying facts as to the gist or sting are undisputed." *Hogan*, 762 F.3d at 1106 (citation omitted) (internal quotation marks omitted). The Utah Court of Appeals confirmed the importance of defamation claims proceeding to discovery, when on an appeal of a motion to dismiss, it wrote that the court "must accept [the plaintiff's] assertion that the underlying allegations are false," in holding that the defendant's "defense of truth fails as a matter of law." *RainFocus*, 2023 UT App 32, ¶ 21.

Here, as with a 12(b)(6) motion, SkyWest seeks to dismiss the case pre-discovery when the gist and sting are hotly disputed. In the January 26 Communication, SkyWest's gist and sting is that it accuses Moussaron of accessing SWOL without authorization and equates that to stealing. While Moussaron admits that he accessed SWOL and saved contact information, he explained he only did it "based on SkyWest's authorization" (Answer ¶¶ 12, 22–27.) He further alleges that SWOL "did not limit the data that pilots could view," that the server "returned employee details such as cell phone numbers and addresses" "using the access levels set by SkyWest," and that SkyWest restricted those access levels only after the fact. (Counterclaim ¶¶

27–33, 41–43, 52, 85.) Thus, contrary to SkyWest's assertions, Moussaron has denied that his access was "unauthorized."[1]

Further, the issue of whether the January 26 Communication's accusations of unauthorized access and theft are "true in substance" is a question the court cannot decide against the non-movant on a Rule 12(c) motion. Whether a pilot who uses his own valid credentials to retrieve data the company's own server delivers to him has engaged in "unauthorized" access, let alone "theft," is a contested question of fact and law reserved for summary judgment. Whether the system permitted access is the crucial question of the lawfulness of Moussaron's access, not his motive or later use, and this very question is already before this Court. (Defendants' Joint Motion for Partial Judgment on the Pleadings 2, 5, Dkt. No. 105.)

SkyWest's substantial-truth argument also depends on quietly narrowing what Childs said. The Counterclaim acknowledges that phone numbers and addresses "did not populate in the user interface" and were returned by SkyWest's server through standard browser tools. (Counterclaim ¶¶ 36–38.) If that were all the January 26 Communication said, SkyWest might have an argument. Instead, SkyWest told every pilot that the two men "gained unauthorized access" to information that they "should never have been able to access," that SkyWest spends "millions of dollars in extensive firewalls to prevent attackers," and that the culprits were "unlawfully stealing your information." (Motion Ex. A.) The Counterclaim denies each of those assertions. (Counterclaim ¶¶ 37–39, 86–88.) The "gist" and "sting" of the publication is that

[1] Importantly, SkyWest's Motion's description of the conduct, that Moussaron used his credentials and browser developer tools to view data the server returned to him, is closer to what happened than the CEO's description in the January 26 Communication made, that the access was "unauthorized" and criminal. (*Contrast* Motion at 4 *with* Ex. A.)

Moussaron hacked a secured system and stole from his colleagues. Because the gist is disputed, it cannot be resolved on the pleadings.

Even if the Court could determine the "truth in substance" on this early motion, it is crucial to note that SkyWest misstates Moussaron's allegations. First, it asserts that Moussaron "used browser developer tools to remove the blocks SkyWest had in place." (Motion at 4.) But he pleads the opposite that SWOL "did not limit the data that pilots could view," the server "readily provided that information," developer tools "do not create any additional access, defeat authentication, or retrieve any additional, unauthorized data," and SkyWest "could have limited access to that data" but "did not." (Counterclaim ¶¶ 24-30, 37-39, 42.) Moussaron did not remove any blocks, because there were none. Second, contrary to SkyWest's assertion, Moussaron did not admit that he acted "for non-SkyWest business purposes" (Answer ¶ 36). Instead, he admits only that he provided the information to an ALPA representative "for the purpose of union organizing" and helped send "one mass text message" to gauge pilots' interest in representation, activity protected by the Railway Labor Act. (Answer ¶ 36.) Third, in softening the January 26 Communication, SkyWest deletes every accusatory term it published ("unauthorized," "unlawfully," "stealing," "theft"), claiming it only accused Moussaron of "manipulation of the directory." (Motion at 13.) Of course, Moussaron squarely refutes even this reframing. (Counterclaim ¶¶ 37–40.)

Thus, at this point, the Court reads the defamatory January 26 Communication as a whole, not by a carefully selected and redacted paraphrase of the publication; contested gist is a fact question. *Hogan*, 762 F.3d at 1106. A movant obliged to accept the non-movant's pleading cannot rewrite it to support their own narrative.

**C. Conditional Privilege Cannot Be Resolved on These Pleadings.**

SkyWest invokes Utah's common-interest privilege,[2] claiming protection from defamation when it sent the January 26 Communication to its entire pilot workforce. (Motion at 14–16.) While such a privilege exists, it may be defeated if the plaintiff can show that defendant "made a defamatory statement knowing it to be false or acted in reckless disregard as to its falsity," or where "the publication of the defamatory material extended beyond those who had a legally justified reason for receiving it." *Brehany v. Nordstrom, Inc.*, 812 P.2d 49, 58 (Utah 1991). Moussaron's allegations, if proven true, defeat the conditional privilege. He alleges SkyWest: 1) "knew that Mr. Moussaron's access was authorized by its own servers," 2) published the January 26 Communication knowing "it was false," and 3) "acted with malice or reckless disregard for the truth." (Counterclaim ¶¶ 87–88, 92.)

A court may only decide a conditional privilege on the pleadings when the pleadings supply everything needed to resolve it. *See Mathews v. McCown*, 2025 UT 34, ¶ 143, 575 P.3d 1114. Reckless disregard turns on "a subjective inquiry as to the defendant's belief and an objective inquiry as [to] the inherent improbability of or obvious doubt created by the facts." *Ferguson v. Williams & Hunt, Inc.*, 2009 UT 49, ¶ 30, 221 P.3d 205. The Utah Supreme Court held that determining whether a communication is conditionally privileged "is a question of law . . . unless a genuine factual issue exists regarding whether the scope of the qualified privilege has been transcended or the defendant acted with malice." *Brehany*, 812 P.2d at 58.

---

[2] SkyWest also notes it is entitled to judicial-proceeding privilege but that is misguided. (Motion n.4) Moussaron's defamation claim is based only on the January 26 Communication, not SkyWest's Complaint. He references the later-filed lawsuit and news coverage only to show that he became identifiable as one of the "former pilots" in the January 26 Communication. (Counterclaim ¶ 84.) Additionally, while absolute privilege for pleadings reaches only statements "made during or in the course of a judicial proceeding," the January 26 Communication predates this lawsuit by four days. (Id. ¶¶ 82, 84.)

Here, the pleadings provide a clear factual dispute that should be allowed to go to discovery about whether SkyWest acted with the required malice. Did SkyWest know the statement was false or, at least, act with disregard for the truth? SkyWest allegedly knew the 2025 authorization levels permitted Defendants' access and quietly reconfigured its servers to change that access, then, two weeks later, told its pilots the access had been "unauthorized" and criminal. (Counterclaim ¶¶ 85–88.) A factfinder could readily infer that SkyWest published with knowledge of, or reckless disregard for, the statement's falsity. In a similar posture, the Utah Supreme Court denied summary judgment when there was a fact dispute over whether the statement publisher "reasonably believed" its statement. *Wayment v. Clear Channel Broad., Inc.*, 2005 UT 25, ¶¶ 53–54, 116 P.3d 271. If such a dispute forecloses summary judgment, it necessarily forecloses judgment on the pleadings.

There is an additional factual question raised by the pleadings about whether SkyWest's motive served a common interest between the company and its pilots. Moussaron alleges that the January 26 Communication was part of a union anti-organizing campaign that also included a prior "SPAM TEXT NOTICE," discouraging pilots from responding to the ALPA poll. (Counterclaim ¶¶ 48–49.) The January 26 Communication reveals SkyWest motive when it describes the two pilots' actions as "an appalling reminder of the lengths to which certain organizations and interests will go to gain access to our people" and directs pilots "who have been contacted by an unauthorized person or organization" to report that contact through a portal SkyWest created for the purpose. (Motion Ex. A; Counterclaim ¶¶ 60–62.) Because SkyWest's interest in stopping a workplace union is divergent with, not common to, its employees, the privilege would not apply. Therefore, at a minimum, SkyWest's motive in publishing the January 26 Communication to its pilots is a disputed question unfit for resolution on the pleadings.

Finally, questions of fact preclude a determination about whether SkyWest's publication to "all its pilots," including to thousands whose data was never even used, was too excessive to qualify for the privilege. (Counterclaim ¶¶ 45, 82.) Whether every pilot in SkyWest's workforce had a "legally justified reason" to receive an accusation that identified colleagues committed "theft" is a fact question. *See Brehany*, 812 P.2d at 58; *see also Ferguson*, 2009 UT 49, ¶ 21. Because of lingering fact questions, the Court cannot determine the application of common-interest privilege based solely on the pleadings.

## II. COUNT II IS NOT CONCLUSORY.

SkyWest's final attack on Moussaron's defamation claim is that the Counterclaim is deficient, because it alleges no facts to support that the January 26 Communication damaged his reputation, impaired his employment prospects, or was made with malice or reckless disregard. (Motion at 16.) But this ignores the specific allegations pled and, again, asks the Court to draw inferences against Moussaron.

In Section I(C), above, Moussaron fully discusses the allegations that would allow a fact-finder to conclude that SkyWest publication of the January 26 Communication was malicious or disregarded the truth. As a short summary, he pleads the operative facts that SkyWest knew that its own access levels authorized the access, changed its server settings after the fact, and, knowing all of that, published a statement that could be read to mean that Moussaron hacked its system and stole its data. This is adequate at this stage of litigation under the *Twombly/Iqbal* standard. *See Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678; *see also Ferguson*, 2009 UT 49, ¶ 30.

As to whether he has adequately provided sufficient allegations to support damage, Moussaron counters that it is not necessary as his claim is of defamation per se and, if not, his

assertion of damages are specific enough. Accusing a person of having committed a crime is defamatory per se, for which damages are presumed and "the plaintiff need not allege damages to sustain their claim." *Mackey v. Krause*, 2025 UT 37, ¶ 76 n.9, 575 P.3d 1162. Utah recognizes four categories of statements actionable per se, the first of which is an allegation of criminal conduct and the fourth is "conduct which is incongruous with the exercise of a lawful business, trade, profession, or office." *Jacob v. Bezzant*, 2009 UT 37, ¶ 26, 212 P.3d 535 (quoting *Larson v. Sysco Corp*., 767 P.2d 557, 560 (Utah 1989)).

Here, the January 26 Communication accused Moussaron of "theft" and of "unlawfully stealing" information. It accuses him of a crime and further claims that he is an untrustworthy pilot. Thus, the statement is squarely within recognized categories of defamation per se. Even if the statement is not defamatory per se, Moussaron specifically alleged that the accusation in the January 26 Communication left him "unlikely to obtain another pilot position." (Counterclaim ¶¶ 90, 93.) Therefore, his claim is pled adequately to survive early dismissal.

## III. COUNT III STATES A PLAUSIBLE CLAIM FOR INTENTIONAL INTERFERENCE WITH ECONOMIC RELATIONS.

In addition to challenging Moussaron's defamation, SkyWest also challenges his intertwined claim for interference with economic relations by asserting that he does not properly allege: 1) any existing or prospective relationship subject to the interference; 2) improper means when looking at the January 26 Communication, Moussaron's termination, or the Pilot Records Database ("PRD") issues; and 3) adequate facts establishing injury. (Motion at 18–23.) But none of SkyWest's arguments against this claim support judgment on the pleadings.

### A. The Counterclaim Sufficiently Identifies a Prospective Economic Relationship.

SkyWest argues the Counterclaim fails to identify any existing or prospective relationship, because it does not name a specific airline that reviewed the PRD report or

withdrew an offer. (Motion at 18–20.) But Utah law only requires a plaintiff at the pleading stage "to allege facts showing either an existing contract or business relationship with a third party, or a potential contract or business opportunity with a third party *or identifiable class of persons*." *Purco Fleet Servs. v. Towers*, 38 F. Supp. 2d 1320, 1325–26 (D. Utah 1999) (emphasis added) (citation omitted).

Here, Moussaron has asserted that SkyWest has interfered with a prospective "identifiable class" of businesses. As Moussaron is a commercial airline pilot, his prospective economic relationships are with the air carriers that hire commercial pilots. That class is not the amorphous "current and potential customers" held insufficient in *Purco Fleet,* 38 F. Supp. 2d at 1325. Instead, it is a defined, finite universe of employers. Further, it is a set of employers that relies solely on the Pilot Records Database ("PRD") that it must review for each pilot it intends to hire.[3] The Counterclaim alleges that SkyWest's firing and the resulting PRD report "interfered with [Moussaron's] economic relations," that the report "will negatively impact his ability to get a new pilot job," and that SkyWest "intended . . . to . . . stop him from being hired by another airline." (Counterclaim ¶¶ 97–98, 101.) This identifies both the prospective relationships, PRD-consulting air carriers, and the interference with more specificity than Utah's pleading standard requires.

SkyWest's own authority holds that its demand for specificity is premature. In *Shanley*, the court did not dismiss the interference claim at all. The plaintiff moved for summary judgment on her own claim, and the court denied the motion because the record was "silent as to how many longtime readers [she] had, and how many of those longtime readers stopped purchasing

[3] "Before allowing an individual to begin service as a pilot, an air carrier shall access and evaluate" the pilot's records in the database, 49 U.S.C. § 44703(i)(1); *accord Id.* § 44703(h)(1) ("shall request and receive").

[her] books." *Shanley*, 716 F. Supp. 3d at 1202. Yet, the court found "some evidence" of intentional interference through improper means and left the claim for future proceedings. *Id.* at 1202, 1204. If that level of proof was not required for the claim to survive summary judgment, it is not required at the pleading stage. Here, Moussaron needs only plausibly allege a prospective relationship "substantially likely to be formed," and the current hiring market for commercial pilots supplies that relationship. *Id.* at 1202.

**B. The Counterclaim Adequately Alleges Improper Means.**

"Improper means" is "conduct contrary to law—such as violations of statutes, regulations, or recognized common-law rules—or the violation of an established standard of a trade or profession." *Mackey*, 2025 UT 37, ¶ 105 (quoting *C.R. England v. Swift Transp. Co.*, 2019 UT 8, ¶ 48, 437 P.3d 343). Improper means is broader than defamation alone, as it "includes . . . deceit or misrepresentation . . . [and] disparaging falsehood[s]." *St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 201 (Utah 1991). The Counterclaim alleges two independent improper means, either of which suffices.

First, the interference claim incorporates the defamation claim by reference. (Counterclaim ¶ 95.) Utah law is explicit that "defamation can be the improper means for an intentional interference claim" and if the interference claim is premised on defamation, it "will rise or fall with [the] defamation cause of action." *Mackey*, 2025 UT 37, ¶¶ 106–07; *accord Ferguson*, 2009 UT 49, ¶ 36 ("Defamation would be a means contrary to the common law."). SkyWest acknowledges this and relies on its argument to dismiss the defamation claim to defeat the interference claim. (Motion at 20.) However, if the Court credits Moussaron's argument here and refuses dismissal, there is adequate improper means based upon SkyWest's defamatory conduct.

Second, even if defamation claim is dismissed, Moussaron has asserted that SkyWest interfered with his prospective business relations when it fired him in violation of the federal Railway Labor Act ("RLA"). Specifically, Moussaron alleges that SkyWest interfered by "retaliat[ing] against [Moussaron] in violation of the Railway Labor Act's prohibition on interference with union organizing." (Counterclaim ¶ 102.) This violation of federal statute is an "improper mean." *Mackey*, 2025 UT 37, ¶ 105. Anticipating this argument, SkyWest tries to decouple the RLA-violating termination and the later PRD report, calling them "distinct acts." (Motion at 21.) But SkyWest's public accusation of theft, the firing, and the PRD report are alleged as a single retaliatory course of conduct, which was prompted by the same unlawful anti-organizing motive and all directed at ending Moussaron's career. (Counterclaim ¶¶ 97–102.) Thus, the PRD report is not a "distinct act" severable from that retaliation. Instead, it is the instrument through which the unlawful termination is carried into the pilot hiring market. The retaliatory firing led to the PRD report. Thus, if SkyWest fired Moussaron in violation of the RLA, triggering the PRD report that will deter air carriers from hiring him, the unlawful termination supplies the improper means for the interference claim. *See Mackey*, 2025 UT 37, ¶ 105; (Counterclaim ¶¶ 97–98, 102.).

**C. The Counterclaim Adequately Pleads Injury.**

SkyWest argues Moussaron does not "plausibly plead injury" because he did not show "an actual, concrete loss" caused by SkyWest's interference. (Motion at 22.) In doing so, it cites *Zhang v. Transpose Platform Mgmt., LLC*, No. 2:23-cv-00475-DBB-CMR, 2024 U.S. Dist. LEXIS 95753, at *22–23 (D. Utah May 29, 2024), for the proposition that reputational harm cannot support the tort. (Motion at 22–23.) But *Zhang* confirms Moussaron's claim is adequately pled.

*Zhang* dismissed an interference claim because the plaintiff pleaded *only* reputational and emotional harm and "[did] not allege that a contract was breached or anything of the sort." *Zhang*, 2024 U.S. Dist. LEXIS 95753, at *23. Further, "at the very least," a plaintiff "must allege pecuniary loss caused by the intentional interference." *Id.* Moussaron alleges exactly that. He does not rest on injury to reputation alone. He alleges that he is "unlikely to obtain another pilot position" and that SkyWest's improper, defamatory and/or retaliatory, conduct "negatively impact his ability to get a new pilot job." (Counterclaim ¶¶ 93, 97). Lost employment as a commercial pilot, and the associated wages and benefits, is quintessential pecuniary loss, meeting *Zhang*'s standard for an injury pled.

Finally, SkyWest argues that Moussaron has not identified a specific position he was denied, quantified his lost wages, or named an airline that reviewed his record. (Motion at 22.) But the argument confuses pleading with proof. At the pleading stage, a plaintiff need not prove his damages, *see Twombly*, 550 U.S. at 556, or name a specific employer that declined to hire him, so long as he alleges a potential business opportunity with an "identifiable class of persons," *Purco Fleet*, 38 F. Supp. 2d at 1325–26. He must allege facts from which a pecuniary loss can be inferred. *See Zhang*, 2024 U.S. Dist. LEXIS 95753, at *22–23. The deprivation of a commercial pilot's ability to fly for pay is such a loss. The extent of that loss is a matter for discovery and trial. However, should the Court conclude that Moussaron's injury allegations are not pled with insufficient detail, it should grant him leave to amend. This request is deliberately narrow, only to supplement the pecuniary-injury allegations of the current interference claim with facts that are emerging in discovery.[4]

---

[4] Notably, because Moussaron filed his Counterclaim within one month of SkyWest firing him, he did not have a job search history. But now, he has submitted more than thirty applications for pilot positions with carriers including Breeze Airways, Southwest Airlines, Horizon Air, Envoy,

Based on the pleadings as they exist, the interference claim is adequate.

## IV. PREEMPTION IS INEFFECTIVE TO DISMISS THE INTERFERENCE CLAIM.

Even if the interference claim is cognizable, SkyWest argues that, to the extent, Moussaron bases his interference claim on the PRD report, that claim is preempted by federal law. (Motion at 23–24.) SkyWest's preemption defense in unavailing.

Section 44703(j)(2) provides that no State may "enforce any law . . . that prohibits, penalizes, or imposes liability *for furnishing or using records in accordance with subsection (h) or (i)*." 49 U.S.C. § 44703(j)(2) (emphasis added). On its face, the federal statute only preempts state law claims for the act of furnishing or using PRD records. But, as explained in Section III(B), above, SkyWest's PRD report is not a stand-alone interfering action but part of a pattern of retaliation. The federal statute does not preempt the actions that were part of the RLA retaliation like the January 26 Communication or the termination that led to the PRD report. Because the interference claim's improper means rests on the defamatory publication and/or the retaliation for union organizing, Section 44703(j)(2) is ineffectual.

Even within SkyWest's framing, the statute defeats the motion. The immunity in subsections (j)(1) and (j)(2) applies to liability "with respect to the furnishing or use of such records in accordance with subsection (h) or (i)," and subsection (j)(1) presupposes that the pilot "has signed a release from liability," which is not part of the current pleadings. 49 U.S.C. § 44703(j)(1). Further, when the reporting party furnished information to the database that it "knows is false" and that "was maintained in violation of a criminal statute of the United States,"

---

Piedmont, Republic, Frontier, Endeavor, FedEx, and Kalitta Air. (Moussaron's Resp. to SkyWest's Third Set of Discovery Requests, Aug. 25, 2026, Interrog. No. 18, pp. 7–11.) He interviewed for pilot positions with Breeze Airways, Life Link III, and Southwest Airlines. Each time, he has been rejected. (Id., Interrog. No. 25, p. 20.)

there is an exception to preemption. 49 U.S.C. § 44703(j)(3). While SkyWest declares that "[t]he Counterclaim alleges neither," (Motion at 23–24), Moussaron need not plead around an affirmative defense. *See Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018) (explaining that dismissal on an affirmative defense is proper only when the complaint itself admits all the elements of the defense). Since Moussaron alleges that the report facilitates the retaliation and pleads that the termination record memorializes was willful retaliation "in violation of the Railway Labor Act's prohibition on interference with union organizing," (Counterclaim ¶¶ 97–98, 102.) and RLA is a criminal statute,[5] the exception can apply. Whether it does is fact-laden question that cannot be resolved on the pleadings. Therefore, the interference claim is not preempted at this junction.

**CONCLUSION**

Based on the arguments above, Moussaron's claims for defamation and interference with economic relations are well-pled. Because SkyWest's Motion for Judgment on the Pleading depends upon resolving disputed facts and drawing inferences against Moussaron contrary to the Rule 12(c) standard, Moussaron respectfully requests that the Court deny SkyWest's Motion in its entirety. In the alternative, Moussaron requests leave to amend his Counterclaim.

DATED this 25th day of September, 2026.

**SCHOLNICK THORNE HOLLAND**

/s/ Jonathan K. Thorne
Jonathan K. Thorne
Lauren I. Scholnick
Jack Holland
*Attorneys for Defendant and Counterclaim Plaintiff Daniel Moussaron*

[5] A carrier's willful violation of Section 152 Third or Fourth "shall be a misdemeanor." 45 U.S.C. § 152 Tenth.

**CERTIFICATE OF COMPLIANCE**

I certify that this memorandum complies with the type-volume and formatting requirements of DUCivR 7-1(a)(4)(A). According to the word-count function of the word-processing program used to prepare it, the memorandum contains 6,300 words, excluding the caption, signature block, and certificates.

/s/ Jonathan K. Thorne