Timothy D. Ducar (Utah Bar No. 13423)
Scott C. Uthe (pro hac vice)
**LAW OFFICES OF TIMOTHY D. DUCAR, PLC**
9280 E. Raintree Drive, Suite 104
Scottsdale, AZ 85260
Telephone: (480) 502-2119
Facsimile: (480) 452-0900
Email: orders@azlawyers.com
*Attorneys for Defendant and Counterclaim Plaintiff Vikaas Krithivas*

Jonathan K. Thorne (Utah Bar No. 12694)
Lauren I. Scholnick (Utah Bar No. 7776)
Jack Holland (pro hac vice)
**SCHOLNICK THORNE HOLLAND**
40 South 600 East
Salt Lake City, Utah 84102
Telephone: (801) 359-4169
Facsimile: (801) 359-4313
Email: jonathan@utahjobjustice.com
lauren@utahjobjustice.com
jack@laborwest.com
*Attorneys for Defendant and Counterclaim Plaintiff Daniel Moussaron*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF UTAH – SOUTHERN DIVISION**

| | |
|---|---|
| SKYWEST AIRLINES, INC.,<br><br>Plaintiff and Counterclaim Defendant<br><br>and DALE HANSEN,<br><br>Additional Counterclaim Defendant,<br><br>vs.<br><br>DANIEL MOUSSARON, and VIKAAS KRITHIVAS,<br><br>Defendants and Counterclaim Plaintiffs | **DEFENDANTS' JOINT REPLY IN SUPPORT OF MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS UNDER RULE 12(c)**<br><br>Civil No. 4:26-cv-00015-DN-PK<br><br>Senior District Judge David Nuffer<br>Magistrate Judge Paul Kohler |

Defendants Daniel Moussaron and Vikaas Krithivas jointly submit this Reply in support of their Joint Motion for Partial Judgment on the Pleadings (Dkt. 105).

**INTRODUCTION**

SkyWest's Response confirms that the dispute is not whether Defendants could enter SWOL or use its Company Directory. The Complaint alleges that both Defendants authenticated with their own SkyWest employee IDs, passwords, and multifactor authentication. The disputed question is what happened after that successful authentication: whether either Defendant crossed an additional computer-access boundary, or instead obtained information through an authenticated Directory request while the ordinary interface did not display every returned field.[1]

That distinction matters under both the CFAA and UCADRA. SkyWest now states that "SWOL's back-end server may return data in response to queries," while its front-end interface allegedly enforces restrictions by not rendering certain fields. Defendants do not ask the Court to resolve disputed architecture on Rule 12(c). They ask the Court to enforce the statutes' legal boundaries: policy, purpose, NDAs, automation, volume, retention, and later use cannot substitute for the required access element; and Count Four separately requires intent to cause harm or damage.[2]

## I. SKYWEST'S PROCEDURAL AUTHORITIES DO NOT BAR THE RELIEF SOUGHT.

SkyWest notes that Rule 12(c) ordinarily does not permit dismissal of isolated factual allegations while the same claim remains viable.[3] In *Christoffersen*, Judge Kohler declined to partially dispose of a negligence claim on the asserted preemption theory, instead permitting

[1] Compl. ¶¶ 13–15, 23, 29, Dkt. 1; Pl.'s Resp. to Defs.' Joint Mot. for Partial J. on the Pleadings at 4, Dkt. 153.

[2] Pl.'s Resp. at 4, Dkt. 153; see *Van Buren v. United States*, 593 U.S. 374, 389–96 (2021); Utah Code §§ 63D-3-102(7), (9), -103(2), -104(1).

[3] Pl.'s Resp. at 8–11, Dkt. 153

amendment; after amendment, the repleaded negligence claim was later dismissed in full for failure to plausibly allege the required elements. [4]

This Motion seeks materially different relief. Defendants seek judgment on the independently pleaded § 1030(a)(4) theory, dismissal of Count Four because both statutory access methods and the required intent to cause harm fail on the pleadings, and resolution of threshold statutory questions. Alternatively, Defendants seek to limit any surviving theory to actual circumvention of an identified technological barrier. Tenth Circuit decisions regularly review partial Rule 12(c) rulings resolving discrete claims or legal issues—including *Monarch Casino* and *Park University*—without treating Rule 12(c) as unavailable merely because other claims remain. *Christoffersen* therefore does not foreclose the relief sought here. [5] *Noel* likewise involved alternative ways of violating a single FCRA cause of action, while *Sexton* denied a pro se request for judgment on liability alone, and *Nudge* and *M.S.* rejected attempts to limit relief rather than resolve a distinct statutory theory. [6]

## II. SKYWEST'S EXTRA-PLEADING MATERIAL CANNOT EXPAND THE COMPLAINT.

SkyWest relies on Revision 11 of its Code of Conduct, dated December 11, 2025, although the Complaint alleges that the challenged SWOL access ended by December 8 and Moussaron's pleaded December 9 organizing text also predates that revision. SkyWest has not established that Revision 11 governed either Defendant during the alleged access period.[7]

---

[4]See *Christoffersen v. Nucor Corp.*, 2026 U.S. Dist. LEXIS 50390, at *9 n.37 (D. Utah Feb. 19, 2026), report and recommendation adopted, Dkt. 38 (D. Utah Mar. 9, 2026); *Christoffersen v. Nucor Corp.*, 2026 U.S. Dist. LEXIS 127758 (D. Utah June 5, 2026).

[5]See *Monarch Casino & Resort, Inc. v. Affiliated FM Ins. Co.*, 85 F.4th 1034 (10th Cir. 2023); *Park Univ. Enters., Inc. v. Am. Cas. Co. of Reading, Pa.*, 442 F.3d 1239, 1244 (10th Cir. 2006).

[6] *Sexton v. Merchs. & Med. Credit Corp.*, 2020 U.S. Dist. LEXIS 221585, at *2–3 (D. Utah Nov. 24, 2020); *FTC v. Nudge, LLC*, 430 F. Supp. 3d 1230, 1246 (D. Utah 2019); *M.S. v. Premera Blue Cross*, 2020 U.S. Dist. LEXIS 61789, at *15–16 (D. Utah Apr. 7, 2020); see Pl.'s Resp. at 2, 9–10, Dkt. 153.

[7]Dkt. 153-1 at 2; Compl. ¶¶ 28–32, Dkt. 1; Moussaron Answer & Countercl. ¶ 46, Dkt. 47.

SkyWest also cites a public Tampermonkey webpage to support the assertion that Defendants used the extension to "override" SWOL controls. A generic webpage cannot establish what a particular userscript did to SWOL. The cleanest course is to decide the Rule 12(c) issues from the pleadings. If the Court considers SkyWest's outside technical material, however, Rule 12(d) requires a reasonable opportunity to present corresponding material rather than considering only SkyWest's characterization of the architecture.[8]

## III. THE COMPLAINT ALLEGES SUCCESSFUL AUTHENTICATION, NOT A DEFEATED LOGIN GATE.

The Complaint alleges that SWOL requires an employee ID, password, and MFA; that Moussaron "logged in using his SkyWest employee ID and password and completed MFA"; and that Krithivas "[l]ike Moussaron" used his employee ID, password, and MFA. Thus, neither Defendant allegedly defeated the threshold authentication gate.[9]

SkyWest responds that valid credentials do not necessarily authorize every area of a computer. Defendants agree. Their argument is not that credentials confer blanket authorization across every database boundary; it is that lawful, unrevoked authentication defeats an outsider-or-revoked-access theory at the threshold, leaving SkyWest to identify the additional boundary allegedly crossed.[10]

The Complaint alleges that line pilots, including the Defendants, had access to the Company Directory, but it does not identify a specific response-level or authorization gate that either Defendant defeated after authentication: no rejected request, altered credential or token, privilege escalation, administrator impersonation, defeated MFA challenge, or higher-level

[8] Pl.'s Resp. at 6 n.1, Dkt. 153; Fed. R. Civ. P. 12(d).
[9] Compl. ¶¶ 13, 23, 29, Dkt. 1.
[10] Pl.'s Resp. at 16, Dkt. 153; Defs.' Joint Mot. at 10, Dkt. 105.

credential. Instead, it alleges generally that Defendants used developer tools or another program to circumvent "role-based restrictions."[11] That omission matters because SkyWest's Response describes the alleged restriction in rendering terms.

Under *Van Buren*, the CFAA asks whether a user was entitled to obtain information from the relevant area of the computer – such as a file, folder, or database – and frames the inquiry in "gates-up-or-down" terms.[12] A purpose restriction or display convention does not itself establish that a user crossed such a boundary.

## IV. SKYWEST'S AUTHORITIES INVOLVE DIFFERENT ACCESS MECHANISMS.

*Vox Marketing* involved direct document URLs that bypassed an ordinary username-and-password requirement, including altering numbers at the end of URLs to reach different documents. *Speed of Light* involved authenticated users who allegedly reverse-engineered proposal identification numbers to reach proposals created by other licensees that their accounts were not permitted to access.[13] Those mechanisms are materially different from what SkyWest now describes: an authenticated Directory request returns the disputed fields while the ordinary interface declines to render them.

A server that returns the disputed data to an authenticated pilot has opened the gate to that data. A page that declines to draw a field it has already received is a display choice, not a barrier preventing access. In *Vox*, the alleged circumvention avoided the ordinary login requirement; in *Speed of Light*, the alleged manipulation enabled authenticated users to reach records assigned to

---

[11] Compl. ¶¶ 14–15, 22, 57–58, Dkt. 1; Pl.'s Resp. at 4, 23, Dkt. 153.
[12] *Van Buren*, 593 U.S. at 390, 394–96.
[13] *Vox Mktg. Grp., LLC v. Prodigy Promos, L.L.C.*, 556 F. Supp. 3d 1280, 1282–83 (D. Utah 2021); *Speed of Light Ops, LLC v. Elliot*, No. 2:22-cv-00246-DAK-DBP, 2023 U.S. Dist. LEXIS 60737, at *2–4 (D. Utah Apr. 7, 2023), report and recommendation adopted, 2023 U.S. Dist. LEXIS 105878 (D. Utah June 16, 2023); Compl. ¶¶ 14, 25–28, Dkt. 1.

other licensees. [14] Here, by contrast, SkyWest's own theory is that its server returned the fields in response to the authenticated Directory request. Line pilots were authorized to query the Company Directory for fellow pilots, and SWOL delivered the contact information. Iterating sequential employee numbers within that authorized Directory does not itself establish that Defendants crossed an additional computer-access boundary. SkyWest must still identify the boundary the iteration allegedly defeated. *Fidlar* addressed the same architectural distinction: although downloading was restricted on the front-end user interface, it was "completely open on the back-end," and the CFAA claim failed. [15]

If the Court reaches the outside technical record, SkyWest's discovery responses sharpen the distinction. RFA No. 6 states that the employee-detail response payload included personal cell phone numbers and home addresses not rendered in the Directory UI for users such as Defendants, while RFA No. 21 states that the endpoint returned the same fields whether the request originated from a Directory click or an automated script. [16] Those materials are unnecessary to decide the pleading issue, but they directly answer SkyWest's outside technical presentation if the Court considers it.

## V. THE CFAA CLAIM CANNOT REST ON POLICY, PURPOSE, OR AN UNPLEADED FRAUD.

SkyWest may litigate a sufficiently pleaded theory that Defendants crossed an actual computer-access boundary. But its Response expressly states that NDAs "do not themselves create a technological access barrier," that its claims "rest on the circumvention of technological

---

[14] *Vox Mktg., 556 F. Supp. 3d at 1282–83; Speed of Light, 2023 U.S. Dist. LEXIS 60737, at *2–4.*

[15] Fidlar Techs. v. LPS Real Estate Data Sols., Inc., 810 F.3d 1075, 1083 (7th Cir. 2016).

[16] SkyWest's Resps. to Krithivas's First Set of Discovery Requests, RFA No. 6, Dkt. 73-1 at 8–9 (June 11, 2026); SkyWest's First Supp. Resps. to Krithivas's Second Set of Discovery Requests, RFA No. 21, Dkt. 139-1 at 33 (Aug. 18, 2026).

access controls," and that the Complaint "does not even mention organizing activity." [17] Those positions reinforce the legal point in the Motion: contractual use restrictions, organizing purpose, automation, volume, retention, or later dissemination cannot independently substitute for the CFAA access element.

Section 1030(a)(4) independently fails because the Complaint does not identify the intended fraud that the alleged computer access furthered. Paragraph 60 largely tracks the statute – intent to defraud, furtherance of the intended fraud, and obtaining something of value – without identifying a deception or explaining how the access advanced a distinct fraudulent scheme. *Fidlar Technologies*, which involved automated harvesting and nonstandard interfaces, likewise treated fraudulent intent as requiring more than bulk retrieval or unconventional access methods; the record had to support an intent to deceive or cheat. [18] Concealing an allegedly improper purpose before logging in with valid credentials does not, without more, plead the fraud required by § 1030(a)(4).

## VI. COUNT FOUR FAILS TO PLEAD INTENT TO CAUSE HARM AND, IN ALL EVENTS, REQUIRES ACTUAL TECHNOLOGICAL CIRCUMVENTION.

### A. The Complaint Does Not Plead Intent to Cause Harm or Damage.

UCADRA requires an unauthorized user to act "knowingly and with intent to cause harm or damage." Utah Supreme Court decisions distinguish intentionally performing an act from intending the resulting injury. *Matheson* recognizes that deliberate conduct may occur without the intent to harm required for an intentional tort; *Helf* likewise distinguishes a high probability

[17] Pl.'s Resp. at 17–18, 26, Dkt. 153; see *Van Buren*, 593 U.S. at 389–96.

[18] 18 U.S.C. § 1030(a)(4); Compl. ¶ 60, Dkt. 1; Pl.'s Resp. at 19–21, Dkt. 153; *Fidlar Techs. v. LPS Real Estate Data Sols., Inc.*, 810 F.3d 1075, 1082–83 (7th Cir. 2016).

of injury from the legally sufficient intent that injury occur.[19] Although those cases do not interpret UCADRA, they illustrate the distinction that UCADRA's text itself makes between knowing access and intent to cause harm or damage.

The Complaint does not bridge that gap. It alleges deliberate retrieval and later harm to SkyWest, but it does not plead facts supporting a plausible inference that either Defendant accessed SWOL with the statutorily required intent that harm or damage result.[20] Nor could SkyWest, as the purpose behind the download of contact information was to contact pilots to assess their interest in union organizing.[21] SkyWest simply does not plead any intent to harm in its Complaint. Count Four should therefore be dismissed on the intent element alone.

### B. Any Surviving UCADRA Theory Must Involve an Actual Technological Access Barrier.

UCADRA separately defines a "technological access barrier" and an "unauthorized user." The pleaded authentication facts eliminate the statutory method based on obtaining another authorized user's barrier without permission: SkyWest alleges that each Defendant used his own credentials and MFA.[22] Any surviving theory therefore must rest on circumvention of "a technological access barrier on the protected computer." Under the canon of ejusdem generis, the residual phrase "other digital security measure" must be construed to share the gatekeeping and data-withholding characteristics of the specific devices listed (passwords, tokens, security codes).[23] An instruction to a web browser not to render data that the server has already transmitted across the network shares none of those characteristics. It is a setting that secures

---

[19] Utah Code § 63D-3-104(1); *Matheson v. Pearson*, 619 P.2d 321, 322–23 (Utah 1980); *Helf v. Chevron U.S.A., Inc.*, 2009 UT 11, ¶¶ 26, 43, 50, 203 P.3d 962; see also *Helf v. Chevron U.S.A., Inc.*, 2015 UT 81, ¶¶ 23–24, 361 P.3d 63.
[20] Compl. ¶¶ 66–67, 23, 29–32, Dkt. 1.
[21] Dkt. 47, Countercl. ¶¶ 11, 46; see Pl.'s Resp. at 6, Dkt. 153.
[22] Utah Code §§ 63D-3-102(7), (9), -103(2), -104(1); Compl. ¶¶ 23, 29, Dkt. 1.
[23] Utah Code § 63D-3-102(7).

nothing. The definition itself confirms the point: a computer is not even a "protected computer" if its barrier "does not, to a reasonable degree of security, effectively control access to the information stored in the computer."[24]

SkyWest's reliance on § 63D-3-103(2), which limits permission to the extent or purpose authorized, cannot make the technological requirement disappear.[25] Otherwise, a policy or purpose restriction would itself become the barrier the Legislature separately required. SkyWest's own Response describes the challenged restriction by saying the back-end server "may return data" while the front-end interface does not render certain fields.[26] At a minimum, that description prevents policy, purpose, or UI non-display from serving as a substitute for proof that Defendants actually circumvented a technological access barrier.

SkyWest's own description of the system as it operated before January 12, 2026 – responses that "previously returned 'hidden details'" – confirms that "not rendered" and "not returned" are distinct technical concepts, and that any surviving Count Four theory should be limited to proof of actual technological circumvention.[27]

## VII. SKYWEST'S INFORMAL REQUEST TO AMEND CANNOT BE GRANTED AS PRESENTED.

SkyWest asks within its Response for leave to amend so it can plead the "technical architecture and access controls" with greater specificity. The request is procedurally deficient. The Scheduling Order set May 15, 2026 as SkyWest's deadline to move to amend pleadings, and the later Amended Scheduling Order did not reopen that deadline. After a scheduling-order

[24] Utah Code § 63D-3-102(6)(b).
[25] Utah Code § 63D-3-103(2); Pl.'s Resp. at 21–23, Dkt. 153.
[26] Pl.'s Resp. at 4, 23, Dkt. 153.
[27] SkyWest's Resps. to Krithivas's Expedited Discovery Requests, Interrog. No. 2 (stating that on Jan. 12, 2026, responses that previously returned "hidden details" were changed to reflect an "Access:denied" response); see also *id.* Interrog. No. 3.

deadline, Rule 16(b)(4) requires good cause; *Gorsuch* holds that the requirement applies to untimely motions to amend. [28]

SkyWest also did not file a separate motion for leave to amend or comply with DUCivR 15-1 by attaching the proposed amended pleading and a redline. A conditional request embedded in an opposition brief need not be treated as a properly presented motion. [29]

Leave should also be denied on the merits. SkyWest asserts that it had "no prior opportunity" to address Defendants' statutory arguments, but the record shows otherwise. In February 2026, Krithivas's expedited discovery required SkyWest to identify where authorization was enforced, the RBAC or equivalent rules governing access, expected deny behavior, whether fields were omitted or redacted server-side, and whether Defendants' identities were permitted, denied, or field-filtered. SkyWest responded on February 25, including that the employee-detail endpoint returned personal contact information not displayed in the Directory UI and that, after January 12, responses that previously returned "hidden details" instead reflected "Access:denied." [30]

By June 18, Defendants expressly asked SkyWest to identify the actual security measure or authorization control allegedly bypassed and whether any server-side control prevented the endpoint from returning the disputed information. The issue was raised again on July 21 and July 27, when Defendants asked whether each alleged control governed the server response or

---

[28] Pl.'s Resp. at 27–28, Dkt. 153; Dkt. 55 at 6; Dkt. 126 at 1–2; Fed. R. Civ. P. 16(b)(4); *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240–41 (10th Cir. 2014) (holding that Rule 16(b)(4) good cause must be satisfied before reaching Rule 15(a)(2)).

[29] *Calderon v. Kan. Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1186–87 (10th Cir. 1999) (holding that a single sentence request in an opposition brief is not a proper motion for leave to amend); *Garman v. Campbell Cnty. Sch. Dist. No. 1*, 630 F.3d 977, 986 (10th Cir. 2010); DUCivR 15-1(a).

[30] SkyWest's Resps. to Krithivas's Expedited Discovery Requests, Interrogs. Nos. 1–4 (Feb. 25, 2026) (addressing authorization-enforcement layers, RBAC rules and expected deny behavior, server-return versus UI-rendering behavior, and whether Defendants' identities were permitted, denied, or field-filtered).

merely the information displayed through the user interface.[31] SkyWest therefore had repeated notice, beginning within weeks of filing the Complaint, of the precise technical-access issue it now proposes to plead "with greater specificity." It identifies no newly discovered technical fact that prevented timely amendment. That history defeats good cause under Rule 16(b)(4).

## CONCLUSION

The Court should grant partial judgment on the pleadings by dismissing SkyWest's § 1030(a)(4) theory and Count Four. Alternatively, any surviving CFAA or UCADRA access theory should be limited to proof that Defendants crossed an actual computer-access boundary or circumvented an identified technological access barrier; policy, purpose, NDAs, automation, volume, retention, and later use cannot independently establish those elements. The Court should disregard SkyWest's extra-pleading technical material or, if it considers that material, permit consideration of the corresponding record under Rule 12(d). SkyWest's informal request for leave to amend should be denied as presented.

DATED this 2nd day of October, 2026.

**SCHOLNICK THORNE HOLLAND**

**/s/ Jonathan K. Thorne (with permission)**
Jonathan K. Thorne (Utah Bar No. 12694)
Lauren I. Scholnick (Utah Bar No. 7776)
John E. "Jack" Holland (pro hac vice)
40 South 600 East
Salt Lake City, Utah 84102
jonathan@utahjobjustice.com
lauren@utahjobjustice.com
jack@laborwest.com

*Attorneys for Defendant/Counterclaimant Daniel Moussaron*

**LAW OFFICES OF TIMOTHY D. DUCAR, PLC**

**/s/ Scott C. Uthe**
Timothy D. Ducar (Utah Bar No. 13423)
Scott C. Uthe (pro hac vice)
9280 E. Raintree Drive, Suite 104
Scottsdale, Arizona 85260
tducar@azlawyers.com
suthe@azlawyers.com
orders@azlawyers.com

*Attorneys for Defendant/Counterclaimant Vikaas Krithivas*

[31] See Dkt. 73 at 1–3; Dkt. 73-1 at 13–18; July 21, 2026 Letter for Meet and Confer Regarding SkyWest Discovery Responses at 5–6; July 27, 2026 email from Scott Uthe to Tyson Horrocks re Clarifications on SkyWest's Deficient Discovery Responses.

**CERTIFICATE OF COMPLIANCE**

Pursuant to DUCivR 7-1(a)(6), I, Scott C. Uthe, certify that this Reply contains 3,005 words, including headings, citations, quotations, and footnotes, and excluding those portions excluded by DUCivR 7-1(a)(6)(B). This Reply complies with the 3,100-word limit in DUCivR 7-1(a)(4).

/s/ Scott C. Uthe
Scott C. Uthe

## CERTIFICATE OF SERVICE

I certify that on the 2nd day of October, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which sent notice of electronic filing to all counsel of record.

**/s/ Scott C. Uthe**
Scott C. Uthe