Gregory M. Saylin, #9648
Tyson C. Horrocks, #12557
Zachary T. Burford, #19771
Holland & Hart LLP
222 South Main Street, Suite 2200
Salt Lake City, UT 84101-2194
Telephone: 801.799.5800
GMSaylin@hollandhart.com
TCHorrocks@hollandhart.com
ZTBurford@hollandhart.com

*Attorneys for Plaintiff and Counterclaim Defendant SkyWest Airlines, Inc. and Counterclaim Defendant Dale Hansen*

---

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF UTAH – SOUTHERN DIVISION**

| | |
|---|---|
| SKYWEST AIRLINES, INC.,<br><br>Plaintiff and Counterclaim Defendant,<br><br>and DALE HANSEN,<br><br>Additional Counterclaim Defendant,<br><br>vs.<br><br>DANIEL MOUSSARON,<br><br>Defendant and Counterclaim Plaintiff,<br><br>and VIKAAS KRITHIVAS,<br><br>Defendant and Counterclaim Plaintiff. | **SKYWEST AIRLINES, INC.'S AND DALE HANSEN'S REPLY IN SUPPORT OF MOTION TO DISMISS DEFENDANT VIKAAS KRITHIVAS'S COUNTERCLAIM**<br><br>Civil No. 4:26-cv-00015-DN-PK<br><br>Senior District Judge David Nuffer<br>Magistrate Judge Paul Kohler |

SkyWest Airlines, Inc. ("SkyWest") and Dale Hansen ("Hansen") submit this Reply in support of their Motion to Dismiss (Dkt. No. 140) ("Motion" or "Mot.") and in response to Krithivas's Opposition (Dkt. No. 145) ("Opp'n").

## INTRODUCTION

Krithivas's Opposition clarifies what his Counterclaim is really about. It is not about anything Hansen said in his email. Krithivas concedes that every word Hansen wrote to American Airlines was true. Opp'n at 5, 20. He also disclaims any theory that Hansen called him a thief or a hacker (*Id.* at 19, 33) and confirms that his defamation claim is based solely upon SkyWest's Complaint itself. *Id.* at 14.

That clarification is fatal to any theory treating the Complaint's filing as an independent publication. The Court held claims based on "the statements in the Complaint" untimely and permitted a counterclaim "based **solely** on Hansen's email." Dkt. No. 103 ("Order") at 3–6 (emphasis added). Krithivas therefore cannot evade that limitation by recasting the Complaint itself as the actionable publication rather than addressing what Hansen said and did in the email. But the claims also fail on the merits. As Krithivas acknowledges, the Complaint was privileged when filed. Opp'n at 22. When a party repeats its own allegations, "the judicial proceeding privilege remains attached to the allegations," *RainFocus, Inc. v. Cvent, Inc.*, 2023 UT App 32, ¶ 20, and is lost only through "excessive publication," *id.* ¶ 15. Hansen's limited, unembellished email notifying one person at American of the existence of litigation is not an excessive publication. *Cf. Pratt v. Nelson*, 2007 UT 41, ¶¶ 33–48 (finding dissemination of statements to media outlets was excessive).

Even if the Court were to conclude that the judicial proceeding privilege does not resolve the defamation claims, they still fail as Hansen's own statements are not capable of defamatory meaning, and each is substantially true. Mot. at 5–9. The interference claim falls with the defamation claim and independently fails for lack of causation. Lastly, the abuse-of-process

claim fails independently because emailing a public pleading to another individual is not a "use" of process. Based on the above, the Counterclaim should be dismissed with prejudice.

## ARGUMENT

### I. THIS COURT FORECLOSED CLAIMS BASED ON THE STATEMENTS CONTAINED IN THE COMPLAINT.

Krithivas insists that the real publication is "the attached Complaint itself." Opp'n at 14. But the Court has already foreclosed any independent claim based on the Complaint's filing. Ruling on Krithivas's motion to amend, it held any claims based on "the statements in the Complaint" are untimely under Rules 16(b)(4) and 15(a) because the parties knew of those statements before the amendment deadline and Krithivas offered no adequate reason for the delay. Order at 3–6. The Court therefore permitted a counterclaim "based **solely** on Hansen's email" and directed Krithivas to "revise his counterclaim with this limitation in mind." *Id*. at 6 (emphasis added).

Krithivas cannot avoid that limitation by characterizing the attachment, rather than Hansen's cover note, as the actionable publication. He admits that Hansen "accurately stated a lawsuit had been filed" and "truthfully stated" his employment history, Opp'n at 5, 20, and that this theory does not rest on Hansen repeating words like "hacking" or "theft," *id.* at 33. To the extent his defamation claim rests entirely on treating the transmission of the Complaint's allegations as actionable despite the Order, it should be dismissed with prejudice. His interference and abuse-of-process claims reliant on the same theory fail as well.

### II. FORWARDING THE COMPLAINT DID NOT STRIP THE JUDICIAL PROCEEDING PRIVILEGE.

Utah's judicial proceeding privilege is absolute. *Westmont Maint. Corp. v. Vance*, 2013

UT App 236, ¶ 13. A filed complaint is "clearly protected by the judicial proceeding privilege." *Pratt v. Nelson*, 2007 UT 41, ¶ 32. The privilege reaches beyond defamation to bar "all claims arising from the same statements." *Moss v. Parr Waddoups Brown Gee & Loveless*, 2012 UT 42, ¶ 28. The only question is whether Hansen's email was excessive publication. It was not.

### A. <u>One Unembellished Email to an Interested Recipient Is Not Excessive Publication.</u>

Publication is excessive only if it reaches persons lacking "a legitimate role in resolving the dispute" or "an adequate legal interest in the outcome." *Pratt*, 2007 UT 41, ¶ 33 (quoting *Krouse v. Bower*, 2001 UT 28, ¶ 15, 20 P.3d 895). The privilege is lost only if the recipients lack a sufficient connection to the proceeding *and* protecting the publication would not serve the privilege's purpose. *Id.* ¶ 36.

Krithivas's reliance on *Pratt* is overstated. In *Pratt*, counsel "called a press conference and distributed various statements to the media for widespread dissemination," and the story made international news. *Id.* ¶¶ 5, 48. The press had "neither any relation to the pending litigation nor any clear legal interest in the outcome." *Id.* ¶ 46. The publication alleged in the Counterclaim, by contrast, is one email attaching the pleading with no commentary on the merits, sent to a single American Airlines representative, Mr. Gatten. Countercl. ¶¶ 19–21, 54.

This case is far closer to *Krouse*, where a demand letter sent to an owners' association's counsel was also delivered to the individual owners. 2001 UT 28, ¶ 3. Although that delivery was not "necessary to effectuate the purpose of pursuing settlement," the owners had a "clear legal interest" in its subject matter, so publication was not excessive. *Pratt*, 2007 UT 41, ¶ 38 (describing *Krouse*). American has the same kind of interest. Three days before Hansen's email, its newly hired pilot had been sued in federal court over the retrieval of contact information for

roughly 5,000 SkyWest pilots—access Krithivas admits. Countercl. ¶¶ 14, 17, 47; Dkt. 48, Krithivas's Ans. ¶¶ 15–17. An airline that has just hired a pilot accused of extracting colleagues' home addresses from a secure airline system has an obvious interest in the suit and in reading exactly what is, and is not, alleged. *Cf. Brehany v. Nordstrom, Inc.*, 812 P.2d 49, 58–59 (Utah 1991) (recognizing, in the qualified privilege context, that an employer has a protected interest in communicating to other interested parties concerning the reasons for an employee's discharge). That American was not a party or witness, Opp'n at 22–23, does not matter; neither were the individual owners in *Krouse*.

Other courts agree. In *Held v. Silver*, the plaintiff emailed his complaint to the defendant's business associate, urging him to "take a quick look" because "[i]t might change the way you think about [the defendant's] promises." No. 3:10-cv-00992 (CSH), 2013 U.S. Dist. LEXIS 148514, at *5 (D. Conn. Oct. 16, 2013) (unpublished). The court held that forwarding the complaint "is not actionable as defamation, because such an act is a truthful sharing of a privileged and public document." *Id.* at *22. Only the sender's added commentary, which went "significantly beyond a mere summary," was not automatically privileged, *id.* at *24. Had the email "simply noted that the complaint had been filed," the sender "would have a compelling case that such privilege ought to extend to his entire email." *Id.* at *23. Hansen's email is that case. Countercl. ¶¶ 19–21.

As American Airlines undoubtedly has an interest in learning of the outcome of legal proceedings against one of its pilots, the judicial proceeding privilege applies. Therefore, the Court should dismiss the defamation claims, with prejudice.

**B. *RainFocus* Supports Dismissal.**

Krithivas's reliance on *RainFocus* is misplaced. Cvent never invoked the privilege, so the court did not decide whether it applied; it held only that Cvent "would need to prove application of the judicial proceeding privilege" to protect "statements accurately describing its legal claims." 2023 UT App 32, ¶¶ 7, 21. SkyWest has invoked it.

The conduct in *RainFocus* is materially different from Hansen's. Cvent's executives contacted a competitor's customers, "proactively trying to stop [the companies] from giving business to RainFocus," and told them, "[W]e have evidence that they have actually duplicated or plagiarized significant portions of our source code." *Id.* ¶ 3. The court distinguished between saying "Our complaint alleges X generally," which invokes the privilege, and stating allegations as independent fact, which does not. *Id.* ¶ 21. It assumed that a party may make "a minimal statement that it filed a lawsuit," finding that Cvent "went far beyond this." *Id.* ¶ 18 n.8, ¶ 21. Hansen did not. His cover note said only that the attached Complaint had been filed against a former SkyWest pilot who had "transitioned to AA," that SkyWest wanted American to be "aware of the initiation of litigation," and that Mr. Gatten could call with questions. Countercl. ¶¶ 19–21. Although *RainFocus* recognized that a general counsel's presumed inside knowledge can affect how a recipient understands a communication, *see* Opp'n at 17, that concern arose where the executives themselves conveyed factual assertions about the merits. 2023 UT App 32, ¶¶ 29, 40. It has no application where the sender says nothing about the merits.

**C. The Court Can Apply the Judicial Proceeding Privilege Now.**

*Mathews v. McCown* is not to the contrary. It held that a Utah court may not grant a Utah Rule 12(b)(6) motion based on an affirmative defense "like a conditional privilege," while

confirming that such defenses may be decided on a proper pretrial motion. 2025 UT 34, ¶¶ 143–44.[1] Federal procedure governs here, and dismissal on an affirmative defense is proper where "the complaint itself admits all the elements of the affirmative defense by alleging the factual basis for those elements." *Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018); *see* Opp'n at 21 (agreeing). Courts routinely apply the privilege at the pleading stage.[2] The Counterclaim pleads every fact on which it turns: who sent the email, when, what it contained, to whom, and the scope of the alleged publication. Countercl. ¶¶ 9, 14, 19–25. Whether those pleaded circumstances establish an adequate interest and a non-excessive publication is a question of law that the Court can resolve on SkyWest's Motion. *See Pratt*, 2007 UT 41, ¶¶ 33–36.[3]

## III. ALTERNATIVELY, HANSEN'S EMAIL IS NOT DEFAMATORY AND IS SUBSTANTIALLY TRUE.

Even if the privilege did not apply, the defamation claim would fail. Krithivas concedes that the allegedly defamatory publication is the Complaint, not Hansen's cover email, and that every word of the email is true. Opp'n at 5, 14, 20.

### A. <u>Hansen's Email Is Not Capable of Defamatory Meaning.</u>

---

[1] *Mathews* did not reach whether the privileges at issue applied, *id.* ¶ 144 n.21, and confirmed that a privilege defense may be decided under Utah Rule 12(c), *id.* ¶¶ 142–43.

[2] *E.g.*, *Krouse*, 2001 UT 28, ¶ 20 (affirming dismissal on a motion to dismiss); *Moss*, 2012 UT 42, ¶¶ 27 n.5, 46 (affirming judgment on the pleadings); *Bennett v. Jones, Waldo, Holbrook & McDonough*, 2003 UT 9, ¶¶ 67, 77–79 (affirming Rule 12(b)(6) dismissal); *Vance*, 2013 UT App 236, ¶¶ 5, 12–17 (same); *Hatfield v. Cottages on 78th Cmty. Ass'n*, No. 2:19-cv-964-TS, 2021 U.S. Dist. LEXIS 39345, at *27–29 (D. Utah Mar. 1, 2021) (unpublished) (granting judgment on the pleadings).

[3] Krithivas's defamation per se theory, Opp'n at 24, changes nothing; per se status relieves a plaintiff of alleging damages, not of the privilege. *See Mathews*, 2025 UT 34, ¶ 89 n.15.

Whether a statement is capable of defamatory meaning depends on how its audience would understand it in context. *West v. Thomson Newspapers*, 872 P.2d 999, 1008–09 (Utah 1994). Krithivas contends that Hansen's "targeted delivery" of the Complaint "communicated SkyWest's accusation" of misconduct. Opp'n at 19–20. But courts do not "indulge [a plaintiff] by interpreting inferences that may be reasonably drawn from the statements in favor of a defamatory meaning." *Mathews*, 2025 UT 34, ¶ 41 (cleaned up). Hansen's cover email did not independently vouch for the Complaint's allegations, and Krithivas identifies no statement by Hansen claiming "evidence" beyond the pleading. *Cf. RainFocus*, 2023 UT App 32, ¶¶ 3, 25.

Krithivas tries to supply the missing meaning with context American never saw. SkyWest's January 26 message went to SkyWest's pilots, not American; the Counterclaim disclaims it as a basis for liability; and the Order held claims based on it untimely. Countercl. ¶¶ 39, 46; Order at 3–5. The later filings he cites—Dkt. No. 40-1, Dkt. No. 95, Dkt. No. 140 (this Motion)—did not yet exist on February 2. Opp'n at 13–14, 31–33. Meaning turns on what the audience received, *West*, 872 P.2d at 1009, not on information it never saw.

Krithivas's effort to distinguish *Spencer v. Glover*, 2017 UT App 69, backfires. If saying one is "strongly considering suing," Opp'n at 16, does not expose a person to "hatred, contempt, or ridicule," *Spencer*, 2017 UT App 69, ¶¶ 7, 28, then reporting that suit has been filed—with the pleading attached so the reader can see that the claims are allegations—conveys even less. *See RainFocus*, 2023 UT App 32, ¶ 18 n.8; *Held*, 2013 U.S. Dist. LEXIS 148514, at *22–23. An invitation to call with questions is not a statement of fact. Hansen's email is simply not defamatory.

### B. <u>Hansen's Email is Substantially True</u>

Krithivas concedes that Hansen's statements are not "the alleged defamatory sting," which he locates in "the factual accusations transmitted through the attached pleading." Opp'n at 20. If the sting lies in the email, he admits the email is true. *Id.* at 5, 20. If it lies in the Complaint, the claim is barred by the Order and the privilege. *See supra* Parts I–II.

Either way, Krithivas's own admissions confirm the gist of the Complaint. He admits that he accessed SkyWest's system and retrieved contact information for roughly 5,000 SkyWest pilots. Krithivas's Ans. ¶¶ 15–17. He disputes only SkyWest's characterizations, but those disputes do not make the cover note false. Opp'n at 21. Whether that access exceeded his authorization is the merits question in this case, but the label does not change what he did. Truth requires only that the charge be "true in substance," *Brehany*, 812 P.2d at 57, and "[w]hen underlying facts as to the gist or sting are undisputed, substantial truth may be determined as a matter of law," *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1137 (10th Cir. 2014) (citation omitted). The gist of Hansen's email is undisputed and true.

## IV. THE TORTIOUS-INTERFERENCE CLAIM FAILS.

### A. The Claim Falls with the Defamation Claims.

The only "improper means" alleged is "defamation and extrajudicial republication." Countercl. ¶ 62. Krithivas ties the two claims together, Opp'n at 25, and they fall together. *Miller v. Safe Home Sec., Inc.*, 2026 U.S. Dist. LEXIS 201079, at *16 & n.71 (D. Utah Aug. 14, 2026) (unpublished) (collecting cases). The privilege also bars "all claims arising from the same statements." *Moss*, 2012 UT 42, ¶ 28.

### B. The Counterclaim Does Not Plausibly Plead Causation.

Even if the defamation claim survived, the Counterclaim's own allegations do not

plausibly connection Hansen's email to American's action. American placed Krithivas on leave more than two months after Hansen's email, and he resigned before any decision was made. Countercl. ¶¶ 47–54. Although he alleges that union representatives told him American acted because of "SkyWest's Complaint," he does not allege that the representatives identified Hansen's email as American's source or that any American decisionmaker received or relied on that email. *Id.* ¶ 51.

Nor do the pleaded facts permit a reasonable inference that Hansen's email caused any American's actions. Krithivas calls the email the "mechanism" by which the Complaint reached American and relies on the "temporal sequence." Opp'n at 26; Countercl. ¶ 56. But he does not identify any American decisionmaker who received or relied on Hansen's email, any communication connecting Gatten's receipt of the email to the April employment action, or any other fact bridging the two-month gap. The bare allegation that the email was a substantial factor is "not entitled to be assumed true," *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009).

Finally, the Counterclaim alleges that Krithivas chose to resign before American made a termination decision. Countercl. ¶¶ 51–53. The authorities collected in the Motion support dismissal where the alleged loss resulted from the claimant's own resignation. *See* Mot. at 15 (collecting cases). Krithivas fails to cite any contrary authority. The tortious interference claim should be dismissed.

## V. THE ABUSE-OF-PROCESS CLAIM IDENTIFIES NO USE OF PROCESS.

Krithivas concedes that "bad motive alone does not establish abuse of process" and that he must identify "conduct independent of legal process itself that corroborates the alleged

improper purpose." Opp'n at 27, 29; *see Mackey v. Krause*, 2025 UT 37, ¶ 96. The only conduct he identifies is the February 2 email. Opp'n at 28–29; Countercl. ¶ 81.

But the tort requires a willful act in the use of process, *Mackey*, 2025 UT 37, ¶ 96 (cleaned up), and sending a copy of a public complaint invokes no power of the Court and compels no one to act. *See Ancier v. Egan*, 2014 U.S. Dist. LEXIS 167319, at *19–20 n.6 (D. Haw. Dec. 3, 2014) (collecting cases). In *Mackey*, reports to school officials and police, allegedly made to extract retribution, likewise supplied no independent willful act. 2025 UT 37, ¶¶ 94, 100–03.

Krithivas responds that the email targeted the particular third party capable of imposing the employment consequence allegedly sought. Opp'n at 29–30. But a collateral effect does not constitute abuse when process is used for its intended purpose. *Crease v. Pleasant Grove City*, 30 Utah 2d 451, 455 (1974); *see Ancier*, 2014 U.S. Dist. LEXIS 167319, at *19–20 n.6 ("Embarrassment in business resulting to the parties being sued is not beyond the area of legitimate use of process."). His union-related allegations, Opp'n at 30, go only to motive, and "motive is not enough." *Hatch v. Davis*, 2006 UT 44, ¶ 37. Were it otherwise, every litigant who told an insurer, lender, or business partner about a lawsuit would face a tort claim—an untenable result for what Utah treats as a "narrowly defined" cause of action. *Anderson Dev. Co. v. Tobias*, 2005 UT 36, ¶ 59. The Court should dismiss the abuse-of-process claim.

## VI. THE CLAIMS AGAINST HANSEN FAIL FOR THE SAME REASONS.

Krithivas argues that Hansen is sued for his own conduct, Opp'n at 34–35, but that conduct is the February 2 email, which Hansen allegedly sent as SkyWest's "legal representative, within the course and scope of his employment," Countercl. ¶ 10. The privilege

covers an attorney's conduct in representing a client, *Moss*, 2012 UT 42, ¶¶ 28, 45, so the claims against Hansen fail for the same reasons.

**VII. DISMISSAL SHOULD BE WITH PREJUDICE.**

Krithivas's request for dismissal without prejudice should be denied. The defects with his Counterclaim are legal, and no additional facts can change who sent the email, what it said, or to whom. *See Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006). Moreover, Krithivas has already had his chance to amend. SkyWest previewed these defects when it opposed leave to amend, Dkt. No. 90 at 8–12. The Court deferred them because the narrower amendment would require revision, "potentially rendering moot some of Plaintiff's arguments," Order at 6. Krithivas added facts to his counterclaim, *see* Countercl. ¶¶ 47–57, yet every defect remains. Leave may be denied for "repeated failure to cure deficiencies by amendments previously allowed." *Minter*, 451 F.3d at 1204. The Court should deny leave.

**CONCLUSION**

SkyWest and Hansen respectfully request that the Court dismiss Krithivas's Counterclaim (Dkt. No. 114) with prejudice.

Dated this 5th day of October, 2026.

HOLLAND & HART LLP

*/s/ Tyson C. Horrocks*
Gregory M. Saylin
Tyson C. Horrocks
Zachary T. Burford

*Attorneys for Plaintiff and Counterclaim Defendant SkyWest Airlines, Inc. and Counterclaim Defendant Dale Hansen*

**CERTIFICATION OF WORD COUNT**

Pursuant to DUCivR 7-1(a)(6)(C), I, Zachary T. Burford, certify that this Reply contains 3,099 words and complies with DUCivR 7-1(a)(4).

*/s/ Zachary T. Burford*

39663311