# EXHIBIT A

Timothy D. Ducar (Utah Bar No. 13423)
Scott C. Uthe (pro hac vice)
**LAW OFFICES OF TIMOTHY D. DUCAR, PLC**
9280 E. Raintree Drive, Suite 104
Scottsdale, AZ 85260
Telephone: (480) 502-2119
Facsimile: (480) 452-0900
Email: orders@azlawyers.com
*Attorneys for Defendant and Counterclaim Plaintiff Vikaas Krithivas*

Jonathan K. Thorne (Utah Bar No. 12694)
Lauren I. Scholnick (Utah Bar No. 7776)
Jack Holland (pro hac vice)
**SCHOLNICK THORNE HOLLAND**
40 South 600 East
Salt Lake City, Utah 84102
Telephone: (801) 359-4169
Facsimile: (801) 359-4313
Email: jonathan@utahjobjustice.com
lauren@utahjobjustice.com
jack@laborwest.com
*Attorneys for Defendant and Counterclaim Plaintiff Daniel Moussaron*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF UTAH – SOUTHERN DIVISION**

| | |
|---|---|
| SKYWEST AIRLINES, INC.,<br><br>Plaintiff and Counterclaim Defendant<br><br>and DALE HANSEN,<br><br>Additional Counterclaim Defendant,<br><br>vs.<br><br>DANIEL MOUSSARON, and VIKAAS KRITHIVAS,<br><br>Defendants and Counterclaim Plaintiffs | **DEFENDANTS' JOINT NOTICE OF RULE 30(b)(6) DEPOSITION OF PLAINTIFF SKYWEST AIRLINES, INC.**<br><br>Civil No. 4:26-cv-00015-DN-PK<br><br>Senior District Judge David Nuffer<br>Magistrate Judge Paul Kohler |

TO: Plaintiff and Counterclaim Defendant SkyWest Airlines, Inc., and its counsel of record, Gregory M. Saylin, Tyson C. Horrocks, and Zachary T. Burford, Holland & Hart LLP, 222 South Main Street, Suite 2200, Salt Lake City, Utah 84101.

PLEASE TAKE NOTICE that, pursuant to Federal Rules of Civil Procedure 26 and 30(b)(6) and DUCivR 30-2, Defendants and Counterclaim Plaintiffs Daniel Moussaron ("Moussaron") and Vikaas Krithivas ("Krithivas") (together, "Defendants") will take the deposition upon oral examination of Plaintiff and Counterclaim Defendant SkyWest Airlines, Inc. ("SkyWest") on November 5, 2026, beginning at 9:00 a.m., at 40 S. 600 E. SLC, UT, 84102, or at such other date, time, and place as counsel may agree in writing, and continuing from day to day until completed. The deposition will be taken before a certified court reporter or other officer authorized to administer oaths and will be recorded by stenographic and audiovisual recording. Counsel and parties may attend by remote videoconference by agreement.

Pursuant to Rule 30(b)(6), SkyWest shall designate one or more officers, directors, managing agents, or other persons who consent to testify on its behalf concerning the matters for examination set forth below, and the persons designated shall testify about information known or reasonably available to SkyWest. SkyWest is requested to identify in writing, no later than seven days before the deposition, each person it designates and the matters on which each person will testify. For each matter, the designee should be prepared to identify the documents, electronically stored information, and other materials reviewed in preparing to testify.

Pursuant to Rule 30(b)(6), Defendants will confer in good faith with SkyWest about the matters for examination before or promptly after service of this Notice, and invite SkyWest to propose dates and times for that conference. Pursuant to DUCivR 30-2(a)(2), this Notice identifies twenty matters for examination. While the deposition of all designees is limited by default to seven

hours absent agreement or court order, Defendants have requested SkyWest's agreement to fourteen hours of examination collectively across designees, and reserve the right to seek additional time for good cause. Testimony concerning material designated CONFIDENTIAL or ATTORNEYS' EYES ONLY under the Standard Protective Order (DUCivR 26-2) will be taken subject to that Order. Defendants do not seek disclosure of privileged attorney-client communications or protected attorney work product. The assertion of privilege as to particular communications does not relieve SkyWest of its obligation to prepare its designee or designees to testify concerning nonprivileged underlying facts known or reasonably available to SkyWest.

## DEFINITIONS

**"SkyWest"** means Plaintiff and Counterclaim Defendant SkyWest Airlines, Inc., and its officers, employees, agents, contractors, and representatives.

**"Moussaron"** means Defendant and Counterclaim Plaintiff Daniel Moussaron. "Krithivas" means Defendant and Counterclaim Plaintiff Vikaas Krithivas. "Defendants" means Moussaron and Krithivas.

**"SWOL"** means SkyWest Online, the login-protected employee portal described in the Complaint (Dkt. 1) ¶¶ 12–15, including the Company Directory, the Directory user interface, employee-profile or employee-detail functionality, associated endpoints, applications, databases, servers, authentication and authorization systems, and logging systems implicated by the allegations in this action. **"Employee-Detail Endpoint"** means the endpoint, request, service, API, controller action, or other server functionality that SkyWest contends returned employee-detail information relevant to this action, including https://www.skywestonline.com/OO/api/directory/empdetail/{EMPLOYEE_NUMBER}.

**"Pilot Contact Information"** means the names, employee numbers, personal cellular telephone numbers, home addresses, personal email addresses, base assignments, and other contact information of SkyWest pilots, including the information alleged in the Complaint to have been accessed by Defendants, whether stored in SWOL or in any other SkyWest system.

**"ALPA"** means the Air Line Pilots Association, International. "Organizing Committee" means the SkyWest pilots working with ALPA to organize SkyWest pilots, as described in Moussaron's Counterclaim (Dkt. 47, Countercl. ¶¶ 7–10). "SAPA" means the SkyWest Airlines Pilots Association.

**"December 10, 2025 Spam Text Notice"** means the communication SkyWest posted on SWOL on or about December 10, 2025, produced as SkyWest_000002. "January 26, 2026 Communication" means the communication issued in the name of Russell "Chip" Childs to SkyWest pilots, dated January 26, 2026 and produced as SkyWest_000003–000004, and any version of it transmitted to pilots on or about January 28, 2026.

**"Relevant Period"** means August 1, 2025 through January 30, 2026, unless a matter for examination states otherwise. **"Nonprivileged"** means not protected by the attorney-client privilege or the work-product doctrine; where a matter calls for nonprivileged information, SkyWest shall designate a witness prepared to testify to the underlying facts, which are not privileged.

## MATTERS FOR EXAMINATION

Pursuant to Rule 30(b)(6), SkyWest shall designate one or more persons to testify on its behalf concerning the following matters. Unless otherwise stated, the relevant time period is the Relevant Period.

**Topic No. 1: SWOL Directory Architecture, Request Flow, and Employee-Detail Endpoint.** The architecture, design, configuration, and operation of the SWOL Company Directory during the Relevant Period, including the Directory user interface served at https://www.skywestonline.com/OO/directory; the application, web-server, load-balancer, database, authentication, and authorization components involved in a request for an employee profile; the sequence of requests and responses generated when an authenticated pilot searched for or selected another employee; the Employee-Detail Endpoint (https://www.skywestonline.com/OO/api/directory/empdetail/{EMPLOYEE_NUMBER}, HTTP GET) identified in SkyWest's First Supplemental Response to Moussaron's Expedited Interrogatory No. 1; the endpoint's route structure and intended function; whether it was invoked when an employee used the ordinary Directory interface; whether an authenticated pilot could invoke it using the pilot's existing authenticated SWOL session and whether any additional authentication or authorization was required; whether direct invocation produced a response different from invocation initiated by the Directory user interface; the source from which employee names, telephone numbers, home addresses, and other fields were retrieved; whether personal cell-phone-number and home-address fields were returned to authenticated front-line pilots but not rendered in the Directory user interface; and the distinction, if any, between information returned by SkyWest's server and information rendered or displayed in the Directory user interface.

**Topic No. 2: Authentication of Moussaron and Krithivas.** The authentication process applicable to Moussaron and Krithivas during the Relevant Period, including employee-ID and password authentication; multi-factor authentication; the issuance and status of each Defendant's SWOL account and credentials; whether either account was suspended, disabled, restricted, or

revoked before the access alleged in the Complaint; whether either Defendant used another person's credentials; whether either Defendant circumvented, defeated, altered, or avoided password authentication or multi-factor authentication; and the contention that Defendants entered SWOL "without authorization."

**Topic No. 3: Information Returned by SkyWest's Server.**

The facts and technical operation underlying SkyWest's statement in its Answer to Moussaron's Counterclaim (Dkt. 53 ¶ 31) that "[t]he data was returned by the server with restricted access, which prevented Defendants from viewing and accessing the information," including precisely what data the server returned in response to an authenticated front-line pilot's request to the Employee-Detail Endpoint; the fields contained in the response and its format; the HTTP request and response involved and the status code returned; whether the server returned the same data fields when the request originated from a click within the Directory UI and from an automated request, as SkyWest admitted in response to Krithivas's Request for Admission No. 21 (Second Set), and the related admission in response to Request for Admission No. 24 (Third Set) that the employee-detail response included personal cell-phone-number and home-address fields that were not rendered in the Directory UI; what SkyWest means by "returned by the server with restricted access"; and the specific mechanism SkyWest contends prevented an authenticated pilot from viewing, obtaining, or accessing information contained in the server response.

**Topic No. 4: Role-Based and Field-Level Controls Before January 12, 2026.** Every role-based, field-level, server-side, application-level, or other technical control that SkyWest contends restricted Moussaron or Krithivas from obtaining Pilot Contact Information before January 12, 2026, including the name and function of each control; where in the system it operated;

whether it governed authentication, authorization, retrieval, transmission, rendering, or display; the "isManager" and "Model.IsEmployee" logic and the statement that restricted fields "were not included in the returned HTML for viewing" described in SkyWest's February 25, 2026 answer to Krithivas's Expedited Interrogatory No. 2, and how that statement is reconciled with SkyWest's admission that the response payload included those fields; the source code, configuration, permission group, database entitlement, or identity-provider role, group, entitlement, claim, or scope implementing each control, including the IAM/IdP records for Defendants identified in SkyWest's First Supplemental Response to Moussaron's Expedited Request for Production No. 4; which fields each control governed; the response the server generated when a control denied access; and whether any request attributed to either Defendant generated a 401, 403, or other denial, warning, error, or notification.

**Topic No. 5: Each Alleged Technological Access Barrier and Its Circumvention.** Each technological measure that SkyWest contends constituted a "technological access barrier" under Utah Code § 63D-3-102(7), a "technical control," an "access control," a "role-based restriction," or any other computer-access boundary allegedly circumvented by either Defendant, including the identification and technical operation of each measure; the information or system resource it protected; whether it prevented receipt of information from the server or only its rendering in the ordinary user interface; the conduct by which SkyWest contends Moussaron circumvented that measure; the conduct by which SkyWest contends Krithivas circumvented that measure; the meaning SkyWest assigns to the terms "hidden URL," "bypass," "circumvent," "developer tools," "script," and "automated" as used in the Complaint and SkyWest's discovery responses; and the nonprivileged facts and records supporting each contention.

**Topic No. 6: Developer Tools, Scripts, and Automated Requests.** SkyWest's contention that Defendants' use of browser developer tools, a userscript extension, or any script, program, bot, scraper, or command constituted or facilitated unauthorized access or circumvention, including which developer-tool functions SkyWest contends were used; what SkyWest contends each script did and the requests it generated; whether any such request altered credentials, cookies, tokens, authorization headers, session state, URL parameters, or request bodies, or merely displayed or repeated requests the authenticated session was already permitted to make; whether each request operated within an authenticated SWOL session and was accepted or rejected by SkyWest's server; whether automation changed the user's authorization or only the number or speed of requests; any rate limit, anti-automation measure, CAPTCHA, lockout, or access-denial mechanism in place during the Relevant Period; and the evidence supporting SkyWest's contention that the tools or scripts bypassed a technical access restriction rather than automated requests the server accepted.

**Topic No. 7: Logs, Attribution, and Technical Evidence.** The creation, contents, interpretation, preservation, and use of every log and data source SkyWest relied on to attribute Directory activity to Moussaron or Krithivas or to conclude that either circumvented an access control, including the Microsoft IIS web server logs (SkyWest_000038) and the fields they record, including the client-IP field SkyWest states records the internal load balancer; the compiled exhibit SkyWest_000001; the Viewer/ViewerIP data produced as SkyWest_0000545–590, including the system, database table, log, or file from which the "Viewer" and "ViewerIP" values were obtained, the query or export used, and how those values were associated with IIS entries; the meaning SkyWest assigns to Referrer or Referer values, what constitutes an "anomalous" Referrer value, whether the absence of a particular Referrer establishes direct endpoint invocation, and alternative

technical causes of the values observed; the location and internet-provider enrichment and multi-factor-authentication history analysis described in SkyWest's First Supplemental Response to Moussaron's Expedited Interrogatory No. 5; applicable retention periods and the preservation and collection of the logs; whether any activity attributed to either Defendant generated a contemporaneous alert, denial, lockout, warning, or other automated or human response; and all analyses, reports, summaries, or conclusions derived from those sources.

**Topic No. 8: The January 12, 2026 Changes.** Each change SkyWest made or considered on or about January 12, 2026, or at any time from January 1, 2026 to the present as a result of the conduct alleged in the Complaint, to SWOL, the Company Directory, the Employee-Detail Endpoint, authorization logic, server responses, or field-level controls, including what was changed and the before-and-after technical configuration; the change-management, ticketing, commit, or release record for each change; who proposed, approved, developed, tested, and deployed it; when it was first considered and whether any portion of the work was planned before the events alleged against Defendants; the reason for each change; whether it prevented authenticated front-line pilots from receiving personal cell-phone-number or home-address fields in a server response; whether comparable controls existed before January 12, 2026; and the factual basis for SkyWest's descriptions of the change as "additional restrictions" and as responses that "previously returned 'hidden details'" reflecting an "Access:denied" response.

**Topic No. 9: SkyWest's Investigation.** SkyWest's investigation of Moussaron's and Krithivas's alleged access to and use of Pilot Contact Information, from the first report or event that caused SkyWest to investigate through the filing of the Complaint, including when the investigation began and what triggered it, including the social-media post produced as SkyWest_000015, the submissions through the reporting portal produced as SkyWest_0000505–

520, and any other report, complaint, or employee concern; each person participating in the factual or technical investigation and the role of each, including Justin Esplin, Tyler Butterfus, and Ryan Cowdin; the systems, devices, logs, records, and data examined; the factual findings reached and when each was reached; information inconsistent with or not supporting SkyWest's conclusions; when SkyWest first concluded that either Defendant had circumvented a technical control, who reached that conclusion, and its nonprivileged factual basis; and the involvement of Legal, People, Flight Operations, Corporate Communications, and executive personnel in the investigation.

**Topic No. 10: Policies SkyWest Contends Defendants Violated.** Each SkyWest policy, Code of Conduct provision (including SP 150 and its revisions), information-security policy, rule, instruction, training, or other noncontractual restriction that SkyWest contends either Defendant violated, including the version in effect during the Relevant Period and its effective date; how and when it was communicated to each Defendant; whether the provision restricted access to information, use after access, or both; any language addressing browser developer tools, direct endpoint requests, scripts, scraping, bulk retrieval, Pilot Contact Information, or union organizing; and how SkyWest distinguishes a violation of policy from circumvention of a technical access control.

**Topic No. 11: The Confidentiality and Nondisclosure Agreements.** The factual basis for SkyWest's contention that Moussaron and Krithivas entered the Confidentiality and Nondisclosure Agreements that SkyWest alleges governed Pilot Contact Information, including the onboarding platform through which each NDA was presented, its custodian, configuration, and retention policy; the process by which a pilot reviewed, acknowledged, accepted, or executed the NDA, including whether a typed name, drawn signature, scrolling, or affirmative acknowledgment was required; the records SkyWest contends demonstrate each Defendant's assent and any audit

trail of each Defendant's interaction with the NDA task; how the "Approved by" field was generated and whether the displayed name reflects the name at task completion or the name in SkyWest's records when the record is later displayed or exported; the version of the NDA applicable to each Defendant; the factual basis for SkyWest's contention that employee-directory telephone numbers and home addresses fall within the NDA's definition of confidential information; and the factual basis for any contention that a violation of the NDA altered or terminated a user's technical authorization to access SWOL.

**Topic No. 12: Confidentiality and Availability of Pilot Contact Information.** The confidentiality, accessibility, availability, and treatment of Pilot Contact Information from January 1, 2023 through January 30, 2026, including each SkyWest system in which pilot telephone numbers or home addresses were available (including SWOL, i-Manage, CrewTrac, UltiPro, and Sked+); the categories of employees, managers, contractors, representatives, service accounts, and SAPA representatives with access to each, the number of users with access through each system or permission group, and the purposes for which access was provided; the ability of pilots to obtain such information through SWOL or other SkyWest systems; SkyWest's efforts to maintain the information as confidential; SkyWest's knowledge of publicly available sources of pilot contact information; and the factual basis for SkyWest's contention that the particular information allegedly obtained by Defendants was confidential or proprietary.

**Topic No. 13: The December 9, 2025 Message and the Spam Text Notice.** SkyWest's knowledge of and response to the December 9, 2025 text message to pilots, including when SkyWest first learned of the message, how, and from whom; what SkyWest understood the message to concern and whether it understood the message to concern possible ALPA representation or union organizing; the reports SkyWest received concerning the message and

SkyWest's investigation of its source and purpose; the decision to issue the December 10, 2025 Spam Text Notice (SkyWest_000002), the persons involved in drafting, approving, and distributing it, the factual basis for its statements concerning the source and use of pilot contact information, and the decision to characterize the message as "spam"; and any action SkyWest took because it understood the communication to involve union organizing.

**Topic No. 14: SkyWest's Knowledge of ALPA Organizing and Its Corporate Response.** SkyWest's knowledge of, response to, and actions concerning efforts by Moussaron, the Organizing Committee, ALPA, or other SkyWest pilots to organize or obtain representation through ALPA during 2025 and 2026, including when and how SkyWest first became aware of the organizing activity; the persons within SkyWest who received or discussed that information; whether the organizing purpose was considered in the SWOL investigation, in employment decisions, in communications to employees, or in SkyWest's decision to file this action; any distinction SkyWest drew between use of pilot contact information for union-organizing purposes and for other non-SkyWest purposes; and the nonprivileged actions SkyWest took in response to the organizing effort, including any restriction of access from SkyWest networks or crew-room computers to websites concerning ALPA or the organizing campaign.

**Topic No. 15: SkyWest and SAPA.** From January 1, 2023 through the present, SkyWest's provision of pilot names, addresses, telephone numbers, contact lists, directory or Sked+ access, mailing information, funding, office space, IT infrastructure, legal services, or other resources to SAPA or persons acting on its behalf; SkyWest's use of pilot contact information to facilitate SAPA communications, elections, solicitations, or mailings; the policies and the technical or contractual authorization governing such access or use and the SkyWest personnel responsible for approving it; and nonprivileged communications between SkyWest and SAPA or SAPA

representatives concerning ALPA, union organizing, the Organizing Committee, Moussaron, Krithivas, the December 9, 2025 text message, or Pilot Contact Information.

**Topic No. 16: The Termination Decision.** The factual basis, chronology, participants, and decision-making concerning Moussaron's January 26, 2026 termination including the planning of the January 26, 2026 meeting; the persons who attended, participated in, were consulted regarding, or provided information concerning the termination decision; the documents brought to or considered in connection with the meeting; any recording or notes of the meeting; the factual findings supplied to each decision-maker; the identity and role of each person who had meaningful input into or authority over the termination decision; the reasons SkyWest contends justified Moussaron's termination; the policies or standards SkyWest contends Moussaron violated; the basis for SkyWest's application of those policies or standards to Moussaron's conduct; and the factual basis for termination rather than lesser discipline.

**Topic No. 17: The January 26, 2026 Communication.** The drafting, review, approval, purpose, intended audience, publication, and distribution of the January 26, 2026 Communication, including the persons who drafted, edited, reviewed, approved, or supplied factual information for the Communication, including MSL Group; the date and time the Communication was prepared, approved, and transmitted; the documents and information considered in preparing it; and the source and factual basis known or reasonably available to SkyWest at the time for its statements characterizing Defendants' conduct as theft, stealing, unauthorized access, manipulation, a violation of trust, unethical conduct, or unlawful conduct.

**Topic No. 18: Reporting of Moussaron's Termination.** SkyWest's reporting or communication of Moussaron's termination, reason for termination, employment record, or alleged misconduct to the Federal Aviation Administration, the Pilot Records Database,

prospective employers, background-check providers, or other entities that obtain pilot employment information, including the content and timing of each report or communication, the persons who prepared, approved, or made it, the information SkyWest provided to any prospective employer or background-check provider that requested it, and SkyWest's policies and practices governing such reporting.

**Topic No. 19: Communications with American Airlines.** All communications between SkyWest and American Airlines concerning Krithivas, Moussaron, the allegations in this action, or the Complaint from January 1, 2026 through April 30, 2026, including Dale Hansen's February 2, 2026 email to Nate Gatten, the Hansen–Gatten telephone call on or about February 4, 2026, and Russell "Chip" Childs's communication with an American Airlines representative; the identity of every SkyWest and American Airlines participant; the substance of each communication and the documents transmitted; the persons who authorized or approved each communication and the documents transmitted; SkyWest's purpose in communicating with American Airlines and the response or action SkyWest expected or intended; SkyWest's knowledge of any action American Airlines took, including placing Krithivas on administrative leave; communications after Krithivas's resignation.

**Topic No. 20: Claimed Loss, Harm, and Damages, and Comparable Incidents.** Every component of the loss, harm, damage, cost, or expense SkyWest attributes to Defendants' alleged conduct, including the amount of each component and when it was incurred; the person, department, consultant, or vendor performing the work and the work performed; the hours, rates, invoices, purchase orders, time records, and calculation methodology, including the 186 hours of cybersecurity-team time and 34 hours of software-development time SkyWest has described; whether each cost was paid, accrued, allocated, estimated, or internally absorbed; the Palo Alto

Networks Unit 42 retainer purchased in August 2025, the 200 retainer credits consumed by the penetration test performed in the first quarter of 2026, the scope, statement of work, findings, and deliverables of that test, and the $15,840 paid for replacement credits; forensic, incident-response, remediation, testing, and employee-communication expenses; whether legal fees, litigation expenses, or expert fees are included; whether any work was previously planned or would have occurred absent Defendants' alleged conduct; whether any work corrected or changed the operation of the Employee-Detail Endpoint or field-level controls rather than restoring the system to its prior condition; how SkyWest determined that each amount was caused by conduct attributed to Defendants; and, from January 1, 2023 through January 30, 2026, each incident known to SkyWest in which an employee was determined or alleged to have viewed information not rendered by a user interface, used browser developer tools, directly invoked or modified a URL or endpoint, or exceeded role-based permissions, including the nature of the access, SkyWest's response or remediation, any discipline imposed, and whether SkyWest asserted any civil claim.

For each of the foregoing matters, the designee should be prepared to testify to the identity of any documents, electronically stored information, or other materials reviewed in preparing to testify on that matter, and to the identity of the SkyWest personnel consulted in that preparation.

Defendants reserve the right to amend or supplement the matters for examination, to notice additional depositions, and to serve document requests consistent with the Federal Rules of Civil Procedure, the Local Rules, and the Scheduling Order.

DATED this 2nd day of October, 2026.

| | |
|---|---|
| **SCHOLNICK THORNE HOLLAND** | **LAW OFFICES OF TIMOTHY D. DUCAR, PLC** |
| **/s/ Jonathan K. Thorne (with permission)**<br>Jonathan K. Thorne (Utah Bar No. 12694)<br>Lauren I. Scholnick (Utah Bar No. 7776) | **/s/ Scott C. Uthe**<br>Timothy D. Ducar (Utah Bar No. 13423)<br>Scott C. Uthe (pro hac vice) |

John E. "Jack" Holland (pro hac vice)
40 South 600 East
Salt Lake City, Utah 84102
jonathan@utahjobjustice.com
lauren@utahjobjustice.com
jack@laborwest.com

*Attorneys for Defendant/Counterclaimant Daniel Moussaron*

9280 E. Raintree Drive, Suite 104
Scottsdale, Arizona 85260
tducar@azlawyers.com
suthe@azlawyers.com
orders@azlawyers.com

*Attorneys for Defendant/Counterclaimant Vikaas Krithivas*

**CERTIFICATE OF SERVICE**

I certify that on the 2nd day of October, 2026, I emailed the foregoing to all counsel of record.

**/s/ Scott C. Uthe**
Scott C. Uthe