Gregory M. Saylin, #9648
Tyson C. Horrocks, #12557
Zachary T. Burford, #19771
Holland & Hart LLP
222 South Main Street, Suite 2200
Salt Lake City, UT 84101-2194
Telephone: 801.799.5800
GMSaylin@hollandhart.com
TCHorrocks@hollandhart.com
ZTBurford@hollandhart.com

*Attorneys for Plaintiff and Counterclaim Defendant SkyWest Airlines, Inc. and Counterclaim Defendant Dale Hansen*

---

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF UTAH – SOUTHERN DIVISION**

| | |
|---|---|
| SKYWEST AIRLINES, INC.,<br><br>Plaintiff and Counterclaim Defendant,<br><br>and DALE HANSEN,<br><br>Additional Counterclaim Defendant,<br><br>vs.<br><br>DANIEL MOUSSARON,<br><br>Defendant and Counterclaim Plaintiff,<br><br>and VIKAAS KRITHIVAS,<br><br>Defendant and Counterclaim Plaintiff. | **PLAINTIFF AND COUNTERCLAIM DEFENDANT SKYWEST AIRLINES, INC.'S REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS AS TO COUNTS II AND III OF MOUSSARON'S COUNTERCLAIM**<br><br>Civil No. 4:26-cv-00015-DN-PK<br><br>Senior District Judge David Nuffer<br>Magistrate Judge Paul Kohler |

SkyWest Airlines, Inc. ("SkyWest") submits this reply in support of its Motion for Judgment on the Pleadings as to Counts II and III of Daniel Moussaron's ("Moussaron") Counterclaim (Dkt. No. 122) ("Motion" or "Mot.").

## INTRODUCTION

Moussaron's Opposition (Dkt. No. 154) ("Opposition" or "Opp'n") confirms that his defamation claim turns not on what he did, but on what to call it. He admits that he "accessed SWOL, viewed pilot contact information, and saved names, employee number, phone numbers and addresses of various pilots sequentially based on seniority," Dkt. No. 47, Moussaron's Ans. ("Answer") ¶ 27; that the phone numbers and addresses "did not populate in the user interface," Dkt. No. 47, Countercl. ("Countercl.") ¶ 36; and that "the Defendants used a script to access and save pilot contact information," Answer ¶ 33. The January 26 Communication (the "Communication") described that conduct. Its characterizations of "unauthorized," "unethical," "stealing," and "theft," neither make the admitted facts untrue nor convert Mr. Childs's condemnation into an actionable accusation of crime.

The tortious interference claim fares no better. The Opposition invokes an unpleaded class of prospective employers and discovery responses that, in any event, show no causal link to any lost job. Finally, 49 U.S.C. § 44703(j) forecloses state tort liability for SkyWest's submission of a federally mandated, accurate Pilot Records Database ("PRD") entry. The Court should grant the Motion.

## ARGUMENT

### I. COUNT II FAILS AS A MATTER OF LAW

#### A. The Communication Is Substantially True.

Moussaron argues that truth cannot be decided on the pleadings because he denies his access was "unauthorized." Opp'n at 9–11. But "[w]hen the underlying facts as to the gist or sting are undisputed, substantial truth may be determined as a matter of law." *Hogan v. Winder*, 762

F.3d 1096, 1106 (10th Cir. 2014) (cleaned up) (affirming Rule 12(b)(6) dismissal). The Communication stated that two former pilots "downloaded pilot contact information that was not accessible to line pilots or any employee through normal processes," that it "consisted of names, addresses, and phone numbers," and that it "took extensive effort and manipulation to retrieve." Dkt. No. 122-1, Ex. A. Moussaron admits each point: over months he saved pilots' contact information by seniority, Answer ¶ 27, using a script, *id.* ¶ 33, and the phone numbers and addresses "did not populate in the user interface" but were obtained through "the browser's development tools." Countercl. ¶ 36.

The Opposition all but concedes the point, acknowledging that if the Communication had said the data "did not populate in the user interface," "SkyWest might have an argument." Opp'n at 10 & n.1. But data that does not appear in the user interface is, by definition, "not accessible to line pilots . . . through normal processes." Ex. A. What remains is Moussaron's disagreement with labels such as "unauthorized" and "stealing," which is a dispute over legal characterization. Moussaron cannot avoid the substantial-truth doctrine by isolating the Communication's adjectives and adverbs while conceding the facts on which they rest. "[O]pinions about the legal significance of [a plaintiff's] actions, even opinions that are questionable, are not actionable as defamation." *Nunes v. Rushton*, 299 F. Supp. 3d 1216, 1232 (D. Utah 2018). And "[t]he defense of truth is sufficiently established if the defamatory charge is true in substance"; "[i]nsignificant inaccuracies of expression do not defeat the defense of truth." *RainFocus Inc. v. Cvent Inc.*, 2023 UT App 32, ¶ 10. The sting—that two pilots used technical means to retrieve colleagues' contact information SWOL did not display to them and sent it to a third party—is the same under either label.

*RainFocus* is not to the contrary. There, the plaintiff disputed copying Cvent's source code, so the court had to "accept RainFocus's assertion that the underlying allegations are false." 2023 UT App 32, ¶ 21. By contrast, in *Brehany*, the plaintiffs "admitted at trial that they had used illegal drugs while employed," establishing the truth of statements that their terminations were "drug-related." *Id.* (quoting *Brehany v. Nordstrom*, 812 P.2d 49, 57–58 (Utah 1991)). Moussaron too admits the conduct and disputes only its significance. The Communication is substantially true as a matter of law.

**B. <u>The Challenged Characterizations Are Not Actionable</u>.**

Moussaron contends that the terms "unauthorized," "unlawfully stealing," and "theft" are verifiable accusations of crime. Opp'n at 5–8. *Hogan* forecloses that argument. Although "[f]alse accusations of criminal conduct can be defamatory," accusations of "extortion" and "blackmail" are "a familiar rhetorical device," and readers who understood the dispute behind them would recognize that "the objectionable terms were merely hyperbole and rhetorical flourish." 762 F.3d at 1107–08. *Nunes* applied the same rule under Utah law to accusations of "fraud," a "scam," and "harassment" that "did not ascribe to Nunes any acts other than those Nunes actually performed." 299 F. Supp. 3d at 1230–32.

So too here. The Communication disclosed the conduct it condemned: retrieving contact information unavailable through normal processes to reach and influence pilots. Ex. A. Every challenged term, Countercl. ¶ 83, characterizes that admitted conduct. "Theft," "stealing," "unlawfully," and "unauthorized" express Mr. Childs's view of its significance and imply no undisclosed facts. *See* Restatement (Second) of Torts § 566. "Manipulation" and "extensive effort" describe what Moussaron admits—months of scripted retrieval of data he could not view. Answer

¶¶ 27, 33; Countercl. ¶ 36. And "trampled on these values," "unethical," "violation of trust," and "shocked and disgusted" are classic opinions. *See Nunes*, 299 F. Supp. 3d at 1230 ("unethical" was opinion that "cannot be proven true or false"); *DP Creations, LLC v. Ortiz*, 2021 U.S. Dist. LEXIS 141253, at *11–12 (D. Utah Mar. 5, 2021).

Nor does calling the Communication "truthful" concede that every word is a verifiable fact. Opp'n at 6. As in *West v. Thomson Newspapers*, which examined the statement once "[s]tripped of exaggeration," 872 P.2d 999, 1010 (Utah 1994), the Communication, stripped of Mr. Childs's evaluative words, reports conduct Moussaron admits.

Unlike here, *RainFocus* and *SME Steel*[1] involved disputed, verifiable accusations. In *RainFocus*, Cvent's executives privately told a competitor's clients, "we have evidence that they actually duplicated or plagiarized significant portions of our source code"—a disputed claim to be "objectively verified through the Federal Action." 2023 UT App 32, ¶¶ 3, 25, 27. In *SME Steel*, a competitor's counsel told third parties that the defendant "lack[ed] sufficient expertise, experience, and facilities" and "misrepresented" its products, implying undisclosed evidence. 681 F. Supp. 3d 1181, 1222, 1224–25 (D. Utah 2023). Both involved disputed, "intentional, private, and targeted undercutting of a competitor's business." *RainFocus*, 2023 UT App 32, ¶ 38; *SME Steel*, 681 F. Supp. 3d at 1226. Here, an employer's CEO told his own workforce (whose information was taken) about admitted conduct, using the "exaggerated or hyperbolic" language that is "a signal of opinion." *SME Steel*, F. Supp. 3d at 1225. The Communication's evaluative statements are protected opinions.

---

[1] *SME Steel* was decided on summary judgment, and the court did not apply the rule that a court does not draw defamatory inferences in the plaintiff's favor. 681 F. Supp. 3d at 1223 n.325.

**C. <u>Moussaron Has Not Pleaded Facts Overcoming the Common-Interest Privilege</u>.**

*Mathews v. McCown* does not bar resolving privilege on the pleadings. Opp'n at 12. It held only that a court erred by considering "more than the sufficiency of [the] complaint" on a Rule 12(b)(6) motion, recognizing that resolving an affirmative defense "remains appropriate on a motion for judgment on the pleadings (where the pleadings contain all the information needed to decide the motion)." 2025 UT 34, ¶¶ 143–44; *accord Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018). SkyWest pleaded the privilege, Dkt. No. 53 at 14–15, and the pleadings resolve it.

Moussaron does not dispute that the privilege covers an employer's communication to employees about the reasons for a discharge. *Brehany*, 812 P.2d at 58; *Ferguson v. Williams & Hunt, Inc.*, 2009 UT 49, ¶ 27. He argues abuse. Opp'n at 12–14. Abuse through falsity requires that the speaker knew the statement was false or "acted in reckless disregard as to its falsity"—a subjective test that "questions about the adequacy of [the] investigation" do not satisfy, and that likewise governs reasonable belief. *Ferguson*, 2009 UT, ¶¶ 28, 30 & n.7, 33.

The Counterclaim pleads no such facts. Its allegations that SkyWest "knew that Mr. Moussaron's access was authorized by its own servers" and therefore "knew it was false," Countercl. ¶¶ 63–64, 86–88, simply attribute Moussaron's legal theory—that a server response equals authorization—to SkyWest, which has consistently maintained the opposite. Dkt. No. 53 ¶¶ 31, 35–40. No speaker could have "entertained serious doubts" about statements describing admitted conduct. *Ferguson*, 2009 UT 49, ¶ 30. The January 12 SWOL change, Countercl. ¶¶ 33, 52, shows only that SkyWest closed the loophole Defendants exploited, not that it doubted its later statement. *Cf.* Fed. R. Evid. 407. The remaining allegation of "malice or reckless disregard,"

Countercl. ¶ 92, is a bare label. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Mohamed v. New Bern Transp. Corp.*, 2023 U.S. Dist. LEXIS 208126, at *9–10 (D. Md. Nov. 21, 2023) (technically accurate statement to co-workers could not show malice overcoming employer's privilege).

Moussaron's anti-union motive theory, Opp'n at 13, fares no better. The privilege protects communications that advance a legitimate common interest, *Ferguson*, 2009 UT 49, ¶ 27, and pilots whose information was taken share their employer's interest in learning what happened and what is being done. Ex. A. Common-law malice requires spite in "making the allegedly defamatory statement," not ill will shown in other acts. *Ferguson*, 2009 UT 49, ¶¶ 28, 36, 45. Moussaron's allegations concern a December 2025 "Spam Text Notice" and his termination, Countercl. ¶¶ 48–49, 79. They do not arise from the Communication, which did not name him. Nor was publication excessive—every recipient was a pilot whose information Moussaron took or could have taken, Countercl. ¶ 45, and so each had a "legally justified reason for receiving it." *Brehany*, 812 P.2d at 58.

### D. <u>Count II Remains Conclusory.</u>

Per se status does not rescue Count II. Opp'n at 14–15. It only excuses pleading damages; it "does not . . . otherwise modify the elements of a prima facie cause of action." *Nunes*, 299 F. Supp. 3d at 1234; *see Mathews*, 2025 UT 34, ¶ 89 n.15. The claim still fails because the Communication's factual statements are substantially true, and its characterizations are protected opinion. *Supra* Part I.A–B. And no statement qualifies: "theft" and "unlawfully stealing" characterize admitted conduct, *see Hogan*, 762 F.3d at 1107–08, and the Communication nowhere calls Moussaron "an untrustworthy pilot." Opp'n at 15.

Without per se treatment, the allegations that the Communication "has damaged" his reputation and left him "unlikely to obtain another pilot position," Countercl. ¶¶ 90, 93, are conclusory—particularly because he does not allege any prospective employer received it. *See Miller v. Safe Home Sec.*, 2026 U.S. Dist. LEXIS 201079, at *12–13 (D. Utah Aug. 14, 2026). The Court should dismiss.

## II. COUNT III FAILS AS A MATTER OF LAW.

### A. <u>The Counterclaim Identifies No Existing or Prospective Relationship.</u>

Tortious interference requires facts identifying an existing or prospective economic relationship. Mot. at 18–20. The Counterclaim alleges only that the PRD report "will negatively impact his ability to get a new pilot job," without identifying any specific lost opportunity. Countercl. ¶ 97. The Opposition's new "defined, finite universe" of "air carriers that hire commercial pilots," Opp'n at 16, appears nowhere in the Counterclaim. "A plaintiff cannot avoid dismissal by adding new allegations in a response brief." *Brightspot Solutions, LLC v. A+ Prods.*, 2021 U.S. Dist. LEXIS 65569, at *23 (D. Colo. Apr. 5, 2021).

The theory fails anyway. A plaintiff must "allege facts showing . . . a potential contract or business opportunity with a third party or identifiable class of persons." *PurCo Fleet Servs. v. Towers*, 38 F. Supp. 2d 1320, 1325–26 (D. Utah 1999). *P&G v. Haugen* rejected "[d]irect and indirect purchasers" as "general groups whose boundaries are almost impossible to fathom." 1997 U.S. Dist. LEXIS 23832, at *10–11 (D. Utah July 14, 1997). "Every air carrier that hires pilots" is a labor market, not a relationship. Nor does Moussaron allege that he applied to, negotiated with, or was considered by any carrier. *See Brightspot*, 2021 U.S. Dist. LEXIS 65569, at *34. Even in *Shanley*, an identified readership was insufficient on a full record absent proof of a contract

"substantially likely to be formed." *Shanley v. Hutchings*, 716 F. Supp. 3d 1179, 1201–02 (D. Utah 2024).

**B. <u>The Opposition's "Facts" Are Outside the Pleadings</u>.**

Moussaron's reliance on his own interrogatory answers—more than thirty applications and several rejections, Opp'n at 19–20 n.4—is improper on a Rule 12(c) motion, which is confined to the pleadings, their exhibits, and documents incorporated by reference. *Park Univ. Enters., Inc. v. Am. Cas. Co. of Reading, Pa.*, 442 F.3d 1239, 1244 (10th Cir. 2006); *Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1253–54 (10th Cir. 2005); Fed. R. Civ. P. 12(d). Amendment "must be sought through a motion to amend." *P&G*, 1997 U.S. Dist. LEXIS 23832, at *15. Regardless, those answers defeat causation. Moussaron concedes that employers' reasons "are typically not communicated to applicants," that he has "no communications with any airline, work provider, or recruiter referencing the PRD Record,“ and that his rejections included data, product, and finance positions unrelated to the PRD. Moussaron's Resp. to SkyWest's Third Set of Disc. Reqs. ("Disc. Resp."), Interrog. No. 18; RFP No. 33.

**C. <u>The Counterclaim Pleads No Injury.</u>**

A plaintiff "must allege pecuniary loss caused by the intentional interference," *Yadan Zhang v. Transpose Platform Mgmt., LLC*, 2024 U.S. Dist. LEXIS 95753, at *22–23 (D. Utah May 29, 2024), and an allegation that business relationships were damaged "fails to state facts to support injury." *Hardy v. D&D Mgmt. 2, LLC*, 2024 U.S. Dist. LEXIS 231138, at *19 (D. Utah Dec. 20, 2024). Moussaron offers only the forecasts of future harm quoted above. Countercl. ¶¶ 93, 97. *Miller* held far more specific allegations—a termination and a rescinded signed job offer—were too conclusory to plead special damages. 2026 U.S. Dist. LEXIS 201079, at *12–13.

**D. <u>Neither Defamation Nor the RLA Supplies Improper Means.</u>**

Because Count II fails, defamation cannot supply improper means. Opp'n at 17 (quoting *Mackey v. Krause*, 2025 UT 37, ¶ 107); *Ferguson*, 2009 UT 49, ¶ 36. Nor can the RLA. Moussaron's "single retaliatory course of conduct" theory, Opp'n at 18, lumps together his termination, the PRD report, and the Communication, but only the PRD report is alleged to have reached any prospective employer. Countercl. ¶¶ 97–98. But federal law requires that report whenever a pilot is terminated. 14 C.F.R. §§ 111.215(a), 111.235(a), (d). Doing "an act which he had a legal right to do" is not improper means. *C.R. England v. Swift Transp. Co.*, 2019 UT 8, ¶ 41, 437 P.3d 343 (cleaned up). Count III fails and must be dismissed.

**E. <u>Section 44703(j) Preempts Liability Based on the PRD Report.</u>**

Section 44703(j)(2) bars any State from enforcing a law "that prohibits, penalizes, or imposes liability for furnishing or using records in accordance with subsection (h) or (i)." 49 U.S.C. § 44703(j)(2); *Classic Jet Ctr. LLC v. Strmac*, 761 F. Supp. 3d 1060, 1066 (N.D. Ohio 2024). Unlike subsection (j)(1), (j)(2) contains no release requirement. Mot. at 23–24. Federal law required SkyWest to report the separation and state whether it was an "employer-initiated separation not related to pilot performance," 14 C.F.R. §§ 111.215(a), 111.235(a), (d)(2); *see* 49 U.S.C. § 44703(i)(2)(B)(ii)(III), (i)(4)(B), and SkyWest did exactly that. Ex. B. Moussaron's "non-performance" characterization, Countercl. ¶¶ 66, 97, changes nothing; the report was required either way.

The § 44703(j)(3) exception reaches only information the reporting party "knows is false" and that "was maintained in violation of a criminal statute of the United States." 49 U.S.C. § 44703(j)(3). The Counterclaim alleges neither. Moussaron alleges SkyWest knew the

Communication was false,[2] not the PRD entry, which states only that he was terminated "not due to pilot performance." Countercl. ¶¶ 63–64, 86–88; Ex. B. And the RLA's penalty provision reaches only a carrier's "willful failure or refusal" to comply with specified paragraphs of § 152, 45 U.S.C. § 152, Tenth; the alleged violation is the termination, not maintenance of the PRD record. Countercl. ¶¶ 71–72.

Because the Counterclaim alleges that SkyWest made the federally required report and alleges no knowing falsity in it, Countercl. ¶¶ 65–66, 97, dismissal on this defense is proper. *Fernandez*, 883 F.3d at 1299.

## III. MOUSSARON'S INFORMAL REQUEST FOR LEAVE SHOULD BE TREATED THE SAME AS SKYWEST'S.

Moussaron requests leave to amend only in his Opposition, without a motion or proposed pleading. Opp'n at 19, 21. Yet a week later he joined Krithivas in arguing that SkyWest's parallel request was "procedurally deficient" because SkyWest "did not file a separate motion for leave to amend or comply with DUCivR 15-1," and that SkyWest needed good cause because the May 15, 2026 amendment deadline had passed. Dkt. No. 158 at 9–10. That deadline applied equally to Defendants. Dkt. No. 55 at 6. Held to his own standard, Moussaron's request should be denied. *See Brever v. Rockwell Int'l Corp.*, 40 F.3d 1119, 1130 (10th Cir. 1994). If the Court instead permits Moussaron to replead—or grants Krithivas's parallel request, Dkt. No. 145 at 35–36—it should extend the same treatment to SkyWest's request to amend its CFAA and UCADRA claims. Dkt. No. 153 at 27–28.

---

[2] Moussaron admits that SkyWest terminated his employment on January 26, 2026, Countercl. ¶¶ 55, 96, and the PRD entry reports nothing more than an employer-initiated separation on that date. Ex. B.

In any event, amendment would be futile. Moussaron concedes that he "does not contend that the separation category selected is procedurally inaccurate," Disc. Resp., Interrog. No. 25, which forecloses the § 44703(j)(3) exception, and his other admissions defeat causation. *Supra* Part II.B. Nothing he proposes would save Count II. Nor does he explain his delay, though Breeze, Life Link III, and Southwest accessed his PRD record before the amendment deadline. Disc. Resp., Interrog. No. 25; *see Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1206 (10th Cir. 2006).

**CONCLUSION**

For the foregoing reasons, SkyWest respectfully requests that the Court grant its Motion and dismiss Counts II and III of Moussaron's Counterclaim with prejudice.

Dated this 9th day of October, 2026.

HOLLAND & HART LLP

*/s/ Tyson C. Horrocks*
Gregory M. Saylin
Tyson C. Horrocks
Zachary T. Burford

*Attorneys for Plaintiff and Counterclaim Defendant SkyWest Airlines, Inc.*
*and Counterclaim Defendant Dale Hansen*

**CERTIFICATION OF WORD COUNT**

Pursuant to DUCivR 7-1(a)(6)(C), I, Zachary T. Burford, certify that this Reply contains 3,082 words and complies with DUCivR 7-1(a)(4).

*/s/ Zachary T. Burford*

39762555