# EXHIBIT F

Timothy D. Ducar (13423)
Scott C. Uthe (PHV)
LAW OFFICES OF TIMOTHY D. DUCAR, PLC
9280 E. Raintree Drive, Suite 104
Scottsdale, AZ 85260
Telephone: (480) 502-2119
Facsimile: (480) 452-0900
orders@azlawyers.com
*Attorneys for Defendant Vikaas Krithivas*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF UTAH – SOUTHERN DIVISION**

| | |
|---|---|
| SKYWEST AIRLINES, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>DANIEL MOUSSARON, and VIKAAS KRITHIVAS,<br><br>Defendants. | **DEFENDANT KRITIVAS' FIRST SUPPLEMENTAL RESPONSES TO PLAINTIFF SKYWEST'S SECOND SET OF DISCOVERY REQUESTS TO DEFENDANT VIKAAS KRITHIVAS**<br><br>Civil No. 4:26-cv-00015-DN-PK<br><br>Senior District Judge David Nuffer<br>Magistrate Judge Paul Kohler |

NOW COME Defendant Vikaas Krithivas ("Krithivas"), by and through counsel, Timothy D. Ducar, and the law firm Law Offices of Timothy D. Ducar, PLC, and for his **supplemental** responses to "PLAINTIFF'S SECOND SET OF DISCOVERY REQUESTS TO DEFENDANT VIKAAS KRITHIVAS" states the following:

## INTERROGATORIES

**INTERROGATORY NO. 6:** Identify the Remote Server to which SWOL Data was transmitted on September 3, 2025, including its URL, IP address, domain name,

hosting provider or service, and date of creation or first activation (if known), and identify every person who, to Your knowledge, had access to or control over the Remote Server at any time during the Relevant Period, including the nature and scope of each person's access.

**RESPONSE:**

Krithivas objects to this interrogatory as overbroad and because Plaintiff's defined terms are vague and ambiguous. Krithivas also objects to the phrase "SkyWest Confidential Information" as Krithivas contends that he did not access nor gather any confidential information. Krithivas further objects to any requests that seek **non-relevant** confidential information protected by the Railway Labor Act.

Notwithstanding and without waiving the aforementioned objections, all information I have regarding the server was told to me by Daniel. He told me that the server belonged to him. After receiving the demand letter, Daniel told me that the server was located in Europe. I have no first hand knowledge regarding the server, nor who has access or control over it.

**INTERROGATORY NO. 7:** Identify every person or entity who received, accessed, viewed, or possessed any SWOL Data or SkyWest Confidential Information at any time during the Relevant Period or thereafter, including without limitation the date, manner, and form of transmission for each, and the specific categories of information involved.

**RESPONSE:**

Krithivas objects to this interrogatory as overbroad and because Plaintiff's defined

terms are vague and ambiguous. Krithivas also objects to the phrase "SkyWest Confidential Information" as Krithivas contends that he did not access or gather any confidential information. Krithivas further objects to any requests that seek **non-relevant** confidential information protected by the Railway Labor Act.

Notwithstanding and without waiving the aforementioned objections, the pilot contact information that was transmitted to the server referred to in Interrogator No. 7, on September 3, 2025, was not in my control. Daniel Moussaron is the only person that I know of that had access or viewed the information transmitted to the server.

**INTERROGATORY NO. 8:** Describe every step You took on or around September 3, 2025 to access SWOL and extract pilot data, including: (a) how You received and installed the Tampermonkey extension and the Script; (b) how the Script operated, including what data fields it accessed, how it iterated through records, and how data was transmitted to the Remote Server; (c) what specific instructions Moussaron gave You, when, and through what medium; (d) the Device You used; (e) whether You paused Your session and, if so, when and why; (f) any Communications You had with Moussaron during the session, including the content and timing of each; and (g) whether You verified or reviewed the data being transmitted.

**RESPONSE:**

Krithivas objects to this interrogatory as vague, ambiguous, overbroad, and unduly burdensome. Additionally, Krithivas objects to the compound nature of the interrogatory.

Notwithstanding and without waiving the aforementioned objections, Krithivas

responds:

The access occurred on September 3, 2025. Daniel set up a Teams Meeting. There was no video, but we spoke to each other on the Teams call. He told me what browser extension to download from Google Web Store. I had this extension downloaded because an ad-blocker extension I was using had stopped working, and I saw a post on Reddit recommending that I download the browser extension instead. However, I wasn't ever able to make it work. It was on my computer being unused, so I did not have to download it again.

When I was on the call with Daniel, I had forgotten it was on my computer so I went into Google Web Store to download it, and saw it was already on my computer.

Daniel told me that he had a script that would automate me clicking one by one through the directory and gather the information, speeding up the process of what I could do manually. He told me that the information would not be saved on my computer and that it would just automatically send it to his server, so there wasn't anything else that I had to do with it.

Aside from what he told me, I do not know how the script worked or what it specifically accessed. I do not know how it transmitted data to the Remote Server.

Daniel told me to log into SWOL using my credentials and how to add the script to the extension and how to run it. I used my Desktop Computer.

Daniel and I got off the Teams call while it was running.

Daniel texted me that there was an issue with nothing being saved. I asked via text if I should stop, he said yes while he looked into it. There's a stop button in the app I clicked.

He said to join the Microsoft Teams call again.

I joined the Teams call and Daniel troubleshot some things, but I do remember what. He said it was good to go, and we got off the phone. I don't recall if he resent the script or if it was something on his server's end. He may have resent the script, but if he did it would have been in our Teams chat. I didn't change any code myself. I recall hitting start when he told me it was good to go.

Later, I noticed that the script appeared to be stopped on a particular pilot's employee number and I texted Moussaron to inform him. He responded and said that he "adjust[ed] a back-end script." After this, it proceeded. I did not verify or review data being transmitted. We did not get on another call during this issue, and I do not know what he did to make it work aside from what he told me.

**INTERROGATORY NO. 9:** Identify every Coordination Platform You used during the Relevant Period to communicate with Moussaron or any other person regarding (a) SWOL; (b) SWOL Data or SkyWest Confidential Information; (c) contacting SkyWest pilots using non- public contact information; or (d) union organizing at SkyWest, including for each platform the usernames or account identifiers used and the approximate dates of such communications.

**RESPONSE:**

Krithivas objects to this interrogatory as vague, ambiguous, overbroad, and unduly burdensome. Krithivas also objects to the phrase "SkyWest Confidential Information" as Krithivas contends that he did not access or gather any confidential information. Krithivas further objects to any requests that seek **non-relevant**

confidential information protected by the Railway Labor Act.

Notwithstanding and without waiving the aforementioned objections, Krithivas responds:

Daniel texted me about needing help on Aug. 30. I responded on Sep. 1, scheduling a call on Sep. 3. Daniel texted me on Sep 3 to send the Teams Call invite via my email.

I only communicated with Daniel via text message, Microsoft Teams voice call, and Microsoft Teams chat (it was the chat for our voice call) regarding my access to SWOL. I did not use any of the data accessed in the relevant period to contact SkyWest pilots. I did not contact other SkyWest pilots regarding union organizing at SkyWest.

I was introduced to Daniel by another pilot I frequently flew with who had asked me if I was favorable of unionization. That pilot told me that they would give my information to someone who was trying to organize a union drive.

**INTERROGATORY NO. 10:** Describe any union or labor organizing effort directed at SkyWest pilots in which You participated during the Relevant Period, identifying the union or labor organization involved, every person participating in the effort (other than Moussaron), and state whether You received or were promised any compensation, reimbursement, or other benefit in connection with (a) accessing SWOL; (b) obtaining, transmitting, or using SWOL Data; or (c) participating in the organizing effort.

**RESPONSE:**

Krithivas objects to this interrogatory as vague, ambiguous, overbroad, and unduly

burdensome. Krithivas further objects to any requests that seek **non-relevant** confidential information protected by the Railway Labor Act. Krithivas expressly asserts that SkyWest's request to name all employees involved with union formation efforts is prohibited under the Railway Labor Act.

Notwithstanding and without waiving the aforementioned objections, Krithivas responds:

I was never promised or the recipient of compensation, reimbursement, or benefit.

I did not participate in any union or labor organizing effort, aside from helping Daniel gather contact information. Daniel frequently referred to the SkyWest ALPA Organizing Committee, which he was a part of.

**INTERROGATORY NO. 11:** Describe the circumstances under which You removed the Tampermonkey plugin from Your computer, including: (a) the date of removal (or Your best approximation); (b) Your reason for removing it; (c) whether You were directed by anyone to do so, and if so, by whom; (d) the method of removal (e.g., uninstall via Chrome extension manager, deletion of files, etc.); (e) whether any backup, copy, or record of the Tampermonkey Script exists or existed on any Device, Account, or platform; and (f) whether You took any steps to delete or overwrite the Script or any data associated with it.

**RESPONSE:**

Krithivas objects to this interrogatory as vague, ambiguous, overbroad, and unduly burdensome. Krithivas also objects that the requests is compound with multiple parts. Notwithstanding and without waiving the aforementioned objections, Krithivas

responds:

I do not know the date of removal. I approximate it was sometime between September 3, 2025 and December 31, 2025. I removed it as part of general computer upkeep and part of normal maintenance. I noticed it on my computer during this period and removed it because I was not using it.

I was not directed by anyone to remove it.

I removed it through the Chrome Extension Manager. I do not know of any backup, copy, or records of the extension or script.

I took no action to delete or overwrite the Script or any information associated with it.

**INTERROGATORY NO. 12:** Identify every instance in which You have destroyed, deleted, wiped, uninstalled, overwritten, or disposed of any Device, Account, Communication, File, Automated Extraction Process, or data relating to SWOL, SWOL Data, SkyWest Confidential Information, or this litigation since August 1, 2025, and for each instance state: (a) the nature of the item destroyed or deleted; (b) the date of destruction or deletion; (c) the approximate date(s) the item was created or, for Communications, the approximate date(s) of the Communication(s); (d) the other party or parties to the Communication (if applicable); (e) the general subject matter; (f) the method of destruction or deletion; and (g) the reason for the destruction or deletion.

**RESPONSE:**

Krithivas objects to this interrogatory as vague, ambiguous, overbroad, and unduly burdensome. Krithivas also objects that the requests is compound with multiple

parts. Notwithstanding and without waiving the aforementioned objections, Krithivas responds:

Tampermonkey is the only Google Chrome Extension that I uninstalled from my computer. See description in Response to Interrogatory 11.

To the best of my knowledge, no other data or information was stored on my computer.

**INTERROGATORY NO. 13:** Identify every Device You owned, used, or had access to during the Relevant Period that contains or may contain SWOL Data, SkyWest Confidential Information, the Tampermonkey Script, Automated Extraction Processes, or Communications relating to SWOL, SkyWest Confidential Information, or union organizing at SkyWest, including the make, model, serial number (if known), operating system, and current location and custodian of each Device.

**RESPONSE:**

Krithivas objects to this interrogatory as vague, ambiguous, overbroad, and unduly burdensome. Krithivas also objects that the requests is compound with multiple parts. Notwithstanding and without waiving the aforementioned objections, Krithivas responds:

The only device I used to access SWOL during the Relevant Period was my personal desktop computer identified in my Declaration. It is a Windows-based, custom built computer. It is in my possession at my home.

**INTERROGATORY NO. 14:** In Your expedited discovery response, You stated that You "removed the plugin from [Your] computer sometime between

September 3, 2025 and December 31, 2025," that "Moussaron provided a text script, via Microsoft Teams chat, that instructed the plugin what to execute," and that You "did not save a copy of this script." State whether You have searched Your Microsoft Teams account, browser history, or any other source for the Script, and if so, describe the results of that search; if not, explain why not.

**RESPONSE:**

I joined the Microsoft Teams meeting as a guest, not from an account that maintains any sort of history. In response to this request, I attempted to click on the "Join the meeting now" link to see if I could access the chat history for the meeting from September 3, 2025. I could not.

**INTERROGATORY NO. 15:** Identify any persons, other than Moussaron, who made phone calls to SkyWest pilots during the Relevant Period using SWOL Data or SkyWest Confidential Information, including without limitation the person or persons responsible for the phone call described in Paragraph 37 of SkyWest's Complaint, and describe Your relationship with that person or persons and whether You provided or facilitated access to any pilot contact information used to make such calls.

**RESPONSE:**

Krithivas objects to this interrogatory as vague, ambiguous, overbroad, and unduly burdensome. Krithivas also objects to the phrase "SkyWest Confidential Information" as Krithivas contends that he did not access or gather any confidential information. Krithivas further objects to any requests that seek **non-relevant** confidential information protected by the Railway Labor Act.

Notwithstanding and without waiving the aforementioned objections, Krithivas responds:

I do not know any such persons.

**REQUESTS FOR PRODUCTION**

**REQUEST FOR PRODUCTION NO. 6:** All records in Your possession, custody, or control relating to the Remote Server to which SWOL Data was transmitted on September 3, 2025, including without limitation: (a) any confirmation, receipt, log, URL, IP address, or Communication confirming or reflecting the transmission; (b) any configuration files, access credentials, or connection strings used to connect to the Remote Server; (c) any records showing data stored on or transmitted through the Remote Server; and (d) any Communications with Moussaron or any other person regarding the setup, access, or use of the Remote Server.

**RESPONSE:**

**After a diligent search, Krithivas has no responsive records except for Krithivas 000001-33 and Krithivas 000041.**

**REQUEST FOR PRODUCTION NO. 7:** All Communications during the Relevant Period between You and any person (other than Your attorneys of record in this litigation) regarding (a) SWOL; (b) SWOL Data or SkyWest Confidential Information; (c) union organizing at SkyWest; (d) contacting SkyWest pilots using personal contact information obtained from SkyWest Systems; or (e) nonprivileged communications relating to this litigation, on every Coordination Platform, including without limitation Microsoft Teams,

iMessage, SMS/RCS, Signal, WhatsApp, Telegram, email, and social media.

**RESPONSE:**

Krithivas objects to the extent the request seeks communications protected under attorney-client privilege, including communications with his attorney in Illinois. Krithivas objects to the degree the requests seeks **non-relevant** communications protected, or prohibited to be requested by SkyWest under the Railway Labor Act. Krithivas objects to this interrogatory as vague, ambiguous, overbroad, and unduly burdensome.

Notwithstanding and without waiving the aforementioned objections, Krithivas responds:

Krithivas has already produced text messages between Krithivas and Moussaron. See Krithivas 000001-33. The meeting invite from Moussaron to Krithivas is provided and marked as Krithivas 000041.

**REQUEST FOR PRODUCTION NO. 8:** A complete native export of all Microsoft Teams accounts, workspaces, channels, and direct-message conversations used by You during the Relevant Period, including all messages, files, attachments, and metadata, specifically including without limitation the complete content of any Automated Extraction Process transmitted to You by Moussaron via Teams, and any Communications regarding SWOL, SWOL Data, or union organizing at SkyWest.

**RESPONSE:**

Krithivas objects to the extent the request seeks communications protected under attorney-client privilege, including communications with his attorney in Illinois. Krithivas objects to the degree the request seeks **non-relevant** communications protected, or

prohibited to be requested by SkyWest under the Railway Labor Act. Krithivas objects to this **request** as vague, ambiguous, overbroad, and unduly burdensome.

Notwithstanding and without waiving the aforementioned objections, Krithivas responds:

**After a diligent search, he has no responsive records except for Krithivas 000041.**

**REQUEST FOR PRODUCTION NO. 9:** All Documents and Communications relating to the union or labor organizing effort at SkyWest that involve, reference, or relate to (a) the collection, use, or distribution of SkyWest pilot contact information; (b) SWOL or SkyWest Confidential Information; (c) the Organizing Committee's data collection efforts as described in Moussaron's Counterclaim; or (d) Communications with any union representative or organizer regarding pilot contact data, including without limitation formation documents, meeting materials, membership lists, financial records, and strategic plans relating to any of the foregoing.

**RESPONSE:**

Krithivas objects to the extent the request seeks communications protected under attorney-client privilege, including communications with his attorney in Illinois. Krithivas objects to the degree the request seeks **non-relevant** communications protected, or prohibited to be requested by SkyWest under the Railway Labor Act. Krithivas objects to this request as vague, ambiguous, overbroad, and unduly burdensome.

Notwithstanding and without waiving the aforementioned objections, Krithivas responds:

**After a diligent search, he has no responsive records except for Krithivas 000041.**

**REQUEST FOR PRODUCTION NO. 10:** All records from the Chrome browser (and any other browser) on Your computer or any other Device used during the Relevant Period, including without limitation browsing history, extension installation and uninstallation logs, Tampermonkey activity logs, Tampermonkey script storage, browser console history, download history, and cache files, from August 1, 2025 to the present, to the extent such records exist or can be recovered.

**RESPONSE:**

Krithivas objects to this request as vague, ambiguous, overbroad, and unduly burdensome. Specifically, all browser history for the Relevant Period, when by SkyWest's own allegations, Krithivas only performed any interactions with SWOL on September 3, 2025.

Notwithstanding and without waiving the aforementioned objections, Krithivas responds:

**After a diligent search, Krithivas responds that he has no responsive records.**

**REQUEST FOR PRODUCTION NO. 11:** All financial records reflecting payments, transfers, reimbursements, or other compensation received, made, or offered to You in connection with (a) accessing SWOL or SkyWest Confidential Information; (b) extracting or distributing SkyWest pilot contact information; or (c) organizing SkyWest pilots for union representation, including without limitation invoices, receipts, bank statements, payment platform records (e.g., PayPal, Venmo, Zelle), and wire transfer

records.

**RESPONSE:**

**After a diligent search, Krithivas responds that he has no responsive records.**

**REQUEST FOR PRODUCTION NO. 12:** All Documents and Communications identifying or reflecting the identity of any person or entity who received SkyWest Confidential Information from the Remote Server, or who used SkyWest Confidential Information to contact SkyWest pilots, including any Communications with such persons regarding the data or its use.

**RESPONSE:**

**After a diligent search, Krithivas responds that he has no responsive documents or communications.**

**REQUEST FOR PRODUCTION NO. 13:** All Documents reflecting Communications between You and any SkyWest pilot or employee, other than Moussaron, discussing SWOL, SkyWest Confidential Information, union organizing at SkyWest, the Organizing Committee's data collection efforts, or this lawsuit.

**RESPONSE:**

Krithivas objects to the degree the request seeks **non-relevant** communications protected, or prohibited to be requested by SkyWest under the Railway Labor Act. Krithivas objects to this request as vague, ambiguous, overbroad, and unduly burdensome.

Notwithstanding and without waiving the aforementioned objections, Krithivas responds:

**After a diligent search, Krithivas responds that he has no responsive**

**documents.**

**REQUEST FOR PRODUCTION NO. 14:** All Documents and Communications between You and any union, union organizer, union representative, or labor organization—including without limitation ALPA and Ron Rindfleisch—from January 1, 2025 to the present that relate to SkyWest, SkyWest pilot contact information, SWOL, SkyWest Confidential Information, or the Organizing Committee's data collection efforts.

**RESPONSE:**

Krithivas objects to the degree the request seeks **non-relevant** communications protected, or prohibited to be requested by SkyWest under the Railway Labor Act. Krithivas objects to this request as vague, ambiguous, overbroad, and unduly burdensome.

Notwithstanding and without waiving the aforementioned objections, Krithivas responds:

**After a diligent search, he has no responsive documents or communications except for Krithivas 000041.**

**REQUEST FOR PRODUCTION NO. 15:** All Documents and Communications reflecting Your efforts, or the efforts of anyone acting at Your direction or on Your behalf, to preserve, return, delete, sequester, segregate, or otherwise address SWOL Data or SkyWest Confidential Information following receipt of SkyWest's demand letter, the filing of this lawsuit, or any litigation-hold or preservation obligation, including without limitation Your decision not to log into Your desktop PC since January 26, 2026 (as referenced in Your expedited discovery responses).

/ / /

**RESPONSE:**

Krithivas objects to the extent the request seeks communications protected under attorney-client privilege, including communications with his attorney in Illinois. Krithivas objects to this request as vague, ambiguous, overbroad, and unduly burdensome.

Notwithstanding and without waiving the aforementioned objections, Krithivas responds:

Other than SkyWest's demand letter dated January 26, 2025 and litigation related orders, **after a diligent search, he has no additional responsive documents or communications.**

**REQUEST FOR PRODUCTION NO. 16:** All Documents and Communications relating to the deletion, destruction, alteration, concealment, uninstallation, decommissioning, or disposal of any Document, Communication, Device, Account, File, Dataset, Automated Extraction Process, or other data or information related to SkyWest Systems, SWOL Data, SkyWest Confidential Information, or the subject matter of this litigation since August 1, 2025, including without limitation the uninstallation of the Tampermonkey plugin and any litigation- hold notices, preservation instructions, or communications regarding preservation obligations.

**RESPONSE:**

Krithivas objects to the extent the request seeks communications protected under attorney-client privilege, including communications with his attorney in Illinois. Krithivas objects to this request as vague, ambiguous, overbroad, and unduly burdensome.

Notwithstanding and without waiving the aforementioned objections, Krithivas

responds:

Other than SkyWest's demand letter dated January 26, 2025 and litigation related orders, **after a diligent search, he has no additional responsive documents or communications**.

**REQUEST FOR PRODUCTION NO. 17**: All Documents and Communications You reviewed, consulted, referenced, or relied upon in preparing Your responses to any Interrogatory, Request for Production, or Request for Admission served on You by SkyWest in this litigation, including without limitation any nonprivileged communications with any person relating to Your discovery responses.

**RESPONSE:**

Krithivas objects to the extent the request seeks communications protected under attorney-client privilege, including communications with his attorney in Illinois. Krithivas objects to this request as vague, ambiguous, overbroad, and unduly burdensome.

Notwithstanding and without waiving the aforementioned objections, Krithivas responds:

**Other than documents already disclosed or filed by all parties, after a diligent search, he has no additional responsive documents or communications**.

**REQUEST FOR PRODUCTION NO. 18**: All Documents and Communications between You and Moussaron during the period January 1, 2025 through the present, on any Coordinating Platform, to the extent not already produced as Krithivas 000021–000033 or otherwise previously produced, including without limitation any Communications regarding this litigation, SWOL Data, SkyWest, ALPA, legal representation, or preservation of

evidence.

**RESPONSE:**

Krithivas objects to this request as vague, ambiguous, overbroad, and unduly burdensome.

Notwithstanding and without waiving the aforementioned objections, Krithivas responds:

None not already produced.

**REQUEST FOR PRODUCTION NO. 19**: All social media posts, online forum posts, blog entries, comments, or other publicly or privately posted online content authored by or attributable to You that reflect, discuss, or relate to SkyWest, SkyWest pilots, SWOL, union organizing at SkyWest, or any effort to contact SkyWest pilots using non-publicly available contact information.

**RESPONSE:**

Krithivas objects to this request as vague, ambiguous, overbroad, and unduly burdensome. Specifically, the complex compound nature of the request is extraordinarily difficult to decipher. Krithivas objects to the degree the request seeks **non-relevant** communications protected, or prohibited to be requested by SkyWest under the Railway Labor Act. Krithivas objects to the extent the request seeks communications protected under attorney-client privilege, including communications with his attorney in Illinois.

Notwithstanding and without waiving the aforementioned objections, Krithivas responds:

I removed posts and comments related to SkyWest en masse due to fear of

harassment related to this lawsuit. To the best of my recollection, I posted in a forum called "Life After SkyWest" on Facebook in September 2025, where pilots shared their total hours, statistics and where they had moved onto after their time with SkyWest. I never made any social media posts related to unionization efforts. I also never made any effort to contact SkyWest pilots using non-publicly available contact information.

As to objections:

By /s/ Scott C. Uthe Date: 7/10/2026
Scott C. Uthe
Timothy D. Ducar
*Attorneys for Defendant Vikaas Krithivas*

**CERTIFICATE OF SERVICE**

I certify that on the 10th day of July, 2026, I electronically transmitted the attached DEFENDANT KRITIVAS' FIRST SUPPLEMENTAL RESPONSES TO PLAINTIFF SKYWEST'S SECOND SET OF DISCOVERY REQUESTS TO DEFENDANT VIKAAS KRITHIVAS, via email to:

Gregory M. Saylin, GMSaylin@hollandhart.com
Zachary T. Burford, ZTBurford@hollandhart.com
Tyler S. Erikson, TSErickson@hollandhart.com
Tyson C. Horrocks, TCHorrocks@hollandhart.com
Attorneys for Plaintiff/Counterclaim Defendant SkyWest Airlines, Inc.

Jonathan Thorn, Jonathan@utahjobjustice.com
Lauren I. Scholnick, Lauren@utahjobjustice.com
Jack Holland, jack@laborwest.com
Attorneys for Defendant/Counterclaim Plaintiff Daniel Moussaron

By: S. Uthe