# EXHIBIT I

Holland & Hart

**Zachary T. Burford**
**Associate**
**Phone** 801.799.5718
ZTBurford@hollandhart.com

June 24, 2026

***VIA EMAIL ONLY***

Timothy D. Ducar
Scott C. Uthe
LAW OFFICES OF TIMOTHY D. DUCAR, PLC
9280 E. Raintree Drive, Suite 104
Scottsdale, AZ 85260
*tducar@azlawyers.com*
*suthe@azlawyers.com*

**Re: *SkyWest Airlines v. Moussaron & Krithivas*—Meet and Confer Regarding Discovery Deficiencies**

Dear Scott:

This letter is sent pursuant to Federal Rule of Civil Procedure 37(a)(1) and DUCivR 37-1 to confer in good faith regarding deficiencies in Mr. Vikaas Krithivas's ("Krithivas") written discovery responses before SkyWest seeks relief from the Court. The responses at issue are Defendant Krithivas' Responses to Plaintiff SkyWest's Second Set of Discovery Requests (served May 21, 2026) and Defendant Krithivas' Responses to Plaintiff SkyWest's Expedited Discovery Requests (served February 20, 2026). As set out below, the responses fall well short of Defendant's obligations under Federal Rules of Civil Procedure 26, 33, and 34, including that objections be stated with specificity (Rules 33(b)(4) and 34(b)(2)(B)), and that a response state whether any responsive materials are being withheld on the basis of an objection (Rule 34(b)(2)(C)).

Please let us know your availability to meet and confer on Defendant's discovery deficiencies.

**A. Krithivas's Objections**

To start, certain categories of Krithivas's objections are improper and should be withdrawn:

- First, Krithivas asserts that the Railway Labor Act provides a blanket basis to refuse production of discoverable information, including the identities of participants and the data at issue. *See, e.g.*, Krithivas Second Resp., Int. No. 10 (asserting that "SkyWest's request to name all employees involved with union formation efforts is prohibited under the Railway Labor Act"). We disagree that the RLA supplies any basis to withhold relevant information. The RLA is a substantive statute that does not create an evidentiary

privilege against civil discovery, and Krithivas cites to no authority establishing one. Indeed, courts have consistently declined to recognize similar claims of a labor-organizing privilege under the RLA that would shield otherwise discoverable information. *See, e.g.*, *NetJets Aviation, Inc. v. NetJets Ass'n of Shared Aircraft Pilots*, 2017 U.S. Dist. LEXIS 129354, at *14 (S.D. Ohio Aug. 15, 2017) (holding that the union "points to no case law to support its assertion that discovery should be precluded under the RLA because of a chilling effect on union members," and that "[a]bsent such case law, the Court finds this argument to be without merit."); *see also Hernandez v. Office of the Comm'r of Baseball*, 331 F.R.D. 474, 478 (S.D.N.Y. 2019) ("We thus reject Hernandez's claim of privilege[,] a result that is consistent with numerous federal courts that have rejected the assertion of a 'union relations privilege.'"). Krithivas's real concern appears to be that producing organizing-related materials could expose or chill protected activity, but that is a privacy concern that the parties' protective order already addresses through appropriate designations. It is not grounds to refuse production of relevant, non-privileged information altogether. The core acts that form the basis for SkyWest's claims (how pilot contact information was obtained, who participated, the purposes for which it was obtained, and how that data was transmitted, stored, and used) are not themselves organizing communications. Accordingly, we ask that Krithivas withdraw any RLA objections and produce all responsive, non-privileged documents.

- Second, Krithivas objects to the defined term "SkyWest Confidential Information" and appears to use that objection to significantly narrow his substantive responses. *See* Krithivas Second Resp., Int. No. 6 (objecting on the ground that "Krithivas contends that he did not access nor gather any confidential information"). Whether the data is "confidential" is a merits dispute, not a basis to limit a response. Rather, Krithivas must produce documents that are responsive and fall within the definition provided by SkyWest. Thus, Krithivas must withdraw this objection and produce all responsive, non-privileged documents.

- Third, Krithivas pervasively asserts boilerplate objections—reciting that nearly every request is "overbroad," "vague," "ambiguous," "unduly burdensome," and frequently "compound," without explaining how any request is deficient or how any burden arises. Unexplained, generalized objections of this kind do not comply with Rules 33(b)(4) and 34(b)(2)(B), which require objections to be stated with specificity. Compounding the problem, many responses pair these objections with answers such as "None" or "None not already produced" without stating whether any responsive material is in fact being withheld on the basis of the objection, as Rule 34(b)(2)(C) requires. We ask that Krithivas either withdraw these boilerplate objections or particularize them, and confirm for each request whether responsive materials are being withheld pursuant to any objection.

- In response to Interrogatories 1 through 5, Krithivas objects "[t]o the degree that request is asking Krithivas to answer for co-defendant Moussaron" and expressly limits his answers on that basis. These interrogatories seek Krithivas's own knowledge, and the

existence of a co-defendant does not relieve him of his obligation under Rule 33(b)(3) to answer each interrogatory separately and fully from his personal knowledge. To the extent Krithivas is withholding any of his own responsive information on this basis, we request that he withdraw the objection and supplement his responses to confirm that his answers are complete.

- In response to Requests Nos. 7, 8, 9, 15, 16, and 17, Krithivas objects "to the extent the request seeks communications protected under attorney-client privilege, including communications with his attorney in Illinois." It is unclear how the materials sought by these requests (including a native Microsoft Teams export, browser history and Tampermonkey or script artifacts, social-media posts, and communications with third parties such as Moussaron and union representatives) could constitute confidential attorney-client communications. The privilege protects confidential communications made for the purpose of obtaining legal advice; it does not protect underlying facts, devices, data, or communications with third parties. Importantly, Krithivas bears the burden of establishing that it applies. Krithivas must explain how each category of withheld material falls within the privilege or withdraw the objection. To the extent Krithivas stands on this objection, he must confirm whether any responsive materials are in fact being withheld on this basis, and if they are being withheld because of a claim of privilege, provide a log in compliance with the rules.

**B. Krithivas's Responses**

In addition to Krithivas's improper objections, SkyWest has further issues with Krithivas's responses, including but not limited to Krithivas's (a) deletion of relevant materials; and (b) unsupported "None" answers that cannot be reconciled with his account of events.

***Deletion of Evidence and Inadequate Search (Int. Nos. 11, 12, 14; RFP Nos. 6, 8, 10, 19).*** Krithivas admits he "removed posts and comments related to SkyWest en masse due to fear of harassment related to this lawsuit" (RFP No. 19), and that he uninstalled the Tampermonkey extension used in the extraction without retaining the script that drove it (Int. No. 11). However, he subsequently responded to requests for Remote Server information, his Microsoft Teams export, browser history, and extension and script artifacts (RFP Nos. 6, 8, and 10) with flat "None"—responses that appear to rest on his lay assessment of his devices rather than any legitimate search. In fact, Krithivas's sole effort to locate the script appears to be clicking a "Join the meeting now" link, because he "joined the Microsoft Teams meeting as a guest, not from an account that maintains any sort of history" (Int. No. 14)—which does not satisfy his obligation to conduct a diligent search and reasonable inquiry.

Regarding the social media deletions, Krithivas does not state *when* he deleted these posts and comments. The timing of these deletions is plainly a critical issue. We therefore demand that Krithivas identify (a) the exact date(s) on which posts and comments were deleted; (b) the specific platforms from which content was removed (including, but not limited to, the "Life After SkyWest" Facebook forum he references); (c) whether the deletions occurred before or

Holland & Hart



after he received SkyWest's demand letter or became aware of this litigation; and (d) whether the content is recoverable through a platform data export (for example, Facebook's "Download Your Information" tool or equivalent), and if so, that he immediately take steps to recover and produce it.

Regarding the Tampermonkey removal (Int. No. 11), Krithivas states only that he removed the extension "sometime between September 3, 2025 and December 31, 2025" as part of "general computer upkeep." That is a four-month window, and the timing is significant—whether removal occurred before or after the December 9, 2025 mass text message or before or after Krithivas became aware of this litigation bears directly on his intent and preservation obligations. Chrome's extension manager logs installation and removal events, and those logs may still be recoverable from his desktop PC, which he has not logged into since January 26, 2026. We request that Krithivas (a) narrow the timeframe of removal to the extent possible; (b) explain why he cannot be more specific; and (c) search his desktop PC for Chrome extension logs and any other artifacts of the Tampermonkey script.

***Remote Server Records (RFP No. 6).*** Krithivas's response of "None" to RFP No. 6 is deficient. As a threshold matter, the response does not comply with Fed. R. Civ. P. 34(b)(2)(B)–(C): Krithivas does not state whether he conducted any search for responsive documents, describe the scope of any search undertaken, or confirm whether any documents are being withheld on the basis of an objection. A bare "None" is inadequate. Moreover, Krithivas's own sworn statements establish that he possesses or has possessed documents responsive to this request. He confirmed in response to Interrogatory No. 8 that he participated in a Teams call with Moussaron on September 3, 2025, during which Moussaron directed him to install Tampermonkey and provided a script that transmitted data to the Remote Server. The produced text messages (Krithivas 000001–33) reflect real-time communications with Moussaron about the server during the September 3 extraction session—including discussions about the script getting "stuck," Moussaron stating he would "adjust a back-end script," and Krithivas confirming at 11:38 PM that the "[s]cript is done" and "made it through all 5043." These text messages are themselves responsive to at least subsection (d) of the request, as they are Communications with Moussaron "regarding the setup, access, or use of the Remote Server." Additionally, Krithivas stated in his expedited discovery response that Moussaron provided a "text script, via Microsoft Teams chat, that instructed the plugin what to execute"—that script, or any record of it, would be responsive to the request, and Krithivas must confirm whether he searched for it in his browser history, Teams data, downloads folder, or any other location on his device. We therefore request that Krithivas (1) describe the search he conducted (if any) to identify documents responsive to this request, including every source searched; (2) confirm whether the text messages already produced (Krithivas 000001–33) are being withheld from this response; and (3) perform any additional searches of his files, browser history, and any other device or account for any responsive records, consistent with his discovery obligations, and produce them immediately.

***Communications (RFP Nos. 7, 13, 14).*** Krithivas' responses to RFP Nos. 7, 13, and 14 are deficient. These requests broadly seek all communications on any Coordination Platform

regarding SWOL, SWOL Data, union organizing at SkyWest, contacting SkyWest pilots, or this litigation—yet Krithivas produces only the Moussaron text messages (Krithivas 000001–33) and a single meeting invitation (Krithivas 000041), and does not confirm whether he is withholding any responsive communications on the basis of his objections. This is inadequate for several reasons. First, Krithivas' own discovery responses identify communications responsive to these requests that have not been produced. Krithivas confirmed in response to Interrogatory No. 9 that he was "introduced to Daniel by another pilot I frequently flew with who had asked me if I was favorable of unionization" and that "[t]hat pilot told me that they would give my information to someone who was trying to organize a union drive." Any communications with that pilot regarding unionization or the SWOL data collection effort are plainly responsive to subsections (c) and (d) of RFP No. 7 and to RFP No. 13 (which specifically seeks communications with SkyWest pilots other than Moussaron about SWOL or union organizing). If Krithivas's communication with that pilot was entirely verbal, he must say so explicitly rather than responding "None not already produced."

Second, Krithivas' response does not address the full scope of the requests. RFP No. 7 seeks communications with "any person"—not just Moussaron—on any platform. Krithivas does not address whether he has any communications with other pilots, Organizing Committee members, or any other person regarding SWOL, the data extraction, union organizing, or this litigation. He also does not confirm whether he has searched all of the platforms identified in the request (including iMessage, email, Signal, WhatsApp, Telegram, and social media). Third, subsection (e) of RFP No. 7 seeks nonprivileged communications relating to this litigation, and Krithivas has not confirmed whether he has any such communications beyond those with his counsel. Fourth, RFP No. 14 seeks communications with any union representative or labor organization, including ALPA and Ron Rindfleisch, and Krithivas responded "None not already produced"—but he must confirm affirmatively whether he had any communications with ALPA representatives or organizers regarding pilot contact information or the data collection effort, rather than relying on a blanket response. We therefore request that Krithivas (1) confirm whether he is withholding any responsive communications on the basis of his RLA, privilege, or other objections, and if so, provide a privilege log; (2) identify every source and platform he searched to respond to these requests; and (3) produce all responsive, nonprivileged communications, including any communications with the unnamed pilot who connected him with Moussaron.

We look forward to discussing these issues on the call.

Very truly yours,

*/s/ Zachary T. Burford*

Zachary T. Burford
Associate
of Holland & Hart LLP

38247769_v1