# EXHIBIT J

Holland & Hart

**Zachary T. Burford**
**Associate**
**Phone** 801.799.5718
ZTBurford@hollandhart.com

June 24, 2026

***VIA EMAIL ONLY***

Jonathan K. Thorne
Lauren I. Scholnick
John E. Holland
SCHOLNICK THORNE HOLLAND
40 South 600 East
Salt Lake City, Utah 84102
*jonathan@utahjobjustice.com*
*lauren@utahjobjustice.com*
*jack@laborwest.com*

**Re: *SkyWest Airlines v Moussaron and Krithivas*—Meet and Confer Regarding Discovery Deficiencies**

Dear Jonathan:

This letter is sent pursuant to Federal Rule of Civil Procedure 37(a)(1) and DUCivR 37-1 to confer in good faith regarding deficiencies in Defendants' written discovery responses before SkyWest seeks relief from the Court. The responses at issue are Moussaron's Responses to SkyWest's Second Set of Discovery Requests (served June 5, 2026) and Defendant Moussaron's Responses to Plaintiff SkyWest's Expedited Discovery Requests (served February 20, 2026). As set out below, the responses fall well short of Defendants' obligations under Federal Rules of Civil Procedure 26, 33, and 34, including that objections be stated with specificity (Rules 33(b)(4) and 34(b)(2)(B)), and that a response state whether any responsive materials are being withheld on the basis of an objection (Rule 34(b)(2)(C)).

Please let us know your availability to meet and confer on Defendant's discovery deficiencies.

## A. Moussaron's Objections:

To start, several of Moussaron's objections are improper and should be withdrawn:

- Moussaron's responses begin with a series of "General Objections" that he then incorporates wholesale into his individual responses. Such general objections are improper in this District. *See Smash Tech., LLC v. Smash Solutions, LLC*, 335 F.R.D. 438, 446–47 (D. Utah 2020) ("General objections neither explain nor preserve anything. They are empty, useless traditions that do nothing but make discovery unnecessarily cumbersome."). We request that Moussaron withdraw his general objections and, for any

Holland & Hart



objection on which he intends to rely, state it with the specificity Rules 33(b)(4) and 34(b)(2)(B) require and confirm whether responsive materials are being withheld on that basis.

- Second, Moussaron asserts that the Railway Labor Act provides a blanket basis to refuse production of discoverable information, including the identities of participants and the data at issue. *See, e.g.*, Moussaron Second Resp., RFP No. 10 (objecting that the request seeks "a comprehensive disclosure of the internal operations of a union organizing campaign"); *id.*, Int. No. 16 (refusing to identify the individuals who made outreach calls). We disagree that the RLA supplies any basis to withhold relevant information. The RLA is a substantive statute that does not create an evidentiary privilege against civil discovery, and Moussaron cites to no authority establishing one. Indeed, courts have consistently declined to recognize similar claims of a labor-organizing privilege under the RLA that would shield otherwise discoverable information. *See, e.g.*, *NetJets Aviation, Inc. v. NetJets Ass'n of Shared Aircraft Pilots*, 2017 U.S. Dist. LEXIS 129354, at *14 (S.D. Ohio Aug. 15, 2017) (holding that the union "points to no case law to support its assertion that discovery should be precluded under the RLA because of a chilling effect on union members," and that "[a]bsent such case law, the Court finds this argument to be without merit."); *see also Hernandez v. Office of the Comm'r of Baseball*, 331 F.R.D. 474, 478 (S.D.N.Y. 2019) ("We thus reject Hernandez's claim of privilege[,] a result that is consistent with numerous federal courts that have rejected the assertion of a 'union relations privilege.'"). Moussaron's real concern appears to be that producing organizing-related materials could expose or chill protected activity, but that is a privacy concern that the parties' protective order already addresses through appropriate designations. It is not grounds for a wholesale refusal of production of relevant, non-privileged information altogether. The core acts that form the basis for SkyWest's claims (how pilot contact information was obtained, who participated, the purposes for which it was obtained, and how that data was transmitted, stored, and used) are not themselves organizing communications. Accordingly, we ask that you withdraw the RLA objections and produce all responsive, non-privileged documents.

- Moussaron objects to the defined term "SkyWest Confidential Information" and appears to use that objection to significantly narrow his substantive responses. *See* Moussaron Second Resp., General Objection No. 6 (objecting that the definition "is overbroad, vague, and includes information that is not actually confidential information"). In addition to being an impermissible general objection, whether the data is "confidential" is a merits dispute, not a basis to limit a response. Rather, Moussaron must produce documents that are responsive and fall within the definition provided by SkyWest. Thus, Moussaron must withdraw this objection and produce all responsive, non-privileged documents.

- Moussaron repeatedly objects that requests seek information "not in his control or equally accessible to SkyWest" or "already in possession" (e.g., Int. Nos. 7, 8; RFP No. 7). He similarly refuses to produce the FAA Airmen Registry data he used because it is

Holland & Hart



"publicly available and equally accessible to SkyWest" (RFP No. 23). That information is, or may be, available from another source does not relieve Moussaron of his obligation to produce responsive materials within his own possession, custody, or control, and is not a recognized basis for refusing discovery. Moussaron must withdraw these objections and produce all responsive, non-privileged information.

- In response to Interrogatory No. 14 and Request No. 11, Moussaron objects that requests concerning Adamo Systems, Inc., Dorrus, Inc., and related entities are "an attempt to harass and intimidate Moussaron by involving businesses that are not parties to" the lawsuit. A request is not objectionable merely because it concerns non-party entities or because the responding party disputes its relevance; the proper inquiry is whether the information is relevant to a claim or defense and proportional to the needs of the case, and Moussaron bears the burden of showing otherwise. Given that Moussaron authored the userscript and built the DMS, and is the sole owner of these entities, the requests are plainly relevant to how the data was obtained, stored, and used. Further, Moussaron's productions have confirmed that he uses his Adamo email account for communications and/or accounts related to this case. *See* MOUSSARON000241. Therefore, Moussaron must withdraw these objections and produce all responsive, non-privileged documents.

- Moussaron objects to the defined term "Automated Extraction Process" on the ground that it "incorrectly defines Moussaron's access to SWOL as unauthorized 'extraction' of data" (e.g., Int. No. 8; General Objection). Whether his access was authorized or constituted "extraction" is a merits dispute, not a basis to limit a substantive response. Accordingly, Moussaron must produce all responsive, non-privileged information that is responsive using SkyWest's definition. Additionally, Moussaron must confirm whether he is withholding any information on this basis.

- In response to Request No. 22, Moussaron objects that the DMS source code is his "personal intellectual property," "developed independently and without the use of any SkyWest resources." Intellectual-property ownership is not a recognized basis to withhold relevant, responsive material; there is no "intellectual property" privilege, and any genuinely proprietary or commercially sensitive material is protected by the parties' protective order, not by refusing production. As noted above, the components of the DMS relating to data ingestion, storage, access control, and the handling of SWOL-derived data go directly to how the pilot data was collected and used. Moussaron must withdraw this objection and produce the responsive materials.

**B. Moussaron's Responses:**

In addition to the fact that Moussaron's responses rely on improper objections, and withhold information and documents on the basis of these objections, Moussaron's specific responses are deficient for the reasons outlined below:

***Destruction of Evidence (Int. No. 11)***. Moussaron's response details a series of deletions in the weeks surrounding his January 26, 2026 termination. These include the deletion of the following: the userscript ("Moussaron did not retain a copy of the script after it was last used on December 9"); a DMS "database migration" on or about December 16, 2025, in which "staging tables that had contained pilot-provided contact information and associated logs were replaced"; his text messages with Krithivas ("deleted ... prior to January 26, 2026"); his email to ALPA's Ron Rindfleisch transmitting the data export (also "deleted prior to January 26, 2026"); and the Migadu account ("access terminated on or about January 13, 2026"). Moussaron must immediately identify whether any of these items are recoverable and identify where any deleted documents may be located, especially in light of his own February 7–8, 2026 inquiry to Migadu about whether emails "could be recovered in light of this litigation" (RFP No. 17). Moussaron must also identify the exact dates on which he deleted (a) his text messages with Krithivas and (b) his emails with Mr. Rindfleisch; his current response of "prior to January 26" is vague and nonresponsive to the Interrogatory's request for the date on which that information was deleted. Finally, Moussaron provided no reasons for the deletion of his text messages with Krithivas or his emails with Mr. Rindfleisch; please supplement his responses immediately.

***Remote Server, Database, and Data-Collection Records (RFP Nos. 6, 10, 18, 19, 20, 21, 22, 28)***. Moussaron has not produced data that is critical to this case—the Remote Server records, the SQL dump (SkyProxy.sql.zip), the pilot_members and staged_pilot_data tables, or the documents relating to the creation and population of the pilot contact database despite confirming he is "the only individual to have direct access to the Remote Server throughout its lifecycle" (Int. No. 6). For each of these requests, Moussaron states he is "willing to meet and confer . . . to determine how to disclose relevant information that does not contain confidential union organization information." These materials go to the very heart of SkyWest's claims—they are the data extracted from SWOL and the systems used to store, organize, and disseminate it, and they are directly relevant to establishing what information was taken, its source, and how it was used. As the person with sole access to the Remote Server and its underlying database, Moussaron is the only party able to produce this information, and it must be produced. Additionally, RFP Nos. 19-22 (which seek information related to the versions of the database and information Moussaron used to populate the database) are directly relevant both to SkyWest's claims and Moussaron's purported defense that the information from the database primarily came from publicly available sources. As explained above, Moussaron's objections do not provide legitimate grounds to completely withhold any of this information.

While we remain willing to meet and confer on these requests, at a minimum, we will need to immediately receive all records from the Remote Server concerning SkyWest's Confidential Information (RFP No. 6), the spreadsheet Moussaron provided ALPA that "included 4,994 pilot records" (RFP No. 21), and the components of the DMS source code relating to data ingestion, storage, access control, and the handling of SWOL-derived data (RFP No. 22), notwithstanding the "personal intellectual property" objections.

***Communications (RFP Nos. 7, 8, 10, 25, 26, 29)***. In response to RFP No. 7, Moussaron produces only the previously produced Krithivas texts and otherwise withholds responsive

Holland & Hart



documents without specifying what exactly he is withholding. This is particularly problematic as Moussaron's own responses confirm that other responsive communications exist, including without limitation Telegram communications, including August 29, 2025 messages (Int. Nos. 9, 12) and text messages with Ron Rindfleisch (RFP No. 25) that have not been produced. These communications (as well as the other information requested in these RFPs) are plainly responsive and relevant—they concern how the SWOL data was obtained, who participated, and how it was transmitted—and Moussaron has asserted no valid basis to withhold them. They are not attorney-client communications, and the RLA provides no privilege against their production for the reasons set out above. Moussaron must produce all responsive, nonprivileged communications, including the Telegram communications, the Rindfleisch text messages, and his nonprivileged communications related to this litigation.

In response to RFP No. 8, Moussaron addresses only the September 3, 2025 meeting chat, stating it "was not retained beyond Microsoft's default retention period." That response is deficient for three reasons. First, Moussaron must immediately identify what steps were taken to preserve or recover the script (including whether he attempted to recover the data from any account or device backup) and what steps were taken to confirm that Microsoft did not retain the script. Second, the response is non-responsive to the majority of the request—RFP No. 8 seeks a complete native export of all Teams accounts, workspaces, channels, and direct-message conversations, yet Moussaron addresses only his communications with Krithivas and says nothing about any other Teams content or data. Third, as with RFP No. 7, Moussaron impermissibly limits his answer to his communications with Krithivas on Teams, while the request more broadly seeks any information on Teams regarding "SWOL, SWOL Data, or union organizing at SkyWest." Please confirm whether any responsive Teams content has been withheld and produce all responsive, non-privileged communications, files, and data.

In response to RFP No. 25, Moussaron asserts the Rindfleisch text messages "are protected under the Railway Labor Act"—those messages are critical to the merits of this case, as they reflect Moussaron's transmission and discussion of SWOL-derived pilot data with a third party, which goes directly to the scope of Defendants' misappropriation and dissemination of SkyWest's data. As explained above, the RLA does not create a privilege against civil discovery, and any confidentiality concerns can be addressed by the protective order rather than by withholding the messages outright. Moussaron must therefore produce the Rindfleisch text messages (and any other communications with Rindfleisch or any other ALPA representative or employee), and confirm that he is not withholding any such communications or any other responsive communications solely on the basis of his RLA objection.

In response to RFP No. 26, Moussaron impermissibly limits his response in claiming that "he did not retain the email in which he sent Mr. Rindfleisch a copy of pilot contact information." However, RFP No. 26 more broadly seeks all documents and communications related to the files Moussaron sent to Mr. Rindfleisch (or other ALPA representatives). Please confirm whether Moussaron has any responsive documents (including but not limited to the spreadsheet(s) or file(s) themselves) and produce any such documents immediately.

Holland & Hart



On RFP No. 29, please confirm that Moussaron is not withholding any responsive documents based on his boilerplate relevancy, burdensome, vagueness, and RLA objections, and whether Moussaron has supplemented his response with any additional communications since the expedited responses. To the extent Moussaron is withholding any communications with Krithivas based on those boilerplate objections, they are improper and should be withdrawn.

***EZ Texting Report (RFP No. 12)***. Moussaron confirms he at least possesses a December 15, 2025 EZ Texting contact report of "approximately 5,019 records including phone numbers, names, group assignments, poll responses, and opt-out dates" but refuses to produce it. This document is responsive to request No. 12 and is specifically relevant to the issues in this case as it contains information derived in part from SWOL and reflects the universe of pilots contacted and the scope of dissemination. Moussaron's stated basis for withholding this document (that production would expose the union sympathies of the pilots contacted) does not justify withholding the report. SkyWest is not seeking, and the report's relevance does not depend on, any pilot's individual poll response or union sympathies, and to the extent the report contains such fields they can be addressed through the protective order or targeted redactions. The report should be produced in a single, intact native file so that SkyWest can determine which pilots were contacted, using what data, and from what source. We therefore request that Moussaron immediately produce the EZ Texting report in native format.

***Public-Source Data and Source Attribution (RFP Nos. 19, 20, 21, 22, 23, 24)***. Moussaron's central defense—that "nearly all" of the contact data came from public sources and only "a couple hundred" numbers came from SWOL (Int. No. 10) —is untestable on the present record, because he states the DMS "does not tag or categorize the upload source location" (RFP No. 24) and refuses to produce the FAA Airmen Registry data as "publicly available" (RFP No. 23). Even if the registry is public, the specific version Moussaron downloaded and used is relevant to distinguishing SWOL-sourced from public data, and we ask that he produce the specific file(s) he actually downloaded and used relating to his "phase 4" data collection. As stated above, Moussaron must also produce any other relevant information concerning the DMS and/or the different phases of data collection he and the Organizing Committee undertook.

***Social Media (RFP No. 15)***. Moussaron's response that he has no responsive documents "related to SWOL or any effort to contact SkyWest pilots using non-publicly available contact information," is incomplete. The request also seeks all posts relating to SkyWest, SkyWest pilots, or union organizing at SkyWest. Moussaron's response also neglects whether he has any communications or social media posts related any information derived from SWOL, regardless of whether he contends this was "non-publicly available contact information." By answering only the narrower question he has framed for himself, Moussaron impermissibly limits his response to a subset of what RFP No. 15 actually seeks; a responding party may not unilaterally rewrite a request and then answer only the rewritten version. To the extent responsive posts or communications exist, they are relevant to SkyWest's claims and Moussaron has identified no valid basis to withhold them. We therefore request that Moussaron supplement his response to address the full scope of RFP No. 15, confirm whether any responsive material is being withheld, and produce all responsive posts and communications.

***Callers/Complaint ¶ 37 (RFP No. 16).*** Moussaron's response to SkyWest's RFP 16 consists solely of objections and he produces nothing. The identity of the persons who made unsolicited calls to SkyWest pilots using SWOL-derived data is a discoverable fact directly relevant to SkyWest's claims and its requested damages and injunctive relief, and the RLA supplies no basis to withhold it for the reasons stated above. Moussaron must therefore withdraw his objections and produce all documents and communications responsive to RFP No. 16.

***Unnamed Individuals (Int. Nos. 6, 7, 12, 13, 16)***. We ask that Moussaron identify the two individuals referenced, but not named, in his response to Interrogatory No. 12 (one who "provided Moussaron with contact information for Krithivas" via Telegram, and another with whom he discussed "data collection efforts, including the use of the SWOL Directory"), as well as the committee members who made outreach calls (Int. No. 16). Pursuant to Moussaron's own responses, these individuals were provided with access to SkyWest's Confidential Information and used that information for non-SkyWest purposes. Moussaron's objections do not provide a valid basis to withhold this information. Please produce this information immediately.

***Skywestalpa.org/skw.alpa.org (RFP No. 27)***. Moussaron's response to RFP No. 27 is deficient. Moussaron provided no substantive response and produced nothing, offering only boilerplate objections that are contradicted by his own sworn statements. Moussaron himself established that the skywestalpa.org website was the primary public-facing tool of the Organizing Committee's campaign—hosting a self-registration form through which pilots submitted contact information, communicating with pilots, and directing them to the contact database at the center of this case. He admitted in his Declaration (Dkt. 42) that "the OC launched a website" at skywestalpa.org and that "ALPA then took over the website, by publishing a new version at https://skw.alpa.org." He confirmed in his Answer and Counterclaim (Dkt. 47) the same facts. And he confirmed in response to Interrogatory No. 6 that skywestalpa.org resolved to a Virtual Host on his own Remote Server—the same server he is "the only individual to have direct access to." His "lack of control" objection is therefore meritless, especially to the extent these records reside on his own server, and his blanket RLA objection fails for the same reasons discussed above. Moussaron must immediately produce all responsive documents to this request.

***AEO Condition.*** Finally, in several responses (*see, e.g.*, RFP Nos. 6, 10, 18–22), Moussaron conditions his responses and/or potential productions on being able to unilaterally designate materials as attorneys' or experts' eyes only and even going beyond the bounds of the current protective order in demanding an "express agreement that no union organizing information will be reviewed by, provided to, shared with, or communicated to SkyWest or any of its employees." Moussaron must produce responsive materials under the existing protective order, designating specific documents as appropriate, rather than conditioning production on a blanket designation or categorical exclusion of SkyWest from information that is critical to the merits of this case.

We look forward to discussing these issues with you. Please let us know when you have availability to discuss.

Very truly yours,

*/s/ Zachary T. Burford*

Zachary T. Burford
Associate
of Holland & Hart LLP

38226159_v1