Gregory M. Saylin, #9648
Tyson C. Horrocks, #12557
Zachary T. Burford, #19771
Holland & Hart LLP
222 South Main Street, Suite 2200
Salt Lake City, UT 84101-2194
Telephone: 801.799.5800
GMSaylin@hollandhart.com
TCHorrocks@hollandhart.com
ZTBurford@hollandhart.com

*Attorneys for Plaintiff and Counterclaim Defendant SkyWest Airlines, Inc. and Counterclaim Defendant Dale Hansen*

---

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF UTAH – SOUTHERN DIVISION**

| | |
|---|---|
| SKYWEST AIRLINES, INC.,<br><br>Plaintiff and Counterclaim Defendant,<br><br>and DALE HANSEN,<br><br>Additional Counterclaim Defendant,<br><br>vs.<br><br>DANIEL MOUSSARON,<br><br>Defendant and Counterclaim Plaintiff,<br><br>and VIKAAS KRITHIVAS,<br><br>Defendant and Counterclaim Plaintiff. | **PLAINTIFF'S RESPONSE TO DEFENDANT MOUSSARON'S MOTION FOR PROTECTIVE ORDER REGARDING PLAINTIFF'S PROPOSED SUBPOENAS TO EZ TEXTING AND GOFUNDME AND, IF SERVED, TO QUASH OR MODIFY**<br><br>Civil No. 4:26-cv-00015-DN-PK<br><br>Senior District Judge David Nuffer<br>Magistrate Judge Paul Kohler |

Plaintiff SkyWest Airlines, Inc. ("SkyWest") hereby responds to Defendant Moussaron's Motion for Protective Order Regarding Plaintiff's Proposed Subpoenas to EZ Texting and GoFundMe and, if Served, to Quash or Modify ("Motion") (Dkt. No. 151) as follows.

## INTRODUCTION

Moussaron asks the Court to block two targeted nonparty subpoenas before a single document is produced. The first is directed to EZ Texting, the SMS vendor to which Moussaron admits he uploaded pilot contact information taken from SkyWest Online and through which he texted approximately 4,800 SkyWest pilots. Dkt. No. 174-8, ROG No. 10, at 9–10. Moussaron has not produced the native upload files or campaign history or other account information. *Id.*, RFP No. 12, at 25–26. The second is directed to GoFundMe, where Moussaron solicits money for his legal expenses by telling donors he simply used his "standard company login" and that SkyWest sued him "to stop and silence the organizing effort." Ex. A. These subpoenas target SkyWest's own data and Moussaron's public statements about this lawsuit—not anyone's union activity.

Moussaron's Motion demonstrates that his objections are more about delay than the protection of First Amendment activity. Before Moussaron filed his Motion, SkyWest offered in writing to accept production in the very form Defendants proposed in their Joint Motion for Protective Order ("Motion for Protective Order") (Dkt. No. 132), including initial attorneys'-eyes-only ("AEO") treatment, no AEO access by SkyWest's in-house counsel pending the Court's ruling, and a simultaneous production redacting the three categories Defendants ask the Court to protect. Dkt. No. 151-2. Moussaron **never** responded to SkyWest's proposed compromise.

Moussaron's Motion recycles the First Amendment argument in Defendants' Motion for Protective Order, which SkyWest has opposed, Dkt. No. 174, and fails for the same reasons. Most of what he seeks to shield consists of outward communications made for "persuasion,

recruitment or motivation," which are not privileged. *Perry v. Schwarzenegger*, 591 F.3d 1147, 1165 n.12 (9th Cir. 2010). He offers no evidence of a chilling effect. The records go to the heart of this case: what SkyWest data Moussaron uploaded to a third party, how he used it, whether it still exists, and what he is publicly saying about this lawsuit. And he identifies no other valid basis to quash. The Motion should be denied, and SkyWest should be permitted to serve the subpoenas.

## BACKGROUND

### I. The Subpoenas.

The EZ Texting subpoena is confined to the "Moussaron Account" from August 1, 2025 to the present and seeks registration and billing records (Commands 1–2); messages, recipients, delivery status, opt-outs, and replies (Command 3); uploaded contact lists (Command 4); account suspension or termination records (Commands 5–6); documents referencing SkyWest, this Lawsuit, the parties, or ALPA (Command 7); and activity logs (Command 8). Dkt. No. 151-1. Moussaron admits his userscript pulled each pilot's complete SkyWest Online ("SWOL") record into the Organizing Committee's database, and that SWOL phone numbers were used in the December 9, 2025 EZ Texting campaign, though he claims "only a couple hundred." Dkt. No. 174-8, ROG No. 8, at 6–8; ROG No. 10, at 8–10. He has not produced the native upload files or campaign history, and from his December 15, 2025 export of approximately 5,019 records he withholds the "group assignments, poll responses, and opt-out dates," claiming the account is now "locked by the provider." *Id.*, RFP No. 12, at 24–26. Yet he pleaded the poll's results, Dkt. No. 47, Countercl. ¶¶ 46–47, which SkyWest cannot verify without the withheld responses. He cannot use those results as a sword while invoking privilege to shield the underlying data.

The GoFundMe subpoena is confined to the fundraiser Moussaron created on March 16, 2026, titled "SkyWest Sued Pilots for Contacting Coworkers About a Union," and seeks organizer, donor, and communication records. Dkt. No. 151-1; Ex. A. There he tells donors he "used my standard company login, the same credentials every SkyWest pilot has." *Id.* The page omits the userscript, the extraction of nearly 5,000 pilot records, and the transfer of that data to a remote database, ALPA, and EZ Texting. *Compare id.*, *with* Dkt. No. 174, at 6, 10–11. The subpoena seeks not who supports unionization, but who is funding Moussaron's defense and what he has told them.

## II. SkyWest's Proposed Compromise.

On September 24, SkyWest proposed that: (i) the vendors could initially designate information AEO; (ii) SkyWest's in-house counsel, Todd Emerson, would not see AEO material until the Court rules; and (iii) AEO material would be "simultaneously produced as Confidential (or without designation)" with redactions of the three categories Defendants ask the Court to protect. Dkt. No. 151-2; *see* Dkt. No. 132, at 2. Moussaron's counsel offered to confer the following week, and nothing was due from either vendor until October 12. Dkt. No. 151, at 4, 11. Rather than respond to the proposal or wait for that conference, Moussaron filed this Motion and an expedited motion to stay on September 25. Dkt. Nos. 151, 152.

## LEGAL STANDARD

Discovery extends to any nonprivileged matter "relevant to any party's claim or defense and proportional to the needs of the case," and Rule 45 subpoenas share that scope. Fed. R. Civ. P. 26(b)(1); *Ennis v. Alder Prot. Holdings, LLC*, 2022 U.S. Dist. LEXIS 169131, at *8–9 (D. Utah Sept. 16, 2022). "The movant bears the burden of persuasion on a motion to quash."

*Zoobuh, Inc. v. Rainbow Int'l Corp.*, 2015 U.S. Dist. LEXIS 59349, at *4 (D. Utah May 5, 2015). Rule 26(c) good cause requires "a particular and specific demonstration of fact." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981) (quotation omitted). No such showing has been made.

## ARGUMENT

### I. SKYWEST'S PROPOSED COMPROMISE SHOULD HAVE RESOLVED MOUSSARON'S CONCERNS WITH THE SUBPOENAS.

SkyWest's September 24 proposal gave Defendants the very relief they seek in their Motion for Protective Order—AEO treatment, no access by Mr. Emerson pending a ruling, and a simultaneous production redacted along Defendants' own categories, while reserving SkyWest's right to challenge particular designations and redactions. Dkt. No. 151-2. Moussaron's insistence on quashing both subpoenas outright instead is disproportionate. Moussaron never engaged with SkyWest's proposal at all before filing.[1]

Every objection Moussaron now raises could have been resolved at the conference his own counsel offered for the following week. His objection that EZ Texting cannot apply the redactions is easily solved: the vendors can produce to outside counsel as AEO, Moussaron's counsel—who claims to know which pilots have publicly disclosed their support—can propose

[1] A Rule 26(c) movant must certify that he "has in good faith conferred or attempted to confer . . .in an effort to resolve the dispute without court action." Fed. R. Civ. P. 26(c)(1). Moussaron's certification concedes only that the parties "relayed their individual positions" by email. Dkt. No. 151, at 11. Exchanging positions is not an effort to resolve a dispute. *See United States v. United Park City Mines Co.*, 2019 U.S. Dist. LEXIS 189955, at *3 (D. Utah Oct. 31, 2019) (the rules "set forth more than a requirement to hold a perfunctory meeting").

redactions, and SkyWest's client representatives would receive only the redacted set, subject to SkyWest's right to challenge.

Moussaron's refusal to engage is a delay tactic that prejudices SkyWest. He represents that his EZ Texting account is locked, the organizing email service is inaccessible, the extraction script was not retained, and the database staging tables were replaced. Dkt. No. 174-8, ROG No. 11, at 10–12; RFP No. 12, at 24–26. The vendors' records may be the only remaining evidence of what happened to SkyWest's data, and he cannot both claim that evidence is gone and block SkyWest from obtaining it elsewhere.

## II. THE COURT'S AUGUST 18 ORDER DOES NOT PROHIBIT THE SUBPOENAS.

Moussaron's premise is that all nonparty discovery must wait until the Court decides the Motion for Protective Order. No order says that. The August 18 Order denied SkyWest's motions to compel without prejudice and directed Defendants to brief their privilege claim; it did not stay discovery. Dkt. No. 108, at 2–3. The parties' later stipulation deferred only SkyWest's response to Defendants' Joint Motion to Quash the ALPA Subpoena (Dkt. No. 106); it did not stay discovery either. Dkt. Nos. 120, 121. In fact, Moussaron permitted ALPA to produce documents that were not covered by his RLA and First Amendment objections, which is precisely the approach he refuses to permit here.

Nor does the Motion for Protective Order ask the Court to bar discovery. Instead, it seeks "narrowly tailored redaction" of three categories—nonpublic pilot identities, individualized pilot responses, and confidential internal strategy—and acknowledges that "[t]echnical and transactional facts remain discoverable" and that "responsive documents are produced rather than withheld." Dkt. No. 132, at 2, 23. Most of what the EZ Texting and GoFundMe subpoenas

seek—account, billing, and log records, the SkyWest data Moussaron uploaded, the messages he sent with it, his communications about the lawsuit and campaign, and public donor information—falls outside those categories. For the rest, SkyWest has offered the above-discussed compromise.

## III. THE FIRST AMENDMENT PRIVILEGE DOES NOT SHIELD THE SUBPOENAED RECORDS.

### A. Moussaron Makes No Prima Facie Showing as to These Records.

SkyWest incorporates its showing that Defendants' declarations fail the prima facie standard. Dkt. No. 174, at 16–22. The Motion adds no evidence, and none of the Dkt. No. 132 declarations mentions EZ Texting or GoFundMe or comes from a text recipient or donor. Dkt. No. 151, at 3, 9.

More fundamentally, most of what Moussaron seeks to protect is not privileged at all. *Perry*, on which Defendants rely, limited the privilege to "private, internal communications regarding formulation of strategy and messages," and held that it "certainly does not apply to documents or messages conveyed to the electorate at large, discrete groups of voters or individual voters for purposes such as persuasion, recruitment or motivation," or to "communications soliciting active support." 591 F.3d at 1165 n.12. A court may require the redaction of names, "but the contents of such communications are not privileged." *Id.* Defendants concede outward communications "do not become categorically privileged merely because they concern organizing." Dkt. No. 132, at 6. The December 9 text was a message to thousands of pilots to persuade and recruit them; the EZ Texting templates, campaign records, recipient lists, and uploads are its mechanics; and the GoFundMe page solicits active support to fund this litigation. At most, *Perry* permits redacting names, which SkyWest offered.

The specific requests confirm this. The uploaded contact lists (Command 4) contain, by Moussaron's admission, SkyWest's own data, and no privilege lets a defendant withhold the plaintiff's data from the plaintiff. Dkt. No. 174-8, ROG No. 10, at 8–10. Message content and campaign records (Command 3) are outward communications. A pilot who replied "3=no" or "STOP" was declining to associate, and Moussaron pleaded the aggregate results. Dkt. No. 47, Countercl. ¶¶ 46–47. And registration, billing, account-lock, and log records (Commands 1–2, 5–6, 8) contain no associational content.

Even where members submitted affidavits describing "harassment and intimidation," the Tenth Circuit directed consideration of production "with the members' names deleted, or by otherwise limiting the breadth of the subpoena." *In re First Nat'l Bank*, 701 F.2d 115, 116–19 (10th Cir. 1983). That is exactly what SkyWest proposed—without any such showing here—but Moussaron filed rather than conferred. Dkt. No. 151-2.

### B. The *Grandbouche* Factors Favor Disclosure.

Even if Moussaron had made a prima facie showing (he has not), the *Grandbouche* factors favor disclosure. *Grandbouche v. Clancy*, 825 F.2d 1463, 1466 (10th Cir. 1987); *see* Dkt. No. 174, at 22–31. EZ Texting has SkyWest's information, yet SkyWest still does not know what Moussaron uploaded, when, in which fields, or what EZ Texting retains. Dkt. No. 174-8, ROG No. 8, at 6–8; ROG No. 10, at 9–10; RFP No. 12, at 25–26. The upload files are the only way to test his claim that "only a couple hundred" numbers came from SWOL when Krithivas admits accessing data for approximately 5,000 pilots. Dkt. No. 174, at 6. Delivery records, replies, and opt-outs show how SkyWest's data was used and how pilots reacted, which bears on SkyWest's claims and damages, Compl. ¶¶ 29–44, and on Moussaron's public assurance that

"[a]ny pilot who didn't want to be contacted just had to say that." Ex. A. Account and log records show who controlled the account and whether the data still exists. And Moussaron placed the poll results and alleged chill at issue with his counterclaims. Dkt. No. 47, Countercl. ¶¶ 47, 68; *Grandbouche*, 825 F.2d at 1467.

The GoFundMe records are likewise relevant. There, organizers email updates to supporters, and supporters post words of support. Moussaron uses the platform to tell his version of this case while omitting that he took SkyWest's pilot data and shared it with a remote database, ALPA, and EZ Texting. Ex. A. Those statements bear directly on his defamation counterclaim, Dkt. No. 47, Countercl. ¶¶ 81–94, and those he communicates with—including any pilots, Organizing Committee members, or ALPA personnel who received SkyWest data—are potential witnesses. Courts compel disclosure of donors connected to the events at issue while protecting only "general donors." *AFT Mich. v. Project Veritas*, 2020 U.S. Dist. LEXIS 259422, at *19, *34 (E.D. Mich. July 2, 2020).

The necessity and availability factors—whether SkyWest can obtain the information elsewhere—are decisive. Moussaron says he is locked out of EZ Texting, deleted his email to ALPA's Rindfleisch and his texts with Krithivas, and did not keep the extraction script. Dkt. No. 174-8, ROG No. 11, at 10–12; RFP No. 12, at 26. Defendants told the Court that SkyWest should pursue technical questions through "system records." Dkt. No. 132, at 17. These are those records. Likewise, GoFundMe's organizer, supporter, and donor records reside on its platform, and Moussaron identifies no other source for them.

## IV. MOUSSARON IDENTIFIES NO OTHER VALID BASIS TO QUASH

### A. Moussaron Does Not Have Standing to Object on Other Grounds.

Moussaron's standing rests on a claimed personal interest in his account records. Dkt. No. 151, at 5. But "even where a party has standing to quash a subpoena based on privilege or a personal right, he or she lacks standing to object on the basis of undue burden and on the grounds of overbreadth and relevance." *Route App, Inc. v. Heuberger*, 2024 U.S. Dist. LEXIS 14569, at *7 (D. Utah Jan. 26, 2024) (cleaned up); *accord Zoobuh*, 2015 U.S. Dist. LEXIS 59349, at *6–7; *IBC Advanced Techs., Inc. v. Ucore Rare Metals*, *Inc.*, 2020 U.S. Dist. LEXIS 205345, at *5–6 (D. Utah Nov. 2, 2020). Moussaron's arguments that donor information is irrelevant, that the remaining commands do not bear on the claims, and that Command 7 is overbroad are thus not grounds to quash. Dkt. No. 151, at 8–10. The Motion should be denied as to those grounds.

**B. Moussaron Identifies No Other Privilege or Protection.**

Beyond the First Amendment, Moussaron asserts no attorney-client, work-product, or trade-secret protection, and none applies to vendor account records. *See* Fed. R. Civ. P. 45(d)(3)(A)(iii), (B)(i). Any recipient may withhold and log a privileged document under Rule 45(e)(2)(A), and the Standard Protective Order extends to nonparties. DUCivR 26-2(a). The AFA protective order addressed a union's own financial information and did not permit withholding otherwise responsive documents. Dkt. No. 174, at 21.

**V. AT MOST, THE SUBPOENAS SHOULD BE MODIFIED, NOT QUASHED.**

Rule 45 directs the Court to "quash or modify" a subpoena, and Rule 26(c) authorizes the Court to specify terms for discovery rather than forbid it. Fed. R. Civ. P. 26(c)(1)(B), 45(d)(3)(A). "Generally, modification of a subpoena is preferable to quashing it outright." *Whiteside v. State Farm Fire & Cas. Co.*, 2021 U.S. Dist. LEXIS 72177, at *7 (D.N.M. Apr. 13,

2021) (quotation omitted); *IBC*, 2020 U.S. Dist. LEXIS 205345, at *3. SkyWest's proposal follows that approach.

Moussaron himself asks the Court to quash, "at a minimum," only EZ Texting Commands 3, 4, 6, 7, and 8, effectively conceding that Commands 1, 2, and 5 raise no protected interest. Dkt. No. 151, at 11. At a minimum, SkyWest should be permitted to serve the EZ Texting subpoena as to those commands immediately. GoFundMe Commands 1, 3, and 4, and the donor names and comments GoFundMe already displays publicly, implicate no private association and should be produced, with anonymous donors' identities designated AEO.

If the Court has any concern, it should order that: (1) both vendors produce to outside counsel as AEO; (2) Moussaron's counsel identify proposed redactions within fourteen days; (3) SkyWest's client representatives, including Mr. Emerson, receive only the redacted set pending the ruling on Dkt. No. 132; and (4) any dispute proceed under the procedure the Court adopts on Dkt. No. 132.

## VI. THE STAY SHOULD BE LIFTED AND FEES SHOULD BE DENIED.

For the reasons in Part I, the Court should lift its stay (Dkt. No. 155) upon ruling on this Motion. Fees are also unwarranted. Rule 37(a)(5), incorporated by Rule 26(c)(3), bars an award where the movant filed "before attempting in good faith to obtain the disclosure or discovery without court action" or the opposing position was "substantially justified." Fed. R. Civ. P. 37(a)(5)(A)(i)–(ii); *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Both bars apply: no order barred these subpoenas, SkyWest offered production on Defendants' own terms, and Moussaron filed before conferring.

## CONCLUSION

The Court should deny the Motion and permit SkyWest to serve the subpoenas as drafted.

Dated this 20th day of October, 2026.

HOLLAND & HART LLP

*/s/ Tyson C. Horrocks*
Gregory M. Saylin
Tyson C. Horrocks
Zachary T. Burford

*Attorneys for Plaintiff and Counterclaim Defendant SkyWest Airlines, Inc. and Counterclaim Defendant Dale Hansen*

## CERTIFICATE OF COMPLIANCE

I certify that this memorandum contains 2914 words, excluding the items exempted by DUCivR 7-1(a)(6)(B), and complies with DUCivR 7-1(a)(4)(D).

*/s/ Zachary T. Burford*

39708610