Jonathan K. Thorne (Utah Bar No. 12694)
Lauren I. Scholnick (Utah Bar No. 7776)
Jack Holland (pro hac vice)
Liesl L. Jenkins (Utah Bar No. 20910)
**SCHOLNICK THORNE HOLLAND**
40 South 600 East
Salt Lake City, Utah 84102
Telephone: (801) 359-4169
Facsimile: (801) 359-4313
Email: jonathan@utahjobjustice.com
lauren@utahjobjustice.com
jack@laborwest.com
liesl@utahjobjustice.com

*Attorneys for Defendant and Counterclaim Plaintiff Daniel Moussaron*

---

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF UTAH – SOUTHERN DIVISION**

| | |
|---|---|
| SKYWEST AIRLINES, INC.,<br><br>Plaintiff and Counterclaim Defendant,<br><br>and DALE HANSEN,<br><br>Additional Counterclaim Defendant,<br><br>vs.<br><br>DANIEL MOUSSARON and VIKAAS KRITHIVAS,<br><br>Defendants and Counterclaim Plaintiffs. | **DEFENDANT MOUSSARON'S REPLY IN SUPPORT OF MOTION FOR PROTECTIVE ORDER REGARDING PLAINTIFF'S PROPOSED SUBPOENAS TO EZ TEXTING AND GOFUNDME (DKT. 151)**<br><br>Civil No. 4:26-cv-00015-DN-PK<br><br>Senior District Judge David Nuffer<br>Magistrate Judge Paul Kohler |

## INTRODUCTION

SkyWest's response confirms the need for relief. SkyWest seeks the same categories of information Defendants sought to protect in Dkt. 132 based on the associational privilege, and now pending before the Court. Indeed, SkyWest's subpoenas here seek complete donor records,

non-public identities, every private reply and poll response from approximately 4,800 pilots, and an unrestricted collection of documents relating to and/or referencing SkyWest, this lawsuit, Moussaron, Krithivas, or ALPA (which will get to the poll responses and other union organizing information).

SkyWest's Response makes several arguments to support ignoring Dkt. 108 (and 132): AEO will resolve the production; Dkt. 108 did not stay discovery; the associational privilege does not shield this discovery; and Moussaron fails to identify another valid basis to quash. As detailed below, SkyWest's Response does not withstand scrutiny.

## ARGUMENT

### I. SKYWEST'S PROPOSED AEO PROCEDURE DOES NOT ANSWER WHETHER DISCLOSURE IS WARRANTED – AND ITS "COMPROMISE" WAS CONTRARY TO DEFENDANTS' DKT. 132 POSITION.

SkyWest treats an attorneys'-eyes-only designation as though it eliminates the constitutional issue. It does not. The question presented is whether SkyWest may compel the information, not merely which SkyWest representatives may review it. SkyWest's proposal was not a compromise on the subpoenas, but a blatant attempt to bypass Defendants' objections: ignore the associational privilege, produce everything first, permit SkyWest outside counsel to inspect it, and then litigate redactions and the associational privilege after the fact. That procedure causes the very disclosure the Motion (and Dkt. 132) seeks to prevent.

Next, SkyWest's proposal – that EZ Texting produce the documents to SkyWest's counsel along with Moussaron's counsel, and then have Moussaron propose redactions for SkyWest non-AEO review – concedes that the vendor cannot apply redactions appropriately, or at all.

Lastly, SkyWest misrepresents the conferral efforts of Moussaron. He objected in writing on September 23 and based on the timing of service offered to confer the next day. SkyWest was unavailable to confer and on September 24 stated: "SkyWest intends to serve the subpoenas once the notice period has expired."[1] Moussaron agreed to confer the following week but asked SkyWest not serve the subpoenas while they conferred. SkyWest refused. While SkyWest's Response suggests there would have been plenty of time to confer prior to the October 12 production deadline – that deadline does not provide protection of early production prior to satisfactory conferral or court intervention. SkyWest's complaint that Moussaron did not confer beyond emails prior to moving to prevent service – is not credible given it was SkyWest that refused to confer prior to service.

## II. DKT. 108 DENIED SKYWEST'S DISCOVERY AND DIRECTED THE PARTIES TO FIRST BRIEF THE UNDERLYING ASSOCIATIONAL PRIVILEGE

Moussaron need not show that the August 18 Order literally stayed every form of discovery. The narrower point is that the Court established a procedure for resolving the associational-privilege issue, and these subpoenas seek the same protected categories while that procedure remains pending.

Indeed, SkyWest previously stipulated that resolving Dkt. 132 first would conserve resources and avoid duplicative briefing concerning the same threshold privilege issue. Its response now says that the stipulation applied only to the ALPA subpoena and did not prohibit additional discovery. But the source of the information does not alter the associational harm. The EZ Texting subpoena seeks the identities and individualized responses covered by Dkt. 132,

---

[1] Dkt. 151-2, pg. 1 (Horrocks email of Sept. 24, 2026); Dkt. 151, pg. 11.

while the GoFundMe subpoena seeks an additional list of people who financially associated themselves with Moussaron's defense and organizing-related position. In October, SkyWest invoked that stipulation to stay Defendants' Rule 30(b)(6) deposition because "the point was to have the Court decide the threshold privilege question first," and the Court granted that motion on November 3.[2] The stipulation itself states that the privilege objection "bears directly on the scope of written discovery" and that those disputes "cannot be resolved until after the Court rules."[3] SkyWest cannot invoke that sequencing to defer the deposition, while serving subpoenas for the categories the ruling will decide.

Grandbouche draws no source-based distinction: First Amendment scrutiny applies when a discovery order compels protected associational information, and the Court must balance the asserted need before ordering disclosure.[4]

## III. THE PRIMA FACIE SHOWING WAS MADE IN DKT. 132, AND IT COVERS THESE RECORDS.

SkyWest argues the Motion "offers no evidence of a chilling effect" because no declarant "mentions EZ Texting or GoFundMe."[5] Dkt. 132 supplied more than sufficient evidence of chilling for these categories.

The privilege attaches to categories of information, not to the vendor that holds the information. The Tenth Circuit has held that the right "will be chilled equally whether the associational information is compelled from the organization itself or from third parties."[6] And the Supreme Court held this year that a demand for donor identities "inevitabl[y]" deters the

---

[2] Dkt. 160, pg. 2; Dkt. 196 (Nov. 3, 2026).
[3] Dkt. 125, pg. 2.
[4] *Grandbouche v. Clancy*, 825 F.2d 1463, 1466–67 (10th Cir. 1987).
[5] Dkt. 182, pgs. 3, 7.
[6] *In re First Nat'l Bank*, 701 F.2d 115, 118 (10th Cir. 1983).

exercise of First Amendment rights "not just when a demand is enforced, but when it is made and for as long as it remains outstanding."[7]

The evidence provided in Dkt. 132 is specific to the pilots at issue in the subpoenas here: ALPA's organizer attests that the four other Organizing Committee leaders resigned within weeks of Moussaron's termination, several "out of fear of retaliation by SkyWest management," and that pilots are "more afraid of being identified to SkyWest management as associated with ALPA or the OC" than in any campaign he has handled.[8] A pilot who replied to the December 9 poll, or who gave to the defense fund, is within that showing whether SkyWest asks Moussaron or a vendor.

In addition to the evidence in Dkt. 132 (incorporated herein), SkyWest's own documents, produced October 30, show the chilling effect from the employer's side. Within fifteen minutes of a chief pilot's report to SkyWest that the December 9 ALPA union text message had been sent to SkyWest pilots, SkyWest's Managing Director of Communications called it "concerning," forwarded it to the company's outside public-relations firm (stating, "[w]e don't know where they would get phone numbers"); and in response, the PR executive asked for "a directional sense if there's a pattern or specific geographic concentration," of the text message, and then alerted three colleagues;[9] two days later she sent SkyWest's "spam text notice" to SAPA at its sapapilot.org address, copying the Senior Vice President of Flight Operations.[10]

---

[7] *First Choice Women's Res. Ctrs., Inc. v. Davenport*, 608 U.S. 174, 188–89, 146 S. Ct. 1114 (2026). A legal-defense fund is an association for this purpose; the right to associate "necessarily involves the right to 'pool money through contributions,'" and disclosure of contributor identities burdens it. *Brock v. Local 375, Plumbers Int'l Union*, 860 F.2d 346, 349 (9th Cir. 1988).
[8] Dkt. 132-2 ¶¶ 16–19; see Dkt. 132, pgs. 7–9, 23.
[9] SkyWest_0001881, 0001882, 0001886, 0001888, 0001904 (Reply Ex. A, filed under seal pursuant to DUCivR 5-3(b)(2)(C)(i); designated Confidential by SkyWest).
[10] SkyWest_0001874 (Reply Ex. A).

Next, *Perry* does not help SkyWest. Footnote 12 excludes from the privilege the contents of outward messages – and Moussaron has produced the outward message – the December 9 text message and the list of pilots it was sent to.[11] The same footnote says the court "may require the parties to redact the names of individuals with respect to these sorts of communications."[12] That is what Dkt. 132 asks for. What remains in Command 3 is not the message; it is each pilot's reply to it. SkyWest's own description – a pilot who answered "3=no" or "STOP" was "declining to associate"[13] – concedes the point: an answer of "no" is an "individualized pilot response[] reflecting whether a pilot supported, opposed, was undecided about, or otherwise privately responded to organizing outreach," which is category (2).[14]

Nor does pleading the aggregate result[15] place individual responses in issue. What individual pilots told organizers about their interest in ALPA representation is irrelevant to SkyWest's claims and is the core of what the privilege protects. If the aggregate ever becomes material, First National Bank supplies the mechanism – production "with the members' names deleted, or by otherwise limiting the breadth of the subpoena."[16]

### a. THE GRANDBOUCHE FACTORS DO NOT FAVOR A VENDOR SUBPOENA FOR THE PROTECTED CATEGORIES.

SkyWest's need argument rests on the premise that the vendors' records "may be the only remaining evidence of what happened to SkyWest's data."[17] The record is otherwise. Moussaron produced the contact list uploaded to EZ Texting, and SkyWest already knows the universe of

---

[11] Dkt. 174-8, Interrog. No. 10 answer, pgs. 9–10; Request for Production No. 12 answer, pgs. 25–26.
[12] *Perry v. Schwarzenegger*, 591 F.3d 1147, 1165 n.12 (9th Cir. 2010).
[13] Dkt. 182, pg. 8.
[14] Dkt. 132, pg. 2.
[15] Dkt. 47, Countercl. ¶ 47.
[16] *In re First National Bank*, 701 F.2d at 119.
[17] Dkt. 182, pg. 6.

pilots to whom the mass message was sent.[18] SkyWest holds its own server-side records of what requests reached its systems and when.[19] SkyWest's October 23 verified answer describes, from its own logs, how the data was accessed, by whom, with what tool, and where it went.[20] The only EZ Texting fields Moussaron has withheld are "group assignments, poll responses, and opt-out dates"[21] – the same fields Command 3 demands. Group assignments are the EZ Texting contact groups into which organizers sorted pilots according to their replies; they disclose the same thing the poll responses do. SkyWest does not explain how a pilot's reply to a union poll shows "what SkyWest data Moussaron uploaded";[22] the upload is Command 4, and the list is already produced. The items SkyWest says are unavailable – the extraction script and staging tables – were never at EZ Texting. What the subpoena adds is the census of who privately responded and how, which Dkt. 132 explains SkyWest should not receive.[23] SkyWest previously moved to compel those very fields from Moussaron and the Court denied the motion pending Dkt. 132.[24] Yet, SkyWest served the same request for information on the vendor without waiting for a court ruling. SkyWest actions are nothing more than a rushed attempt to unmask union supporters before the Court protects that information.

Next, SkyWest says Moussaron "effectively conced[ed]" Commands 1, 2 and 5.[25] He did not. Section V of the Motion explained that who paid for a texting platform, from what address, and when the vendor locked the account – has nothing to do with whether or not Defendants

---

[18] Dkt. 174-8, Request for Production No. 12 answer, pgs. 25–26; Dkt. 132, pg. 17.
[19] Dkt. 132, pg. 17.
[20] Dkt. 192-4, pg. 3 (SkyWest's Oct. 23, 2026 answer to Krithivas's Interrogatory No. 25).
[21] Dkt. 174-8, Request for Production No. 12 answer, pg. 26.
[22] Dkt. 182, pg. 3.
[23] Dkt. 132, pg. 17.
[24] Dkt. 70; Dkt. 108, pgs. 2–3; Dkt. 151, pg. 6.
[25] Dkt. 182, pg. 11.

exceeded authorized access to SkyWestOnline or what loss SkyWest suffered.[26] The Response offers no answer beyond "who controlled the account,"[27] a fact Moussaron has not disputed – it was Moussaron.[28] The Response does not defend Commands 6 and 8, which the Motion showed are aimed at a different provider,[29] or Command 7's demand for "[a]ll Documents … relating to and/or referencing SkyWest, this Lawsuit, Moussaron, Krithivas, and/or ALPA."[30]

## IV. THE GOFUNDME SUBPOENA SEEKS DONOR IDENTITIES, NOTHING ELSE.

SkyWest claims it needs to know what Moussaron has told donors. However, SkyWest produced that very information to the Court. SkyWest's Exhibit A is a July 13, 2026 forensic capture of the public fundraiser page – the organizer's statement, the amount raised, and the names and amounts of donors who chose to be publicly identified.[31] The subpoena requests what is not public: donor email addresses, identities of anonymous donors, and any "messages left by donors" that the page does not display.[32] A donor's "anonymous" election hides the name from the public, not from the organizer – but not donor email addresses, which GoFundMe withholds.[33] SkyWest is asking a nonparty for the one thing about these donors that nobody – not the public, not Moussaron – has been allowed to see. SkyWest's proposal that the public names be "produced" and the anonymous donors' identities be "designated AEO"[34] concedes that the public names are not the object – as they are already clearly viewable to SkyWest. As Dkt. 132

---

[26] Dkt. 151, pgs. 9–10.
[27] Dkt. 182, pg. 9.
[28] Dkt. 151, pg. 5.
[29] Dkt. 151, pg. 10.
[30] Dkt. 151-1, pg. 15; Dkt. 151, pg. 10.
[31] Dkt. 182-1, pgs. 2–5.
[32] Dkt. 151-1, pg. 26.
[33] GoFundMe Help Center, "Thanking and managing donors," https://support.gofundme.com/hc/en-us/articles/205213077 (updated Sept. 17, 2026); "Donating as 'Anonymous' on the fundraiser page," https://support.gofundme.com/hc/en-us/articles/203687114 (updated July 17, 2026).
[34] Dkt. 182, pg. 11.

explains, where the identity itself is the protected fact, "disclosure to litigation counsel remains disclosure";[35] disclosure requirements chill association "[e]ven if there [is] no disclosure to the general public,"[36] and the Supreme Court found a promise to keep donor information from the public "of no moment."[37]

SkyWest's October 30 production shows what SkyWest does with donor names. On May 22, 2026, two months after the fundraiser opened, SkyWest's Senior Manager of Corporate Communications wrote to three colleagues under a subject line ending "Daniel Moussaron Legal Fund": "Two current pilots have donated. I'm sure there are others, but most donations are anonymous," naming a first officer and a captain by base and date of hire. Four days later a colleague reported the running total and "[f]lagg[ed] a couple known FAs … and current pilots who've donated," listing two flight attendants and two more pilots by base, seat and year of hire.[38] Nothing in that exchange concerns where SkyWest's data went. It is the employer tracking union supporters by compiling, by name, base and seniority, which of its current employees had given money to the pilot it fired and sued. Four months later SkyWest noticed a subpoena for the anonymous ones. The chilling effect SkyWest calls unproven is documented in its own files, and a demand for donor identities by an employer already keeping that list is the demand the Supreme Court held "inevitabl[y]" deters association from the moment it is made.[39]

Next, SkyWest's own authority defeats the "witnesses" theory. *AFT Michigan* divided donors into those who funded the specific conduct at issue, those solicited for it, and "general

---

[35] Dkt. 132, pg. 20.
[36] *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 616 (2021).
[37] *First Choice*, 608 U.S. at 187.
[38] SkyWest_0001811 (Reply Ex. A, filed under seal). No lawyer appears on the thread. SkyWest redacted the remainder (SkyWest_0001812–1815) and withheld its public-relations firm's same-day "reports" as privileged (SkyWest Supp. Privilege Log (Oct. 30, 2026), entries 309–311, 313–314).
[39] Dkt. 182, pgs. 3, 7; First Choice, 608 U.S. at 188–89.

donors," and it *denied* disclosure of the general donors because the plaintiff did "not show that the identities of general donors … are relevant, much less highly relevant."[40] The fundraiser was created on March 16, 2026,[41] six weeks after SkyWest filed suit and three months after the December 2025 conduct it alleges. Every donor is a "general donor." A list of people who gave money after the fact is not a list of witnesses to anything.

The defamation counterclaim does not change this. It concerns the statement SkyWest published to every pilot on January 26, 2026, and whether SkyWest knew it was false.[42] Moussaron's later description of his own case is on the public page SkyWest captured; the names and email addresses of people who read it and donated have nothing to do with SkyWest's claims or defenses.

## V. MOUSSARON HAS STANDING, AND RELEVANCE AND PROPORTIONALITY ARE BEFORE THE COURT.

The cases SkyWest cites address who may *quash* under Rule 45, and SkyWest's lead case undercuts the point. Route App that held that a party with a personal right in the records has standing, noted that the cases SkyWest also cites for the opposite rule, Zoobuh and Hutchinson, were "both involving post-judgment collection efforts, not requested discovery pre-judgment," and then decided relevance under Rule 26(b).[43]

Whatever the limits of a party's Rule 45 standing, this District has determined relevance and proportionality on a party's challenge to a nonparty subpoena. In *Moreno*, Judge Pead held

---

[40] *AFT Mich. v. Project Veritas*, 2020 U.S. Dist. LEXIS 259422, at *19, *33–34 (E.D. Mich. July 2, 2020).
[41] Dkt. 182, pg. 4; Dkt. 182-1, pg. 5.
[42] Dkt. 47, Countercl. ¶¶ 82–89.
[43] *Route App, Inc. v. Heuberger*, 2024 U.S. Dist. LEXIS 14569, at *7 n.22, *8–9, *12–13 (D. Utah Jan. 26, 2024); accord *Moreno v. Unique Plumbing LLC*, 2025 U.S. Dist. LEXIS 213282, at *5 n.16 (D. Utah Oct. 27, 2025) (same parenthetical).

that "even in cases where a moving party lacks standing to challenge a third-party subpoena, the court may exercise its inherent authority to limit irrelevant or non-proportional discovery requests under Rule 26(b)(2)(C)," and decided relevance on the merits.[44] In *United Energy Workers Healthcare, LLC v. Cavallaro*, Judge Oberg found it "unnecessary to address whether [the parties] have standing to move to quash or modify the subpoena on overbreadth and proportionality grounds," because "Rule 26(b) governs the scope of subpoenas," and narrowed the subpoena.[45]

Moussaron also has the personal interest SkyWest concedes is enough.[46] Both subpoenas are directed to accounts he registered and administers,[47] and a court in this District found that interest sufficient where a party challenged a subpoena to a third-party platform for his own account data.[48] The relevance and proportionality arguments in Sections III through V of the Motion are properly before the Court.

## VI. EXPENSES

SkyWest noticed subpoenas for the categories it had stipulated would be resolved by Dkt. 132,[49] yet refused to wait to serve them until a ruling on the matter. That position was not substantially justified.[50]

---

[44] *Moreno*, 2025 U.S. Dist. LEXIS 213282, at *5–6.
[45] 2025 U.S. Dist. LEXIS 261771, at *6–8 (D. Utah Dec. 17, 2025).
[46] Dkt. 182, pg. 10.
[47] Dkt. 151, pg. 5.
[48] *Plott v. Advanced Comfort Techs., Inc., 2020 U.S. Dist. LEXIS 12084, at *3–4 (D. Utah Jan. 23, 2020) (Warner, C.M.J.); Alsaadi v. Saulsbury Indus., Inc.*, 2024 U.S. Dist. LEXIS 86396, at *8 (D.N.M. May 13, 2024) (privacy interest in vendor-held records of "all incoming and outgoing calls").
[49] Dkt. 120, pg. 3.
[50] Dkt. 151-2, pg. 1.

## CONCLUSION

The Court should grant the Motion: enter a protective order under Rule 26(c)(1)(A) as to EZ Texting Commands 3, 4, 6, 7 and 8 and the GoFundMe subpoena in its entirety; continue the stay of service and compliance entered in Dkt. 155 pending the ruling on Dkt. 132; order that any protective order entered on Dkt. 132 governs both subpoenas; and award Moussaron his reasonable fees.

DATED this 6th day of November, 2026.

**SCHOLNICK THORNE HOLLAND**
/s/ Jonathan K. Thorne
Jonathan K. Thorne
Lauren I. Scholnick
Jack Holland
Liesl L. Jenkins
*Attorneys for Defendant and Counterclaim Plaintiff Daniel Moussaron*

## CERTIFICATE OF COMPLIANCE

I, Jonathan K. Thorne, certify that this reply contains 3099 words and complies with the word limit of DUCivR 7-1(a)(4)(D).